

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

BARBARA D. UNDERWOOD
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-8627

July 13, 2018

VIA ECF
Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 6F
Brooklyn, NY 11201

RE:   *Capogrosso v. Gelbstein et al.*, No. 18-cv-2710 (E.D.N.Y.)

Dear Judge Brodie:

We represent defendants Gelbstein, Vahdat, Traschen, Morgan (formerly Prickett-Morgan), and Calvo in the above-referenced action brought by Plaintiff Mario Capogrosso pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, and we anticipate representing defendants Flanagan and Palmieri once they are served with the Complaint (collectively, the "State Defendants"). We write, pursuant to Rule 3.A.i. of Your Honor's Individual Practices and Rules, to request that the Court schedule a pre-motion conference relating to the motion to dismiss that the State Defendants intend to file, and to explain the basis for the State Defendants' anticipated motion.

As an initial matter, as shown below, the grounds on which the State Defendants intend to move to dismiss include Plaintiff's lack of Article III standing. In considering whether a plaintiff lacks Article III standing, courts are "authorized to consider matters outside the pleadings[,]" such as the exhibits referenced below, "and to make findings of fact when necessary." *O'Brien v. Calvo*, 2013 WL 1247521, at *5 (E.D.N.Y. Mar. 27, 2013) (citation omitted).

I.   **Plaintiff's History at the DMV's Traffic Violations Bureaus**

Plaintiff is an attorney who formerly practiced law at Traffic Violation Bureaus ("TVBs") of the NYS Department of Motor Vehicles' ("DMV"), representing motorists in traffic violation hearings before Administrative Law Judges ("ALJs"), primarily at the Brooklyn South TVB in Coney Island. On May 11, 2015, Plaintiff was permanently barred from practicing at TVBs because of numerous well-documented incidents of violent conduct and other unprofessional behavior that posed an imminent threat to the safety of DMV's employees and the public.

The DMV received complaints about Plaintiff's behavior over many years from his attorney colleagues, his own clients, ALJs and DMV staff. *See* Ex. 1 (statements submitted from 2009 through 2011). For example, in January 2011, over a dozen ALJs and staff members signed a petition warning of Plaintiff's "unstable" behavior and requesting that the DMV alleviate the "threat to our physical safety" posed by Plaintiff. Ex. 2; *see also* Ex. 3 (letter from DMV to Plaintiff's former attorney summarizing complaints regarding Plaintiff's behavior). After investigating these complaints, the DMV gave Plaintiff a warning but allowed him to continue practicing at TVBs. Later that year, the DMV received several new complaints about an incident that occurred on December 21, 2011 in which Plaintiff reportedly threw a cup of coffee at a colleague, attempted to strike another colleague with his fist, called a Jewish colleague a "fucking Jew cunt," complained that the TVB was "run by 'fucking Jew cunts,'" and "shout[ed] about Jews." Ex. 1 at 7-10. As a result, Plaintiff was barred from practicing at TVBs to ensure that TVBs are "free from violence, threats of violence, harassment and intimidation." Ex. 3 at 2.

On March 1, 2012, Plaintiff commenced a state court proceeding seeking to be allowed to continue practicing at TVBs. Plaintiff and the DMV settled that proceeding by agreeing that he could resume practicing if he completed an anger management course. He completed the course and was permitted to resume practicing in June 2012. The DMV warned him, however, that any future misconduct would result in his being permanently barred. Ex. 5.

Unfortunately, Plaintiff's violent and offensive conduct continued. The incident that led to Plaintiff's permanent expulsion from TVBs occurred on May 11, 2015 when Plaintiff assaulted a security guard, David Smart, by pushing him into a pole. Numerous witnesses submitted written statements describing Plaintiff's unsolicited attack. *See* Ex. 6.[1] Following that incident, the DMV permanently barred Plaintiff from practicing in all TVBs.

## II.     The State Defendants' Anticipated Arguments for Dismissing the Complaint

The Complaint asserts three claims against the State Defendants, all of which are related to Plaintiff's expulsion from TVBs: First Amendment retaliation (Compl. ¶¶ 70-75); violation of procedural due process (*id.* ¶¶ 76-85); and prospective injunctive relief (*id.* ¶¶ 86-88). The State Defendants anticipate moving to dismiss these claims on the following grounds, among others.

**Lack of Article III Standing**. Plaintiff lacks Article III standing to assert any claims against the State Defendants because his expulsion from TVBs was not "causally connected to the defendant[s]," as required. *Hassan v. United States*, 441 Fed. App'x 10, 11 (2d Cir. 2011). Rather, Plaintiff's own violent and offensive conduct was the sole cause of his alleged injury. *See Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) ("A plaintiff cannot establish Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own alleged injury.").

**First Amendment Retaliation**. Plaintiff fails to state a First Amendment retaliation claim because (1) he was barred from TVBs for aggressive, physically intimidating and violent behavior that is not protected by the First Amendment, *see Roth v. Farmingdale Sch. Dist.*, 2017 WL 395211, at *15 (E.D.N.Y. Jan. 30, 2017) ("threatening behavior" that led to plaintiff's

---

[1] Names, phone numbers and addresses not previously disclosed have been redacted for privacy.

expulsion from property "not shielded by the First Amendment"); (2) Plaintiff fails to plausibly allege retaliation for any protected First Amendment activity, *see Trisvan v. Annucci*, 284 F. Supp. 3d 288, 303 (E.D.N.Y. Jan. 9, 2018) ("conclusory" allegations are insufficient); (3) lawyers do not have a First Amendment right to practice law in courts or other judicial fora, *see Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third and Fourth Departments, Appellate Division of the Sup. Ct. of the State of N.Y.*, 852 F.3d 178, 187 (2d Cir. 2017); and (4) Plaintiff fails to plausibly allege a conspiracy to violate his constitutional rights.

**Due Process.** Plaintiff fails to state a due process claim because (1) he does not have a protected liberty or property interest in continuing to practice law at TVBs, *see Conn v. Gabbert*, 526 U.S. 286, 292 (1999) ("complete prohibition" on right to practice law required to assert due process challenge); *Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 296 (S.D.N.Y.1999), *aff'd* 225 F.3d 646 (2d Cir. 2000) ("It is well settled that one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest.") (citations omitted); (2) Plaintiff had notice of the complaints against him and was given numerous opportunities over several years to improve his behavior, including warnings in 2012 that any future misconduct would result in a permanent ban (Exs. 4 & 5); (3) the DMV's rules expressly permit it to bar lawyers from practicing at TVBs for misconduct, *see* 15 NYCRR § 124.2; and (4) Plaintiff's failure to commence an Article 78 proceeding in state court within four months of his expulsion negates his due process claim. *See Rubin v. Swarts*, 2011 WL 1004838, at *4 (E.D.N.Y. Mar. 18, 2011) ("The opportunity to pursue an Article 78 proceeding in New York State Supreme Court constitutes a wholly adequate post-deprivation hearing for due process purposes."); *see also Campo v. N.Y. City Employees' Ret. Sys.*, 843 F.2d 96, 100–03 (2d Cir. 1988) (same).[2]

**Absolute Immunity.** Defendant Morgan should be dismissed because, *inter alia*, as an attorney in this Office, which represented the DMV in Plaintiff's 2012 proceeding, she has absolute immunity from any liability. *See Barrett v. United States*, 798 F.2d 565, 573 (2d Cir. 1986); *Roache v. The Attorney Gen.'s Office*, 2013 WL 5503151, at *13-14 (N.D.N.Y. Sept. 30, 2013).

**Sovereign Immunity.** The State Defendants have qualified immunity because (1) they did not violate any of Plaintiff's "clearly established" constitutional rights when he was barred from TVBs for misconduct and (2) it was objectively reasonable for them to believe they did not violate Plaintiff's rights. *See Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).

Respectfully submitted,

Mark Siegmund
Assistant Attorney General

Cc:   Plaintiff, via ECF & First-Class Mail

---

[2] Upon dismissal of Plaintiff's substantive claims for First Amendment retaliation and violation of due process, Plaintiff's ancillary claim seeking "prospective injunctive relief" should be dismissed as well. *See KM Enters., Inc. v. McDonald*, 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012) (dismissing cause of action for permanent injunction because "no substantive federal claim remains upon which the [p]laintiff can base its request for . . . injunctive relief"); *see also Christe v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) ("Injunction is not a separate cause of action; it is a remedy.").