UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**COURTESY COPY**

MARIO H. CAPOGROSSO,                          CV18-2710

                    Plaintiff

        -against                              DECLARATION OF
                                              MARIO H. CAPOGROSSO
                                              IN OPPOSITION TO
                                              TO DEFENDNAT'S MOTION
                                              TO DISMISS PLAINTIFF'S
                                              COMPLAINT

ALAN GELBSTEIN, in his official and individual capacity;
BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) in her official and
individual capacity;
IDA TRASCHEN, in her official and individual capacity;
ELIZABETH PRICKETT-MORGAN, in her official and individual capacity;
JEAN FLANAGAN, in her official and individual capacity;
VINCENT PALMIERI, in his official and individual capacity;
DANIELLE CALVO, in her official and individual capacity;
SADIQ TAHIR, in his individual capacity;
PEC GROUP OF NY, INC.;
DAVID SMART, in his individual capacity;
JOHN AND JANE DOE.

                    Defendants

_____

1. Mario H. Capogrosso, affirm under penalty of perjury that: I am the Plaintiff in the

above entitled action, and respectfully submit this Declaration in Reply to Defendants

Gelbstein, Vahdat, Taschen, Morgan, Flanagan and Palmieri Motion to Dismiss dated

August 15, 2018. I submit this Declaration is true based on personal knowledge and

experience of all the facts as provided herein.

1

**RESPONSE TO THE EXHIBIT LIST AS FOUND IN THE DECLARATON OF BARBARA MONTENAT**

2, I attach as **Exhibit A.** B. Montena's Declaration Exhibit List August 15, 2018.

In response:

Find my factual responses to Exhibits 1- 28

**Response to Exhibit 1**

My defense – Tanya Rabinovitch approached me that day after I    complained to the District Attorney concerning her continuous representation of herself as an attorney at the Brooklyn South DMV TVB. After admitting to her that I filed such report with the District Attorney, she accosted me that day with a verbal tirade. Defendant's Gelbsteins response to my complaint to the District Attorney was – "Who are you Don Quixote." I attempted to walk away from her that day and avoid her verbal tirade.

**Response to Exhibit 2**

Again, Tanya Rabinovitch approached me complaining of my complaint to the District Attorney's Office – I did tell her to "get away from me." She was verbally accosting me due to my complaint to the District Attorney's Office. I see nothing wrong with the comment "get away from me" and then attempting to avoid interacting with her.

**Response to Exhibit 3**

I am accused at belligerently yelling. I was called to the counter by a paralegal working for me at that time, and I asked, "what was the problem." There is nothing wrong with that. I did not curse. Marisol Cervine provides no indication of what curse word was used, because none was used. As I remember it I asked only "What was the problem" Further she indicates "that my aggressive behavior escalated. I have no idea what that means. What exactly am I being accused of doing to her. She indicates I made comments and smirked. My response, what comments were made. None were made. I was an aggressive litigator in this courtroom, but I made no aggressive action against her person at any point in time.

**Response to Exhibit 4**

I at no point told my paralegal at any time to follow this person. It is true she was NOT an attorney but it is true that she was soliciting motorists on a continuous basis in the Brooklyn South TVB court. She was eventually thrown out of the DMV due to her relentless soliciting of motorists not only on the floor of the DMV but in its parking lot by Defendant Gelbstein. She provides no indication specifically of "the variety of profane and vulgar names" used because none were ever said. I do not curse at women.

2

**Response to Exhibit 5**

This is a complaint from another attorney, I did not take any action on his behalf with refence to any summons. I might have been hired by a client to act on such summons but I never represented that I was acting on behalf of this attorney, I see that I did nothing wrong.

**Response to Exhibit 6**

I am accused of confrontations. There are no specific facts, only allegations,   so I do not know how to respond. I am a litigator. I was at this tribunal to argue cases and win cases on behalf of my clients. I was not engaging with the clerks of this court as other attorneys did. I was not giving them gifts for Christmas and the holidays, I was not giving them parties, I was not buying them breakfast and coffee. In response my clients often paid the price. I would put the summons in the courtroom, and as it was my understanding the standing rule of the Court was that the first to appear was to the first party to be heard. Often this was not the case. Because I did not indulge the clerks with gifts, presents, coffee, and parties my clients would suffer. I would put the case in first and be called last But I refused to the play their game. If I did, to me there was an appearance of impropriety and I did not want to play that game. I was upset for my client's sake, not mine. I was there for the whole day. I worked predominantly at the Brooklyn South TVB. I see no actual allegations of misconduct to which I need to respond.

**Response to Exhibit 7**

Attorney Yaakov Brady's accusations – incredulous statement by a lying lawyer who precipitated all these events. This event happened on December 11, 2011 in the attorney's room at the Brooklyn South TVB. Once again, I came and I placed my coffee down under the bench. "I said excuse me can I get my coffee" to Brody. Brody responded, "excuse yourself go f--- yourself you Jew hater anti-Semite." I then proceed that morning to do a hearing. I come back once again Brody is standing in front of my coffee, I asked Brody "excuse me can I get my coffee." His response again was "excuse yourself go F--- yourself you Jew hater anti Semite" I was required to take an anger management class, Brody was given a pass. I argue, I am an Italian American in Jewish community making too much money. My colleagues wanted me out. In addition, please let this Court note, Brody states that I said I am going to "Hit you with my briefcase" Incredulous statement from a lying lawyer. If it comes to the point where I need to defend my life or my family's life because of threat of assault by a knife or gun or serious physical assault I will defend myself – but " I am not going to "Hit you with my briefcase" Incredulous statement by a lying lawyer. Let Brody know that I am not an anti-Semite. Please let this Court note that in all the accusations brought against me, there is not accusation from any client or motorist that I used racial slur whether they be Jewish or any other nationality or religion. Please review this record. Where is there proof I am an anti-Semite. There is none. These are the actions of an attorney, Brody,  who provoked an incident, who was looking to get to get me removed and accomplished it.

**Response to Exhibit 8**

R. Maher was not seen in the attorney's room that day. I have explained the events of this day repeatedly. I said to Brody "excuse me can I get my coffee' To which Brody replied "excuse yourself go f--- yourself you Jew Hater anti-Semite"

**Response to Exhibit 9**

Defendant Tahir was in the Attorneys room on December 21, 2011. He confirms I said "Excuse me " to Brody He confirms that I reached for his bag lying on the floor. I was actually reaching for my coffee. At no point did I throw a punch at anyone. I threw a punch in the direction of a wall, never hitting the wall. For what reason – I was upset. Brody told me to "go f--- myself." Not once but twice. Any normal man would be upset. What makes me an anti-Semite, as I am accused of, I would love to know. I am not. I was upset. I did throw a punch in the direction of a wall, not hitting the wall, and in the vicinity of no one. I was not arrested or charged. Brody set me up and accomplished what he wanted to do that day.

**Response to Exhibit 10**

The events of December 21, 2011 again. One event one day, all occurring outside the tribunal. Initiated by Brody telling me to "Go f--- myself" twice and "that I am a Jew hater anti-Semite" for what reason I still don't know, only because I am an Italian American in Jewish community making too much money. Brody set me up. I took an anger management course because I did throw a punch in the direction of a wall, not hitting the wall in the attorney's room and not in the vicinity of any other attorney. I was not arrested nor charged.

**Response to Exhibit 11**

Letter dated February 8, 2012 – I am being accused that my actions "constituted a threat." I have gone through ALL the accusations. Where is there a threat of violence or use of violence. (Even in reference with the incident with Brody on December 21, 2011 when Brody "told me to go f--- myself" twice, the punch was thrown at a wall, not hitting the wall, and not in the vicinity of any person.) There is none. I was not liked because I did not indulge the clerks with gifts, presents and parties, and not liked by fellow attorneys, more likely than not, because I was making too much money, but I never threatened anyone.

I am accused of having confrontations. What are they, and where is my opportunity to respond. Defendant Gelbstein never put any warning or admonition in writing to me concerning an alleged confrontation, so that I could formally respond. – **Response to Exhibit 11**

I am accused of assaulting a female assistant" – where is there proof of this. Where was I

4

charged with an assault? I am working in the DMV. There are police all around me at all times and they observed no assault. False accusation to which I was given no opportunity to respond. – **Response to Exhibit 11**

I have no idea of what I am being accused of by Defendant Vahdat as to what "blowing off steam" means. I never uttered this statement. Inuendo, accusation, misconception but no threat of violence or abuse. – **Response to Exhibit 11**

Defendant Vahdat accuses me of abusive behavior. You have seen all affidavits, where is there proof of abusive behavior. The clerks did not like me I understand but there was no abusive behavior. – **Response to Exhibit 11**

The event of December 21, 2011 goes only half reported. The DMV do not document in this letter the actions of Brody, because I was given no opportunity to respond. Brody tells me "to go f--- myself you Jew hater anti-Semite" Twice. I did throw an empty coffee cup into a can in the attorney's room – that does not constitute an assault, nor threat of violence.
– **Response to Exhibit 11**

I never punched a wall. My hand would have been broken. I am a black belted KENPO martial artist. I have trained for many years but I don't know the worst criminal who would ever admit to a Senior ALJ judge, Defendant Vahdat " I do it to let off steam, otherwise I would hurt someone." Incredulous statement by a lying ALJ who has a history of misconduct. Reference Attachment D. – **Response to Exhibit 11**

**Response to Exhibit 12**

"give somebody an attitude" sound alike a paranoid clerk who perhaps needs a vacation. I really don't know how to respond. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 13**

I have no idea who this person is or what summons it pertains to, once again the names are redacted so more likely that not it was written after my Summons and Complaint was filed on May 8, 2018. I was given no opportunity to respond by Defendant Gelbstein.  I do admit that I do not give money back after I argue a case and the case is lost. I am not the Judge. Obviously, this client was disgruntled he lost a case. The motorist provides no proof of the summons to which he is referring. And further any such communication, if it occurred, was privileged as between attorney and client and was not with the staff of the DMV TVB. In truth, this is a totally fallacious statement. I never made such statements, nor was any grievance ever filed against my office to which I needed to respond concerning it. **Where is the proof of "verbal threats of physical violence, and verbal**

5

abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.

### Response to Exhibit 14

dated February 3, I never intentionally walked into Defendant Smart. Deliberately walked – ridiculous. Is this an assault or threat of violence, verbal abuse? We are working in the same environment. I routinely would have to go the docket on the courtroom wall to look and determine the hearing room for the motorist's hearing. Paranoid security guard but not an assault or threat of physical violence. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

### Response to Exhibit 15

I do remember this incident . Mr. Perez retained me to represent him on an appeal on a traffic ticket that he had lost. I took the appeal . The following day Mr. Perez came in and told me the judge has suspended his license. He came in verbally abusing me. I said I will give you your money back on the appeal, which I did. I did not argue his case. I did not get his license suspended. I was the lawyer hired to write the appeal. At which time Mr. Perez threatened to cut me with a knife and then slash the tires of my car. Welcome to the Brooklyn TVB. I was told by Defendant Gelbstein if there is an unruly client motorist you are to speak to him outside the courthouse which I intended to do with Mr. Perez as per Defendant Gelbstein order. As I understand it, all the attorneys were told the same. I was just threatened with a knife. The security guard defendant Smart was nowhere to be found and the Police did not get involved,  as such I followed Defendant Gelbstein order and indicated to Mr. Perez that we needed to speak outside. Once again, **where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

### Response to Exhibit 16

I have no idea as to what this is about. Nonsense. I have no idea what is being alluded here. But if I verbally attacked Defendant Gelbstein. What words did I use, in what manner did I attack him. I am having an argument over paper clips. Where is Defendant Gelbstein's formal admonition to me. This is nonsense, ridiculous statement made by a disgruntled employee who I believe was removed from her position at the Brooklyn DMV for unprofessional conduct. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

6

**Response to Exhibit 17**

I say "shit" I do not say shit at any time. I do not curse. I do hear Defendant Tahir say "Mother F---ker" very often in my presence as well as the presence of other attorneys and clients, to which he takes no offense.  I have no idea of what Defendant Tahir is talking about. I do say "Eee – shah" occasionally, quietly to myself. It is a KENPO expression (once again I have trained in the martial arts for many years) and it is something that keeps me motivated, in and out of the gym, when I lose energy but it is not the word "shit" and was never directed at any attorney, client or motorist, If Defendant had questioned me concerning it, he might have understood.  I think Defendant Tahir is paranoid. I mumbled "psycho" – ridiculous. This is verbal abuse. Sounds simply like attorney paranoia. I am accused of punching. Absolutely ridiculous – where is the proof. Where is the admonition by Defendant Gelbstein to me, concerning such behavior. Anything recorded on tape. I have seen none. I am accused of "grabbing my ankles and walking in a fast threatening manner: Nonsensical. Where is it written I cannot touch my toes or walk fast. Nonsensical. An old attorney's paranoia. The "near fight" Defendant Tahir speaks about concerns a client, Mr. Perez threatening to slice me with a knife, and security guard Smart being nowhere to be found, Police Officers not responding, and Defendant's Gelbstein's order to me to speak to unruly clients outside the courtroom. Explained above. Further, what you do hear in this statement from Defendant Tahir is that it he responds, "loudly **in a barrage swear words**, stating that he (M. Capogrosso)was crazy and I was sick of him saying "shit" to me." By his own admission, I am being verbally abused by Defendant Tahir. In response I did shake my shoulder and laugh. This is nonsensical.
**Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 18**

At no point in time did I yell and curse at Defendant Tahir. Tahir by his own admission , item 6, above admits responding to me  **"loudly in a barrage of swear words."** I am being yelled at, cursed at, by Tahir. I am being accused of cursing. What curse words did I use. Please explain I see none presented

There was no incident on May 5, 2015. There was an incident of May 8, 2015. There was a verbal disagreement on May 8, 2015 between me and Defendant Tahir. I placed my briefcase on a chair in the attorney room for a moment while I took a phone call from a client. It was Defendant Tahir who verbally assaulted me with a tirade of expletives saying I was not allowed to sit or put anything on his chair. Why, I do not know. This was a common attorney room where we all had a right to sit and share. Nonsensical accusations. Putting my briefcase on a chair. I am accused of " obscenities and threats." My question what threat was uttered and what obscenity used. Absolutely none. Not by me anyway. Tahir does admit to swearing at me.  **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see**

7

**no proof.**

**Response to Exhibit 19**

I have no idea who wrote this, my files were being tampered with at one point in time. I did observe Defendant Smart do it often. I complained to Defendant Gelbstein with no response. It was Smart's continue attempt to harass. I never stated that Defendant Gelbstein "should put a gun to his head." My question, who made this statement and who corroborates me making it. However, I do remember making a statement concerning a former attorney who also improperly expelled from the DMV TVB by Defendant Gelbstein and who later committed suicide. When I was asked about this matter by a client concerning Defendant Gelbstein's actions, expelling an attorney from the DMV without a due process hearing, I stated in response " I would have a hard time sleeping at night. " That is all I said, everything else is total fabrication. Let this person come forward. They will not. Their statement goes unsigned. Once again, **where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 20**

I put my briefcase on a chair in the attorney's room which I am allowed to do. This was not Defendant Tahir's personal chair, so therefore he cannot direct me as to how to use it. He indicates in his statement that "that chair is to sit, not for your bag." Who is provoking this incident. Tahir is, I am not. Attorneys routinely lay out their briefcase on the two benches that occupy this attorney's room. Except of course when it came to Tahir's chair, that he claims as his own. I put my briefcase on this chair for a moment, in order to take a phone call. Tahir provoked, escalated and contributed to the whole incident yet he goes unpunished, I get banned. Further, Defendant Tahir began screaming, by his own admission, he states **"then of Course I raised my voice too."** Yet in the work violence report submitted it is only me who (Siegmund's Exhibit 6, page 13 of 23) who is described as yelling. Defendant Gelbstein and Calvo mischaracterize the evidence purposefully to get me banned from the DMV TVB. I was given no opportunity to state my position on this incident with Tahir. Defendants Gelbstein and Calvo did approach me after this incident. Defendant Gelbstein in the presence of Defendant Calvo stated to me, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 21**

Work place violence report – the hard evidence upon which this Court has indicated to me pursuant to my Foil request, as to why I was banned from the DMV TVB. With

respect to the Workplace Violence Report, there is no work violence or threat of work violence shown in this report. A report in which I was given no opportunity to respond. As I stated previously I placed by briefcase on a chair that Defendant Tahir claimed as his own in the attorney's room. Tahir began to move it I said give me a minute I will be leaving shortly and which Point Defendant Tahir grabbed the briefcase sending files scattering. I was given no opportunity to explain nor respond by Defendants Gelbstein and Calvo.  There is no proof of violence in this report though it is labelled as a work violence report and it is one of the primary reasons for me being banned." Defendant Gelbstein did approach me after this incident, in the presence of Defendant Calvo and stated, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached.  **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

## Response to Exhibit 22

Work place violence report – My response to the approach of Defendant Smart was "back up back up" indicating I am not looking for an altercation. My hand went up in self-defense. Defendant Smart approached me for no reason. A paranoid security guard who said, "You are looking at me."I said nothing to Defendant Smart that morning other than "back up, back up" I did not provoke this incident. This is what did happen. When I walked into the DMV that day and got on the line to get summonses, I did turn around because Defendant Smart was pacing back and forth. He was grumbling and mumbling and shaking his head side to side.  At which point he approached me in a hostile and aggressive manner. I told him "back up, back up" and he refused. I put my hand up in self-defense. Please look at the "Additional Comments" on the Work Violence report submitted. Defendant Gelbstein  gives me no opportunity to respond to the incident. He has me escorted out and then permanently banned from the DMV TVB. Defendant Gelbstein provides no indication that he did any formal investigation of this incident, yet he bans me for life from practicing at the DMV TVB. There is no indication that he reviewed security tapes, questioned me or investigated the incident as he did not question me concerning the incident with Defendant Tahir concerning me placing a briefcase on a chair in an attorney's room. I was given the phone number by Defendant Calvo of Defendant Traschen, who indicated to me that I was permanently banned from the TVB. Once again for placing a briefcase on a chair in an attorney's room that Defendant Tahir claims as his own and for telling a security guard Smart "back up back up" after his approach upon my person in an angry hostile manner and accusing me of looking at him. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 23**

My hand went up in defensive posture. Defendant Smart was in my personal space, and this was not for the first time. Reference my letter to Defendant Prickett Morgan Exhibit D where I sought relief from such behavior form Defendant Smart. As shown in my Complaint, dated May 8, 2018, Defendant Smart has pushed me from behind of for no apparent reason, gave me the sign of the cross and spear hand while standing on the clerk entry summons line (an I believe was removed from  his duties at the Brooklyn South SMV TVB for approximately two weeks after such incident by Defendant Gelbstein), to get the summons for a day's hearings, got in my face several times in a threatening aggressive manner between June 20, 2012 and May 111, 2015 and  when I asked what was the problem his response was "F--k you, you are the problem, and has admitted to taking money from one of my clients while at some point in time between December 11, 2011 to June 20, 2012 when I was required to take an anger management. He has admitted to taking $80 owed from a client on a $150 fee. He admits he took this money because he indicates that I authorized him to do so. An outright lie. He indicated that he gave this money to me. A lie. Simple and plain. During the time when Defendant Smart took this money between December 11, 2011 and June 20, 2012 I had no communication with the DMV and specifically with a security guard who worked at the DMV. I reported this abuse and theft to Defendant Gelbstein, he performed an investigation and let Defendant Smart remain at the Brooklyn TVB. After which time a series of threats and assaults began by Defendant Smart against my person at the Brooklyn DMV TVB which culminated in the incident of May 11, 2015. I have no motive for having any type of altercation with a security guard. I was there to represent clients and make my living. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof**

**Response to Exhibit 24**

Same as above

**Response to Exhibit 25**

Police report filed no action taken against me.

**Response to Exhibit 26**

Defendant Calvo's admits to having me removed and banned from the TVB  for two incidents 1) the incident with Tahir on May 8,2015, and 2) the incident with Smart on May 11, 2015. Please, look at the record. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

10

**Response to Exhibit 27**

I am a litigator. Most of my colleagues in this profession take a summons postpone it for three years in hopes the police officer retires and then says hello to the judge. I actually argued zealously for my clients, an oath that I took when I was admitted to the NY Bar and have upheld. I did not badger witnesses or make frivolous motions. I actually felt an obligation to win my client's case. In terms of being unshaven. plenty of attorney's wear beards. Sunken eyes – I do go out at night and have a social life. Black eye – maybe – I do train in the martial arts for a longtime, I enjoy being in the boxing ring (especially when this action commenced) and competing in the martial arts. I am now being banned from the practice of this area of law because I zealously advocate, don't shave, or have a black eye (though I do not recall sporting one at the time, but I would not be ashamed of it either) and by competing in the martial arts. How ridiculous. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 28**

I am being accused of "staring" at a clerk. I am in a courtroom, Room 6, I am required to remain silent in a courtroom. As I remember, I was ordered by presiding Judge Chorney to stay in Room 6 and don't leave. He wanted to hear my case next. The Brooklyn South TVB has five or six hearing rooms operating at all times. I abided by this court ruling. This clerk took offense. I see that I did

**LETTER OF READMISSION**

3. Please find attached my letter of readmission to the Brooklyn South TVB as referenced above, attached as **Exhibit B**.

**DEFENDANT GELBSTEIN'S ALJ AFFIRMATION**

4. I attach as **Exhibit C**, M. Siegmund's Exhibit in part that provides Defendant Gelbstein's ALJ Affirmation. In response I affirm:

- Defendant Gelbstein has indicated that he has personally warned me of threatening behavior. – paragraph 2

In response – Defendant Gelbstein has never provided to me a written formal admonition to which I needed to respond. He provides no facts as to what constituted threatening behavior.

- He indicates that there was a pattern of disruptive and threatening conduct –

11

paragraph 3

In response – Defendant Gelbstein has never provided to me a written formal admonition to which I needed to respond. He provides no facts as to what constituted disruptive and threatening conduct.

- He indicates I had a heated dispute with another attorney - paragraph 4

In response – Defendant Gelbstein has never provided to me a written formal admonition concerning any heated dispute with another attorney to which I needed to respond. He provides no facts as to what constituted my involvement with such other attorney.

- Defendant Gelbstein indicates I use anti-Semitic language and has called him "a beanie wearing kike"

In response – an outright lie. My affirmation – I am considering leaving this profession.

Who corroborates I made such a statement and in is whose presence.

All of the exhibits are before this Court. I am working amongst numerous clients of all nationalities. Where is there found one complaint form a motorist, client or from anyone that at any time that I used an anti-Semitic remark or any disparaging remark There is none.

My accusations against Defendant Gelbsterin are well documented.

I will restate:

- In my first meeting with Defendant Gelbstein at the Brooklyn South TVB he calls an attorney meeting with all the attorneys. His last statement to us is "How do I get a piece of the action"

- I observe him regularly having lunch with several Jewish ticket brokers in his office after ordering all ticket brokers out of the Brooklyn South TVB – when I question him about it he states: They are friends of my wife I have dinner with  them but I do not know what they do for a living."

- I have repeatedly seen Defendant Gelbstein in the GE (General Requirements  Hearing Room) rescheduling a multitude of cases and enter guilty pleas on some of them. All on a side bar.

- I question one attorney who indicated to me that he was covering a case for Defendant Gelbstein

- He condones the presence of Tanya  Rabinovich in his courtroom – a woman who repeatedly was calling herself a lawyer. I call the District Attorney concerning her actions

12

and representations in his court. Defendant's Gelbstein's response to me "What are you Don Quixote"

- I complain to Defendant Gelbstein of Defendant Smart's actions in 1) pushing me from behind, 2) stealing money from a client who came looking for me while I was absent from the TVB from December 2011 to June 2012, 3) repeatedly getting in my face and when I ask what the problem was Defendant Smart indicates "F... you are the problem", 4) for giving me the sign of the cross and a rigid spear hand directed at my person while in the Brooklyn SouhTVB, 5) tampering with my attorney files to which Defendant Gelbstein laughs and giggles and tells me " a spade is a spade." and 6) when I complain to Smart's Company PEC Group of NY, I am told by an officer at PEC that they love Smart at the TVB.

    - He indicates I have harassed TV employees and attorneys at the TVB.

In response – Defendant Gelbstein has never provided to me a written formal admonition concerning what actions harassed TVB employees and other attorneys. He provides no facts as to what constituted such harassment.

    - He indicates that I punched a wall.

In response – I did not punch a wall. I would have broken my hand. Further, there are security cameras located throughout the Brooklyn South TVB and yet Defendant Gelbstein provides no proof by way of security surveillance of any such activity.

    - He indicates that I have a boxer's attitude and I study a lethal martial art

In response – I never stated at any point to Defendant Gelbstein that I have a boxer's attitude. Its sound s like a tremendous amount of insecurity. Where is this statement corroborated. Further a boxer's attitude seeks to avoid confrontation. Fighters do not want to fight.

I do admit I study a martial art. I do not openly speak about it. When questioned concerning it, I do respond.

## MY LETTER OF MARCH 20, 2015 SEEKING RELIEF

5. My accusations against Defendant Smart are well documented in my Complaint. I will restate. Defendant Smart has:

- Pushed me from behind in June of 2012 soon after my return to the Brooklyn South TVB to which Defendant Gelbstein took no action.
- Stole money from a client who came looking for me while I was absent from the TVB from December 2011 to June 2012, Defendant Smart admits taking the money - 80 dollars of a 150 dollar legal fee and indicates he was collecting it on my behalf and states

13

that he gave it to me. An outright fabrication.
- Defendant Smart would  repeatedly get in in my personal space when I was present at the Brooklyn South TVB and when I ask what the problem was Defendant Smart would respond "F… you, you are the problem",
- Defendant Smart gave me the sign of the cross and a rigid spear hand directed at me, while I was standing at the summons line one morning at the Brooklyn South TVB, for which I believe he was removed from his duties for a short period of time.
- I observe Defendant Smart then tampering with my attorney files in the attorney's room.

6. I write a letter to Defendant Prickett Morgan on March 20, 2015 after attempting to speak to Defendants' Gelbstein and Vahdat,. The letter goes unanswered. I attach herein as **Exhibit D**  my letter to Defendant Prickett Morgan.

## MY PERFORMACE AT THE BOOKLYN SOUTH TVB IS MERITORIOUS AND WITHOUT BLEMISH

7. I attach reviews as **Exhibit E** indicating my exemplary work at the Brooklyn South TVB.

8. I have not been sanctioned nor reprimanded by any Grievance Committee concerning my actions or conduct while working and representing motorists at any NY Traffic Violations Bureau.

## THE NEW YORK TRAFFIC VIOLATONS BUREAU HAS A HISTORY OF MISCONDUCT

9.I attach disciplinary actions taken against Defendant Vahdat as **Exhibit F.**

10. I attach as **Exhibit G** disciplinary action taken against the clerks of the New York State Department of Motor Vehicles as well as representing certain unethical conduct of lawyers practicing in this court.

## THERE HAS BEEN NO DUE PROCESS OF LAW

11 . I have been falsely accused of wrongdoing by a tribunal that goes unsanctioned by any higher court. As I have stated in my Complaint I have filed grievances against this tribunal with 1) State of New York Office of the Inspector General, 2) the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, 3) the State of New York, Appellate Division, Third Judicial Department Committee on Professional Standards, 4) New York State Committee on Judicial Conduct, and 5) by

14

mail and attempted telephone to the New York State Department of Traffic Violations Bureaus. All to no avail.

12.I have been falsely accused by administrative law judges and TVB clerical staff that have a history of wrong doing.

13.. I have not been afforded a trial or hearing on the issues; I have not been informed of the charges and accusations in timely manner (that is before judgment) to which I might respond, I have not had the ability to confront my accusers through cross examination, I have been denied the right to present evidence in my defense.

14. In view of the foregoing, and as truthfully stated, it is respectfully submitted that the Motion to Dismiss my Complaint should be denied.

**I declare under penalty of perjury that the foregoing is true and accurate.**

Dated; September 27, 2018
Westchester, New York

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804
(914) 806-3692

15

# EXHIBIT A

**EXHIBIT 1**

To: Judge Gelbstein

Re: Incident report (TVB)

On Tuesday, April 21, 2009 at approximately 10:25A, I was at my work station (#7) when I observed and heard Mr. Capogrosso, screaming and yelling profanities and obscenities at Ms. Rabinovich (Tanya). At this time Mr. Capogrosso is sitting down. I observed him get up from his seat and approach Ms. Rabinovich (walking fast and hard toward her) when he bumped real hard into her as he tried to pass by her. (Which was very unnecessary - given he had plenty of room to walk around her.) I noticed she was very shaken by his actions.

This is the end of my statement.

L. Perez Jr

MVU

**EXHIBIT 2**

04-21-09

JUDGE GELBSTEIN
      DEAR SIR,

      ON TUESDAY APRIL 21, 2009 WHILE WORKING
THE CASHIERS WINDOW, STATION BS24 I HEARD A LOUD
VOICE FROM the Lawyers Area. I looked up AND
SAW MR CAPOGROSSO. Esq. SEATED ON the BENCH
STATING " GET AWAY FROM HERE", He then Rose AND
told "TANYA the interparter" to get AWAY. MR
CAPOGROSSO MOVED TOWARD TANYA, AND they seem
to BUMP. the Noise Continued UNTIL OUR
supervisor Danielle CALVO intervened

                    Sincerely,
                    Roy Tucci
                    Roy Tucci
                    CLARK

                                    CC. J. Vetere

**EXHIBIT 3**

03/02/2012  16:37      1718-539-8491            QUEENS NORTH TVB              PAGE  17/17



# Traffic Violations Bureau

June 19, 2009

From:        Marisol Cervoni

To:          Alan Gelbstein

Subject:     Mr. Capogrosso

On Tuesday June 9, 2009 at approximately 9:45 AM I called the next customer to my counter. The motorist was accompanied by Michael, who is the assistant of Mr. Capogrosso, who is one of the lawyers who represents motorists at their hearings here at Brooklyn South. The motorist handed me her drivers' license and as I was manufacturing a substitute ticket for the motorist, Michael called Mr. Capogrosso over to my window. Mr. Capogrosso, thinking there was a problem approached my counter and aggressively and belligerently began yelling at me. I assured him that there was no problem and that I had already printed the ticket for his client, but at that point he was already out of control and continued yelling, cursing and insulting me. The supervisors, Geri, Danielle and John all came out to see what the commotion was and to resolve the situation, but he refused to listen to reason or leave my counter. I then went into the back office because I felt threatened and was afraid for my safety. Finally one of the supervisors calmed him down and he moved away from my counter. Throughout the day Mr. Capogrosso was taunting me. He would walk past my station making comments and smirking at me.

I can no longer interact with Mr. Capogrosso at the service counter because I fear for my safety. On many occasions I have observed him display his aggressive behavior towards my co-workers, his clients, the other attorneys and their assistants. He even went so far as to assault a female assistant who works for another lawyer.

His aggressive behavior has steadily progressed within the past few months. I no longer feel comfortable at my place of employment because of this individual's behavior and I wish to go on record in the event of any future conflicts.

Marisol Cervoni

*Marisol Cervoni*

Cc:  John Vetere
     Danielle Calvo
     Geri Piparo

**EXHIBIT 4**



Diantha L. Fuller, Esq.
REDACTED

Cell: REDACTED
Fax:

August 5, 2009

New York City Traffic Violations Bureau ("TVB") – Coney Island Location
Attn: Senior Judge Alan D. Gelbstein                              *Hand Delivered*
Re: Mario Cappigrosso Incident Report 7/31/09

Dear Judge:

As requested by your staff, below is Agnes Paez's report of the events that transpired on 7/3109 in the Coney Island Traffic Bureaus which I took directly from an email she submitted to me:

*I, Agnes was speaking with a client on behalf of Diantha Fuller when I was abruptly approached by Mr. Mario Cappigrosso. He then stood in front of me, and told Ms. Fuller's client that I was not a lawyer and he should not be speaking to me. He then handed my client his business card. The client did, in fact, know that I was not an attorney and was shocked at Mr. Cappigrosso's behavior.*

*Mr. Cappigrosso then turned to me and called me a variety of vulgar and profane names and threatened me with violence to stay away from the Dept. of Motor Vehicles. He then told his Paralegal, Michael, that he should follow me around and harass every client that approached me.*

*Finally, Mr. Cappigrosso told me stay away from him in a very violent manner, towering over me and spoke so loudly and in a threatening manner that a plain clothes policeman standing next to me asked if he needed to get involved. One of the clerks behind the counter then intervened and sternly asked him to behave because Mr. Cappigrosso was so frightening, not only to me, but to everyone around him.*

*I was especially nervous because I am 6 months pregnant and I was in fear his outbursts would turn violent.*

Should you need any additional information regarding this matter or if you have any questions, please feel free to contact the undersigned.

Regards,

Diantha Fuller, Esq.

**EXHIBIT 5**

9/28/2010

I Jason Dorset State
That Mario Culagrossi
was NOT Authorized to
Proceed on My Behalf
On The Above Dates On
Summon # AAK5507913 & AAK 5507902

Sworn Before My _____ Jason Dorset
This 28th Day of September
2010

PIERRE BAZILE ESQ.

Pierre Bazile
Notary Public, State of New York
Qualified in Suffolk County
Reg. #02BA5077059
Commission Expires November 19, 2011

**EXHIBIT 6**

1/6/11

We the undersigned clerks, supervisors, and judges of Brooklyn South Traffic Violations Bureau state that we feel the presence of attorney Mario Capogrosso on our premises constitutes a threat to our physical safety. We believe that Mr. Capogrosso's behavior is unstable and hereby state that he has gotten into confrontations with many of us in the past years. These confrontations have been escalating to the point of where a physical confrontation has nearly ensued between him and a Brooklyn South employee on January 5, 2011 after close of business. We request that Mr. Capogrosso's behavior be dealt with and that the management of this agency alleviates this threat to our physical safety.

| | |
|---|---|
| *(signature)* | |
| *(signature)* | |
| *(signature)* | |
| *(signature)* | |
| *(signature)* | |
| Lucy Cali | |
| Marisol Cervoni | |
| *(signature)* | |
| Kimberly Rivers | |
| M. Godfrey | |
| *(signature)* | |
| Roy Tucan | |
| Geri Piparo | |
| *(signature)* | |
| *(signature)* | |
| *(signature)* | |
| Elias *(signature)* | |
| Wanda — *(signature)* | |

\* was signed by all 3 supervisors, 1 Judge, and 14 out of 17 clerks. The 3 clerks that didn't sign was ...

**EXHIBIT 7**

I am writing in regards to Mario Capogrosso. On Dec 21, 2011, I was sitting on one of the benches in the attorney's room at the Traffic Violations Bureau at the DMV in Coney Island, Brooklyn. Mr. Capogrosso walked in and went to reach for his briefcase which was lying on the floor next to me. Mr. Capogrosso then said "excuse me" so I could move over so he could get to his briefcase. He already had plenty of room but regardless I shifted my body so he would have even more room to reach for his belongings. He said excuse me a second time as if to tell me I should move over more and that he needed more space even though the bag was next to me and I was not in any way blocking access. Frustrated I told him that he had enough room. Mr. Capogrosso then lashed out on me and said he was being nice by saying excuse me and that next time he would simply "hit me" with his briefcase and not say anything. He then proceeded to tell me that next time I see him I "better get out of his way." I ignored him and went on with my work. Moments later he comes in to the room again still frustrated from the first episode. At this time there were three other attorneys in the room. Mr. Capogrosso took a seat across from me and began to complain how I did not give him enough room when he said excuse me. I continued to ignore him and go on with my work. Eager to show how angry he really was, he took his coffee cup which still had some coffee inside and threw it in my direction toward the garbage can that was next to me. The cup came very close to me and did not even land inside the garbage. I complained to Mr. Capogrosso that this was not civilized behavior and I did nothing to warrant such hostility. Enraged Mr. Capogrosso went on a rant on how I was a "jew fucking cunt" a phrase which he repeated about six or seven times. He went on to say how this place was "run by jews." When I protested to how he could use such language, he stated "what do you care, just call me a fucking Italian ginny." I then told Mr. Capogrosso that he was an anti-Semite and he did not belong in the location.

Yaakov Brody

**EXHIBIT 8**

There were four attorneys sitting in the room when Mario Capagrosso entered: Sadiq Tahir, Yakov Brody, Michael Beer, and myself.

The room is very small; lawyers generally show each other courtesy upon entering or leaving. The room has to accommodate up to a dozen attorneys, their briefcases and overcoats, and the occasional client, so the comportment in the room itself is always gentlemanly of necessity.

When Mr. Capagrosso entered he asked Mr. Brody to move so he could sit. Mr. Brody did his best to reasonably comply with this request. The bench contained the belongings of other attorneys and Brody in fact tried to make more room so that Capagrosso could sit. (Besides the fact that upon Capagrosso's entrance there were four adult males there were also briefcases, files, jackets, and bags full of food and various sundries. Brody not only tried to make room where he was sitting; he moved other files and items to make room to accommodate Capagrosso.)

Far from acknowledging Mr. Brody's attempt to show him courtesy Capagrosso grumbled about Mr. Brody's lack of decorum and began to berate Brody. This was both puzzling and unreasonable because it seemed that Brody was, in fact, making every attempt to accommodate Capagrosso.

Capagrosso then began to inveigh against Brody in vituperative terms as his temper continued to rise beyond all reason given the fact Brody was extending courtesy to him, by now, under duress. Capagrosso's anger escalated unreasonably to the point his remarks became intensely personal, directed at Brody, his person, and his culture, his ethnicity, and his very humanity; the tone quickly approached the intensity of "fighting words". Nothing Brody did or said during Capagrosso's verbal attack was in any way provocative or confrontational. Everyone in the room except Capagrosso seemed to understand he was losing self-control for no reason.

Mr. Brody, upon being inveighed against for no other reason that Capagrosso's own foul mood, which had escalated to a viciousness and *ad hominem* nature, did speak out strongly when Capagrosso referred to him as a "fucking Jew cunt". Michael Beer and Brody both spoke up to demand that Capagrosso refrain from using provocative and hate filled speech directed at Brody's culture and religion. Beer told him flatly that he had crossed a line of decency, and that it wasn't the first time he had done so. Capagrosso by this time was completely out of control, and responded that he had every right to use such language. He expressed the belief that the DMV was in fact run by "fucking Jew cunts." He also went so far as to invite Brody and Beer to refer to him by a slur-adjective aimed at his *own* ethnicity. Neither indulged him his request.

During his angry tirade Mr. Capagrosso also threw a coffee cup he held in his hand across the space in which Brody seat, which may or may not have spattered Brody with the remnants of the coffee's cup. The hate speech, the demeanor, the verbal ejaculations were all, it seemed to me, attempts to humiliate and intimidate Mr. Brody, who had done absolutely nothing more than to try to make room for Capagrosso in a room that is, under the best of circumstances, only large enough to accommodate two or three people.   *Richard F. Maher*

**EXHIBIT 9**

This is in reffence to the incident happened on Dec. 20, 11. Mr. Yaakov Brody was sitting on the bench in Lawyers room. Mr Copogrosso walked in the room and said "excuse me". Mr. Brody moved to the side so that Mr Copogrosso could reach to his bag lying on the floor. He was looking so angry that he again said "excuse me" in a loud voice. Mr Brody said you have enough room, why are you so rude. Mr Copogrosso got so upset that he started shouting against Jews. Mr. Beer who also sitting in the room asked Mr. Copogrosso that it is enough you can't curse Jows Mr Copogrosso said you can call time "fucking Italian ginny" Mr. Brody said that you are anti-semite you don't biling to this place. Mr. Brody shouted that stop it in the meantime Ms Danial came in the room and tried to cool down the situation.

Little later Mr. Meyers came in the room and asked Mr. Copogrosso that he should apology for his remarks, he then tried to hit Mr Meyers. I don't know if he wanted to hit Mr Meyers or give some massage to other people. Mr Copogrosso said to Mr Meyers that I will send you to the hospital. Mr. Meyers said I will not report against you, I will sue you and get every peny you have. Mr. Copogrosso went out of the room and started hitting the wall and steel guards.

M. Sadiq Tahir

**EXHIBIT 10**

Phone (718) 996-4705    Cell (347) 733-6447

# Jeffrey A. Meyers Attorney at Law

8855  Bay Parkway, Suit 9E
Brooklyn, NY. 11214

December 23rd, 2011

In the A.M of the day of December 21st , 2011, I overheard a loud commotion which I was told resulted in a tirade of anti-Semitic slurs shouted by Mr. Mario Capogrosso.  I later implored Mr. Capogrosso to apologize and and to make peace with his fellow attorneys, but to no avail, his conduct the rest of the day was one of abrasive incoherent loud mutterings in which he smashed his fist against concrete walls and steel beans that are situated outside the DMV hearing rooms, coupled with more anti- Semitic comments, he kept saying "everyone here wants to fight me".

At about 2 o'clock that day I was sitting in the lawyers room across from Mr. Capogrosso  not engaging in any conversation with him when he suddenly became enraged and lunged at me with his fists with great speed and then  smacked his fists against his other hand in a marshal arts form coming within 12 inches of my face. Claiming "I could put you in the hospital with just one punch, i could hit hard objects with my fists without hurting my hands. His eyes were filed  with mindless rage. I loudly exclaimed as his fists flew close at various times" stop Mario, its me Jeffrey I'm your friend" I'll have to sue you if you put me in the hospital. "He kept repeating the phrase " you people, you people".He later told me that he envisioned all of us (Jews) and didn't mean to single me out during his assault on me. I didn't report the incident immediately until I was  called in to the office after an eye witness attorney reported it first and I was asked to verify it.

Jeffrey A. Meyers

**EXHIBIT 11**



## STATE OF NEW YORK
## DEPARTMENT OF MOTOR VEHICLES

6 EMPIRE STATE PLAZA, ALBANY, NY 12228

BARBARA J. FIALA
Commissioner

NEAL W. SCHOEN
Deputy Commissioner and Counsel

IDA L. TRASCHEN
First Assistant Counsel
Legal Bureau

February 8, 2012

Mr. Chris McDonough, Esq.
McDonough & McDonough LLP
401 Franklin Avenue, Suite 210
Garden City, New York 11530

Re: Mario Capogrosso, Esq.

Dear Mr. McDonough:

Your letter of January 25, 2012 to Commissioner Fiala, concerning Mr. Capogrosso, has been referred to me for a response.

As the summary of events below documents, the decision to ban Mr. Capogrosso from appearing at any of our Traffic Violations Bureau ("TVB") offices was neither capricious nor arbitrary, but rather, was made in the best interests of both the agency and motorists and attorneys appearing at the TVBs.

On January 6, 2011, Supervising ALJ Vahdat received a petition signed by eighteen employees of Brooklyn South TVB, asking her to address Mr. Capogrosso's behavior. The employees stated that Mr. Capogrosso's presence on the premises of Brooklyn South TVB constituted a threat to their physical safety. They explained that Mr. Capogrosso's behavior was unstable and that he had confrontations with many TVB employees during the previous year. One incident nearly escalated to a physical altercation between Mr. Capogrosso and a TVB employee whom Mr. Capogrosso had threatened.

On January 10, 2011, Supervising ALJ Vahdat visited the Brooklyn South TVB to discuss this situation with Senior ALJ Gelbstein. He expressed concern about Mr. Capogrosso's behavior over the past year. Senior ALJ Gelbstein had previously notified the Division of Field Investigation about Mr. Capogrosso's behavior. In addition, Senior ALJ Gelbstein had a letter of complaint from George Han (a clerical employee) and a letter of complaint from an attorney whose assistant had been pushed by Mr. Capogrosso. Senior ALJ Gelbstein stated that he had spoken to Mr. Capogrosso on many occasions and asked him to exercise a calmer demeanor when dealing with the staff, other attorneys practicing at TVB and his own clients. Senior ALJ Gelbstein concluded that his many conversations with Mr. Capogrosso had not resulted in a change in Mr. Capogrosso's behavior and he continued to be concerned for his staff's safety.

On that day, Supervising ALJ Vahdat also interviewed five TVB employees who expressed deep concern for their safety when dealing with Mr. Capogrosso. One employee stated, "I can no longer interact with Mr. Capogrosso at the service counter because I fear for my safety.....he even went so far as to assault a female assistant who works for another lawyer". On that day, Supervising ALJ Vahdat also spoke with three attorneys who shared the staff's concerns for the safety of all employees and attorneys due to Mr. Capogrosso's behavior.

Following these conversations, Supervising ALJ Vahdat and Senior ALJ Gelbstein spoke to Mr. Capogrosso concerning his behavior. Mr. Capogrosso admitted that, "I sometimes lose my temper and need to blow off steam". Supervising ALJ Vahdat and Senior ALJ Gelbstein warned Mr. Capogrosso that

Mr. Chris McDonough, Esq.
Page 2
8 February 2012

he must conduct himself in a professional manner; otherwise he would not be allowed to practice at TVB. Mr. Capogrosso agreed to calm down and stop his abusive behavior. When Supervising ALJ Vahdat explained to him that if his behavior did not improve she would have to report him to the Grievance Committee, he stated that, "If I have any more altercations with anyone here I will just stop coming here myself".

On December 22, 2011, Supervising ALJ Vahdat received an e-mail from Danielle Calvo, SMVRI at Brooklyn South TVB, informing her that Mr. Capogrosso was screaming in the attorney's room and shouting religious slurs at attorneys of the Jewish faith. Ms. Calvo had asked all the other attorneys to step away from Mr. Capogrosso and leave him to himself. Half an hour later, Ms. Calvo called Supervising ALJ Vahdat and informed her that Mr. Capogrosso had thrown his coffee cup (still half full) at one of the other attorneys and when a third attorney had tried to calm down Mr. Capogrosso, he had thrown a punch that had missed the third attorney by about an inch. Supervising ALJ Vahdat asked Ms. Calvo to escort Mr. Capogrosso out of the building and tell him not to come back until the next day. That same day three attorneys who had witnessed this altercation called Supervising ALJ Vahdat about this incident. Their recitation of the facts matched Ms. Calvo's.

The next morning, the above mentioned three attorneys met with Supervising ALJ Vahdat and Senior ALJ Gelbstein and submitted affidavits elucidating the facts. In addition, TVB staff, the police room staff and other attorneys notified Supervising ALJ Vahdat that Mr. Capogrosso regularly punches the walls and steel poles of the TVB office with his fists. The sounds from these punches at times are so loud that the police room employees are startled and run out of the room to see what has happened. Mr. Capogrosso admitted to this odd behavior and stated, "I do it to let off steam, otherwise I could hurt someone". Supervising ALJ Vahdat observed that Mr. Capogrosso's knuckles were all bruised, black and blue. Mr. Capogrosso's behavior is clearly in contravention of 15 NYCRR 124.2, which provides, in part:

(a) The motorist may be represented by an attorney or, in the administrative law judge's discretion, by any other person the motorist chooses. Any person representing the motorist must conform to the standards of conduct required of attorneys appearing before State courts, and failure to conform to these standards will be grounds for declining to permit his or her continued appearance in the proceeding. (Emphasis added.)

Based upon this regulation and the fact that Mr. Capogrosso's behavior is disruptive of the TVB process and induces fear in its employees, attorneys and motorists who work at and use the TVB, a decision was made to ban Mr. Capogrosso from all TVB offices for an indeterminate time period.

It is the policy of the New York State Department of Motor Vehicles to preserve the safety and well-being of its employees and visitors. DMV will strive to ensure that its workplace is free from violence, threats of violence, harassment and intimidation. Until such time that it can be determined that Mr. Capogrosso is no longer a threat to the safety and well-being of TVB employees and visitors, he will not be allowed to practice at any of Department of Motor Vehicles' TVB offices.

I trust this information assists you.

Very truly yours,

*Ida L. Traschen*

Ida L. Traschen
First Assistant Counsel

ILT/mjs

**EXHIBIT 12**

To: Mr. Helbstein (Head Judge)

On October 29, 2014, I was the clerk at counter #5. On line #1 the first person on line was a young male motorist and the second in line was the lawyer capagrosso. While on line, capagrosso was observed talking to the male motorist. I called next on line, to the young male motorist and he immediately prompted me to look at the line. He then stated "you see that man who was behind me on line", (which was capagrosso), he told me to give you an attitude. The motorist also stated that "I told the guy (which was capagrosso), that I'm not here to give her or any other person an attitude or problem. If you want that done, do it yourself." I now called next on line and capagrosso approached my window and I asked him why did he try to encourage the motorist before him to give me an attitude. His response was, (while smiling and snidering) "I wanted to get a reaction out of you." I told him that wasn't nice of you to go around trying to encourage others to cause problems with the clerks for no reason at all. He again, just laughed and went on his way. Then I went to report this situation to my supervisor Danielle Calvo.

Yours Truly
REDACTED

**EXHIBIT 13**

I [REDACTED] was treated wrongly by, Esq, Mario Capacuso on 2/5/15.

Mario Capacuso was taking on a case for me [REDACTED] and didn't live up to his responsibilty.

I [REDACTED] was threatened by mario capacuso and told to go find another lawyer because he messed up, at that time I told him I would like another lawyer and my money back and he told me to go fuck my self and that we can take it outside. I [REDACTED] refused to fight with mario capacuso and went to speak with the DMV superviser.

Lic# [REDACTED] [REDACTED]



**EXHIBIT 14**

February 3

At 9:15 Am.
Mario Capogrosso
Deliberately walked
Into me. I asked
But him why - And
He said that he
Intended to reach
the Court Board.
I reported the
Incident to my
Supervisors.

Unsigned Note of David Smart

**EXHIBIT 15**

On Thursday, February 5, 2015, I was sitting at information station 7. At about 10 am I could hear arguing between Mario Capogrossa & a male motorist who was later identified as [REDACTED] At this point they had been by the some what sectioned off seating area on the opposite side of the wall to ~~this~~ information station 1. I wasn't able to see Mr. Capogrossa but Mr. Perez was standing a couple of feet back from that seating area. In a clear & hostile tone, Mr. Capogrossa said to the motorist, to take this outside. Originally the motorist began following, he had even taken off his jacket & swung it onto a stanchion, but only got about halfway before he stopped himself, turned around, picked up his jacket & placed himself on the information line. Mr. Capogrossa did not; he kept walking to the door, when he looked back & saw that Mr. Perez was no longer following him & was now on line 1, Mr. Capogrossa went back to where he originally was, by that seating area. Apparently Mr. Capogrossa once again began trying to antagonize [REDACTED] because [REDACTED] began responding to him. At this point I called next.

When [REDACTED] came to me he handed me his ID and I pulled him up to see what was going on. He had been found guilty on a few tickets on January 21, when he said Mr. Capogrossa represented him, & unfortunately the two weeks given to pay had passed & now [REDACTED] is suspended. I had printed out the bill with the breakdown of the amount owed. He was saying that he wanted to speak to the judge & how it isn't right. [REDACTED] had come out during the commotion & she as well was trying to explain the procedure to him. Meanwhile Mr. Capogrossa had gotten on the information line & [REDACTED] who was at information station 9, had called next & was trying to help him. About this

same time REDACTED had went into the back office to do or check on something. & I remained with the Notarist for a few more minutes before he had taken the information we provided & walked away.

As REDACTED was leaving REDACTED began walking over to me. I was beginning to tell him what had happened while watching REDACTED walk out the door & Mr. Capogrosso walk over to the door. He stood at it for a moment, REDACTED who was standing to his right against the column next to the door closest to the attorney room, said something to him as he stared through the glass & within that moment he proceeded through both sets of doors & outside. REDACTED seeing this, quickly reacted by going towards the doors, but luckily it did not go any further & Mr. Capogrosso came back in.

About 45 mins later REDACTED returned, he was still upset but wanted to pay what he owed, as well as, wanting to better understand the appeal process because he also had a pending suspension put in place by the judge on the day of the hearing. Once again REDACTED came out & we both assisted him. It was during this period that the Notorist wrote his statement on what had occurred.

REDACTED

**EXHIBIT 16**

**Gelbstein, Alan (DMV)**

| | |
|---|---|
| **From:** | REDACTED |
| **Sent:** | Monday, February 09, 2015 10:59 AM |
| **To:** | Gelbstein, Alan (DMV) |
| **Cc:** | REDACTED |
| **Subject:** | Capagroso |

In November when I hung the dockets I would take the paperclip off and leave it on the garbage pail. Mr. Capagroso thought someone was doing this to annoy him. He made a complaint to Judge Gelbstein who called me to find out who was doing this to him. I told Judge Gelbstein that it was me & that I left it for anyone who might want to use it. So I stopped doing it. He then call Judge Vahdat to complain that someone was still putting a paperclip on the garbage pail and leaving an empty coffee cup where he sits. I informed her that it wasn't true.

On November 18 as I was walking through the office Mr. Cappagroso was with a customer and as I passed he said "RE stick it where the sun don't shine". I said excuse me, he said never mind.

I informed Judge Gelbstein & Judge Vahdat again. Judge Gelbstein went out to speak to him. Where he verbally attacked Judge Gelbstein and me, cursing.

I told him just don't speak to me....ever. I won't deal with him or his problems again.

1

**EXHIBIT 17**

**Memo to File:**

| | |
|---|---|
| From: | REDACTED |
| Re: | Mario Capagrosso, Attorney |
| Date: | March 19, 2015 |

I am writing in regards to an incident between myself and Mr. Capagrosso that occurred in the lobby of the New York State Brooklyn South Traffic Violations Bureau ("TVB") around 12 noon on March 13, 2015. This memo is simply to record this incident and other occurences. I am not requesting any action to be taken by the TVB. Given Mr. Capagrosso's documented prior bad acts, however, that resulted in his 6 month suspension from the BS TVB with mandated anger management therapy, the below incident of March 13th and other rather minor incidents directed towards myself and others is troubling for me. These incidents demonstrate his prior pattern of aberrant behavior which begin as small acts that then could escalate to more harassing, intimidating and ultimately violent behavior from Mr. Capagroso.

Since I recently returned to practice at the TVB in September 2014, Mr. Capagrosso has repeatedly said "shit" to me whenever he passed by me. At first I thought it was an offhand comment not directed at me. However, as time passed, he increased the frequency of saying "shit" to me when he passed by me, occurring almost several times daily. Upon the increase of the frequency of these verbal taunts, I noticed that this language was indeed directed at me. Since I had not ever spoken to Mr. Capagrosso because of his prior angry intimating behavior that I witnessed when I practiced from November '07 – September '12, I tried to not say anything or let him know I was rattled by his behavior. I also did not want sink to the same level of vulgarity as he in a public forum. Several lawyers who practice at the TVB do not speak to him. M. Sadiq Tahir is one lawyer who does not engage in any conversation with Mr. Capagrosso; and he also, received the same taunts from Mr. Capagrosso, who also said shit to him regularly during this same period of time. Mr. Capagrosso was always careful to speak to Mr. Tahir and me in a low tone and when others were present.

It saddens me to write this, but March 13th, 2015 was the last straw when Mr. Capagrosso passed by me and said again "shit" to me, and I verbally responded loudly in a barrage of swear words, stating that he was crazy and I was sick of him saying "shit" to me. To which he replied the he was "absolutely" (I imagine he meant crazy.) Fortunately this outburst from me was during a period when no motorists were present. Mr. Capagrosso's further response to me was to shake his shoulders and laugh. He frequently will sit by himself laughing and shaking his shoulders as if he is the only one who gets the "joke." Later, when he saw me approach J. Gelbstein, he told me he never said "shit" to me and he would file a complaint/grievance against me. On March 18, 2015 he walked by me, not addressing me directly, but he said I was a "psycho" and mumbled something else.

To further explain why this incident is troubling for me, I have been practicing traffic law since November 2007 when I began as an associate for REDACTED in the BS TVB. Mr. Capagrosso's intimating and threatening violent behavior towards other lawyers, clients, and Court personnel has

been well documented, including incidents I did not observe.  During that time I witnessed him punching polls, bending over and grabbing his ankles, and walking in a fast threatening manner – just enough to make one move out of the way, but he was careful to not actually hit people.  I could clearly determine that his behavior was unusual, and as such never spoke to him from the first day I arrived when he spoke to me without introducing himself.   This is his manner, to talk as one walks by without ever speaking directly to a person.  Since I steered clear as best I could from Mr. Capagrosso, I never had direct confrontations with Mr. Capagrosso from the period of 11/2007 through 9/12 when I left for a two year period to work for a mortgage lender as a compliance officer.

Upon my return to my law practice at the BS TVB in September 2014, I was informed by attorneys that for the most part Mr. Capagrosso's anger seemed to be under control since his return from his expulsion from the TVB.  However, I still witnessed more bizarre behavior such as an outburst from him directed to a Court Supervisor over paperclips being left on "his" bench; I did not know that benches in a public building were assigned to private attorneys.  I also witnessed a near fight and shouting match between Mr. Capagrosso and his motorist client, where he took his jacket off and was ready to fight the client outside.

It is not my intention to harm another attorney's right to practice in BS TVB; rather I simply have endured this harassing behavior from him daily for the past 6 months and simply want him to stop doing it so that I may not be harmed or hindered in my right to practice here.  I believe my direct verbal and loud language to him on March 13, 2015 that I do not want him saying "shit" to me has brought to light in public that I do not appreciate nor wish this behavior from him to continue.  In short, he was put on notice from me.  Given his past history  and his continued speaking at me and not to me,  I realize that without memorializing this incident, he will continue unfettered in his harassment of me and other attorneys, such as Sadiq Tahir.

Signed by:

REDACTED

_M. Sadiq Tahir, Esq._

Dated: 3/19/15

Dated: 3/19/15

cc: Senior BS TVB J. Gelbstein

**EXHIBIT 18**

May 5, 2015

To Whom It May Concern

On May 5, 2015 at about 11:45 AM I witnessed the lawyer Mario Capogrosso confront Sadiq Tahir, another lawyer. Mr. Tahir was sitting in the lawyer's room when Mr. Capogrosso went in there yelling and cursing in Mr. Tahir's face.  Mr. Tahir remained seated as Mr. Capogrosse continued to scream obscenities and threats. Our customers were upset at the display and work was disrupted as Mr. Capogrosso's tirade played out. Mr. Capogrosse is more often than not a menace to the office staff, customers, as well as the other attorneys who practice in this office.



**EXHIBIT 19**

TO: Judge Golbstein

FROM: <span>REDACTED</span>

DATED: 5/5/15

On May 5, 2015 at approximately 12:05 pm, I arrived at Coney Island TVB for the 1st time that day. I entered the attorney room and encountered Mario Capogrosso sitting alone in the room with an angry look on his face. Upon my passing the threshold of the door of the room and before even attempting to set my files in the room, I was verbally accosted with the demand of "don't touch my fucking stuff, don't touch my fucking stuff". I replied that I had just arrived and had no intention of touching his stuff. He once again angrily demanded. "don't touch my fucking stuff". I repeated that I was not going to, nor do I touch his stuff. He stated that he was going to put a camera in the room to see who touches his stuff. I said "please do and you will see that I do not touch your stuff". He then immediately stated "piece of shit.. piece of shit". (which I have heard him state to others many time in the past). I said "excuse me what did you just say to me", and the response was it did not relate to you I'm angry at a judge. I replied it sounded like you said it to me.

I stepped out of the room and was advise that apparently this issue of don't touch my fucking stuff was an ongoing issue all day. And I witnessed Mario Caopgrosso yelling at Mr. Tahir to not touch his fucking stuff.

A few minutes later I returned to the room and was again alone with Mario Caopgrosso when he starts ranting that that guy (alluding to Judge Gelbstein) threw

out Chuck Willinger and now Chuck Wilinger is dead. How dare he do that and if he (I assume Judge Gelbstein) was a man he would put a gun to his own head.

Thereafter he also began ranting that he should never have plead to the deal, he should have fought these guys. They just gave him a hard time over a cup of fucking coffee.

It appears to me that over the past few weeks Mario Capogrosso has become more aggressive in both his words and demeanor and has been creating an atmosphere of fear and threatening both attorneys and DMV staff,

**EXHIBIT 20**

Dear Sir,

Few weeks ago Attorney, Mario Copogrosso, put his bag on the chair where I regularly sit. REDACTED moved his bag on the bench. A little later he again put his bag on the chair. Mr. Copogrosso & me had a little argument about this issue. I told him that chair is to sit, not for your bag. He tried to provoke me. I think, he thought I am an easy & soft target.

On 5/5/15 I put my bag & files on one corner of the bench as I have been putting my stuff for years. At about 12pm I left the room to use the bathroom, when I came back I saw Mr. Mario moved my bag & files and put his bag instead on the place where I kept my bag. I moved his bag on the other bench. He was looking at me and started shouting at me from outside. He came in the room and yelled at me, "Don't touch my bag!" I told him that you touched my bag and so I put your bag over there. I have nothing to do with your bag. He started yelling at me even louder. I think he wanted to provoke me, but I didn't give him any serious attention & tried to avoid him. He kept yelling at me, in the meantime Ms. Danielle came to the lawyers' room & told him "We don't want to hear it."

Then you came to find out as to what happened. I explained you everything, but he kept interfering during our conversation. You saw his attitude. I don't know as to what he was trying to prove. When you left, he again started shouting and called me "Shit". Then of course I raised my voice too.

After half an hour later I was going to the other side of the building when he passed me and said in a loud voice "Don't touch my stuff again!"

As you know, REDACTED & me complained in writing for his behavior. Whenever he passes me he always said "Shit".

He is more powerful and strong than me and I am afraid that one day he can physically hurt me.

Thank you for your time and assistance on this matter.

Very truly yours,

M. Sadiq Tahir        5/5/15
Attorney At Law

**EXHIBIT 21**

04/15/2015  14:53

RECEIVED 05/05/2015 14:45   17186363943   TVB ADMINISTRATION
1718-266-7478   BROOKLYN SOUTH   PAGE  02/04

NYS84 (12/11)

**New York State Department of Motor Vehicles**
**DIVISION OF LABOR RELATIONS**
**REPORT OF WORKPLACE VIOLENCE INCIDENT**

Please fill out the form as accurately as possible and fax it to the Division of Field
Investigation at (518) 474-7543 **AND** Labor Relations at (518) 474-8423. If the
incident is a written threat, please include a copy of the letter with this report.
Originals should be maintained in a workplace violence report folder at the primary
office that the reporter works in.

| OFFICE USE ONLY | |
|---|---|
| FILE NUMBER: | |
| Received: | |
| X RE: | |
| X RE: | |
| PRIVACY CONCERN: ☐ YES  ☐ NO. | |

**NAME OF INDIVIDUAL FILING REPORT**

| Name | Title | Office Location | Phone Number |
|---|---|---|---|
| Danielle Calvo | Supervisor Gr 17 | Brooklyn South TVB | REDACTED |

**INCIDENT REPORTED TO**

| Date Reported | Person Reported To | Title |
|---|---|---|
| 5/5/15 | Alan Gelbstein | Senior ALJ |

**INCIDENT**

| Date | Time | | Location of Occurrence |
|---|---|---|---|
| 5/5/15 | 11:45 | ☑AM  ☐PM | Lawyer's room |

DFI Contacted? ☐Yes  ☑No   DFI Contact Name

**EMPLOYEES INVOLVED**

| Name | Title |
|---|---|
| Alan Gelbstein | Senior ALJ |
| Danielle Calvo | Supervisor Grade 17 |
| Name | Title |

**OUTSIDE INDIVIDUALS INVOLVED**

| Name | Sex | Phone | Client ID # |
|---|---|---|---|
| Mario H.Capogrosso (attorney) | ☑Male ☐Female | REDACTED | REDACTED |
| Address: REDACTED | City | State | Zip Code |
| Name | Sex ☑Male ☐Female | Phone REDACTED | Client ID # REDACTED |
| M. Sadiq Tahir (attorney) | City REDACTE | State REDA | Zip Code REDACT |
| Address REDACTED | Sex ☐Male ☐Female | Phone | Client ID # |
| Name | City | State | Zip Code |
| Address | | | |

**WITNESSES**

| Name | Sex | Phone | |
|---|---|---|---|
| Kimberly Rivers (MVR) | ☐Male ☑Female | REDACTED | |
| Address REDACTED | City REDACT | State REDA | Zip Code REDAC |
| Name | Sex ☐Male ☑Female | Phone REDACTED | |
| Marisol Cervoni | City REDACTE | State RE | Zip Code REDAC |
| Address REDACTED | | | |
| Name | Sex ☐Male ☐Female | Phone | |
| Address | City | State | Zip Code |

Continue on other side

Page 1 of

RECEIVED  05/05/2015 14:46   17186363943          IVB ADMINISTRATION
04/15/2015  14:53   1718-266-7478          BROOKLYN SOUTH          PAGE  03/04

**Description of Events Leading to the Incident and What Occured:**

I went to the lawyer's room when I heard Mr.Capogrosso screaming "don't touch my stuff".  I
told him that he needed to stop yelling, that we could not have this here and at that time
after repeating myself, Mr.Capogrosso stopped.  This caused a disruption of the office to both
the motorists and the staff.  I then went to report what happened to Judge Gelbstein and then
we both went back to the lawyer's room to speak to Mr.Capogrosso and Mr.Tahir.  Mr.Capogrosso
started raising his voice that he does not want anyone touching his belongings and kept
insisting we watch our video tapes.  Mr.Capogrosso alleges that Mr.Tahir touched his bag.

**Nature and Extent of Injuries:**

**Additional Comments:**

_Danielle Calvo_
Name of Individual Filing Report

_[signature]_
Signature of Individual Filing Report

_5/5/15_
Date

_JEAN FLANAGAN_
Name of Supervisor

_[signature]_
Signature of Supervisor

_5/5/15_
Date

Page 2 of

MV-084 (12/11)

**EXHIBIT 22**

MV-984 (12/11)

New York State Department of Motor Vehicles
DIVISION OF LABOR RELATIONS
**REPORT OF WORKPLACE VIOLENCE INCIDENT**

Please fill out the form as accurately as possible and fax it to the Division of Field Investigation at (518) 474-7543 **AND** Labor Relations at (518) 474-8423. If the incident is a written threat, please include a copy of the letter with this report. Originals should be maintained in a workplace violence report folder at the primary office that the reporter works in.

OFFICE USE ONLY

FILE NUMBER: _____

Received: _____

X RE: _____

X RE: _____

PRIVACY CONCERN: ☐ YES   ☐ NO

### NAME OF INDIVIDUAL FILING REPORT

| Name | Title | Office Location | Phone Number |
|---|---|---|---|
| David Smart | Guard-Summit | Brooklyn South TVB | REDACTED |

### INCIDENT REPORTED TO

| Date Reported | Person Reported To | Title |
|---|---|---|
| 5/11/15 | Danielle Calvo | Supervisor Grade 17 |

### INCIDENT

| Date | Time | | Location of Occurrence |
|---|---|---|---|
| 5/11/15 | 8:50 | ☑ AM ☐ PM | Brooklyn South TVB near line 1 |

DFI Contacted? ☐ Yes ☑ No   DFI Contact Name

### EMPLOYEES INVOLVED

| Name | Title |
|---|---|
| David Smart | Security Guard-Summit Security |
| Name | Title |
| Name | Title |

### OUTSIDE INDIVIDUALS INVOLVED

| Name | Sex | Phone | Client ID # |
|---|---|---|---|
| Mario H. Capogrosso | ☑ Male ☐ Female | REDACTED | |
| Address | City | REDACTED | State | Zip Code |
| Name | Sex ☐ Male ☐ Female | Phone | Client ID # |
| Address | City | | State | Zip Code |
| Name | Sex ☐ Male ☐ Female | Phone | Client ID # |
| Address | City | | State | Zip Code |

### WITNESSES

| Name | Sex | Phone | |
|---|---|---|---|
| George Han-MVR | ☑ Male ☐ Female | REDACTED | |
| Address REDACTED | City | REDACTED | State | Zip Code |
| Anthony Adinolfi, ESQ | ☑ Male ☐ Female | REDACTED | |
| Address REDACTED | City | REDACTED | State | Zip Code |
| Name | ☐ Male ☐ Female | Phone | |
| Address | City | | State | Zip Code |

Continue on other side

Page 1 of 2

**Description of Events Leading to the Incident and What Occured:**

Near line 1 Mr. Capogrosso said to security guard David Smart "Are you looking at me?".  David replied "You are looking at me".  Mr.Capogrosso said "back up, back up", he then pushed David in his chest.

**Nature and Extent of Injuries:**

**Additional Comments:**

911 was called and two officers responded.  David went up to the 60pct with them to make a report.  They said that they could not arrest Mr.Capogrosso because he pushed David with an open hand not a closed fist.  I was told by Judge Gelbstein to go with officers from the police room, to tell Mr.Capogrosso that he must leave the building, and to give him legal's phone number for any further details.  I did that and he left the building.

Danielle Calvo
_____
Name of Individual Filing Report

_____
Name of Supervisor

_____
Signature of Individual Filing Report

_____
Signature of Supervisor

5/11/15
_____
Date

_____
Date

MV-984 (12/11)

**EXHIBIT 23**



May 11, 2015

Re:    TVB Incident, Brooklyn South

To Whom It May Concern:

On Monday, May 11, 2015, I, REDACTED was standing outside of Hearing Room 4 in Brooklyn South Traffic Violations Bureau in Coney Island, New York, at approximately 9:00 a.m. when Attorney Mario Cappagrosso yelled at and pushed the Security Guard, David, with his right hand to David's chest/ shoulder area.

David was knocked back into a pole that divides the lanes of the line for the service counter. The push also knocked the coat out of David's hand(s).

The attack seemed to be unsolicited and David did not defend himself or push Mr. Capagrosso back at all.  David walked away and proceeded to contact the head Supervisor who notified the 60th Precinct.

If you have any questions or concerns please contact me.

Thank you for your attention to this matter.

Respectfully Submitted,



**EXHIBIT 24**

MAY 11, 2015

I WAS LEAVING ROOM 5 TO PHOTOCOPY SOMETHING FOR MY
JUDGE. AS I WAS PASSING THE MOTOREST I SAW MR CAPOGROSSO SHOVED SHOVE
THE SECURITY GUARD. DAVID WAS PUSHED BACK. IT WAS A HAND PUSH. I DO
NOT KNOW WHAT OCCURED BEFORE THE PUSH.

REDACTED

**EXHIBIT 25**

INCIDENT INFORMATION SLIP
PD 130-154 (Rev. 11-10) Pct (DARU)
KDP41.0793 - 11.353191

Welcome to __60th PRECINCT__
(Command)

We hope that your business with us was handled satisfactorily. Your particular matter has been assigned the following number(s):

Complaint Report No.: _____

Accident Report No.: _____

Auto Report No.: _____

Reported to: __PO Lori Green__
(Name)

(Rank): __2855 W 8st__

Date of Occurrence: __5/11/1__

Local. of Occurrence: _____

Crime: __Harassment__

Date: __5/11/15__

(718) 946 - 3311
(Telephone Number)

2951 WEST 8 STREET BKLYN NY 11224
(Address)

Time: __0855__

Please keep this report should you have to refer to this matter in the future. If you need any further assistance feel free to contact us at telephone number (718) 946 3311 Please let us know if you have any suggestions on how we can better serve you. As you may already know, we will provide you with a crime prevention survey of your residence or business. Please ask for more information on this and other crime prevention initiatives. Our goal is to make you an your property safe.

COURTESY * PROFESSIONALISM * RESPECT

REMEMBER : CALL "911" FOR EMERGENCIES ONLY!!!!

**EXHIBIT 26**



**NEW YORK STATE OF OPPORTUNITY.** | **Department of Motor Vehicles**

# MEMORANDUM

DATE:     May 27, 2015

TO:       Jean Flanagan and Vincent Palmieri

FROM:     Danielle Calvo

RE:       May 2015 Monthly Report

OFFICE:   Brooklyn South TVB

**Training**

REDACTED

**Staff**

REDACTED

**Workplace Violence**

On 5/5 two of the attorneys (Mr.Capagrosso and Mr.Tahir) had an altercation and a workplace violence report was submitted.  On 5/11 Mr.Capogrosso pushed our security guard David Smart and another workplace violence report was submitted.  Mr. Capogrosso was asked to leave the building that day and since then has not been permitted to enter any of the TVB offices.

**www.dmv.ny.gov**

**EXHIBIT 27**

June 2015

Re: Mario Cappogrosso, Esq

To whom this concerns:

I hate to speak against another person when doing so could jeopardize their livlihood, but Mario Cappogrosso, Esq., a practicing attorney at the Coney Island TVB, has become such a disturbance at the TVB, that I am compelled to do just that.

Since becoming an ALJ at Coney Island in 2/2014, I've known Mr. Cappogrosso to be notorious for his badgering of witnesses during hearings, as well as his undue penchant to make frivolous/unsupported motions to dismiss. This conduct was tolerated notwithstanding that it oftentimes went beyond what could be considered permissible advocacy.

Apart from his notoriety for being an obnoxious litigator, more recently, i.e. since Spring 2015, he has become a frightening & menacing litigator. Both his appearance &

previously well-kempt, he now comes to court unshaven and with sunken eyes. I believe he came to court with a black eye on one occasion. He has also become more argumentative in court so that his cross-examinations have had to be curtailed so as not to waste time on irrelevant lines of questioning. On one occasion, I had to stop court because he was yelling in the hallway to the point that court could not proceed in the midst of his loud tirade. I've never had to stop court before over the course of 1000's of hearings.

I hate to admit it, and I cannot be sure my fears are warranted, but I am fearful that he is capable of violence, & I am even fearful that it could be directed at me.

Feel free to contact me with any questions

Sincerely

REDACTED

**EXHIBIT 28**

TO JUDGE ALAN GLEBSTEIN
FROM ROY TUCCI, CLERK.

INCIDENT 3/3/11 9:10 RM 3
MARIO CAPPOGROSSO ATTY. JUDGE DREW TILLMAN
CLERK ROY TUCCI

AT 9:10 AM MR CAPPOGROSSO PRESENTED TICKET FOR RAKESH
K. SHARMA, TICKET MARKED READY WITH OFFICE McGRATH.
AT 9:25 CASES PENDING, CALLED MR CAPOGROSSO AND
MR GERBASI ATTORNYS WERE NOTIFIED THAT THE
HEARINGS WAS READY. MR GERBASI WAS IN A HEARING IN RM
4, AND INDICATED HE WOULD BE IN RM. 3 AS SOON AS
POSSIBLE 9:30 AM MR GERBASI HEARING BEGAN. I WENT
TO RM. 6 AND ADVISED WANDA ALFORD, CLERK AND
MR CAPPOGROSSO THAT HIS CASE IS READY. MR CAPPOGROSSO
JUST STARED AND DID NOT SAY ANYTHING. AT 9:45 PM I
CALLED TRAFFIC VIOLATION MANAGMENT AND DETAILED THE PROBLEM
AT 9:52 AN MR CAPPOGROSSO CAME INTO THE RM WITH
ANOTHER CASE WITH OFFICER MALONE. AND SAID WE
HAVE TO DO THIS CASE. MR CAPPOGROSSO WAS INFORMED SINCE
9:25 AM HE WAS PERSONALLY CALLED THREE TIMES AND
DID NOT HAVE THE TIME TO ADVISE US, WHAT WAS
THE DELAY. MR CAPPOGROSSO ONLY RESPONSE
WAS A BLANK STARE. AND, IF WE HAVE
A PROBLEM, INFORM THE SENIOR JUDGE.
MR CAPPOGROSSO ATTITUDE IS THAT HE WILL
NOT TAKE ANY DIRECTION FROM A CLERK,
JUDGE OR SENIOR JUDGE.

Sincerely,
Roy Tucci

# EXHIBIT B



### STATE OF NEW YORK
### OFFICE OF THE ATTORNEY GENERAL

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL

KENT T. STAUFFER
EXECUTIVE DEPUTY ATTORNEY GENERAL
DIVISION OF STATE COUNSEL

LISA R. DELL
ASSISTANT ATTORNEY GENERAL IN CHARGE
LITIGATION BUREAU

By E-Mail and First Class Mail                          June 20, 2012
Jacqueline A. Rappel, Esq.
McDonough & McDonough, LLP
401 Franklin Avenue, Suite 210
Garden City, New York  11530

    Re:   Capogrosso v. State Dep't of Motor Vehicles, Index No. 7738/2012

Dear Jackie:

    We write on behalf of the New York State Department of Motor Vehicles ("DMV") in response to your e-mail dated June 15, 2012, with attached certification of Dr. John T. McCann, and to advise you that Mr. Capogrosso may appear on behalf of his clients at Traffic Violation Bureau ("TVB") offices as of June 27, 2012.

    Please be advised that if and when Mr. Capogrosso appears at a TVB office, he must strictly adhere to the standards of conduct required of attorneys appearing before State courts. Threatening conduct by Mr. Capogrosso, verbal threats of physical violence, and verbal abuse including the use of ethnic slurs will not be tolerated. DMV reserves all rights to respond to future misconduct including, if warranted, by immediately and permanently barring Mr. Capogrosso from appearing on behalf of DMV licensees at TVB offices.

          Very truly yours,

          SERWAT FAROOQ
          Assistant Attorney General

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
_____

In the Matter of an Article 78 Proceeding                    Index No. 7738/12

MARIO CAPOGROSSO,
                                                             Hon. Bernadette Bayne
                                    Petitioner,              Part 18

                        -against-                            **ALJ AFFIRMATION**

NEW YORK STATE DEPARTMENT OF MOTOR
VEHICLES,

                                    Respondent.
_____

ALAN D. GELBSTEIN, hereby affirms, pursuant to CPLR 2106(e), as follows:

1.      I am the Senior Administrative Law Judge ("ALJ") at the Brooklyn South Traffic

Violations Bureau ("TVB") of the New York State Department of Motor Vehicles (the "DMV").

As Senior ALJ, my responsibilities include managing the Brooklyn South TVB office,

supervising the Administrative Law Judges and ensuring proper communication with other

offices and bureaus of the DMV, as well as with the police and the local chapter of the New

York State Bar Association.  I submit this affirmation in opposition to the motion by petitioner

Mario Capogrosso, brought by order to show cause signed by this Court (Sherman, J.) on April

12, 2012, seeking a preliminary injunction enjoining the DMV from enforcing its prohibition of

petitioner from appearing at any TVB office, and in support of the DMV's cross-motion to

dismiss the petition as nonjusticiable. This affirmation is based on personal knowledge and

conversations with DMV employees, DMV licensees, attorneys appearing in the Brooklyn South

TVB and petitioner, as well as my review of the legal files and records maintained by the DMV.

2.      On numerous occasions, I have personally warned petitioner that his threatening

behavior is unacceptable.  Despite repeated warnings, petitioner's conduct has not improved.

3.      As demonstrated below, in light of petitioner's pattern of disruptive and

threatening conduct including an incident on December 21, 2011, and given the DMV's

jurisdiction and duty to ensure a safe workplace and to prevent interference with the ordinary use

of and business at the TVB offices, the DMV's decision prohibiting petitioner from appearing at

TVB offices is both rational and nonjusticiable.

### Background

4.      Petitioner has been appearing at the Brooklyn South TVB office on an almost

daily basis for the last several years. Petitioner was involved in a heated dispute with another

attorney that nearly turned into a physical altercation the very first day he appeared at the TVB.

5.      Over the course of the time that petitioner has appeared at the Brooklyn South

TVB, I have received numerous complaints regarding his behavior. Copies of written

complaints made against petitioner including descriptions of the incidents that occurred on

December 21, 2011 are annexed to the affirmation of Ida L. Traschen dated April 11, 2012

("Traschen Aff."), submitted in opposition to petitioner's application for temporary restraining

order, as Exhibit B, and are incorporated by reference herein.

6.      I have personally observed petitioner harass TVB employees, attorneys appearing

at the TVB and even his own clients. Petitioner often uses anti-Semitic language when referring

or speaking to Jewish attorneys. Petitioner has called me a "beanie wearing kike."

7.      · On numerous occasions, I have warned petitioner to exercise a calmer demeanor

when interacting with TVB employees, other attorneys and his own clients. However, despite

repeated warnings, petitioner's threatening, volatile conduct has not improved.

8.      At one point, I notified the DMV's Division of Field Investigation of petitioner's

pattern of threatening behavior.

9.      Petitioner has a habit of punching the walls and steel beams at the TVB. He often

2

states that this habit is a result of his being a boxer and having a boxer's attitude. Petitioner also frequently tells people at the TVB office that he practices a lethal form of martial arts, which allows him to punch walls and metal objects without hurting himself.

### The Warning Given to Petitioner in January 2011

10.     In January 2011, eighteen employees of the Brooklyn South TVB office sent a petition to Supervising ALJ Bushra Vahdat, who is responsible for supervising the Senior ALJs at each TVB office. The TVB employees' petition stated that petitioner's presence at the Brooklyn South TVB constitutes a threat to their physical safety. As a result, Supervising ALJ Vahdat made a visit to the Brooklyn South TVB to discuss this matter with me and to interview TVB employees.

11.     Thereafter, Supervising ALJ Vahdat and I spoke to petitioner about his disruptive and threatening conduct, and warned him that if he could not conduct himself in a professional manner, he would not be allowed to appear on behalf of licensees at the TVB. During this conversation, petitioner admitted that he sometimes loses his temper, agreed to calm down, and told us that he would voluntarily stop appearing at the TVB if he had another altercation with anyone at the TVB.

### The Incident on December 21, 2011 and DMV's Prohibition of Petitioner from Appearing at TVB Offices

12.     On December 21, 2011, petitioner was involved in a verbal altercation with an attorney at the Brooklyn South TVB, and later that same day, he threw a punch into the air in the presence of another attorney. In the Petition, petitioner admits to this conduct, see Petition ¶¶ 12, 14 and Ex. A.

13.     Ms. Danielle Calvo, an employee of the Brooklyn South TVB, contacted Supervising ALJ Vahdat regarding those incidents. Upon Supervising ALJ Vahdat's direction,

3

11/04/2009  04:42   7182668828          ALAN_GELBSTEIN_         PAGE  01

Ms. Calvo advised petitioner that his remaining cases for that day were adjourned and that he must leave the building immediately.

14.     On the next day, December 22, 2011, Supervising ALJ Vahdat and I interviewed four attorneys who were present at the Brooklyn South TVB office regarding the previous day's incidents. Those four attorneys also submitted written statements. See Traschen Aff. ¶ 5 and Ex. B.

15.     Later that same day, on December 22, 2011, Supervising ALJ Vahdat and I met with petitioner in my office, in the presence of two police officers, to obtain his version of the incidents. Petitioner claimed that everyone at the Brooklyn South TVB hates him because he is not Jewish, and admitted that he had shouted anti-Semitic statements at Mr. Brody and punched "the air in front of Mr. Meyers' face" the day in question. During this conversation, I observed that petitioner lacked remorse about his conduct, and that his knuckles were severely bruised.

16.     Supervising ALJ Vahdat and I then directed petitioner to leave the TVB, and notified him that he is prohibited from appearing before any TVB for an indeterminate period, based on the fact that despite repeated warnings, petitioner's presence at the TVB has constituted a continuing threat to the safety and well-being of other individuals present at the TVB.

17.     DMV reserves the right to report petitioner to the New York Bar Association's Grievance Committee.

Dated: Brooklyn, New York
     May 3, 2012

ALAN D. GELBSTEIN
Senior Administrative Law Judge

4

# EXHIBIT D

Law Office of Mario H. Capogrosso, Esq.

245 Saw Mill River Road, Suite 106
Hawthorne, New York 10532

March 20, 2015

Ms. Elizabeth Prickett-Morgan
NYS Office of the Attorney General
120 Broadway, 24th floor
New York City, NY 10027

Dear Madam:

I am an attorney in the state of New York.

My Registration number is 424431.

Please reference index number 7738/2012 Capogrosso vs. State Dept of Motor Vehicles for which I was in litigation. A settlement agreement was reached on June 20, 2012. As part of this settlement agreement I was required to take an anger management course and upon completion of this course I was to be allowed to practice law in all DMV courts on an equal and unbiased standing with all other attorneys in the DMV.

To this date, I have been in complete compliance with all conditions as set forth as part of this settlement agreement.

However, the DMV has not upheld its side of this agreement.

on numerous occasions, I have been harassed, threatened and now currently my files are being tampered with while they are left unprotected in the attorneys room at the DMV at 2875 West 8th Street, Brooklyn, the principal DMV location at which I practice.

The threatening and harassment I have let go because I do not easily get intimidated nor harassed. But at this point my client's files are being tampered with and I must, as a attorney, object.

I provide the following in evidence:

1) On numerous occasions your security guard Dave Sparks has told me to go F___ myself (will provide proof upon request);

2) on several occasions your security guard Sparks has redirected other clients who come have looking for me specifically to other attorneys or has interfered with my conversations while speaking to a clients (will provide proof upon request);

3) your security guard Sparks has approached me,  gotten in my face, stared and glared, I asked him what was the problem was and he told me I was the problem, F___  you.;

4) your security guard Sparks, has stood  looked at me directly while I was standing on the DMV traffic line gave me the sign of the cross twice and directed a spear hand in my direction.

After several complaints to Administrative Judge Gelbstein, the Senior judge at the Brooklyn TVB, I called Sparks employer. Subsequently, your security guard Sparks was relieved from his duties at the Brooklyn DMV for two weeks (proof to be provided).

I have made numerous complaints to Judge Gelbstein. His response has been " a spade is a spade (his words not mine), he laughs and giggles.

Judge Gelbstein is either complicit, incapable or incompetent to handle this issue.

As I have stated, I have ignored these incidents and have attempted at all levels not to aggravate the situation.

I have been in countless courts in my ten years of practice as an attorney and have never seen such behavior in any court system.

As I have stated, I can defend myself and absolutely will, so to this point I have ignored these incidents.

However, at this point your security guard Sparks is entering the attorney's room and tampering with my files. I have asked Judge Gelbstein to look at security tapes and have gotten no response.

As an attorney, I must now object. I cannot have my files tampered with.

I do not want an incident on your floor, I do not want an incident in your courtroom, I have no reason to have any trouble with any of your employees at the Brooklyn DMV.

To date, I have been a perfect gentleman and in complete with all conditions as set upon me by the settlement reached on June 12, 2012.

The DMV has not upheld their  side of this agreement.

All I ask is that they do so.

I do not seek to litigate but I will if I have to.

Please take any and all action to expedite and resolve these issues

Mario H.Capogrosso, Esq.

914-806-3692

NY Registration No. 4244331

2

# EXHIBIT E

Home (/)        Find a lawyer (/find-a-lawyer)

No photo
provided

# Mario Capogrosso's reviews

 6 total

Review Mario Capogrosso (/attorneys/10532-ny-mario-capogrosso-
1480563/write_review.html)

View contact info (/attorneys/10532-
ny-mario-capogrosso-
1480563.html#contact)

| | | |
|---|---|---|
| 5 Star | (/attorneys/10532-ny-mario-capogrosso-1480563/reviews.html?rating=5) | 100% (/attorneys/10532-ny-mario-capogrosso-1480563/reviews.html?rating=5) |
| 4 Star | | 0% |
| 3 Star | | 0% |
| 2 Star | | 0% |
| 1 Star | | 0% |

## Best lawyer Yet



Posted by Usher October 30, 2015

Case 1:18-cv-02710-EK-LB   Document 40   Filed 10/02/18   Page 92 of 104 PageID #: 528

I know him for a nice few years now and had quite a few tickets and he dismissed all of them he is a great lawyer I would recommend everyone to give him a try !

This review is from a person who hired this attorney.

Hired attorney ⓘ

### we thank GOD for you .sultan glory



Posted by sultan September 27, 2015

my husband and I ,meet lawyer Mario Capogrosso, in Coney island ,we needed help and he took our case, and help my husband sultan: mr Capogrosso explain how the law work and the court work ,he was very professional ,my husband and I thank him very very much, thank you sir.

This review is from a person who hired this attorney.

Hired attorney ⓘ

### Very Helpful



Posted by Tanya September 25, 2015

My name is Tanya, and I met 1st met Mario over a decade ago in Brooklyn when looking for someone to help out with a traffic ticket. Mario explained everything very clearly and in great detail, and didn't promise he'd win but explained we had much better odds with him representing us. He won our case to my surprise and throughout the years whenever we needed his services or a different...

More ⌄

This review is from a person who hired this attorney.

Hired attorney ⓘ

### 12 years working with Mario



Posted by Mario Capogrosso in 2003, and have hired him over the years to help out with several traffic tickets. Mario has always been very sharp, attentive, and has won a few cases for me. As he states up front, "you have

a better chance with me than without me", so have no illusion that you're
going to win every case. You're not. But after watching him several times,
he truly is GREAT at his...

More ⌄

This review is from a person who hired this attorney.
Hired attorney 

## Excellent experience

★★★★★

Posted by Arek from New Paltz August 27, 2015

What other lawyers said is impossible for him it was simple and doable. His
rates are reasonable and much lower compared to others. Mr. Capogrosso
helped me with many cases, criminal and traffic offenses. Highly
recommended!

This review is from a person who hired this attorney.
Hired attorney 

## He won my case!

★★★★★

Posted by Hector August 19, 2010

I approached Mr. Capogrosso at Brooklyn South DMV 4 months ago after I
posted bond for my traffic violation (Seat Belt). I asked him to represent me
on my hearing on August 18th, 2010. He sat down with me for 10 minutes
and reviewed my case right before we went and saw the judge. He was
very persuasive and nailed the cop who wrote me the ticket on the
inconsistencies...

More ⌄

Write a review for Mario Capogrosso (/attorneys/10532-ny-mario-
capogrosso-1480563/write_review.html)

Case 1:18-cv-02710-EK-LB Document 6 Filed 10/01/18 Page 94 of 104 PageID #: 530

About Avvo (/about_avvo/about_us)     Careers (/about_avvo/jobs)

Review your lawyer (/review-your-lawyer)     Blog (//stories.avvo.com)

For lawyers (/for-lawyers)

Recently Answered Questions (/free-legal-advice/recent)

Terms of use (/support/terms)     Privacy policy (/support/privacy)
Support (https://support.avvo.com/hc/en-us)
Community guidelines (/support/community_guidelines)     Sitemap (/sitemap)



© Avvo Inc. All Rights Reserved 2018

# EXHIBIT F



STATE OF NEW YORK
OFFICE OF THE STATE INSPECTOR GENERAL

**Final Report
October 17, 2007**

# DMV Official Violated Agency Rules on Outside Employment

## SUMMARY OF FINDINGS/RECOMMENDATIONS

The Office of the State Inspector General determined that Bushra Vahdat, a Senior Administrative Law Judge in the New York State Department of Motor Vehicles (DMV), violated DMV rules when she used agency equipment to conduct non-State business. In response to the Inspector General's findings, DMV counseled Vahdat regarding her conduct and revoked her authorization for outside work.

## ALLEGATION

The Inspector General received a complaint in April 2007 that Vahdat had represented Payless Shoes before the New York City Environmental Control Board (ECB) during her work hours as a DMV Senior Administrative Law Judge (ALJ). It was also alleged that Vahdat used a DMV fax machine and telephone to communicate with the ECB on behalf of the private firm.

## SUMMARY OF INVESTIGATION

Vahdat, who is licensed to practice law in New York, began her employment as a DMV ALJ in 1992 and became a Senior ALJ in 1998 assigned to the Queens North DMV Office. Prior to her employment at DMV, in 1990, Vahdat had worked at ECB.

In late 2006, Vahdat was contacted by her niece, who is a partner at a private law firm in New York City, seeking Vahdat's assistance in resolving summonses issued to Payless Shoes by ECB during the past 10 years. The summonses, which totaled approximately $200,000, related to alleged violations by Payless Shoes of New York City sidewalk vending regulations. The law firm in which Vahdat's niece is a partner had been retained by Payless Shoes to represent it in New York State.

Section 3.7 of the DMV Employee Handbook requires that any employee who wishes to engage in any outside employment or activity must obtain prior written approval from DMV. DMV also requires that the outside employment not interfere with the performance of the employee's official duties.

In October 2004, Vahdat submitted to DMV a Request For Approval To Engage In Outside Employment/Activity. Vahdat stated in her request that her outside activity would be limited to "referrals of cases from family or friends to other attorneys." In November 2004, DMV granted Vahdat's request with the following restrictions: (1) travel to or from the outside activity is not permitted during work hours, and (2) the use of any State equipment, materials, property, staff or other resources for the outside activity is prohibited.

After receiving the request for assistance from her niece, Vahdat contacted ECB in an attempt to resolve the outstanding summonses. The Inspector General's investigation found, and Vahdat admitted, that she sent faxes on DMV letterhead and made and received phone calls from the Queens North DMV Office in furtherance of her activities on behalf of for Payless Shoes. On one occasion in January 2007 she also attended a meeting with ECB staff during work hours; however, she properly charged this time to her leave accruals.

While Vahdat told the Inspector General's Office she did not view herself as representing Payless Shoes, ECB employees the Inspector General interviewed were under the distinct impression that Vahdat represented the firm, since Vahdat was the only person who appeared at ECB to resolve the summonses. Vahdat said she received no compensation for her work on behalf of Payless Shoes.

FINDINGS/RECOMMENDATIONS

The Inspector General determined that Vahdat used DMV resources to fax and telephone ECB in violation of her outside employment authorization from DMV. In addition, by using DMV letterhead to fax materials related to her outside employment, Vahdat might have created the mistaken impression that DMV had official involvement in her private activities. This Office recommended that DMV review Vahdat's conduct and determine if disciplinary or other action is appropriate. We also recommended that DMV determine if closer monitoring of outside activities by agency employees is warranted.

DMV advised the Inspector General's Office that DMV Counsel's Office has counseled Vahdat about her conduct, and that a counseling memorandum will be issued to her. DMV further advised that Vahdat's authorization to do outside legal work has been revoked.

2

3

METRO

# Yakkity sack

By Brad Hamilton

March 17, 2013  |  4:00am



BENCHED: The Post profiled DMV judge Bushra Vahdat last Sunday. A day later, she was suspended without pay.

BENCHED: The Post profiled DMV judge Bushra Vahdat last Sunday. A day later, she was suspended without pay. ( )

Judge Motormouth has lost her license to gab.

DMV supervisor Bushra Vahdat, the city's top traffic judge, has been suspended without pay — one day after The Post revealed that she spent four hours one workweek jabbering about renting her summer home.

Vahdat, who also was in charge of traffic courts in Rochester, Buffalo and Suffolk County, got the boot Monday following the exposé last Sunday about her wheeling and dealing, which was captured on secret audio and videotape.

"Suspended pending a hearing in accordance with civil-service law," DMV spokeswoman Jackie McGinnis wrote in an e-mail.

McGinnis said that videotape of the transaction in Vahdat's office in Queens, recorded by a private investigator and obtained by The Post, had been under review by the state Inspector General's Office.

"The matter was originally sent to the IG and was first referred by the IG to DMV on Monday," she wrote.

Vahdat had been banned from doing outside work in 2007 but spent parts of three workdays last year on a deal to rent out her Martha's Vineyard spread for $3,350 the last week of August 2012.

The tapes reveal meandering conversations, including one two-hour phone call in which the judge gossips and yammers with the P.I. on such matters as family vacations and her daughter's messy apartment.

This is the second time the IG's Office has recommended action against Vahdat. Its investigators found in 2007 that she represented Payless Shoes, an outside client of her private law practice, without permission — and tried to use her position as a judge to get the city to dismiss $200,000 in fines that for a private client.

Recommended by

# EXHIBIT G

Case 1:18-cv-02710-EK-LB   Document 43   Filed 10/02/18   Page 102 of 104 PageID #: 538



Be prepared for      Apple Pay
                     WeChat Pay

×

METRO

# DMV clerk accused of taking bribes for years in ticket-fixing scheme

By Carl Campanile

June 8, 2018 | 5:26pm | Updated



Shutterstock

A clerk at the Harlem office of the state's Department of Motor Vehicles took bribes for years to fix tickets, while another steered cases to lawyers for cash and meals, authorities said Friday.

Case 1:18-cv-02710-EK-LB　　Document 5-1　Filed 10/02/18　Page 103 of 104 PageID #: 539

In an astonishing admission, a supervisor at the East 125th Street facility said she was informed by a defense lawyer as far back as 2012 that a clerk was taking payoffs but did nothing because she wasn't given his name, officials said.

DMV clerk Sam Alexis at the Northern Manhattan Traffic Violations Bureau received up to $600 a week in bribes on top of his salary by accepting between $20 and $100 from ticketed motorists or their lawyers to quash summonses, according to state Inspector General Catherine Leahy Scott.

The investigation also found that clerk Alicia Eddie improperly retrieved confidential information from the DMV computer system to referred motorists to Alexis in exchange for $10 each time.

Alexis, Eddie and one former clerk were also accused of steering motorists to certain defense lawyers in exchange for cash or meals. Officials said they often texted or called attorneys throughout the workday to make the referrals.

Incredibly, the bureau co-supervisor, Sonia Wise, who has worked at the TVB for almost two decades and been a supervising clerk since 2007, testified under oath that she became aware of a potential ticket-fixing scheme in 2012 or 2013, when a lawyer informed her that an unnamed clerk was running a bribery scheme.

"Unconvincingly, Wise claimed to the Inspector General that because [the] Attorney had not named the clerk, she did not need to take further action, and did not report [the] Attorney's assertion to anyone, including her supervisors, others at DMV, or the Inspector General," the report said.

"Wise's inaction allowed Alexis's scheme to continue unabated until this investigation."

Phone records showed that Alexis and other clerks had hundreds of interactions with defense lawyers during work hours because they lacked "meaningful supervision," the IG said.

Supervisors admitted that clerks fraternizing with lawyers was a "big problem" but did nothing to stop it, the report said.

Alexis admitted to the ticket-fixing operation in sworn testimony, according to authorities.

"If the person seems like a down-to-earth person, I'll just tell them, 'Look, we can take care [of the ticket] now if you want. You'll get your receipt; it'll be done today.' And if they say yes, they want to do that — of course, I say it in a way that they know.... that this is under the books, you know what I mean — and I send them to the [hearing] room, they get it dismissed. When they come back out, they hand me the money and then that's how I do that," Alexis was quoted as telling investigators.

Alexis also explained the scheme of getting payola from lawyers for referring them motorists with tickets.

"Basically, all we do is, if a motorist has a lot of points or if he's facing possible suspension of his license . . . we well them, 'You know, you might want to think about hiring a lawyer. If you do want to go that route, I can let you know who to speak to. I can recommend you somebody,'" he said.

The IG report said the case was presented to prosecutors for criminal prosecution but was declined, without explanation.

The findings were also forwarded to the state Joint Commission on Public Ethics and the state court system's Attorney Grievance Committee for any appropriate actions against private attorneys involved in corruption.

The IG's recommendations, including disciplinary actions, new anti-corruption policies and additional training for DMV employees, were all accepted by DMV and implemented.

— ADVERTISEMENT —

"My investigation found a Traffic Violations Bureau mired in corrupt practices, from public employees taking cash for fixing tickets to attorneys offering clerks improper payments and gifts to garner new clients, all while under woefully deficient direct oversight," said IG Leahy Scott.

"These were routine practices at a facility where well-established policies and rules were spurned, and I am pleased the DMV has taken these issues extremely seriously with a commitment toward substantial reforms."

The DMV said it was installing new cameras above workstations to deter corruption, limiting employee access to confidential records and providing new ethics training.

FILED UNDER   <u>BRIBERY</u>, <u>CORRUPTION</u>, <u>DMV</u>, <u>NYPD</u>

Recommended by