UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO H. CAPOGROSSO,                                    CIV18-2710

                Plaintiff

   -against-

ALAN GELBSTEIN, in his official and individual capacity;
BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) in her official and
individual capacity;
IDA TRASCHEN, in her official and individual capacity;
ELIZABETH PRICKETT-MORGAN, in her official and individual capacity;
JEAN FLANAGAN, in her official and individual capacity;
VINCENT PALMIERI, in his official and individual capacity;
DANIELLE CALVO, in her official and individual capacity;
SADIQ TAHIR, in his individual capacity;
PEC GROUP OF NY, INC.;
DAVID SMART, in his individual capacity;
JOHN AND JANE DOE.

                Defendants

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITON

## TO DEFENDANTS' MOTION TO DISMISS

      The Plaintiff, Mario H. Capogrosso ("the Plaintiff"), submits this Memorandum of
Law in opposition to the Motion to Dismiss of the Defendants, Vincent Palmieri
("Palmieri"), Alan Gelbstein ("Gelbstein"), Bosha Vahdatlamas ("Bosha"), Ida Traschen
("Traschen"), Elizabeth Prickett-Morgan ("Pickett-Morgan"), Jean Flanagan ("Flanagan"),
and Danielle Calvo ("Calvo")("the Defendants"), to Dismiss the Plaintiff's Complaint. For
the reasons that follow, the Defendants' Motion should be denied. In the alternative, the
Court should grant the Plaintiff leave to file an Amended Complaint.

1

**Statement of Facts**

For the sake of brevity, the Plaintiff respectfully refers the Court to the allegations set forth in the Plaintiff's Complaint.  While the Defendants introduce contested facts from documents outside – and not part – of the Complaint, it is respectfully submitted that consideration of such documents and facts is improper on this Motion to Dismiss. Given the sparseness of the record and the Plaintiff's lack of any means of discovering actions and intentions peculiarly within the Defendants' knowledge, converting this into a Motion for Summary Judgment would be improper.

**Argument**

I.      **Service on Flanagan Was Timely.**

The Defendants erroneously argue that Flanagan had not been served with the Complaint as of July 13, 2018 (Defendants' Memorandum, p. 10).  On May 8, 2018, an Affidavit of Service was filed reflecting that Flanagan was served on Ashley Flanigan, a co-tenant at 4 Prospect Hill Road, Rensselaer, New York, and that a copy of service was mailed to Jean M. Flanagan, 4 Prospect Hill Road, Rensselaer, NY (**Exhibit A**).

There is hence no factual (or legal) basis for the Defendants' argument as to allegedly untimely service.

II.     **The Plaintiff Possesses Article III Standing.**

At a constitutional minimum, Article III standing requires (1) that the plaintiff have suffered an "injury in fact," *i.e.,* an injury that is "concrete and particularized" and "actual or imminent," rather than merely "conjectural or hypothetical"; (2) that there is a causal connection between the injury and conduct complained of" – that the injury be "fairly

traceable to the challenged action" and "not the result of the independent action of some third party not before the court"; and (3) that it be likely that the injury complained of would be "redressed by a favorable decision." *Lujan v. Defenders of Wildfire*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Not every infirmity in the causal chain deprives a plaintiff of standing. *St Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir, 2000). "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury." Rather, Standing is defeated "only if it is concluded that the injury is so completely due to the plaintiff' own fault as to break the causal chain. *Id*. at 402. So long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing. *Id*. at 458.

The Defendants ask the Court to hold, on this premature stage of proceedings, that the Plaintiff was barred from practicing at TVB because of his own conduct, "not because of any illegal action by" the Defendants (Defendants' Motion, p. 11). In support of this argument, however, they cite only to "complaints and statements" by third parties (*Id*.). They therefore assume that those complaints resulted in the Plaintiff being barred from practicing in the TVB, not – as is alleged in the Complaint – the Defendants' actions and decisions (*see, e.g.,* Complaint, ¶55). On a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, which standard is met when a plaintiff pleads factual content allowing the court to draw reasonable inferences that the defendant is liable for misconduct alleged. *Aschroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1950 (2009).

3

Furthermore, the letters submitted are not properly before the Court on this Motion. Given that the Defendants are offering materials outside of the pleadings on their Motion, the Court may exclude it and decide the Motion on the Complaint alone. *Fonte v. Bd. of Managers of Continental Towers Condominium*, 484 F.2d 24, 25 (2d Cir. 1988). If they are not excluded, the Motion must be converted into one for Summary Judgment and all Parties given the opportunity to present supporting material. *See, Fed. R. P. 12(b)*.

The Complaint, accepted as true for purposes of this Motion, establishes that it was the Defendants' actions – and not the third-party letters – that caused or contributed to the TVB ban.

Therefore, the Plaintiff has standing under Article III.

### III.   The Plaintiff's Complaint States a First Amendment Retaliation Claim (First Cause of Action)

#### a. The Plaintiff Plausibly Alleges Retaliation For a Protected First Amendment Activity.

The Defendants argue that the Plaintiff's First Amendment retaliation claim should be dismissed because his speculation that he was barred from the TVB in retaliation for his March 20, 2015 letter is "unsupported, speculative, and conclusory" (Defendants' Motion, p. 13). They contend that his "admissions" that the DMV received complaints about him and that there was a physical confrontation between him and security guard Smart (*Id.*) defeat it.

But the Defendants lift these allegations out of context and construe them in the light most favorable to themselves. Paragraph 5 of the Complaint, to which they cite,

4

asserts that the Plaintiff was restored to the TVB and that he advised that one of his accusers was Smart.

Given the allegations of the Plaintiff's Complaint – that, *inter alia*, he was reinstated – the Plaintiff's behavior is not incompatible with the Defendants' alleged misconduct.

### b.  The Plaintiff Alleges a Conspiracy Under Section 1985.

The Defendants argue that the Plaintiff's assertions are "conclusory" as to "participation in a conspiracy" (Defendants' Memorandum, p. 13).  As an initial matter, to the extent that the Court finds that any of the allegations are not specific or detailed enough, this is precisely the situation in which the Plaintiff should be permitted the opportunity to amend and further sharpen those allegations.

Furthermore, the allegations of the Complaint are more than detailed enough to assert more than conclusory assertions of conspiracy.  It is believed that discovery in this matter shall reveal the extent of the collusion between the various Defendants. At this time, however, what each Defendant did and how exactly they were involved is within the exclusive knowledge of those Defendants.  A motion to dismiss is appropriately denied in favor of discovery, where such might reveal particulars of a conspiracy claim.  *See, e.g., Competitive Associates, Inc. v. Fantastic Fudge, Inc.,* 58 F.R.D. 121 (S.D.N.Y. 1973)(appropriate to deny motion to dismiss on limitations grounds so that discovery might reveal whether there was intentional failure to supply prospectus as part of alleged conspiracy); *Pantchenko v. C.B. Dolge Co.,* 1976 WL 22169, 2 (D. Conn. 1976)("During discovery, the plaintiff may well be required to describe the participants' roles in the alleged conspiracy with greater specificity, but the motion to dismiss must be denied").

Accordingly, the Defendants' Motion should be denied.

### c.  The Plaintiff's Behavior is Not the Salient Point.

The Defendants argue that DMV barred the Plaintiff from practicing at the TVB "not because of any protected First Amendment activity by Plaintiff, but because of Plaintiff's violent and threatening behavior, . . . ." (Defendants' Motion, p. 14).

This is a misconstrual of the Plaintiff's Complaint.  The activity that is allegedly protected consisted of a letter to Prickett-Morgan (Complaint, ¶9), immediately following which the Defendants took retaliatory actions (*Id.* at ¶11).

### d.  There Is a First Amendment Right to Pursue One's Profession.

The Defendants also misconstrue the Plaintiff's Complaint as asserting "a First Amendment right to enter DMV facilities for the purpose of representing clients" (Defendants' Motion, p. 15).  The Plaintiff, however, has a protected interest in his profession (Complaint, ¶16). A right to pursue the profession of his choice is recognized as a constitutionally protected liberty interest. *Bd. of Regents of State Colls. V. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The Defendants' authorities are not on point.  In *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third, and Fourth Departments, Appellate Division of the Supreme Court of New York*, 852 F.3d 178 (2d Cir. 2017), it was held, *inter alia*, that firms did not have their own First Amendment right to associate or litigate on behalf of clients.

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1912 (1978), provides that a lawyer's procurement of remunerative employment is in fact affected with First Amendment concerns.

Furthermore, the issue is not one in which the Defendant is being prosecuted for trespass in a public space, as in *People v. Reape*, 22 Misc.3d 615, 868 N.Y.S.2d 497 (N.Y. County Crim. Court 2008). *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005), provides that a protester has a right to access court proceedings and, while courthouse and parking lot were nonpublic for a, trespass notices excluding protestor therefrom were unreasonable restrictions on expressive activity.

The Defendants' citation of *Reape* as the sole citation for the assertion "the government's right to restrict access to courtrooms and other government facilities for public safety reasons" (Defendants' Opposition, p. 16) underscores its weakness. It is a lesser state case. Likewise, the citations to *Katz v. Murtagh* and *People v. Hedemann* (*Id.* at n. 7) represent the rights to suppress violence – not whether allegedly causing a professional's separation from employment as a result of intentional infringement of a First Amendment exercise.

## IV.   The Plaintiff States a Claim for Violation of Due Process (Second Cause of Action).

### a.   The Plaintiff Has a Due Process Right to Pursue His Profession.

The Defendants argue that the "Plaintiff does not have a protected liberty or property interest in continuing to practice law at the TVB" (Defendants' Memorandum, p. 17). But the effect of the deprivation is that the Plaintiff's long and chosen career path – lawyering at the TVB – has been eliminated. While he potentially could work elsewhere

7

within the same field, he has an established client base and has created a career at TVB. As his "profession" as an attorney is indeed practicing at the TVB, he has a due process right to it.

In *Rodriguez v. Margotta*, 71 F.Supp.2d 289 (S.D.N.Y. 1999), *aff'd* 225 F.3d 646 (2d Cir. 2000)(Defendants' Memorandum, p. 17), in contrast to this case, the plaintiff's claim of a liberty interest was not cognizable since the evidence was undisputed that he had at all times continued to do business in Sleepy Hollow. 71 F.Supp.2d at 296. In this case, the Plaintiff is no longer able to practice at the TVB. While it is conceded that he is still an attorney, his chosen profession was at the TVB for ten years. Depriving him of the right and ability to practice at the TVB is the equivalent of depriving him of the right to continue in his chosen profession.

### b. The Plaintiff States a Due Process Claim Based on the DMV's Determination to Ban Him from the TVB.

The Defendants next argue that the DMV were permitted to ban the Plaintiff from the TVB for misconduct without an evidentiary hearing (Defendants' Memorandum, p. 18). They rely, erroneously, upon 15 N.Y.C.R.R. 124.2(a)(*Id.*). But that provision refers to representation in TBV court, specifying that any attorney representing a motorist "must conform to the standards of conduct required of attorneys appearing before State Courts," failing which there is "grounds for declining to permit his or her continued appearance <u>in the proceeding</u>." [emphasis added]

This is hardly a case in which the Plaintiff was accused of failing to conform to standards of attorney conduct within the confines of a proceeding. All accusations of misconduct occur outside the confines of the proceeding (before an administrave law judge, allowing the presentation of evidence and cross examination of witnesses). To the contrary,

8

this is a clearly-alleged situation in which the Defendants' actions resulted in the Plaintiff being wrongfully barred from the place of his business, practice, established client base, and career track. There is nothing in the NYCRR provision upon which the Defendants rely that applies to the situation presented in the Complaint. Therefore, barring the Plaintiff from his practice was not "within" the Defendants' "discretion" (Defendants' Memorandum, p. 18)(*citing, Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996).

### c.   The Plaintiff's Due Process Claim Does Not Fail.

The Defendants argue that the Plaintiff's Due Process claim fails because he did not bring an Article 78 proceeding in State Court first (Defendants' Memorandum, p. 18).

However, where the protection of First Amendment rights is involved, the policy favoring protection of those rights must prevail, *Wolff v. Selective Service Local Bd. No. 16*, 372 F.2d 817, 825 (2d Cir. 1967), and in general courts have been reluctant to require the exhaustion of administrative remedies in such cases. *Williams v. Trimble*, 527 F.Supp. 910, 911 (S.D.N.Y. 1981).

In addition, and Article 78 proceeding would not afford the Plaintiff the relief he seeks. Plaintiff had a substantial client base at the Brooklyn South TVB (in excess of 950 motorists), his reputation as an  attorney and his future career as an attorney has been irreparably damaged in that the stain of this capricious act of expulsion follows him without explanation. The plaintiff has been damaged monetarily and an Article 78 proceeding would provide no monetary relief.

Finally, according to the Complaint, the expulsion from the TVB was not "formal" in the sense that no documentation nor explanation was provided to the Plaintiff regarding

the decision.  The lack of any formal notification defeats the argument that he could have formally challenged the decision.

### V.     The State Defendants Can Be Held Liable for the Actions of Co-Defendant Smart.

The Defendants erroneously presume that the Plaintiff's allegations as to their ratification of Defendant Smart's harassment of the Plaintiff has "nothing to do with First Amendment retaliation" (Defendants' Memorandum, p. 19).  However, read in context of the entire Complaint, the allegations as to Smart's harassment and the Defendants' ratification thereof examples further the extent of the Defendants' retaliation against the Plaintiff for exercise of his First Amendment rights.

The Defendants further muddy the waters by suggesting that the Plaintiff is seeking to hold them "vicariously liable" for Smart's actions (Defendants' Memorandum, pp. 19-20).  As the Plaintiff has claims against Smart himself, he is not seeking to hold the Defendants liable in "tort" for an action "committed by security guard" (*Id.* at p. 20).  Rather, the Smart conduct that the Defendants are alleged to have condoned is a further example of their wrongful retaliation and due process affronts upon the Plaintiff.

### VI.    The Plaintiff's Supervisory Liability Allegations Are Sufficient.

The Defendants next argue that it is only Gelbstein And Calvo who are alleged to have personally participated in the DMV's decision to permanently ban the Plaintiff from the TVB (Defendants' Memorandum, p. 20).  But this is untrue and inaccurate.  It is all of the Defendants who caused and led to the Plaintiff's ultimate banning from the TVB.  Without each and all of them, his preclusion would not have occurred.  Furthermore, given that no

10

formal decision was ever rendered, there is no way to determine which Defendants actually made the decision and which Defendants weighed heavily in it. In any event, the Complaint makes clear that, without the actions of all of the Defendants, the decision to bar him would not have been made. There is no question but that there is alleged "personal involvement" of all Defendants (Defendants' Memorandum of Law, p. 21).

## VII.    The Plaintiff States a Claim Against Morgan.

The Defendants argue that "Morgan should be dismissed as a defendant because there are no allegations that she violated any of the Plaintiff's" rights (Defendants' Memorandum, p. 22). They dub it "preposterous if Plaintiff could assert damages claims against a government attorney simply by mailing a letter and not receiving a response" (*Id.*). But the case they cite to in support does not comport with this argument. Specifically, in *Gregory v. Incorporated Vill. Of Center Island*, 2016 WL 4033171 (E.D.N.Y.)(Defendants' Memorandum, p. 23), the only thing that had happened was that the plaintiff made was "simply that his applications were denied." 2016 WL 4033171 at 8.

The case law that the Defendants cite is not availing, even as described. For example, *Barrett v. United State*, 798 F.2d 565 (2d Cir. 1986), dealt with immunity when representing the state in a civil action. *Roache v. The Attorney Gen.'s Office*, 2013 WL 5503151 (N.D.N.Y. 2013), the issue was again immunity for conduct in prosecuting and defending civil actions.

In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2813-14, 86 L.Ed.2d 411 (1985), the Court pointed to three factors to consider in determining whether a government

official should be given absolute immunity for a particular function: (1) whether a historical or common law basis exists for immunity from suit arising out of performance of the function; (2) whether performance of the function poses obvious risks of harassing and vexatious litigation against the official; and (3) whether there exist alternatives to damage suits against the official as a means of redressing wrongful conduct. *Id.* at 2813-14.

Indeed, the immunity upon which the Defendants rely pertains to "initiating and pursuing criminal prosecutions, . . . ." *Levy v. Alfano*, 47 F.Supp.2d 488, 497 (S.D.N.Y. 1999). In this case, the Plaintiff has made no allegation that the actions and/or inactions here were taken while prosecuting or defending an action.

## VIII.   The State Defendants Do Not Have Qualified Immunity.

The Defendants argue that the Plaintiff's claims against the State Defendants should be dismissed because they have qualified immunity (Defendants' Memorandum, p. 23). But the fallacy of this argument lies in the fact that qualified immunity – even as the Defendants define it – only shields a public official from civil liability insofar as their conduct does "not violate clearly established . . . constitutional rights of which a reasonable person should have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).

The Defendants contend that "they did not violate any of Plaintiff's clearly established constitutional rights and it was objectively reasonable" to believe that their actions were lawful (Defendants' Memorandum, pp. 23-24). To make this point, however, they rest upon the purported truth of their circular argument that the Plaintiff had no constitutional right to practice law at the TVB (*Id.* at p. 24). And the case to which the Defendants cite in support of their argument belies dismissal on this scant record.

In *Surlock v. Delaney*, 2016 WL 3200273 (N.D.N.Y. 2016), *aff'd*, 717 Fed. App'x 100 (2d Cir. 2018)(Defendants' Memorandum, p. 24), it was written that the "determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact." 2016 WL 3200273 at 50. A contention that it was objectively reasonable for the official to believe that his acts did not violate certain rights has a "principle focus on the particular facts of the case." *Id.*

It is only where "there is no dispute as to any material fact" that "whether the official's conduct was objectionably reasonable is an issue of law to be decided by the court." *Id.* at 51. "Any unresolved factual issues" "must be resolved by the jury." *Id.*

Here, on the sparse pleadings alone, there remains, at minimum, a disputed issue of material fact (to be developed through discovery) as to what the Defendants reasonably believed.

### IX.    The Plaintiff's Third Cause of Action is Sufficient.

The Defendants lastly argue that the third cause of action should fail "once" his "underlying claims" are dismissed (Defendants' Memorandum, p. 24).  For all of the reasons above, however, the Plaintiff has stated viable underlying claims in this case.

### X.    Any Determined Deficiencies in the Complaint Should Result in, at Worst, Dismissal Without Prejudice.

The power to amend a pleading is within the discretion of the District Court.  *See, Gursky v. Northwestern Mut. Life Ins. Co.,* 139 F.R.D. 279, 281 (E.D.N.Y. 1991).  When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.

13

*Hayden v. City of Nassau,* 180 F.3d 42, 53 (2d Cir. 1999), *overruled on other grounds,* *Gonzago University v. Doe,* 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).

For all of the reasons expressed above, the Defendants' contention that the Plaintiff's legal claims are futile and unsustainable is erroneous and should not be sustained by way of dismissal with prejudice. If the Court is inclined to grant the Defendants' Motion in part or in full for any reason, the Plaintiff respectfully requests the right and ability to replead.

In the alternative or in addition, the Court should grant the Plaintiff the right to conduct discovery on his claims. Since the actions and intentions of the Defendants are uniquely within their possession and control, and since discovering those actions and intention are centrally related to his claims, the Plaintiff is entitled to conduct discovery to further demonstrate his case.

**Conclusion**

For the reasons set forth above, the Defendants' Motion to Dismiss should be denied. In the alternative, the Plaintiff should be permitted leave to amend the Complaint and/or conduct discovery.

14

September 27, 2018
New Rochelle, NY

Mario H. Capogrosso, Esq.
21 Sheldrake Place
New Rochelle, NY 10804
(914) 806-3692

# EXHIBIT A

# AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
### Eastern District of New York

Index Number: CV 18-2710

Date Filed: 5/8/2018

Plaintiff:
**Mario H. Capogrosso**
vs.
Defendant:
**Alan Gelbstein, et al.**

**State of New York, County of Albany)ss.:**

Received by Undisputed Legal Inc. to be served on **Jean M. Flanagan, 4 Prospect Hills Rd., Rensselaer, NY 12144.**

I, James Boland, being duly sworn, depose and say that on the **6th day of June, 2018 at 6:35 pm, I:**

served a **SUITABLE AGE PERSON** by delivering and leaving a true copy of the **Summons in a Civil Action and Verified Complaint** with **Ashley Flanagan,** who is Co-Tenant at 4 Prospect Hills Rd., Rensselaer, NY 12144. Deponent completed service by mailing a true copy of the within stated legal documents in a postpaid envelope addressed to: **Jean M. Flanagan, 4 Prospect Hills Rd., Rensselaer, NY 12144** and bearing the words "Personal & Confidential", with no indication on the outside of the envelope, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant, by First Class Mail on 6/7/2018 and placed in an official depository of the U.S.P.S. in the State of New York.

**Military Status:** Deponent further states upon information and belief that said person so served is not in the military service of the State of New York or of the United States as the term is defined in either the state or federal statutes.

**Description** of Person Served:  Age: 19,  Sex: F,  Race/Skin Color: White,  Height: 5'6",  Weight: 150,  Hair: Brown, Glasses: N

I am over the age of 18 and have no interest in the above action.

RECEIVED
JUN 14 2018
PRO SE OFFICE

James Boland
Process Server

Subscribed and Sworn to before me on the 11th day of June, 2018 by the affiant who is personally known to me.

NOTARY PUBLIC

PATRICIA A. BURKE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BU4922372
Qualified in Albany County
My Commission Expires February 28, . . .

Undisputed Legal Inc.
590 Madison Avenue
21st Floor
New York, NY 10022
(212) 203-8001
Our Job Serial Number: 2018001312

Copyright © 1992-2009 Database Services, Inc. - Process Server's Toolbox V6.3x