UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO H. CAPOGROSSO,

                                        Plaintiff,

                    - against -                                    No. CV 18-2710-MKB

ALAN GELBSTEIN, in his official and individual
capacity; BOSHRA VAHDATLAMAS, (also known as
BUSHRA VAHDAT) in her official and individual
capacity; IDA TRASCHEN, in her official and
individual capacity; ELIZABETH PRICKETT-
MORGAN, in her official and individual capacity;
JEAN FLANAGAN, in her official and individual
capacity; VINCENT PALMIERI, in his official and
individual capacity; DANIELLE CALVO, in her official
and individual capacity; SADIQ TAHIR, in his
individual capacity; PEC GROUP OF NY, INC.;
DAVID SMART, in his individual capacity; JOHN
AND JANE DOE,

                                        Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF THE STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

BARBARA D. UNDERWOOD
Attorney General of the State of New York
Attorney for Defendants Gelbstein, Vahdat, Traschen,
   Morgan, Flanagan, Palmieri, and Calvo
28 Liberty Street
New York, New York 10005
Tel. (212) 416-8610

MARK SIEGMUND
Assistant Attorney General

   *Of Counsel*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 3

A.      THE COMPLAINT ................................................................................... 3

B.      FACTS INTEGRAL TO THE COMPLAINT ....................................... 4

      1.     Plaintiff's Violent and Threatening Behavior Leading to His 2011 Ban from Practicing at the TVB ................................................................... 4

      2.     Plaintiff's State Court Proceeding, Anger Management Course, and Return to Practice at the TVB in 2012 ................................................... 6

      3.     Plaintiff's Continued Violent and Threatening Behavior Leading to His Permanent Ban From the TVB in 2015 .............................................. 6

ARGUMENT ..................................................................................................................... 7

I.      LEGAL STANDARDS ............................................................................ 7

      A.     Rule 12(b)(6) .......................................................................................... 7

      B.     Rule 12(b)(1) .......................................................................................... 9

      C.     Plaintiff Should Receive No Solicitude Based on His *Pro Se* Status ................... 10

II.      DEFENDANTS FLANAGAN AND PALMIERI SHOULD BE DISMISSED BECAUSE THEY WERE NEVER SERVED WITH THE COMPLAINT ..................... 10

III.      PLAINTIFF LACKS ARTICLE III STANDING ............................................. 11

IV.      PLAINTIFF FAILS TO STATE A CLAIM FOR FIRST AMENDMENT RETALIATION (FIRST CAUSE OF ACTION) .............................................. 12

      A.     Plaintiff Fails to Plausibly Allege Retaliation For Any Protected First Amendment Activity ............................................................................. 12

      B.     Plaintiff Fails to Allege a Conspiracy Under Section 1985 ................................. 13

      C.     Plaintiff's Behavior Is Not Protected by the First Amendment ........................... 14

      D.     There Is No First Amendment Right to Represent Clients in Courts ................... 15

i

V.      PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF DUE
        PROCESS (SECOND CAUSE OF ACTION) ................................................................. 16

        A.      Plaintiff Does Not Have a Due Process Right to Practice Law at the TVB ......... 17

        B.      Plaintiff Cannot State a Due Process Claim Based on the DMV's
                Discretionary Determination to Ban Plaintiff From the TVB ............................. 17

        C.      Plaintiff's Due Process Claim Fails Because He Had a Post-Deprivation
                Opportunity to Be Heard ....................................................................................... 18

VI.     THE STATE DEFENDANTS CANNOT BE HELD LIABLE FOR THE
        ALLEGED ACTIONS OF SECURITY GUARD SMART ............................................ 19

VII.    PLAINTIFF'S SUPERVISORY LIABILITY ALLEGATIONS ARE
        DEFICIENT .................................................................................................................... 20

VIII.   PLAINTIFF FAILS TO STATE ANY CLAIMS AGAINST DEFENDANT
        MORGAN, AND SHE HAS ABSOLUTE IMMUNITY ................................................. 21

IX.     THE STATE DEFENDANTS HAVE QUALIFIED IMMUNITY ................................... 23

X.      PLAINTIFF'S THIRD CAUSE OF ACTION SHOULD BE DISMISSED ................... 24

XI.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ........................... 24

CONCLUSION ............................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Constitutional Provisions**

U.S. Const. amend. I ............................................................ 2, 4, 12, 13, 14, 15, 16, 19, 22, 23, 24

U.S. Const. art. III ................................................................................ 1, 2, 9, 11, 12

**Federal Statutes**

42 U.S.C. § 1983 ........................................................................................ 9, 20, 21

42 U.S.C. § 1985 ........................................................................................ 9, 13, 14, 20

42 U.S.C. § 1986 ........................................................................................ 9, 14

42 U.S.C. § 1988 ........................................................................................ 9

**State Regulations**

15 N.Y.C.R.R. § 124.2(a) ............................................................................ 15, 18, 25

Rules of Professional Conduct (22 N.Y.C.R.R. § 1200.0), Rule 3.3(f) ....................................... 15

Rules of Professional Conduct (22 N.Y.C.R.R. § 1200.0), Rule 8.4 ......................................... 15

**Federal Rules**

Fed. R. Civ. P. 4(m) ................................................................................... 1, 10

Fed. R. Civ. P. 8 ...................................................................................... 8

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1, 9

Fed. R. Civ. P. 12(b)(5) ............................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 7, 8, 13

## State Rules

N.Y. C.P.L.R. § 217(1) ................................................................................................ 19

N.Y. C.P.L.R. art. 78 ......................................................................................... 3, 6, 18

## Federal Cases

*Aetna Cas. & Sur. Co. v. Manshul Const. Corp.*, 1997 WL 214946 (S.D.N.Y. Apr. 29, 1997) ...................................................................................................................... 19

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................................ 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 7, 8, 13

*Atuahene v. City of Hartford*, 10 Fed. App'x 33 (2d Cir. 2001) ............................... 8

*Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986) ............................................ 22

*Bass v. Jackson*, 790 F.2d 260 (2d Cir. 1986) ........................................................ 21

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) ......................................................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 7, 8

*Berner v. Delahanty*, 129 F.3d 20 (1st Cir. 1997) .................................................. 16

*Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996) ......................................................... 18

*Best v. Mullet*, 1990 WL 88601 (E.D.N.Y. Jun. 14, 1990) ..................................... 20

*Best v. Schneider*, 2016 WL 1593354 (E.D.N.Y. Mar. 30, 2016), *adopted by* 2016 WL 1601194 (E.D.N.Y. Apr. 20, 2016) ................................................................... 14

*Birch v. City of N.Y.*, 184 F. Supp. 3d 21 (E.D.N.Y. 2016), *aff'd on other grounds*, 675 Fed. App'x 43 (2d Cir. 2017) ................................................................................. 23

*Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997) ............................................ 12, 13

*Bohmer v. New York*, 684 F. Supp. 2d 357 (S.D.N.Y. 2010) ................................... 8

*Brown v. City of New York*, 2014 WL 5394962 (S.D.N.Y. 2014) ............................ 8

*Burgos v. Huggins*, 2015 WL 512784 (N.D.N.Y. 2015) ......................................... 8

*Campo v. N.Y. City Employees' Ret. Sys.*, 843 F.2d 96 (2d Cir. 1988) .................. 19

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) .............................. 10

*Christe v. Hotels.com L.P.*, 756 F. Supp. 2d 382 (S.D.N.Y. 2010) ................................................ 24

*Cicio v. Graham*, 2009 WL 537534 (N.D.N.Y. Mar. 3, 2009) ..................................................... 21

*Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013) ................................................. 11

*Cleveland v. Schenectady Cty. Dep't of Children and Families*, 2016 WL 8193580
  (N.D.N.Y. Dec. 30, 2016), *adopted by* 2017 WL 449768 (N.D.N.Y. Feb. 1, 2017) ............... 21

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ........................................................... 21

*Conn v. Gabbert*, 526 U.S. 286 (1999) .................................................................... 17

*Conte v. Cty. of Nassau*, 2008 WL 905879 (E.D.N.Y. Mar. 31, 2008) ......................................... 21

*Corley v. City of N.Y.*, 2017 WL 4357662 (Sept. 28, 2017) ............................................... 12

*Cty. of Suffolk, New York v. First Am. Real Estate Solutions*, 261 F.3d 179 (2d Cir. 2001) .......... 8

*Dorsett v. Cty. of Nassau*, 732 F.3d 157 (2d Cir. 2013) ................................................. 12

*Epstein v. Cty. of Suffolk*, 2015 WL 5038344 (E.D.N.Y. Aug. 26, 2015) ............................... 12, 13

*Frank v. United States*, 78 F.3d 815 (2d Cir. 1996), *vacated on other grounds*, 521 U.S.
  1114 (1997) .......................................................................................... 12

*George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428 (S.D.N.Y. 2016) ......................... 10

*Giglio v. Dunn*, 732 F.2d 1133 (2d Cir. 1984), *cert. denied*, 469 U.S. 932 (1984) ..................... 19

*Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) ......................................................... 18

*Gregory v. Incorporated Vill. of Centre Island*, 2016 WL 4033171 (E.D.N.Y. Jul. 27,
  2016) ................................................................................................ 22

*Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94 (S.D.N.Y. 1996) ........................ 10

*Guardino v. American Sav. & Loan Ass'n of Florida*, 593 F. Supp. 691 (E.D.N.Y. 1984) ......... 10

*Hanrahan v. Doling*, 331 F.3d 93 (2d Cir. 2003) ........................................................ 23

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................. 23

*Harrison v. Lutheran Med. Ctr.*, 2012 WL 833715 (2d Cir. 2012) ......................................... 9

*Hassan v. United States*, 441 Fed. App'x 10 (2d Cir. 2011) ............................................. 11

*Hellenic Am. Neighborhood Action Cmte. v. City of N.Y.*, 101 F.3d 877 (2d Cir. 1996) ............. 19

*Heller v. Bedford Cent. Sch. Dist.*, 665 Fed. App'x 49 (2d Cir. 2016)...........................................13

*Hertzner v. U.S. Postal Serv.*, 2007 WL 869585 (E.D.N.Y. Mar. 20, 2007)..............................10

*Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2004) ...........................................................16

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third and Fourth Departments, Appellate Division of the Sup. Ct. of the State of N.Y.*, 852 F.3d 178 (2d Cir. 2017).............................................................................................15

*Kiernan v. Town of Southampton*, 2018 WL 2251633 (2d Cir. May 17, 2018) ..........................20

*KM Enters., Inc. v. McDonald*, 2012 WL 4472010 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 Fed. App'x 12 (2d Cir. 2013) ...............................................................................24

*L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 Fed. App'x 56 (2d Cir. 2016).............................9

*Leis v. Flynt*, 439 U.S. 438 (1979)..............................................................................17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................11

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012)..............................................11

*Morales v. N.Y.*, 22 F. Supp. 3d 256 (S.D.N.Y. 2014)....................................................20

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)...............................................15

*Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826 (D.C. Cir. 2006) .......................................................................................................12

*Newland v. N.Y. City Dep't of Correction*, 2018 WL 1525663 (E.D.N.Y. Mar. 28, 2018)..........21

*Ochoa v. Brattoni*, 2017 WL 5900552 (S.D.N.Y. Nov. 28, 2017) ......................................14

*Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447 (1978) .................................................16

*Pearson v. Callahan*, 555 U.S. 223 (2009).................................................................23

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) ......................................................12

*Pierre v. FJC Security Services, Inc.*, 2017 WL 4162304 (E.D.N.Y. Sept. 19, 2017)................25

*Pinaud v. Cty. of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ................................................20

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117 (2d Cir. 2007) ........................8

*Prophete v. N.Y. Police Dep't*, 383 Fed. App'x 77 (2d Cir. 2010)..................................10

*Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285 (S.D.N.Y. 1995) .................................................................................................... 24

*Reynolds v. Barrett*, 685 F.3d 193 (2d Cir. 2012) ........................................... 9

*Roache v. The Attorney Gen.'s Office*, 2013 WL 5503151 (N.D.N.Y. Sept. 30, 2013) ............... 22

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994) ..................................... 10

*Rodriguez v. Margotta*, 71 F. Supp. 2d 289 (S.D.N.Y. 1999), *aff'd* 225 F.3d 646 (2d Cir. 2000) ................................................................................................ 17

*Roman Catholic Archdiocese of N.Y. v. Sebelius*, 907 F. Supp. 2d 310 (E.D.N.Y. 2012) ........... 10

*Roth v. Farmingdale Sch. Dist.*, 2017 WL 395211 (E.D.N.Y. Jan. 30, 2017)............................ 15

*Rubin v. Swarts*, 2011 WL 1004838 (E.D.N.Y. Mar. 18, 2011)........................................... 18, 19

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) .................................................. 23

*Schwartz v. Mayor's Comm. on Judiciary of City of N.Y.*, 816 F.2d 54 (2d Cir. 1987) .............. 17

*Schwasnick v. Fields*, 2010 WL 2679935 (E.D.N.Y. Jun. 30, 2010)........................................... 18

*Smith v. Metro N. Commuter R.R.*, 2000 WL 1449865 (S.D.N.Y. Sept. 29, 2000)............... 14, 15

*St. Pierre v. Dyer*, 208 F.3d 394 (2d Cir. 2000) ......................................................... 12

*Surlock v. Delaney*, 2016 WL 3200273 (N.D.N.Y. Jun. 8, 2016), *aff'd*, 717 Fed. App'x 100 (2d Cir. 2018)............................................................................................. 24

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239 (2d Cir. 2014)................... 9

*Thigpen v. N.Y.S. Dep't of Corr. Servs.*, 2010 WL 3895621 (S.D.N.Y. Oct. 5, 2010)............... 23

*Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010) ......................................................... 10

*U.S. v. One White 1989 Chevrolet Corvette Convertible (VIN #1G1YY3181K5110457)*, 1990 WL 164672 (E.D.N.Y. Sept. 27, 1990) ............................................................ 10

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62 (E.D.N.Y. 2006).......................................................................................... 11

*Weinstein v. Albright*, 261 F.3d 127 (2d Cir. 2001)......................................................... 17

*West v. Atkins*, 487 U.S. 42 (1988) ................................................................................. 9

*Wright v. Semple*, 696 Fed. App'x 540 (2d Cir. 2017) ................................................... 25

*X-Men Security, Inc. v. Pataki*, 196 F.3d 56 (2d Cir. 2000) ........................................................ 14

**State Cases**

*Capogrosso v. N.Y. State Dep't of Motor Vehicles*, No. 7738/2012 (N.Y. Sup. Ct. Kings Cty.) ............................................................................................................................. 8

*Firth v. State of N.Y.*, 12 A.D.3d 907 (N.Y. App. Div. 3d Dep't 2004) ...................................... 22

*In re Linietsky*, 263 A.D.2d 102 (N.Y. App. Div. 2d Dep't 1999) (per curiam) ......................... 15

*In re Monaghan*, 295 A.D.2d 38 (N.Y. App. Div. 2d Dep't 2002) (per curiam) ........................ 15

*Katz v. Murtagh*, 28 N.Y.2d 234 (1971) ..................................................................................... 16

*Kirkman v. Astoria Gen. Hosp.*, 204 A.D.2d 401 (N.Y. App. Div. 2d Dep't 1994), *lv. to appeal denied*, 84 N.Y.2d 811 (1994) ...................................................................................... 20

*Levy v. State*, 86 A.D.2d 574 (N.Y. App. Div. 1st Dep't 1982), *aff'd* 58 N.Y.2d 733 (1982).................................................................................................................................... 22

*People v. Hedemann*, 107 Misc. 2d 241 (N.Y. Sup. Ct. App. T. 1st Dep't 1981)....................... 16

*People v. Reape*, 22 Misc. 3d 615 (N.Y.C. Crim. Ct. Kings Cty. 2008) ..................................... 16

Defendants Alan Gelbstein, Bushra Vahdat, Ida Traschen, Elizabeth Morgan (formerly Prickett-Morgan), Jean Flanagan, Vincent Palmieri, and Danielle Calvo (collectively, the "State Defendants"), by their attorney, Barbara D. Underwood, Attorney General of the State of New York, submit this memorandum of law, together with the Declarations of Barbara Montena, dated August 15, 2018 ("Montena Decl."), and Mark Siegmund, dated August 15, 2018 ("Siegmund Decl."), and accompanying exhibits, in support of their motion to dismiss the Verified Complaint ("Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 4(m), 12(b)(1), 12(b)(5) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiff Mario Capogrosso is an attorney who formerly practiced law at the Traffic Violations Bureau ("TVB") of the Department of Motor Vehicles ("DMV"), primarily at the Brooklyn South TVB in Coney Island. Plaintiff has a long and troubling history of violent, threatening, offensive and other unprofessional behavior at the TVB. In 2011, Plaintiff was banned from the TVB as a result of an anti-Semitic tirade and violent behavior. After Plaintiff sued the DMV in state court in 2012 to challenge his ban, he was permitted to resume practicing at the TVB on condition that he successfully complete an anger management class, but he was warned that any subsequent misconduct would be grounds for permanently barring him from the TVB. Unfortunately, Plaintiff's violent and threatening behavior continued, and on May 11, 2015, he was permanently barred from the TVB because of his long history of violent and

---

[1] This memorandum refers to contemporaneous records regarding Plaintiff's behavior at the TVB that are attached to the accompanying declarations. As explained below (Points I.A. & I.B., *infra*), the Court may consider these records for at least two reasons. First, these documents may be considered, even on a Rule 12(b)(6) motion to dismiss, because they are integral to Plaintiff's allegations that he was barred from the TVB in part because of "complaints of misconduct." *See* Compl. ¶ 5. Second, on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on Plaintiff's lack of Article III standing, the Court is permitted, and indeed required, to consider documents outside of the Complaint to determine whether Plaintiff has Article III standing. The Court may also take judicial notice of documents filed in Plaintiff's 2012 state court proceeding. *See infra* at 8 n.3.

unprofessional behavior, culminating in a violent altercation with defendant David Smart, a privately-employed security guard.

Rather than commence a proceeding against the DMV in state court challenging his permanent ban, as he had done when he was banned in 2011, Plaintiff instead commenced the instant action, nearly three years after he was permanently banned from the TVB in 2015, seeking damages and injunctive relief under federal civil rights statutes against various DMV officials and others.  The Complaint must be dismissed for several reasons.

First, the Complaint should be dismissed as against defendants Flanagan and Palmieri for lack of personal jurisdiction because Plaintiff failed to serve them with the Complaint and the 90-day service deadline has expired.

Second, Plaintiff lacks Article III standing to invoke the Court's subject matter jurisdiction because numerous contemporaneous complaints and statements regarding Plaintiff's behavior – which the Court may properly consider on a motion to dismiss for lack of Article III standing – demonstrate that Plaintiff's violent and threatening behavior, not any illegal behavior by any of the State Defendants, was the sole cause of Plaintiff's permanent ban from the TVB.

Third, Plaintiff fails to state any claims for relief.  Plaintiff fails to state a claim for First Amendment retaliation because:  (1) he fails to plausibly allege retaliation by any of the State Defendants for any protected First Amendment activity; (2) he fails to allege a conspiracy among any of the State Defendants to retaliate against him; (3) the numerous complaints received by the DMV regarding his behavior reflect that he was barred from the TVB for violent and threatening behavior that is not protected by the First Amendment; and (4) there is no First Amendment right to represent clients at the TVB.

Plaintiff also fails to state a claim for violation of his due process rights because:  (1) he

2

never had a due process right to practice law at the TVB; (2) the DMV's discretionary decision to enforce a regulation permitting it to ban lawyers for unprofessional behavior cannot support a due process claim; and (3) he had the right to challenge his ban in a state court proceeding under Article 78 of New York's Civil Practice Law and Rules (CPLR) within four months of the ban, which constitutes a wholly adequate post-deprivation hearing for due process purposes.

Fourth, defendant Morgan should be dismissed because there are no specific allegations of conduct by her that violated Plaintiff's constitutional rights. In addition, as an attorney in the Office of the New York Attorney General, she has absolute immunity from any civil liability.

Fifth, the State Defendants have qualified immunity from any liability because, to the extent any of them were personally involved in the DMV's decision to permanently ban Plaintiff from the TVB in 2015 for his violent and threatening behavior, they did not violate any of Plaintiff's clearly established constitutional rights and it was objectively reasonable for them to believe, under the circumstances, that their actions were lawful.

Finally, upon dismissal of Plaintiff's substantive claims against the State Defendants, Plaintiff's third cause of action seeking "prospective injunctive relief" should be dismissed because there is no substantive federal claim for an injunction.

## STATEMENT OF FACTS

### A.    THE COMPLAINT

Plaintiff alleges that, on May 11, 2015, he was "permanently barred from representing any clients" at the TVB because of a "physical confrontation" that same day with security guard David Smart (a defendant) at the Brooklyn South TVB. *See* Compl. ¶ 11. Plaintiff alleges he was previously barred from the TVB in December 2011 because of previous "complaints of misconduct," but that his right to practice at the TVB was thereafter reinstated in connection with

a settlement reached with the DMV.  *Id.* ¶ 5.  Plaintiff also alleges that, prior to his ban from the TVB in 2015, he submitted complaints to some of the State Defendants about alleged "harassment" by security guard Smart but that he did not receive a satisfactory response.  *Id.* ¶¶ 8-10, 69.  Plaintiff also alleges that he submitted inquiries to several of the State Defendants "seeking clarification" about his permanent ban from the TVB in 2015, but that he did not receive satisfactory responses.  *Id.* ¶¶ 12-15, 46, 49, 52, 55.

Plaintiff alleges that the State Defendants permanently banned him from the TVB in 2015 not because of his physical altercation with defendant Smart, but in retaliation for exercising First Amendment rights – namely, because he wrote a letter in March 2015 to defendant Morgan, an Assistant Attorney General ("AAG") in the New York State Attorney General's Office, complaining about defendants Gelbstein and Smart.  *Id*. ¶¶ 9, 52, 59, 71-75.  Plaintiff also alleges that defendants violated his due process rights and deprived him of a "property and/or liberty interest" because a formal hearing was not held before he was barred from the TVB.  *Id.* ¶¶ 77-85.  Plaintiff seeks monetary damages of over $20 million from the State Defendants and "prospective injunctive relief."  *Id.* ¶¶ 87-88 and "Wherefore" clause.

**B.    FACTS INTEGRAL TO THE COMPLAINT**

**1.    Plaintiff's Violent and Threatening Behavior Leading to His 2011 Ban from Practicing at the TVB**

Contemporaneous statements from Plaintiff's colleagues and DMV staff and other DMV records regarding Plaintiff's behavior reflect that there is a long and well-documented history of Plaintiff's violent and threatening behavior at the TVB, which posed a serious threat to the safety of the DMV's employees and the public.  The DMV received complaints about Plaintiff's behavior over several years.  In August 2009, an attorney reported that Plaintiff had threatened a pregnant colleague with frightening and intimidating language.  Montena Decl. Ex. 4 (8/5/2009

letter).  Another letter in 2009 complained that Plaintiff had yelled "profanities and obscenities" at a colleague and intentionally "bumped real hard into her."  *Id.* Ex. 1 (undated incident report regarding incident on April 21, 2009); *see also id.* Ex. 2 (letter from clerk regarding incident on same date); *id.* Ex. 3 (6/19/2009 letter from TVB clerk stating Plaintiff "went so far as to assault a female assistant who works for another lawyer" and clerk "no longer feel[s] comfortable" working at TVB because of Plaintiff).

On January 6, 2011, eighteen clerks, supervisors and judges of the Brooklyn South TVB sent a signed petition to defendant Vahdat, the DMV's Supervisory Administrative Law Judge ("ALJ"), warning of Plaintiff's "unstable" and confrontational behavior and requesting that the DMV remove the "threat to our physical safety" posed by Plaintiff.  *See id.* Ex. 6 (petition); *see also id.* Ex. 11 (2/8/2012 letter from DMV summarizing complaints).  Plaintiff was warned that if he did not conduct himself professionally, he would not be allowed to appear at the TVB.  *Id.* Ex. 11; Siegmund Decl. Ex. 2, ¶ 11 (5/3/2012 Affidavit of ALJ Gelbstein, submitted in Plaintiff's 2012 state court proceeding).

In December 2011, the DMV received numerous reports that Plaintiff had called a Jewish colleague a "fucking Jew cunt," complained that the TVB was "run by 'fucking Jew cunts,'" "shout[ed] about Jews," threw a cup of coffee at a colleague, attempted to strike another colleague with his fist, and "smashed his fist against concrete walls and steel beams[.]"  Montena Decl. Ex. 7 (letter from Yaakov Brody); *id.* Ex. 8 (letter from Richard F. Maher); *id.* Ex. 9 (letter from M. Sadiq Tahir); *id.* Ex. 10 (12/23/2011 letter reporting a "tirade of anti-Semitic slurs shouted by Mr. Mario Capogrosso" and that Plaintiff had "lunged at me with his fists").[2]  The

---

[2] In his August 1, 2018 letter to the Court, Plaintiff admits he "did throw a punch in the direction of a wall," but argues this behavior was excusable because he "was not arrested nor charged" for it.  ECF No. 27 at 4 ¶¶ 9, 10.

DMV also received complaints about unprofessional behavior by Plaintiff, including that he purportedly represented a motorist without authorization, *id.* Ex. 5 (9/28/2010 letter), and refused to take direction from TVB clerks or judges, *id.* Ex. 28 (letter reporting 3/3/2011 incident).  After two ALJs met with Plaintiff in December 2011 to discuss these complaints, Plaintiff was directed to leave the TVB because he was deemed a threat to safety.  *See* Siegmund Decl. Ex. 2, ¶ 15.

> **2.      Plaintiff's State Court Proceeding, Anger Management Course, and Return to Practice at the TVB in 2012**

On March 1, 2012, Plaintiff commenced a proceeding against the DMV in New York State Court under CPLR Article 78 alleging, *inter alia*, that his expulsion from the Brooklyn South TVB in 2011 violated his due process rights.  *See* Siegmund Decl. Ex. 1 (Verified Petition).  Plaintiff and the DMV settled that proceeding by agreeing that he could resume practicing at the TVB if he successfully completed an anger management course.  *See id.* Exs. 4, 5.  Plaintiff completed the course and was permitted to resume practicing at the TVB in June 2012.  After Plaintiff completed the course, the DMV's counsel advised that Plaintiff could resume practicing at TVB but specifically warned that any "[t]hreatening conduct . . . , verbal threats of physical violence, and verbal abuse including the use of ethnic slurs will not be tolerated," and that any "future misconduct" may result in the DMV "immediately and permanently barring Mr. Capogrosso from appearing on behalf of DMV licensees at TVB Offices."  *See id.* Ex. 5 (6/20/2012 letter); *see also id.* Ex. 4 (5/12/2012 letter from DMV's counsel warning that if Plaintiff "commits an act of physical violence, he shall be immediately and permanently barred" from the TVB).

> **3.      Plaintiff's Continued Violent and Threatening Behavior Leading to His Permanent Ban From the TVB in 2015**

Unfortunately, despite completing the anger management course, Plaintiff's violent,

6

threatening and unprofessional behavior continued.  For example:

- In October 2014, a TVB employee complained that Plaintiff tried to provoke a motorist to "give [the employee] an attitude" for no reason.  Montena Decl. Ex. 12.

- In February 2015, a former client complained he was "threatened" by Plaintiff with physical violence and told to "go fuck [him]self" after telling Plaintiff he would like another lawyer.  *Id*. Ex. 13 (2/5/2015 letter).  A DMV employee also reported that the same client had been threatened by Plaintiff.  *Id*. Ex. 15 (2/5/2015 letter).

- In March 2015, two attorney colleagues complained of Plaintiff's increasingly hostile and erratic behavior, including that he "repeatedly said 'shit'" to them whenever he passed either of them in the hallway.  *Id*. Ex. 17 (3/19/2015 memorandum); *id*. Ex. 20 (5/5/2015 letter from Tahir); *see also id.* Exs. 18, 19.

The incident that finally led to Plaintiff's permanent ban from the TVB occurred on May 11, 2015, when Plaintiff attacked security guard Smart by pushing him into a pole.  Numerous witnesses reported Plaintiff's attack in contemporaneous written statements.  *See, e.g.*, *id*. Ex. 22 (TVB clerk Danielle Calvo's workplace violence report); *id.* Exs. 23, 24.  The police were called, *see id.* Ex. 25 (police information slip), and ALJ Gelbstein and Supervisory Clerk Calvo told Plaintiff that, to protect the safety of the DMV's employees and the public, he was permanently barred from practicing at the TVB.  *See id.* Ex. 26 (DMV memorandum regarding incident).

## ARGUMENT

### I.    LEGAL STANDARDS

#### A.    Rule 12(b)(6)

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court should consider whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; Plaintiff's allegations must enable the Court "to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  Allegations that are "no more than conclusions[] are not entitled to the assumption of truth." *Id.* at 679.  Plaintiff's allegations must "plausibly give rise to an entitlement to relief." *Id.*  If Plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see also Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).  A complaint must also "identify which defendants [are] responsible for which alleged violations" and provide a "factual basis to distinguish [defendants'] conduct."  *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001); *see also* Fed. R. Civ. P. 8; *Iqbal*, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

On a Rule 12(b)(6) motion to dismiss, the Court may consider documents "incorporated by reference [in the Complaint], or integral to the claims asserted" by Plaintiff.  *Cty. of Suffolk, New York v. First Am. Real Estate Solutions*, 261 F.3d 179, 184 (2d Cir. 2001); *see also Bohmer v. New York*, 684 F. Supp. 2d 357, 360 (S.D.N.Y. 2010) (holding that even though "documents were not attached to the Complaint or explicitly incorporated by reference, the Court may consider them because they are integral to Plaintiffs['] claims" and the Court "may refuse to accept as true allegations in the Complaint that are contradicted by this record").  Here, contemporaneous records regarding Plaintiff's behavior at the TVB may be considered because they relate to Plaintiff's allegation that he was barred from practicing at the TVB in part because of "complaints of misconduct."  *See* Compl. ¶ 5.[3]

---

[3] In addition, several contemporaneous complaints and letters were attached to papers filed in the 2012 state court proceeding commenced by Plaintiff against the DMV, *Capogrosso v. N.Y. State Dep't of Motor Vehicles*, No. 7738/2012 (N.Y. Sup. Ct. Kings Cty.).  *See, e.g.*, Siegmund Decl. Ex. 3 (4/11/2012 Affirmation of Ida L. Traschen attaching, as Exhibit B thereto, several complaints and statements regarding Plaintiff).  "[T]he court may take judicial notice of decisions and filings in related litigation between the parties without converting the motion [to dismiss] to a motion for summary judgment. . . ."  *Brown v. City of New York*, 2014 WL 5394962, at *2 n.2 (S.D.N.Y. 2014) (citations omitted); *see also Burgos v. Huggins*, 2015 WL 512784, at *3 n.2 (N.D.N.Y. 2015) (same).

To state a Section 1983 claim, Plaintiff must show that he was denied a constitutional or federal statutory right and that the deprivation of such right occurred under color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).

To state a Section 1985 claim, Plaintiff must allege "(1) a conspiracy, (2) for the purpose of depriving [plaintiff] of the equal protection of the laws or of equal privileges and immunities under the laws, and (3) an act in furtherance of the conspiracy, (4) whereby [plaintiff] is injured in his person or property or deprived of a right or privilege of a citizen[.]" *L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 Fed. App'x 56, 59 (2d Cir. 2016); *see* 42 U.S.C. § 1985.  A Section 1986 claim is "contingent on a valid § 1985 claim." *Harrison v. Lutheran Med. Ctr.*, 2012 WL 833715, at *37 (2d Cir. 2012) (citation omitted).  Sections 1985 and 1986 require allegations of "racial" or "otherwise class-based, invidiously discriminatory animus," none of which are alleged here. *Reynolds v. Barrett*, 685 F.3d 193, 201-02 (2d Cir. 2012) (citations omitted).[4]

### B.      Rule 12(b)(1)

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on Plaintiff's lack of Article III standing, when "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *see also O'Brien v. Calvo*, 2013 WL 1247521, at *5 (E.D.N.Y. Mar. 27, 2013) (court may "consider matters outside the pleadings and [ ] make findings of fact when necessary").  If defendants present evidence that reveals "factual problems in the assertion of jurisdiction," plaintiff must "come forward with evidence of [his] own to controvert" such evidence and may not merely "rely on the allegations of the [complaint]." *Carter v. HealthPort*

---

[4] 42 U.S.C. § 1988 permits a "prevailing party" in a civil rights action to request attorney's fees.

*Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (citations omitted).  "[T]he burden is on the plaintiff

to satisfy the Court, as fact-finder, of the jurisdictional facts" supporting Article III standing.

*Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996) (citation

omitted); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994);

*Roman Catholic Archdiocese of N.Y. v. Sebelius*, 907 F. Supp. 2d 310, 322 (E.D.N.Y. 2012).

### C.  Plaintiff Should Receive No Solicitude Based on His *Pro Se* Status

Although *pro se* complaints are generally liberally construed, Plaintiff is an attorney with

"approximately 850" clients (Compl. ¶ 6) and his Complaint therefore should "not be given the

very liberal consideration afforded non-lawyer *pro se* parties."  *Guardino v. American Sav. &*

*Loan Ass'n of Florida*, 593 F. Supp. 691, 694 (E.D.N.Y. 1984); *see Tracy v. Freshwater*, 623

F.3d 90, 102 (2d Cir. 2010) (same); *U.S. v. One White 1989 Chevrolet Corvette Convertible (VIN*

*#1G1YY3181K5110457)*, 1990 WL 164672, at *6 (E.D.N.Y. Sept. 27, 1990) (same).

### II.  DEFENDANTS FLANAGAN AND PALMIERI SHOULD BE DISMISSED BECAUSE THEY WERE NEVER SERVED WITH THE COMPLAINT

The Complaint should be dismissed as to defendants Flanagan and Palmieri because

Plaintiff failed to serve them with the Complaint by the August 6, 2018 deadline.  *See* Fed. R.

Civ. P. 4(m) (dismissal required if defendant is not served with complaint within 90 days unless

good cause shown for failure); ECF No. 4 (Order advising Plaintiff of August 6 deadline);

Montena Decl. ¶¶ 2-6; *Prophete v. N.Y. Police Dep't*, 383 Fed. App'x 77, 78 (2d Cir. 2010)

(affirming dismissal of complaint under Rule 4(m) for failure to timely serve defendant); *George*

*v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433-37 (S.D.N.Y. 2016).  Plaintiff was

even advised, in a July 13, 2018 letter, that Flanagan and Palmieri had not been served with the

Complaint, yet he still made no effort to serve them.  ECF No. 20 at 1 n.1; *see Hertzner v. U.S.*

*Postal Serv.*, 2007 WL 869585, at *6 (E.D.N.Y. Mar. 20, 2007) (holding plaintiff's failure to

10

timely serve defendants deprived Court of personal jurisdiction and finding no good cause to

extend service period where "it was the attorney's inadvertence, neglect, mistake or misplaced

reliance that resulted in service not being effected in a timely manner").

### III.        PLAINTIFF LACKS ARTICLE III STANDING

As a threshold matter, the Complaint should be dismissed as against the State Defendants

because Plaintiff lacks Article III standing.  To invoke this Court's subject matter jurisdiction

under Article III of the U.S. Constitution, Plaintiff must establish:  "(1) that [plaintiff] has

suffered an injury in fact, (2) that [the alleged injury] is causally connected to the defendant, and

(3) that it is likely to be redressed by the court."  *Hassan v. United States*, 441 Fed. App'x 10, 11

(2d Cir. 2011).  Each element of standing "must be supported in the same way as any other

matter on which the plaintiff bears the burden of proof," *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 561 (1992), and Plaintiff must establish Article III standing against each defendant.  *See*

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 61, 66 (2d Cir. 2012).

Here, the voluminous record of contemporaneous complaints and statements regarding

Plaintiff's conduct demonstrates unequivocally that Plaintiff was barred from practicing at the

TVB because of his violent, threatening and unprofessional conduct, not because of any illegal

action by any of the State Defendants.  *See* Montana Decl. Exs. 1-28.  Plaintiff therefore lacks

Article III standing to assert any claims against any of the State Defendants concerning his

permanent ban from the TVB.  *See Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA,*

*Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) (recognizing that a "plaintiff cannot establish

Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own

alleged injury") (citations omitted); *see also Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 417

(2013) (no standing where alleged harm was "self-inflicted"); *Pennsylvania v. New Jersey*, 426

U.S. 660, 664 (1976) ("No [party] can be heard to complain about damage inflicted by its own hand."); *St. Pierre v. Dyer*, 208 F.3d 394, 402-03 (2d Cir. 2000) (plaintiff lacks standing where "injury is so completely due to the plaintiff's own fault as to break the causal chain" between defendants and the alleged injury, such as an "unreasonable decision on the part of the plaintiff to bring about a harm that he knew to be avoidable") (citation omitted).[5]

## IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR FIRST AMENDMENT RETALIATION (FIRST CAUSE OF ACTION)

"To plead a First Amendment retaliation claim a plaintiff must show:  (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citation omitted).  "[R]etaliation claims that are 'unsupported, speculative, and conclusory' may be dismissed on the pleadings." *Corley v. City of N.Y.*, 2017 WL 4357662, at *19 (Sept. 28, 2017) (citing *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)); *see also Epstein v. Cty. of Suffolk*, 2015 WL 5038344, at *9 (E.D.N.Y. Aug. 26, 2015) ("[C]onclusory allegations of causation will simply not support a First Amendment retaliation claim.") (citation omitted).

Plaintiff's First Amendment retaliation claim should be dismissed for the reasons below.

### A.     Plaintiff Fails to Plausibly Allege Retaliation For Any Protected First Amendment Activity

Plaintiff alleges that the State Defendants violated his constitutional rights by retaliating against him for exercising protected First Amendment activity.  Compl. ¶ 74.  Specifically, Plaintiff alleges that he wrote a letter to AAG Morgan "complaining of the conduct of

---

[5] *See also Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("[S]elf-inflicted harm doesn't satisfy the basic requirements for standing"); *Frank v. United States*, 78 F.3d 815, 822 (2d Cir. 1996), *vacated on other grounds*, 521 U.S. 1114 (1997) (noting that if plaintiff's "injury is self-inflicted, he lacks standing for Article III purposes").

Defendants Gelbstein and Smart," *id.* ¶ 71, and speculates that his permanent ban from the TVB was "motivated or substantially caused by Plaintiff's exercise of his First Amendment rights." *Id.* ¶ 74; *see also id.* ¶¶ 39, 42, 59; *see* Siegmund Decl. Ex. 7 (letter to AAG Morgan).

Plaintiff's First Amendment retaliation claim should be dismissed because his speculation that he was barred from the TVB in retaliation for his March 20, 2015 letter to AAG Morgan is impermissibly "unsupported, speculative, and conclusory." *Boddie*, 105 F.3d at 862; *Epstein*, 2015 WL 5038344, at *9. Plaintiff's speculation is also implausible given his own admissions that the DMV had received "complaints of [Plaintiff's] misconduct" (Compl. ¶ 5), that there was a "physical confrontation" between Plaintiff and security guard Smart (*id.* ¶ 11), and that Plaintiff would sometimes "throw a punch" in the TVB (ECF No. 27 at 4 ¶¶ 9, 10). *See Iqbal*, 556 U.S. at 678-79 (factual detail alleged in complaint must be "plausible on its face" and Court may "draw on its judicial experience and common sense" in determining plausibility of allegations); *see, e.g.*, *Heller v. Bedford Cent. Sch. Dist.*, 665 Fed. App'x 49, 53 (2d Cir. 2016) (affirming dismissal of First Amendment retaliation claim as "not plausible on its face" on Rule 12(b)(6) motion to dismiss where plaintiff's threatening statements reflected he "posed a risk of physical harm to others").

## B.  Plaintiff Fails to Allege a Conspiracy Under Section 1985

Plaintiff also alleges, conclusorily, that defendants Gelbstein and Calvo "conspired" with security guard Smart "in making false allegations against the Plaintiff and attempting to provoke the Plaintiff in physical confrontations at the TVB for the purpose of getting the Plaintiff permanently barred from TVB in retaliation for Plaintiff's exercise of his First Amendment rights. . . ." Compl. ¶ 62. Such "[c]onclusory allegations of the defendants' alleged participation in a conspiracy are inadequate to make out a claim under [42 U.S.C.] § 1985." *Smith v. Metro N.*

*Commuter R.R.*, 2000 WL 1449865, at *5 (S.D.N.Y. Sept. 29, 2000) (citing *X-Men Security, Inc. v. Pataki*, 196 F.3d 56, 71 (2d Cir. 2000)).  In addition, Plaintiff fails to allege any class-based, invidiously discriminatory animus, as required to assert claims under Sections 1985 and 1986. *See Reynolds*, 685 F.3d at 201-02 ("[42 U.S.C.] §§ 1985 and 1986 require some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action") (citations omitted); *see also Ochoa v. Brattoni*, 2017 WL 5900552, at *9 (S.D.N.Y. Nov. 28, 2017) (dismissing conspiracy claim because allegations in complaint failed to "plausibly suggest" an agreement among defendants or that defendants were motivated by a "invidiously discriminating racial animus") (citations omitted); *Best v. Schneider*, 2016 WL 1593354, at *4-5 (E.D.N.Y. Mar. 30, 2016), *adopted by* 2016 WL 1601194 (E.D.N.Y. Apr. 20, 2016) (holding plaintiff failed to plead claim for conspiracy under Section 1985 for First Amendment retaliation because plaintiff failed to plausibly demonstrate defendants' participation in conspiracy, failed to "plausibly allege that defendants had an improper motive," and did not "identify [plaintiff's] race, claim that he is a member of a protected class, or alleged that he was discriminated against because of his race").

## C.    Plaintiff's Behavior Is Not Protected by the First Amendment

Plaintiff's own allegations and admissions, as well as the incontrovertible documentary record of contemporaneous complaints regarding Plaintiff's behavior, reflect that the DMV barred Plaintiff from practicing at the TVB not because of any protected First Amendment activity by Plaintiff, but because of Plaintiff's violent and threatening behavior, including Plaintiff's violent confrontation with defendant Smart.  Compl. ¶¶ 5, 11; ECF No. 27 at 4 ¶¶ 9, 10; *see also* Montena Decl. Exs. 1-28.  The violent and threatening behavior for which Plaintiff was banned is not protected by the First Amendment.  *See Roth v. Farmingdale Sch. Dist.*, 2017

14

WL 395211, at *15 (E.D.N.Y. Jan. 30, 2017) ("threatening behavior" that led to plaintiff's

expulsion from school property was "not shielded by the First Amendment"); *see also NAACP v.*

*Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect

violence."); *Smith*, 2000 WL 1449865, at *5 (First Amendment does not protect "words [that],

by their very utterance, inflict injury or tend to evoke immediate violence or other breach of the

peace") (citations omitted).  Indeed, far from being protected by the First Amendment, Plaintiff's

behavior violated the DMV's regulations requiring attorneys practicing in the TVB to conform to

the "standards of conduct required of attorneys appearing before State courts."  15 N.Y.C.R.R. §

124.2(a); *see generally* Rules of Professional Conduct (22 N.Y.C.R.R. § 1200.0), Rule 3.3(f)

(lawyers appearing before a tribunal shall not "engage in undignified or discourteous conduct" or

"engage in conduct intended to disrupt the tribunal"); *id.* Rule 8.4.[6]

### D. There Is No First Amendment Right to Represent Clients in Courts

Plaintiff also purports to allege a violation of his "right to practice his profession in the

TVB Court[.]"  Compl. ¶ 72.  However, Plaintiff does not have a First Amendment right to enter

DMV facilities for the purpose of representing clients.  *See Jacoby & Meyers, LLP v. Presiding*

*Justices of the First, Second, Third and Fourth Departments, Appellate Division of the Sup. Ct.*

*of the State of N.Y.*, 852 F.3d 178, 187 (2d Cir. 2017) (dismissing law firm's First Amendment

challenge to regulation allegedly restricting lawyers' right to access courts because that right

"belongs to the client, not the attorney," and recognizing that although *litigants* have a First

Amendment right to access courts, "[w]e are not aware of any judicial recognition of such an

interest . . . when it comes to the *lawyer's* generic act of pursuing litigation on behalf of any

---

[6] *See also In re Monaghan*, 295 A.D.2d 38, 40 (N.Y. App. Div. 2d Dep't 2002) (per curiam) (lawyer violated ethics rules for "personal attacks" on female colleague during deposition); *In re Linietsky*, 263 A.D.2d 102, 104 (N.Y. App. Div. 2d Dep't 1999) (per curiam) (lawyer violated ethics rules by, *inter alia*, using "graphic and obscene language" and having "repeatedly threatened [a colleague] with physical violence").

client") (emphasis added); *see also Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447, 459 (1978) ("A lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns.").

Moreover, even if any protected First Amendment speech by Plaintiff were actually at issue, courtrooms and similar judicial fora such as the TVB are not public spaces open to free expression. *See Huminski v. Corsones*, 396 F.3d 53, 90-91 (2d Cir. 2004) ("[Courts have] not been traditionally held open for the use of the public for expressive activities.") (citation omitted); *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) ("A courthouse – and, especially, a courtroom – is a nonpublic forum.") (citations omitted). Indeed, courts have long recognized the government's right to restrict access to courtrooms and other government facilities for public safety reasons. *See People v. Reape*, 22 Misc. 3d 615, 618-19 (N.Y.C. Crim. Ct. Kings Cty. 2008) (holding officials acted lawfully in revoking license of defendant who was "yelling and screaming" to remain upon public property).[7]

### V.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF DUE PROCESS (SECOND CAUSE OF ACTION)

Plaintiff alleges that the State Defendants violated his alleged due process rights by depriving him of a "property and/or liberty interest" in practicing law at the TVB because they did not "adequately apprise" Plaintiff of the reasons for his permanent ban from the TVB or inform him of an alleged right "to a hearing and confront any accusers." Compl. ¶¶ 78, 83.

To assert a procedural due process claim, Plaintiff must "[1] identify a constitutionally

---

[7] *See also Katz v. Murtagh*, 28 N.Y.2d 234, 238 (1971) (courts "must act instantly to suppress disturbances or violence or physical obstruction or disrespect to the court when occurring in open court") (citation omitted); *People v. Hedemann*, 107 Misc. 2d 241, 242 (N.Y. Sup. Ct. App. T. 1st Dep't 1981) ("Even where municipal or State property is open to the public generally, the exercise of First Amendment rights may be regulated so as to prevent interference with the ordinary use of the property by other members of the public with an equal right of access to it.").

protected property or liberty interest and [2] demonstrate that the government has deprived that party of the interest without due process of law." *Weinstein v. Albright*, 261 F.3d 127, 134 (2d Cir. 2001).  Plaintiff must have a "legitimate claim of entitlement to" a liberty or property interest created by "independent sources such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see Schwartz v. Mayor's Comm. on Judiciary of City of N.Y.*, 816 F.2d 54, 57 (2d Cir. 1987) (plaintiff's "subjective expectation" insufficient to create protected right).

Plaintiff's due process claim should be dismissed for the reasons set forth below.

### A.     Plaintiff Does Not Have a Due Process Right to Practice Law at the TVB

Plaintiff does not have a protected liberty or property interest in continuing to practice law at the TVB.  To assert a due process claim, the challenged restriction must amount to a "complete prohibition" on one's ability to practice law.  *See Conn v. Gabbert*, 526 U.S. 286, 292 (1999); *Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999), *aff'd* 225 F.3d 646 (2d Cir. 2000) ("It is well settled that one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest.") (citations omitted).[8]  Here, Plaintiff's ban from the TVB did not prevent him from practicing law.  Indeed, he continues to practice law and is employed at a law firm.  *See* http://frankpelusolaw.com/attorneyprofiles (profile for "Mario H. Capogrosso").

### B.     Plaintiff Cannot State a Due Process Claim Based on the DMV's Discretionary Determination to Ban Plaintiff From the TVB

Even if Plaintiff could claim a protected liberty or property interest in continuing to practice law at the TVB (he cannot), the DMV was not required to hold a hearing before barring

---

[8] *See also Leis v. Flynt*, 439 U.S. 438, 443 (1979) (rejecting out-of-state lawyers' alleged due process right to appear in state court to represent clients and holding lawyers' "reasonable expectations of professional service" were insufficient to create protected property interest).

17

Plaintiff from the TVB.  The DMV's regulations permit it to ban lawyers from the TVB for misconduct and do not require an evidentiary hearing.  *See* 15 N.Y.C.R.R. § 124.2(a).  The DMV had discretion concerning whether to enforce the regulation against Plaintiff, and its exercise of that discretion cannot support a due process claim.  *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("[W]here the complained-of conduct concerns matters that are within an official's discretion, entitlement to [a] benefit arises only when the discretion is so restricted as to virtually assure conferral of the benefit.") (citations omitted); *Schwasnick v. Fields*, 2010 WL 2679935, at *6 (E.D.N.Y. Jun. 30, 2010) (a decision regarding "whether to enforce a law is discretionary and cannot support a due process claim") (citations omitted).[9]

### C.     Plaintiff's Due Process Claim Fails Because He Had a Post-Deprivation Opportunity to Be Heard

Finally, Plaintiff's due process claim should be dismissed because he could have challenged his ban by commencing a CPLR Article 78 proceeding within four months of the ban, as he did in 2012 after he had been barred from the TVB in 2011 for earlier violent, threatening and unprofessional behavior.  *See* Siegmund Decl. Ex. 1.  "The opportunity to pursue an Article 78 proceeding in New York State Supreme Court constitutes a *wholly adequate* post-deprivation hearing for due process purposes."  *Rubin v. Swarts*, 2011 WL 1004838, at *4 (E.D.N.Y. Mar. 18, 2011) (emphasis added; citations omitted).  "Because [plaintiff] could have initiated an Article 78 proceeding after the DMV [barred him from the TVB], he had a meaningful post-deprivation remedy and his constitutional due process rights were not violated."  *Id.* (holding an Article 78 proceeding in state court was the "proper forum" for a due process claim against the

---

[9] *See generally Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) (recognizing that "States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions").

DMV); *see also Campo v. N.Y. City Employees' Ret. Sys.*, 843 F.2d 96, 100-03 (2d Cir. 1988)

(dismissing procedural due process claim based on availability of Article 78 review of

administrative determination); *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984), *cert. denied*,

469 U.S. 932 (1984) (same); *Aetna Cas. & Sur. Co. v. Manshul Const. Corp.*, 1997 WL 214946,

at *8 (S.D.N.Y. Apr. 29, 1997) (same).  The fact that Plaintiff failed to commence an Article 78

proceeding within the applicable four-month statute of limitations period, *see* N.Y. C.P.L.R.

§ 217(1), "does not prevent this Court from taking into account the availability of such

proceedings when determining whether he has been afforded due process."  *Rubin*, 2011 WL

1004838, at *4 n.6 (citations omitted); *see also Hellenic Am. Neighborhood Action Cmte. v. City

of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("[Plaintiff] cannot resuscitate its due process claim

simply because an Article 78 proceeding is now barred by Article 78's four-month statute of

limitations.").

## VI.      THE STATE DEFENDANTS CANNOT BE HELD LIABLE FOR THE ALLEGED ACTIONS OF SECURITY GUARD SMART

The Complaint alleges that security guard Smart "repeatedly harassed, annoyed and

alarmed the Plaintiff," Compl. ¶ 62, that Plaintiff had a "right to be free from threats, threats of

violence and harassment" by defendant Smart and that certain State Defendants, acting in their

alleged "supervisory capacity," were indifferent to and "condoned and ratified" alleged

misbehavior by Smart.  *Id*. ¶¶ 72, 73.  As a threshold matter, these allegations have nothing to do

with First Amendment retaliation or violation of procedural due process rights, Plaintiff's only

two substantive claims against the State Defendants.

Plaintiff identifies no basis by which any of the State Defendants could be held liable

under the federal civil rights laws for the alleged conduct of a privately-employed security guard,

nor could he.  For example, Plaintiff may not seek damages from the State Defendants for

Smart's alleged behavior under a vicarious liability theory, particularly given Plaintiff's allegation that Smart was employed by defendant PEC Group of NY, Inc., not by any State Defendants.  Compl. ¶ 28.  "There is no vicarious liability in a Section 1983 action."  *Kiernan v. Town of Southampton*, 2018 WL 2251633, at *5 (2d Cir. May 17, 2018); *see Best v. Mullet*, 1990 WL 88601, at *2 (E.D.N.Y. Jun. 14, 1990) ("[T]he doctrine of *respondeat superior* or vicarious liability is unavailable as a basis for imposing liability under section 1983 or section 1985.") (citations omitted); *see also Morales v. N.Y.*, 22 F. Supp. 3d 256, 273-74 (S.D.N.Y. 2014) ("Supervisory officials may not be held liable [under Section 1983] merely because they held a position of authority.") (citations omitted); *Kirkman v. Astoria Gen. Hosp.*, 204 A.D.2d 401, 402 (N.Y. App. Div. 2d Dep't 1994), *lv. to appeal denied*, 84 N.Y.2d 811 (1994) (holding "as a matter of law" that hospital could not be held vicariously liable for tort committed by a security guard who was employed and supervised by a third party security services company).[10]

In any event, regardless of the theory of liability asserted by Plaintiff, the Complaint contains nothing but conclusory allegations that certain State Defendants supervised defendant Smart and were "deliberate[ly] indifferen[t]" to and "condoned and ratified" his conduct, Compl. ¶ 73, which are insufficient to support a finding of liability.  *See* Point VII, *infra*.[11]

## VII.   PLAINTIFF'S SUPERVISORY LIABILITY ALLEGATIONS ARE DEFICIENT

Only defendants Gelbstein and Calvo are alleged to have personally participated in the DMV's decision to permanently ban Plaintiff from the TVB on May 11, 2015.  *See* Compl. ¶¶

---

[10] Even if the *DMV* could be held vicariously liable for the alleged actions of a private security guard (and it cannot), there would nonetheless be no basis for Plaintiff to seek damages against any *individual employees* of the DMV.

[11] Plaintiff's allegations regarding the State Defendants' response to alleged "threats" by security guard Smart are also time-barred to the extent they concern behavior by Smart prior to May 8, 2015, *i.e.*, three years before this action was commenced.  *See* Compl. ¶ 62 (alleging harassment by security guard Smart "[f]or a long period of time up to and including May 11, 2015"); *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995).

38, 58.  The other State Defendants are alleged only to have acted indifferently and (except for

AAG Morgan) to have various supervisory responsibilities.  *See id.* ¶ 46 (Supervisory ALJ

Vahdat acted "with complete indifference"); *id.* ¶ 49 (former DMV First Assistant Legal Counsel

Traschen ignored Plaintiff's phone calls and letters); *id.* ¶ 52 (AAG Morgan acted "with

complete indifference"); *id.* ¶ 55 (supervisory clerks Flanagan and Palmieri acted "with complete

indifference"); *id.* ¶ 73 (alleging these defendants were indifferent to "and/or condoned and

ratified" alleged misconduct by Gelbstein, Calvo and Smart).  These conclusory, unsupported

allegations are insufficient to state any claims against those defendants.  *See Colon v. Coughlin*,

58 F.3d 865, 873 (2d Cir. 1995) ("[P]ersonal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983."); *Bass v. Jackson*, 790 F.2d

260, 263 (2d Cir. 1986) (dismissing claims against supervisory officials because plaintiff failed

to "allege a tangible connection between the acts of a defendant and the injuries suffered");

*Conte v. Cty. of Nassau*, 2008 WL 905879, at *19 n.15 (E.D.N.Y. Mar. 31, 2008) ("Supervisory

status alone is not enough to survive a motion to dismiss.") (citations omitted).[12]

## VIII.        PLAINTIFF FAILS TO STATE ANY CLAIMS AGAINST DEFENDANT MORGAN, AND SHE HAS ABSOLUTE IMMUNITY

The only allegations against defendant Morgan, an AAG in the Office of Attorney

General, which represented the DMV in the 2012 state court proceeding commenced by Plaintiff

and which represents the State Defendants in this action, are that Plaintiff sent her a letter in

---

[12] *See also Newland v. N.Y. City Dep't of Correction*, 2018 WL 1525663, at *1 (E.D.N.Y. Mar. 28, 2018)
(allegations that supervisory officials "had well-known knowledge" of alleged violation held insufficient);
*Cleveland v. Schenectady Cty. Dep't of Children and Families*, 2016 WL 8193580, at *3 (N.D.N.Y. Dec. 30, 2016),
*adopted by* 2017 WL 449768 (N.D.N.Y. Feb. 1, 2017) (allegations that supervisory officials "knew" and "expressly
approved of [wrongful conduct], or failed to prevent the wrongful conduct," held insufficient); *Cicio v. Graham*,
2009 WL 537534, at *7 (N.D.N.Y. Mar. 3, 2009) ("Vague and conclusory allegations that a supervisor has failed
to . . . properly monitor the actions of subordinate employees will not suffice to establish the requisite personal
involvement and support a finding of liability" under Section 1983) (citations omitted).

March 2015 in which Plaintiff "complained of the conduct of Defendants Gelbstein and Smart," and that defendant Morgan "failed to respond" to his letter.  Compl. ¶¶ 9, 50-52; Siegmund Decl. Ex. 7 (Plaintiff's letter).[13]  AAG Morgan should be dismissed as a defendant because there are no allegations that she violated any of Plaintiff's constitutional rights, nor does Plaintiff cite to any statute pursuant to which AAG Morgan or the Office of Attorney General is authorized to supervise DMV or its employees.  Indeed, it would be preposterous if Plaintiff could assert damages claims against a government attorney simply by mailing a letter and not receiving a response.  *See Gregory v. Incorporated Vill. of Centre Island*, 2016 WL 4033171, at *8 (E.D.N.Y. Jul. 27, 2016) (dismissing First Amendment retaliation claim based upon defendant's alleged failure to respond to plaintiff's petition for redress and noting that "the refusal to consider or act upon grievances is not conduct that violates the First Amendment") (citations omitted).

Moreover, as an attorney in the Office of the New York Attorney General, she has absolute immunity from any civil liability.  *See Barrett v. United States*, 798 F.2d 565, 573 (2d Cir. 1986) (AAG held protected from liability by absolute immunity when representing state in civil action); *Roache v. The Attorney Gen.'s Office*, 2013 WL 5503151, at *13-14 (N.D.N.Y. Sept. 30, 2013) (recognizing that AAGs are absolutely immune from liability for conduct in prosecuting and defending civil actions); *Firth v. State of N.Y.*, 12 A.D.3d 907, 907-08 (N.Y. App. Div. 3d Dep't 2004) (Attorney General's absolute immunity extends to AAGs); *Levy v. State*, 86 A.D.2d 574 (N.Y. App. Div. 1st Dep't 1982), *aff'd* 58 N.Y.2d 733 (1982) (recognizing AAG's "absolute immunity from civil suit when acting in his official capacity").

---

[13] Plaintiff presumably sent his letter to defendant Morgan in 2015 because of this Office's representation of the DMV in Plaintiff's 2012 state court proceeding.  However, this Office's representation of the DMV in that proceeding ended when the proceeding was settled in 2012.  *See supra* at 6; Siegmund Decl. Ex. 6.

## IX.        THE STATE DEFENDANTS HAVE QUALIFIED IMMUNITY

Plaintiff's claims against the State Defendants should also be dismissed because they have qualified immunity from any liability for alleged constitutional violations.  "[Q]ualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A right is "clearly established" if "existing precedent" has "placed the statutory or constitutional question beyond debate" such that "every reasonable official would have understood that what he is doing violates" plaintiff's constitutional rights. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).  Courts should consider "both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances . . . , would have understood that his actions were unlawful."  *Hanrahan v. Doling*, 331 F.3d 93, 98 (2d Cir. 2003) (citations omitted).  Qualified immunity is intended to "ensure that 'insubstantial claims' against government officials [will be] resolved prior to discovery" and accordingly should be resolved "at the earliest possible stage in litigation," such as on a motion to dismiss.  *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citations omitted).[14]

Here, the State Defendants are shielded from any liability by qualified immunity because, to the extent any of them were personally involved in the DMV's decision to permanently ban Plaintiff from the TVB in 2015 for his violent and threatening behavior, they did not violate any of Plaintiff's clearly established constitutional rights and it was objectively reasonable, under the

---

[14] *See, e.g.*, *Birch v. City of N.Y.*, 184 F. Supp. 3d 21, 28-31 (E.D.N.Y. 2016), *aff'd on other grounds*, 675 Fed. App'x 43 (2d Cir. 2017) (granting motion to dismiss First Amendment retaliation claim in part on qualified immunity grounds); *Thigpen v. N.Y.S. Dep't of Corr. Servs.*, 2010 WL 3895621, at *6-7 (S.D.N.Y. Oct. 5, 2010) (granting motion to dismiss on alternative ground of qualified immunity).

circumstances, for them to believe that their actions were lawful.  Indeed, far from demonstrating

a violation of any clearly established constitutional rights, Plaintiff had *no* constitutional right to

practice law at the TVB, to engage in violent and threatening behavior, or to an evidentiary

hearing before being barred from the TVB.  *See* Points IV, V, *supra*; *see also Surlock v. Delaney*,

2016 WL 3200273, at *44, *53 (N.D.N.Y. Jun. 8, 2016), *aff'd*, 717 Fed. App'x 100 (2d Cir.

2018) (officials who barred plaintiff from facility for his "outbursts and aggressive behavior

towards staff" as evidenced by "repeated complaints . . . regarding [plaintiff's] conduct" held

entitled to qualified immunity from liability for First Amendment retaliation claim because "no

objectively reasonable official would believe that [the ban] was in retaliation for Plaintiffs'

protected activity").

## X.        PLAINTIFF'S THIRD CAUSE OF ACTION SHOULD BE DISMISSED

Once Plaintiff's underlying substantive claims against the State Defendants are

dismissed, Plaintiff's third cause of action, seeking "prospective injunctive relief" (Compl. ¶ 88),

should be dismissed as well.  *See KM Enters., Inc. v. McDonald*, 2012 WL 4472010, at *20

(E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 Fed. App'x 12 (2d Cir. 2013) (dismissing permanent

injunction claim because "no substantive federal claim remains upon which the [p]laintiff can

base its request for . . . injunctive relief."); *see also Christe v. Hotels.com L.P.*, 756 F. Supp. 2d

382, 407 (S.D.N.Y. 2010) ("Injunction is not a separate cause of action; it is a remedy."); *Reuben

H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285, 293 (S.D.N.Y. 1995) (same).

## XI.       THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The Complaint should be dismissed with prejudice because it would be futile to permit

Plaintiff leave to amend.  "'[L]eave to amend need not be granted when amendment would be

futile.' . . . Granting leave to amend is futile where '[t]he deficiency in [the] complaint' is not

due to 'a lack of adequate factual allegations but rather a lack of entitlement to the relief sought.'"  *Pierre v. FJC Security Services, Inc.*, 2017 WL 4162304, at *8 (E.D.N.Y. Sept. 19, 2017) (Brodie, J.) (citing, *inter alia*, *Wright v. Semple*, 696 Fed. App'x 540 (2d Cir. 2017)). Here, amendment of the Complaint would be futile because Plaintiff cannot state a claim for violation of any constitutional rights based on his permanent ban from the TVB given (1) his admissions that he was banned from the TVB because of a "physical confrontation" with security guard Smart (Compl. ¶ 11), that "complaints of misconduct" were levied against him (*id.* ¶ 5), and that he would sometimes "throw a punch" to let off steam (ECF No. 27 at 4 ¶¶ 9, 10); (2) the fact that the DMV has discretion to ban lawyers from the TVB for unprofessional behavior, *see* 15 N.Y.C.R.R. § 124.2(a); (3) AAG Morgan's absolute immunity and the State Defendants' qualified immunity from any liability; and (4) the utter implausibility, in the face of the incontrovertible record of Plaintiff's history of violent, threatening and unprofessional behavior at the TVB, of Plaintiff's contention that he was the target of a conspiracy by the State Defendants to violate his constitutional rights.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the State Defendants' motion to dismiss the Complaint in its entirety, and enter judgment dismissing this action as to the State Defendants with prejudice.

Dated: New York, New York
      August 16, 2018

                    BARBARA D. UNDERWOOD
                    Attorney General of the State of New
                     York
                    Attorney for Defendants Gelbstein,
                     Vahdat, Traschen, Morgan,
                     Flanagan, Palmieri, and Calvo

             By: _____
                     Mark Siegmund
                     Assistant Attorney General

             28 Liberty Street
             New York, New York 10005
             Tel. (212) 416-8627