UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO H. CAPOGROSSO,

                         Plaintiff,

- against -

ALAN GELBSTEIN, in his official and individual capacity; BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) in her official and individual capacity; IDA TRASCHEN, in her official and individual capacity; ELIZABETH PRICKETT-MORGAN, in her official and individual capacity; JEAN FLANAGAN, in her official and individual capacity; VINCENT PALMIERI, in his official and individual capacity; DANIELLE CALVO, in her official and individual capacity; SADIQ TAHIR, in his individual capacity; PEC GROUP OF NY, INC.; DAVID SMART, in his individual capacity; JOHN AND JANE DOE,

                         Defendants.

No. CV 18-2710-MKB

**DECLARATION OF BARBARA MONTENA**

BARBARA MONTENA hereby declares, pursuant to 28 U.S.C. § 1746, that:

1. I am an attorney employed at the New York State Department of Motor Vehicles ("DMV"), where I serve as an Assistant Counsel in DMV's Office of Counsel in Albany, New York. I respectfully submit this Declaration, based on personal knowledge and my review of files maintained by the DMV in the regular course of its business, in support of the motion to dismiss of defendants Alan Gelbstein, Bushra Vahdat, Ida Traschen, Elizabeth Morgan (formerly Prickett-Morgan), Jean Flanagan, Vincent Palmieri, and Danielle Calvo (collectively, the "State Defendants") in the above-captioned action.

**Plaintiff's Failure to Serve Defendants Flanagan and Palmieri**

2. I understand that Plaintiff's deadline to serve the Verified Complaint ("Complaint") on all of the defendants was August 6, 2018, pursuant to Rule 4(m) of the Federal

Rules of Civil Procedure and the Order filed at ECF No. 4.

3.  All of the State Defendants other than defendant Elizabeth Morgan, an Assistant Attorney General in the New York State Office of Attorney General, are current or former officials or staff members of the DMV. Defendant Morgan is not a current or former employee or official of the DMV.

4.  I have caused an investigation to be conducted into whether each of the defendants who are current or former DMV employees was served with the Complaint. That investigation has revealed that two of these defendants were never served with the Complaint: Jean Flanagan and Vincent Palmieri.

5.  I have been informed that, on or about June 12, 2018, a process server or someone acting on Plaintiff's behalf attempted to serve the Complaint on a different person named Jean Flanagan, who is employed at the New York State Office of Information Technology Services, by personally serving that person's daughter at home. However, that Jean Flanagan is not a defendant in this action. Defendant Jean Flanagan is a current employee of the DMV, not the Office of Information Technology Services.

6.  I have been further informed that there has been no attempt by Plaintiff to serve defendant Palmieri or any further attempt by Plaintiff to serve defendant Flanagan after June 12, 2018.

### Documents in the DMV's Records Regarding Plaintiff's History of Violent, Threatening and Unprofessional Behavior

7.  Plaintiff has a long and troubling history of violent, offensive and unprofessional conduct at the DMV's Traffic Violations Bureau ("TVB"), as reflected in the numerous contemporaneous statements, complaints and reports attached hereto.

8.  Attached as **Exhibit 1** is a true and correct copy of an undated letter written by L.

2

Perez Jr., a clerk at the Brooklyn South TVB, to Administrative Law Judge ("ALJ") Alan Gelbstein, reporting an incident involving Plaintiff on April 21, 2009. Mr. Perez stated, *inter alia*, that Plaintiff "bumped real hard into" a person named Tanya Rabinovich, who was "very shaken by his actions."

9. Attached as **Exhibit 2** is a true and correct copy of a letter from Roy Tucci, a clerk at the Brooklyn South TVB, to ALJ Gelbstein, dated April 21, 2009, reporting an incident involving Plaintiff on that date. Mr. Tucci stated, *inter alia*, that Plaintiff "moved toward Tanya [Rabinovich], and they seem[ed] to bump."

10. Attached as **Exhibit 3** is a true and correct copy of a letter from Marisol Cervoni, a clerk at the Brooklyn South DMV, to ALJ Gelbstein, dated June 19, 2009, reporting an incident involving Plaintiff. Ms. Cervoni stated, *inter alia*, that she could "no longer interact with Mr. Capogrosso at the service counter" because she feared for her safety and that Ms. Cervoni had observed Plaintiff's "aggressive behavior" towards his "co-workers, his clients, the other attorneys and their assistants," including assaulting a female assistant who works for another lawyer.

11. Attached as **Exhibit 4** is a true and correct copy of a letter from Diantha L. Fuller, Esq., addressed to "Dear Judge," dated August 5, 2009, reporting an incident involving Plaintiff.

12. Attached as **Exhibit 5** is a true and correct copy of a notarized letter from Jason Dorset, a former client of Plaintiff's, dated September 28, 2010, reporting that Plaintiff represented Mr. Dorset without authorization in a matter.

13. Attached as **Exhibit 6** is a true and correct copy of a petition sent to Supervising ALJ Vahdat that was signed by 18 officials and staff members of the Brooklyn South TVB, dated January 6, 2011, stating, *inter alia*, that Plaintiff's behavior was "unacceptable" and that

3

his presence "constitutes a threat to our physical safety," and requesting that his "behavior be dealt with and that the management of this agency alleviates this threat to our physical safety."

14. Attached as **Exhibit 7** is a true and correct copy of an undated letter submitted by Yaakov Brody, an attorney who practiced at the Brooklyn South TVB, reporting an incident on December 21, 2011 involving Plaintiff. Mr. Brody stated in his letter, *inter alia*, that Plaintiff "took his coffee cup which still had some coffee inside and threw it in my direction . . . ," and that Plaintiff "went on a rant on how I was a 'jew fucking cunt' a phrase which he repeated about six or seven times" and "went on to say how this place was 'run by jews.'"

15. Attached as **Exhibit 8** is a true and correct copy of an undated letter from Richard F. Maher, an attorney who practiced at the Brooklyn South TVB, reporting an incident involving Plaintiff that took place on December 21, 2011. Mr. Maher stated in his letter, *inter alia*, that Plaintiff referred to Yaakov Brody as a "'fucking Jew cunt'" and "expressed the belief that the DMV was in fact run by 'fucking Jew cunts.'"

16. Attached as **Exhibit 9** is a true and correct copy of an undated letter by M. Sadiq Tahir, an attorney who practiced at the Brooklyn South TVB and a defendant in this action, reporting an incident involving Plaintiff that took place on December 21, 2011. Mr. Tahir stated in his letter, *inter alia*, that Plaintiff "started shouting against Jews," "tried to hit Mr. Meyers," an attorney, threatened to "send [Mr. Meyers] to the hospital," and "started hitting the wall and steel guards."

17. Attached as **Exhibit 10** is a true and correct copy of a letter from Jeffrey A. Meyers, an attorney who practiced at the Brooklyn South TVB, dated December 23, 2011, reporting an incident involving Plaintiff that took place on December 21, 2011. Mr. Meyers stated in his letter, *inter alia*, that he "overheard a loud commotion which I was told resulted in a

tirade of anti-Semitic slurs shouted by Mr. Mario Capogrosso," that Plaintiff's conduct "was one of abrasive incoherent loud mutterings in which he smashed his fist against concrete walls and steel beams that are situated outside the DMV hearing rooms, coupled with more anti-Semitic comments," that Plaintiff "suddenly became enraged and lunged at me with his fists with great speed and then smacked his fists against his other hand in a marshal [sic] arts form coming within 12 inches of my face," and that Plaintiff referred to Jews as "you people, you people."

18. Attached as **Exhibit 11** is a true and correct copy of a letter from Ida L. Traschen, former First Assistant Counsel in the DMV's Office of Counsel, to Chris McDonough, Plaintiff's former attorney, dated February 8, 2012.

19. As explained in Ms. Traschen's letter, Plaintiff was barred from the TVB in December 2011 as a result of violent and offensive conduct that threatened the "safety and well-being of [the DMV's] employees and visitors." Ms. Traschen informed Plaintiff's counsel that Plaintiff would not be allowed to practice at the TVB "[u]ntil such time that it can be determined that Mr. Capogrosso is no longer a threat to the safety and well-being of TVB employees and visitors. . . ." *See* Ex. 11 at 2.

20. On or about March 1, 2012, Plaintiff commenced a proceeding in the Supreme Court of the State of New York, Kings County, pursuant to Article 78 of New York's Civil Practice Law and Rules, challenging Plaintiff's ban from the TVB in December 2011. That proceeding was styled *Capogrosso v. New York State Department of Motor Vehicles*, Index No. 7738/12.

21. The proceeding was dismissed after the DMV agreed to permit Mr. Capogrosso to resume practicing at the TVB, if he successfully completed an anger management course and agreed to conduct himself professionally and not engage in any further acts of violence, threats

of violence, harassment or intimidation.

22. Copies of several legal documents filed by the parties in that proceeding are attached as exhibits to the accompanying Declaration of Mark Siegmund.

23. Unfortunately, despite his completion of the anger management course in 2012, Plaintiff's violent, threatening and unprofessional behavior at the TVB continued, as reflected in the complaints and reports referenced below.

24. To protect their privacy, the names, phone numbers and addresses of individuals who submitted statements and reports regarding Plaintiff's conduct have been redacted, unless such information was previously disclosed in the 2012 state court proceeding or such individuals are named as defendants in the instant action.[1]

25. Attached as **Exhibit 12** is a true and correct copy of an undated letter from a clerk at the Brooklyn South TVB reporting an incident involving Plaintiff that took place on October 29, 2014.

26. Attached as **Exhibit 13** is a true and correct copy of an undated letter from a former client of Plaintiff's reporting an incident involving Plaintiff that took place on February 5, 2015. The author of the letter states, *inter alia*, that he was "threatened" by Plaintiff with physical violence and that Plaintiff told him to "go fuck [him]self" after he had told Plaintiff he would like another lawyer.

27. Attached as **Exhibit 14** is a true and correct copy of a note by David Smart, a security guard at the Brooklyn South TVB, dated February 3 (referring to February 3, 2015), reporting that Plaintiff "deliberately walked into me."

28. Attached as **Exhibit 15** is a true and correct copy of an undated letter from an

---

[1] Should the Court request that unredacted versions of these documents be submitted to the Court for *in camera* review or publicly filed with the Court, the State Defendants will of course comply with any such request.
6

attorney at the Brooklyn South TVB concerning an incident involving Plaintiff on February 5, 2015.

29. Attached as **Exhibit 16** is a true and correct copy of an email from a TVB employee to ALJ Gelbstein, dated February 9, 2015, concerning an incident involving Plaintiff that took place on November 18, 2014. The employee stated, *inter alia*, that Plaintiff used offensive language when speaking to the employee.

30. Attached as **Exhibit 17** is a true and correct copy of a letter from M. Sadiq Tahir, an attorney who practiced at the Brooklyn South TVB and a defendant in this action, and another attorney, dated March 19, 2015, concerning an incident involving Plaintiff that took place on March 13, 2015. Mr. Tahir and the other author of the letter stated, *inter alia*, that Plaintiff displayed increasingly hostile and erratic behavior, including that he "repeatedly said 'shit'" to them whenever he passed either of them in the hallway.

31. Attached as **Exhibit 18** is a true and correct copy of a letter from a TVB clerk, dated May 5, 2015, concerning an incident involving Plaintiff that took place on May 5, 2015. The author of the letter states, *inter alia*, that Plaintiff screamed "obscenities and threats" and was "more often than not a menace to the office staff, customers, as well as the other attorneys who practice in this office."

32. Attached as **Exhibit 19** is a true and correct copy of a letter from an attorney who practiced at the Brooklyn South TVB to ALJ Gelbstein, dated May 5, 2015, reporting an incident involving Plaintiff on that date. The author of the letter stated, *inter alia*, that Plaintiff used profanity and offensive language, said he was "angry" at ALJ Gelbstein, and that ALJ Gelbstein should "put a gun to his own head." The author also stated: "It appears to me that over the past few weeks Mario Capogrosso has become more aggressive in both his words and demeanor and

7

has been creating an atmosphere of fear and threatening both attorneys and DMV staff."

33. Attached as **Exhibit 20** is a true and correct copy of a letter by Mr. Tahir, dated May 5, 2015, concerning an incident involving Plaintiff on that date. Mr. Tahir stated in his letter, *inter alia*, that Plaintiff tried to provoke him into an altercation and repeatedly used profanity when passing Mr. Tahir in the hallway.

34. Attached as **Exhibit 21** is a true and correct copy of a Report of Workplace Violence Incident signed by Danielle Calvo, a clerk at the Brooklyn South TVB, and Jean Flanagan, Ms. Calvo's supervisor, dated May 5, 2015, reporting an incident involving Plaintiff that occurred on that date. The report states, *inter alia*, that Plaintiff caused a "disruption of the office to both the motorists and the staff."

35. Attached as **Exhibit 22** is a true and correct copy of a Report of Workplace Violence Incident signed by Ms. Calvo, dated May 11, 2015, reporting a workplace violent incident involving Plaintiff that took place on that date. The report states that Plaintiff "pushed David in his chest," referring to David Smart, a security guard at the Brooklyn South TVB. The report also states that the police were called and responded to the violent incident, and that Ms. Calvo told Plaintiff "that he must leave the building[.]"

36. Attached as **Exhibit 23** is a true and correct copy of a letter from an attorney who practiced at the Brooklyn South TVB, dated May 11, 2015, regarding an incident involving Plaintiff that took place on that date. The author stated, *inter alia*, that Plaintiff "yelled at and pushed the Security Guard, David [Smart], with his right hand to David's chest/ shoulder area," and that Mr. Smart was "knocked back into a pole that divides the lanes of the line for the service counter" and that the attacked "seemed to be unsolicited[.]"

37. Attached as **Exhibit 24** is a true and correct copy of a letter signed by an attorney

8

who practiced at the Brooklyn South TVB, dated May 11, 2015, reporting an incident involving Plaintiff. The author stated, *inter alia*, that he "saw Mr. Capogrosso shove the security guard. David [Smart] was pushed back. It was a hard push."

38.  Attached as **Exhibit 25** is a true and correct copy of an Incident Information Slip, dated May 11, 2015, prepared by a police officer of the New York Police Department concerning the incident involving Plaintiff that took place on that date.

39.  Attached as **Exhibit 26** is a true and correct copy of an internal memorandum of the DMV, dated May 27, 2015, which, *inter alia*, reported the workplace violence incidents involving Plaintiff that took place on May 5, 2015 and May 11, 2015. The memorandum also states: "Mr. Capogrosso was asked to leave the building that day [on May 11, 2015] and since then has not been permitted to enter any of the TVB offices." Passages of the memorandum that do not concern the incidents involving Plaintiff have been redacted.

40.  Attached as **Exhibit 27** is a true and correct copy of a letter from an ALJ at the South Brooklyn TVB, dated "June 2015," reporting on behavior by Plaintiff at the TVB. The author of the letter states, *inter alia*, that Plaintiff had recently become "frightening & menacing" and more than once had interrupted court proceedings by "yelling in the hallway."

41.  Attached as **Exhibit 28** is a true and correct copy of a letter from Roy Tucci, a clerk at the Brooklyn South TVB, to ALJ Gelbstein, dated March 3, 2011, reporting an incident involving Plaintiff on that date.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:    August 15, 2018
             Albany, New York

                                        _____
                                               BARBARA MONTENA

9