Exhibit 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

FILE COPY

In the Matter of an Article 78 Proceeding

MARIO CAPOGROSSO,

Index No   7738/12

                                        Petitioner,

                    -against-

NEW YORK STATE DEPARTMENT OF MOTOR
VEHICLES,

                                        Respondent.

**AFFIRMATION OF
IDA L. TRASCHEN
IN OPPOSITION TO THE
ORDER TO SHOW
CAUSE**

IDA L. TRASCHEN, hereby affirms, pursuant to CPLR 2106(e), as follows:

1.     I am First Assistant Counsel in the Counsel's Office of the New York State

Department of Motor Vehicles (the "DMV"). I submit this affirmation based on personal

knowledge and my review of the legal files and records maintained by the DMV. This

affirmation is submitted in opposition to the order to show cause presented to this Court by

petitioner Mario Capogrosso, on April 12, 2012, seeking a temporary restraining order enjoining

the DMV from enforcing its prohibition of petitioner from appearing at any of the DMV's Traffic

Violations Bureau ("TVB") offices.

2.     It is the policy of the DMV to preserve the safety and well-being of its employees

and visitors. DMV needs to ensure that its facilities are free from violence, threats of violence,

harassment and intimidation.

3.     DMV has properly prohibited petitioner from appearing before any of the TVB

offices based on DMV's concern for the safety and well-being of its employees, the attorneys

who practice at the TVB and visitors, and petitioner's persistently disruptive conduct. DMV has

made it clear to petitioner's attorney that if petitioner attends and satisfactorily completes an

anger management program, he will be permitted to appear at any of the TVB offices, subject to

a one-year probationary period. DMV has even suggested a program to petitioner. However, petitioner has insisted that he should be able to return to the TVB offices prior to his satisfactory completion of a live anger management course.

4.     As set forth in my letter dated February 8, 2012, a copy of which is annexed hereto as Exhibit A, DMV's prohibition against petitioner's appearing at TVB offices for an indeterminate time period is based on complaints from the staff of and attorneys working in the Brooklyn South TVB office of Mr. Capogrosso's disruptive conduct that posed a threat to the safety of the DMV employees, attorneys and motorists at that TVB including an incident on December 22, 2011.

5.     Copies of written complaints made against petitioner including descriptions of the incident that occurred on December 22, 2011 are annexed hereto as Exhibit B.

6.     Prior to petitioner's service of the order to show cause, DMV had already called the New York Bar Association's Grievance Committee to inquire about how to file a complaint against petitioner. After petitioner served the order to show cause, DMV entered into unfruitful settlement negotiations with petitioner's attorney to resolve this matter without filing such a complaint. DMV reserves the right to report petitioner to the New York Bar Association's Grievance Committee.

Dated: April 11, 2012
     Albany, NY

                                      Ida L. Traschen
                                      IDA L. TRASCHEN

AFFIRMATION OF SERVICE

STATE OF NEW YORK      )
                                          ) SS.:
COUNTY OF NEW YORK  )

**Serwat Farooq,** an attorney admitted to practice in the State of New York and an

Assistant Attorney General in the office of Eric T. Schneiderman, Attorney General of the State

of New York, attorney for respondent New York State Department of Motor Vehicles, affirms

the following under penalty of perjury pursuant to CPLR 2106:

On April 12, 2012, she served the annexed affirmation and the accompanying

memorandum of law, upon:

> Jacqueline A. Rappel, Esq.
> McDonough and McDonough, LLP
> 401 Franklin Avenue, Suite 210
> Garden City, New York  11530

Counsel for petitioner in the within entitled proceeding by depositing true and correct copies

thereof, properly enclosed in a post-paid wrapper, in a U.S. Mail box regularly maintained by the

Government of the United States at 120 Broadway, New York, New York, directed to said

attorney at the addresses designated by her for that purpose.

On April 12, 2012, she also emailed a copy of the annexed affirmation and the

accompanying memorandum of law upon counsel for petitioner at her email address,

jackier888@hotmail.com.

Dated: New York, New York
           April 12, 2012

SERWAT FAROOQ

Exhibit A



# STATE OF NEW YORK
# DEPARTMENT OF MOTOR VEHICLES

6 EMPIRE STATE PLAZA, ALBANY, NY 12228

BARBARA J. FIALA
Commissioner

NEAL W. SCHOEN
Deputy Commissioner and Counsel

IDA L. TRASCHEN
First Assistant Counsel
Legal Bureau

February 8, 2012

Mr. Chris McDonough, Esq.
McDonough & McDonough LLP
401 Franklin Avenue, Suite 210
Garden City, New York 11530

Re:   Mario Capogrosso, Esq.

Dear Mr. McDonough:

Your letter of January 25, 2012 to Commissioner Fiala, concerning Mr. Capogrosso, has been referred to me for a response.

As the summary of events below documents, the decision to ban Mr. Capograsso from appearing at any of our Traffic Violations Bureau ("TVB") offices was neither capricious nor arbitrary, but rather, was made in the best interests of both the agency and motorists and attorneys appearing at the TVBs.

On January 6, 2011, Supervising ALJ Vahdat received a petition signed by eighteen employees of Brooklyn South TVB, asking her to address Mr. Capogrosso's behavior. The employees stated that Mr. Capogrosso's presence on the premises of Brooklyn South TVB constituted a threat to their physical safety. They explained that Mr. Capogrosso's behavior was unstable and that he had confrontations with many TVB employees during the previous year. One incident nearly escalated to a physical altercation between Mr. Capogrosso and a TVB employee whom Mr. Capogrosso had threatened.

On January 10, 2011, Supervising ALJ Vahdat visited the Brooklyn South TVB to discuss this situation with Senior ALJ Gelbstein. He expressed concern about Mr. Capogrosso's behavior over the past year. Senior ALJ Gelbstein had previously notified the Division of Field Investigation about Mr. Capogrosso's behavior. In addition, Senior ALJ Gelbstein had a letter of complaint from George Han (a clerical employee) and a letter of complaint from an attorney whose assistant had been pushed by Mr. Capogrosso. Senior ALJ Gelbstein stated that he had spoken to Mr. Capogrosso on many occasions and asked him to exercise a calmer demeanor when dealing with the staff, other attorneys practicing at TVB and his own clients. Senior ALJ Gelbstein concluded that his many conversations with Mr. Capogrosso had not resulted in a change in Mr. Capogrosso's behavior and he continued to be concerned for his staff's safety.

On that day, Supervising ALJ Vahdat also interviewed five TVB employees who expressed deep concern for their safety when dealing with Mr. Capogrosso. One employee stated, "I can no longer interact with Mr. Capogrosso at the service counter because I fear for my safety…..he even went so far as to assault a female assistant who works for another lawyer". On that day, Supervising ALJ Vahdat also spoke with three attorneys who shared the staff's concerns for the safety of all employees and attorneys due to Mr. Capogrosso's behavior.

Following these conversations, Supervising ALJ Vahdat and Senior ALJ Gelbstein spoke to Mr. Carogrosso concerning his behavior. Mr. Capogrosso admitted that, "I sometimes lose my temper and need to blow off steam". Supervising ALJ Vahdat and Senior ALJ Gelbstein warned Mr. Capogrosso that

Mr. Chris McDonough, Esq.
Page 2
8 February 2012

he must conduct himself in a professional manner; otherwise he would not be allowed to practice at TVB. Mr. Capogrosso agreed to calm down and stop his abusive behavior. When Supervising ALJ Vahdat explained to him that if his behavior did not improve she would have to report him to the Grievance Committee, he stated that, "If I have any more altercations with anyone here I will just stop coming here myself".

On December 22, 2011, Supervising ALJ Vahdat received an e-mail from Danielle Calvo, SMVRI at Brooklyn South TVB, informing her that Mr. Capogrosso was screaming in the attorney's room and shouting religious slurs at attorneys of the Jewish faith. Ms. Calvo had asked all the other attorneys to step away from Mr. Capogrosso and leave him to himself. Half an hour later, Ms. Calvo called Supervising ALJ Vahdat and informed her that Mr. Capogrosso had thrown his coffee cup (still half full) at one of the other attorneys and when a third attorney had tried to calm down Mr. Capogrosso, he had thrown a punch that had missed the third attorney by about an inch. Supervising ALJ Vahdat asked Ms. Calvo to escort Mr. Capogrosso out of the building and tell him not to come back until the next day. That same day three attorneys who had witnessed this altercation called Supervising ALJ Vahdat about this incident. Their recitation of the facts matched Ms. Calvo's.

The next morning, the above mentioned three attorneys met with Supervising ALJ Vahdat and Senior ALJ Gelbstein and submitted affidavits elucidating the facts. In addition, TVB staff, the police room staff and other attorneys notified Supervising ALJ Vahdat that Mr. Capogrosso regularly punches the walls and steel poles of the TVB office with his fists. The sounds from these punches at times are so loud that the police room employees are startled and run out of the room to see what has happened. Mr. Capogrosso admitted to this odd behavior and stated, "I do it to let off steam, otherwise I could hurt someone". Supervising ALJ Vahdat observed that Mr. Capogrosso's knuckles were all bruised, black and blue. Mr. Capogrosso's behavior is clearly in contravention of 15 NYCRR 124.2, which provides, in part:

(a) The motorist may be represented by an attorney or, in the administrative law judge's discretion, by any other person the motorist chooses. **Any person representing the motorist must conform to the standards of conduct required of attorneys appearing before State courts, and failure to conform to these standards will be grounds for declining to permit his or her continued appearance in the proceeding.** (Emphasis added.)

Based upon this regulation and the fact that Mr. Capogrosso's behavior is disruptive of the TVB process and induces fear in its employees, attorneys and motorists who work at and use the TVB, a decision was made to ban Mr. Capogrosso from all TVB offices for an indeterminate time period.

It is the policy of the New York State Department of Motor Vehicles to preserve the safety and well-being of its employees and visitors. DMV will strive to ensure that its workplace is free from violence, threats of violence, harassment and intimidation. Until such time that it can be determined that Mr. Capogrosso is no longer a threat to the safety and well-being of TVB employees and visitors, he will not be allowed to practice at any of Department of Motor Vehicles' TVB offices.

I trust this information assists you.

Very truly yours,

Ida L. Traschen
First Assistant Counsel

ILT/mjs

Exhibit B

I am writing in regards to Mario Capogrosso. On Dec 21, 2011, I was sitting on one of the benches in the attorney's room at the Traffic Violations Bureau at the DMV in Coney Island, Brooklyn. Mr. Capogrosso walked in and went to reach for his briefcase which was lying on the floor next to me. Mr. Capogrosso then said "excuse me" so I could move over so he could get to his briefcase. He already had plenty of room but regardless I shifted my body so he would have even more room to reach for his belongings. He said excuse me a second time as if to tell me I should move over more and that he needed more space even though the bag was next to me and I was not in any way blocking access. Frustrated I told him that he had enough room. Mr. Capogrosso then lashed out on me and said he was being nice by saying excuse me and that next time he would simply "hit me" with his briefcase and not say anything. He then proceeded to tell me that next time I see him I "better get out of his way." I ignored him and went on with my work. Moments later he comes in to the room again still frustrated from the first episode. At this time there were three other attorneys in the room. Mr. Capogrosso took a seat across from me and began to complain how I did not give him enough room when he said excuse me. I continued to ignore him and go on with my work. Eager to show how angry he really was, he took his coffee cup which still had some coffee inside and threw it in my direction toward the garbage can that was next to me. The cup came very close to me and did not even land inside the garbage. I complained to Mr. Capogrosso that this was not civilized behavior and I did nothing to warrant such hostility. Enraged Mr. Capogrosso went on a rant on how I was a "jew fucking cunt" a phrase which he repeated about six or seven times. He went on to say how this place was "run by jews." When I protested to how he could use such language, he stated "what do you care, just call me a fucking Italian ginny." I then told Mr. Capogrosso that he was an anti-Semite and he did not belong in the location.

Yaakov Brody

There were four attorneys sitting in the room when Mario Capagrosso entered: Sadiq Tahir, Yakov Brody, Michael Beer, and myself.

The room is very small; lawyers generally show each other courtesy upon entering or leaving. The room has to accommodate up to a dozen attorneys, their briefcases and overcoats, and the occasional client, so the comportment in the room itself is always gentlemanly of necessity.

When Mr. Capagrosso entered he asked Mr. Brody to move so he could sit. Mr. Brody did his best to reasonably comply with this request. The bench contained the belongings of other attorneys and Brody in fact tried to make more room so that Capagrosso could sit. (Besides the fact that upon Capagrosso's entrance there were four adult males there were also briefcases, files, jackets, and bags full of food and various sundries. Brody not only tried to make room where he was sitting; he moved other files and items to make room to accommodate Capagrosso.)

Far from acknowledging Mr. Brody's attempt to show him courtesy Capagrosso grumbled about Mr. Brody's lack of decorum and began to berate Brody. This was both puzzling and unreasonable because it seemed that Brody was, in fact, making every attempt to accommodate Capagrosso.

Capagrosso then began to inveigh against Brody in vituperative terms as his temper continued to rise beyond all reason given the fact Brody was extending courtesy to him, by now, under duress. Capagrosso's anger escalated unreasonably to the point his remarks became intensely personal, directed at Brody, his person, and his culture, his ethnicity, and his very humanity; the tone quickly approached the intensity of "fighting words". Nothing Brody did or said during Capagrosso's verbal attack was in any way provocative or confrontational. Everyone in the room except Capagrosso seemed to understand he was losing self-control for no reason.

Mr. Brody, upon being inveighed against for no other reason that Capagrosso's own foul mood, which had escalated to a viciousness and *ad hominem* nature, did speak out strongly when Capagrosso referred to him as a "fucking Jew cunt". Michael Beer and Brody both spoke up to demand that Capagrosso refrain from using provocative and hate filled speech directed at Brody's culture and religion. Beer told him flatly that he had crossed a line of decency, and that it wasn't the first time he had done so. Capagrosso by this time was completely out of control, and responded that he had every right to use such language. He expressed the belief that the DMV was in fact run by "fucking Jew cunts." He also went so far as to invite Brody and Beer to refer to him by a slur-adjective aimed at his *own* ethnicity. Neither indulged him his request.

During his angry tirade Mr. Capagrosso also threw a coffee cup he held in his hand across the space in which Brody seat, which may or may not have spattered Brody with the remnants of the coffee's cup. The hate speech, the demeanor, the verbal ejaculations were all, it seemed to me, attempts to humiliate and intimidate Mr. Brody, who had done absolutely nothing more than to try to make room for Capagrosso in a room that is, under the best of circumstances, only large enough to accommodate two or three people.          Richard F. Maher

This is in reffence to the incident happened on Dec. 21, 11. Mr. Yaakov Brody was sitting on the bench in lawyers room. Mr. Copogro. walked in the room and said "excuse me" Mr. Brody moved to the side so that Mr. Copogrosso could reach to his bag lying on the floor. He was looking so angry that he again said "excuse me" in a loud voice. Mr. Brody said you have enough room, why are you so rude. Mr. Copogrosso got so upset that he started shouting against jews. Mr. Beer who also sitting in the room asked Mr. Copogrosso that it is enough you can't curse jew. Mr. Copogrosso said you can call me "fucking Italian ginny. Mr. Brody said that you are anti-semite you dont bilin to this place. Mr. Brody shouted that stop it. In the meant Ms Danial came in the room and tried to cool down the situation.

Little later Mr. Meyers came in the room and asked Mr. Copogrosso that he should apology for his remarks, he then tried to hit Mr. Meyers. I don't know if he wanted to hit Mr. Meyers or give some message to other people. Mr. Copogrosso said to Mr. Meyers that I will send you to the hospital. Mr. Meyers said I will not report against you I will sue you and get every peny you have. Mr. Copogrosso went out of the room and started hitting the wall and steel guards.

M. Sadiq Tahir

Phone (718) 996-4705    Cell (347) 733-6447

# Jeffrey A. Meyers Attorney at Law

8855 Bay Parkway, Suit 9E

Brooklyn, NY. 11214

December 23rd, 2011

    In the A.M of the day of December 21st , 2011, I overheard a loud commotion which I was told resulted in a tirade of anti-Semitic slurs shouted by Mr. Mario Capogrosso. I later implored Mr. Capogrosso to apologize and and to make peace with his fellow attorneys, but to no avail, his conduct the rest of the day was one of abrasive incoherent loud mutterings in which he smashed his fist against concrete walls and steel beans that are situated outside the DMV hearing rooms, coupled with more anti- Semitic comments, he kept saying "everyone here wants to fight me".

    At about 2 o'clock that day I was sitting in the lawyers room across from Mr. Capogrosso  not engaging in any conversation with him when he suddenly became enraged and lunged at me with his fists with great speed and then  smacked his fists against his other hand in a marshal arts form coming within 12 inches of my face. Claiming "I could put you in the hospital with just one punch, i could hit hard objects with my fists without hurting my hands. His eyes were filed  with mindless rage. I loudly exclaimed as his fists flew close at various times" stop Mario, its me Jeffrey I'm your friend" I'll have to sue you if you put me in the hospital. "He kept repeating the phrase " you people, you people".He later told me that he envisioned all of us (Jews) and didn't mean to single me out during his assault on me. I didn't report the incident immediately until I was  called in to the office after an eye witness attorney reported it first and I was asked to verify it.

Jeffrey A. Meyers



Criminal, Traffic

12/22/11 @ 1:00

Mario H. Capogrosso, Esq.
Attorney at Law

245 Saw Mill River Road, Suite 106      914-806-3692
Hawthorne, NY 10532      Assistant Voice: 914-262-8078

1-20-12
MOTORIST
CAME IN
TO complain
he paid in
full

917-238
-5326

DEPARTMENT OF MOTOR VEHICLES
TRAFFIC VIOLATIONS DIVISION
BKLYN S TVB

TIME 12:44 PM

DATE 06/30/11

NAME: JESUS G JACOBO, JR
DOB/SEX: REDACTE M

YOU HAVE BEEN SCHEDULED TO APPEAR FOR THE FOLLOWING TICKET(S):

TICKET INFO      STATUS      ON DATE      AT TIME      AT LOCATION

AAR6470041                   12/22/11     1:00 PM      BKLYN S TVB
06/28/11                                                2875 WEST 8TH STREET
FLD YIELD ROW TO PED                                    BROOKLYN, NEW YORK  11224

AAR6 47 004
PO 84 m/c
T.74 1 In
Pl 60
 Owe 40
6/30/11

TO JUDGE "ALAN GESTSUL"
FROM ROY TUCCI, CLERK.

INCIDENT 3/3/11 9:10 RM 3
MARIO CAPPOGROSSO ATTY. JUDGE DREW TILLMAN
CLERK ROY TUCCI
AT 9:10 AM MR CAPPOGROSSO Presented Ticket For RAKESH
K. SHARMA, Ticket MARKED READY with OFFICE McGRATH.
AT 9:25 CASES PENDING CALLED MR CAPOGROSSO AND
MR GERBASI ATTORNYS were NOTIFIED that the
HEARINGS WAS READY. MR GERBASI WAS IN A HEARING IN RM
4 AND INDICATED HE WOULD be IN RM 3 AS SOON AS
POSSIBLE 9:32 AM MR GERBASI HEARING BEGAN. I WENT
to RM 6 AND ADVISED WANDA ALFORD CLERK AND
MR CAPPOGROSSO that HIS CASE IS READY. MR CAPPOGROSSO
JUST STARED And DIDN'T SAY ANYTHING. AT 9:45 AM I
CALLED TRAFFIC Violation MANAGEMENT AND Detailed the PROBLEM.
AT 9:52 AM MR CAPPOGROSSO CAME INTO the RM WITH
ANOTHER CASE WITH OFFICER MALONE. AND SAID WE
HAVE TO DO THIS CASE. MR CAPPOGROSSO was INFORMED SINCE
9:25 AM HE WAS PERSONALLY CALLED THREE TIMES AND
DIDN'T HAVE the TIME TO ADVISE US WHAT WAS
the DELAY. MR CAPPOGROSSO ONLY RESPONSE
WAS A BLANK STARE. AND IF WE HAVE
A PROBLEM, INFORM the SENIOR JUDGE.
MR CAPPOGROSSO ATTITUDE IS that HE WILL
NOT TAKE ANY DIRECTION FROM A CLERK,
JUDGE OR SENIOR JUDGE

                    Sincerly,
                    Roy Tucci

1/6/11

We the undersigned clerks, supervisors, and judges of Brooklyn South Traffic Violations Bureau state that we feel the presence of attorney Mario Capogrosso on our premises constitutes a threat to our physical safety.  We believe that Mr. Capogrosso's behavior is unstable and hereby state that he has gotten into confrontations with many of us in the past years.  These confrontations have been escalating to the point of where a physical confrontation has nearly ensued between him and a Brooklyn South employee on January 5, 2011 after close of business.  We request that Mr. Capogrosso's behavior be dealt with and that the management of this agency alleviates this threat to our physical safety.

| | |
|---|---|
| *(signature)* | |
| *(signature)* | |
| *(signature)* | |
| *(signature)* | |
| *(signature)* | |
| Lucy Cali | |
| Marisol Carvoni | |
| *(signature)* | |
| Kimberly Rivers | |
| M. Godfrey | |
| *(signature)* | |
| Roy Tucan | |
| Geri Piparo | |
| *(signature)* | |
| *(signature)* | |
| *(signature)* | |
| *(signature)* | |
| Wanda Alford | |

* was signed by all 3 Supervisors, 1 judge, and
14 out of 17 clerks. The 3 clerks that didn't sign was

9/28/2010

I Jason Donset State
That Manio Culagrossi
Was NOT Authorized to
Proceed on My Behalf
On The Above Dates on
Summn # AAK5507913 & AAK 5507902

Sworn Before Me
This 28 Day of September
2010
Jason Dorset

PIERRE BAZILE ESQ.

Pierre Bazile
Notary Public, State of New York
Qualified in Suffolk County
Reg. #02BA6177363
Commission Expires November 19, 2011

03/02/2012  16:37    1718-539-8491          QUEENS NORTH TVB          PAGE  12/17
03/02/2012  13:11    1718-266-7478          BROOKLYN SOUTH            PAGE  06/11

Complaint
on
8/19/09
Motorist Never
Notified of TRIAL

NEW YORK STATE
DRIVER LICENSE
ID: 286 838 644
CLASS D
REDACTED

MARIO H. CAPOGROSSO, esq.
Attorney at Law

2/18/09 @ 9:00 Queens
So. th.

AAH 0172999
2535
F Apo... H.
T-A 250
PD 250

2/13/0)



## Diantha L. Fuller, Esq.
REDACTED

August 5, 2009

New York City Traffic Violations Bureau ("TVB") – Coney Island Location
Attn: Senior Judge Alan D. Gelbstein                    *Hand Delivered*
Re: Mario Cappigrosso Incident Report 7/31/09

Dear Judge:

As requested by your staff, below is Agnes Paez's report of the events that transpired on 7/3109 in the Coney Island Traffic Bureaus which I took directly from an email she submitted to me:

*I, Agnes was speaking with a client on behalf of Diantha Fuller when I was abruptly approached by Mr. Mario Cappigrosso. He then stood in front of me, and told Ms. Fuller's client that I was not a lawyer and he should not be speaking to me. He then handed my client his business card. The client did, in fact, know that I was not an attorney and was shocked at Mr. Cappigrosso's behavior.*

*Mr. Cappigrosso then turned to me and called me a variety of vulgar and profane names and threatened me with violence to stay away from the Dept. of Motor Vehicles. He then told his Paralegal, Michael, that he should follow me around and harass every client that approached me.*

*Finally, Mr. Cappigrosso told me stay away from him in a very violent manner, towering over me and spoke so loudly and in a threatening manner that a plain clothes policeman standing next to me asked if he needed to get involved. One of the clerks behind the counter then intervened and sternly asked him to behave because Mr. Cappigrosso was so frightening, not only to me, but to everyone around him.*

*I was especially nervous because I am 6 months pregnant and I was in fear his outbursts would turn violent.*

Should you need any additional information regarding this matter or if you have any questions, please feel free to contact the undersigned.

Regards,

Diantha Fuller, Esq.

03/02/2012  16:37   1718-539-8491          QUEENS NORTH TVB                     PAGE  17/17

 # Traffic Violations Bureau

June 19, 2009

**From:**     Marisol Cervoni

**To:**       Alan Gelbstein

**Subject:**   Mr. Capogrosso

On Tuesday June 9, 2009 at approximately 9:45 AM I called the next customer to my counter. The motorist was accompanied by Michael, who is the assistant of Mr. Capogrosso, who is one of the lawyers who represents motorists at their hearings here at Brooklyn South. The motorist handed me her drivers' license and as I was manufacturing a substitute ticket for the motorist, Michael called Mr. Capogrosso over to my window. Mr. Capogrosso, thinking there was a problem approached my counter and aggressively and belligerently began yelling at me. I assured him that there was no problem and that I had already printed the ticket for his client, but at that point he was already out of control and continued yelling, cursing and insulting me. The supervisors, Geri, Danielle and John all came out to see what the commotion was and to resolve the situation, but he refused to listen to reason or leave my counter. I then went into the back office because I felt threatened and was afraid for my safety. Finally one of the supervisors calmed him down and he moved away from my counter. Throughout the day Mr. Capogrosso was taunting me. He would walk past my station making comments and smirking at me.

I can no longer interact with Mr. Capogrosso at the service counter because I fear for my safety. On many occasions I have observed him display his aggressive behavior towards my co-workers, his clients, the other attorneys and their assistants. He even went so far as to assault a female assistant who works for another lawyer.

His aggressive behavior has steadily progressed within the past few months. I no longer feel comfortable at my place of employment because of this individual's behavior and I wish to go on record in the event of any future conflicts.

Marisol Cervoni

*Marisol Cervoni*

Cc;   John Vetere
      Danielle Calvo
      Geri Piparo

To: Judge Gelbstein

Re: Incident report (TVB)

On Tuesday, April 21, 2009 at approximately 10:25A, I was at my work station (#7) when I observed and heard Mr. Capogrosso, screaming and yelling profanities and obscenities at Ms. Rabinovich (Tanya). At this time Mr. Capogrosso is sitting down. I observed him get up from his seat and approach Ms. Rabinovich (walking fast and hard toward her) when he bumped real hard into her as he tried to pass by her. (Which was very unnecessary - given he had plenty of room to walk around her.) I noticed she was very shaken by his actions.

This is the end of my statement

L. Perez Jr.

MLRI

04·21·09

JUDGE GELBSTEIN
   DEAr SiR,
      ON TUESDAY April 21, 2009 WHiLE WORKING
THE CASHIERS WiNDOW, STATION BS24 I HEArD A LOUD
Voice From the Lawyers Area. I Looked up AND
SAW Mr CAPOGLOSSO, ESq, SEATED ON the BENCH
STATING "GET AWAY From HERE", He then ROSE AND
told "TANYA the interpreter" to geT AWAy. Mr
CAPOGLOSSO MOVED TOWArD TANYA, AND they seem
to Bump. the Noise Continued uNTiL OUR
supervisor Danielle CALVO intervened

                  Sincerely,
                  Roy Jucci
                  Roy Tucci
                  ClerK

                              CC. J. Vetere