UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARIO H. CAPOGROSSO,     CV18-2710

        Plaintiff

-against-     DECLARATION OF
MARIO H. CAPOGROSSO
IN OPPOSITION TO
TO DEFENDNAT'S MOTION
TO DISMISS PLAINTIFF'S
COMPLAINT

ALAN GELBSTEIN, in his official and individual capacity;
BOSHRA VAHDATLAMAS. (also known as BUSHRA VAHDAT) in her official and individual capacity;
IDA TRASCHEN, in her official and individual capacity;
ELIZABETH PRICKETT-MORGAN, in her official and individual capacity;
JEAN FLANAGAN, in her official and individual capacity;
VINCENT PALMIERI, in his official and individual capacity;
DANIELLE CALVO, in her official and individual capacity;
SADIQ TAHIR, in his individual capacity;
PEC GROUP OF NY, INC.;
DAVID SMART, in his individual capacity;
JOHN AND JANE DOE.

        Defendants

---

1. Mario H. Capogrosso, affirm under penalty of perjury that: I am the Plaintiff in the above entitled action, and respectfully submit this Declaration in Reply to Defendants Gelbstein, Vahdat, Taschen, Morgan, Flanagan and Palmieri Motion to Dismiss dated August 15, 2018. I submit this Declaration is true based on personal knowledge and experience of all the facts as provided herein.

1

## RESPONSE TO THE EXHIBIT LIST AS FOUND IN THE DECLARATON OF BARBARA MONTENAT

2, I attach as **Exhibit A**. B. Montena's Declaration Exhibit List August 15, 2018.

In response:

Find my factual responses to Exhibits 1- 28

### Response to Exhibit 1

My defense – Tanya Rabinovitch approached me that day after I complained to the District Attorney concerning her continuous representation of herself as an attorney at the Brooklyn South DMV TVB. After admitting to her that I filed such report with the District Attorney, she accosted me that day with a verbal tirade. Defendant's Gelbsteins response to my complaint to the District Attorney was – "Who are you Don Quixote." I attempted to walk away from her that day and avoid her verbal tirade.

### Response to Exhibit 2

Again, Tanya Rabinovitch approached me complaining of my complaint to the District Attorney's Office – I did tell her to "get away from me." She was verbally accosting me due to my complaint to the District Attorney's Office. I see nothing wrong with the comment "get away from me" and then attempting to avoid interacting with her.

### Response to Exhibit 3

I am accused at belligerently yelling. I was called to the counter by a paralegal working for me at that time, and I asked, "what was the problem." There is nothing wrong with that. I did not curse. Marisol Cervine provides no indication of what curse word was used, because none was used. As I remember it I asked only "What was the problem" Further she indicates "that my aggressive behavior escalated. I have no idea what that means. What exactly am I being accused of doing to her. She indicates I made comments and smirked. My response, what comments were made. None were made. I was an aggressive litigator in this courtroom, but I made no aggressive action against her person at any point in time.

### Response to Exhibit 4

I at no point told my paralegal at any time to follow this person. It is true she was NOT an attorney but it is true that she was soliciting motorists on a continuous basis in the Brooklyn South TVB court. She was eventually thrown out of the DMV due to her relentless soliciting of motorists not only on the floor of the DMV but in its parking lot by Defendant Gelbstein. She provides no indication specifically of "the variety of profane and vulgar names" used because none were ever said. I do not curse at women.

2

**Response to Exhibit 5**

This is a complaint from another attorney, I did not take any action on his behalf with refence to any summons. I might have been hired by a client to act on such summons but I never represented that I was acting on behalf of this attorney, I see that I did nothing wrong.

**Response to Exhibit 6**

I am accused of confrontations. There are no specific facts, only allegations, so I do not know how to respond. I am a litigator. I was at this tribunal to argue cases and win cases on behalf of my clients. I was not engaging with the clerks of this court as other attorneys did. I was not giving them gifts for Christmas and the holidays, I was not giving them parties, I was not buying them breakfast and coffee. In response my clients often paid the price. I would put the summons in the courtroom, and as it was my understanding the standing rule of the Court was that the first to appear was to the first party to be heard. Often this was not the case. Because I did not indulge the clerks with gifts, presents, coffee, and parties my clients would suffer. I would put the case in first and be called last But I refused to the play their game. If I did, to me there was an appearance of impropriety and I did not want to play that game. I was upset for my client's sake, not mine. I was there for the whole day. I worked predominantly at the Brooklyn South TVB. I see no actual allegations of misconduct to which I need to respond.

**Response to Exhibit 7**

Attorney Yaakov Brady's accusations – incredulous statement by a lying lawyer who precipitated all these events. This event happened on December 11, 2011 in the attorney's room at the Brooklyn South TVB. Once again, I came and I placed my coffee down under the bench. "I said excuse me can I get my coffee" to Brody. Brody responded, "excuse yourself go f--- yourself you Jew hater anti-Semite." I then proceed that morning to do a hearing. I come back once again Brody is standing in front of my coffee, I asked Brody "excuse me can I get my coffee." His response again was "excuse yourself go F--- yourself you Jew hater anti Semite" I was required to take an anger management class, Brody was given a pass. I argue, I am an Italian American in Jewish community making too much money. My colleagues wanted me out. In addition, please let this Court note, Brody states that I said I am going to "Hit you with my briefcase" Incredulous statement from a lying lawyer. If it comes to the point where I need to defend my life or my family's life because of threat of assault by a knife or gun or serious physical assault I will defend myself – but " I am not going to "Hit you with my briefcase" Incredulous statement by a lying lawyer. Let Brody know that I am not an anti-Semite. Please let this Court note that in all the accusations brought against me, there is not accusation from any client or motorist that I used racial slur whether they be Jewish or any other nationality or religion. Please review this record. Where is there proof I am an anti-Semite. There is none. These are the actions of an attorney, Brody, who provoked an incident, who was looking to get to get me removed and accomplished it.

3

**Response to Exhibit 8**

R. Maher was not seen in the attorney's room that day. I have explained the events of this day repeatedly. I said to Brody "excuse me can I get my coffee' To which Brody replied "excuse yourself go f--- yourself you Jew Hater anti-Semite"

**Response to Exhibit 9**

Defendant Tahir was in the Attorneys room on December 21, 2011. He confirms I said "Excuse me " to Brody He confirms that I reached for his bag lying on the floor. I was actually reaching for my coffee. At no point did I throw a punch at anyone. I threw a punch in the direction of a wall, never hitting the wall. For what reason – I was upset. Brody told me to "go f--- myself." Not once but twice. Any normal man would be upset. What makes me an anti-Semite, as I am accused of, I would love to know. I am not. I was upset. I did throw a punch in the direction of a wall, not hitting the wall, and in the vicinity of no one. I was not arrested or charged. Brody set me up and accomplished what he wanted to do that day.

**Response to Exhibit 10**

The events of December 21, 2011 again. One event one day, all occurring outside the tribunal. Initiated by Brody telling me to "Go f--- myself" twice and "that I am a Jew hater anti-Semite" for what reason I still don't know, only because I am an Italian American in Jewish community making too much money. Brody set me up. I took an anger management course because I did throw a punch in the direction of a wall, not hitting the wall in the attorney's room and not in the vicinity of any other attorney. I was not arrested nor charged.

**Response to Exhibit 11**

Letter dated February 8, 2012 – I am being accused that my actions "constituted a threat." I have gone through ALL the accusations. Where is there a threat of violence or use of violence. (Even in reference with the incident with Brody on December 21, 2011 when Brody "told me to go f--- myself" twice, the punch was thrown at a wall, not hitting the wall, and not in the vicinity of any person.) There is none. I was not liked because I did not indulge the clerks with gifts, presents and parties, and not liked by fellow attorneys, more likely than not, because I was making too much money, but I never threatened anyone.

I am accused of having confrontations. What are they, and where is my opportunity to respond. Defendant Gelbstein never put any warning or admonition in writing to me concerning an alleged confrontation, so that I could formally respond. – **Response to Exhibit 11**

I am accused of assaulting a female assistant" – where is there proof of this. Where was I

charged with an assault? I am working in the DMV. There are police all around me at all times and they observed no assault. False accusation to which I was given no opportunity to respond. **– Response to Exhibit 11**

I have no idea of what I am being accused of by Defendant Vahdat as to what "blowing off steam" means. I never uttered this statement. Inuendo, accusation, misconception but no threat of violence or abuse. **– Response to Exhibit 11**

Defendant Vahdat accuses me of abusive behavior. You have seen all affidavits, where is there proof of abusive behavior. The clerks did not like me I understand but there was no abusive behavior. **– Response to Exhibit 11**

The event of December 21, 2011 goes only half reported. The DMV do not document in this letter the actions of Brody, because I was given no opportunity to respond. Brody tells me "to go f--- myself you Jew hater anti-Semite" Twice. I did throw an empty coffee cup into a can in the attorney's room – that does not constitute an assault, nor threat of violence.
**– Response to Exhibit 11**

I never punched a wall. My hand would have been broken. I am a black belted KENPO martial artist. I have trained for many years but I don't know the worst criminal who would ever admit to a Senior ALJ judge, Defendant Vahdat " I do it to let off steam, otherwise I would hurt someone." Incredulous statement by a lying ALJ who has a history of misconduct. Reference Attachment D. **– Response to Exhibit 11**

**Response to Exhibit 12**

"give somebody an attitude" sound alike a paranoid clerk who perhaps needs a vacation. I really don't know how to respond. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 13**

I have no idea who this person is or what summons it pertains to, once again the names are redacted so more likely that not it was written after my Summons and Complaint was filed on May 8, 2018. I was given no opportunity to respond by Defendant Gelbstein. I do admit that I do not give money back after I argue a case and the case is lost. I am not the Judge. Obviously, this client was disgruntled he lost a case. The motorist provides no proof of the summons to which he is referring. And further any such communication, if it occurred, was privileged as between attorney and client and was not with the staff of the DMV TVB. In truth, this is a totally fallacious statement. I never made such statements, nor was any grievance ever filed against my office to which I needed to respond concerning it. **Where is the proof of "verbal threats of physical violence, and verbal**

5

abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.

**Response to Exhibit 14**

dated February 3, I never intentionally walked into Defendant Smart. Deliberately walked – ridiculous. Is this an assault or threat of violence, verbal abuse? We are working in the same environment. I routinely would have to go the docket on the courtroom wall to look and determine the hearing room for the motorist's hearing. Paranoid security guard but not an assault or threat of physical violence. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 15**

I do remember this incident . Mr. Perez retained me to represent him on an appeal on a traffic ticket that he had lost. I took the appeal . The following day Mr. Perez came in and told me the judge has suspended his license. He came in verbally abusing me. I said I will give you your money back on the appeal, which I did. I did not argue his case. I did not get his license suspended. I was the lawyer hired to write the appeal. At which time Mr. Perez threatened to cut me with a knife and then slash the tires of my car. Welcome to the Brooklyn TVB. I was told by Defendant Gelbstein if there is an unruly client motorist you are to speak to him outside the courthouse which I intended to do with Mr. Perez as per Defendant Gelbstein order. As I understand it, all the attorneys were told the same. I was just threatened with a knife. The security guard defendant Smart was nowhere to be found and the Police did not get involved, as such I followed Defendant Gelbstein order and indicated to Mr. Perez that we needed to speak outside. Once again, **where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 16**

I have no idea as to what this is about. Nonsense. I have no idea what is being alluded here. But if I verbally attacked Defendant Gelbstein. What words did I use, in what manner did I attack him. I am having an argument over paper clips. Where is Defendant Gelbstein's formal admonition to me. This is nonsense, ridiculous statement made by a disgruntled employee who I believe was removed from her position at the Brooklyn DMV for unprofessional conduct. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 17**

I say "shit" I do not say shit at any time. I do not curse. I do hear Defendant Tahir say "Mother F---ker" very often in my presence as well as the presence of other attorneys and clients, to which he takes no offense. I have no idea of what Defendant Tahir is talking about. I do say "Eee – shah" occasionally, quietly to myself. It is a KENPO expression (once again I have trained in the martial arts for many years) and it is something that keeps me motivated, in and out of the gym, when I lose energy but it is not the word "shit" and was never directed at any attorney, client or motorist, If Defendant had questioned me concerning it, he might have understood. I think Defendant Tahir is paranoid. I mumbled "psycho" – ridiculous. This is verbal abuse. Sounds simply like attorney paranoia. I am accused of punching. Absolutely ridiculous – where is the proof. Where is the admonition by Defendant Gelbstein to me, concerning such behavior. Anything recorded on tape. I have seen none. I am accused of "grabbing my ankles and walking in a fast threatening manner: Nonsensical. Where is it written I cannot touch my toes or walk fast. Nonsensical. An old attorney's paranoia. The "near fight" Defendant Tahir speaks about concerns a client, Mr. Perez threatening to slice me with a knife, and security guard Smart being nowhere to be found, Police Officers not responding, and Defendant's Gelbstein's order to me to speak to unruly clients outside the courtroom. Explained above. Further, what you do hear in this statement from Defendant Tahir is that it he responds, "loudly **in a barrage swear words**, stating that he (M. Capogrosso)was crazy and I was sick of him saying "shit" to me." By his own admission, I am being verbally abused by Defendant Tahir. In response I did shake my shoulder and laugh. This is nonsensical.
**Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 18**

At no point in time did I yell and curse at Defendant Tahir. Tahir by his own admission , item 6, above admits responding to me **"loudly in a barrage of swear words."** I am being yelled at, cursed at, by Tahir. I am being accused of cursing. What curse words did I use. Please explain I see none presented

There was no incident on May 5, 2015. There was an incident of May 8, 2015. There was a verbal disagreement on May 8, 2015 between me and Defendant Tahir. I placed my briefcase on a chair in the attorney room for a moment while I took a phone call from a client. It was Defendant Tahir who verbally assaulted me with a tirade of expletives saying I was not allowed to sit or put anything on his chair. Why, I do not know. This was a common attorney room where we all had a right to sit and share. Nonsensical accusations. Putting my briefcase on a chair. I am accused of " obscenities and threats." My question what threat was uttered and what obscenity used. Absolutely none. Not by me anyway. Tahir does admit to swearing at me. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see**

7

**no proof.**

### Response to Exhibit 19

I have no idea who wrote this, my files were being tampered with at one point in time. I did observe Defendant Smart do it often. I complained to Defendant Gelbstein with no response. It was Smart's continue attempt to harass. I never stated that Defendant Gelbstein "should put a gun to his head." My question, who made this statement and who corroborates me making it. However, I do remember making a statement concerning a former attorney who also improperly expelled from the DMV TVB by Defendant Gelbstein and who later committed suicide. When I was asked about this matter by a client concerning Defendant Gelbstein's actions, expelling an attorney from the DMV without a due process hearing, I stated in response " I would have a hard time sleeping at night. " That is all I said, everything else is total fabrication. Let this person come forward. They will not. Their statement goes unsigned. Once again, **where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

### Response to Exhibit 20

I put my briefcase on a chair in the attorney's room which I am allowed to do. This was not Defendant Tahir's personal chair, so therefore he cannot direct me as to how to use it. He indicates in his statement that "that chair is to sit, not for your bag." Who is provoking this incident. Tahir is, I am not. Attorneys routinely lay out their briefcase on the two benches that occupy this attorney's room. Except of course when it came to Tahir's chair, that he claims as his own. I put my briefcase on this chair for a moment, in order to take a phone call. Tahir provoked, escalated and contributed to the whole incident yet he goes unpunished, I get banned. Further, Defendant Tahir began screaming, by his own admission, he states **"then of Course I raised my voice too."** Yet in the work violence report submitted it is only me who (Siegmund's Exhibit 6, page 13 of 23) who is described as yelling. Defendant Gelbstein and Calvo mischaracterize the evidence purposefully to get me banned from the DMV TVB. I was given no opportunity to state my position on this incident with Tahir. Defendants Gelbstein and Calvo did approach me after this incident. Defendant Gelbstein in the presence of Defendant Calvo stated to me, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

### Response to Exhibit 21

Work place violence report – the hard evidence upon which this Court has indicated to me pursuant to my Foil request, as to why I was banned from the DMV TVB. With

respect to the Workplace Violence Report, there is no work violence or threat of work violence shown in this report. A report in which I was given no opportunity to respond. As I stated previously I placed by briefcase on a chair that Defendant Tahir claimed as his own in the attorney's room. Tahir began to move it I said give me a minute I will be leaving shortly and which Point Defendant Tahir grabbed the briefcase sending files scattering. I was given no opportunity to explain nor respond by Defendants Gelbstein and Calvo. There is no proof of violence in this report though it is labelled as a work violence report and it is one of the primary reasons for me being banned." Defendant Gelbstein did approach me after this incident, in the presence of Defendant Calvo and stated, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

### Response to Exhibit 22

Work place violence report – My response to the approach of Defendant Smart was "back up back up" indicating I am not looking for an altercation. My hand went up in self-defense. Defendant Smart approached me for no reason. A paranoid security guard who said, "You are looking at me." I said nothing to Defendant Smart that morning other than "back up, back up" I did not provoke this incident. This is what did happen. When I walked into the DMV that day and got on the line to get summonses, I did turn around because Defendant Smart was pacing back and forth. He was grumbling and mumbling and shaking his head side to side. At which point he approached me in a hostile and aggressive manner. I told him "back up, back up" and he refused. I put my hand up in self-defense. Please look at the "Additional Comments" on the Work Violence report submitted. Defendant Gelbstein gives me no opportunity to respond to the incident. He has me escorted out and then permanently banned from the DMV TVB. Defendant Gelbstein provides no indication that he did any formal investigation of this incident, yet he bans me for life from practicing at the DMV TVB. There is no indication that he reviewed security tapes, questioned me or investigated the incident as he did not question me concerning the incident with Defendant Tahir concerning me placing a briefcase on a chair in an attorney's room. I was given the phone number by Defendant Calvo of Defendant Traschen, who indicated to me that I was permanently banned from the TVB. Once again for placing a briefcase on a chair in an attorney's room that Defendant Tahir claims as his own and for telling a security guard Smart "back up back up" after his approach upon my person in an angry hostile manner and accusing me of looking at him. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 23**

My hand went up in defensive posture. Defendant Smart was in my personal space, and this was not for the first time. Reference my letter to Defendant Prickett Morgan Exhibit D where I sought relief from such behavior form Defendant Smart. As shown in my Complaint, dated May 8, 2018, Defendant Smart has pushed me from behind of for no apparent reason, gave me the sign of the cross and spear hand while standing on the clerk entry summons line (an I believe was removed from his duties at the Brooklyn South SMV TVB for approximately two weeks after such incident by Defendant Gelbstein), to get the summons for a day's hearings, got in my face several times in a threatening aggressive manner between June 20, 2012 and May 111, 2015 and when I asked what was the problem his response was "F--k you, you are the problem, and has admitted to taking money from one of my clients while at some point in time between December 11, 2011 to June 20, 2012 when I was required to take an anger management. He has admitted to taking $80 owed from a client on a $150 fee. He admits he took this money because he indicates that I authorized him to do so. An outright lie. He indicated that he gave this money to me. A lie. Simple and plain. During the time when Defendant Smart took this money between December 11, 2011 and June 20, 2012 I had no communication with the DMV and specifically with a security guard who worked at the DMV. I reported this abuse and theft to Defendant Gelbstein, he performed an investigation and let Defendant Smart remain at the Brooklyn TVB. After which time a series of threats and assaults began by Defendant Smart against my person at the Brooklyn DMV TVB which culminated in the incident of May 11, 2015. I have no motive for having any type of altercation with a security guard. I was there to represent clients and make my living. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof**

**Response to Exhibit 24**

Same as above

**Response to Exhibit 25**

Police report filed no action taken against me.

**Response to Exhibit 26**

Defendant Calvo's admits to having me removed and banned from the TVB for two incidents 1) the incident with Tahir on May 8,2015, and 2) the incident with Smart on May 11, 2015. Please, look at the record. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 27**

I am a litigator. Most of my colleagues in this profession take a summons postpone it for three years in hopes the police officer retires and then says hello to the judge. I actually argued zealously for my clients, an oath that I took when I was admitted to the NY Bar and have upheld. I did not badger witnesses or make frivolous motions. I actually felt an obligation to win my client's case. In terms of being unshaven. plenty of attorney's wear beards. Sunken eyes – I do go out at night and have a social life. Black eye – maybe – I do train in the martial arts for a longtime, I enjoy being in the boxing ring (especially when this action commenced) and competing in the martial arts. I am now being banned from the practice of this area of law because I zealously advocate, don't shave, or have a black eye (though I do not recall sporting one at the time, but I would not be ashamed of it either) and by competing in the martial arts. How ridiculous. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

**Response to Exhibit 28**

I am being accused of "staring" at a clerk. I am in a courtroom, Room 6, I am required to remain silent in a courtroom. As I remember, I was ordered by presiding Judge Chorney to stay in Room 6 and don't leave. He wanted to hear my case next. The Brooklyn South TVB has five or six hearing rooms operating at all times. I abided by this court ruling. This clerk took offense. I see that I did

### LETTER OF READMISSION

3. Please find attached my letter of readmission to the Brooklyn South TVB as referenced above, attached as **Exhibit B**.

### DEFENDANT GELBSTEIN'S ALJ AFFIRMATION

4. I attach as **Exhibit C**, M. Siegmund's Exhibit in part that provides Defendant Gelbstein's ALJ Affirmation. In response I affirm:

- Defendant Gelbstein has indicated that he has personally warned me of threatening behavior. – paragraph 2

In response – Defendant Gelbstein has never provided to me a written formal admonition to which I needed to respond. He provides no facts as to what constituted threatening behavior.

- He indicates that there was a pattern of disruptive and threatening conduct –

paragraph 3

In response – Defendant Gelbstein has never provided to me a written formal admonition to which I needed to respond. He provides no facts as to what constituted disruptive and threatening conduct.

- He indicates I had a heated dispute with another attorney - paragraph 4

In response – Defendant Gelbstein has never provided to me a written formal admonition concerning any heated dispute with another attorney to which I needed to respond. He provides no facts as to what constituted my involvement with such other attorney.

- Defendant Gelbstein indicates I use anti-Semitic language and has called him "a beanie wearing kike"

In response – an outright lie. My affirmation – I am considering leaving this profession.

Who corroborates I made such a statement and in is whose presence.

All of the exhibits are before this Court. I am working amongst numerous clients of all nationalities. Where is there found one complaint form a motorist, client or from anyone that at any time that I used an anti-Semitic remark or any disparaging remark There is none.

My accusations against Defendant Gelbsterin are well documented.

I will restate:

- In my first meeting with Defendant Gelbstein at the Brooklyn South TVB he calls an attorney meeting with all the attorneys. His last statement to us is "How do I get a piece of the action"

- I observe him regularly having lunch with several Jewish ticket brokers in his office after ordering all ticket brokers out of the Brooklyn South TVB – when I question him about it he states: They are friends of my wife I have dinner with them but I do not know what they do for a living."

- I have repeatedly seen Defendant Gelbstein in the GE (General Requirements Hearing Room) rescheduling a multitude of cases and enter guilty pleas on some of them. All on a side bar.

- I question one attorney who indicated to me that he was covering a case for Defendant Gelbstein

- He condones the presence of Tanya Rabinovich in his courtroom – a woman who repeatedly was calling herself a lawyer. I call the District Attorney concerning her actions

12

and representations in his court. Defendant's Gelbstein's response to me "What are you Don Quixote"

- I complain to Defendant Gelbstein of Defendant Smart's actions in 1) pushing me from behind, 2) stealing money from a client who came looking for me while I was absent from the TVB from December 2011 to June 2012, 3) repeatedly getting in my face and when I ask what the problem was Defendant Smart indicates "F… you are the problem", 4) for giving me the sign of the cross and a rigid spear hand directed at my person while in the Brooklyn SouhTVB, 5) tampering with my attorney files to which Defendant Gelbstein laughs and giggles and tells me " a spade is a spade." and 6) when I complain to Smart's Company PEC Group of NY, I am told by an officer at PEC that they love Smart at the TVB.

  - He indicates I have harassed TV employees and attorneys at the TVB.

In response – Defendant Gelbstein has never provided to me a written formal admonition concerning what actions harassed TVB employees and other attorneys. He provides no facts as to what constituted such harassment.

  - He indicates that I punched a wall.

In response – I did not punch a wall. I would have broken my hand. Further, there are security cameras located throughout the Brooklyn South TVB and yet Defendant Gelbstein provides no proof by way of security surveillance of any such activity.

  - He indicates that I have a boxer's attitude and I study a lethal martial art

In response – I never stated at any point to Defendant Gelbstein that I have a boxer's attitude. Its sound s like a tremendous amount of insecurity. Where is this statement corroborated. Further a boxer's attitude seeks to avoid confrontation. Fighters do not want to fight.

I do admit I study a martial art. I do not openly speak about it. When questioned concerning it, I do respond.

### MY LETTER OF MARCH 20, 2015 SEEKING RELIEF

5. My accusations against Defendant Smart are well documented in my Complaint. I will restate. Defendant Smart has:

- Pushed me from behind in June of 2012 soon after my return to the Brooklyn South TVB to which Defendant Gelbstein took no action.
- Stole money from a client who came looking for me while I was absent from the TVB from December 2011 to June 2012, Defendant Smart admits taking the money - 80 dollars of a 150 dollar legal fee and indicates he was collecting it on my behalf and states

that he gave it to me. An outright fabrication.
- Defendant Smart would repeatedly get in in my personal space when I was present at the Brooklyn South TVB and when I ask what the problem was Defendant Smart would respond "F… you, you are the problem",
- Defendant Smart gave me the sign of the cross and a rigid spear hand directed at me, while I was standing at the summons line one morning at the Brooklyn South TVB, for which I believe he was removed from his duties for a short period of time.
- I observe Defendant Smart then tampering with my attorney files in the attorney's room.

6. I write a letter to Defendant Prickett Morgan on March 20, 2015 after attempting to speak to Defendants' Gelbstein and Vahdat,. The letter goes unanswered. I attach herein as **Exhibit D** my letter to Defendant Prickett Morgan.

### MY PERFORMACE AT THE BOOKLYN SOUTH TVB IS MERITORIOUS AND WITHOUT BLEMISH

7. I attach reviews as **Exhibit E** indicating my exemplary work at the Brooklyn South TVB.

8. I have not been sanctioned nor reprimanded by any Grievance Committee concerning my actions or conduct while working and representing motorists at any NY Traffic Violations Bureau.

### THE NEW YORK TRAFFIC VIOLATONS BUREAU HAS A HISTORY OF MISCONDUCT

9.I attach disciplinary actions taken against Defendant Vahdat as **Exhibit F.**

10. I attach as **Exhibit G** disciplinary action taken against the clerks of the New York State Department of Motor Vehicles as well as representing certain unethical conduct of lawyers practicing in this court.

### THERE HAS BEEN NO DUE PROCESS OF LAW

11 . I have been falsely accused of wrongdoing by a tribunal that goes unsanctioned by any higher court. As I have stated in my Complaint I have filed grievances against this tribunal with 1) State of New York Office of the Inspector General, 2) the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, 3) the State of New York, Appellate Division, Third Judicial Department Committee on Professional Standards, 4) New York State Committee on Judicial Conduct, and 5) by

mail and attempted telephone to the New York State Department of Traffic Violations Bureaus. All to no avail.

12. I have been falsely accused by administrative law judges and TVB clerical staff that have a history of wrong doing.

13.. I have not been afforded a trial or hearing on the issues; I have not been informed of the charges and accusations in timely manner (that is before judgment) to which I might respond, I have not had the ability to confront my accusers through cross examination, I have been denied the right to present evidence in my defense.

14. In view of the foregoing, and as truthfully stated, it is respectfully submitted that the Motion to Dismiss my Complaint should be denied.

**I declare under penalty of perjury that the foregoing is true and accurate.**

Dated; September 27, 2018
Westchester, New York

*/s/ M. H. C.*

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804
(914) 806-3692