UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIO H. CAPOGROSSO,<br><br>                              Plaintiff,<br><br>- against -<br><br>ALAN GELBSTEIN, in his official and individual capacity; BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) in her official and individual capacity; IDA TRASCHEN, in her official and individual capacity; ELIZABETH PRICKETT-MORGAN, in her official and individual capacity; JEAN FLANAGAN, in her official and individual capacity; VINCENT PALMIERI, in his official and individual capacity; DANIELLE CALVO, in her official and individual capacity; SADIQ TAHIR, in his individual capacity; PEC GROUP OF NY, INC.; DAVID SMART, in his individual capacity; JOHN AND JANE DOE,<br><br>                              Defendants. | No. CV 18-2710-MKB |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

 

BARBARA D. UNDERWOOD
Attorney General of the State of New York
Attorney for Defendants Gelbstein, Vahdat, Traschen,
   Morgan, Flanagan, Palmieri, and Calvo
28 Liberty Street
New York, New York 10005
Tel. (212) 416-8610

MARK SIEGMUND
Assistant Attorney General

    *Of Counsel*

## **TABLE OF CONTENTS**

                                                          **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.     DEFENDANTS FLANAGAN AND PALMIERI SHOULD BE DISMISSED BECAUSE THEY WERE NEVER SERVED WITH THE COMPLAINT ....................... 2

II.    PLAINTIFF LACKS ARTICLE III STANDING ............................................................ 2

III.   PLAINTIFF FAILS TO STATE A CLAIM FOR FIRST AMENDMENT RETALIATION ................................................................................................................ 4

IV.   PLAINTIFF FAILS TO STATE A DUE PROCESS CLAIM ......................................... 6

V.    THE STATE DEFENDANTS CANNOT BE HELD LIABLE FOR THE ALLEGED ACTIONS OF SECURITY GUARD SMART ................................................ 8

VI.   PLAINTIFF'S SUPERVISORY LIABILITY ALLEGATIONS ARE DEFICIENT ..................................................................................................................... 9

VII.  PLAINTIFF FAILS TO STATE ANY CLAIMS AGAINST DEFENDANT MORGAN, AND SHE HAS ABSOLUTE IMMUNITY ................................................... 9

VIII. THE STATE DEFENDANTS HAVE QUALIFIED IMMUNITY ............................... 10

IX.   PLAINTIFF'S THIRD CAUSE OF ACTION SHOULD BE DISMISSED .................. 10

X.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE .......................... 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................................. 3, 5, 6, 7, 8, 9

U.S. Const. art. III ................................................................................................................. 2, 3

**Federal Statutes**

42 U.S.C. § 1983 ........................................................................................................................ 8

42 U.S.C. § 1985 ..................................................................................................................... 5, 8

42 U.S.C. § 1985(3) ................................................................................................................... 5

42 U.S.C. § 1986 ........................................................................................................................ 5

**State Regulations**

15 N.Y.C.R.R. § 124.2(a) .......................................................................................................... 7

**Federal Rules**

Fed. R. Civ. P. 4(m) ................................................................................................................... 1

Fed. R. Civ. P. 12(b)(1) .............................................................................................................. 1

Fed. R. Civ. P. 12(b)(5) .............................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1, 4, 10

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 4, 5

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972) ...................................................... 5

*Birch v. City of N.Y.*, 184 F. Supp. 3d 21 (E.D.N.Y. 2016), *aff'd on other grounds*, 675
    Fed. App'x 43 (2d Cir. 2017) .............................................................................................. 10

*Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997) ........................................................................ 4

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ..................................................... 3

*Conn v. Gabbert*, 526 U.S. 286 (1999) ......................................................................................... 7

*Cty. of Suffolk, New York v. First Am. Real Estate Solutions*, 261 F.3d 179 (2d Cir. 2001) .......... 4

*Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24 (2d Cir. 1988) ................................................................................................................................ 4

*Gregory v. Incorporated Vill. of Centre Island*, 2016 WL 4033171 (E.D.N.Y. Jul. 27, 2016) ................................................................................................................................ 9

*Heller v. Bedford Cent. Sch. Dist.*, 665 Fed. App'x 49 (2d Cir. 2016) .......................................... 4

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third and Fourth Departments, Appellate Division of the Sup. Ct. of the State of N.Y.*, 852 F.3d 178 (2d Cir. 2017) ....................................................................................................................... 5

*Locurto v. Safir*, 264 F.3d 154 (2d Cir. 2001) ............................................................................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................ 2, 3

*Nguyen v. Bank of Am.*, 2016 WL 74412 (E.D.N.Y. Jan. 6, 2016) ................................................ 5

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978) .................................................................. 6

*Pantchenko v. C.B. Dolge Co.*, 1976 WL 22169 (D. Conn. 1976) ................................................ 5

*Podlach v. Vill. of Southampton*, 2017 WL 4350433 (E.D.N.Y. May 11, 2017), *adopted* 2017 WL 4350434 (E.D.N.Y. Jun. 6, 2017) ......................................................................... 5

*Rodriguez v. Margotta*, 71 F. Supp. 2d 289 (S.D.N.Y. 1999), *aff'd*, 225 F.3d 646 (2d Cir. 2000) ................................................................................................................................ 7

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239 (2d Cir. 2014) .................... 3

*Wolff v. Selective Serv. Local Bd. No. 16*, 372 F.2d 817 (2d Cir. 1967) ........................................ 8

**State Cases**

*Court Reporting Inst. v. N.Y. State Educ. Dep't*, 237 A.D.2d 1 (N.Y. App. Div. 3d Dep't 1997) ................................................................................................................................ 7

*Levy v. State*, 86 A.D.2d 574 (N.Y. App. Div. 1st Dep't 1982), *aff'd*, 58 N.Y.2d 733 (1982) .............................................................................................................................. 10

The State Defendants,[1] by their attorney, Barbara D. Underwood, Attorney General of the State of New York, submit this reply memorandum of law in further support of their motion to dismiss the Complaint pursuant to Rules 4(m), 12(b)(1), 12(b)(5) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's opposition papers confirm that this is a frivolous action that should be dismissed with prejudice. Plaintiff continues to offer nothing but speculation and conjecture in support of his First Amendment retaliation claim. For example, in his declaration, Plaintiff speculates that it is "likely" he was banned from the TVB because he "did not indulge the clerks with gifts, presents and parties" and that he was "not liked by fellow attorneys, more likely than not, because [he] was making too much money." P. Decl. at 4. This is utterly implausible. Plaintiff *himself* concedes that he would sometimes "throw a punch" when at the TVB (P. Decl. at 4), that there were "complaints of misconduct" against him (Compl. ¶ 5), and that he had a "physical confrontation" with security guard Smart (*id.* ¶ 11) – admissions that demonstrate the DMV had good cause to, and in fact did, bar Plaintiff from the DMV for his violent and offensive behavior at the TVB. This is confirmed by the letters, petitions, and complaints regarding Plaintiff's conduct, which consistently describe Plaintiff's violent and threatening behavior and offensive and unprofessional language.

Aside from the utter implausibility of Plaintiff's conclusory allegations, Plaintiff lacks Article III standing and fails to state any claims against any of the State Defendants. The Complaint should therefore be dismissed with prejudice.

---

[1] Capitalized terms not otherwise defined herein have the meaning set forth in the State Defendants' opening memorandum of law, dated August 16, 2018 ("Opening Memorandum," cited herein as "Opening Mem. __"). Plaintiff's Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, dated September 27, 2018, will be referred to herein as the "Memorandum in Opposition" and cited as "P. Mem. __." The Declaration of Mario H. Capogrosso in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, dated September 27, 2018, will be referred to as "Plaintiff's Declaration" and cited as "P. Decl. at __."

**ARGUMENT**

**I.     DEFENDANTS FLANAGAN AND PALMIERI SHOULD BE DISMISSED BECAUSE THEY WERE NEVER SERVED WITH THE COMPLAINT**

The Complaint should be dismissed as against defendants Flanagan and Palmieri because Plaintiff failed to serve them with the Summons and Complaint by the August 6, 2018 deadline. Opening Mem. Point II.  Plaintiff does not dispute that he failed to serve Palmieri by the deadline (or at all), thereby conceding that the Complaint must be dismissed as against Palmieri.

Plaintiff contends he filed an affidavit of service reflecting service on "Ashley Flanigan [sic]" and that a "copy of service was mailed to Jean M. Flanagan."  P. Mem. 2 (citing "Exhibit A").  However, no such affidavit of service was filed on ECF or served on defendant Flanagan, and "Exhibit A" to Plaintiff's Declaration is not what Plaintiff describes.[2]

**II.    PLAINTIFF LACKS ARTICLE III STANDING**

*Twenty eight* separate complaints, statements, petitions and other documents were attached to the State Defendants' opening papers reporting on numerous incidents of serious and troubling behavior by Plaintiff over a period of several years.  *See* Montena Decl. Exs. 1-28. This record demonstrates unequivocally that he was barred from practicing at the TVB because of his violent, threatening and unprofessional conduct, not because of any illegal action by any of the State Defendants.  Plaintiff therefore lacks Article III standing.  *See* Opening Mem. Point III.

Plaintiff does not dispute that he would not have Article III standing if (among other requirements) his alleged injury is not "fairly traceable to the challenged action" by defendants. P. Mem. 2-3 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Instead, he

---

[2] To the extent any affidavit of service allegedly "filed" by Plaintiff on May 8, 2018 purported to reflect service on a person named Jean Flanagan, it presumably reflects Plaintiff's mistaken service on a *different* person named Jean Flanagan.  Although it was clearly explained to Plaintiff, on July 13, 2018 (well in advance of his August 6 deadline), that he had "mistakenly attempted service on another person named Jean Flanagan," ECF No. 20 at 1 n.1, he made no subsequent effort to serve the Jean Flanagan who is named as a defendant.

2

argues that the Court should not "assume" that he was barred from the TVB because of those complaints and must "accept[] as true" his allegation that Defendants' actions "caused or contributed to the TVB ban." P. Mem. 3-4. Plaintiff also argues that it would be "improper" to consider documents outside of the Complaint on a motion to dismiss. P. Mem. 2, 4.

Plaintiff is confusing the pleading standards applicable to Rule 12(b)(6) motions with the standard applicable to challenges to Article III standing under Rule 12(b)(1). When "jurisdictional facts are placed in dispute," the Court need not rely solely on the allegations in the complaint but rather "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). If such evidence reveals "factual problems in the assertion of jurisdiction," plaintiff must "come forward with evidence of [his] own to controvert" such evidence and may not merely "rely on the allegations of the [complaint]." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (citations omitted).

The documents attached to the Montena Declaration flatly contradict Plaintiff's allegation that he was the target of an arbitrary conspiracy by DMV's professionals and staff to violate his alleged First Amendment right to practice law, and establish that it was Plaintiff's own violent, threatening and unprofessional behavior that is solely to blame for his ban from the TVB. *See* Opening Mem. 11-12; *see, e.g.*, Montena Decl. Ex. 26.[3]

---

[3] In his declaration, Plaintiff generally either denies the allegations and casts aspersions on the authors (*see, e.g.*, Response to Exhibit 7 describing a colleague as a "lying lawyer," Response to Exhibit 11 referring to "a lying ALJ" and Response to Exhibit 12 referring to a "paranoid clerk who perhaps needs a vacation") or argues the letters and complaints are insufficient evidence of his unprofessional behavior (Response to Exhibit 12: "Where is the proof . . . There is none, I see no proof."). Setting aside for the moment the utter implausibility of Plaintiff's characterizations of these complaints and their authors, Plaintiff does not dispute – and cannot dispute – that they reflect that the DMV had good reason to, and in fact did, bar Plaintiff from the TVB because of numerous complaints of misconduct, not in retaliation for Plaintiff's letter to defendant Morgan. Significantly, Plaintiff himself admits, yet again, to his own unprofessional behavior. *See* P. Decl. at 4 ("I did throw a punch in the direction of a wall…."). Other statements in Plaintiff's declaration are equally troubling. For example, he repeatedly invokes the Jewish heritage of colleagues and DMV staff. *Id.* at 3 ("I argue, I am an Italian American in

3

Moreover, even under the Rule 12(b)(6) branch of this motion, the Court need not credit Plaintiff's conclusory allegations that he was barred from the TVB for writing a letter to defendant Morgan. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court need not accept as true inherently implausible allegations and may "draw on its judicial experience and common sense" in determining the plausibility of allegations). Allegations that are "no more than conclusions" "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Heller v. Bedford Cent. Sch. Dist.*, 665 Fed. App'x 49, 53 (2d Cir. 2016). Plaintiff's allegations are not only implausible, they are refuted by the documents attached to the Montena Declaration, which may also be considered on the Rule 12(b)(6) branch of this motion. Opening Mem. 8.[4]

### III.     PLAINTIFF FAILS TO STATE A CLAIM FOR FIRST AMENDMENT RETALIATION

Plaintiff's allegation that he was banned from the TVB because of a letter he wrote to defendant Morgan is impermissibly "'unsupported, speculative, and conclusory.'" Opening Mem. 13 (citing *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)). It is also inherently implausible, given his admissions regarding his violent behavior. *Id.* Plaintiff contends the State Defendants' Opening Memorandum cited his allegations "out of context and construe them in the light most favorable to themselves." P. Mem. 4-5. The State Defendants did no such thing. On *any* reading of the Complaint, Plaintiff speculates that he was banned from the TVB because of his letter to Morgan. *See* Compl. ¶ 59. Such speculation fails basic Rule 12(b)(6) pleading

---

[a] Jewish community making too much money. My colleagues wanted me out."); *id.* at 12 ("I observe [ALJ Gelbstein] having lunch with several Jewish ticket brokers in his office. . . .").

[4] In *Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24 (2d Cir. 1988), cited by Plaintiff (P. Mem. 4), the Second Circuit held that a district court should generally not consider new "factual allegations" concerning "matters outside the pleadings" asserted in an affidavit and memorandum of law submitted in opposition to a Rule 12(b)(6) motion to dismiss, unless the court converts the motion to one for summary judgment. *Id.* at 25. The Second Circuit has more recently recognized, however, that courts may consider documents "incorporated by reference [in the Complaint], or integral to the claims asserted by" plaintiff on a Rule 12(b)(6) motion to dismiss. *Cty. of Suffolk, New York v. First Am. Real Estate Solutions*, 261 F.3d 179, 184 (2d Cir. 2001).

standards and is inherently implausible. *See Iqbal*, 556 U.S. at 679.

Similarly, Plaintiff's conclusory and speculative allegations are insufficient to support a claim under Section 1985 that the State Defendants conspired to deprive him of his First Amendment rights. Opening Mem. 13-14. Plaintiff appears to concede that his allegations are conclusory and speculative, but argues that he should nonetheless be permitted to proceed to discovery because "[i]t is believed that discovery in this matter shall reveal the extent of the collusion between the various Defendants." P. Opp. Br. at 5. This flies in the face of basic pleading standards. *See Iqbal*, 556 U.S. at 678-79 ("a plaintiff armed with nothing more than conclusions" may "not unlock the doors of discovery").[5]

Moreover, Plaintiff fails to allege any class-based, discriminatory animus, as required to assert claims under Sections 1985 and 1986. Opening Mem. 14.[6] Plaintiff completely ignores this, thereby conceding he fails to state any claims under Sections 1985 or 1986.[7]

Plaintiff does not have a First Amendment right to enter DMV facilities for the purpose of representing clients. *See* Opening Mem. 15-16. Plaintiff disagrees, claiming he has a constitutional "right to pursue the profession of his choice." P. Mem. 6. But the case he cites does not support that proposition. In *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972),

---

[5] The cases cited by Plaintiff are inapposite. P. Mem. 5. Those cases predated *Twombly* and *Iqbal* by decades and did not concern motions to dismiss based on fundamental pleading deficiencies. *See Pantchenko v. C.B. Dolge Co.*, 1976 WL 22169, at *2 (D. Conn. 1976) (holding plaintiff plausibly alleged defendants conspired to pay her a lower wage than male colleagues in violation of Title VII). This Court has recognized that a Section 1985 claim requires pleading allegations with "factual specificity." *Nguyen v. Bank of Am.*, 2016 WL 74412, at *3 (E.D.N.Y. Jan. 6, 2016).

[6] *See Podlach v. Vill. of Southampton*, 2017 WL 4350433, at *12 (E.D.N.Y. May 11, 2017) (recommending dismissal of 42 U.S.C. § 1985(3) claim because "Plaintiff does not allege that Defendants acted with any racial, class-based, or otherwise discriminatory motivation, but rather, that Defendants sought to 'punish [her] for exercising her First Amendment right. . . .'"), *adopted* 2017 WL 4350434 (E.D.N.Y. Jun. 6, 2017).

[7] *See Bond v. City of N.Y.*, 2015 WL 5719706, at *8 (E.D.N.Y. Sept. 28, 2015) ("a plaintiff's failure to respond to contentions raised in a motion to dismiss constitutes an abandonment of the applicable claims") (citation omitted); *Codrington v. City of N.Y.*, 2015 WL 893567, at *14 (E.D.N.Y. Mar. 2, 2015) (same); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997) (same).

5

the Supreme Court held an employer was not required to hold an evidentiary hearing before declining to renew a non-tenured professor's employment contract because the professor had "absolutely no possible claim of entitlement to re-employment." *Id.* at 578. Here, likewise, Plaintiff's unilateral expectation that he would be permitted to continue practicing law at the TVB despite his violent, offensive and unprofessional conduct is insufficient.

Plaintiff contends a "lawyer's procurement of remunerative employment is in fact affected with First Amendment concerns," P. Mem. 7, but the case he cites in support recognizes only that a "lawyer's procurement of remunerative compensation is a subject only marginally affected with First Amendment concerns," and is "subject to regulation in furtherance of important state interests." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 459 (1978).

The Second Circuit, relying in part on *Ohralik*, settled this issue when it held in *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third and Fourth Departments, Appellate Division of the Sup. Ct. of the State of N.Y.*, 852 F.3d 178 (2d Cir. 2017) that "a lawyer's generic act of pursuing litigation on behalf of any client" is *not* conduct that is protected by the First Amendment, and that *only litigants themselves* have a First Amendment right of access to courts. *Id.* at 187. The Second Circuit's holding was not limited to "firms" (P. Mem. 6); it applies to any "[l]awyers in a for-profit practice who act in their representative capacities." *Id.*[8]

### IV. PLAINTIFF FAILS TO STATE A DUE PROCESS CLAIM

Plaintiff does not dispute that he is still able to practice law and currently practices law at a law firm in Connecticut. P. Mem. 7-8. He therefore fails to state a due process claim. Opening Mem. 17. It is irrelevant that Plaintiff may prefer to continue practicing law at the

---

[8] Even if any protected First Amendment speech were actually at issue (it is not), courtrooms and similar judicial fora such as the TVB are not public spaces open to free expression. Opening Mem. 16 (citing cases). Plaintiff's effort to distinguish the cases cited in the Opening Memorandum on the basis that they involved "violence" fails because here Plaintiff was barred precisely because of his violent and threatening behavior. P. Mem. 7.

6

TVB, as is the fact that Plaintiff self-servingly describes his "profession" in limited terms as "lawyering at the TVB." P. Mem. 7; *see Conn v. Gabbert*, 526 U.S. 286, 291 (1999) (due process implicated only if plaintiff is deprived of a "liberty interest in practicing law").[9]

Moreover, the DMV was entitled to exercise its discretion in determining whether Plaintiff should be barred from the TVB for his violent, threatening and unprofessional behavior, and its exercise of that discretion cannot support a due process claim. Opening Mem. 17-18. Plaintiff's only argument in response is that, because the DMV's regulation refers to a "proceeding," the DMV only had discretion to ban attorneys from a particular "proceeding." P. Mem. 8-9. This is nonsense. The regulation does not limit the DMV's power or authority.[10] It provides notice that attorneys should "conform to the standards of conduct required of attorneys appearing before State courts," and authorizes the DMV to ban attorneys from the TVB for failure to conform to such standards. 15 N.Y.C.R.R. § 124.2(a). Plaintiff failed to conform to these standards at the TVB. Moreover, even absent the regulation, the DMV has inherent discretion to ban people from the TVB for misconduct. Opening Mem. at 16 (citing cases).

Finally, Plaintiff's due process claim should be dismissed because he could have challenged his ban by commencing a CPLR Article 78 proceeding within four months of the ban. *See* Opening Mem. 18-19. Plaintiff argues he was not required to exhaust "administrative remedies" because "First Amendment rights" are involved, P. Mem. 9, but Plaintiff is confusing the exhaustion of administrative remedies requirement, which is inapplicable here, with the post-

---

[9] *See also Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999), *aff'd*, 225 F.3d 646 (2d Cir. 2000) ("It is well settled that one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest.") (citations omitted). Plaintiff argues *Rodriguez* is distinguishable because the plaintiff in that case "continues to do business in Sleepy Hollow." P. Mem. 8. Plaintiff does not dispute the general principle articulated in *Rodriguez*, however.

[10] *See Court Reporting Inst. v. N.Y. State Educ. Dep't*, 237 A.D.2d 1, 4 (N.Y. App. Div. 3d Dep't 1997) (even when regulation uses the word "shall," it is "directory rather than mandatory" unless "intended as a limitation on the power of the body or officer") (citations omitted).

7

deprivation opportunity to be heard by commencing an Article 78 proceeding, which defeats his due process claim. Moreover, the cases he cites recognize only that exhausting administrative remedies may not be required when "a serious threat to the exercise of First Amendment rights exist." *Wolff v. Selective Serv. Local Bd. No. 16*, 372 F.2d 817, 825 (2d Cir. 1967). Here, Plaintiff's due process claim has *nothing* to do with the First Amendment.

Plaintiff next argues that an Article 78 proceeding would not have allowed him to seek the money damages that he is seeking in this action. P. Mem. 9. But the fact that a petitioner cannot typically seek damages in an Article 78 proceeding is of no moment.[11]

Plaintiff also argues that the lack of any "formal" notification of his ban from the TVB "defeats the argument that he could have formally challenged the decision." P. Mem. 10. Plaintiff is mistaken. The DMV expressly conveyed to Petitioner, on May 11, 2015, that he was permanently barred from the TVB. *See* Montena Decl. Ex. 26; Siegmund Decl. Ex. 2 ¶ 16. The DMV was not required to issue a "formal" notice. Indeed, the lack of any "formal" notice concerning Plaintiff's *2011 ban* did not stop him from commencing an Article 78 proceeding challenging that ban in 2012. *See* Siegmund Decl. Ex. 1.

## V. THE STATE DEFENDANTS CANNOT BE HELD LIABLE FOR THE ALLEGED ACTIONS OF SECURITY GUARD SMART

Plaintiff does not try to explain how Smart's alleged harassment and any alleged "ratification" of the harassment by State Defendants had anything to do with Plaintiff's alleged First Amendment rights. Plaintiff does not dispute that there is no vicarious liability under either Section 1983 or Section 1985. Opening Mem. 19-20. While Plaintiff contends he is not seeking

---

[11] *See Locurto v. Safir*, 264 F.3d 154, 158, 175 (2d Cir. 2001) (dismissing Section 1983 claim alleging wrongful termination and seeking "monetary and injunctive relief" because plaintiffs could have commenced Article 78 proceeding, which "constitutes a wholly adequate post-deprivation hearing for due process purposes").

8

damages against the State Defendants for the actions of defendant Smart under a vicarious liability theory, P. Mem. 10, that is the only reasonable reading of his allegations that certain State Defendants "condoned and ratified" Smart's alleged harassment. Compl. ¶¶ 52, 55, 73.

## VI. PLAINTIFF'S SUPERVISORY LIABILITY ALLEGATIONS ARE DEFICIENT

Plaintiff's conclusory supervisory liability allegations against defendants Morgan, Vahdat, Traschen, Flanagan and Palmieri are insufficient to state any claims against those defendants. *See* Opening Mem. Point VII. Plaintiff does not seriously dispute this, stating only that these defendants "caused and led to the Plaintiff's ultimate banning from the TVB." P. Mem. 10-11. That is woefully insufficient to survive a motion to dismiss.

## VII. PLAINTIFF FAILS TO STATE ANY CLAIMS AGAINST DEFENDANT MORGAN, AND SHE HAS ABSOLUTE IMMUNITY

Plaintiff makes no effort to explain why defendant Morgan should be held liable under federal civil rights laws simply because he mailed her a letter and did not receive a response. Plaintiff tries to distinguish *Gregory v. Incorporated Vill. of Centre Island*, 2016 WL 4033171 (E.D.N.Y. Jul. 27, 2016) by arguing that the "petition" he sent to Morgan was more substantial than the one submitted to a state official in *Gregory*, but he cannot dispute that, regardless of whatever grievances may be raised in a letter, the official's "refusal to consider or act upon [the] grievances is not conduct that violates the First Amendment." *Id.* at *8 (citations omitted).

Plaintiff also argues defendant Morgan is not entitled to absolute immunity because her alleged inaction was not related to any litigation. P. Mem. 12. That is preposterous: his letter *itself* referenced his 2012 proceeding against the DMV. Siegmund Decl. Ex. 7 at 1. In any event, absolute immunity shields Morgan from civil liability for any actions or inactions taken in her "official capacity," whether or not pertaining to a particular judicial proceeding. *Levy v.*

9

*State*, 86 A.D.2d 574 (N.Y. App. Div. 1st Dep't 1982), *aff'd*, 58 N.Y.2d 733 (1982).

### VIII. THE STATE DEFENDANTS HAVE QUALIFIED IMMUNITY

Plaintiff's only response to the State Defendants' qualified immunity arguments is that there are "unresolved factual issues" regarding whether the State Defendants' conduct was objectively reasonable that entitle Plaintiff to proceed to discovery. P. Mem. 12-13. Not so. The law was clear when Plaintiff was barred from the DMV in 2015 – just as it is now – that Plaintiff had no constitutional right to continue practicing law at the TVB, to engage in violent and threatening behavior, or to an evidentiary hearing before being barred from the TVB.[12]

### IX. PLAINTIFF'S THIRD CAUSE OF ACTION SHOULD BE DISMISSED

Plaintiff does not dispute that if his two substantive claims against the State Defendants are dismissed (as they should be), so should his third cause of action. P. Mem. 13.

### X. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff argues he should be allowed to proceed to discovery or amend his Complaint because the State Defendants' "actions and inactions" are "uniquely within their possession and control." P. Mem. 14. But Plaintiff's allegations are implausible and fail to state any claims for relief. Moreover, Plaintiff's admissions of his own violent behavior are fatal to Plaintiff's contention that the DMV had no basis to ban him from the TVB. Opening Mem. 25.

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Opening Memorandum, the Court should grant the State Defendants' motion to dismiss the Complaint in its entirety, and enter judgment dismissing this action as to the State Defendants with prejudice.

---

[12] *See Birch v. City of N.Y.*, 184 F. Supp. 3d 21, 28-31 (E.D.N.Y. 2016), *aff'd on other grounds*, 675 Fed. App'x 43 (2d Cir. 2017) (qualified immunity issue may be decided on Rule 12(b)(6) motion where the "question is purely the state of the law at the time of a defendant's . . . conduct, so that the court can determine whether a reasonable state agent should have known that what he was doing violated the law").

Dated: New York, New York
October 5, 2018

    BARBARA D. UNDERWOOD
    Attorney General of the State of New York
    Attorney for Defendants Gelbstein, Vahdat, Traschen, Morgan, <u>Flanagan, Palmieri, and Calvo</u>

    By: <u>/s/ Mark Siegmund</u>
        Mark Siegmund
        Assistant Attorney General

    28 Liberty Street
    New York, New York 10005
    Tel. (212) 416-8627