UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARIO H. CAPOGROSSO,

                        Plaintiff,

- against -

ALAN GELBSTEIN, in his official and individual capacity; BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) in her official and individual capacity; IDA TRASCHEN, in her official and individual capacity; ELIZABETH PRICKETT-MORGAN, in her official and individual capacity; JEAN FLANAGAN, in her official and individual capacity; VINCENT PALMIERI, in his official and individual capacity; DANIELLE CALVO, in her official and individual capacity; SADIQ TAHIR, in his individual capacity; PEC GROUP OF NY, INC.; DAVID SMART, in his individual capacity; JOHN AND JANE DOE,

                        Defendants.

No. 1:18-cv-02710-MKB-LB

---

**THE STATE DEFENDANTS' WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION DATED JANUARY 30, 2019**

                        LETITIA JAMES
                        Attorney General of the State of New York
                        Attorney for Defendants Gelbstein, Vahdat, Traschen,
                          Morgan, Flanagan, Palmieri, and Calvo
                        28 Liberty Street
                        New York, New York 10005
                        Tel. (212) 416-8610

MARK SIEGMUND
Assistant Attorney General

    *Of Counsel*

# TABLE OF CONTENTS

                                                                    **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT .............................................................................................................................. 1

I.      LEGAL STANDARD ...................................................................................................... 1

II.     THE COURT SHOULD FIND THAT PLAINTIFF LACKS ARTICLE III
        STANDING ........................................................................................................................ 2

III.    ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS'
        CLAIMS FOR FIRST AMENDMENT RETALIATION AND PROSPECTIVE
        INJUNCTIVE RELIEF AND FIND THAT THE STATE DEFENDANTS ARE
        ENTITLED TO QUALIFIED IMMUNITY ............................................................... 5

        A.     Plaintiff's First Amendment Retaliation Claim Should Be Dismissed ................... 5

        B.     The State Defendants Have Qualified Immunity .................................................. 10

        C.     Plaintiff's Claim for Prospective Injunctive Relief Should Be Dismissed ........... 13

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Agard v. N.Y.S. Dep't of Taxation & Fin.*, 2012 WL 601474 (E.D.N.Y. 2012) ............................. 7

*Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204 (E.D.N.Y. 2018) ................................................. 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................... 8

*Ayazi v. N.Y. City Dep't of Educ.*, 2012 WL 4503257 (E.D.N.Y. Sept. 28, 2012) ......................... 6

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ...................................................... 3

*City and County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015) ........................... 11

*City of Shelton v. Hughes*, 578 Fed. App'x 53 (2d Cir. 2014) ...................................................... 14

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) ............................................................. 6

*Committee for a Unified Independent Party, Inc. v. F.E.C.*, 2001 WL 1218395 (E.D.N.Y. Oct. 11, 2001) ........................................................................................................... 2

*Cunningham v. Consolidated Edison, Inc.*, 2006 WL 842914 (E.D.N.Y. Mar. 28, 2006) ............. 6

*Danzer v. Norden Systems, Inc.*, 151 F.3d 50 (2d Cir. 1998) ......................................................... 9

*El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931 (2d Cir. 2010), *aff'd*, 104 F.3d 356 (2d Cir.1996) ..................................................................................................................................... 6

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) ............................................................................. 6

*Estate of Rosenbaum v. City of New York*, 975 F. Supp. 206 (E.D.N.Y. 1997) ........................... 11

*Heller v. Bedford Cent. Sch. Dist.*, 665 Fed. App'x 49 (2d Cir. 2016) .......................................... 9

*Hill v. City of N.Y.*, 136 F. Supp. 3d 304 (E.D.N.Y. 2015) ............................................................ 7

*Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005) ..................................................................... 12

*Jowers v. Family Dollar Stores, Inc.*, 2010 WL 3528978 (S.D.N.Y. Aug. 16, 2010), *aff'd*, 455 Fed. App'x 100 (2d Cir. 2012) ............................................................................................ 9

*Levantino v. Skala*, 56 F. Supp. 3d 191 (E.D.N.Y. 2014) ............................................................ 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................... 2

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ......................................................................... 11

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ........................................................... 11

*Nolley v. Swiss Reinsurance Am. Corp.*, 857 F. Supp. 2d 441 (S.D.N.Y. 2012), *aff'd*, 523 Fed. App'x 53 (2d Cir. 2013) ........................................................................................... 6

*Pearce v. Labella*, 473 Fed. App'x 16 (2d Cir. 2012) ................................................................... 11

*Philippeaux v. Fashion Institute of Technology*, 1996 WL 164462 (S.D.N.Y. Apr. 9, 1996), *aff'd*, 104 F.3d 356 (2d Cir. 1996) ........................................................................... 6

*Roth v. Farmingdale Sch. Dist.*, 2017 WL 395211 (E.D.N.Y. Jan. 30, 2017) .............................. 11

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) ..................................................................... 10

*Slattery* v. *Swiss Reinsurance Am. Corp.*, 248 F.3d 87 (2d Cir. 2001) .......................................... 7

*St. Pierre v. Dyer*, 208 F.3d 394 (2d Cir. 2000) ............................................................................. 4

*Surlock v. Delaney*, 2016 WL 3200273 (N.D.N.Y. Jun. 8, 2016), *aff'd*, 717 Fed. App'x 100 (2d Cir. 2018) ............................................................................................................... 11

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635 (2002) ..................... 14

*Williams v. Victoria's Secret*, 2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) ................................ 9

**State Cases**

*People v. Reape*, 22 Misc. 3d 615 (N.Y. City Crim. Ct. Kings Cty. 2008) .................................. 11

**Constitutional Provisions**

U.S. Const. amend. I .............................................................................................................. passim

U.S. Const. art. III .................................................................................................................. passim

**Statutes**

28 U.S.C. § 636(b)(1) ..................................................................................................................... 1

28 U.S.C. § 636(b)(1)(C) ............................................................................................................... 2

**Regulations**

15 N.Y.C.R.R. § 124.2(a) ................................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 2, 5

Fed. R. Civ. P. 72(b)(2) ...................................................................................................... 1

Fed. R. Civ. P. 72(b)(3) ...................................................................................................... 1

**PRELIMINARY STATEMENT**

Defendants Alan Gelbstein, Bushra Vahdat, Ida Traschen, Elizabeth Morgan (formerly Prickett-Morgan), Jean Flanagan, Vincent Palmieri, and Danielle Calvo (collectively, the "State Defendants"), by their attorney, Letitia James, Attorney General of the State of New York, respectfully submit these written objections, pursuant to Rule 72(b)(2), to the Report and Recommendation of Magistrate Judge Bloom, dated January 30, 2019 (ECF No. 51) ("R&R"). As detailed below, the Court should decline to adopt the Magistrate Judge's recommendations regarding the branches of the State Defendants' motion seeking dismissal on the grounds that: (1) Plaintiff lacks Article III standing; (2) the Complaint fails to state claims for First Amendment retaliation and prospective injunctive relief; and (3) the State Defendants are entitled to qualified immunity.[1]

**STATEMENT OF FACTS**

The State Defendants respectfully refer the Court to, and incorporate herein, the Statement of Facts in their memorandum of law in support of their motion to dismiss, dated August 16, 2018 (ECF No. 44) (the "MTD Opening Mem.").

**ARGUMENT**

**I.     LEGAL STANDARD**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation. 28 U.S.C. § 636(b)(1). The Court must make de novo determinations of those portions of the report and recommendation to which objection is made. *Id.*; Fed. R. Civ. P. 72(b)(3); *see Arista Records*

---

[1] The Court should adopt the Magistrate Judge's recommendations that Plaintiff's due process claim be dismissed and that the Complaint be dismissed as against defendants Vahdat, Morgan, Flanagan and Palmieri, for the reasons set forth in the R&R and the State Defendants' motion papers.

*LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010).

## II.  THE COURT SHOULD FIND THAT PLAINTIFF LACKS ARTICLE III STANDING

As a threshold matter, Plaintiff lacks Article III standing against the State Defendants because he fails to demonstrate a "causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The record of contemporaneous complaints regarding Plaintiff demonstrates that he was barred from the Traffic Violations Bureau ("TVB") because of his continued violent, threatening and unprofessional conduct, not in retaliation for his letter to defendant Morgan. *See* MTD Opening Mem. at 11-12; Montena Decl. Exs. 1-28.

The Magistrate Judge properly found that the record of contemporaneous complaints and statements regarding Plaintiff's conduct could be considered on the Rule 12(b)(1) branch of the State Defendants' motion. *See* R&R at 5, 10. Nonetheless, the Magistrate Judge found that "the Court cannot say on the instant record that plaintiff's injury is so completely due to plaintiff's own fault that his proffer of standing is defeated." *Id.* at 10. Respectfully, however, the only conclusion that can be drawn from the record is that Plaintiff's ban from the TVB was self-inflicted because it was caused by his own violent, offensive and unprofessional conduct.[2]

The record demonstrates that Plaintiff was banned from the TVB following, and as a direct result of, his physical confrontation with security guard Smart. Numerous witnesses reported, in contemporaneous written statements, that Plaintiff attacked Smart by pushing him into a pole. Montena Decl. Exs. 22-24. An internal DMV memorandum confirms that Plaintiff

---

[2] The Court is permitted to make its own findings with respect to Article III standing notwithstanding the Magistrate Judge's findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(C); *see e.g.*, *Committee for a Unified Independent Party, Inc. v. F.E.C.*, 2001 WL 1218395, at *2 (E.D.N.Y. Oct. 11, 2001) ("[T]his Court disagrees with [the] Magistrate Judge . . . and finds that [plaintiffs] have not established standing.").

2

was banned from the TVB for his violent behavior. *See id.* Ex. 26 ("On 5/11[/2015,] Mr. Capogrosso pushed our security guard David Smart and another workplace violence report was submitted. Mr. Capogrosso was asked to leave the building that day and since then has not been permitted to enter any of the TVB offices."). Plaintiff's violent altercation with Smart was the culmination of a long and well-documented history of violent and offensive behavior by Plaintiff over a period of several years (including both before and after Plaintiff's letter to Morgan), including anti-Semitic tirades, cursing and Plaintiff's own admitted habit of throwing punches at the TVB. *See* ECF No. 48: P. Decl. at 4 ("I did throw a punch in the direction of a wall. . . ."); Montena Decl. Exs. 1-21; MTD Opening Mem. at 4-7 (summarizing complaints and statements).

Plaintiff's contention that he was banned in retaliation for writing a letter to defendant Morgan is contradicted by this voluminous record evidence, and is supported by nothing more than his self-serving and implausible allegation that ALJ Gelbstein purportedly told him – three days prior to Plaintiff's physical altercation with Smart – that he had seen Plaintiff's letter and asked Plaintiff if he could "go practice somewhere else." Compl. ¶ 10. But as explained below (Point III.A., *infra*), Plaintiff fails to allege any facts tying this alleged comment to his ban from the TVB or showing that ALJ Gelbstein had a retaliatory motive in making this alleged comment. In any event, Plaintiff may not merely "rely on the allegations of the [complaint]" in responding to evidence showing lack of Article III standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (citations omitted). Plaintiff's inability to "come forward with evidence of [his] own to controvert" the overwhelming evidence that his ban from the TVB was caused by his own continuing violent and offensive conduct confirms that he lacks Article III standing. *Id*.

This is not a case where it could reasonably be determined that "defendants have engaged

3

in conduct that may have contributed to causing [plaintiff's] injury," as the Magistrate Judge suggested. R&R at 10 (citing *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000) (citation omitted)). The record demonstrates that Plaintiff's ban from the TVB was "so completely due to [his] own fault as to break the causal chain" between the State Defendants' alleged retaliatory motive and Plaintiff's ban. *St. Pierre*, 208 F.3d at 402-03. Plaintiff's ban was caused solely by his own "unreasonable decision . . . to bring about a harm that he knew to be avoidable" by continually engaging in violent, offensive and inappropriate behavior at the TVB over a period of several years, culminating in his physical attack on security guard Smart. *Id*.

The Court's decision in *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62 (E.D.N.Y. 2006), is instructive. Plaintiffs alleged defendants violated antitrust laws by entering into an exclusive dealing arrangement with plaintiffs' competitors. The Court recognized that plaintiffs had been "injured" for Article III purposes by this exclusive dealing arrangement, but found that plaintiffs had inflicted this injury upon themselves by rejecting defendants' previous offer to enter into similar dealing arrangements with plaintiffs. 454 F. Supp. 2d at 70-71. Plaintiffs were therefore held to lack Article III standing because they were the "primary cause" of their own injury. *Id.* Here, Plaintiff's alleged injury – his ban from the TVB in 2015 –was self-inflicted in an even stronger sense than in *Union Cosmetic* because the ban was an entirely foreseeable result of his continuing violent and unprofessional behavior, and Plaintiff's behavior is the sole cause of his ban. Indeed, Plaintiff had already been banned once from the TVB for earlier offensive behavior, was required by the DMV to take an approved anger management course in order to return to practice at the TVB, and had been *explicitly warned* in 2012 that he would be banned again, and permanently, if he engaged in any further misconduct. *See* Siegmund Decl. Ex. 5 (warning Plaintiff that any "future misconduct" may

4

result in the DMV "immediately and permanently barring Mr. Capogrosso from" the TVB); *id.* Ex. 4 (warning that if Plaintiff "commits an act of physical violence, he shall be immediately and permanently barred" from the TVB).  Nonetheless, Plaintiff continued to engage in offensive, unprofessional and violent behavior that caused him to be permanently banned from the TVB.

Because Plaintiff has not satisfied his burden of demonstrating Article III standing, the Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### III. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR FIRST AMENDMENT RETALIATION AND PROSPECTIVE INJUNCTIVE RELIEF AND FIND THAT THE STATE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

#### A. Plaintiff's First Amendment Retaliation Claim Should Be Dismissed

Plaintiff's First Amendment retaliation claim should be dismissed under Rule 12(b)(6) because Plaintiff fails to plausibly allege that any of the State Defendants retaliated against him for writing the letter to defendant Morgan.  *See* Opening Mem. at 12-13.

The Magistrate Judge found, however, that (1) the temporal proximity between Plaintiff's letter to defendant Morgan on March 20, 2015 and his ban from the TVB on May 11, 2015 was "sufficient to raise a plausible inference of a retaliatory motive"; and (2) Plaintiff sufficiently alleged a retaliatory motive because Plaintiff alleged that ALJ Gelbstein approached Plaintiff on May 8, 2015 and stated, "'[c]an't you go practice somewhere else . . . I saw what you wrote about me that I am complicit and incapable.'"  R&R at 17 (citing Compl. ¶ 10).  The Court should, respectfully, decline to adopt the Magistrate Judge's findings because neither temporal proximity nor Plaintiff's allegation regarding the purported comment by ALJ Gelbstein on May 8, 2015 are sufficient to render his claim of First Amendment retaliation plausible.

"The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . , but without more, such temporal

5

proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010); *see also Ayazi v. N.Y. City Dep't of Educ.*, 2012 WL 4503257, at *7 (E.D.N.Y. Sept. 28, 2012) ("Although temporal proximity of events can give rise to an inference of retaliation sufficient to establish causation . . . , the mere filing of [ ] a complaint does not . . . create an automatic presumption that any subsequent employer action adverse to the employee is retaliatory in nature.") (citations omitted); *Philippeaux v. Fashion Institute of Technology*, 1996 WL 164462 at *9 (S.D.N.Y. Apr. 9, 1996) ("temporal proximity alone is not necessarily dispositive of a causal connection evidencing a retaliatory motive"), *aff'd*, 104 F.3d 356 (2d Cir. 1996). To create an inference of retaliation, temporal proximity must be "'very close.'" *Cunningham v. Consolidated Edison, Inc.*, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)). Temporal proximity "must be analyzed 'in the context of particular cases,'" and the Court may "'exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'" *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Here, the temporal proximity at issue – one month and 18 days – is insufficient to create an inference of retaliation given Plaintiff's own admission that he was banned from the TVB immediately following a physical confrontation with security guard Smart on May 11, 2015. Compl. ¶ 11. Plaintiff's admitted physical confrontation with Smart is an "intervening event" between Plaintiff's letter to Morgan and his ban from the TVB that "defeat[s] the inference of causation where temporal proximity might otherwise suffice to raise the inference." *Nolley v. Swiss Reinsurance Am. Corp.*, 857 F. Supp. 2d 441, 461 (S.D.N.Y. 2012), *aff'd*, 523 Fed. App'x 53 (2d Cir. 2013); *see Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 222 (E.D.N.Y. 2018)

6

(granting Rule 12(b)(6) motion to dismiss retaliation claim and finding plaintiff could not rely on temporal proximity to create an inference of causation where plaintiff's own allegations revealed there was a "significant intervening event which undermines but-for causation"); *see also Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("In this Circuit, an inference of causation is defeated . . . if there was an intervening causal event that occurred between the protected activity and the allegedly retaliatory [action].") (citation omitted).

Moreover, Plaintiff alleges that he had previously been banned from the TVB in 2011 for "complaints of misconduct." Compl. ¶ 5. Plaintiff may not rely on temporal proximity between his letter to Morgan and his second ban from the TVB in 2015 to create an inference of causation where, as here, the same challenged conduct (being banned from the TVB) occurred *before* Plaintiff wrote his letter to Morgan. *See Slattery* v. *Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, *an inference of retaliation does not arise*.") (emphasis added); *see also Hill v. City of N.Y.*, 136 F. Supp. 3d 304, 348-39 (E.D.N.Y. 2015) (granting Rule 12(b)(6) motion to dismiss with respect to First Amendment retaliation claim and finding that the fact that alleged adverse employment actions occurred prior to plaintiff's protected speech "undercuts Plaintiff's claim of retaliation") (citing, *inter alia*, *Slattery*, 248 F.3d at 87); *Agard v. N.Y.S. Dep't of Taxation & Fin.*, 2012 WL 601474, at *7 (E.D.N.Y. 2012) (accord).[3]

Nor is Plaintiff's allegation regarding a comment supposedly made by ALJ Gelbstein (Compl. ¶ 10) sufficient to render his First Amendment retaliation claim plausible.

---

[3] While these cases concerned allegations of retaliation by employers, they are nonetheless instructive because, as the Magistrate Judge noted in the R&R, "the majority of First Amendment retaliation cases occur in the public employment context. . . ." R&R at 15.

7

"Determining whether a complaint states a plausible claim will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, the only plausible reading of Plaintiff's allegations is that he was banned directly following, and as a result of, his "violent altercation" with security guard Smart, not for any First Amendment activity. Compl. ¶ 11. Plaintiff admits in the Complaint that he was previously banned from the TVB in 2011 "as a result of complaints of misconduct." *Id.* ¶ 5. Documents submitted in Plaintiffs' 2012 state court action, which the Court may properly consider on the Rule 12(b)(6) branch of this motion, reveal that numerous witnesses complained of Plaintiffs' violent, threatening and unprofessional behavior before he was banned from the TVB in 2011. *See* Montena Decl. Exs. 1-11, Siegmund Decl. Exs. 1-3.[4] Plaintiff has also admitted that he had been required to take an anger management class as a condition to be allowed to return to practice at the TVB in 2012, after Plaintiff was banned from the TVB for his earlier offensive behavior, and that he would throw punches at the TVB. *See* ECF No. 48 at 3-4. Plaintiff's admissions of violent behavior render completely implausible his allegation that he was barred from the TVB in retaliation for his letter to Morgan.

In this context, Plaintiff's single allegation regarding a comment supposedly made by ALJ Gelbstein does not render Plaintiff's First Amendment retaliation claim plausible. Plaintiff alleges that ALJ Gelbstein asked him if he could "practice someplace else" and at some point during that conversation – Plaintiff adds ellipses after that alleged remark – ALJ Gelbstein

---

[4] The Magistrate Judge "decline[d] to consider Exhibits 12-27 attached to the Montena Declaration," but not Exhibits 1-11 to the Montena Declaration or Exhibits 1-3 and 7 to the Siegmund Declaration because, *inter alia*, those exhibits were taken from Plaintiff's state court proceeding concerning his previous ban from the TVB in 2011. *See* R&R at 7-8. The Court may consider these exhibits because they were submitted in Plaintiff's state court proceeding and they are not being offered for the "'truth of the matters asserted in the other litigation,'" but rather to demonstrate "'what the documents stated.'" *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (citing, *inter alia*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

8

supposedly referred to Plaintiff's statements that he was "complicit and incapable." There are no facts alleged tying this comment to Plaintiff's ban or showing that ALJ Gelbstein had a retaliatory motive in making this alleged comment to Plaintiff. *See, e.g.*, *Williams v. Victoria's Secret*, 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28, 2017) (recognizing that "where the comments at issue lack a causal nexus to the [challenged] decision, [they] qualify only as stray remarks" and holding plaintiff failed to allege such a causal nexus where, *inter alia*, "the [ ] Complaint provides no information concerning the context in which the remarks were made") (citations omitted); *see also Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("'stray remarks' alone" are insufficient to show intent by decisionmaker); *Jowers v. Family Dollar Stores, Inc.*, 2010 WL 3528978, at *1, *3-4 (S.D.N.Y. Aug. 16, 2010) (recognizing that a "singular discriminatory comment" is "insufficient to establish an inference of discrimination" and holding that a racist remark by a decisionmaker one month prior to plaintiff's termination was insufficient to give rise an inference of racial discrimination), *aff'd*, 455 Fed. App'x 100 (2d Cir. 2012). The only plausible inference here is that, when Plaintiff was informed that he was being banned from the TVB because of his "physical confrontation" with security guard Smart (Compl. ¶ 11), that was not a mere pretext to conceal a retaliatory motive; it was the actual reason Plaintiff was banned. *See Heller v. Bedford Cent. Sch. Dist.*, 665 Fed. App'x 49, 53 (2d Cir. 2016) (affirming dismissal of First Amendment retaliation claim on Rule 12(b)(6) motion where claim was "not plausible on its face" because it was clear Plaintiff "posed a risk of physical harm to others").[5]

---

[5] The Magistrate Judge found *Heller* to be distinguishable because in *Heller*, "plaintiff's alleged speech constituted threats and posed a risk of physical harm that was not protected by the First Amendment." R&R 18. But in *Heller*, the Second Circuit did not actually find that the speech at issue was not protected by the First Amendment because it was clear that plaintiff was fired from a school for charges that were "not based on his speech" but rather his unwillingness to cooperate with a psychological evaluation and the "possibility that he might be mentally unfit to teach." *Heller*, 665 Fed. App'x at 53. In other words,

9

## B. The State Defendants Have Qualified Immunity

Plaintiff's First Amendment retaliation claim should be dismissed for the additional reason that the State Defendants have qualified immunity from any liability for alleged constitutional violations. Qualified immunity shields public officials from civil liability for official acts if, as here, "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citation omitted). To the extent any of the State Defendants were personally involved in the DMV's decision to permanently ban Plaintiff from the TVB in 2015 for his violent and threatening behavior, they did not violate any of Plaintiff's clearly established constitutional rights and it was objectively reasonable, under the circumstances, for them to have believed that their actions were lawful because Plaintiff had no constitutional right to engage in violent and threatening behavior. *See* MTD Opening Mem. at 23-24.

The Magistrate Judge recommended that the State Defendants' qualified immunity defense should not be resolved on a motion to dismiss, finding that "[a]s few, if any, First Amendment retaliation cases involve private citizens in similar contexts to plaintiff here, it seems unlikely that the law was clearly established law in 2015 when plaintiff was barred from representing clients at TVB locations statewide." R&R at 28. The Magistrate Judge misapplied the law on qualified immunity: if, as the Magistrate Judge found, it was "unlikely that the law was clearly established" when Plaintiff was banned from the TVB, then that means the qualified immunity defense *applies* because the State Defendants could not have understood that their conduct violated any of Plaintiff's clearly established constitutional rights. *See City and County*

---

in *Heller*, as here, plaintiff failed to allege facts plausibly demonstrating causation because the challenged decision was made because plaintiff "posed a risk of physical harm to others." *Id.*

10

*of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'") (citation omitted).[6]

In any event, Plaintiff failed to demonstrate the violation of a clearly established right because the law was clear when Plaintiff was banned from the TVB in 2015, just as it is now, that no constitutional rights are violated if a person is banned from a judicial or quasi-judicial forum for violent or offensive behavior. *See Roth v. Farmingdale Sch. Dist.*, 2017 WL 395211, at *5 (E.D.N.Y. Jan. 30, 2017) ("threatening behavior" that led to plaintiff's expulsion from school property was "not shielded by the First Amendment"); *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence."); *Surlock v. Delaney*, 2016 WL 3200273, at *44, *53 (N.D.N.Y. Jun. 8, 2016) (dismissing First Amendment retaliation claim on alternative grounds of qualified immunity on summary judgment where "no objectively reasonable officials would believe" that officials imposed restrictions on plaintiff's visits to medical facility "in retaliation for Plaintiffs' protected activity" given record of "repeated complaints . . . regarding [plaintiff's] conduct"), *aff'd*, 717 Fed. App'x 100 (2d Cir. 2018); *People v. Reape*, 22 Misc. 3d 615, 618-19 (N.Y. City Crim. Ct. Kings Cty. 2008) (holding officials acted lawfully in revoking license of defendant who was "yelling and screaming" to remain upon public property).

In addition, "the facts supporting the defense appear on the face of the complaint" and other documents submitted by Plaintiff. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)

---

[6] *See also Pearce v. Labella*, 473 Fed. App'x 16, 20 (2d Cir. 2012) (holding qualified immunity defense applies because the purported "'duty' asserted by plaintiff . . . cannot be said to have been a 'clearly established one'"); *Estate of Rosenbaum v. City of New York*, 975 F. Supp. 206, 221 (E.D.N.Y. 1997) (public official's actions are objectively reasonable when "reasonably competent similarly situated public officials could disagree as to the legality of" the defendant's actions) (citation omitted).

11

(citation omitted).  The Complaint alleges that Plaintiff was banned from the TVB following a "physical confrontation" with security guard Smart.  Compl. ¶ 11.  Plaintiff himself has admitted he would "throw a punch" at the TVB and that he was required to take an anger management course because of his violent and aggressive behavior.  ECF No. 48 at 3-4.  Counsel for the DMV had previously warned Plaintiff, after his right to practice at the TVB was reinstated in 2015 following his completion of the anger management course, that any further misconduct would be grounds for permanently banning him from the TVB, yet Plaintiff continued to engage in violent and offensive behavior.  Montena Decl. Exs. 4, 5.[7]  Given these allegations and admissions, the only reasonable inference is that Plaintiff was banned from the TVB because of his violent and offensive behavior, not in retaliation for a letter he sent to Assistant Attorney General Morgan over one and a half months before the ban.

      The cases cited by the Magistrate Judge for the proposition that it was unclear whether any of the State Defendants violated a clearly established right of Plaintiff when he was banned from the TVB in 2015, *see* R&R at 28, are inapposite because they did not concern violent and offensive behavior by a lawyer in a judicial or quasi-judicial forum, as here.  For example, in *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005), the Second Circuit held that judicial officials were not protected from liability by qualified immunity for a trespass notice singling out a nonviolent protester for exclusion from access because the notice unreasonably created "a 'First-Amendment-Free Zone' for [plaintiff] alone in and around the [ ]courts." *Id.* at 92.  Here, by contrast, Plaintiff is not a nonviolent protester exercising First Amendment rights near a court, as

---

[7] Plaintiff was also required by the DMV's regulations to conform to the "standards of conduct required of attorneys appearing before State courts" when practicing in the TVB.  *See* 15 N.Y.C.R.R. § 124.2(a).  Plaintiff was aware of this regulation because he was repeatedly reminded of it in connection with his 2011 ban from the TVB.  *See* Montena Decl. Ex. 11 at 2; Siegmund Decl. Ex. 3 ¶ 4; *id.* Ex. 4 at 1-2.

in *Huminski*. He is a lawyer who represented clients in a quasi-judicial forum (the TVB) and who engaged in violent, offensive and unprofessional activity in that forum.[8] Because Plaintiff did not have a clearly established right to engage in violent, offensive and unprofessional behavior, the State Defendants are entitled to qualified immunity.

### C. Plaintiff's Claim for Prospective Injunctive Relief Should Be Dismissed

The Magistrate Judge recommended that Plaintiff's third cause of action for "prospective injunctive relief" not be dismissed, finding that, to the extent Plaintiff seeks prospective injunctive relief enjoining the remaining State Defendants from barring him from representing clients in TVB courts in the future, Plaintiff "satisfies the requirements for the exception to Eleventh Amendment immunity set forth in Ex Parte Young" because the Court could not "establish that the State Defendants' decision to ban plaintiff from representing clients at all TVB Courts was reasonable and necessary." R&R at 23. But the Magistrate Judge did not address the argument asserted by the State Defendants, *i.e.*, that a stand-alone claim for injunctive relief must be dismissed if there are no remaining substantive claims upon which the claim for injunctive relief can be based. *See* MTD Opening Mem. at 24 (citing cases). Plaintiff's substantive claims against the State Defendants should be dismissed for the reasons stated above and in the State Defendants' motion to dismiss papers, and once dismissed, Plaintiff's claim for injunctive relief should be dismissed as well.

In any event, the Magistrate Judge misstated the law on Eleventh Amendment immunity. The test for determining whether a prospective injunction claim against State officials should be dismissed on Eleventh Amendment immunity grounds is not whether the State action was

---

[8] As explained in the MTD Opening Mem. at 15-16, lawyers do not have a First Amendment right to represent clients in courts or other judicial fora for remunerative purposes.

13

"reasonable and necessary," as the Magistrate Judge characterized it (R&R at 23); it is whether Plaintiff plausibly alleges "an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). Here, as explained above and in the motion to dismiss papers, to the extent Plaintiff's claim for prospective injunctive relief can be construed to allege an ongoing constitutional violation by the State Defendants based on First Amendment retaliation (*e.g.*, Compl. ¶¶ 74-75), Plaintiff fails to plausibly allege an impermissibly retaliatory motive and causation. Plaintiff therefore fails to plausibly allege an ongoing violation of federal law based on First Amendment retaliation. *See City of Shelton v. Hughes*, 578 Fed. App'x 53, 55 (2d Cir. 2014) ("[The] complaint fails to allege any plausible ongoing violation of federal law and so it has not met basic pleading requirements. . . . We conclude that the City's action is barred by the Eleventh Amendment."); *Levantino v. Skala*, 56 F. Supp. 3d 191, 207 (E.D.N.Y. 2014) (accord). Accordingly, Plaintiff's claim for prospective injunctive relief should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should, respectfully, decline to adopt the Magistrate Judge's recommendations relating to the parts of the State Defendants' motion to dismiss asserting that Plaintiff lacks Article III standing, that the Complaint fails to state claims for First Amendment retaliation and prospective injunctive relief, and that the State Defendants are entitled to qualified immunity.

Dated: New York, New York
      February 27, 2019

                                              LETITIA JAMES
                                              Attorney General of the State of New
                                                York
                                              Attorney for Defendants Gelbstein,
                                                  Vahdat, Traschen, Morgan,
                                                  <u>Flanagan, Palmieri, and Calvo</u>

By: /s/ Mark Siegmund
    Mark Siegmund
    Assistant Attorney General

28 Liberty Street
New York, New York 10005
Tel. (212) 416-8627

15