

September 6, 2019

Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

United States Magistrate Judge Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Capogrosso v. Gelbstein et al, No. 18-cv-2710 (E.D.N.Y.)

Judge Brodie:

    Not wishing to blindside this Court, and with an ardent desire to be truthful and transparent with the Court concerning my Complaint as filed in May 2018, I provide my letter below to J. Irizarry dated August 29, 2019:



1

August 29, 2019

Hon. Dora L. Irizarry
Chief Judge of the
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201



2019 AUG 29 PM 7:28

Re: Capogrosso v. Gelbstein et al, No. 18-cv-2710 (E.D.N.Y.)

Judge Irizarry:

    I am not being treated fairly by this Court nor, as I do hope you are aware by this time, by the Brooklyn TVB for which I had the pleasure to suffer under as opposed to the pleasure of working under for the first ten years of my legal career (April 2005 – May 11, 2015).

    I do not make these statements rashly.

    In regards to the Brooklyn TVB (Traffic Violations Bureau) and its judiciary, I state:

    1) In my first meeting with Defendant Gelbstein (head administrative law judge at the Brooklyn TVB) he states, "how do I get a piece of the action." (The TVB is predominantly a cash business. Motorists come to the TVB to retain attorneys, predominantly with cash, to represent them on traffic tickets).

    2) I see Defendant Gelbstein entertaining Jewish ticket brokers on a weekly basis in his chambers. When I question him concerning it, his reply – "They are friends of my wife I have dinner with them, but I do not know what they do for a living." (Ticket broker – a person, not an attorney who gathers up tickets from motorists and brings them to attorneys at the TVB in order for such attorneys to represent these motorists before administrative law judges at the TVB).

    3) When I complain to the District Attorney concerning a woman continuing to represent herself as an attorney in Defendant Gelbstein's courtroom and, and after such complaint I no longer see her in his courtrooms, Defendant Gelbstein's only reply to me is "Who are you Don Quixote."

1

4) When I have a conflict with another attorney over a case in which we both put into a courtroom to be heard, and I approach such attorney over the conflict, such attorney responds, "I am covering the case for Gelbstein."

5) On several occasions I see Defendant Gelbstein in the General Requirements (GE) courtroom rescheduling cases and pleading other cases guilty all before another administrative law judge and all on a sidebar.

6) Yakov Brody an attorney at the DMV tells me, while we were both in the attorneys' room, to "Excuse yourself, Go f--- yourself you Jew hater anti – Semite" in December of 2011. For what reason I still don't know other than that I am an Italian American making too much money in his presence.

7) The affidavits of Defendant Tahir show that I stated to Brody, "excuse me"

8) My actual words to Brody were "excuse me can I get my coffee" To which Brody not once but twice, on two separate occasions, states "Excuse yourself, go F--- yourself you Jew hater anti-Semite."

9) I am required to take an anger management course; Brody gets a pass.

10) Defendant Vahdat, the senior administrative law judge for the NY TVB, writes in her affidavit with respect to this occurrence, that I stated to her, that "I do it to let off steam (she accuses me of hitting a wall with my fist), otherwise I could hurt someone."

11) A lying statement from a lying lawyer who had an agenda to fulfil and a history of wrongdoing in her practice as an attorney as well as a judge.

12) To my dying breadth, and I have represented several stupid criminals since leaving the Brooklyn TVB in May 2015, I have not met anyone (criminal or not) who would ever state to a judge that if I did not hit a wall I would hurt someone.

13) A lying statement from a lying lawyer who wanted me out of the Brooklyn TVB.

14) Defendant Gelbstein states in his affidavit in response to the above occurrence, that I called him a "beanie wearing kike." An absolute lie from a lying lawyer. Defendant Gelbstein does not state when such statement or in whose presence such statement was made. Who corroborates such statement – no one. For it was never said. If such statement was made why was it never documented by Defendant Gelbstein before the incident of December 2011. Because it was never said. I ask that you look at all the affidavits supplied by opposing counsel in this matter. Not one has a statement from a motorist or client that I used racist or anti-Semitic remark.

Defendant Gelbstein goes on further to state that "he had shouted anti Semi remarks at Brody and that I punched the air in front of Mr. Meyer's face.", an attorney who routinely practices at the Brooklyn TVB. Defendant Gelbstein lies. This is not true. I never admitted that I threw a punch in front of Mr. Meyer's face.

Further, truth be told, I don't recall what I said to Brody, but it probably wasn't pleasant. But the issue here is that Brody initiated the incident and only side of the story is being told.

Defendants Gelbstein and Vahdat had an agenda, they wanted me removed from the Brooklyn TVB. They give me no opportunity to provide a formal written statement, as they allowed Brody and Meyers to make as well as other attorneys and representatives at the Brooklyn TVB, concerning this incident in December 2011 with Brody.

15) Defendant Gelbstein further states that I have a boxer's attitude and I study a lethal martial art. So what.

16) Defendant Gelbstein states that on "numerous times, he warned me to exercise a calmer demeanor". Not true. Where is Defendant Gelbstein written admonishment to me. There is none in the record, prior to the incident with Brody in December of 2011.

17) Defendant Gelbstein states that I study a martial art and speak about it to other people at the TVB. I study a martial art, but do not speak about it to anyone. He states my hands and knuckles are bruised. So what.

18) **The lying statements of Defendant Gelbstein are evident. Nothing in the record prior to the incident with Brody in December of 2011 document any of the statements made by Defendant Gelbstein, as stated above, regarding my conduct at the Brooklyn TVB.**

**Nor are there any written admonishments by Defendant Gelbstein to my Office prior to December 2011 concerning my conduct at the Brooklyn TVB to which I might have responded. I am the type of man you only have to tell me once, and not twice. Look at the record, I received no written admonishments, from either Defendant Gelbstein or Defendant Vahdat, prior to the incident with Brody in December of 2011 concerning my conduct at the Brooklyn TVB to which I could respond.**

I will repeat, Defendants Gelbstein and Vahdat had an agenda, they wanted me removed from the Brooklyn TVB and the incident of December 2011 with Brody gave them their opportunity to do so.

3

19) Allow me my day in your Court to confront my accusers.

20) Following the incident with Brody, feeling a duty to my clients, I take an anger management course, enter into a settlement agreement, and I am allowed to practice at the TVB in June 2012. **All the above matters, with reference to my conduct at the Brooklyn TVB, were fully settled by way of this settlement agreement.**

21) On my return from such course, I become aware that defendant Smart, a security guard working at the Brooklyn TVB, has stolen $80 dollars owed to me on a $150 retainer from a client who came looking for me at the Brooklyn TVB.

22) I report such theft to Defendant Gelbstein, an investigation is made, and Defendant Smart is allowed to remain at the Brooklyn TVB.

23) I was told by Defendant Gelbstein that Defendant Smart admitted to taking the money but that he represented that he gave such money to me. An outright lie by Defendant Smart. While I was absent from the Brooklyn TVB, I had no contact with a security guard at the Brooklyn TVB.

24) Subsequently Defendant Smart began to harass. He would get in my face and I would ask what is the problem, his reply "F--- you, you are the problem." Defendant Smart has pushed me from behind, gave me the sign of the cross and a spear hand, and then began to tamper with my files left in the attorneys' room.

25) I made complaints to Defendant Gelbstein and his only response to me was to laugh and giggle and tell me "a spade is a spade."

26) I write a letter to Attorney General Prickett-Morgan in March of 2015, seeking relief. In such letter I state that Defendant Gelbstein is "complicit, incapable, or incompetent" in handling the continued harassment by Defendant Smart.

27) I am approached by Defendant Gelbstein in the presence of Defendant Calvo (manager at the Brooklyn DMV) on Friday, May 8, 2015 and Defendant Gelbstein states to me:" Can't you go practice somewhere else I saw what you wrote about me that I am complicit incapable and incompetent'"

28) On the morning of Monday, May 11, 2015 Defendant Smart approaches me in an aggressive manner, crosses over two security barriers, without provocation gets within two inches of my face with his head dipped to the side, in a fighting stance, and his hand obscured.

29) In defense I put up my hand in an open palm position, and tell the man to "Back up back up."

4

30) I was not arrested. A police report was filed by Defendant Smart which confirms that I state to Defendant Smart to "Back up back up." and that Defendant Smart approaches me unprovoked.

31) My hand was in an open palm position. Opposing counsel M. Siegmund chooses to characterize such an action as an assault. An abhorrent characterization of the facts.

32) The State's Attorney has also decided not to represent Defendant Smart in this matter. Defendant Smart is self-represented.

33) Defendant Smart is not a court officer, he worked at the time for a private security company, Defendant PEC.

34) Ironic, to me, on the one hand, the State's Attorney chooses not to represent or take responsibility for Defendant Smart's actions, yet they take offense to my response to Defendant's Smart's approach upon me on the morning of May 11, 2015. Rhetorically, I ask what is the State's position, or are they simply grabbing at both sides and hoping to latch onto what proves to be in their best interest.

35) My actions were absolutely appropriate under the circumstances – putting my hand up in an open palm position and telling the man "back up back up." All of which occurred outside the Courtroom.

36) The State's Attorney also feels it worthy to bring to this Court's attention, by way of its defense to my Complaint, issues that were fully resolved by way of a settlement agreement, entered in June 2012 between myself and the DMV (Department of Motor Vehicles).

37) Rhetorically, I ask again, what was the purpose of such settlement agreement, if the State's attorney chooses now to relitigate all such issues fully resolved.

38) However, if the State's Attorney chooses to do so, bring it on. I stand by my career and will defend myself, and my career against all such allegations. I faithfully served the community of Brooklyn for ten years and have nothing to be ashamed of.

39) I am removed from the Brooklyn TVB on May 11, 2015 by police officers at the TVB under the insistence of Defendant Calvo.

40) I file grievances with the Grievance Committee for the Second, Eleventh and Thirteenth districts, the Commission on Judicial Conduct, the Appellate Division Third Department Committee on Professional Standards, the Inspector General's Office for the State of New York, and with the DMV directly, by way of letters to senior administrative law judge Defendant Bushra Vahdat, Defendant Gelbstein, and Defendant Ida Traschen, legal counsel for the DMV (Department of Motor

Vehicles). The Grievance Committees, the Commission for Judicial Conduct, and the Third Department state that they have no authority to act or would not act, the Inspector General's Office states that the matter will be handled internally and provide no further response, and Defendants, Vahdat, Gelbstein and Traschen refuse to respond to my letters.

41) I am removed from the Brooklyn TVB on May 11, 2015 and given no opportunity to respond, nor given any opportunity to be represented by counsel, the opportunity to present evidence, testify on my behalf, and to confront my accusers.

With respect to the United States District Court for the Eastern District, I state:

1) I file my Complaint in May of 2018 with your Court.

2) I come before J. Brodie on August 2, 2108, by way of a preliminary conference on the matter.

3) I ask J Brodie at that the time on the viability on either ruling on my request for relief in my Complaint which seeks prospective injunctive relief, which would allow me to practice again at the NY TVB or filing a motion to such an effect.

4) J. Brodie responds - I will have to make a ruling as to whether you had the right to a hearing.

5) I interpreted such response that my matter would move in an expeditious manner.

6) It has not.

7) The State's Defendants' file a motion to dismiss my Complaint and it has not yet been ruled upon by the Court.

8) In January of 2019, J. Magistrate Bloom in her Report and Recommendation to J. Brodie in response to the State's motion to dismiss my Complaint rules in my favor on several key issues.

My prayer for relief:

I come to you therefore based on aforementioned and seek relief.

May I receive a ruling on the State's Defendant's Motion to Dismiss as well as a ruling on my request for relief by way of my Complaint which seeks prospective injunctive relief, shortly.

6

I request that this letter be marked and entered into the Court docket.

Dated: August 29, 2019
       New Rochelle, New York

Respectfully truthfully
stated and requested,

Mario H. Capogrosso

7

2

With respect hereto, I reaffirm my prayer for relief to this Court.

May I receive a ruling on the State's Defendant's Motion to Dismiss as well as a ruling on my request for relief by way of my Complaint which seeks prospective injunctive relief, shortly.

Dated:  September 6, 2019
        New Rochelle, New York

Respectfully truthfully
stated and requested,

*/s/ Mario H. Capogrosso*
Mario H. Capogrosso

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

──────────────────────────────── X

MARIO H. CAPOGROSSO

                           Plaintiff

-against-                                         18 CV 2710

ALAN GELBSTEIN, et. al                  **AFFIRMATION OF SERVICE**

                         Defendants.

──────────────────────────────── X

I, Mario H. Capogrosso, declare under penalty of perjury that I have served a copy of the attached Letter to Judge Brodie and J. Magistrate Bloom seeking relief:

upon:

Mark Siegmund
(representing Defendants
Gelbstein, Traschen, Vahdat, Palmieri, Flanagan, Calvo,
and Prickett-Morgan)
Assistant Attorney General
28 Liberty Street
New York, NY 10005

Sadiq Tahir
2994 Coney Island Avenue
Brooklyn, NY 11235

Pec Group of NY
935 S. Lake Blvd. #7
Mahopac, NY 10541

David Smart
2875 West 8th Street
Brooklyn, NY 11224

1

via U.S. Postal Service First Class Mail, this 6th day of September 2019.

New Rochelle, NY
September 6, 2019

_____
Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804
(914) 806-3692

2