

**ORIGINAL**

UNITED STATES DISTRICT COURT      EASTERN DISTRICT OF NEW YORK

FILED
2019 OCT 24  PM 9: 03

MARIO H. CAPOGROSSO,

           Plaintiff

   -against-

18 - CV - 2710

           AMENDED
           VERIFIED COMPLAINT
           JURY TRIAL DEMANDED

ALAN GELBSTEIN, in his official and individual capacity;
BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) in her official and individual capacity;
IDA TRASCHEN, in her official and individual capacity;
ELIZABETH PRICKETT-MORGAN, in her official and individual capacity;
JEAN FLANAGAN, in her official and individual capacity;
VINCENT PALMIERI, in his official and individual capacity;
DANIELLE CALVO, in her official and individual capacity;
SADIQ TAHIR, in his individual capacity;
PEC GROUP OF NY, INC.;
DAVID SMART, in his individual capacity;
JOHN AND JANE DOE.

           Defendants

RECEIVED
OCT 24 2019
PRO SE OFFICE

The Plaintiff, Mario H. Capogrosso, alleges the following on the basis of his personal knowledge as to himself and on information and belief as to all other matters:

## **NATURE OF THE ACTION**

1.  In this action, the Plaintiff seeks money damages for violations of his Civil Rights under the Constitution of the United States and asserts his right to sue for said violations pursuant to 42 U.S.C.§1983, 42 U.S.C. §1985, 42 U.S.C. §1986 and 42 U.S.C. §1988, as well as pendent

–1–

causes of action under the Common Law of the State of New York.

2.   Plaintiff, at all times hereinafter mentioned, was and still is a member in good standing as a duly licensed attorney at law in the State of New York, as well as in the State of Connecticut.

3.   Between on or about April 2005 and May 11, 2015, Plaintiff practiced law almost exclusively in what is known as the Traffic Violations Bureau in the metropolitan New York City area, including the Brooklyn South office of that Bureau.

4.   The Traffic Violations Bureau is an agency of the State of New York, and the said offices of said Bureau are presided over by Administrative Law Judges.

5.   In December 2011, Plaintiff was temporarily suspended from practicing his profession in the Traffic Violations Bureau Courts as a result of complaints of misconduct, which were never determined to be true as no hearings were ever held in response thereto and Plaintiff was never given the opportunity to confront his accusers. Plaintiff was restored, as a result of a Stipulation of Settlement, several months later and all of his rights and privileges were also restored.   At the time that Plaintiff was temporarily suspended, he was advised that one of his accusers was Security Guard, David Smart, who is a Defendant in this action.

6.   That during the time that the Plaintiff practiced law in these various Traffic Violations Bureau locations during the period above set forth, Plaintiff accumulated a clientele of approximately 850 people.   More specifically, Plaintiff represented these clients in response to traffic tickets issued by law enforcement personnel to these clients in the New York Metropolitan area.

7.   At all times hereinafter mentioned Defendant David Smart was a security guard under the direct supervision and control of the Traffic Violations Bureau, while at the same time the said

–2–

David Smart was an employee of Defendant, PEC Group of NY, Inc., a private security company

engaging in contract work for the various offices of the Traffic Violations Bureau in the New York

metropolitan area.

8.    That for a long period of time, prior to May 11, 2015, Plaintiff had been subjected to

constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance

by Defendant, David Smart, which interfered with Plaintiff's representation of his many clients.

9.    That in response to said harassment, and threats, Plaintiff reported the same to

Defendant Alan Gelbstein, who was the Administrative Law Judge for the Traffic Violations

Bureau in the Brooklyn South office. When Defendant Gelbstein refused to take any action on

behalf of the Plaintiff to ensure that the disruptive and unlawful behavior of Defendant Smart

would cease, that on March 20, 2015, Plaintiff wrote a formal letter of complaint to Defendant

Elizabeth Prickett-Morgan, who was at the time an Assistant Attorney General in the New York

City office.   Plaintiff also, in said letter, complained about Defendant Gelbstein alleging that

Defendant Gelbstein was either complicit, incapable or incompetent to handle the ongoing issues

that Plaintiff had been experiencing in the work place with Defendant Security Guard David Smart.

Said Defendant Elizabeth Prickett-Morgan failed to respond to Plaintiff's written complaint; and

upon information and belief, failed to take any action to abate the harassing and unlawful conduct

of Defendant Smart toward the person of the Plaintiff.

10.    On Friday, May 8, 2015, Defendant Alan Gelbstein approached the Plaintiff, together

with Defendant Danielle Calvo (Clerk supervisor of the Brooklyn South Traffic Violations office)

and said, "Can't you go practice somewhere else...I saw what you wrote about me that I am

complicit and incapable."    This occurred while Plaintiff was sitting in the Attorney's Room at

–3–

the Brooklyn South office of Traffic Violations Bureau.

11. On May 11, 2015, Defendant David Smart once again approached the Plaintiff in an aggressive and threatening manner in an attempt to provoke the Plaintiff into a physical confrontation. Although Plaintiff refused to so engage Defendant Smart, within a few minutes thereafter, Defendant Calvo approached the Plaintiff with several New York City police officers and told the Plaintiff that he was no longer allowed at the Traffic Violations Bureaus and that Plaintiff was to leave the building immediately.   Plaintiff was also advised by Defendant Calvo that he should phone first Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, Defendant Ida Traschen for further instructions. Plaintiff phoned Defendant Traschen the same day after he had left the TVB Brooklyn South facility and was advised by Defendant Traschen that Plaintiff was permanently barred from representing any clients in the future at any of the TVB locations throughout the State.

12. Following the May 11, 2015 phone call to Defendant Traschen, Plaintiff made follow up calls to said Defendant on May 12, 2015, May 26, 2015, August 4, 2015, August 7, 2015, August 10, 2015, August 12, 2015, and August 25, 2015 seeking clarification. However, Defendant Traschen would not take Plaintiff's calls.

13. In an attempt to obtain a clarification for Plaintiff being barred from representing any clients at any of the TVB locations, Plaintiff wrote letters to the following agencies:

DMV Freedom of Information Law Office, 6 Empire State Plaza, Albany, New York 12228 on January 15, 2016;

State of New York Office of the Inspector General, Empire State Plaza, Agency Building 2, 16th Floor, Albany, New York 12223 in July 2015, April 28, 2016 and May 17, 2016;

–4–

State of New York Grievance Committee for the Second, Eleventh, Thirteenth Judicial Districts, Renaissance Plaza, 335 Adams Street, Suite 2400, Brooklyn, New York 11201-3745 on May 2, 2016;

State of New York Supreme Court, Appellate Division, Third Judicial Department, Committee on Professional Standards, 286 Washington Avenue Extension, Suite 200, Albany, New York 12203-6320 on May 5, 2016;

New York State Commission on Judicial Conduct, 61 Broadway, Suite 1200, New York, New York 10006 on March 12, 2016 and May 16, 2016;

New York State Department of Motor Vehicles, 6 Empire State Plaza, Room 512, Albany, New York 12226, in c/o supervising authority, on May 16, 2016;

Office of Traffic Violations, 801 Axinn Avenue, Garden City, New York 11530 in c/o supervising administrative judge, on May 16, 2016;

Brooklyn South TVB located at 2875 West 8th Street, Brooklyn, New York 11224, in c/o of the supervising administrative law judge, on June 20, 2016;

Office of Traffic Violations, 801 Axinn Avenue, Garden City, New York 11530, in c/o the supervising administrative law judge, on June 20, 2016; and

Ida Traschen, first Assistant Counsel Legal Bureau, State of New York Department of Motor Vehicles located at 6 Empire State Plaza, Albany, New York 12228, on June 2016.

14.    The only response Plaintiff received to any of his inquiries was that they could not or would not provide him with any clarification.

15.    At the time that Plaintiff was expelled from practicing law and representing clients at any of the locations of the Traffic Violations Bureau, Plaintiff was never provided with the reasons

–5–

or rationale for such action and Plaintiff has not been allowed to return to practice at any of the Traffic Violations Bureau sites since May 11, 2015.   Further, Plaintiff was not provided with any documentation as to the identity of his accusers, the particulars or the nature of any complaints against him, nor was the Plaintiff given the opportunity to participate in a due process hearing.

16.   Plaintiff was legally entitled to a due process hearing because he had a property and/or liberty interest in practicing his profession in the Traffic Violations Bureau Court. The Traffic Violations Bureau Court is an agency of the New York State Motor Vehicle Department, a State government agency.

17.   Plaintiff has no adequate remedy under State law.

## **PARTIES**

18.   Plaintiff, MARIO H. CAPOGROSSO, is a citizen of the United States and a resident of the State of New York, and is an attorney duly licensed to practice in the States of New York and Connecticut.   The Plaintiff is not and never has been an employee of the State of New York or any agency of the State of New York.

19.   Defendant, ALAN GELBSTEIN, is a citizen of the United States and a resident of the State of New York, who upon information and belief resides at 1510 East 7th Street, Brooklyn New York, 11230, and at all times hereinafter mentioned was an Administrative Law Judge in the Traffic Violations Bureau, Brooklyn South office, located at 2875 West 8th Street, Brooklyn, New York, 11224. This Defendant is being sued individually and in his official capacity.

20.   Defendant BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) is a citizen of the United States and a resident of the State of New York, and at all times hereinafter

mentioned was a Supervisory Administrative Law Judge at the Office of Traffic Violations, 801 Axinn Avenue, Garden City, New York, 11530.   This Defendant is being sued individually and in her official capacity.

21.   Defendant, IDA TRASCHEN, is a citizen of the United States and a resident of the State of New York, and at all times hereinafter mentioned was a first Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, with offices at 6 Empire State Plaza, Albany, New York 12228. This Defendant is being sued individually and in her official capacity.

22.   Defendant ELIZABETH PRICKETT-MORGAN, is a citizen of the United States and a resident of the State of New York, and at all times hereinafter mentioned was an Assistant General of the State of New York, with offices at 120 Broadway, New York City, New York. This Defendant is being sued individually and in her official capacity.

23.   Defendant, JEAN FLANAGAN, is a citizen of the United States and a resident of the State of New York, and upon information belief works in a supervisory capacity for either the Traffic Violations Bureau or the Department of Motor Vehicles of the State of New York, with offices, upon information and belief, at 6 Empire State Plaza, Albany, New York. 12228. This Defendant is being sued individually and in her official capacity.

24.   Defendant VINCENT PALMIERI is a citizen of the United States and a resident of the State of New York, and upon information belief works in a supervisory capacity for either the Traffic Violations Bureau or the Department of Motor Vehicles of the State of New York with offices, upon information and belief, at 6 Empire State Plaza, Albany, New York. 12228. This Defendant is being sued individually and in his official capacity.

–7–

25.    Defendant, DANIELLE CALVO, is a citizen of the United States and a resident of the State of New York, and at all times hereinafter mentioned was the Clerk supervisor of the Brooklyn South Traffic Violations Bureau office, located at 2875 West 8th Street, Brooklyn, New York 11224.    This Defendant is being sued individually and in her official capacity.

26.    Defendant, SADIQ TAHIR, is a citizen and/or legal resident of the United States and a resident of the State of New York, who upon information and belief resides at 3092 Brighton 4th Street, Brooklyn New York 11235, and at all times hereinafter mentioned was a New York licensed attorney at law practicing in TVB Court in the metropolitan New York area.

27.    Defendant PEC GROUP OF NY, INC., is a private security company engaging in contract work for the various offices of the Traffic Violations Bureau in the New York metropolitan area, with offices upon information and belief at 352 Seventh Avenue, Suite 701, New York, New York 10001 and 935 S. Lake Blvd., #7, Mahopac New York 10541.

28.    Defendant DAVID SMART is a citizen of the United States and a resident of the State of New York, who upon information and belief resides at 2355 Batchelder Street, Brooklyn New York 11229, and at all times hereinafter mentioned was employed by the Defendant, PEC Group of NY, Inc., as a security guard, and was assigned as a security guard at the Brooklyn South Traffic Violations Bureau, Brooklyn office, located at 2875 West 8th Street, Brooklyn New York, 11229. While at said location, said Defendant was under the direct supervision and control of Defendants Gelbstein and Calvo.

## GENERAL ALLEGATIONS

29.    Defendants Gelbstein, Calvo, Vahdatlamas (Vahdat), Traschen, Prickett-Morgan, Flanagan and Palmieri, are being sued in his or her individual as well as their official capacities.

–8–

30.    The actions of the Defendants named in the previous paragraph were conducted under Color of State Law and in willful disregard of the rights of the Plaintiff to be free from retaliation for the exercise of his First Amendment rights, his right to freedom of speech, as well as the right to procedural and substantive due process under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

31.    The Defendants that are sued in their individual and official capacities either personally engaged in conduct that violated Plaintiff's Constitutional rights, or were policy makers employed by the agencies of the State of New York, including the Attorney General's Office, Department of Motor Vehicles, or Traffic Violations Bureau and either authorized, ratified, or condoned the conduct of their said fellow Defendant(s) in willful violation of Plaintiff's United States Constitutional rights.

32.    The Defendants' acts were done with malice and oppression warranting the assessment of exemplary or punitive damages against said Defendants.

## JURISDICTION AND VENUE

33.    This action is being brought pursuant to 42 U. S. C. §1983, §1985, §1986, and §1988, Fifth and Fourteenth Amendments of the United States Constitution.

34.    Jurisdiction is founded in 28 U. S. C. §1331 and §1343 (1), (2), (3) and (4).

35.    Venue properly lies with this Court pursuant to 28 U. S. C. §1391(b) because the events giving rise to Plaintiff's claims occurred in the Eastern District of New York.

**Alan Gelbstein**

36.    Upon information and belief, Defendant Gelbstein's unconstitutional and tortious

–9–

conduct, and consequently, his liability includes, but is not limited to, his conduct described in the following paragraphs:

37.   Defendant Gelbstein was at all relevant times, as set forth in Plaintiff's Complaint, an Administrative Law Judge in the Brooklyn South Traffic Violations Bureau office, (hereinafter referred to as TVB) located at 2875 West 8th Street, Brooklyn, New York. Defendant Gelbstein adjudicated traffic tickets at the TVB and at all relevant times was a policy maker for administrative and employment matters.

38.   Upon information and belief, Defendant Gelbstein actively participated in the decision to permanently bar (without the benefit of a "due process" hearing) the Plaintiff from practicing his profession in the TVB Courts in the State of New York. The said Defendant was made fully aware of the constant and unrelenting threats and harassment on the part of Defendant David Smart and against the person of the Plaintiff, as a result of direct complaints made to him by the Plaintiff over a period of many months prior to May 11, 2015.

39.   Also, Defendant Gelbstein was aware of a written complaint made of and concerning him by the Plaintiff in the way he administered his Court, pursuant to a letter dated March 20, 2015, to Defendant Morgan, who was then acting as an Assistant Attorney General for the State of New York and the Department of Motor Vehicles.

40.   Upon information and belief, Defendant Gelbstein not only ignored Plaintiff's complaint about the conduct of Defendant Smart, but in fact encouraged Defendant Smart to continue to confront the Plaintiff in an attempt to "bait the Plaintiff" into a physical response to justify barring the Plaintiff permanently from practicing his profession in the TVB Courts.

41.   Upon information and belief, Defendant Gelbstein conspired with Defendant Calvo

–10–

and in fact ordered and directed Defendant Calvo to summon New York City police officers to the TVB Court at Brooklyn South on May 11, 2015 and directed and authorized Defendant Calvo to order the Plaintiff to leave the premises of the TVB Court and to use the presence of New York City police offices to facilitate that removal.

42.   Plaintiff alleges that said Defendant was motivated to take such direct action against the Plaintiff in retaliation for Plaintiff exercising his First Amendment Rights in criticizing the way said Defendant administered his official office.

43.   At all relevant times Defendant Gelbstein was acting in his administrative capacity and not in a judicial capacity and therefore said Defendant is not entitled to absolute immunity.

**Boshra Vahdatlamas, (Also Known as Bushra Vahdat)**

44.   Upon information and belief, Defendant Vahdatlamas' unconstitutional and tortious conduct, and consequently, her liability includes, but is not limited to, her conduct described in the following paragraphs:

45.   Defendant Vahdatlamas at all relevant times was acting as a Supervisory Administrative Law Judge.

46.   At all relevant times, Defendant Vahdatlamas was in consultation with one or more of the remaining individual Defendants concerning issues raised by the Plaintiff of misconduct on the part of Defendants Smart and Gelbstein and treated the violation of Plaintiff's constitutional rights by fellow Defendants with complete indifference and/or ratified and condoned said unconstitutional acts as a supervisory person.

47.   Defendant Vahdatlamas at all relevant times was acting in her administrative capacity and not in a judicial capacity and therefore said Defendant is not entitled to absolute immunity.

–11–

48. On or about November 2014, the Plaintiff spoke with Defendant Vahdatlamas, in the presence of Defendant Vahdatlamas' secretary, at her office located at 801 Axinn Avenue, Garden City New York. about the harassment by Defendant Smart on Plaintiff.

49. Defendant Vahdatlamas nevertheless took no action to remedy such harassment.

50. Defendant Vahdatlamas was in a position of authority, was made aware of Defendant Smart's harassment of Plaintiff and of Defendant Gelbstein's failure to act in response to such harassment and deliberately chose to ignore Plaintiff's demand for relief.

51. As a result of her refusal to right or remedy the situation, the Plaintiff continued to suffer harassment by Defendant Smart which caused and contributed to a violation of Plaintiff's constitutional rights.

52. Following his ban from the TVB, Plaintiff attempted to call and speak to Defendant Vahdatlamas office and was unable to communicate with her. The Plaintiff also wrote to Defendant Vahdatlamas on May 16, 2016 and June 20, 2016. By such letters, the Plaintiff informed Defendant Vahdatlamas of facts establishing that his constitutional rights were being and had been violated.

53. Though she received such letters of May 16, 2016 and June 20, 2016 and though she became or already was aware of the unconstitutional actions taken against the Plaintiff, Defendant Vahdatlamas refused and failed to respond to the Plaintiff's complaints about Defendants Gelbstein, Cavallo, Traschen, and Smart

54. Instead, the unconstitutional banishment of the Plaintiff from the TVB remained in effect.

–12–

**Ida Traschen**

55. Upon information and belief, Defendant Traschen's unconstitutional and tortious conduct, and consequently, his/her liability includes, but is not limited to, his/her conduct described in the following paragraphs:

56. At all relevant times Defendant Traschen was acting as First Assistant Legal Counsel to the TVB and actively participated in the violation of Plaintiff's constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by directly informing the Plaintiff that he was no longer allowed to practice law in the TVB Courts. Said Defendant also willfully ignored Plaintiff's many phone calls and letters seeking an explanation for his removal and demanding a right to be given a chance to confront any accusers, including a due process hearing.

**Elizabeth Prickett-Morgan**

57. Upon information and belief, Defendant Prickett-Morgan's unconstitutional and tortious conduct, and consequently, her liability includes, but is not limited to, her conduct described in the following paragraphs:

58. At all relevant times Defendant Prickett-Morgan was acting as an Assistant Attorney General for the State of New York.

59. Upon information and belief, after receiving Plaintiff's letter dated March 20, 2015, in which Plaintiff complained of the conduct of Defendants Gelbstein and Smart, this Defendant conspired with the Defendants Gelbstein, Smart and one or more of the individual Defendants to cause or contribute to the violation of Plaintiff's First, Fourth, Fifth and Fourteenth rights under the United States Constitution. Alternatively, said Defendant treated the violation of Plaintiff's

said constitutional rights with deliberate indifference and/or condoned and ratified the violation of Plaintiff's said constitutional rights.

60, When Plaintiff called Defendant Prickett-Morgan's office, after mailing such letter but prior to Plaintiff's ban from the TVB on May11, 2015, and inquired about the receipt of Plaintiff's letter of March 20, 2015, he was initially told that the letter had been lost. On a subsequent phone call to Defendant Prickett-Morgan's office, also after mailing such letter but prior to Plaintiff's ban from the TVB on May11, 2015 and upon the insistence of Plaintiff that the letter be found, he was told that the letter had been found.

61. Though Defendant Prickett-Morgan received Plaintiff's letter of complaint of March 20, 2015 prior to his ban from the TVB on May 11 2015, she refused to act in response to it.

62.    Defendant Prickett-Morgan was in position of authority, was made aware of Defendant Smart's harassment of Plaintiff and of Defendant Gelbstein's failure to act in response to such harassment and deliberately chose to ignore Plaintiff's demand for relief.

63.    Plaintiff received no phone call nor letter by Defendant Prickett-Morgan in response to Plaintiff's letter of complaint of March 20, 2015.

64.    As a result of her refusal to right or remedy the situation, the Plaintiff continued to suffer harassment by Defendant Smart; which caused and contributed to a violation of Plaintiff's constitutional rights.

**Jean Flanagan and Vincent Palmieri**

65.    Upon information and belief, Defendants Flanagan and Palmieri's unconstitutional and tortious conduct, and consequently, their liability includes, but is not limited to, their conduct described in the following paragraphs:

–14–

66. Upon information and belief, at all relevant times, Defendants Flanagan and Palmieri were acting in a supervisory capacity of Defendant, Danielle Calvo.

67. Said Defendants were directly informed by Defendant Calvo that the Plaintiff was permanently barred from practicing law in the TVB Courts as of May 11, 2015 due to an alleged "work place violence incident." Said Defendants failed to direct that any further inquiries should be made to justify the conduct of Defendant Calvo. As a consequence, said Defendants reacted to the violation of Plaintiff's constitutional rights with deliberate indifference and/or condoned and ratified the unconstitutional conduct of one or more of the remaining individual defendants.

**Danielle Calvo**

68. Upon information and belief, Defendant Calvo's unconstitutional and tortious conduct, and consequently, her liability includes, but is not limited to, her conduct described in the following paragraphs:

69. At all relevant times, Defendant Calvo was acting as the Clerk Supervisor of the Brooklyn South Traffic Violations Bureau office.

70. On May 11, 2015, Defendant Calvo personally confronted the Plaintiff at the Brooklyn South TVB and advised the Plaintiff that he was no longer permitted to practice his profession in the TVB Courts and that he was to leave the premises immediately. Defendant Calvo made these demands in the presence of a client of the Plaintiff and in the presence of multiple New York City police officers. Plaintiff believes Defendant Calvo summoned the police officers to the site to remove Plaintiff. Said Defendant gave no explanation to the Plaintiff as to why she made these demands directly to the Plaintiff.

71. Said actions were motivated in retaliation for Plaintiff's exercise of his First

–15–

Amendment Rights, and in particular his letter to Defendant Prickett-Morgan, dated March 20, 2015.

**David Smart**

72.   Upon information and belief, Defendant Smart's unconstitutional and tortious conduct, and consequently, his liability includes, but is not limited to, his conduct described in the following paragraphs:

73.   At all relevant times Defendant Smart was acting not only as an employee of an independent contractor but acting under the direct supervision and control of the TVB and more particularly, Defendants Gelbstein and Calvo.   Therefore, Defendant Smart was acting as a direct agent of an agency of the State of New York and therefore he was acting under color of State law.

74.   For a long period of time up to and including May 11, 2015, said Defendant continually harassed, annoyed and alarmed the Plaintiff and actively interfered with the Plaintiff including, but not limited to, Plaintiff's interaction with clients and potential clients.   Said Defendant created a hostile work environment and conspired with Defendants Gelbstein and Calvo in making false allegations against the Plaintiff and attempting to provoke the Plaintiff in physical confrontations at the TVB for the   purpose of getting the Plaintiff permanently barred from TVB in retaliation for Plaintiff's exercise of his First Amendment rights, wherein Plaintiff published a written complaint of and concerning said Defendant's conduct at the TVB regarding his aggressive behavior toward the Plaintiff.

75.   More particularly, Defendant Smart's aberrant and hostile behavior toward the Plaintiff started on or about June 2012 when said Defendant, while at the TVB Court, pushed Plaintiff from behind for no apparent reason in an attempt to reach and take Plaintiff's cell phone.

–16–

Plaintiff complained to Defendant Gelbstein about this conduct, but Defendant Gelbstein did nothing in response to said complaint.    Between December 2011 and June 2012, Defendant Smart stole a fee from one of Plaintiff's clients, who came looking for the Plaintiff when Plaintiff was not at the TVB Brooklyn South.

76.    On three or four separate occasions between December 2012 and December 2014, Defendant Smart approached the Plaintiff in a hostile and aggressive manner, stood within inches of Plaintiff's personal space, stared and glared at Plaintiff, dipped his head to the side, hide his right hand and position his foot forward in a fighting stance.    On each of these occasions, Plaintiff asked Defendant Smart as to what was his problem, and Defendant Smart would respond "F... You, you are the problem".

77. On or about October 23, 2014, after Plaintiff had moved an umbrella, which was inadvertently left behind on top of a trash can by a motorist, so that Plaintiff could lay down a file, Defendant Smart approached Plaintiff by verbal assault stated to Plaintiff by staring, "do not touch that umbrella or else."

78.    In November 2014, Plaintiff verbally complained about Defendant Smart's conduct to Defendant Vahdatlamas at her office in Garden City, New York.

79.    On or about December 3, 2014, at approximately 9:20 a.m., as Plaintiff approached the front of the Clerk's motorist entry line, Defendant Smart got up and made the sign of the cross twice and directed a "rigid spear hand" directly at the Plaintiff.    Plaintiff verbally complained to Defendant Gelbstein about that incident.

80.    Between January 2015 and early May 2015, Plaintiff observed Defendant Smart enter the attorneys' room, and tamper with Plaintiff's files.

–17–

81.  On numerous occasions between January 2015 and March 2015, Plaintiff again complained to Defendant Gelbstein about the conduct of Defendant Smart and requested that". Defendant Gelbstein look at security tapes, which Plaintiff believed would show Defendant Smart tampering with Plaintiff's files.    Defendant Gelbstein's response to Plaintiff was simply "a spade is a spade

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, ALAN GELBSTEIN, BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN JEAN FLANAGAN, VINCENT PALMIERI, DANIELLE CALVO, and DAVID SMART, IN THEIR INDIVIDUAL CAPACITIES

82.  Plaintiff realleges, reaffirms and incorporates herein each and every allegation of fact or allegation made on information and belief hereinbefore set forth in this Complaint.

83.  At the time that Plaintiff wrote and published his letter to Defendant Prickett-Morgan on March 20, 2015, complaining of the conduct of Defendants Gelbstein and Smart in the exercise of their positions at the TVB Court in Brooklyn South, Plaintiff was exercising his rights under the First Amendment of the United States Constitution as a private citizen and not as an employee of the State of New York or its Traffic Violations Bureau.

84.  At the time that Plaintiff published his letter of complaint to Defendant Prickett-Morgan, the Plaintiff had an interest protected by the First Amendment.   More particularly, Plaintiff had a right to practice his profession in the TVB Court free from harassment, threat, and threat of violence by Defendant Smart.     Also,     Plaintiff had a right to be free from threats, threats of violence and harassment, as well as other retaliatory actions for the exercise of his First

–18–

Amendment rights by Defendants Gelbstein and Calvo.

85.  Upon information and belief, Defendants Vahdatlamas, Traschen, Prickett-Morgan,

Flanagan and Palmieri in their supervisory capacities caused the Plaintiff's

Constitutional rights to be violated by their deliberate indifference and/or condoned and ratified

the conduct of Defendants Gelbstein, Calvo and Smart.

86.  The Defendants' actions in arbitrarily barring Plaintiff from practicing his profession

in all of the TVB Court on May 11, 2015, without explanation, or an opportunity to be heard were

motivated or substantially caused by Plaintiff's exercise of his First Amendment rights.

Defendants' actions effectively chilled the exercise of Plaintiff's first Amendment rights.

87.  That as a result of the violation of Plaintiff's First Amendment rights by the above-

named Defendants, Plaintiff has been economically damaged in an amount to be determined by

the Court.


**AS AND FOR A SECOND, SEPARATE AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANTS, ALAN GELBSTEIN, BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN JEAN FLANAGAN, VINCENT PALMIERI. DANIELLE CALVO, and DAVID SMART IN THEIR INDIVIDUAL CAPACITIES**

88.  Plaintiff realleges, reaffirms and incorporates herein each and every allegation of fact

or allegation made on information and belief hereinbefore set forth in this Complaint.

89.  The above-named Defendants, sued in their individual capacities, are alleged to be

either personally involved in actions taken against the Plaintiff on May 11, 2015, or caused these

actions by their deliberate indifference and/or ratified or condoned said acts in their supervisory

capacities to deprive the Plaintiff of protections to which he was entitled under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

90.   Plaintiff asserts that he enjoyed a property and/or liberty interest in his right to practice law and earn a living in Traffic Violations Bureau Courts in the State of New York.

91.   Upon information and belief, said Courts were established and authorized under the supervision of the New York State Department of Motor Vehicles.

92.   That on May 11, 2015, while the Plaintiff was lawfully exercising his rights and responsibilities in representing clients before the TVB Court, Brooklyn South when Defendant Calvo confronted the Plaintiff with multiple New York City police officers while Plaintiff was counseling a client and demanded that the Plaintiff immediately vacate the premises without explanation.

93.   Upon information and belief, Defendant Calvo was directed to do so by Defendant Gelbstein, as well as one or more of the remaining above-named Defendants.    At   the   time that Plaintiff was ordered to leave by Defendant Calvo, Defendant Calvo did state to the Plaintiff that he should contact Defendant Traschen for further instructions.

94.   After leaving the Brooklyn South TVB Court, Plaintiff phoned Defendant Traschen who advised Plaintiff that he was permanently barred from practicing his profession in every TVB Court in the State of New York.

95.   The Plaintiff was not afforded with any semblance of due process in that the Defendants failed to adequately apprise the Plaintiff of the reasons for his arbitrary dismissal, failure to inform the Plaintiff that he was entitled to a hearing and confront any accusers.

96.    Upon information and belief, the supervising Defendants include Defendants
Gelbstein, Vahdatlamas, Traschen, Prickett-Morgan, Flanagan, Palmieri, and Calvo.

97.    As a result of the denial of due process by the above-named Defendants in their
individual capacities, Plaintiff has suffered monetary damages in an amount to be determined by
the Court.


**AS AND FOR A THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION
AGAINST DEFENDANTS, ALAN GELBSTEIN, BOSHRA VAHDATLAMAS, (also
known as BUSHRA VAHDAT) IDA TRASCHEN, ELIZABETH PRICKETT-
MORGAN JEAN FLANAGAN, VINCENT PALMIERI, and DANIELLE CALVO,
IN THEIR OFFICIAL CAPACITIES**

98.    Plaintiff realleges, reaffirms and incorporates herein each and every allegation of fact
or allegation made on information and belief hereinbefore set forth in this Complaint.

99.    As recently as March 16, 2018, Plaintiff went to the TVB Court, Brooklyn South
and was advised by Gelbstein that he would not be allowed to represent clients in the TVB Court
here (Brooklyn South) and not in any traffic court.

100.    Plaintiff seeks prospective injunctive relief enjoining said Defendants from
excluding the Plaintiff from practicing law in any TVB Court in the metropolitan New York area
or the State of New York in the future.

## NEW YORK COMMON LAW CLAIMS

### AS AND FOR A FOURTH, SEPARATE AND DISTINCT
### CAUSE OF ACTION AGAINST DEFENDANT SADIQ TAHIR

101.    Defendant SADIQ TAHIR practiced law in the TVB Court at Brooklyn South in 2015.

102.    That the said Defendant was a competitor of the Plaintiff in efforts to attract, retain and represent clients in the TVB Courts in the metropolitan New York area.

103.    That after Plaintiff was barred from the TVB Court, Plaintiff learned that Defendant Tahir filed some type of a work place violence report with one or more of his fellow Defendants alleging that the Plaintiff engaged in some type of work place violence.    Plaintiff had no knowledge of this report, nor was Plaintiff advised of such report at the time of his termination from the TVB Court.

104.    Plaintiff in fact did not have any type of a physical altercation with said Defendant Tahir in 2015 or at any other time; said report was presented or filed with a malicious intent for the sole purpose of interfering with the contractual relations that Plaintiff had with existing clients and for the further purpose of assisting and motivating the remaining Defendants from barring the Plaintiff from his TVB law practice so that said Defendant Tahir could take up representation of at least some of Plaintiff's existing clients as well as future potential clients.

105.    The conduct of said Defendant constituted tortious interference with advantageous contractual relations to financially benefit said Defendant.

106.    As a result of said Defendant's conduct in filing a false report against the Plaintiff,

Plaintiff has suffered damages in an amount to be determined by the Court.

### AS AND FOR A FIFTH, SEPARATE AND DISTINCT
### CAUSE OF ACTION AGAINST DEFENDANT PEC GROUP OF NY, INC.,

107.   The said Defendant, PEC GROUP OF NY, INC, was negligent in the hiring and training of the individual Defendant, David Smart.

108.   That the Defendant PEC Group of NY, Inc., knew or should have known of the propensities of the Defendant David Smart to commit the tortious acts against the Plaintiff as alleged in Plaintiff's Complaint.

109.   That in December 2014, as well as in March 2015, Plaintiff informed Defendant Smart's supervisors at Defendant PEC Group of NY, Inc., of the threatening and harassing acts toward the Plaintiff by Defendant Smart.

110.   In December 2014, Scott Benish, a representative of Defendant PEC Group of NY, Inc., came to the TVB and spoke to Plaintiff concerning the threatening behavior of Defendant Smart.   After Plaintiff reiterated to Mr. Benish, the various threatening behavior of Defendant Smart, Mr. Benish responded by stating, "they (TVB) love Smart and if we lay him off he will just get picked up by someone else".

111.   Defendant PEC Group of NY, Inc., failed to respond to Plaintiff's March 2015 complaint concerning the improper behavior of Defendant Smart.

112.   That the negligent hiring and training by said Defendant Smart contributed to the tortious conduct perpetrated by the individual Defendant against the Plaintiff

113. That as a result of the tortious conduct of the Defendant's employee, David Smart, said Defendant is liable to respond in money damages to the Plaintiff.

**WHEREFORE** Plaintiff requests the following relief:

a. Declaratory Judgment declaring that the Defendants have violated Plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by depriving Plaintiff of due process of law;

b. Prospective injunctive relief enjoining the Defendants from denying the Plaintiff the right to practice law in the Traffic Violations Bureau Courts in the State of New York;

c. Compensatory and punitive damages against all individual Defendants pursuant to Plaintiff's claims in his First and Second Causes of Action in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined according to the proof;

d. Punitive damages against the individual Defendants in an amount in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined sufficient to deter and prevent future unlawful conduct;

e. Compensatory and punitive damages against Defendant SADIQ TAHIR in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined on his Fourth Cause of Action according to the proof;

f Compensatory and punitive damages in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined against Defendant, PEC GROUP OF NY, INC, on his Fifth Cause of Action according to the proof;

g. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

–24–

h.   Such other and further relief as appears reasonable and just.

## JURY TRIAL IS DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 23, 2019

Truthfully submitted,

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, New York. 10804
Tel.: 914-806-3692

–25–

## VERIFICATION

State of New York          )
                                          ss:
County of   Westchester    )


**I, MARIO H. CAPOGROSSO,** duly sworn, deposes and says that I am the Plaintiff in the within action and have read the foregoing "Amended Complaint" and know the contents thereof, that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters I believe it to be true.


Mario H. Capogrosso

Sworn to before me this

23rd day of October 2019

Notary Public

WEIYU LI
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02LI6383603
Qualified in Queens County
Commission Expires November 19, 2022