

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 1 5 2020 ★

BROOKLYN OFFICE



*ORIGINAL*

2020 JAN 15 PM 8:07

January 15, 2020

Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

United States Magistrate Judge Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201



Re: Capogrosso v. Gelbstein et al, No. 18-cv-2710 (E.D.N.Y.)
   **Objection and Request to Reconsider the Ruling of January 10, 2020**

Judge Brodie

Judge Magistrate Bloom:

**I file and state my objection, and request the Court reconsider, the ruling of this Court by J. Magistrate Bloom on January 10, 2020 in which I was ordered not to attempt to enter the NY TVBs in an attempt to gather witness statements, witness names and witness telephone phone numbers as well as gather evidence by way of photographs.**

**I reserve any right to appeal this decision when appropriate.**

In consideration, I state:

I desired to enter the Brooklyn TVB to gather witness statements, witness names and telephone numbers and also take photographs on December 16, 2019.

I was prohibited by J. Claudio Collins, senior administrative law judge at the Brooklyn TVB.

I seek only the truth in my Complaint and in order to do so I felt it incumbent to speak to witnesses concerning my removal from the Brooklyn TVB on May 11, 2015. All witnesses which I desired to speak to **were not the employees of any of the Defendants as mentioned in my Complaint. They were independent witnesses. They were not the employees of Defendants Gelbstein, Traschen or Calvo.** I am sure that the State's Attorneys have questioned all such witnesses with whom I attempted to speak to and, as

1

such, by prohibiting me from the NY TVBs I am not put an equal footing with the State's attorney with respect to discovery.

I also state that many of the witnesses I chose to speak to might have recognized me and had knowledge of the incident of May 11, 2015. Find annexed as Exhibit A the affirmation of J. Collins supervisory judge at the Brooklyn TVB in which he writes: "Several of the clerks recognized Mr. Capogrosso immediately and came to get me to respond to the situation." (par. 3.)

As such the witnesses I desired to question all independent, might have had knowledge of my removal from the Brooklyn TVB on May 11, 2015.

**As such, I object to the ruling of this Court, seek reconsideration, and reserve any right to appeal.**

2. J. Magistrate Bloom, states in defense of this Order, that I may question witnesses in the parking lot of the Brooklyn TVB as they are leaving but I am not allowed to question them in the Brooklyn TVB.

I do not understand the logic of this argument, but obviously accept it. My position either I can or cannot question witnesses who were not in the employ of any of the Defendants in this action and therefore are independent witnesses.

3. J. Magistrate Bloom also states that Defendant Smart is no longer at the Brooklyn TVB. I question where such knowledge came from in that there is nothing in the record indicating as such.

4. J. Magistrate Bloom agreed that Defendants Gelbstein, Traschen and Calvo are no longer at the TVB. This is in the record. Though I do not believe that Defendants Gelbstein and Traschen are on vacation as was stated in Court.

5. I wish to get the truth. The NY DMV and TVB have a history of making issues go away. I refer to Exhibit B, annexed herein, an article describing the behavior of lawyers and clerks at a NY TVB, it states, "The IG report said the case was presented to prosecutors for criminal prosecution but was declined, without explanation." ( page 2, par. 14).

My desire to question witnesses was to get to the truth and not offend this Court in any manner. I abide by such order but object, seek reconsideration, and reserve any right to appeal.

My objection, respectfully truthfully stated,

Mario H. Capogrosso

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO H. CAPOGROSSO,

                      Plaintiff,

- against -

ALAN GELBSTEIN, in his official and individual capacity; BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) in her official and individual capacity; IDA TRASCHEN, in her official and individual capacity; ELIZABETH PRICKETT-MORGAN, in her official and individual capacity; JEAN FLANAGAN, in her official and individual capacity; VINCENT PALMIERI, in his official and individual capacity; DANIELLE CALVO, in her official and individual capacity; SADIQ TAHIR, in his individual capacity; PEC GROUP OF NY, INC.; DAVID SMART, in his individual capacity; JOHN AND JANE DOE,

                      Defendants.

No. CV 18-2710-MKB

**DECLARATION OF CLAUDIO COLLINS**

CLAUDIO COLLINS hereby declares, pursuant to 28 U.S.C. § 1746, that:

1. I am an attorney licensed to practice law in New York State. I currently serve as a Senior Administrative Law Judge at the New York State Department of Motor Vehicles' ("DMV") Traffic Violations Bureau ("TVB"). In that position I oversee the Brooklyn South TVB office, located at 2875 West 8th Street in Coney Island.

2. Although I did not work at the Brooklyn South TVB at the time that Plaintiff Mario Capogrosso ("Capogrosso") practiced there, I understand from conversations with DMV's legal department that he has been permanently banned from entering the office.

3. On the afternoon of Monday, December 16, 2019, Mr. Capogrosso entered the Brooklyn South TVB office. Several of the clerks recognized Mr. Capogrosso immediately and came to get me to respond to the situation.

4. I approached Mr. Capogrosso and introduced myself, then asked why he was there. He responded that he was there to depose the clerks, and that he had a federal court order permitting him to do that. I told him that it was not going to happen and that the clerks did not want to speak with him.

5. Mr. Capogrosso then asked if I was telling him to leave, and I responded that I was not, but that no one was going to speak with him and that he should contact DMV's legal department.

6. Mr. Capogrosso then said that he wanted to get in line to check his license with one of the clerks, in order to see if he had any outstanding tickets. I told him that I would check for him, went behind the counter, called him up as we would a regular customer, and checked his record. He had no tickets.

7. Mr. Capogrosso then got a cup of coffee and left the TVB voluntarily.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  December 31, 2019
        Brooklyn, New York

                                                    _____
                                                    CLAUDIO COLLINS

2

# EXHIBIT B



METRO

# DMV clerk accused of taking bribes for years in ticket-fixing scheme

By Carl Campanile

June 8, 2018 | 5:26pm | Updated



Shutterstock

A clerk at the Harlem office of the state's Department of Motor Vehicles took bribes for years to fix tickets, while another steered cases to

| 9/28/2018 | DMV clerk accused of taking bribes for years in ticket-fixing scheme |

In an astonishing admission, a supervisor at the East 125th Street facility said she was informed by a defense lawyer as far back as 2012 that a clerk was taking payoffs but did nothing because she wasn't given his name, officials said.

DMV clerk Sam Alexis at the Northern Manhattan Traffic Violations Bureau received up to $600 a week in bribes on top of his salary by accepting between $20 and $100 from ticketed motorists or their lawyers to quash summonses, according to state Inspector General Catherine Leahy Scott.

The investigation also found that clerk Alicia Eddie improperly retrieved confidential information from the DMV computer system to referred motorists to Alexis in exchange for $10 each time.

Alexis, Eddie and one former clerk were also accused of steering motorists to certain defense lawyers in exchange for cash or meals. Officials said they often texted or called attorneys throughout the workday to make the referrals.

Incredibly, the bureau co-supervisor, Sonia Wise, who has worked at the TVB for almost two decades and been a supervising clerk since 2007, testified under oath that she became aware of a potential ticket-fixing scheme in 2012 or 2013, when a lawyer informed her that an unnamed clerk was running a bribery scheme.

"Unconvincingly, Wise claimed to the Inspector General that because [the] Attorney had not named the clerk, she did not need to take further action, and did not report [the] Attorney's assertion to anyone, including her supervisors, others at DMV, or the Inspector General," the report said.

"Wise's inaction allowed Alexis's scheme to continue unabated until this investigation."

Phone records showed that Alexis and other clerks had hundreds of interactions with defense lawyers during work hours because they lacked "meaningful supervision," the IG said.

Supervisors admitted that clerks fraternizing with lawyers was a "big problem" but did nothing to stop it, the report said.

Alexis admitted to the ticket-fixing operation in sworn testimony, according to authorities.

"If the person seems like a down-to-earth person, I'll just tell them, 'Look, we can take care [of the ticket] now if you want. You'll get your receipt; it'll be done today.' And if they say yes, they want to do that — of course, I say it in a way that they know.... that this is under the books, you know what I mean — and I send them to the [hearing] room, they get it dismissed. When they come back out, they hand me the money and then that's how I do that," Alexis was quoted as telling investigators.

Alexis also explained the scheme of getting payola from lawyers for referring them motorists with tickets.

"Basically, all we do is, if a motorist has a lot of points or if he's facing possible suspension of his license . . . we well them, 'You know, you might want to think about hiring a lawyer. If you do want to go that route, I can let you know who to speak to. I can recommend you somebody,' " he said.

 The IG report said the case was presented to prosecutors for criminal prosecution but was declined, without explanation.

The findings were also forwarded to the state Joint Commission on Public Ethics and the state court system's Attorney Grievance Committee for any appropriate actions against private attorneys involved in corruption.

The IG's recommendations, including disciplinary actions, new anti-corruption policies and additional training for DMV employees, were all accepted by DMV and implemented.

— ADVERTISEMENT —
AdChoices

"My investigation found a Traffic Violations Bureau mired in corrupt practices, from public employees taking cash for fixing tickets to attorneys offering clerks improper payments and gifts to garner new clients, all while under woefully deficient direct oversight," said IG Leahy Scott.

"These were routine practices at a facility where well-established policies and rules were spurned, and I am pleased the DMV has taken these issues extremely seriously with a commitment toward substantial reforms."

The DMV said it was installing new cameras above workstations to deter corruption, limiting employee access to confidential records and providing new ethics training.

FILED UNDER   BRIBERY, CORRUPTION, DMV, NYPD

Recommended by

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

_____X

MARIO H. CAPOGROSSO

                              Plaintiff

-against-                                              18 CV 2710

ALAN GELBSTEIN, et. al                      **AFFIRMATION OF SERVICE**

                              Defendants.

_____X

      I, Mario H. Capogrosso, declare under penalty of perjury that I have served a copy of the attached Objection and Request to Reconsider the Ruling of January 10. 2020

upon:

James Thomson
(representing Defendants
Gelbstein, Traschen, Vahdat, Palmieri, Flanagan, Calvo,
and Prickett-Morgan)
Assistant Attorney General
28 Liberty Street
New York, NY 10005

Sadiq Tahir
2994 Coney Island Avenue
Brooklyn, NY 11235

Pec Group of NY
935 S. Lake Blvd. #7
Mahopac, NY 10541

David Smart
2875 West 8th Street
Brooklyn, NY 11224

1

via U.S. Postal Service First Class Mail, this 15th day of January 2020.


New Rochelle, NY
January 15, 2020

*Mario H. Capogrosso*
Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804
(914) 806-3692

2