1     UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
2

3     ------------------------------------X
                                          :
4     MARIO H. CAPOGROSSO,                :
                                          :   18-CV-02710 (MKB)
5                  Plaintiff,             :
                                          :   225 Cadman Plaza
6                  v.                     :   Brooklyn, New York
                                          :
7     GELBSTEIN, *et al.*,                :
                                          :
8                  Defendants.            :   January 10, 2020
      ------------------------------------X
9

10        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
             BEFORE THE HONORABLE LOIS BLOOM
11            UNITED STATES MAGISTRATE JUDGE

12    APPEARANCES:

13

      For the Plaintiff:        MARIO H. CAPOGROSSO, *Pro Se*
14                              21 Sheldrake Place
                                New Rochelle, New York 10804
15

16    For Alan Gelbstein; Ida   JAMES M. THOMPSON, ESQ.
      Traschen; Danielle Calvo: Office of the New York State
17                                  Attorney General
                                28 Liberty Street
18                              New York, New York 10005

19

20
      Court Transcriber:        RUTH ANN HAGER, C.E.T.**D-641
21                              TypeWrite Word Processing Service
                                211 North Milton Road
22                              Saratoga Springs, New York 12866

23

24

25


      Proceedings recorded by electronic sound recording, transcript
      produced by transcription service.

2

1   (Proceedings began at 10:50 a.m.)

2          THE CLERK:  Civil cause for status conference,

3   docket number 18-CV-02710, <u>Capogrosso v. Gelbstein, *et al.*</u>

4          Will the parties please state your names for the

5   record?

6          MR. CAPOGROSSO:  Marion Capogrosso, 21 Sheldrake

7   Place, New Rochelle, New York, representing myself.

8          MR. THOMPSON:  James M. Thompson from the Office of

9   the New York State Attorney General, representing defendants

10  Gelbstein, Traschen, Calvo and also non-party of the New York

11  State Department of Motor Vehicles.

12         THE CLERK:  The Honorable Lois Bloom presiding.

13         THE COURT:  Good morning, Mr. Capogrosso and

14  Mr. Thompson.  This is a status conference in plaintiff's

15  civil rights action.  We had a conference on November 14th at

16  which time I ordered the State defendants to answer the

17  complaint and I ordered the parties to exchange initial

18  disclosures by December 4th.  On December 2nd plaintiff filed

19  a letter seeking to physical enter DMV to gather information

20  for discovery.  And then there were back and forth between

21  Mr. Thompson and Mr. Capogrosso about the answer and about DMV

22  being substituted in.  And so I just thought that it would be

23  best to have today's conference so I could get the parties on

24  track.  Okay.

25         So Mr. Capogrosso, you are entitled to conduct

3

1   discovery but that does not mean that you go to DMV and try to

2   question people.  There is the Federal Rules of Civil

3   Procedure, sir.  The Federal Rules of Civil Procedure provide

4   for five methods.  I put it in my order to you.  Under Rule 33

5   you can send requests to Mr. Thompson for him or any of the

6   defendants to answer under oath interrogatories.  That's Rule

7   33.  Rule 34 you can make a request to Mr. Thompson for them

8   to produce documents.

9          Under Rule 30 you can conduct depositions.  But the

10  way that you went about thinking that you were going to walk

11  into DMV and start questioning people, that is not provided

12  for in the Federal Rules of Civil Procedures, sir.  And I

13  don't want this to become a situation where for no good reason

14  things go out of hand and I don't want there to be further

15  trouble because you're trying to get information in your case.

16  There's a right way to conduct discovery and there's an

17  improper way.  You can't just walk in and think you're going

18  to start taking depositions by walking in.

19         So let me just say I would like to address discovery

20  today.  I would also like to address what the defendants are

21  intending to do regarding naming of the DMV commissioner.  I'm

22  not sure that I understood, Mr. Thompson, so I'd like you to

23  explain it.  I do understand that under Federal Rule 26(d), D

24  as in David, an officer's successor is automatically

25  substituted as a party, but I want to make sure so that

4

1   Mr. Capogrosso knows that doesn't mean that you are

2   eliminating Gelbstein, Traschen and Calvo who are in the case

3   as individuals.

4           MR. THOMPSON:  Absolutely not.

5           THE COURT:  Okay.  So I wanted that to be clear on

6   the record that we're only adding the commissioner of DMV so

7   that you can get perspective injunctive relief against

8   somebody who is at DMV currently in his official capacity if

9   you were to prevail in this action.  Is that correct,

10  Mr. Thompson?

11          MR. THOMPSON:  Yes, Your Honor.  Defendants

12  Gelbstein, Traschen and Calvo have all moved on from the

13  positions they held, so if Your Honor or Judge Brodie were to

14  enjoin them, none of them has the power to readmit

15  Mr. Capogrosso to TVB, even if he were to prevail.  And --

16          THE COURT:  I just wanted this to be on the record,

17  Mr. Capogrosso.  So it wasn't something that the Court ordered

18  that you didn't really understand.  They're not trying to get

19  rid of your case against the individuals.  They're adding the

20  Department of Motor Vehicles Commissioner so that if there was

21  prospective injunctive relief ordered by the Court the order

22  could be effectuated.  Is that correct?

23          MR. THOMPSON:  That's correct, Your Honor.

24          MR. CAPOGROSSO:  I made it very clear in my reply

25  dated January 8th, Your Honor.  I made that very clear that I

5

1  wanted addition to, not substitution of -- I don't know if you

2  received my reply.

3         THE COURT:  I did receive it but can I also tell

4  you, sir --

5         MR. CAPOGROSSO:  Yes, Judge.

6         THE COURT:  You've been filing things that you

7  should not be filing.  You gave 70 pages of exhibits that were

8  attached, some of which were attached to the motion to

9  dismiss.  This is not how you litigate in federal court.  This

10 is not how you do things here.

11        So I don't need five different filings from both

12 sides on things that are fairly routine.  Again, I understand

13 that when they first filed this request for the substitution

14 you may not have been clear that this was an addition and not

15 to take the place of because substitution may sound like it's

16 to take the place of.

17        Now that we understand, let me just ask one more

18 question, Mr. Thompson.  If we include the commissioner of the

19 Department of Motor Vehicles that's in their -- in their

20 official capacity is that what you're asking to do or just the

21 Department?

22        MR. THOMPSON:  We think the commissioner is the

23 right person because it's not necessarily clear who the

24 individual successors of the defendants are and there's no

25 question that Commissioner Schroeder has the ability to order

6

1   DMV to do that.

2          THE COURT:  And Commissioner Schroeder's first name

3   is?

4          MR. THOMPSON:  Mark.

5          THE COURT:  M-A-R-K?

6          MR. THOMPSON:  M-A-R-K.

7          THE COURT:  And how do you spell the last name?

8          MR. THOMPSON:  It is S-C-H-R-O-E-D-E-R.

9          THE COURT:  Any objection to adding Commissioner

10  Mark Schroeder of DMV to the complaint?

11         MR. CAPOGROSSO:  As long as it's in addition to, not

12  substitution of --

13         THE COURT:  That's what we just went over.

14         MR. CAPOGROSSO:  No objection.  Yes.

15         THE COURT:  Okay.  My question is, we're going to

16  add him to the complaint but we don't need to serve him.

17  You're going to accept service for him?

18         MR. THOMPSON:  Yes, I can do that.

19         THE COURT:  Very good.  So I'm going to direct the

20  Clerk of Court to amend the case to include Commissioner Mark

21  Schroeder of the DMV.  Do we need to actually get you served

22  with any new process?

23         MR. THOMPSON:  I don't think so, Your Honor.

24         THE COURT:  Okay.  So it will be deemed amended to

25  include and the State has agreed to accept service.  And it's

7

1   only in his official capacity and there is no Fourteenth

2   Amendment argument that's going to be made because it's only

3   for prospective injunctive relief.  Is that correct?

4           MR. THOMPSON:  That's my understanding.

5           THE COURT:  So let the record reflect that the Court

6   is directing the clerk to add Commissioner Mark Schroeder of

7   DMV in his official capacity for prospective injunctive relief

8   solely.  Do you understand, Mr. Capogrosso?

9           MR. CAPOGROSSO:  And who's going to be making that

10  amendment, Your Honor?

11          THE COURT:  I'm directing the clerk to make that

12  amendment.

13          MR. CAPOGROSSO:  Fine, Judge.

14          THE COURT:  So you consent?

15          MR. CAPOGROSSO:  Yes.

16          THE COURT:  Very good.  And the defendants have said

17  that we don't need to get service made so that eliminates that

18  step.  Okay.  Moving right along.

19          The problem that I have, Mr. Capogrosso, is that I

20  put out an order to you the last time that laid out -- it's

21  the order I give to litigants who are not lawyers so that they

22  understand what the rules are.  It set the rules in it and yet

23  for some reason when you walked into the DMV you thought that

24  you could wave something and say that I had ordered that

25  people be deposed just because you walked in the door.

8

1          MR. CAPOGROSSO:  May I reply?

2          THE COURT:  It's not a reply, sir.

3          MR. CAPOGROSSO:  Well --

4          THE COURT:  It's -- I'm trying to understand.

5          MR. CAPOGROSSO:  Your initial disclosures ask that I

6   produce witnesses.  Witnesses are not defendants.  Witnesses

7   are people and persons at the location at the date on May 11th

8   who saw this incident.  For me to do that, Judge, I have to go

9   back to the location --

10          THE COURT:  No, you do not, sir.

11          MR. CAPOGROSSO:  Well, I -- that's where I had a

12   dis -- I was trying to --

13          THE COURT:  May 11th happened already, sir.

14   Going --

15          MR. CAPOGROSSO:  -- comply with the Court.

16          THE COURT:  -- back to the place that it happened

17   isn't going to help you identify.  Either you know who was

18   there or you don't.  And if you don't know who was there then

19   you don't list them as witnesses.  It's simple.  It's not

20   rocket science.

21          MR. CAPOGROSSO:  I know main add -- I don't know

22   addresses, I don't know phone numbers.

23          THE COURT:  That's fine.

24          MR. CAPOGROSSO:  Initial -- your Rule 26 initial

25   disclosure.

9

1          THE COURT:  It's not my Rule 26.  It's the Federal

2     Rules of Civil Procedure.

3          MR. CAPOGROSSO:  I -- you ordered me to comply with

4     Rule 26(a).

5          THE COURT:  It's to give known witnesses.  Known

6     witnesses.

7          MR. CAPOGROSSO:  I'm trying to comply with your

8     order, Judge.

9          THE COURT:  Mr. Capogrosso, I'm not here to defeat

10    your getting your claim heard.  I am here to make sure that

11    you abide by the Federal Rules of Civil Procedure.  And you're

12    an attorney, so you're held to know what these rules mean.

13         MR. CAPOGROSSO:  I understand the rules, Judge,

14    but --

15         THE COURT:  So when it says list all witnesses --

16         MR. CAPOGROSSO:  -- the rule --

17         THE COURT:  -- if you don't know their addresses why

18    is going to DMV going to help you?

19         MR. CAPOGROSSO:  I was going to try to get them for

20    you and for me to question them so I know which witnesses are

21    favorable and which witnesses are unfavorable.

22         THE COURT:  That's not --

23         MR. CAPOGROSSO:  If --

24         THE COURT:  -- what the rule requires.  And so going

25    to DMV to conduct your investigation of your case may cause a

1   disruption to the business of the DMV.

2                MR. CAPOGROSSO:  Well, I don't know why.

3                THE COURT:  Do you see how that might happen?

4                MR. CAPOGROSSO:  No, I don't.

5                THE COURT:  Look --

6                MR. CAPOGROSSO:  I will abide by this court order.

7   I will abide, but I've never heard of an attorney not allowed

8   to go to the scene of the incident and talk to witnesses who

9   might have observed it, take names.  I've never heard of it.

10               THE COURT:  Well, now you're hearing it.

11               MR. CAPOGROSSO:  Fine.  I'll abide by this court

12  order.

13               THE COURT:  What I'm trying to say to you is --

14               MR. CAPOGROSSO:  And take pictures of the incident.

15               THE COURT:  Mr. Capogrosso, what happened, happened

16  years ago.  You can't take pictures of what happened because

17  it happened years ago.

18               MR. CAPOGROSSO:  I can take pictures of the

19  location.  Now, defendants come out and approach me from 30 or

20  40 feet away in an aggressive manner.  I'd like to take a

21  picture of that area --

22               THE COURT:  You do not.

23               MR. CAPOGROSSO:  -- where it occurred.

24               THE COURT:  That has no bearing on this case

25  because, guess what?  That's not what this case is about.

11

1          MR. CAPOGROSSO:  I don't know what this case is

2 about, then.

3          THE COURT:  Well, you brought the case.

4          MR. CAPOGROSSO:  Well --

5          THE COURT:  If you don't know what it's about, I

6 will tell you to re-read Judge Brodie's opinion.

7          MR. CAPOGROSSO:  I will.

8          THE COURT:  And re-read my opinion because what this

9 is about is that they barred you, not about did Smart approach

10 you, did Smart not approach you.  It's not about that.  It's

11 whether or not them barring you gave you notice and an

12 opportunity to be heard.  It's not about Smart and your

13 altercation.

14          So going back to DMV to take pictures is likely

15 going to get this matter to advance to a different predicament

16 where they may be calling in other security.  Mr. Smart is no

17 longer there.  And taking pictures in a state facility if you

18 tried to take pictures in the courthouse there may be

19 ramifications that you're not considering.

20          MR. CAPOGROSSO:  Well, Your Honor, I'm trying to get

21 to the truth as to what happened.  I know Defendant Gelbstein

22 and Defendant Traschen are no longer working at this location.

23 They are not.  You're telling me Defendant Smart is no longer

24 there.  He's not.

25          THE COURT:  I didn't tell you that.

12

1          MR. CAPOGROSSO:  Well --

2          THE COURT:  I said this is not about whether Smart

3    and you had an altercation.  And Mr. Capogrosso, you're an

4    attorney.  You're held to a higher standard because you're an

5    attorney and you're telling me that you're still going on

6    about whether or not Smart punched you or you punched --

7          MR. CAPOGROSSO:  I didn't punch -- he didn't punch

8    me and he did not.  I never said he put his hands on me.  I

9    said he approached me in an aggressive and belligerent manner.

10         THE COURT:  It doesn't matter, sir.  To the point of

11   this case it does not matter.

12         MR. CAPOGROSSO:  I don't know why I can't get to the

13   truth as to who saw what on December 11th, Judge, and question

14   without having to take deposition and interrogatories and --

15         THE COURT:  That's the process, sir.  You are in

16   federal court and the process is set forth by the Federal

17   Rules of Civil Procedure.  If you want to put postings out

18   there on the internet, did anybody see anything on this date

19   at the DMV, go right ahead, but this is the process for when

20   one party sues another party in federal court and I am going

21   to hold you to the rules that I hold everybody else to.

22         MR. CAPOGROSSO:  Your Honor, respectfully, Attorney

23   Thompson and the State defendants had questioned numerous

24   witnesses.  Numerous.

25         THE COURT:  Did they do it at the DMV, sir?  Did

13

1   they walk into the DMV --

2           MR. CAPOGROSSO:  I think they probably --

3           THE COURT:  -- and start waving around papers --

4           MR. CAPOGROSSO:  No, [indiscernible] --

5           THE COURT:  -- saying, Judge Bloom said --

6           MR. CAPOGROSSO:  -- Alan Gelbstein's office and into

7   the DMV and questioned, of course, I think they did that.

8           THE COURT:  Again, sir --

9           MR. CAPOGROSSO:  I will abide by this Court's order.

10          THE COURT:  You are permitted to depose the

11  defendants.  You have to notice them through Mr. Thompson and

12  arrange for a court reporter.  That's what a deposition under

13  Rule 30 requires.  If you don't want to do that, you don't

14  have to do that.  I didn't say that you're required to do

15  that.  I said that it would be advisable to get their version

16  of the events, why did they take the actions that they took.

17  You don't want to do that.  That's your prerogative.

18          What is not your prerogative is walking into the DMV

19  office and waving around papers saying, "Judge Bloom ordered

20  me" --

21          MR. CAPOGROSSO:  I didn't say that, Judge.  I said,

22  "I have a federal court order to provide initial disclosures,

23  26(a), which was to provide a witness list."  Now, I don't

24  know how I'm going to get a witness list unless I can go to

25  the scene and talk to witnesses.

14

1      THE COURT:  I'm telling you, sir, that's not what

2  you're supposed to do under 26(a).

3      MR. CAPOGROSSO:  Well, how am I --

4      THE COURT:  What you're supposed to do is, if you

5  know the names of people you must provide them.

6      MR. CAPOGROSSO:  How am I going to question a

7  witness?  I can depose defendants.  How am I going to question

8  witnesses?

9      THE COURT:  Again, witnesses to your conversation

10  with Gelbstein, Traschen and Calvo is what matters here.

11      MR. CAPOGROSSO:  Fine.

12      THE COURT:  Not witnesses --

13      MR. CAPOGROSSO:  And I think there are people at the

14  DMV who know that on the morning of May 11th that these

15  defendants approached Defendant Smart and asked him to

16  approach me and began -- and incite this incident which led to

17  my --

18      THE COURT:  And you think --

19      MR. CAPOGROSSO:  -- removal.

20      THE COURT:  -- that but you have no knowledge of

21  that.  And if you want to list the people that you think know

22  that, go right ahead and list their names.  But you do not go

23  back into the DMV and start asking people were they there on

24  May 11th to witness these events.  That's not how you go about

25  this.  Have I made myself clear?

1          MR. CAPOGROSSO:  I will abide by your order, Judge.

2          THE COURT:  Very good.

3          MR. CAPOGROSSO:  But I have done investigations in

4    other cases and I've gone places --

5          THE COURT:  Mr. Capogrosso --

6          MR. CAPOGROSSO:  -- where things have happened, but

7    I will abide by your order.

8          THE COURT:  Mr. Capogrosso, Federal Rule of Civil

9    Procedure 45 governs subpoenas.  If you believe there are non-

10   parties that have information, you may serve a subpoena which

11   under Rule 45 requires for you to get -- it can't be served by

12   you.  It has to be served by somebody who's over 18 and not a

13   party to the action and they have to get a witness fee and it

14   has to be that you're serving them a request for a subpoena

15   for either documents.  If it's for their testimony it has to

16   be a deposition taken in front of somebody who's authorized to

17   take it.

18         MR. CAPOGROSSO:  How do I get their address, Judge,

19   so I know where to serve them?  Can I go ask them where they

20   live?

21         THE COURT:  Go on the internet.  You can find out a

22   lot of information on the internet.  You could wait outside

23   the DMV office if you believe they go in and out every day and

24   you could ask them are they willing to speak to you.  What you

25   cannot do is say "I have a federal court order that you have

1   to talk to me."

2           MR. CAPOGROSSO:  No, I didn't say that, Judge, that

3   "You have to talk to me."  I went down to try to get

4   information.  I'm sure Attorney Thompson and the state

5   defendants and their attorney have gone to the DMV and

6   questioned witnesses and people that can almost guarantee

7   that.

8           THE COURT:  Guess what?

9           MR. THOMPSON:  If I may --

10          THE COURT:  That's their client.  Go ahead.

11          MR. CAPOGROSSO:  The witnesses are not.

12          MR. THOMPSON:  I can represent to the Court and to

13  Mr. Capogrosso I have never been to the TVB in South Brooklyn.

14  I suspect that my predecessor on this case, aka Siegmund, has

15  not as well.

16          THE COURT:  And if you need to contact people --

17          MR. THOMPSON:  That's not what we have done.

18          THE COURT:  -- that work for the DMV you call them

19  and you ask them to come to your office.  And again, I am

20  telling you that the same rules apply to you, Mr. Capogrosso,

21  that apply to everybody else.  Please look at the rules.

22          MR. CAPOGROSSO:  I will abide by your order, Judge.

23          THE COURT:  Well, again, Mr. Capogrosso, I'm trying

24  to say I've already set the deadlines for discovery.  I don't

25  generally get the back and forth that I've gotten as in this

17

1  case.

2          MR. CAPOGROSSO:  Well, respectfully, Judge, if I

3  could --

4          THE COURT:  Yes.

5          MR. CAPOGROSSO:  -- you brought this issue up.  The

6  State's defendants turned this into a motion -- their motion

7  to dismiss.  It's a motion for summary judgment.  They --

8          THE COURT:  They did not, sir.  There's no motion.

9          MR. CAPOGROSSO:  They said --

10         THE COURT:  There is no motion pending before the

11 Court at this point in time.

12         MR. CAPOGROSSO:  They presented facts after fact

13 after fact --

14         THE COURT:  We're not looking at any motions now.

15         MR. CAPOGROSSO:  I understand but you've told me

16 that I'm filing paperwork which is not appropriate.

17         THE COURT:  Yes, that's -- that I am.

18         MR. CAPOGROSSO:  The State's defendants have

19 supplied reams of complaints against me here --

20         THE COURT:  That was in the motion.

21         MR. CAPOGROSSO:  -- that I had a right to reply to.

22         THE COURT:  Was it the motion?

23         MR. CAPOGROSSO:  It was in a motion.

24         THE COURT:  But the motion has already been granted

25 in part and denied in part, so it's no --

18

1       MR. CAPOGROSSO:  And they wrote a letter --

2       THE COURT:  It is no longer before the Court, but it

3 gives you a very good road map of what their case is going to

4 be about.  And so again, if I was in your shoes I would be

5 using that to strategically plan the discovery that I would

6 take.  You are entitled to depose the defendants.  You have

7 Rule 45 if you need non-parties, but you must follow the

8 rules, Mr. Capogrosso.

9       MR. CAPOGROSSO:  I will abide by your order, Judge,

10 and I think I have, but I will abide by your orders.  And I

11 will only be pri -- every letter that I receive I reply to the

12 December 6th letter and the December 11th letter that the

13 State defendants have filed with this court and I have a right

14 to reply to those letters.

15       THE COURT:  Mr. Capogrosso, I'm not trying to deny

16 you any of your rights, sir.

17       MR. CAPOGROSSO:  You're indicating I'm filing reams

18 of paper with the court.

19       THE COURT:  You did.  You just --

20       MR. CAPOGROSSO:  I'm only going to reply to what

21 the --

22       THE COURT:  Except that the motion has already been

23 denied, sir.

24       MR. CAPOGROSSO:  I'm only --

25       THE COURT:  You're filing things --

19

1          MR. CAPOGROSSO:  -- replying.

2          THE COURT:  -- that you think the Court should read

3  I am telling you is a waste of your resources.  There is no

4  motion pending before the Court, sir.

5          MR. CAPOGROSSO:  Well, Judge, respectfully, if the

6  State defendants are going to file letters I have a right to

7  reply.

8          THE COURT:  I didn't say you didn't have a right to

9  reply.

10          MR. CAPOGROSSO:  You indicated to me initially that

11 you would.

12          THE COURT:  But I said that you have no right to go

13 on DMV property to try to depose --

14          MR. CAPOGROSSO:  I will not do that, Judge.

15          THE COURT:  -- witnesses.  Very good.

16          MR. CAPOGROSSO:  I'm going to abide by that order.

17 Now, do I have the right to go to the DMV and check my

18 license -- my driver's license?  I've been driving in this

19 state for four --

20          THE COURT:  I didn't say anything about going to

21 DMV.

22          MR. CAPOGROSSO:  Well, I just wondered what --

23          THE COURT:  I just said you can't go in there and

24 say that the court has ordered you to do discovery --

25          MR. CAPOGROSSO:  That will not happen.

20

1        THE COURT:  -- and try to question people.

2        MR. CAPOGROSSO:  Well, that will not happen.

3        THE COURT:  So now you understand.

4        MR. CAPOGROSSO:  Yes.

5        THE COURT:  Okay.

6        MR. CAPOGROSSO:  Now, but I do need to clarify

7   because declaration of Claudio Commons [ph.], who's now the

8   supervising judge there, indicates that the legal department

9   has permanently banned -- indicating myself -- from entering

10  the office.  Now, I called Defendant Traschen when this

11  initially occurred.  I called her.  I said, "Am I allowed in

12  the DMV to check my license?  Am I allowed in the DMV" because

13  I had a numerous amount of clients who wanted money back on

14  these cases to return money to them.  "Do I have a right to go

15  to the court, the -- beginning the -- the entrance of this

16  building and have a cup of coffee where I always go?" and she

17  said yes.  Now --

18        THE COURT:  Let me just ask the defendant.  What

19  is --

20        MR. CAPOGROSSO:  Well, I'd like to know.

21        THE COURT:  I would like to know, too.

22        What is the position of the defendant?

23        MR. THOMPSON:  My understanding from conferring with

24  DMV counsel is that the petitioner is not welcome at any of

25  the TVD facilities.  As to checking his license, as you'll see

1  in ALJ Collins's declaration, he just did that two weeks ago.

2  There were no points on his license or fees.

3           THE COURT:  This is the part that I don't

4  understand, Mr. Thompson.  Does your client really think that

5  this is going to hold up, that they put out a letter and

6  they're banning him forever from a building that's a state-run

7  building?  Do they really think that's going to hold up?  I

8  understand they think he's a nuisance, he'll cause problems if

9  he goes in, I get all that.  But do they really think at the

10  end of the day that just sending a letter saying, "You're

11  banned from all facilities" is going to work here?

12           MR. THOMPSON:  Well, what I'd say that, Your Honor,

13  is that if the petitioner had wanted to challenge that he

14  should have filed an Article 78 proceeding within --

15           THE COURT:  He's brought a federal civil rights

16  action that asks for prospective injunctive relief.

17           MR. THOMPSON:  But the due process aspect of that --

18           THE COURT:  The due process part has gone away, but

19  the prospective injunctive relief is about re-entering the

20  premises.  There is no order of the court that he may re-

21  enter.  But do you really think that this is the wise position

22  for your client to take?

23           MR. THOMPSON:  Well, certainly when a federal judge

24  asks that question it's always worth --

25           THE COURT:  Again, I have no idea what Traschen

22

1   said.  I don't even know what he's holding up to the court

2   saying --

3              MR. CAPOGROSSO:  I would like to be able to check my

4   license at liberty when I want to.  This is ridiculous.

5              THE COURT:  Again, Mr. Capogrosso, if you go into

6   the DMV the way that you're coming into the court,

7   interrupting the court, arguing with the court, it's -- you

8   know, again, sir, you're creating --

9              MR. CAPOGROSSO:  No, I want to --

10             THE COURT:  You're creating your own record here.

11             MR. CAPOGROSSO:  Fine.  That's fine.  I'll accept it

12  and I'll stand by it.  I want to know why my rights are being

13  curtailed in going to a DMV and checking my license when I

14  feel like it.

15             THE COURT:  Because they basically think that you

16  are --

17             MR. CAPOGROSSO:  On what basis?

18             THE COURT:  -- banned.

19             MR. CAPOGROSSO:  On what basis?

20             THE COURT:  That's what the case is about.  I'm

21  trying to get at it and you keep wanting to go on all these

22  sidetracks about what happened with David Smart and I'm trying

23  to get at the --

24             MR. CAPOGROSSO:  No, I don't.  I want to know if

25  I --

23

1          THE COURT:  -- prospective injunctive relief and

2   you're like I don't want to really get to that, Judge.

3          MR. CAPOGROSSO:  No, I want to know if I can go to

4   the DMV without getting arrested.  I'm not --

5          THE COURT:  Again, were you ever arrested?

6          MR. CAPOGROSSO:  Well, I'm wondering --

7          THE COURT:  Were you ever arrested?

8          MR. CAPOGROSSO:  I was escorted out, Judge.

9          THE COURT:  Excuse me, sir.  Were you ever arrested?

10          MR. CAPOGROSSO:  I was escorted out.  Now, they

11   should be able to answer this.

12          THE COURT:  Now, this was when you went in thinking

13   that you were going to depose witnesses --

14          MR. CAPOGROSSO:  No, on May 11th --

15          THE COURT:  -- and waving around --

16          MR. CAPOGROSSO:  No, I did not.  That's not what I

17   did.  I walked out voluntarily.  If you read the affidavit of

18   Defendant Collins, I walked out voluntarily.  Nobody escorted

19   me out.  On May 11th they did.  Now, I do need to know if I

20   have to go down there for a cup of coffee or to see if --

21          THE COURT:  Why do you have to get a cup of coffee

22   at DMV?

23          MR. CAPOGROSSO:  Well, because I have a right to,

24   Judge.

25          THE COURT:  Oh, please.  You have a right to do a

1   lot of things --

2             MR. CAPOGROSSO:  I'm not being told --

3             THE COURT:  -- that you are now -- you know, a cup

4   of coffee?  That's what you need to go to the DMV for?

5             MR. CAPOGROSSO:  I'm free to.  I'm free to.

6             THE COURT:  Obviously there's a problem here.

7   They're saying that you're banned.

8             MR. CAPOGROSSO:  I'm banned for practicing law.

9   That's what was initially told to me, practicing law.  Not

10  entering a building and checking my license and go and have a

11  cup of coffee which every other U.S. citizen in this country

12  can do.

13            THE COURT:  So then if you do that and there are bad

14  results that will be case number two.

15            MR. CAPOGROSSO:  I'll pay the consequences.

16            THE COURT:  That will be case number two.

17            MR. CAPOGROSSO:  Fine.  Let it be.

18            THE COURT:  That's right.

19            MR. CAPOGROSSO:  Right.  I will not be allowed to

20  practice law.  I will abide by your court order.  I will.

21  I've not been -- I was attempting to abide by your order and I

22  will and I will not get anybody [indiscernible] waving an

23  order in anybody's face.  I said I was there to comply with a

24  court -- with initial disclosures.  Fine.  But I will go down

25  there and if I get arrested, fine.  Then there'll be another

25

1   lawsuit pending.

2           I have a right to check my license.  I have a right

3   to go to the restaurant in the [indiscernible] building.

4           MR. THOMPSON:  Your Honor, I would question whether

5   there's a good faith need to check his license three weeks

6   after.

7           THE COURT:  It doesn't matter.  His bigger point is

8   this is a state-run office and that you're saying he had to

9   bring in Article 78.  That only applied to whether or not he

10  could practice at the TVB.  He's now talking about entering.

11  As long as he doesn't cause a disturbance and that --

12          MR. CAPOGROSSO:  I never did.

13          THE COURT:  But, Mr. Capogrosso, I'm telling you if

14  people cause disturbances --

15          MR. CAPOGROSSO:  Well --

16          THE COURT:  -- in state or federal or city buildings

17  that's why people get removed.

18          MR. CAPOGROSSO:  I never did.

19          THE COURT:  But if you don't, I can't imagine that

20  there will be a problem.

21          MR. CAPOGROSSO:  Fine.  I never did.  I'll look

22  online.  I'll check my license [indiscernible].

23          MR. THOMPSON:  Your Honor, if --

24          MR. CAPOGROSSO:  If I'm being prohibited, there's

25  going to be a second lawsuit.

26

1          THE COURT:  And that's what they'll get.  They'll

2    get a second lawsuit.

3          MR. CAPOGROSSO:  They will and they will.

4          MR. THOMPSON:  Your Honor, if I may.

5          THE COURT:  Yes.

6          MR. THOMPSON:  It's the TVB's position that -- or

7    it's the DMV's position rather that the Traffic Violations

8    Bureau is open to the public unless you've been banned from

9    it.

10         THE COURT:  But he was banned to practice there.  He

11   wasn't banned from the building.

12         MR. THOMPSON:  He was also banned from the premises.

13         THE COURT:  Where is that?

14         MR. THOMPSON:  I think it's all over the complaint.

15         MR. CAPOGROSSO:  It's nowhere on the complaint.  I

16   was ban -- I talked to Ida Traschen about it.  I was banned

17   from practicing law.

18         THE COURT:  Again, I think that you need to talk to

19   your clients about this because I think you're creating an

20   issue.  If it's a public service building he doesn't have the

21   right to stay there if he's causing a disturbance.  He doesn't

22   have the right to light the place on fire.  He doesn't have

23   the right to go there and do other things, but he has the

24   right like every other citizen.

25         MR. CAPOGROSSO:  There are murderers walking into

27

1  the DMV.

2           THE COURT:  Again, sir, you're not helping yourself

3  with me by interrupting every time --

4           MR. CAPOGROSSO:  Well, that's how I feel, Judge.

5           THE COURT:  You're interrupting me every time I

6  speak, Mr. Capogrosso.  I will let you speak.  I think you see

7  that I'll let you speak.

8           So you know, Mr. Thompson, if you have something

9  that you're going to present when he brings case number two

10  saying that he was banned from walking in, I think that you

11 should have legal support for that.

12          MR. THOMPSON:  Your Honor, based on our conversation

13 today I'll confer with my clients.

14          THE COURT:  Again, if he goes in and for whatever

15 reason he causes a disturbance then the -- the State has its

16 avenues to -- to foreclose that.  But again, I don't think

17 that Mr. Capogrosso's point misses the mark.  This is a public

18 building just like coming into the federal court is a public

19 building.  I will tell you that if people create disturbances

20 in the federal court that there are ways that they're dealt

21 with.  That's the end of it.

22          MR. CAPOGROSSO:  Your Honor, I created no

23 disturbance on May 11th.  I was approached by Defendant Smart.

24 I didn't create a disturbance.

25          THE COURT:  Mr. Capogrosso --

28

1          MR. CAPOGROSSO:  The cameras -- you informed me I'm

2   allowed to speak.

3          THE COURT:  No, I am not interested in you going --

4          MR. CAPOGROSSO:  I'm allowed -- you told me I was

5   allowed to speak.

6          THE COURT:  You're going back to May 11th and what

7   happened --

8          MR. CAPOGROSSO:  Well, you keep bringing up the fact

9   of disturbance.  I've never created a disturbance.  Defendant

10  Smart came at me to create a disturbance.

11         THE COURT:  What I'm saying to you, sir, is you're

12  now raising that you want to go down to the DMV not to

13  practice law --

14         MR. CAPOGROSSO:  No.

15         THE COURT:  -- but because you're a citizen.

16         MR. CAPOGROSSO:  Yes.

17         THE COURT:  And what I'm saying is every citizen has

18  the privilege of going into public buildings, I don't know

19  that it's a right.  I know it's a privilege.  And if you are

20  not having --

21         MR. CAPOGROSSO:  I'll tell you exactly what I'm

22  going to do.  I'm going to stand in line.  I'm going to go to

23  the front.  I'm going to review my license and I'm going to

24  check my license.  Then I'm going to get a cup of coffee and

25  then I'm going to leave.

29

1        THE COURT:  Wonderful.  Sounds like a great day.

2        MR. CAPOGROSSO:  Now, if that's a disturbance better

3   have your cameras working.

4        THE COURT:  Again, Mr. Capogrosso, don't try to

5   interview people about --

6        MR. CAPOGROSSO:  I never -- fine.  I don't

7   understand your ruling on this.  I was trying to comply and I

8   was trying to get to the truth as to what happened here.

9        THE COURT:  Again, you're --

10       MR. CAPOGROSSO:  We got two of the defendants in

11  this matter who no longer work there.

12       THE COURT:  You're still entitled to depose them.

13  You just have to serve a notice on Mr. Thompson --

14       MR. CAPOGROSSO:  And I will.

15       THE COURT:  -- and you have to come up with a date

16  that they are available, that you are available, and you have

17  to under Rule 28 have a court reporter who swears them to the

18  truth of the testimony and then you could take their

19  deposition.  That's your right under the Federal Rules.

20       MR. CAPOGROSSO:  And I will, Judge.

21       MR. THOMPSON:  Your Honor, one point on that.  If I

22  recall in the previous conference you had indicated

23  depositions could take place at the courthouse.  Is that still

24  the case?

25       THE COURT:  If you make the arrangements.  So you

1   first have to agree to a date.  I'm not going to give you the

2   right to just pick a date out of thin air but if you and

3   Mr. Capogrosso agree that on such-and-such a date there's

4   going to be a deposition of Gelbstein or Traschen or Calvo and

5   you come up with a date and you're responsible for getting the

6   court reporter if it's your deposition of the party, I will

7   get a room at the courthouse.  That's not a problem.

8           MR. CAPOGROSSO:  Well, just so now I can understand,

9   my understanding in the last conference was that you required

10  that I depose Smart here in the courthouse, not --

11          THE COURT:  You have to depose anybody.  Do you have

12  a law office within the Eastern District?

13          MR. CAPOGROSSO:  Yes, I work at a firm.

14          THE COURT:  Where is the firm?

15          MR. CAPOGROSSO:  It's in Brooklyn.

16          THE COURT:  Where is it?  So they have a

17  conference --

18          MR. CAPOGROSSO:  Well, 44th Street but they're not

19  going to come there.  I will get there.

20          THE COURT:  Well, if they're not coming there

21  they'll come --

22          MR. CAPOGROSSO:  I can go to the court reporter's

23  office to depose the defendants here.  I can do that.

24          Now, am I required to bring -- to depose Gelbstein,

25  Traschen and Calvo here in the -- in the --

31

1          THE COURT:  That's what the defendants have asked.

2          MR. CAPOGROSSO:  -- courtroom?

3          THE COURT:  And I'll agree to that.

4          MR. CAPOGROSSO:  All three?

5          THE COURT:  Yes.

6          MR. CAPOGROSSO:  I don't see why [indiscernible] --

7          THE COURT:  It doesn't matter.

8          MR. CAPOGROSSO:  I thought it was Smart.

9          THE COURT:  It's free to you.  It's a service --

10         MR. CAPOGROSSO:  I thought -- I thought it was Smart

11  that you wanted --

12         THE COURT:  -- that we're providing.

13         MR. CAPOGROSSO:  -- me to depose, see, but that's

14  fine.  I'll abide by that order too.  You want all the

15  defendants deposed in the courtroom.

16         THE COURT:  If you're deposing the defendants the

17  defendants' attorney has asked that they be deposed in the

18  courthouse.  Why you would have a problem with that, I don't

19  know.  We'll give you a nice room.  You get the court reporter

20  and it's the same as doing it at the court recorder's office.

21         MR. CAPOGROSSO:  Well, the reason I have a problem,

22  Judge, is there might be a timing issue.  If I go to a court

23  reporter who has an office who does it, there's not going to

24  be an issue of getting --

25         THE COURT:  Why is there a timing issue?

32

1      MR. CAPOGROSSO:  Because you indicated I have to

2  make arrangements with the court in order to get the re -- in

3  order to set it up.

4      THE COURT:  Again, sir, if you ask Mr. Thompson and

5  you and Mr. Thompson agree to dates, I will do everything to

6  accommodate the dates that you've selected.  Why are you

7  creating an issue where there's no issue?

8      MR. CAPOGROSSO:  I'm not creating an issue.  If I go

9  to a court reporter they have dates available all the time,

10  Judge.

11      THE COURT:  And I'm not saying that you won't have

12  dates available all the time at the court.  I'm just saying

13  that you'll have to ask the court to make the arrangement.

14  That's all.

15      MR. CAPOGROSSO:  So I'm required to hold depositions

16  here in the courtroom.

17      THE COURT:  Because they have made the case to the

18  court that you have a difference of opinion with all three of

19  these State or former State employees, I am giving

20  Mr. Thompson the ability to have the depositions at the

21  courthouse.  It's in my discretion.  I'm doing that.

22      You're here today.  It's a nice courthouse.  There's

23  no --

24      MR. CAPOGROSSO:  It has nothing to do with that.

25  You know, I'm being -- it has nothing to do with that.  I

33

1  should be free to take a deposition where I want.  I'll abide

2  by your court order.  Again, I will.

3       THE COURT:  You basically said that it wouldn't be

4  at your office.  It would be at a court reporter's office.

5       MR. CAPOGROSSO:  Right.

6       THE COURT:  I don't understand why you're making an

7  issue of it.

8       MR. CAPOGROSSO:  The issue with it is there's more

9  times available and my time is limited.  There are more times

10 available with a court reporter than there might be here in

11 this courtroom.

12      THE COURT:  You have no idea and it's not in the

13 courtroom, so let's get to that when we get to that.

14      MR. CAPOGROSSO:  That's fine.

15      THE COURT:  Once you contact Mr. Thompson so you

16 have to give him a notice of deposition.

17      MR. CAPOGROSSO:  I understand.

18      THE COURT:  And then you have to come up with dates

19 that you both are available.  He'll have to check with Calvo,

20 Traschen and Gelbstein to get their availability.  That's who

21 he represents in this matter.  Okay.

22      Were there other matters that you needed to address

23 to the Court today, Mr. Capogrosso?

24      MR. CAPOGROSSO:  Well, I'd like a response from

25 opposing counsel as to -- you know, I enter this DMV to check

1   my license, to get a cup of coffee or to see a client and

2   return money -- I returned all the money that's been asked

3   already.  But if I have to do that am I going to have a

4   problem and is the State's -- and is the DMV going to hold it

5   against me because I will not create a incidence.

6              THE COURT:  If you don't create an incident, sir,

7   then I'm telling them that I don't see anything that would

8   prohibit you from going down and check your license.

9              MR. CAPOGROSSO:  Fine.  If I'm prohibited then there

10  will be a second lawsuit.

11             THE COURT:  Mr. Thompson, I do think your client

12  needs to think these things through.

13             MR. THOMPSON:  And if I may, Your Honor --

14             THE COURT:  Yes.

15             MR. THOMPSON:  -- given the potential for a second

16  lawsuit as Mr. Capogrosso just said, we would request that,

17  you know, we be given some short period of time to confer in

18  which --

19             THE COURT:  This is not part of this lawsuit.  I

20  want both of you to understand.  This is not part of this

21  lawsuit.  And so again, the letter from Mr. Capogrosso seeking

22  entrance to DMV, TVB and it's a statement by him which is ECF

23  91, I've addressed it by telling him he should not go there to

24  conduct discovery.

25             MR. CAPOGROSSO:  I understand.

1    THE COURT:  But that is the extent to what his

2 limits are.  It's a public service institution and I do not

3 believe that there is anything I've seen in any of the papers

4 which would prohibit a citizen from going to a DMV.  He cannot

5 practice law there.  That's what this case is about but I'm

6 not reaching any of these other issues.  And then ECF 96,

7 which is the letter motion to substitute the official capacity

8 claims to name Commissioner Mark Schroeder, solely for the

9 purpose of prospective injunctive relief is granted and I will

10 direct the clerk of court to add Schroeder and there will be

11 no additional summons needed and there will not be service

12 needed.

13    Mr. Capogrosso, were there other matters --

14    MR. CAPOGROSSO:  One more issue, if I could.  Now,

15 it's come to my knowledge because it turns out they put me on

16 notice to it that the two -- three -- all three of the

17 defendants no longer hold their positions.

18    Now, Rule 8.3 of the Rules of Professional Conduct

19 require "A lawyer who knows that a judge has committed a

20 violation of applicable rules of judicial conduct that raises

21 a substantial question as to the judge's fitness for office

22 shall inform the appropriate authority."

23    MR. THOMPSON:  Your Honor, if I may.

24    THE COURT:  I don't think there's anything to

25 respond to.  I don't know what he's talking about.

36

1          MR. CAPOGROSSO:  Well, for what reason was the judge

2   removed?

3          THE COURT:  You can ask any of these questions at a

4   deposition, sir.  This is not the purpose of today's

5   conference.

6          MR. CAPOGROSSO:  Well --

7          THE COURT:  People retire, people move on.  I don't

8   know why Gelbstein moved on.  You could ask him at his

9   deposition.

10         MR. CAPOGROSSO:  Well, shall inform or shall

11  inform --

12         THE COURT:  Excuse me.  Is there anything you needed

13  to --

14         MR. CAPOGROSSO:  That's it.

15         THE COURT:  -- address today?

16         MR. CAPOGROSSO:  No.

17         THE COURT:  And Mr. Thompson, was there anything

18  further that needed to be addressed?

19         MR. THOMPSON:  Two very quick housekeeping matters.

20         THE COURT:  Yes.

21         MR. THOMPSON:  And the first one may very well be an

22  issue on our end.  We exchanged initial disclosures as ordered

23  on the 18th of December.  I received Mr. Capogrosso's initial

24  disclosures which said it was a supplement to his initial

25  disclosures.  It didn't include a damages calculation as

1  required.  That said, it's entirely possible that he submitted

2  previous initial disclosures.  That I just didn't get as part

3  of our file and I would just request that if there were

4  previous initial disclosures I'd love a copy.  And otherwise,

5  I'd just request a damages calculation.

6          THE COURT:  Mr. Capogrosso, do you --

7          MR. CAPOGROSSO:  I filed two initial disclosures.

8  One was the first one --

9          THE COURT:  So he's saying he didn't get it and did

10  that include -- did that include --

11          MR. CAPOGROSSO:  I'll resend it.

12          THE COURT:  Did that include your calculation of

13  damages, sir?

14          MR. CAPOGROSSO:  The first one I did lay out the

15  damages, yes.

16          THE COURT:  Okay.  Very good.  Then you'll just give

17  him another copy of that.  Thank you very much.

18          Next?

19          MR. THOMPSON:  And one last item which might not

20  actually be worth bringing up but --

21          THE COURT:  Well, I'll hold you there.  If it's not

22  worth bringing up, think twice.

23          MR. THOMPSON:  One of -- one of my clients believed

24  when I brought up a defendant to hear that he had passed away

25  we have no personal knowledge that we can base the suggestion

1   of death on.  I was wondering if Mr. Capogrosso had heard

2   anything to that effect because we keep sending mail and --

3           THE COURT:  Everything has been returned to the

4   court, so again --

5           MR. CAPOGROSSO:  Are we done [ph.] [indiscernible]?

6           THE COURT:  If he has passed away and anybody gets

7   any information I will direct you to file suggestion of death

8   on the record and I will tell you that if somebody died and

9   you want to try to substitute their estate, the rules provide

10  for procedure.  You only have a limited amount of time to

11  substitute an estate and serve the estate.

12          Anything else today, Mr. Capogrosso?

13          MR. CAPOGROSSO:  No, Your Honor.

14          THE COURT:  Anything further, Mr. Thompson?

15          MR. THOMPSON:  No, Your Honor.

16          THE COURT:  Then I'm hopeful that everybody will --

17          MR. CAPOGROSSO:  I'm sorry, Judge.  I could -- I

18  did -- and I apologize for interrupting if I've been -- I've

19  interrupted you.  My request -- per my complaint of

20  prospective injunctive relief, now am I going to have to wait

21  for this case to go to trial in order to -- before -- and make

22  a motion prior to trial?

23          THE COURT:  Only after discovery has been completed.

24          MR. CAPOGROSSO:  Fine.

25          THE COURT:  And that's what summary judgment is all

39

1   about.

2         MR. CAPOGROSSO:  All right.

3         THE COURT:  Okay.

4         MR. CAPOGROSSO:  Okay.

5         THE COURT:  With that we are adjourned.  Thank you.

6         MR. THOMPSON:  Thank you, Your Honor.

7         THE COURT:  Oh, I'm sorry.  Can we go back on for a

8   half-second?  Are we back on the record?  I'm sorry.  I

9   adjourned the case but I just want to bring one thing to your

10  attention, Mr. Capogrosso.  There is an administrative order

11  of the court that requires all parties -- it's a mandatory

12  policy -- to file electronically.  You are admitted in the

13  Eastern District of New York?

14        MR. CAPOGROSSO:  No, I'm not.  I'm admitted in state

15  court, not in federal court.

16        THE COURT:  And so that's why you're not on ECF to

17  receive --

18        MR. CAPOGROSSO:  I've got to have the paper copies.

19  I don't want to file on ECF, no.  Mail it to them.

20        THE COURT:  Look, sir.

21        MR. CAPOGROSSO:  Yes.

22        THE COURT:  This is not my rule.  It's the

23  District's rule and it's the chief judge who made it

24  mandatory.  Now, there can be exceptions for good cause and,

25  again, *pro se* cases are exempted but because you're an

40

1   attorney you're not exempted.  And just to be clear, in this

2   case I will excuse you from mandatory ECF filing but if

3   there's any case where you are appearing as an attorney in

4   this court, you need *pro hac vice* and you need mandatory ECF.

5   Are we clear?

6              MR. CAPOGROSSO:  No, I'm not admitted in this court,

7   Judge.

8              THE COURT:  No, but are we clear that in this

9   case --

10             MR. CAPOGROSSO:  Yes, I --

11             THE COURT:  -- I will as an accommodation not

12  require any ECF --

13             MR. CAPOGROSSO:  Fine.

14             THE COURT:  Any ECF to be mandatory and will

15  continue to file -- send you things paper, but in any other

16  case if you're appearing as an attorney before the court and

17  it's not your own case, you are required under Administrative

18  Order 2004-08 to be registered and you must get *pro hac vice*

19  and you must file everything electronically.

20             MR. CAPOGROSSO:  I understand that, Judge.

21             THE COURT:  Okay.  With that, we're adjourned.

22  Thank you.

23             MR. CAPOGROSSO:  Thank you.

24  (Proceedings concluded at 11:32 a.m.)

25                        * * * * * *

41

1          I certify that the foregoing is a court transcript

2   from an electronic sound recording of the proceedings in the

3   above-entitled matter.

4

5                              _____

6                              Ruth Ann Hager, C.E.T.**D-641

7   Dated:  January 15, 2020

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25