

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

| | | |
|---|---|---|
| LETITIA JAMES<br>ATTORNEY GENERAL | | DIVISION OF STATE COUNSEL<br>LITIGATION BUREAU |

Writer's Direct Dial: (212) 416-6556

March 25, 2020

**Via ECF**

The Honorable Eric R. Komitee, United States District Judge
The Honorable Lois Bloom, United States Magistrate Judge
United States District Court for the Eastern District of New York
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    <u>Capogrosso v. Gelbstein, et al.</u>, No. 18 Civ. 2710 (EK) (LB)

Dear Judge Komitee and Judge Bloom,

    This Office represents Defendants Alan Gelbstein, Ida Traschen, and Danielle Calvo, in their individual capacities, and New York State Department of Motor Vehicles ("DMV") Commissioner Mark Schroeder, in his official capacity (collectively, the "State Defendants"), in the above-referenced matter. I write in response to Plaintiff's March 20, 2020 letter "motion" purporting to seek sanctions, Dkt No. 120. Specifically, the Plaintiff—who has chosen to proceed *pro se* in this case, but is a practicing member of the New York Bar—seeks sanctions for my emailing him certain documents in the middle of the coronavirus lockdown, rather than sending them to him in hard copy format. Like all but the most essential staff at the Office of the Attorney General ("OAG"), I am currently teleworking and following a "shelter in place" directive. There is no safe way to continue to prepare and mail physical copies of ECF filings or other correspondence, notices, discovery demands, and the like.

    This frivolous motion for sanctions is the latest in a series of abusive litigation practices by the Plaintiff – ironically, in a lawsuit challenging his expulsion from practicing law before DMV's administrative tribunal. Of the four attorneys who have served as lead counsel for the Office of the Attorney General ("OAG") in defending the Plaintiff's lawsuits since 2012, he has now sought sanctions against two of them and sued another for $40 million. <u>See</u> Dkt. Nos. 25 & 120; Complaint, Dkt. No. 1 at ¶¶ 22, 50-52 and pp. 21-22. The Court soundly rejected the Plaintiff's first two attacks on opposing counsel: AAG Elizabeth Morgan was dismissed as a defendant in this lawsuit because the Plaintiff could not "establish Morgan's personal involvement in the [alleged] violation of plaintiff's rights," <u>Capogrosso v. Gelbstein</u>, No. 18 Civ. 2710, 2019 WL 6406444, at *8 (E.D.N.Y. Jan. 30, 2019), *R&R adopted in relevant part*, 2019 WL 4686448, at *8 (E.D.N.Y. Sept. 25, 2019), and Judge Brodie denied the Plaintiff's previous

motion for sanctions against AAG Mark Siegmund and warned the Plaintiff against filing similar motions in future.  Aug. 2, 2018 Conference Transcript, Thompson Dec.1 Ex. 6 at 7:17-18 ("As to sanctions, there is absolutely no basis for me to impose sanctions here."); id. at 36:14-16 ("The attorney [AAG Siegmund] didn't act inappropriately in any way.  And I am not, I am not going to tolerate any false accusations."); see also id. at 36:23-37:1 ("You have brought a lawsuit, so let the lawsuit take place, but it doesn't help when you accuse your adversary of doing things inappropriately.").  The Plaintiff did not heed these warnings, and has now sought sanctions against a third Assistant Attorney General in this matter.  Accordingly, we ask that the Court deny Plaintiff's request for sanctions, preclude him from making any further sanctions motions without first seeking leave, and permit the State Defendants to serve this and all future filings and correspondence on Plaintiff in this case via email (or require him to register for ECF).

The Motion for Sanctions is Without Merit

The *pro se* attorney Plaintiff does not cite any statute, rule, or other legal authority to support his demand for sanctions, and the motion should be denied on that basis alone, but the motion would be meritless under any applicable standard.[2]  His claims fail well short of the standard for Rule 11 sanctions, which requires the court to "appl[y] an objective standard of reasonableness, and looks to, among other factors, whether the party acted in bad faith; whether that party relied on a direct falsehood; and whether the claim was utterly lacking in support." DNC v. Russian Federation, 392 F. Supp. 3d 410, 450 (S.D.N.Y. 2019) (citations and quotations omitted).  Similarly, "to impose sanctions under either [the Court's inherent power or 18 U.S.C. § 1927], the trial court must find clear evidence that 1) the offending party's claims were entirely meritless and 2) the party acted for improper purposes."  Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000).  Sending the Plaintiff a copy of a court filing by email rather than in hard copy – during a pandemic – does not remotely approach any of these standards.  See Jo v. JPMC Specialty Mtg., Ltd., 248 F. Supp. 3d 417 428 (W.D.N.Y. 2017) (denying motion for sanctions where defendant served its motion to dismiss – a dispositive motion – by email under normal circumstances).

A brief summary of counsel's interactions shows the sanctions motion to be completely unreasonable.  Although the Plaintiff is an attorney, and is listed as lead counsel of record on at least one other Eastern District case, see Civil Docket, Zhou v. Port Auth. of N.Y. & N.J., No. 19 Civ. 6816, he has declined to participate in the ECF filing system.  Despite this, he is fully capable of electronic communication, having written 40 separate emails to defense counsel between December 3, 2019 and March 20, 2020, Thompson Dec. ¶ 9, and having used email to serve his own documents on the State Defendants.[3]  E.g., Thompson Dec. Ex. 1.  However,

---

[1] Citations to the "Thompson Dec." refer to the Declaration of James M. Thompson in Opposition to *Pro Se* Attorney Plaintiff's Motion for Hard Copy Service and Sanctions, submitted contemporaneously herewith.

[2] The motion should also be denied because it is procedurally improper.  The Plaintiff chose not to provide the notice period and safe harbor opportunity called for in Fed. R. Civ. P. 11(c)(2), which is "a strict procedural requirement," and sufficient grounds in itself for denial of sanctions.  See Zsa Zsa Jewels, Inc. v. BMW of N.Am., LLC, No. 15 Civ. 6519, 2019 WL 5103870, at *20 (E.D.N.Y. Oct. 11, 2019).

[3] The Plaintiff has not explained why he refuses to receive documents via email, let alone register for ECF notifications as is required of any other attorney practicing before this Court.  See E.D.N.Y. Admin. Order 2004-08 (requiring mandatory participation in electronic filing, with exceptions "for good cause hardship reasons only").

because he has not consented to electronic service, the State Defendants have diligently sent him hard copy notices of all filings.  See, e.g., Dkt. Nos. 89, 96, & 107 (noting mail service on the Plaintiff).

This has become impracticable due to the Covid-19 pandemic.  Since the afternoon of March 13, 2020, I have been working from home, without access to the printing and mailroom facilities at OAG's Manhattan headquarters.  Similarly, during the following week there was no one present at OAG's Litigation Bureau who was able to mail items on my behalf.  Accordingly, I emailed the Plaintiff immediately with a copy of our March 18, 2020 letter-motion to take the remote deposition of an elderly defendant due to the coronavirus,[4] only minutes after it was filed, noting that "because virtually all OAG staff are working remotely due to the threat of the coronavirus, we will not be sending the attached document separately by mail."  See Thompson Dec. Ex. 3.  The Plaintiff replied, "I did not consent to electronic delivery.  I demand a hard copy for my files.  You can bill the AG office."  Id.

Later that day, Judge Bloom denied the motion, but also cancelled all depositions and stayed all deadlines, ordering the State Defendants to "mail a copy of this Order to plaintiff and file proof of service forthwith."  Dkt. No. 118.  I complied promptly and sent the Plaintiff a copy by mail, although doing so required leaving my apartment, where our family has attempted to quarantine, in order to mail the letter.  See Thompson Dec. ¶¶ 13-15, 18.  On the same day, the *pro se* attorney Plaintiff sent a brusque email demonstrating that he had already received the Order by other means: "Your motion has been denied.  I need a copy of Judges order of March 19, 2020 mailed to me, via US mail per the Court's last order.  Again I do not consent to electronic service."  Thompson Dec. Ex. 4.  Of course, I had already complied with the Order and sent him a copy; I filed an affirmation of service the following day, in compliance with Judge Bloom's Order.  See Dkt. No. 119.  I subsequently sent him a copy of the letter enclosing the affirmation of service, noting that "as I am working remotely due to the coronavirus, without support staff and with limited ability to print or mail documents, I will not be sending a hard copy of this document to you."  Thompson Dec. Ex. 5 at 2.

The *pro se* attorney Plaintiff replied almost immediately, apparently confused as to whether I had served him with Judge Bloom's Order and threatening sanctions.  Id.  I replied that I had already mailed him a hard copy of the Order, and that the email I had sent to him had the affirmation of service attached, noting that I would not separately mail him a copy of the cover letter and affirmation of service, "because I am working from home and attempting to maintain quarantine," and pointing out that I had emailed the filing to him and that he had manifestly received it.  Id. at 1  I asked him to proceed in a more civil fashion, and noted that a frivolous motion for sanctions is itself sanctionable.  Id.; see Fisher v. County of Nassau, No. 10 Civ. 677, 2011 WL 4899920, at *5 (E.D.N.Y. Oct. 13, 2011).  I concluded by stating that "I hope that

---

The only grounds given are that "[t]he internet costs money" and that he is unemployed and "may" at some future point "have to do away with certain household expenses, one of them being the internet, which costs money."  Dkt. No. 120 at 2.  The Plaintiff is not *in forma pauperis* and has never applied for that status.

[4] The Plaintiff had refused to consent to the motion, despite the age of the deponent, the extensive travel required, and the fact that she resides with an immunocompromised sister, saying that "[s]he can stay in the car" and that "Gelbstein is older than she is and he is being produced."  Thompson Dec. Ex. 4 at 1-2.

going forward we can work together amicably, treat one another with professional courtesy, and ensure the smooth progress of this litigation." Id.  The *pro se* attorney Plaintiff responded by filing the instant motion for sanctions.

<u>The Plaintiff's Motion Practice Has Been Abusive and Unbecoming of an Attorney</u>

  This is the latest in a long line of instances in which the Plaintiff has acted contemptuously toward the State Defendants, opposing counsel, and the Court, in a manner unbecoming of an attorney.  Indeed, this conduct started almost as soon as the case was filed: when the State Defendants requested additional time to file an answer (noting that some defendants had yet to be served), Dkt. No. 5, the Plaintiff refused and accused AAG Siegmund of "falsif[ying] the record." Dkt. No. 11 at 1.  Judge Bloom granted the additional time and reminded the Plaintiff that, "[a]lthough appearing *pro se*, plaintiff is an attorney.  Thus, he should be aware of such a professional courtesy [i.e., granting an initial extension] and conduct himself accordingly."  Order, Dkt. No. 12.  The Plaintiff responded by moving for Judge Bloom's recusal and "question[ed] Magistrate Bloom's ability to afford me a fair hearing." Dkt. No. 16 at 2,3.  As part of that document, he asserted that because of the incidents alleged in his complaint, "my colleagues at [DMV] have afforded me no professional courtesy, and therefore deserve none in return." Id. at 1.

  That statement would be the Plaintiff's lodestar in his further litigation conduct.  A month later, after the State Defendants informed the Court that the Plaintiff had shown up at the DMV's Brooklyn South Traffic Violations Bureau ("TVB"), despite a lifetime ban from the premises, see Dkt. No. 23, the Plaintiff responded by filing for sanctions against AAG Siegmund, claiming that Judge Bloom had somehow ordered him to go to the TVB and that AAG Siegmund "likes to falsify the record" and "acts in willful disobedience and defiance [] of your Court Order." Dkt. No 25 at 3.  Judge Brodie rejected the Plaintiff's contention that Judge Bloom had implicitly made such an order, see Thompson Dec. Ex. 6 at 21:18 ("She did no such thing."), and denied the sanctions motion, stating that AAG Siegmund "didn't act inappropriately in any way." Id. at 36:14-16.

  The abusive behavior continued nonetheless.  After Magistrate Judge Bloom issued an R&R granting in part and denying in part the State Defendants' motion to dismiss, the Plaintiff wrote to Chief Judge Irizarry, complaining that "I am not being treated fairly by this Court." Dkt. No. 70 at 1.  After a November 14, 2019 conference, the Plaintiff wrote a letter to Judge Bloom, accusing AAG Siegmund of "lying" and "a misrepresentation by this lawyer, lying lawyers," accusing me (barely two weeks after appearing in the case) of "misrepresentation[s]," and referring to me and AAG Siegmund as "lying lawyers at the DMV." Dkt. No. 91 at 1-2.

  After moving again to enter the TVB premises, from which he had been banned, to conduct unspecified discovery, Dkt. No. 91, the Plaintiff did not wait for a ruling and instead showed up unannounced, claiming once again that the Court had somehow ordered him to do so. See Dkt. No. 101.  After I raised the matter with the Court, the Plaintiff accused me of "false, malicious defamatory statements." Dkt. No. 102 at 3.  The issue was resolved at a conference on the matter, in which Judge Bloom clarified once again that the Plaintiff had no court order allowing him to conduct discovery at the TVB. See Transcript of January 10, 2020 Conference,

Thompson Dec. Ex. 7 at 3:16-18 ("There's a right way to conduct discovery and there's an improper way. You can't just walk in and think you're going to start taking depositions by walking in."). The Plaintiff was rude and belligerent at the conference, leading Judge Bloom to state: "the way that you're coming into the court, interrupting the court, arguing with the court, it's – you know, again, sir, you're creating . . . [y]ou're creating your own record here." Id. at 22:6-10.

The Court Should Require the Plaintiff to Accept Documents Electronically and Preclude Any Further Sanctions Motions

The Plaintiff's motion for sanctions is the latest incident in a years-long string of hostile and unprofessional litigation behavior. Although he has chosen to represent himself, as a licensed attorney "he is not entitled to the special solicitude and latitude courts traditionally afford to pro se litigants." Anthes v. Nelson, 763 F. App'x 57, 60 n.2 (2d Cir. 2019) (citing Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010)). The State Defendants ask that the Court to deny the Plaintiff's motion, preclude him from any making any further sanctions motions without leave, and require him to either receive filing s by email or register for electronic service via ECF, both in light of the current COVID-19 situation and to obviate further purported issues arising out of service of papers in this case. We thank the Court for its time and consideration.

Respectfully submitted,

    */s/ James M. Thompson*
James M. Thompson
Assistant Attorney General
james.thompson@ag.ny.gov

Cc:    All counsel of record (via ECF)

    Mario Capogrosso (via email to nry4@aol.com)
    21 Sheldrake Place
    New Rochelle, NY 10804