UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

MARIO H. CAPOGROSSO,

                             Plaintiff,           No. 18 Civ. 2710 (EK) (LB)

                  - against -           **DECLARATION OF JAMES M.**
                                        **THOMPSON IN OPPOSITION**
ALAN GELBSTEIN, *et al.*,            **TO *PRO SE* ATTORNEY**
                                        **PLAINTIFF'S MOTION FOR**
                        Defendants.      **HARD COPY SERVICE AND**
                                          **SANCTIONS**

--------------------------------------------------------------------X

I, James M. Thompson, hereby declare as follows:

    1.      I am a member of the Bar of the State of New York and am admitted to practice in

this District.  I serve as an Assistant Attorney General in the office of New York State Attorney

General Letitia James.

    2.      I submit this Declaration in opposition to the motion for hard copy service and

sanctions filed by *pro se* attorney Plaintiff Mario Capogrosso ("Capogrosso," or the "Plaintiff"),

Dkt. No. 120, and to put before the Court documents pertinent to that motion.

    3.      Unless otherwise stated, the facts and circumstances set forth in this declaration

are based upon my own personal knowledge and my review of documents and information in the

legal file relating to this action maintained by this Office in the regular course of business.

    4.      I am the fourth Assistant Attorney General ("AAG") to serve as lead counsel in

defending the New York State Department of Motor Vehicles ("DMV") and its employees from

the two lawsuits brought by Mr. Capogrosso.  Both lawsuits challenged decisions by DMV to

ban Capogrosso from practicing before DMV administrative tribunals due to his violent and

abusive behavior.

    5.      AAGs Elizabeth Morgan and Serwat Farooq defended Capogrosso's state court

Article 78 proceeding, which was filed in or around 2012 and resulted in an agreement re-admitting Capogrosso to practice after successful completion of anger management therapy.

6.      AAG Mark Siegmund was lead counsel in the instant case until he left government service in November 2019 for a position at Weill Cornell Medical Center.  I took over the case from AAG Siegmund at that time.

7.      Out of the four attorneys who have served as his opposing counsel, the Plaintiff has moved for sanctions against two of them, see Dkt. Nos. 25 & 120, and sued another for $40 million.  Complaint, Dkt. No. 1 at ¶¶ 22, 50-52 and pp. 21-22.

8.      These attacks on opposing counsel are part of a pattern of belligerent and unprofessional litigation conduct in this case, as detailed in the accompanying letter, and are of a piece with the unprofessional conduct that led to his expulsion from practice at the DMV's Traffic Violations Bureau.

The Plaintiff Refuses Electronic Service Without Explanation, Despite Regularly Using Email

9.      Although the Plaintiff is a licensed attorney, he has refused to register for ECF filings or consent to electronic service.  He is, however, fully capable of communicating electronically regarding the case.  He receives emails at nry4@aol.com, the address on his New York State attorney registration, and responds quickly to them.  He has sent me 40 separate emails regarding the case, the first on December 3, 2019 and the most recent on March 20, 2020.  He has used email to serve several documents and filings on the State Defendants.  A copy of such a document, in which the Plaintiff served his deposition notices on the State Defendants via email, is attached as Exhibit 1.

10.      Earlier in the litigation, I suggested to the Plaintiff that he register for ECF in order to ease communication.  He responded via email, "Don't tell me how to handle my case.  I

did not consent to electronic service in this matter.  Mail everything to me and mail it timely."  A copy of that email communication is attached as Exhibit 2.

11.     The Plaintiff has never offered any reason as to why he refuses to register for ECF or receive papers electronically.  Nonetheless, the State Defendants have diligently served him with copies of all our filings by U.S. Mail.  See, e.g., Dkt. Nos. 89, 96, & 107 (noting mail service on the Plaintiff).

With OAG Shut Down Due To The Coronavirus, Mail Service Is Not Practicable

12.     With the spread of the Covid-19 pandemic, serving every individual document on the Petitioner by mail is no longer practicable.

13.     Pursuant to State policy, I have been working from home since the afternoon of March 13, 2020.  I have not been to my office since that date.  Accordingly, I have only the resources available to me in my apartment.

14.     Our family has attempted to maintain quarantine-like conditions in our apartment, as my seven-year-old son developed a fever and a cough over the following weekend, and his five-year-old brother also had flu-like symptoms.  We do not know if either of the boys had the coronavirus, as tests were not available, and their symptoms have thankfully abated.  Nonetheless, we have proceeded as if we were exposed, and attempted to minimize contact with others.

15.     I inquired during the week of Monday, March 16 as to whether there was anyone in OAG's Litigation Bureau who could mail documents to the Plaintiff on my behalf, but was informed that there was no one present who could do so.  This turned out to be a wise precaution, as two OAG employees in our office later tested positive for the coronavirus, as did two other people who work in the same building.

16.     Accordingly, serving documents on the Plaintiff by mail was impracticable or even potentially dangerous.  Therefore, on March 18, 2020, when I filed a motion on behalf of Defendant Ida Traschen, who is retired and lives Upstate with her immunocompromised sister, to have her deposition taken remotely rather than travel to Brooklyn, Dkt. No. 117, I promptly sent it to the Plaintiff via email, noting that "because virtually all OAG staff are working remotely due to the threat of the coronavirus, we will not be sending the attached document separately by mail."  The Plaintiff replied, "I did not consent to electronic discovery.  I demand a hard copy for my files.  You can bill the AG office."  A copy of this email exchange is attached as Exhibit 3.

17.     Later that day, Judge Bloom denied the motion for a remote deposition, but also cancelled all depositions and stayed all deadlines.  Dkt. No. 118.  The Plaintiff was aware of the ruling almost immediately, emailing me "Your motion has been denied.  I need a copy of Judges order of March 19, 2020 **mailed to me, via US mail p**er the Court's last order.  Again I do not consent to electronic service."  A copy of the email exchange is attached as Exhibit 4.

18.     Because Judge Bloom had ordered me to "mail a copy of this Order to plaintiff and file proof of service forthwith," Dkt. No. 118, I left my apartment in order to mail a hard copy to the Plaintiff.  I then filed the required letter with the Court, attaching an affirmation of service.  Dkt. No. 119.

19.     Rather than leave the apartment again to obtain postage and mail the cover letter with certificate of service, I sent the Plaintiff a copy of the document (Dkt. No. 119) via email.  A copy of the relevant email exchange is attached as Exhibit 5.  The Plaintiff received it and immediately replied, "Keep this simple[.]  Are you sending me a hard copy of the Court's latest order – dated March 18, 2020.  If I do not get a hard copy within three days I will move the Court for Sanctions.  I called the Court and they indicated that you have been ordered to serve

me a hard copy of the Court's Order of March 18, 2020.  Serve the Order.  Your last email states '**I will not be** sending a hard copy of [the cover letter] to you.'  Serve the Order."

20.     Of course, I had already served the order by mail, filed proof of service, and served the Plaintiff with a copy of the latter via email, which he had received.

21.     I responded that I had already mailed him a copy of the order and had emailed him a copy of the cover letter enclosing the affirmation of service, and that although I did not separately mail the latter document "because I am working from home and attempting to maintain quarantine . . . I did send it to you electronically, and you have manifestly received it." I pointed out that his conduct had been uncivil, and responded to his threat of sanctions by noting that a frivolous motion for sanctions is, itself, sanctionable.  I ended the email by stating that "I hope that going forward we can work together amicably, treat one another with professional courtesy, and ensure the smooth progress of this litigation."

22.     The Plaintiff responded by filing the instant motion for hard copy service and sanctions.

Additional Relevant Documents

23.     The Plaintiff's refusal to afford minimal professional courtesy in the middle of a pandemic, and the instant motion for hard copy service and sanctions, are part of a lengthy history of abusive and belligerent litigation behavior, which is detailed in the accompanying letter.  Several documents cited in that letter are included as attachments to this Declaration.

24.     Attached as Exhibit 6 are excerpts from the transcript of an August 2, 2019 pre-motion conference before Judge Brodie, in which, *inter alia*, she denied the Plaintiff's motion for recusal against Judge Bloom, reminding him that "Counsel, as you know, pursuant to the New York Rules of Professional Conduct, they require you to treat all persons involved in legal

process with courtesy and consideration," Ex. 6 at 3:8-14, and denied the Plaintiff's motion for

sanctions against AAG Siegmund, stating that "[t]he attorney didn't act inappropriately in any

way.  And I am not, I'm not going to tolerate any false accusations."  Id. at 36:14-16.

     25.     Attached as Exhibit 7 are excerpts from the transcript of a January 10, 2020

conference before Magistrate Judge Bloom.

     26.     I declare under penalty of perjury that the foregoing is true and correct.


Dated: New York, NY
       March 25, 2019


James M. Thompson