# Exhibit 7

```
                       UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF NEW YORK


---------------------------------------X
                                        :
MARIO H. CAPOGROSSO,                    :
                                        :   18-CV-02710 (MKB)
            Plaintiff,                  :
                                        :   225 Cadman Plaza
       v.                               :   Brooklyn, New York
                                        :
GELBSTEIN, et al.,                      :
                                        :
            Defendants.                 :   January 10, 2020
---------------------------------------X


        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
               BEFORE THE HONORABLE LOIS BLOOM
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:


For the Plaintiff:          MARIO H. CAPOGROSSO, Pro Se
                            21 Sheldrake Place
                            New Rochelle, New York 10804


For Alan Gelbstein; Ida     JAMES M. THOMPSON, ESQ.
Traschen; Danielle Calvo:   Office of the New York State
                               Attorney General
                            28 Liberty Street
                            New York, New York 10005



Court Transcriber:          RUTH ANN HAGER, C.E.T.**D-641
                            TypeWrite Word Processing Service
                            211 North Milton Road
                            Saratoga Springs, New York 12866
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

2

```
 1  (Proceedings began at 10:50 a.m.)
 2            THE CLERK:  Civil cause for status conference,
 3  docket number 18-CV-02710, Capogrosso v. Gelbstein, et al.
 4            Will the parties please state your names for the
 5  record?
 6            MR. CAPOGROSSO:  Marion Capogrosso, 21 Sheldrake
 7  Place, New Rochelle, New York, representing myself.
 8            MR. THOMPSON:  James M. Thompson from the Office of
 9  the New York State Attorney General, representing defendants
10  Gelbstein, Traschen, Calvo and also non-party of the New York
11  State Department of Motor Vehicles.
12            THE CLERK:  The Honorable Lois Bloom presiding.
13            THE COURT:  Good morning, Mr. Capogrosso and
14  Mr. Thompson.  This is a status conference in plaintiff's
15  civil rights action.  We had a conference on November 14th at
16  which time I ordered the State defendants to answer the
17  complaint and I ordered the parties to exchange initial
18  disclosures by December 4th.  On December 2nd plaintiff filed
19  a letter seeking to physical enter DMV to gather information
20  for discovery.  And then there were back and forth between
21  Mr. Thompson and Mr. Capogrosso about the answer and about DMV
22  being substituted in.  And so I just thought that it would be
23  best to have today's conference so I could get the parties on
24  track.  Okay.
25            So Mr. Capogrosso, you are entitled to conduct
```

3

1 discovery but that does not mean that you go to DMV and try to
2 question people.  There is the Federal Rules of Civil
3 Procedure, sir.  The Federal Rules of Civil Procedure provide
4 for five methods.  I put it in my order to you.  Under Rule 33
5 you can send requests to Mr. Thompson for him or any of the
6 defendants to answer under oath interrogatories.  That's Rule
7 33.  Rule 34 you can make a request to Mr. Thompson for them
8 to produce documents.
9         Under Rule 30 you can conduct depositions.  But the
10 way that you went about thinking that you were going to walk
11 into DMV and start questioning people, that is not provided
12 for in the Federal Rules of Civil Procedures, sir.  And I
13 don't want this to become a situation where for no good reason
14 things go out of hand and I don't want there to be further
15 trouble because you're trying to get information in your case.
16 There's a right way to conduct discovery and there's an
17 improper way.  You can't just walk in and think you're going
18 to start taking depositions by walking in.
19         So let me just say I would like to address discovery
20 today.  I would also like to address what the defendants are
21 intending to do regarding naming of the DMV commissioner.  I'm
22 not sure that I understood, Mr. Thompson, so I'd like you to
23 explain it.  I do understand that under Federal Rule 26(d), D
24 as in David, an officer's successor is automatically
25 substituted as a party, but I want to make sure so that

Pages Omitted

                                                                  22

1  said.  I don't even know what he's holding up to the court
2  saying --
3            MR. CAPOGROSSO:  I would like to be able to check my
4  license at liberty when I want to.  This is ridiculous.
5            THE COURT:  Again, Mr. Capogrosso, if you go into
6  the DMV the way that you're coming into the court,
7  interrupting the court, arguing with the court, it's -- you
8  know, again, sir, you're creating --
9            MR. CAPOGROSSO:  No, I want to --
10           THE COURT:  You're creating your own record here.
11           MR. CAPOGROSSO:  Fine.  That's fine.  I'll accept it
12 and I'll stand by it.  I want to know why my rights are being
13 curtailed in going to a DMV and checking my license when I
14 feel like it.
15           THE COURT:  Because they basically think that you
16 are --
17           MR. CAPOGROSSO:  On what basis?
18           THE COURT:  -- banned.
19           MR. CAPOGROSSO:  On what basis?
20           THE COURT:  That's what the case is about.  I'm
21 trying to get at it and you keep wanting to go on all these
22 sidetracks about what happened with David Smart and I'm trying
23 to get at the --
24           MR. CAPOGROSSO:  No, I don't.  I want to know if
25 I --

23

1           THE COURT:  -- prospective injunctive relief and
2  you're like I don't want to really get to that, Judge.
3           MR. CAPOGROSSO:  No, I want to know if I can go to
4  the DMV without getting arrested.  I'm not --
5           THE COURT:  Again, were you ever arrested?
6           MR. CAPOGROSSO:  Well, I'm wondering --
7           THE COURT:  Were you ever arrested?
8           MR. CAPOGROSSO:  I was escorted out, Judge.
9           THE COURT:  Excuse me, sir.  Were you ever arrested?
10          MR. CAPOGROSSO:  I was escorted out.  Now, they
11 should be able to answer this.
12          THE COURT:  Now, this was when you went in thinking
13 that you were going to depose witnesses --
14          MR. CAPOGROSSO:  No, on May 11th --
15          THE COURT:  -- and waving around --
16          MR. CAPOGROSSO:  No, I did not.  That's not what I
17 did.  I walked out voluntarily.  If you read the affidavit of
18 Defendant Collins, I walked out voluntarily.  Nobody escorted
19 me out.  On May 11th they did.  Now, I do need to know if I
20 have to go down there for a cup of coffee or to see if --
21          THE COURT:  Why do you have to get a cup of coffee
22 at DMV?
23          MR. CAPOGROSSO:  Well, because I have a right to,
24 Judge.
25          THE COURT:  Oh, please.  You have a right to do a

```
                                                              24
 1   lot of things --
 2            MR. CAPOGROSSO:  I'm not being told --
 3            THE COURT:  -- that you are now -- you know, a cup
 4   of coffee?  That's what you need to go to the DMV for?
 5            MR. CAPOGROSSO:  I'm free to.  I'm free to.
 6            THE COURT:  Obviously there's a problem here.
 7   They're saying that you're banned.
 8            MR. CAPOGROSSO:  I'm banned for practicing law.
 9   That's what was initially told to me, practicing law.  Not
10   entering a building and checking my license and go and have a
11   cup of coffee which every other U.S. citizen in this country
12   can do.
13            THE COURT:  So then if you do that and there are bad
14   results that will be case number two.
15            MR. CAPOGROSSO:  I'll pay the consequences.
16            THE COURT:  That will be case number two.
17            MR. CAPOGROSSO:  Fine.  Let it be.
18            THE COURT:  That's right.
19            MR. CAPOGROSSO:  Right.  I will not be allowed to
20   practice law.  I will abide by your court order.  I will.
21   I've not been -- I was attempting to abide by your order and I
22   will and I will not get anybody [indiscernible] waving an
23   order in anybody's face.  I said I was there to comply with a
24   court -- with initial disclosures.  Fine.  But I will go down
25   there and if I get arrested, fine.  Then there'll be another
```

```
                                                              25
 1   lawsuit pending.
 2            I have a right to check my license.  I have a right
 3   to go to the restaurant in the [indiscernible] building.
 4            MR. THOMPSON:  Your Honor, I would question whether
 5   there's a good faith need to check his license three weeks
 6   after.
 7            THE COURT:  It doesn't matter.  His bigger point is
 8   this is a state-run office and that you're saying he had to
 9   bring in Article 78.  That only applied to whether or not he
10   could practice at the TVB.  He's now talking about entering.
11   As long as he doesn't cause a disturbance and that --
12            MR. CAPOGROSSO:  I never did.
13            THE COURT:  But, Mr. Capogrosso, I'm telling you if
14   people cause disturbances --
15            MR. CAPOGROSSO:  Well --
16            THE COURT:  -- in state or federal or city buildings
17   that's why people get removed.
18            MR. CAPOGROSSO:  I never did.
19            THE COURT:  But if you don't, I can't imagine that
20   there will be a problem.
21            MR. CAPOGROSSO:  Fine.  I never did.  I'll look
22   online.  I'll check my license [indiscernible].
23            MR. THOMPSON:  Your Honor, if --
24            MR. CAPOGROSSO:  If I'm being prohibited, there's
25   going to be a second lawsuit.
```

26

1    THE COURT: And that's what they'll get.  They'll
2 get a second lawsuit.
3    MR. CAPOGROSSO: They will and they will.
4    MR. THOMPSON: Your Honor, if I may.
5    THE COURT: Yes.
6    MR. THOMPSON: It's the TVB's position that -- or
7 it's the DMV's position rather that the Traffic Violations
8 Bureau is open to the public unless you've been banned from
9 it.
10    THE COURT: But he was banned to practice there.  He
11 wasn't banned from the building.
12    MR. THOMPSON: He was also banned from the premises.
13    THE COURT: Where is that?
14    MR. THOMPSON: I think it's all over the complaint.
15    MR. CAPOGROSSO: It's nowhere on the complaint.  I
16 was ban -- I talked to Ida Traschen about it.  I was banned
17 from practicing law.
18    THE COURT: Again, I think that you need to talk to
19 your clients about this because I think you're creating an
20 issue.  If it's a public service building he doesn't have the
21 right to stay there if he's causing a disturbance.  He doesn't
22 have the right to light the place on fire.  He doesn't have
23 the right to go there and do other things, but he has the
24 right like every other citizen.
25    MR. CAPOGROSSO: There are murderers walking into

27

1 the DMV.

2     THE COURT: Again, sir, you're not helping yourself
3 with me by interrupting every time --

4     MR. CAPOGROSSO: Well, that's how I feel, Judge.

5     THE COURT: You're interrupting me every time I
6 speak, Mr. Capogrosso. I will let you speak. I think you see
7 that I'll let you speak.

8     So you know, Mr. Thompson, if you have something
9 that you're going to present when he brings case number two
10 saying that he was banned from walking in, I think that you
11 should have legal support for that.

12     MR. THOMPSON: Your Honor, based on our conversation
13 today I'll confer with my clients.

14     THE COURT: Again, if he goes in and for whatever
15 reason he causes a disturbance then the -- the State has its
16 avenues to -- to foreclose that. But again, I don't think
17 that Mr. Capogrosso's point misses the mark. This is a public
18 building just like coming into the federal court is a public
19 building. I will tell you that if people create disturbances
20 in the federal court that there are ways that they're dealt
21 with. That's the end of it.

22     MR. CAPOGROSSO: Your Honor, I created no
23 disturbance on May 11th. I was approached by Defendant Smart.
24 I didn't create a disturbance.

25     THE COURT: Mr. Capogrosso --

Pages Omitted