UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO CAPOGROSSO,

        *Plaintiff*,

  v.

ALAN GELBSTEIN, *et al.*,

        *Defendants*.

1:18-cv-2710 (EK) (LB)

**ECF Case
Electronically Filed**

# MEMORANDUM OF LAW OF DEFENDANT DAVID SMART IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: 212-450-4000

*Attorneys for Defendant David Smart*

DATE OF SERVICE: MAY 17, 2021

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

    A.    Mr. Smart's Professional Background............................................................ 2

    B.    Plaintiff's History at the TVBs ........................................................................ 2

    C.    Plaintiff's History with Mr. Smart and Complaint against Dave Sparks and Defendant Gelbstein........................................................................ 3

    D.    May 2015 Incidents........................................................................................ 3

    E.    Procedural History ......................................................................................... 4

LEGAL STANDARD........................................................................................................................5

ARGUMENT ....................................................................................................................................6

    I.    Mr. Smart Is Entitled to Summary Judgment Because He Is Not a State Actor. .................................................................................................................. 6

        A.    Mr. Smart Was a Private Security Guard Whose Actions Were Not Fairly Attributable to the State......................................................................... 7

        B.    Mr. Smart was Not Transformed into a State Actor By Working for a Private Security Guard Company in a Public Building ................................. 9

    II.    Mr. Smart's Actions Did Not Violate Plaintiff's First Amendment Rights ......... 11

        A.    Mr. Smart's Actions Did Not Chill Plaintiff's Speech ................................. 11

        B.    None of Mr. Smart's Actions Were Motivated by Plaintiff's Exercise of his First Amendment Rights. ...................................................................... 12

    III.    Plaintiff's Due Process Claims Are Unsupported and Insufficiently Pled ........... 13

CONCLUSION................................................................................................................................14

## TABLE OF AUTHORITIES

C<small>ASES</small>

P<small>AGE(S)</small>

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999) .................................................................................................... 6

*Applegate v. Top Assocs., Inc.*,
  425 F.2d 92 (2d Cir. 1970) ................................................................................ 11, 13

*Atkinson v. B.C.C. Assocs., Inc.*,
  829 F. Supp. 637 (S.D.N.Y. 1993) ............................................................................ 9

*Bishop v. Toys "R" Us-NY LLC*,
  414 F. Supp. 2d 385 (S.D.N.Y. 2006) ....................................................................... 7

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) .................................................................................................. 6

*Butler v. Potter*,
  No. 06-CV-3828 (JFB), 2009 WL 804722 (E.D.N.Y. Mar. 26, 2009) ..................... 13

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016) ........................................................................................ 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................. 5

*Ciambriello v. County of Nassau*,
  292 F.3d 307 (2d Cir. 2002) ...................................................................................... 6

*Coleman v. City of New York*,
  No. 18-CV-11819 (RA), 2020 WL 905709 (S.D.N.Y. Feb. 25, 2020) .................. 7, 8

*Curley v. Vill. of Suffern*,
  268 F.3d 65 (2d Cir. 2001) ................................................................................ 12, 13

*Dennis v. Sparks*,
  449 U.S. 24 (1980) .................................................................................................... 6

*Doe v. Rosenberg*,
  996 F. Supp. 343 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999) ................ 9, 10

*Estiverne v. Esernio-Jenssen*,
 910 F. Supp. 2d 434 (E.D.N.Y. 2012) ....................................................................... 7

*Filarsky v. Delia*,
 566 U.S. 377 (2012) .................................................................................................. 6

*Fletcher v. Wal-Mart Stores, Inc.*,
 No. 05 Civ. 1859(WHP), 2006 WL 2521187 (S.D.N.Y. Aug. 28, 2006) ..................... 7

*Forbes v. City of New York*,
 No. 05 Civ. 7331(NRB), 2008 WL 3539936 (S.D.N.Y. Aug. 12, 2008) ................... 10

*Gill v. Pidlypchak*,
 389 F.3d 379 (2d Cir. 2004) .................................................................................... 11

*Grogan v. Blooming Grove Volunteer Ambulance Corps*,
 768 F.3d 259 (2d Cir. 2014) ................................................................................ 9, 10

*Guiducci v. Kohl's Dep't Stores*,
 320 F. Supp. 2d 35 (E.D.N.Y. 2004) ................................................................. 6, 7, 8

*Hobbs v. Dep't of Transp.*,
 20-CV-512 (CM), 2020 WL 1140794 (S.D.N.Y. Mar. 6, 2020) ................................. 7

*Kach v. Hose*,
 589 F.3d 626 (3d Cir. 2009) ..................................................................................... 9

*Lugar v. Edmondson Oil Co.*,
 457 U.S. 922 (1982) .................................................................................................. 6

*Maco v. Baldwin Union Free School Dist.*,
 249 F. Supp. 3d 674 (E.D.N.Y. 2017) ..................................................................... 11

*Manhattan Cmty. Access Corp. v. Halleck*,
 139 S. Ct. 1921 (2019) .............................................................................................. 6

*Orellana v. Macy's Retail Holdings, Inc.*,
 No. 17 Civ. 5192 (NRB), 2018 WL 3368716 (S.D.N.Y. July 1, 2018) ....................... 7

*Powell v. Nat'l Bd. of Med. Exam'rs*,
 364 F.3d 79 (2d Cir. 2004) ........................................................................................ 5

*Prowisor v. Bon-Ton, Inc.*,
 232 Fed. App'x 26 (2d Cir. 2007) ..................................................................... 7, 8, 9

*Rabieh v. Paragon Sys., Inc.*,
   316 F. Supp. 3d 1103 (N.D. Cal. 2018) ........................................................................ 9

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982) ....................................................................................................... 9

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) .......................................................................................... 7

*Tancredi v. Metro. Life Ins. Co.*,
   316 F.3d 308 (2d Cir. 2003) .......................................................................................... 6

*Wade v. Byles*,
   83 F.3d 902 (7th Cir. 1996) ................................................................................ 9, 10, 11

*West v. Atkins*,
   487 U.S. 42 (1988) ..................................................................................................... 6, 7

## STATUTES & RULES

42 U.S.C. § 1983 ................................................................................... 1, 4, 6, 7, 9, 11
42 U.S.C. § 1985 ........................................................................................................... 4
42 U.S.C. § 1986 ........................................................................................................... 4
42 U.S.C. § 1988 ........................................................................................................... 4
Fed. R. Civ. P. 56 ......................................................................................................... 1
Fed. R. Civ. P. 56(a) .................................................................................................... 5
Fed. R. Civ. P. 56(e) .................................................................................................... 5

Defendant David Smart ("Mr. Smart") respectfully submits this Memorandum of Law in support of his Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 dismissing the Complaint filed by Plaintiff Mario Capogrosso ("Plaintiff") because there is no dispute of material fact and Mr. Smart is not a state actor under 42 U.S.C. § 1983.

## PRELIMINARY STATEMENT

Mr. Smart, a former private security guard, was improperly brought into this litigation in 2018. Plaintiff has ignored the facts and circumstances of this case in an attempt to transform his apparent personal animosity toward Mr. Smart into an actionable claim under 42 U.S.C. § 1983. Because there is no genuine dispute as to any material fact and no evidence to support Plaintiff's claims against Mr. Smart, this case should be dismissed.

The root of Plaintiff's complaint is his ban in May 2015 by the New York State Department of Motor Vehicles from practicing law at Traffic Violations Bureaus. Plaintiff alleges that ban violates his Constitutional rights. But Plaintiff can point to no evidence that Mr. Smart had any authority, or contributed to the decision, to ban Plaintiff. Nor is there any evidence that Mr. Smart was acting under the control of or at the behest of the state when he and Plaintiff interacted on May 11, 2015. Instead, the evidence unequivocally demonstrates that Mr. Smart was, at all times, a private employee of a security firm who did not act under color of state law as would be required to state a § 1983 claim.

In addition, even if Mr. Smart were a state actor (which he is not), the undisputed facts show that Mr. Smart's actions and interactions with Plaintiff did not deprive Plaintiff of any rights, privileges, or immunities secured by the Constitution or laws of the United States. Mr. Smart's motion for summary judgment should be granted.

1

## FACTUAL BACKGROUND

### A.  Mr. Smart's Professional Background

At all times relevant to this action, Mr. Smart was employed by a private security firm, PEC Group of NY, Inc., ("PEC"), and was assigned to work as a security guard by PEC at the Brooklyn South Traffic Violations Bureau ("TVB") of the New York State Department of Motor Vehicles ("DMV"). (Dkt. 1 ("Compl.") ¶¶ 7, 27, 28; Douglas Decl. Ex. 3 at 5:13–6:4.)[1] In the course of this work, Mr. Smart performed certain ministerial functions, such as opening and closing doors. (Ex. 4 at 12:20-13:24.) He also saw and at times spoke with Plaintiff, who practiced law at various TVBs since 2005. (Compl. ¶¶ 3, 8; Ex. 1 at 354:15–355:8.)

### B.  Plaintiff's History at the TVBs

During the years that Plaintiff practiced law at the TVBs, the DMV received numerous complaints regarding his behavior, including documented incidents of threats and violent conduct. (*See, e.g.*, Ex. 2 at P-80–141; Ex. 1 at 234:14–236:3 (acknowledging the existence of clerical staff complaints against himself); Ex. 4 at 20:12-18.) Plaintiff was suspended from practicing law at the TVBs in December 2011 as a result of complaints of misconduct. (Compl. ¶ 5; Ex. 2 at P-223–24.)

According to Plaintiff, he and the DMV reached a "settlement agreement" on June 20, 2012, which required Plaintiff to take and complete an anger management course before practicing law in any DMV TVB. (Ex. 2 at P-41.) The DMV reinstated Plaintiff in June 2012 and advised him that he must "strictly adhere to the standards of conduct" and that "verbal threats of physical violence, and verbal abuse including the use of ethnic slurs will not be tolerated." (Ex. 2 at P-31.) The DMV continued to receive complaints of misconduct by

---

[1] All references to exhibits in this memorandum of law refer to exhibits attached to the Attorney Declaration of Maura Douglas.

2

Plaintiff after his reinstatement, including complaints about several incidents in 2015. (*See, e.g.*, Ex. 2 at P-103–39.)

    **C.    Plaintiff's History with Mr. Smart and Complaint against Dave Sparks and Judge Gelbstein**

After Plaintiff returned to practicing law at the TVBs in June 2012, he and Mr. Smart filed complaints against each other with the DMV. (Ex. 1 at 346:3–22 (testifying that "June of 2012" was the first time he and Mr. Smart had an incident or confrontation); *see also id.* at 344:5–346:2 (listing encounters with Mr. Smart); *id.* at 352:22–353:20 (acknowledging Mr. Smart complained about Plaintiff); Ex. 2 at P-107 (note from Mr. Smart alleging Plaintiff deliberately walked into him).)

On March 20, 2015, Plaintiff sent a letter to Elizabeth Prickett-Morgan complaining about a "Dave Sparks" and Judge Alan Gelbstein. (Ex. 2 at P-41–42.)[2] In this letter, Plaintiff claims that Mr. Sparks "approached" him on numerous occasions and "stared and glared" at him. (Ex. 2 at P-41–42.)

    **D.    May 2015 Incidents**

On May 5, 2015, Plaintiff got into an argument with another attorney practicing at the TVBs, Sadiq Tahir, in the lawyers' room at the Brooklyn South TVB, causing a disruption to motorists and staff. (Ex. 2 at P-116–25.) An incident report was filed with the New York State Division of Labor Relations (*id.* at P-124–25), and witnesses reported Plaintiff yelling "obscenities and threats" and that DMV "customers were upset" (*id.* at P-117–20).

On May 11, 2015, Plaintiff and Mr. Smart were involved in an argument. (*See* Ex. 2 at P-127–36.) Several witnesses submitted written statements reporting that Plaintiff "yelled at and

---

[2] At his deposition, Plaintiff testified that he intended to refer to Mr. Smart in this letter and that Plaintiff "didn't know his last name" at that time. (Ex. 1 at 428:19–25.)

3

pushed" Mr. Smart so that Mr. Smart was "knocked back into a pole." (*Id.* at P-130–32.) According to these witnesses, the "attack seemed unsolicited." (*Id.* at P-130.)

Mr. Smart left the scene to speak with police officers. (Ex. 2 at P-127–28; Ex. 3 at 7:4–8:19.) Meanwhile, Clerk Supervisor Danielle Calvo learned "that there was an incident between [Plaintiff] and Smart." (Ex. 1 at 80:3–16.) Ms. Ida Traschen[3] told Ms. Calvo to have Plaintiff removed, and Ms. Calvo then asked Plaintiff to leave in the presence of police. (*Id.*; *see also* Ex. 4 at 3:22–4:7.) When Mr. Smart returned, Plaintiff was no longer on the premises. (Ex. 3 at 7:4–8:19.) Thereafter, Mr. Smart left the Brooklyn South TVB with the police to file a police report regarding the incident. (*Id.*)

Following these incidents, the DMV barred Plaintiff from representing individuals at any TVB. (*See* Ex. 2 at P-71–72; Compl. ¶¶ 11, 15.) Mr. Smart played no role in this decision—a fact that Plaintiff does not, and cannot, dispute on this record. (*See, e.g.*, Ex. 3 at 7:4–9:4; Ex 4 at 3:22–5:23.) On June 20, 2016, Plaintiff wrote separately to Elizabeth Prickett-Morgan and Ms. Traschen alleging that he had been "improperly excluded from practicing law at the [DMV] Traffic Violations Tribunals in their entirety and specifically from the Brooklyn South TVB as of May 11, 2015." (Ex. 2 at P-43, P-45.) Plaintiff stated in each letter that he believed he was excluded by three individuals: Judge Gelbstein, Judge Bushra Vahdat, and Ms. Traschen. (*Id.*) Plaintiff did not name Mr. Smart in either of these letters.

E.  **Procedural History**

On May 8, 2018, Plaintiff filed this action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, alleging that Mr. Smart, as well as various state judges, DMV supervisors, attorneys, and others (the "State Defendants"), violated his First Amendment and Due Process rights by

---

[3] Ms. Traschen is an attorney for the DMV (Compl. ¶ 21), and Ms. Calvo's supervisor (Ex 4 at 4:5–7).

4

unlawfully conspiring to ban his entry to the Brooklyn South TVB. (Compl. ¶¶ 70–85.) Plaintiff alleges that Mr. Smart's actions violated his First Amendment rights because the actions of Mr. Smart and other defendants "in arbitrarily barring Plaintiff from practicing his profession in all of the TVB Court . . . were motivated or substantially caused by Plaintiff's exercise of his First Amendment rights." (Compl. ¶ 74.) In addition, Plaintiff included Mr. Smart in the header of the second cause of action, a purported due process claim. (Compl. ¶¶ 76–85.)[4] Mr. Smart, proceeding *pro se*, filed his answer on May 30, 2018. (Dkt. 6.)

Discovery was closed on March 18, 2021 as to Mr. Smart (Dkt. 164), and Mr. Smart obtained limited-scope pro bono representation on March 26, 2021 (Dkt. 167, 168).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the movant has met this initial burden and asserted facts to demonstrate that the nonmovant cannot sustain his claim, the non-movant must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Fed. R. Civ. P. 56(e). To raise a triable issue of fact, the nonmovant must demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial. *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (citation omitted).

---

[4] Although Plaintiff included Mr. Smart in the caption for his due process allegations, he did not identify which, if any, of Mr. Smart's actions constituted a violation of Plaintiff's due process rights. (*See* Compl. ¶¶ 76–85.)

# ARGUMENT

## I. Mr. Smart Is Entitled to Summary Judgment Because He Is Not a State Actor.

Plaintiff's claims against Mr. Smart cannot survive because Mr. Smart was not a state actor. Section 1983 requires a plaintiff to show: (1) "a right secured by the Constitution and laws of the United States" was violated, and (2) that the right was violated "by a person acting under color of state law"—in other words, a "state actor." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). State action "requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

A private individual cannot be considered a state actor, unless his conduct is "fairly attributable to the State." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). Private action is fairly attributable to the state only when private actors "conspire or are jointly engaged with state actors to deprive a person of constitutional rights, where the state compels the act or controls the private actor, or when the state delegates a public function to a private entity." *Hobbs v. Dep't of Transp.*, 20-CV-512 (CM), 2020 WL 1140794, at *3 (S.D.N.Y. Mar. 6, 2020) (citing *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *West*, 487 U.S. at 55–56; *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928–29 (2019)). "A merely conclusory allegation that a private entity acted in concert with a state actor"—such as is asserted here—"does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

### A. Mr. Smart Was a Private Security Guard Whose Actions Were Not Fairly Attributable to the State

"Generally, private security guards are not state actors under § 1983." *Hobbs*, 2020 WL 1140794, at *4 (citing *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385 (S.D.N.Y. 2006); *Guiducci v. Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 37–38 (E.D.N.Y. 2004)). The actions of a private security guard constitute state action in only two limited circumstances, neither of which exists here: (1) where the guards are "given the authority of state law," or (2) where the guards "are willful participants in the joint activity of the State or its agents." *Coleman v. City of New York*, No. 18-CV-11819 (RA), 2020 WL 905709, at *4 (S.D.N.Y. Feb. 25, 2020) (quoting *Guiducci*, 320 F. Supp. 2d at 37).

"A mere general understanding that security guards can call the police for assistance is insufficient to establish state action." *Fletcher v. Wal-Mart Stores, Inc.,* No. 05 Civ. 1859(WHP), 2006 WL 2521187, at *3 (S.D.N.Y. Aug. 28, 2006); *see also Prowisor v. Bon-Ton, Inc.*, 232 Fed. App'x 26, 28 (2d Cir. 2007) (private security guard did not act under color of state law where he merely told a police officer he had seen an individual shoplift). While a private security guard may be considered a state actor when he is acting with delegated state authority as, for instance, a "special patrolman," *Orellana v. Macy's Retail Holdings, Inc.*, 17 Civ. 5192 (NRB), 2018 WL 3368716, at *18 (S.D.N.Y. July 10, 2018) (citations omitted), "[m]ere cooperation with a state official . . . is insufficient to establish state action." *Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 442 (E.D.N.Y. 2012) (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

Mr. Smart's conduct does not meet any test for state action. Indeed, Mr. Smart spoke to police on May 11, 2015 because he **lacked the authority** to personally mitigate Plaintiff's actions. (*See* Ex. 3 at 7:4–8:10.) A security guard reporting activity to the police does not

7

establish a sufficient nexus between the actions of the guard and the state to constitute state action. *Prowisor*, 232 Fed. App'x at 27. Moreover, there is no evidence that Mr. Smart was given the "authority of state law." *Guiducci*, 320 F. Supp. 2d at 37. The State Defendants did not deputize Mr. Smart as a "special patrolman" to detain Plaintiff (and indeed, Mr. Smart did not detain Plaintiff); nor did they afford Mr. Smart "the authority of the state" to bar Plaintiff from the TVBs (and indeed, Mr. Smart did not bar Plaintiff from the premises either by word or act). *Id.* Plaintiff does not allege otherwise. Nor is there any evidence to even suggest that the State Defendants compelled or controlled Mr. Smart to approach Plaintiff on May 11, 2015. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("[T]he plaintiff can no longer rest on mere allegations" to survive summary judgment (quotation marks omitted)).[5] Further, in Plaintiff's own words, the police officers and TVB administrators—*not* Mr. Smart—forced Plaintiff to leave the premises of the Brooklyn South TVB. (*See* Compl. ¶ 11; Ex. 1 at 80:3–16.)

It is also undisputed that Mr. Smart did not participate in "joint activity" with the state in detaining and then barring Plaintiff from the TVBs. *Coleman*, 2020 WL 905709, at *4. To the contrary, Mr. Smart contacted the police in response to Plaintiff's actions—Mr. Smart sought state intervention ***precisely because he lacked any power to act***. If contacting the police turns private conduct into state action, anyone calling 911 would become a state actor—an absurd outcome that has no basis in the law. Finally, there is no evidence in the record, nor could there be, that Mr. Smart participated ***at all*** in the administrative decision to ban Plaintiff permanently from practicing at the TVBs, let alone participated in any joint activity with state officials.

---

[5] No one told Mr. Smart to approach Plaintiff the morning of May 11, 2015. (Ex 3 at 7:4–8:10; *see also* Ex 4 at 65:4–7 ("I never told [Mr. Smart] to approach [Plaintiff] for anything.").) The Complaint merely alleges that Mr. Smart approached Plaintiff to "provoke the Plaintiff into a physical confrontation," and that "Defendant Calvo [then] approached the Plaintiff with several New York City police officers and told the Plaintiff that he was no longer allowed at the [TVBs] and that Plaintiff was to leave the building immediately." (Compl. ¶ 11; *see also id.* ¶ 80.)

8

### B. Mr. Smart Was Not Transformed into a State Actor by Working for a Private Security Guard Company in a Public Building

Mr. Smart, a private employee, did not transform into a state actor under § 1983 simply because he was working in a state building and performing certain ministerial functions. Privately contracted individuals or entities, like security guards or firms, are not state actors simply "by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982); *see Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 266–67 (2d Cir. 2014) (private ambulance organization contracted by municipality was not a state actor). Rather, it is well settled in this Circuit that the "mere existence of a contract between a governmental agency and a private party is insufficient to create state action." *Atkinson v. B.C.C. Assocs., Inc.*, 829 F. Supp. 637, 646 (S.D.N.Y. 1993) (citation omitted)); *see Doe v. Rosenberg*, 996 F. Supp. 343 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999) (per curiam) (holding that having a contract with a state agency and being licensed by the state to serve as a psychiatric emergency care provider did not render private hospital defendants state actors); *cf. Kach v. Hose*, 589 F.3d 626, 648–49 (3d Cir. 2009) (private security guard at public school was not a state actor); *Wade v. Byles*, 83 F.3d 902, 905–06 (7th Cir. 1996) (private security guard in a city housing authority building was not a state actor); *Rabieh v. Paragon Sys. Inc.*, 316 F. Supp. 3d 1103, 1109–11 (N.D. Cal. 2018) (private security guards at federal court house who tackled and handcuffed plaintiff were not state actors).

The Seventh Circuit's decision in *Wade* is instructive. There, the Court rejected the plaintiff's argument that a private security guard in a city housing authority ("CHA") building who shot the plaintiff was a state actor. 83 F.3d at 905–06. The guard was employed by a private security firm contracted by the CHA to provide security services for various CHA

properties. *Id.* at 903. Security guards were authorized to carry handguns, arrest people for criminal trespass pending arrival of the police, and use deadly force in self-defense. *Id.* at 906. Despite this delegated authority, the Court determined that the state had not "delegated its entire police power to a private police force." *Id.* at 905. The Court concluded: "Byles' function as a lobby security guard with the aforementioned limited powers is not traditionally the exclusive prerogative of the state. The fact that Byles performed his duties on public property, or for the public's benefit, does not make him a state actor." *Id.* at 906 (citation omitted); *see also Forbes v. City of New York*, No. 05 Civ. 7331(NRB), 2008 WL 3539936, at *7 (S.D.N.Y. Aug. 12, 2008) (finding the provision of "general security services" did not make private individuals "state actors" (citing *Wade*, 83 F.3d at 906)).

The fact that Mr. Smart's employer contracted with the DMV to perform certain functions does not render Mr. Smart a state actor. *Grogan*, 768 F.3d at 266–67; *Wade*, 83 F.3d at 906. First, there is no dispute that a private security firm employed Mr. Smart when he worked at the Brooklyn South TVB.[6] His responsibilities were limited to certain types of ministerial activities, such as opening and closing the building, and he "had to call into his office every morning and he submitted his time cards to" his private employer. (Ex 4 at 12:20–13:24.)

Second, the DMV did not delegate all police power to Mr. Smart's employer when contracting for general security services at the Brooklyn South TVB. To the contrary, seemingly the only "authority" that Mr. Smart was afforded was opening and closing various rooms at the TVB while he continued to be employed by a private security firm. (*See* Ex. 4 at 12:20–13:24.) As in *Wade*, these limited powers "do[] not make him a state actor." 83 F.3d at 906.

---

[6] Plaintiff acknowledged in his Complaint and in his letter opposing Mr. Smart's request for a pre-motion conference that Mr. Smart was employed by a private company. (*See* Compl. ¶ 28; Dkt. 174 at 3; *accord* Ex 4 at 12:25–13:3 (commenting that Mr. Smart "worked for an outside company").)

10

Simply put, the undisputed materials facts are that Mr. Smart, a privately employed security guard, had no authority to remove or ban Plaintiff from the Brooklyn South TVB—and in fact, did not remove or ban Plaintiff from the Brooklyn South TVB. As a result, Plaintiff cannot sustain a § 1983 action against him, and summary judgment should be granted for Mr. Smart.

## II.     Mr. Smart's Actions Did Not Violate Plaintiff's First Amendment Rights

Even if Mr. Smart acted under color of state law (which he did not), Plaintiff cannot defeat Mr. Smart's motion for summary judgment on Plaintiff's First Amendment retaliation claims. A plaintiff seeking to prevail on a First Amendment retaliation claim must show that: (1) his conduct was protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's actions chilled the plaintiff's free speech or caused the plaintiff some other concrete harm. *Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004); *Maco v. Baldwin Union Free School Dist.*, 249 F. Supp. 3d 674, 678–79, (E.D.N.Y. 2017).

Plaintiff's "conclusory allegations" and "unsupportable claims" are insufficient to make these required showings. *Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 96 (2d Cir. 1970) ("Summary judgment, we have often remarked, is a valuable tool for piercing conclusory allegations and disposing of unsupportable claims prior to trial."). Thus, Mr. Smart's motion for summary judgment should be granted.

### A.     Mr. Smart's Actions Did Not Chill Plaintiff's Speech

Where a private plaintiff brings a claim involving "criticism of public officials by private citizens," the plaintiff must demonstrate that the defendant's actions effectively chilled the exercise of his First Amendment right. *Gill*, 389 F.3d at 381. Based on the summary judgment

11

evidence, Plaintiff cannot demonstrate that Mr. Smart's actions chilled his First Amendment rights.

First and foremost, there is nothing in the record to support that Mr. Smart engaged in *any* retaliatory action adverse to Plaintiff, let alone any action that caused a chilling of Plaintiff's speech. According to Plaintiff, Mr. Smart "conspired with Defendants Gelbstein and Calvo . . . for the purpose of getting the Plaintiff permanently barred from TVB" because "Plaintiff published a written complaint of and concerning [Mr. Smart's] conduct at the TVB regarding his aggressive behavior toward the Plaintiff." (Compl. ¶ 62.) Discovery leaves these allegations completely bare. As previously discussed, witness reports from the May 11, 2015 incident state that Plaintiff physically accosted Mr. Smart, after which police officers led Plaintiff out of the Brooklyn South TVB at the direction of Clerk Supervisor Calvo. (Ex. 2 at P-126–34; *see also* Ex 4 at 3:22–4:7.) There is no suggestion that Mr. Smart in any way discussed this ban with the State Defendants, let alone engaged in a "conspiracy" to enact it.[7]

### B. None of Mr. Smart's Actions Was Motivated by Plaintiff's Exercise of his First Amendment Rights

There is also no evidence to suggest that Mr. Smart's actions were motivated or substantially caused by Plaintiff's exercise of his First Amendment rights. "Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

---

[7] Plaintiff concedes as much. Indeed, in his Response to the State Defendants' Interrogatory Number 5, which asked to identify the basis for Plaintiff's contention "that each remaining defendant was personally involved in the decision to bar [Plaintiff] from practice before the TVB," Plaintiff does not even mention Mr. Smart—a tacit admission that Mr. Smart's actions played no role in any chilling of his speech. (Ex. 2 at 6–7 (Response to Interrogatory Number 5).) Further, in his June 20, 2016 letters to Ms. Prickett-Morgan and Ms. Traschen alleging that he had been "improperly excluded" from practicing law at the TVBs, Plaintiff did not identify Mr. Smart on the lists of individuals he believes excluded him. (*Id.* at P-43, P-45.)

12

There is no such "specific proof" to support Plaintiff's allegation that Mr. Smart's actions were motivated by Plaintiff's letter to Ms. Prickett-Morgan complaining of a Mr. "Sparks." (*See* Compl. ¶ 62.) Indeed, Plaintiff does not allege, nor is there evidence to suggest, that Mr. Smart was even *aware* of the letter. (*See* Compl. ¶ 9.) Not only this, but the letter complained only of the conduct of a Mr. "Sparks," (*see* Ex. 2, at P-150–51), and nothing in the record shows that Plaintiff told any defendant prior to litigation that he meant to refer to Mr. Smart (*see* Ex. 1 at 428:19–429:16). Simply put, absent knowledge of the complaint, it was functionally impossible for Mr. Smart to harbor the requisite "retaliatory" motive to sustain Plaintiff's claim.[8]

Here, Plaintiff "offers nothing more than conclusory allegations in his complaint and in his deposition, with no basis in fact, that he was retaliated against and, thus, there is no evidence from which to create a genuine issue of material fact for trial. *Butler v. Potter*, No. 06-CV-3828 (JFB), 2009 WL 804722, at *12 (E.D.N.Y. Mar. 26, 2009).

### III. Plaintiff's Due Process Claims Are Unsupported and Insufficiently Pled

To the extent Plaintiff brings claims against Mr. Smart for violations of Plaintiff's due process rights, such claims also fail. Mr. Smart is named in the header of the second cause of action, a due process claim. (*See* Compl. ¶¶ 76–85.) But Plaintiff fails to identify in any document the specific bases for due process claims against Mr. Smart. Without any evidence, or even any allegations, to support this claim, Mr. Smart is entitled to summary judgment as to any due process claim. *See Applegate*, 425 F.2d at 96 (remarking that summary judgment is an appropriate means of disposing of unsupported allegations).

---

[8] Moreover, even if there had been evidence that Mr. Smart knew of the letter (which there is not) there is still no "specific proof" that his conduct on May 11, 2015 was born from retaliatory motives aside from Plaintiff's spurious allegations, rendering appropriate summary judgment in favor of Mr. Smart. *See Curley*, 268 F.3d at 73.

13

## CONCLUSION

For the foregoing reasons, Mr. Smart's motion for summary judgment should be granted.

Dated: New York, New York
May 17, 2021

By: /s/ Maura Douglas

Maura Douglas
Brianne Holland-Stergar
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY  10017
Phone: (212) 450-4000
Fax: (212) 701-5800
maura.douglas@davispolk.com

*Attorneys for Defendant David Smart*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2021, I caused a true and correct copy of this memorandum of law and all accompanying motion papers to be served on the following persons:

Mario Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804
(*via FedEx overnight mail*)

James Thompson
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
james.thompson@ag.ny.gov
(*via email*)

Sadiq Tahir
2994 Coney Island Avenue
Brooklyn, NY 11235
(*via FedEx overnight mail*)

Dated: New York, New York
      May 17, 2021

Maura Douglas
Brianne Holland-Stergar
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Phone: (212) 450-4000
Fax: (212) 701-5800
maura.douglas@davispolk.com

*Counsel for Defendant David Smart*