UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARIO CAPOGROSSO,

        *Plaintiff*,

   v.

ALAN GELBSTEIN, *et al.*,

        *Defendants*.

---

1:18-cv-2710 (EK) (LB)

**ECF Case**
**Electronically Filed**

# STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, Defendant David Smart ("Mr. Smart") by and through his attorneys, Davis Polk & Wardwell LLP, respectfully submits this statement of undisputed material facts in support of his Motion for Summary Judgment against Plaintiff Mario Capogrosso ("Plaintiff").

1. Plaintiff is an attorney barred in New York and Connecticut. (Dkt. 1 ("Compl.") ¶¶ 2, 18.)

2. Mr. Smart is a former security guard who worked for multiple private security companies. (Compl. ¶ 28; Douglas Decl. Ex. 3 at 5:18–6:4.)[1]

3. Alan Gelbstein is an administrative law judge at the Brooklyn South Traffic Violations Bureau ("TVB") of the Department of Motor Vehicles ("DMV"). (Compl. ¶ 9.)

4. Danielle Calvo is a clerk supervisor at the Brooklyn South TVB of the DMV. (Compl. ¶ 10.)

5. Ida Traschen is an attorney at the DMV and Ms. Calvo's supervisor. (Compl. ¶ 21; Ex. 4 at 4:4–7.)

---

[1] All references to exhibits in this Rule 56.1 Statement refer to exhibits attached to the Attorney Declaration of Maura Douglas.

6. Mr. Smart was employed by a private security firm, PEC Group of NY, Inc. ("PEC Group"), which had a contract with the DMV at all times relevant to this action. (Compl. ¶ 28; Ex. 3 at 5:13–6:4.)

7. During the time he was contracted to work at the Brooklyn South TVB, Mr. Smart performed ministerial functions, such as opening and closing the building, and he called into PEC Group each morning and submitted his time cards to PEC Group. (Ex. 4 at 12:20–13:24.)

8. Plaintiff began working at various TVBs as a solo practitioner in June 2005. (Compl. ¶ 3; *see also* Ex. 1 at 17:11–18:18.)

9. Mr. Smart saw and sometimes spoke to Plaintiff in the course of his work as a privately employed security guard at the Brooklyn South TVB. (Compl. ¶ 8; *see also, e.g.*, Ex. 1 at 344:5–345:2.)

10. Plaintiff was suspended from practicing law at the TVBs in December 2011 after the DMV received multiple complaints against Plaintiff. (Compl. ¶ 5; Ex. 2 at P-223–24.)

11. The DMV and Plaintiff reached a "settlement agreement" on June 20, 2012, which required Plaintiff to take and complete an anger management course before practicing law in any DMV courts. (Ex. 2 at P-41.)

12. The DMV reinstated Plaintiff in June 2012 and advised him through his counsel that he must "strictly adhere to the standards of conduct required by attorneys appearing before State courts" and that "verbal threats of physical violence, and verbal abuse including the use of ethnic slurs will not be tolerated. The DMV reserve[d] all rights to respond to future misconduct including, if warranted, by immediately and permanently

2

barring Mr. Capogrosso from appearing on behalf of DMV licensees at TVB offices." (Ex. 2 at P-31.)

13. The DMV continued to receive complaints of misconduct by Plaintiff after his reinstatement, including complaints about several incidents in 2015. (Ex. 2 at P-103–39.)

14. Plaintiff and Mr. Smart each filed DMV complaints against each other with the DMV. (*See* Ex. 1 at 346:3–22 (testifying that "June of 2012" was the first time he and Mr. Smart had an incident or confrontation); *see also id.* at 344:5–346:2 (listing encounters with Mr. Smart); *id.* at 352:22–353:20 (acknowledging Mr. Smart complained about Plaintiff); Ex. 2 at P-107 (note from Mr. Smart alleging Plaintiff deliberately walked into him).)

15. On March 20, 2015, Plaintiff sent a letter to Attorney Elizabeth Prickett-Morgan, in the New York State Office of the Attorney General, complaining about the actions of a "Dave Sparks" and Judge Gelbstein. (Ex. 2 at P-41–42.) There is no evidence that Mr. Smart knew of this letter.

16. On May 5, 2015, Plaintiff was involved in an argument with another attorney in the lawyers' room at the Brooklyn South TVB. (Ex. 2 at P-116–25.)

17. On May 11, 2015, Plaintiff and Mr. Smart were involved in an argument, and Plaintiff pushed Mr. Smart into a pole. (Ex. 2 at P-127–36.)

18. No one told Mr. Smart to approach Plaintiff on May 11, 2015. (Ex. 3 at 8:20–9:4; Ex. 4 at 65:4–7.)

19. Someone reported the incident to Clerk Supervisor Calvo. (Ex. 4 at 5:15–21; Ex. 2 at P-127–28.)

20. The police were called and came to the scene. (Ex. 2 at P-127–28.)

3

21. Mr. Smart left the TVB with the police to make a report about the incident. (Ex. 2 at P-127–28; Ex. 3 at 7:4–8:19.)

22. Clerk Supervisor Calvo asked Plaintiff to leave the Brooklyn South TVB in the presence of police officers, after Attorney Traschen asked her to do so. (Ex. 2 at P-127–128; Ex. 1 at 80:3–16; Ex. 4 at 3:22–4:7.)

23. When Mr. Smart came back with other police officers, Plaintiff was no longer on the premises. Mr. Smart thereafter filled out a form to report the incident to the police. (Ex. 3 at 7:4–8:19.)

24. Plaintiff was barred from practicing in TVBs after the May 11, 2015 incident at the Brooklyn South TVB. (*See* Ex. 2 at P-71–72; Compl. ¶¶ 11, 15.)

25. On June 20, 2016, Plaintiff wrote letters to Attorney Prickett-Morgan and Attorney Traschen, claiming that he had been "improperly excluded from practicing law at the [DMV] Traffic Violations Tribunals in their entirety and specifically from the Brooklyn South TVB as of May 11, 2015." (Ex. 2 at P-43, P-45.)

26. The letters list the individuals that Plaintiff alleged were responsible for his ban, including Judge Gelbstein, Judge Bushra Vahdat, and Attorney Traschen. The letters do not list or mention Mr. Smart. (Ex. 2 at P-43, P-45.)

Dated:  New York, New York
        May 17, 2021

Respectfully submitted,

_____
Maura Douglas
Brianne Holland-Stergar
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY  10017
Phone: (212) 450-4000
Fax: (212) 701-5800
maura.douglas@davispolk.com

*Counsel for Defendant David Smart*