SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

In the Matter of an Article 78 Proceeding

MARIO CAPOGROSSO,

                          Petitioner,

          -against-

NEW YORK STATE DEPARTMENT OF MOTOR
VEHICLES,

                          Respondent.

Index No. 7738/12

Hon. Bernadette Bayne
Part 18

**ALJ AFFIRMATION**

      ALAN D. GELBSTEIN, hereby affirms, pursuant to CPLR 2106(e), as follows:

      1.     I am the Senior Administrative Law Judge ("ALJ") at the Brooklyn South Traffic Violations Bureau ("TVB") of the New York State Department of Motor Vehicles (the "DMV"). As Senior ALJ, my responsibilities include managing the Brooklyn South TVB office, supervising the Administrative Law Judges and ensuring proper communication with other offices and bureaus of the DMV, as well as with the police and the local chapter of the New York State Bar Association. I submit this affirmation in opposition to the motion by petitioner Mario Capogrosso, brought by order to show cause signed by this Court (Sherman, J.) on April 12, 2012, seeking a preliminary injunction enjoining the DMV from enforcing its prohibition of petitioner from appearing at any TVB office, and in support of the DMV's cross-motion to dismiss the petition as nonjusticiable. This affirmation is based on personal knowledge and conversations with DMV employees, DMV licensees, attorneys appearing in the Brooklyn South TVB and petitioner, as well as my review of the legal files and records maintained by the DMV.

      2.     On numerous occasions, I have personally warned petitioner that his threatening behavior is unacceptable. Despite repeated warnings, petitioner's conduct has not improved.

      3.     As demonstrated below, in light of petitioner's pattern of disruptive and

P-145

**EXHIBIT**
Exhibit 15

threatening conduct including an incident on December 21, 2011, and given the DMV's jurisdiction and duty to ensure a safe workplace and to prevent interference with the ordinary use of and business at the TVB offices, the DMV's decision prohibiting petitioner from appearing at TVB offices is both rational and nonjusticiable.

## Background

4. Petitioner has been appearing at the Brooklyn South TVB office on an almost daily basis for the last several years. Petitioner was involved in a heated dispute with another attorney that nearly turned into a physical altercation the very first day he appeared at the TVB.

5. Over the course of the time that petitioner has appeared at the Brooklyn South TVB, I have received numerous complaints regarding his behavior. Copies of written complaints made against petitioner including descriptions of the incidents that occurred on December 21, 2011 are annexed to the affirmation of Ida L. Traschen dated April 11, 2012 ("Traschen Aff."), submitted in opposition to petitioner's application for temporary restraining order, as Exhibit B, and are incorporated by reference herein.

6. I have personally observed petitioner harass TVB employees, attorneys appearing at the TVB and even his own clients. Petitioner often uses anti-Semitic language when referring or speaking to Jewish attorneys. Petitioner has called me a "beanie wearing kike."

7. On numerous occasions, I have warned petitioner to exercise a calmer demeanor when interacting with TVB employees, other attorneys and his own clients. However, despite repeated warnings, petitioner's threatening, volatile conduct has not improved.

8. At one point, I notified the DMV's Division of Field Investigation of petitioner's pattern of threatening behavior.

9. Petitioner has a habit of punching the walls and steel beams at the TVB. He often

P-146

states that this habit is a result of his being a boxer and having a boxer's attitude. Petitioner also frequently tells people at the TVB office that he practices a lethal form of martial arts, which allows him to punch walls and metal objects without hurting himself.

### The Warning Given to Petitioner in January 2011

10. In January 2011, eighteen employees of the Brooklyn South TVB office sent a petition to Supervising ALJ Bushra Vahdat, who is responsible for supervising the Senior ALJs at each TVB office. The TVB employees' petition stated that petitioner's presence at the Brooklyn South TVB constitutes a threat to their physical safety. As a result, Supervising ALJ Vahdat made a visit to the Brooklyn South TVB to discuss this matter with me and to interview TVB employees.

11. Thereafter, Supervising ALJ Vahdat and I spoke to petitioner about his disruptive and threatening conduct, and warned him that if he could not conduct himself in a professional manner, he would not be allowed to appear on behalf of licensees at the TVB. During this conversation, petitioner admitted that he sometimes loses his temper, agreed to calm down, and told us that he would voluntarily stop appearing at the TVB if he had another altercation with anyone at the TVB.

### The Incident on December 21, 2011 and DMV's Prohibition of Petitioner from Appearing at TVB Offices

12. On December 21, 2011, petitioner was involved in a verbal altercation with an attorney at the Brooklyn South TVB, and later that same day, he threw a punch into the air in the presence of another attorney. In the Petition, petitioner admits to this conduct, see Petition ¶¶ 12, 14 and Ex. A.

13. Ms. Danielle Calvo, an employee of the Brooklyn South TVB, contacted Supervising ALJ Vahdat regarding those incidents. Upon Supervising ALJ Vahdat's direction,

P-147

Ms. Calvo advised petitioner that his remaining cases for that day were adjourned and that he must leave the building immediately.

14. On the next day, December 22, 2011, Supervising ALJ Vahdat and I interviewed four attorneys who were present at the Brooklyn South TVB office regarding the previous day's incidents. Those four attorneys also submitted written statements. See Traschen Aff. ¶ 5 and Ex. B.

15. Later that same day, on December 22, 2011, Supervising ALJ Vahdat and I met with petitioner in my office, in the presence of two police officers, to obtain his version of the incidents. Petitioner claimed that everyone at the Brooklyn South TVB hates him because he is not Jewish, and admitted that he had shouted anti-Semitic statements at Mr. Brody and punched "the air in front of Mr. Meyers' face" the day in question. During this conversation, I observed that petitioner lacked remorse about his conduct, and that his knuckles were severely bruised.

16. Supervising ALJ Vahdat and I then directed petitioner to leave the TVB, and notified him that he is prohibited from appearing before any TVB for an indeterminate period, based on the fact that despite repeated warnings, petitioner's presence at the TVB has constituted a continuing threat to the safety and well-being of other individuals present at the TVB.

17. DMV reserves the right to report petitioner to the New York Bar Association's Grievance Committee.

Dated: Brooklyn, New York
       May 3, 2012

ALAN D. GELBSTEIN
Senior Administrative Law Judge

4

P-148