UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARIO H. CAPOGROSSO,

                Plaintiff,

      -against-                              Case No. 18 Civ. 2710 (EK)(LB)

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, MARK J.F.       **DECLARATION OF IDA**
SCHROEDER, *in his official capacity as Commissioner*  **TRASCHEN**
*of the New York State Department of Motor Vehicles*,
SADIQ TAHIR, *in his individual capacity*, PEC GROUP
OF NY, INC., and DAVID SMART,

                Defendants.
------------------------------------------------------------------X

        IDA TRASCHEN hereby declares, pursuant to 28 U.S.C. § 1746, that:

        1.       I am an attorney licensed to practice law in New York State. In December of 2017 I retired from service as First Assistant Counsel to the New York State Department of Motor Vehicles.

        2.       I submit this declaration in support of the State Defendants' motion for summary judgment in this matter. The contents of this declaration are based on my own personal knowledge, my review of files kept by the DMV, my review of files produced in this litigation, and my review of files in my personal possession.

The TVB

        3.       The Traffic Violations Bureau is a network of offices where administrative law judges hear cases involving non-criminal traffic violations. Although the procedures are streamlined from what would take place in a federal court, cases are adjudicated in similar manner: the judge is impartial, the police officer, who acts as the prosecutor, has the burden of

proof, and the motorists have a right to be represented by a lawyer.

4. Attorneys appearing before the TVB are required by regulation to "conform to the standards of conduct required of attorneys appearing before State courts." 15 N.Y.C.R.R. 124.2(a). DMV holds attorneys to this standard in order to ensure that the TVB is a safe, fair, and trustworthy forum in which cases can be adjudicated. It was my duty and the duty of the TVB ALJs to enforce these requirements.

5. As First Assistant Counsel, I was responsible for overseeing the Traffic Violations Bureau ("TVB") on a statewide basis. My duties also included overseeing DMV's Counsel's Office, overseeing safety hearings statewide, managing litigation, and overseeing compliance with Freedom of Information Law requests. A copy of an email from the Commissioner at the time of my promotion setting forth an outline of some of my duties is attached as Exhibit 1.

6. During my tenure as First Assistant Counsel I oversaw the TVB system, including the Brooklyn South TVB location where the majority of events at issue in this case occurred. During the relevant time period, the Administrative Law Judges at the Brooklyn South TVB reported to Alan Gelbstein, the Senior Administrative Law Judge at that TVB location. Senior ALJ Gelbstein reported to Supervising Administrative Law Judge Bushra Vahdatlamas. Supervising ALJ Vahdatlamas oversaw all downstate TVB locations, and reported to me.

7. I was familiar with the Plaintiff well before 2015, due to the numerous complaints from attorneys, motorists and TVB staff about his conduct. I was also aware of his 2011 suspension from appearing before the TVB ("Suspension") and his Article 78 proceeding challenging his Suspension. I was the DMV attorney who managed the litigation of the Plaintiff's Article 78 proceeding, and as such I was aware of the major developments in the litigation.

8. After DMV settled the Plaintiff's state court proceeding in 2012, the Plaintiff was permitted to return to practice once he completed a course of anger management counseling. However, DMV warned him that any further aggressive or violent behavior would not be tolerated. The Plaintiff was advised that verbal threats or abuse could lead to a five-year bar from practice at the TVB ("TVB Practice Bar"), and physical violence could result in the immediate imposition of a permanent TVB Practice Bar. These warnings are reflected in a May 15, 2012 letter sent on behalf of DMV, which is attached as Exhibit 2. I reviewed and approved this letter prior to the Assistant Attorney General sending it on DMV's behalf.

9. Over the course of late 2014 and early 2015, we began receiving an accelerating number of complaints regarding the Plaintiff's conduct, indicating that the Plaintiff has not "learned his lesson" and was again exhibiting aggressive and disturbing behavior. During that time, we considered the appropriate course of action, knowing that if the Plaintiff further escalated his misbehavior, threatened violence or became violent, we would need to consider a permanent TVB Practice Bar.

10. In or around March of 2015, I recall learning that the Plaintiff had sent a letter to the Attorney General regarding his personality conflict with a security officer, and that the letter included criticism of ALJ Gelbstein's handling of the Plaintiff's complaints about that security officer. Plaintiff did not send a copy of the letter to me or to DMV's Counsel's Office. My recollection is that our office did not view the letter as particularly significant, as it was direct to the Attorney General, not DMV, and contained nothing more than a rehash of certain grievances that the Plaintiff had already communicated to ALJ Gelbstein and that DMV was already aware of.

11. On or around May 11, 2015, I received a telephone call from Danielle Calvo,

informing me that the Plaintiff had been in a physical confrontation with the security guard. I told Ms. Calvo to have the Plaintiff escorted out of the building.

12. I then contacted ALJ Gelbstein by phone to discuss the situation, and reviewed certain recent written complaints and statements about the Plaintiff's conduct that he sent me. Given the Plaintiff's history of hostile and unprofessional behavior, the fact that he had been suspended from practice once before, the increasing pattern of aggression over the previous few months, and the physically violent nature of the incident, we determined that the Plaintiff should be subjected to a permanent TVB Practice Bar.

13. The Plaintiff's letter to the Attorney General played no role in that decision. We decided to institute the TVB Practice Bar based on his own actions, including his violent actions earlier that day—not because of any letter he sent to the Office of the Attorney General. With the Plaintiff's history, we would have taken the same action in any event because he had become physically violent.

14. The Plaintiff called me by phone later that day, and I informed him of DMV's decision.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 14, 2021
Wynantskill, New York

_____
IDA TRASCHEN