McDonough & McDonough, LLP
*COUNSELORS AT LAW*

401 Franklin Avenue, Suite 210
Garden City, New York 11530

(516) 333-2006
FAX (516) 333-0200
NEWYORKETHICSLAWYER.COM

January 25, 2012

Barbara J. Fiala, Commissioner
Department of Motor Vehicles
6 Empire State Plaza
Albany, New York 12228

Re: Improper Expulsion of Mario Capogrosso, Esq.

Dear Ms. Fiala:

This office represents Mario Capogrosso, Esq. in connection with his unilateral expulsion from the Brooklyn South DMV Adjudication center, and suspension from all DMV Adjudication centers. The purpose of this submission is to request reconsideration of the decision of December 23, 2011, as that decision was arbitrary and capricious, violated his constitutional rights of due process and has severely impacted his professional and personal lives.

Mr. Capogrosso has been practicing in the New York State Department of Motor Vehicle adjudication centers since 1995. He has mainly practiced in the Brooklyn South location. He has practiced by zealously representing his clients and has never had any founded complaints or grievances regarding his work. He has had nothing but a stellar record and his practice has grown as his clients appreciate his hard work and routinely seek out his representation.

On December 22, 2011, Mr. Capogrosso was in the attorneys' room at the Brooklyn adjudication center. He put his coffee down to the side of a table and thereafter asked another attorney, who regularly practices at the same center, Yakov Brody, Esq., "Excuse me, can I get my coffee." Out of nowhere Mr. Brody started screaming and spewing ethnically based expletives at Mr. Capogrosso; which will not be repeated here. Mr. Brody was yelling at the top of his voice. Mr. Capogrosso backed away, but thereafter Mr. Brody again began screaming racially expletives at him without cause. Feeling attacked Mr. Capogrosso responded in kind. While Mr. Capogrosso realizes his outburst was uncalled for and unprofessional, and is extremely shameful that he stooped to the level of his attacker, his response was in retaliation to the out of the blue verbal attack by Mr. Brody, which started the whole situation.

One of the managers of the center, Danielle, heard the exchange (again, Mr. Brody was yelling at the top of his lungs) and came into the room. In front of Mr. Cappagroso She stated "now's our chance to get rid of him", referring to Mr. Capogrosso. After she and Mr. Brody had left the room, Jeffrey Myers, Esq. then entered the room and sat where Mr. Brody had been sitting. He told Mr. Capogrosso that he overheard the exchange and said that Mr. Capogrosso should have hit Mr. Brody. Mr. Capogrosso responded "This is what I would have done" and punched the air. He **never** punched anyone or touched anyone during this whole exchange.

DMV-0000226

**EXHIBIT**
Exhibit 13

Meanwhile, apparently Mr. Brody and Danielle had called both the police and Bushra Vahat, the supervising Administrative Law Judge, with regard to the situation. The police and Ms. Vahat obtained affidavits from everyone in the courtroom, even people who did not witness the exchange. They did **not** take a statement from Mr. Capogrosso or ask for his version of events.

The next day, December 23, 2010, Mr. Capogrosso arrived at the Brooklyn South center ready to work for the clients he was meeting there. When he arrived he encountered chaos. There were "police" in the courtroom taking affidavits from attorneys who were not even present the day before. Judge Gelpstein, the supervising Administrative Judge of the center, met Mr. Capogrosso in the courtroom and asked to see him in his office. When Mr. Capogrosso arrived in the office there were two "officers" in blue uniforms and Judge Vahat in the office. Mr. Capogrosso was told by Judge Gelpstein "You have to leave and if you come back here you are going to be arrested." Judge Vahat added "If you go into any Department of Motor Vehicle center you are going to be arrested." After Judge Vahat proclaimed this ad hoc expulsion, Mr. Capogrosso started to speak and ask what was going on. Judge Vahat told him that he wasn't wanted there and to get out. Mr. Capogrosso left the Brooklyn South adjudication center immediately thereafter.

Two weeks later Mr. Capogrosso contacted Judge Vahat and asked her to explain her determination. She advised that if Mr. Capogrosso was "good" and "stayed quiet" she would *reconsider* her determination three months later, and at that time determine *if* he can go back *into other* Department of Motor Vehicle adjudication centers, but he would **not** be allowed back into the Brooklyn South center. She further stated that he *might* eventually work his way back into the Brooklyn South center, but for an *indefinite* period of time he was prohibited from entering that center.

Mr. Capogrosso's livelihood is based in the Brooklyn South adjudication center. That is where his clients are, that is where the cases he handles are venued. He has approximately 496 clients currently, and someone has to appear on their matters. This illegal and improper prohibition is preventing Mr. Capogrosso from representing his clients and has deprived him of his livelihood. Since the date of this incident and determination, Mr. Capogrosso has been forced to hire other attorneys to handle his cases in the Brooklyn South center so that no defaults or other negative results occur.

To date, Mr. Capogrosso has not received anything in writing with respect to this determination. Moreover, as stated above, no hearing was ever conducted in connection with this matter nor was Mr. Capogrosso even heard with respect to the facts surrounding the incident that led to the determination to prohibit Mr. Capogrosso from the adjudication centers. Clearly, the determination of Judge Gelpstein and Judge Vahat was arbitrary and capricious and violated Mr. Capogrosso's constitutional due process rights.

This matter is akin to that in *Lindemann v. American Horse Shows Association*, 164 Misc.2d 937, 624 N.Y.S.2d 723 (Sup.Ct. N.Y.Cty. 1994). In *Lindemann* the defendant banned members from participation in equestrian sporting events, initiated after the members' indictment for alleged participation in a scheme to electrocute horses. The Court therein held "[u]nder New York law a fair hearing involving the possible suspension of a property right is 'an obligation imposed ... by those fundamental principles of basic justice and fair play which underlie our entire system of jurisprudence (citation omitted)." *Id* at 730. Moreover, the Court found that "[t]here can be no fair and impartial hearing unless the person charged is accorded a meaningful opportunity to respond to the charges and to rebut them." *Id* at 731. "As noted by our Court of Appeals in *Saumell v. N.Y. Racing Association, Inc.*, 58 N.Y.2d at 242, supra, while the association "was not obligated to resolve questions of credibility

before denying petitioner access to its facilities, the evidence ... was at best equivocal and, in light of the 20-day delay and importance of access to petitioner's livelihood, an insufficient basis for exclusion without a hearing." *Id* at 733.

In the instant matter, Mr. Cappagosso was similarly banned indefinitely from his livelihood, without a hearing and without decision makers even hearing Mr. Capogrosso's side of the story. No affidavit was taken from Mr. Capogrosso nor was he entitled to view the alleged 'evidence' against him. Yet, summarily, the supervising Administrative Judges banned him from entering the centers at which he practices law.

Putting aside the violation of Mr. Capogrosso's constitutional rights in the matter, and the arbitrary and capricious nature of the determination, the penalty imposed was so disproportionate to the alleged offense as to shock the conscience. If sanction imposed 'shocks the judicial conscience" it "constitutes an abuse of discretion as a matter of law" (citations omitted). *Diefenthaler v. Klein*, 27 A.D.3d 347, 811 N.Y.S.2d 653 (1st Dept. 2006). In the instant matter, the expulsion of Mr. Capogrosso from all adjudication centers for a three month period of time and from the Brooklyn South center at which he makes his living indefinitely based upon the incident that occurred is shocking to the conscience and clearly an abuse of discretion. Mr. Capogrosso did not start the verbal assault. While he now recognizes that he shouldn't have verbally struck back, it was not he who first used ethnic comments and profanity in a professional setting. Indeed, Mr. Brody was not punished in the same way (or at all), yet he created this whole situation and made similar types of improper comments. Moreover, while Mr. Capogrosso realizes he should not have even intimated how he would have punched by swinging at the air, he did not touch or strike any person; a demonstration which took place when Mr. Brody was not in the room.

In sum, Mr. Capogrosso was verbally attacked while merely trying to do his job. He reacted to the attack and went on the defensive. The situation never should have occurred, and unfortunately escalated out of control - but this situation occurred due in no part to the actions of Mr. Capogrosso. He was the victim of a horrible verbal assault; yet he has been the one prejudiced. To ban him from entering any adjudication center for three months and from indefinitely entering the Brooklyn South center where he earns his livelihood is so disproportionate to the offense it is shocking and abusive.

By reason of all of the foregoing, it is respectfully requested that the prohibition imposed upon Mr. Capogrosso be reversed. He should be allowed to enter any adjudication center he needs to in order to continue representing his clients forthwith.

As this matter has had a direct and substantial impact upon Mr. Capogrosso's practice and income, we await your prompt response to this submission.

Very truly yours,

Chris McDonough

CGM/hs