UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO H. CAPOGROSSO,

        Plaintiff

    -against-

                                **PLAINTIFF'S**
                                **AFFIRMATION IN**
                                **OPPOSITION TO**
                                **STATE DEFENDNATS'**
                                **MOTION FOR**
                                **SUMMARY JUDGMENT**

                                **Case No. CV-18-2710**

ALAN GELBSTEIN, et. al.,

---

I Mario H. Capogrosso, affirm under penalty of perjury that:

1. I, Mario H. Capogrosso, and attorney duly license in th states of New York and Connecticut, am the plaintiff in the above entitled action and submit this affirmation in opposition to the motion date dated May 17, 2021 State defendants' motion for summary judgment.

2. I have personal knowledge of the fats which bear upon this motion because I have personal knowledge or have witnessed all such facts.

3. Pursuant to Federal Rule of Civil Procedure 56, Local Civil Rule 56.1 and 56.2, I provide a paragraph by paragraph detailed opposition and response to State Defendants Local Civil Rule 56.1 Statement as follows.

4. The motion should be denied because:

**I possess no personal knowledge nor information to dispute the factual allegations of paragraph 1.**

**I possess no knowledge nor information to dispute the factual allegations of paragraph 2..**

**I possess no knowledge to dispute the factual allegations of paragraph 3.**

**I dispute in part the factual allegations of paragraph 4.**

I do affirm upon personal knowledge that defendant Gelbstein was a senior administrative law judge at the Brooklyn South TVB (Traffic Violations Bureau). Defendant Gelbstein rarely adjudicated cases. I affirm that at one point in time between May 2005 through May 2015 defendant Gelbstein stated to me that he had control and authority over the whole building that the TVB occupies at 2875 West 8h Street Brooklyn New York and everything that goes on with 100 (one hundred) feet of it.

I do dispute the allegation that defendant Gelbstein was in any way analogous to a Chief Judge at a Federal Court. This is a ludicrous assertion. Defendant Gelbstein wrote no opinion, did no legal research, and, most critically, investigated none of the allegations of wrongdoing, as to their truthfulness and completeness made against me by members of the clerical staff at the Brooklyn TVB, provided me with no complaints of wrongdoing to which I could respond, requested no evidence or affidavit by me in reply to any alleged acts of wrongdoing. Did not view the videotape of the alleged altercation of myself and defendant Smart on the morning of May 11, 2015, nor did he preserve such evidence, he never questioned me as to the alleged altercation between myself and defendant Smart on the morning of May 11, 2015, never questioned witnesses as to the alleged altercation a between myself and defendant Smart, never took any action against defendant Smart with respect to my complaints of harassment by defendant Smart made to him,. He is no federal court judge.

A federal court judge would not, and I am not trying to seek favor, I am only stating facts:

I affirm, he is not.

Gelbstein's deposition, attached as Exhibit A, page 10

Q: Did you observe the videotape of the alleged push?

A: I don't recall whether I did or not.

Q. So you don't recall ever observing the videotape?

A. I don't recall

Q. Did you keep possession of the videotape ?

A. I personally did not

Q. At any point in time did you view tat videotape?

A. I don't recall


Gelbtein's deposition, attached as Exhibit A, page 11

Q. Did you have me removed from the Brooklyn TVB based on that videotape, did you?

   A. I would have – assuming that I saw it, which I don't recall I did, it would have been

probably well after the fact


Gelbtein's deposition, attached as Exhibit A, page 24

Q. You (ever) present(d) me with  a written complaint and asked me to respond

A. No I never gave you a written complaint to respond to.


Gelbstein's deposition, attached as Exhibit A, page 26

When questioning defendant Gelbstein upon anyone specific complaints, he answers


6

Q. But you don't recall the date you called me in or the complaint that you asked me to

address?

A. Right

Q. And you never asked me for a written reply to any complaint; is that fair

A. That's fair


Gelbstein's deposition, attached as Exhibit A, page 27

Q. And you just accepted all those complaints as true without asking for my affidavit in

      response; I is that a fair statement?

A. I did not ask for an affidavit in response.


Gelbstein's deposition, attached as Exhibit A, page 29

Q. Did you investigate that complaint, Defendant Gelbstein (referring to clerk supervisor

Melanie's documentation of Mr. Perez' complaint )

A. I don't recall if I specifically investigated this complaint

Q. So you don't know the voracity or truthfulness of that complaint, is that a fair statement

A. I don't recall at this time

I possess no knowledge nor information to dispute the factual of allegations of paragraph 5.

I possess no knowledge nor information to dispute the factual allegations of paragraph 6.

I possess no knowledge nor information to dispute the factual allegations of paragraph 7.

**Partly, I dispute the factual allegations of paragraph 8.**

I do not dispute 15 N.Y. C.R.R,

I do emphatically dispute how this statute was implemented and construed with respect to my appearance at the New York TVBs and the Brooklyn TVB specifically. Implicit to the standard "failure to conform" requires an investigation not simply an assumption. I dispute the imposition of this standard where it is not properly and fairly implemented. For brevity, I will not list here, but refer to my response to paragraph 4 herein. I affirm by personal knowledge there was a never a proper investigation of the truthfulness nor completeness of the complaints made against me.

I n support I further cite

Gelbstein's deposition, attached as Exhibit A, page 29

When speaking of the Complaint made aby Melanie a senior clerk supervisor which involved Mr. Perez, I question,

Q. Did you investigate that complaint, Defendant Gelbstein?

A. I don't recall if I specifically investigated that complaint.

Q. So you don't know the veracity or truthfulness of that complaint; is that a fair statement?

A. I don't recall at this time.

11

**The motion should be denied because in response and opposition to paragraph 9**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 9, these allegations are not true, they are false.; they are inconsistent.

Reference, attached as Exhibit F, (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

In this opposition and response to all allegations of wrongdoing. I repeatedly state and do hereby affirm there was never any threatening conduct or verbal abuse.

I affirm I have never harassed threatened or been aggressive towards women. The record is devoid of any actual words of threat or acts of threat. Reference Attachment F.

I affirm I like women, I like women, I like women. I affirm, woman make the party. I am dating two women currently and they both call me  to take them out – so I must be doing something right.

I also affirm that when they act improperly, Tanya Rabinovich calling and acting as a lawyer or Agnes Paez soliciting motorist at the TVB, and both of these individuals were removed from the Brooklyn TVB because of their behavior, I affirm I will call the District Attorney or choose not to associate with them, respectively.

I affirm that I am an aggressive attorney but not a threatening attorney. I state the truth. I I don't stay quiet. I am not ashamed of this, though it is what the TVB and specifically its lead ALJ  Bushra Vahdat wanted me to do. Reference Exhibit G, Letter from McDonough & McDonough, LLP to Barbara J. Fiala, Commr of Motor Vehicles, "if Mr. Capogrosso "was good" and "stayed quiet" she would reconsider the determination three months later."

I affirm, I am an aggressive attorney, I am going to do what is right, not what is good. If I wanted choose what was good for me I would not be before this Court.

**The motion should be denied because in response and opposition to paragraph 10**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 10;, these allegations are not true, they are false.

In support, reference my Response to Exhibit 1 and Response to Exhibit 2, , of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

My defense – Tanya Rabinovitch approached me that day after I complained to the District Attorney concerning her continuous representation of herself as an attorney at the Brooklyn South DMV TVB. After admitting to her that I filed such report with the District Attorney, she accosted me that day with a verbal tirade. Defendant's Gelbsteins response to my complaint to the District Attorney was – "Who are you Don Quixote." I attempted to walk away from her that day and avoid her verbal tirade.

and

Again, Tanya Rabinovitch approached me complaining of my complaint to the District Attorney's Office – I did tell her to "get away from me." She was verbally accosting me due to my complaint to the District Attorney's Office. I see nothing wrong with the comment "get away from me" and then attempting to avoid interacting with her.

I affirm, upon personal knowledge, that Tanya Rabinovich approached me yelling and screaming at me. Reference Response to Exhibit 1 and Response to Exhibit 2, , of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

I affirm, upon personal knowledge, that I got up in order to get away from Tanya Rabinovich who approached me yelling and screaming at me. Reference Response to

14

Exhibit 1 and Response to Exhibit 2, , of Exhibit F (Plaintiff's Opposition to Defendants'
Motion to Dismiss, Dkts 40 and 41)

I affirm, upon personal knowledge, bumping into this woman. I do affirm that she
approached me I do recall getting up and trying to walk away, and I do recall telling her
to Get away from me get away from me. Reference Response to Exhibit 1 and Response
to Exhibit 2, , of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss,
Dkts 40 and 41)

See Exhibit E, Capogrosso Deposition. Page 146

"And she approaches me that day and sys did you call – did you call the District
Attorney? I said yes, I did it I admitted it to her and she starts yelling and berating me and
tried walking away from her."

I did not bump her, See Exhibit E, Capogrosso Deposition. Page 147

I testify "I wasn't charged .I wasn't arrested. I didn't do anything wrong but tried
to get away from the situation and telling the truth. I told her what happened and what I did

I testify that I wan not screaming and yelling profanities See Exhibit E, Capogrosso
Deposition. Page 147"16-25, Page 148:1-15

When asked whether I used profanity it, I respond No I did not. I was telling her to
get away from me , but I yelled no profanity and no obscenity>"

Upon being asked whether I made contact with Tanya Rabinovich, I testify

"No, not that I recall, no" Capogrosso Deposition. Page 150 :2"I know I didn't
bump into anybody" Capogrosso Deposition. Page 153 :14

I tell Tanya to get away from me, "he stated get away from me, which is what I'm
telling Tanya. To get away. Capogrosso Deposition. Page 155 :24-25

There are inconsistencies in the two complaints,

"there is no indication that I bumped into her because I didn't bump into her "That's Roy's version of the story. Capogrosso Deposition. Page 156 :2-4

"I don't recall touching this woman at any point." Capogrosso Deposition. Page 159,3-4

**The motion should be denied because in response and opposition to paragraph 11**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 11;, these allegations are not true, they are false

In support, reference my response to Exhibit 3, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I am accused at belligerently yelling. I was called to the counter by a paralegal working for me at that time, and I asked, "what was the problem." There is nothing wrong with that. I did not curse. Marisol Cervine provides no indication of what curse word was used, because none was used. As I remember it I asked only "What was the problem" Further she indicates "that my aggressive behavior escalated. I have no idea what that means. What exactly am I being accused of doing to her. She indicates I made comments and smirked. My response, what comments were made. None were made. I was an aggressive litigator in this courtroom, but I made no aggressive action against her person at any point in time.

I affirm upon personal knowledge that I did not yell scream or insult Marisol Cervoni.

When questioned whether I cursed or insulted, I testify, "I never cursed or insulted the woman, absolutely not." Capogrosso Deposition. Page 169 13-16

I admit I might have been loud. Capogrosso Deposition. Page 169, because I want people to hear me when I speak . Capogrosso Deposition. Page 169.

I testify, "I don't curse or insult women. It's snot something I do." Capogrosso Deposition. Page 170, 3-4.

I testify that "I never cursed yelled or insulted, absolutely not. Absolutely not." Capogrosso Deposition. Page 171, 2.3-25.

I testify, "Was I cursing and insulting, absolutely not." Capogrosso Deposition. Page 173, 23-25.

I affirm I advocated on behalf of my client, to which I have taken oath to do. Let this Court we all have all taken our oaths before our respective Bars. I affirm based on that oath I have a duty to resolve my clients legal issues..

So I testify, when I am accused of not leaving the clerks' counter, "well, wait a second, wait. Wait a second. Maybe I wanted the issue resolve and I wanted some explanation of the issue, which is my duty to do. I have a duty to my client, not to a clerk, but to my client to make sure the issue is resolve, whatever the issue was." Capogrosso Deposition. Page 175, 12-19.

I affirm, upon personal knowledge, I was good at what I was doing in traffic court. I provide proof. Reference client reviews of my practice, attached herein as Exhibit J.

I affirm, upon personal knowledge, that I had a very large case load, and kept a meticulous calendar, Reference my calendar and docket, attached herein as Exhibits L and M.

I affirm, upon personal knowledge, that if I did anything to violate the Rules of Professional Conduct, I would have been brought before the Grievance Committee , and the Department of Motor Vehicles never did so. Though they are not averse to doing so, reference Matter of Teague, attached herein as Exhibit K. though albeit the fact their lawyers acting as an administrative law judge possess their own history of misconduct, reference Exhibits H, an article referencing th4 misconduct of the supervising ALJ Bushra

Vahdat. And Exhibit I, where ALJ Vahdat has violated Agency Rules on Outside Employment.

In sum and I affirm upon personal knowledge, that when Department of Motor Vehicles cannot grieve you, they send a security guard to harass and provoke the incident of May 11, 2015 so as to have me removed.

Refence my letter of Complaint seeing relief from such harassment, attached herein as Exhibit O , and affidavits of threat and harassment upon my person by defendant Smart while I was at the Brooklyn TVB, reference Exhibits P, Q, and R.

With respect to the allegation of fear I affirm, that I was there at the TVB to do a job. I testify, I"I did not yell and I did not curse and I did not insult for what reason she is fearful I do not know. I didn't schmooze with her in the morning and ask how she' doing and is she okay and how is your weekend and how's all this. I didn't think about all that stuff. I was there to do a job" Capogrosso Deposition. Page 181.

I testify, that if I was told that there was problem or a complaint, I would attempt to rectify it immediately. Capogrosso Deposition. Page 183.

I was never aware of any complaints made against me,. I testify, "I've neve seen these complaints. I Judge Gelbstein was doing his job or his clerical supervisor we doing their job, they would have brought this complaint to my attention immediately and I would have resolved it..." Capogrosso Deposition. Page 186.

I further testify, "All of these complaints. Judge Gelbstein never presented to me one of these complaints, not one" Capogrosso Deposition. Page 189 16-19.

**The motion should be denied because in response and opposition to paragraph  12**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual

allegations presented in paragraph 12;, these allegations are not true, they are false

In support, reference my response to Exhibit 4, of Exhibit F (Plaintiff's Opposition to

Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I  have personal knowledge that,

I at no point told my paralegal at any time to follow this person. It is true she was

NOT an attorney but it is true that she was soliciting motorists on a continuous basis in the

Brooklyn South TVB court. She was eventually thrown out of the DMV due to her

relentless soliciting of motorists not only on the floor of the DMV but in its parking lot by

Defendant Gelbstein. She provides no indication specifically of "the variety of profane and

vulgar names" used because none were ever said. I do not curse at women.

I affirm upon personal, that I did not approve of this woman Agnes Paez soliciting

clients. Capogrosso Deposition. Page  198., 9-25, page 199, lines 4-10.

I testify, "I didn't like what she was doing so I let her go." Capogrosso Deposition. Page

197.

I testify, that I did not recall any incident with Ms. Paez, I testify, ""I know I

didn't like what she was doing there .Judge Gelbstein approved it. But did I ever

approach her, absolutely not." Capogrosso Deposition. Page  197.

I testify, that I did not call her a variety of vulgar and profane names. The record

is devoid of any proof of what names were used. I testify, "You can' make these blatant

accusations about people and don't give the specifics. Exactly what was said?"

Capogrosso Deposition. Page  204

I testify that I do not recalling having an altercation with this woman, . ."

Capogrosso Deposition. Page  206.

I testify affirm and reaffirm, this is upsetting. This is an unrelenting attack on my

character. I testify, "I did not threaten a woman. I would never threaten a woman in my

life." Capogrosso Deposition. Page  207.

But I also affirm, that you do not get a pass in my estimation just because you

area woman. Therefore, I will report the actions of Tanya Rabinovich to the District

Attorney, and I will refuse to associate with Agnes Paez and the attorney, Diantha Fuller,

who she worked for,. Capogrosso Deposition. Page  206.

**The motion should be denied because in response and opposition to paragraph 13**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 13;, these allegations are not true, they are false; the facts are inconsistent.

. In support, reference my response to Exhibit 6, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I am accused of confrontations. There are no specific facts, only allegations, so I do not know how to respond. I am a litigator. I was at this tribunal to argue cases and win cases on behalf of my clients. I was not engaging with the clerks of this court as other attorneys did. I was not giving them gifts for Christmas and the holidays, I was not giving them parties, I was not buying them breakfast and coffee. In response my clients often paid the price. I would put the summons in the courtroom, and as it was my understanding the standing rule of the Court was that the first to appear was to the first party to be heard. Often this was not the case. Because I did not indulge the clerks with gifts, presents, coffee, and parties my clients would suffer. I would put the case in first and be called last But I refused to the play their game. If I did, to me there was an appearance of impropriety and I did not want to play that game. I was upset for my client's sake, not mine. I was there for the whole day. I worked predominantly at the Brooklyn South TVB. I see no actual allegations of misconduct to which I need to respond.

22

In response, with respect to threat of physical safety, the record, the complaint, is devoid of evidence.

I testify, "Tell me the specifics, I have no idea. You can't make allegations against a man and his reputation if you don't give specifics" Capogrosso Deposition. Page 206..

I attach two exhibits of your review Exhibits S and Exhibit T. This is an incident dealing with George Hon. First an foremost I affirm I sought no altercation with George Hon. I I provide my description in the events See Capogrosso Deposition. Page 217-219 I testify, Look at the description of the events,

Supervising ALJ writes, Exhibit S, third paragraph, "He followed a clerk with his car and stopped the clerk's car from moving" and compare it with what

George Hon writes, "C was waiting at the entrance of the parking in his car. G stopped behind him, both got out of their car"

I affirm, upon proof and personal knowledge, Bushra Vahdat is a lying lawyer acting as a judge making up stories to get me removed from the practice of law at the Brooklyn TVB.

23

**The motion should be denied because in response and opposition to paragraph 14**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 14;, these allegations are not true, they are false, they are inconsistent.

In support, reference my response to Exhibit 7, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

Attorney Yaakov Brady's accusations – incredulous statement by a lying lawyer who precipitated all these events. This event happened on December 11, 2011 in the attorney's room at the Brooklyn South TVB. Once again, I came and I placed my coffee down under the bench. "I said excuse me can I get my coffee" to Brody. Brody responded, "excuse yourself go f--- yourself you Jew hater anti-Semite." I then proceed that morning to do a hearing. I come back once again Brody is standing in front of my coffee, I asked Brody "excuse me can I get my coffee." His response again was "excuse yourself go F--- yourself you Jew hater anti Semite" I was required to take an anger management class, Brody was given a pass. I argue, I am an Italian American in Jewish community making too much money. My colleagues wanted me out. In addition, please let this Court note, Brody states that I said I am going to "Hit you with my briefcase" Incredulous statement from a lying lawyer. If it comes to the point where I need to defend my life or my family's life because of threat of assault by a knife or gun or serious physical assault I will defend myself – but " I am not going to "Hit you with my briefcase" Incredulous statement by a lying lawyer. Let Brody know that I am not an anti-Semite. Please let this Court note that in all the accusations brought against me, there is not accusation from any client or motorist

that I used racial slur whether they be Jewish or any other nationality or religion. Please review this record. Where is there proof I am an anti-Semite. There is none. These are the actions of an attorney, Brody,  who provoked an incident, who was looking to get to get me removed and accomplished it.

I testify, to the events of this day, Capogrosso Deposition. Page  217-239.

**The motion should be denied because in response and opposition to paragraph 15**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 15;, these allegations are not true, they are false, they are inconsistent.

In support, reference my response to Exhibit 7, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I  have personal knowledge that,

Attorney Yaakov Brady's accusations – incredulous statement by a lying lawyer who precipitated all these events. This event happened on December 11, 2011 in the attorney's room at the Brooklyn South TVB. Once again, I came and I placed my coffee down under the bench. "I said excuse me can I get my coffee" to Brody. Brody responded, "excuse yourself go f--- yourself you Jew hater anti-Semite." I then proceed that morning to do a hearing. I come back once again Brody is standing in front of my coffee, I asked Brody "excuse me can I get my coffee." His response again was "excuse yourself go F--- yourself you Jew hater anti Semite" I was required to take an anger management class, Brody was given a pass. I argue, I am an Italian American in Jewish community making too much money. My colleagues wanted me out. In addition, please let this Court note, Brody states that I said I am going to "Hit you with my briefcase" Incredulous statement from a lying lawyer. If it comes to the point where I need to defend my life or my family's life because of threat of assault by a knife or gun or serious physical assault I will defend myself – but " I am not going to "Hit you with my briefcase" Incredulous statement by a lying lawyer. Let Brody know that I am not an anti-Semite. Please let this Court note that in all the accusations brought against me, there is not accusation from any client or  motorist

26

that I used racial slur whether they be Jewish or any other nationality or religion. Please review this record. Where is there proof I am an anti-Semite. There is none. These are the actions of an attorney, Brody,  who provoked an incident, who was looking to get to get me removed and accomplished it.

I affirm that I was mad. Capogrosso Deposition. Page  243 -244. .

When asked whether I said the place is run Jews, I testify, "I don't  recall" . Capogrosso Deposition. Page  246.

I affirm and will reaffirm and testify, "No I don't care who you are. I treat everybody the same. I treat everyone respectfully" Capogrosso Deposition. Page  246-248.

27

**The motion should be denied because in response and opposition to paragraph 16**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 16;, these allegations are not true, they are false, they are inconsistent.

In support, reference my response to Exhibit 7, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

Attorney Yaakov Brady's accusations – incredulous statement by a lying lawyer who precipitated all these events. This event happened on December 11, 2011 in the attorney's room at the Brooklyn South TVB. Once again, I came and I placed my coffee down under the bench. "I said excuse me can I get my coffee" to Brody. Brody responded, "excuse yourself go f--- yourself you Jew hater anti-Semite." I then proceed that morning to do a hearing. I come back once again Brody is standing in front of my coffee, I asked Brody "excuse me can I get my coffee." His response again was "excuse yourself go F--- yourself you Jew hater anti Semite" I was required to take an anger management class, Brody was given a pass. I argue, I am an Italian American in Jewish community making too much money. My colleagues wanted me out. In addition, please let this Court note, Brody states that I said I am going to "Hit you with my briefcase" Incredulous statement from a lying lawyer. If it comes to the point where I need to defend my life or my family's life because of threat of assault by a knife or gun or serious physical assault I will defend myself – but " I am not going to "Hit you with my briefcase" Incredulous statement by a lying lawyer. Let Brody know that I am not an anti-Semite. Please let this Court note that

in all the accusations brought against me, there is not accusation from any client or motorist that I used racial slur whether they be Jewish or any other nationality or religion. Please review this record. Where is there proof I am an anti-Semite. There is none. These are the actions of an attorney, Brody,  who provoked an incident, who was looking to get to get me removed and accomplished it.

I affirm that I was mad. Capogrosso Deposition. Page  243 -244. .

29

**The motion should be denied because in response and opposition to paragraph  17**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 17;, these allegations are not true, they are false, they are inconsistent.

In support, reference my response to Exhibit 10, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

In support, reference my response to Exhibit 10, of Exhibit C

It provides, and I again affirm that I  have personal knowledge that,

The events of December 21, 2011 again. One event one day, all occurring outside the tribunal. Initiated by Brody telling me to "Go f--- myself" twice and "that I am a Jew hater anti-Semite" for what reason I still don't know, only because I am an Italian American in Jewish community making too much money. Brody set me up. I took an anger management course because I did throw a punch in the direction of a wall, not hitting the wall in the attorney's room and not in the vicinity of any other attorney. I was not arrested nor charged.

I affirm that I liked Jeff Meyers.  Capogrosso Deposition. Page  273-274.

I testify that I would ever hurt Jeff Meyers. Capogrosso Deposition. Page  273.

I testify that I never hit any wall.  Capogrosso Deposition. Page  273. 13-15.

**The motion should be denied because in response and opposition to paragraph 18**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 18;, these allegations are not true, they are false, they are inconsistent.

In support, reference Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41). I affirm, I am a witness to the events. I have personal knowledge and involvement. My statement. was never taken. The record is devoid of any proof of my witness statement.

31

**The motion should be denied because in response and opposition to paragraph  19**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 19;, these allegations are not true, they are false, they are inconsistent.

I testify that Gelbstein met with me, and I affirm I was told to leave the building after the incident with Yakov Brody, and I testify "Gelbstein told me you're not welcome here anymore." Capogrosso Deposition. Page  295.  .

**The motion should be denied because in response and opposition to paragraph 20**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 20;, these allegations are not true, they are false.

I affirm the petition, attached as Exhibit S,  stands for itself, I dispute the use of the words verbal rant and agitated speech and physically intimidating behavior, those words were never used in the petition. The petition is devoid of such language.

**I do not dispute these factual allegations of paragraph 21.**

**The motion should be denied because in response and opposition to paragraph 22**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 22;, these allegations are not true, they are false, they are inconsistent.

I affirm upon personal knowledge that the TVB wanted me out for any behavior, even if it were not violent or aggressive behavior. I a adamantly disagree the association of sneezing the wrong way with violent and aggressive behavior. McDonough never trusted Gelbstein and neither should I have, that is the meaning of this phrase. I affirm this upon personal knowledge. See Capogrosso Deposition. Page 339, "he didn't trust Gelbstein at all."

Further, I affirm, and reference In support, reference Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41), to which I respond in kind to all the allegations made against, there is no proof of verbal abuse or threatening physical conduct as asked of me in my letter of re-entry, attached as Exhibit T.

**The motion should be denied because in response and opposition to paragraph 23**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 23;, these allegations are not true, they are false.

Further, I affirm, and reference In support, reference Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41), to which I respond in kind to all the allegations made against, there is no proof of verbal abuse or threatening physical conduct as asked of me in my letter of re-entry, attached as Exhibit T.

Further, and for brevity, I refer to my response and opposition herein to paragraph 4, herein there was never a full and proper investigation of the veracity truthfulness of any of the complaints lodged against me.

I further cite in support, Exhibit C, Calvo deposition, page 21, 18-25.

Q. Did you ever investigate at any point the voracity of truthfulness of any of these complaints?

A. I may have, I don't know.

Further, I cite ins support, Exhibit C, Calvo deposition, page 23, 21-25.

Q. Can you give me one specific instance of where I verbally abused one of your clerks, the date, time and exactly what I said, I'd like to know?

A. No, I can't

I further cite in support, Exhibit C, Calvo deposition, page 31, 13-17

Q. Well, what threatening conduct was ever reported to you by one of your clerks, tell me?

A. I don't recall specific incidents. .

36

I further cite in support, Exhibit C, Calvo deposition, page 31, 24-25, page 32 1-125., page 33 page 1-8

Q. tell me one time I verbally abused one of your clerks, the date, the time, the occurrence, exactly what I said?

A. No, I cannot tell you.

Q. Can you tell me what ethnic slur I ever made with respect to one of your clerks?

A. I can't tell you specifically any incidents, ,date, time, I don't have tat information

Q. Did you ever make an investigation to any of these complaints against me by one of these clerks?

A. If I did, I don't recall, but I may have.

Q. Can you tell me the results of that investigation.

A.I can't tell you because I don't recall.


I further cite in support, Exhibit B, Traschen deposition, page 14, 9-12, when she is questioned as to whether she spoke to the people who wrote complaints about me she testifies,

A.  Do you mean, did I talk to them and question them?

Q. Yes

A. No, I did not. .

I further cite in support, Exhibit B, Traschen deposition, page 19 15-20

Q. Do you review any police reports or the work violence reports that were

submitted

A. I don't recall

Q. You don't recall

A. I don't

**The motion should be denied because in response and opposition to paragraph  24**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 24;, these allegations are not true, they are false, they are inconsistent.

The facts are inconsistent. The complaint states at the bottom that my affidavit in reply is attached. It is not attached. Th Court must take judicial notice. I affirm upon personal, I am being given no opportunity to respond.

I affirm here, based upon personal knowledge, what happened on this day. I am standing up for the 10 am morning calendar waiting for my clients to come in. A former client walks in -  I remember ss if it were yesterday - and states "Hi Mario nice suit." I respond,  "Well I'm making a few bucks I can afford it." Defendant Smart is sitting on a bench about 30 feet away and over hears this comment. As I have stated, this is not the first time this man has approached me, Reference Exhibits O,P, Q, R and S and comes within a couple of inches of my face, ducking his head and obscuring his hand. I tell him to back up and keep walking. That is all I said. If my  statement is never taken, how can I be complained that Smart is staring. My statement is never taken, security cameras are never looked, the veracity and truth of this complaint is never investigated. For brevity, I reference my response to paragraph 4 and 23.

**The motion should be denied because in response and opposition to paragraph 25**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 25, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 12, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that, "give somebody an attitude" sound alike a paranoid clerk who perhaps needs a vacation. I really don't know how to respond. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

When questioned as to whether I have knowledge as to this incident, I testify, "I wouldn't know how tell a motorist to give a clerk an attitude" See Capogrosso Deposition. Page 350.

40

**The motion should be denied because in response and opposition to paragraph 26**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 26, these allegations are not true, they are false they are inconsistent.

In support, reference my response to Exhibit 14, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

In support, reference my response to Exhibit 14, of Exhibit C dated February 3, I never intentionally walked into Defendant Smart. Deliberately walked – ridiculous. Is this an assault or threat of violence, verbal abuse? We are working in the same environment. I routinely would have to go the docket on the courtroom wall to look and determine the hearing room for the motorist's hearing. Paranoid security guard but not an assault or threat of physical violence. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I testify, that I did not deliberately walk into defendant Smart, See Capogrosso Deposition. Page 355.

**The motion should be denied because in response and opposition to paragraph 27**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 27;, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 15, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I do remember this incident . Mr. Perez retained me to represent him on an appeal on a traffic ticket that he had lost. I took the appeal . The following day Mr. Perez came in and told me the judge has suspended his license. He came in verbally abusing me. I said I will give you your money back on the appeal, which I did. I did not argue his case. I did not get his license suspended. I was the lawyer hired to write the appeal. At which time Mr. Perez threatened to cut me with a knife and then slash the tires of my car. Welcome to the Brooklyn TVB. I was told by Defendant Gelbstein if there is an unruly client motorist you are to speak to him outside the courthouse which I intended to do with Mr. Perez as per Defendant Gelbstein order. As I understand it, all the attorneys were told the same. I was just threatened with a knife. The security guard defendant Smart was nowhere to be found and the Police did not get involved,  as such I followed Defendant Gelbstein order and indicated to Mr. Perez that we needed to speak outside. Once again, **where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I affirm, based on personal knowledge, I was not the aggressor, and affirm and

reaffirm that we needed to speak outside as I was directed to do so by defendant Gelbstein when I encountered an unruly client. . See Capogrosso Deposition. Page 363 "Gelbstein told me if you have a bad client, unruly client, you are to go outside the courthouse, and speak to him outside, which I proceeded to do"

I testify, "I said let's go talk outside, which is what I did." See Capogrosso Deposition. Page 363

**The motion should be denied because in response and opposition to paragraph 28**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 28;, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 16, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I have no idea as to what this is about. Nonsense. I have no idea what is being alluded here. But if I verbally attacked Defendant Gelbstein. What words did I use, in what manner did I attack him. I am having an argument over paper clips. Where is Defendant Gelbstein's formal admonition to me. This is nonsense, ridiculous statement made by a disgruntled employee who I believe was removed from her position at the Brooklyn DMV for unprofessional conduct. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I testify, that I have no knowledge as to this complaint, it is total nonsense. ." See Capogrosso Deposition. Page 391

**The motion should be denied because in response and opposition to paragraph 29**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 29;, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 17, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I say "shit" I do not say shit at any time. I do not curse. I do hear Defendant Tahir say "Mother F---ker" very often in my presence as well as the presence of other attorneys and clients, to which he takes no offense. I have no idea of what Defendant Tahir is talking about. I do say "Eee – shah" occasionally, quietly to myself. It is a KENPO expression (once again I have trained in the martial arts for many years) and it is something that keeps me motivated, in and out of the gym, when I lose energy but it is not the word "shit" and was never directed at any attorney, client or motorist, If Defendant had questioned me concerning it, he might have understood. I think Defendant Tahir is paranoid. I mumbled "psycho" – ridiculous. This is verbal abuse. Sounds simply like attorney paranoia. I am accused of punching. Absolutely ridiculous – where is the proof. Where is the admonition by Defendant Gelbstein to me, concerning such behavior. Anything recorded on tape. I have seen none. I am accused of "grabbing my ankles and walking in a fast threatening manner: Nonsensical. Where is it written I cannot touch my toes or walk fast. Nonsensical. An old attorney's paranoia. The "near fight" Defendant Tahir speaks about concerns a client, Mr. Perez threatening to slice me with a knife, and security guard Smart being nowhere to be found, Police Officers not responding, and Defendant's Gelbstein's order to

me to speak to unruly clients outside the courtroom. Explained above. Further, what you do hear in this statement from Defendant Tahir is that it he responds, "loudly **in a barrage swear words**, stating that he (M. Capogrosso)was crazy and I was sick of him saying "shit" to me." By his own admission, I am being verbally abused by Defendant Tahir. In response I did shake my shoulder and laugh. This is nonsensical.

**Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I testify, with that I do not say the word "shit", See Capogrosso Deposition. Page 398, 1-25, page 399, 1-18., page 404, 8-9.

I testify, "I did not verbally abuse" See Capogrosso Deposition. Page  406, 9-12.

46

**I accept as true the factual allegations of paragraph 30.**

In support of my complaints see Exhibits O, P, Q, and r attached.

**The motion should be denied because in response and opposition to paragraph 31**

   There is a triable issue as to material fact, it is not undisputed. I dispute the factual

allegations presented in paragraph 31;, these allegations are not true, they are false

They are inconsistent. they are inconsistent.


In support, I cite, Calvo Deposition Exhibit C, page 13

Q. Who governed his day to day activities at the Brooklyn YVB?

A. We would tell him what we wanted him done as far a opening, closing thigs like that

Q. Clerical staff the clerical staff governed his day-to-day activities, is that correct.

A. To some extent yes.


In support, I cite, Gelbstein Deposition Exhibit A, page 14

Q. Do you have authority over the actions of Defendant Smart at the TVB.

A. I do

**The motion should be denied because in response and opposition to paragraph 32**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 32;, these allegations are not true, they are false they are inconsistent.

I affirm these claims were not stale. The defendant Smart approached me unproved on May 11, 2015 and created the incident which led to my removal.

I testify, I wrote the Attorney General because I was fearful that another incident with Smart would occur. See Capogrosso Deposition. Page 415, 416.

I testify, "then the incident happens. On May 11, this guy comes again. He comes, he gets in my face again. I put up my hand. I tell him back up back up. See Capogrosso Deposition. Page 416 14-17.

I testify, "I saw this guy Smart was not backing off. I saw it he didn't want to stop." See Capogrosso Deposition. Page 421.

**The motion should be denied because in response and opposition to paragraph 33**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 33;, these allegations are not true, they are false they are inconsistent..

In support, reference my response to Exhibit 18, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41).

At no point in time did I yell and curse at Defendant Tahir. Tahir by his own admission , item 6, above admits responding to me **"loudly in a barrage of swear words."** I am being yelled at, cursed at, by Tahir. I am being accused of cursing. What curse words did I use. Please explain I see none presented

There was no incident on May 5, 2015. There was an incident of May 8, 2015. There was a verbal disagreement on May 8, 2015 between me and Defendant Tahir. I placed my briefcase on a chair in the attorney room for a moment while I took a phone call from a client. It was Defendant Tahir who verbally assaulted me with a tirade of expletives saying I was not allowed to sit or put anything on his chair. Why, I do not know. This was a common attorney room where we all had a right to sit and share. Nonsensical accusations. Putting my briefcase on a chair. I am accused of " obscenities and threats." My question what threat was uttered and what obscenity used. Absolutely none. Not by me anyway. Tahir does admit to swearing at me.  **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I testify in support of my statement, See Capogrosso Deposition. Page 450-453.

I testify tat I did not curse. See Capogrosso Deposition. Page 453, 20-25.

I testify, I am not here to harass a lawyer . See Capogrosso Deposition. Page 454 and

testify he has insecurities . See Capogrosso Deposition. Page 454. The record and

complaint are devoid of any threatening conduct and speech.

**The motion should be denied because in response and opposition to paragraph  34**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 34;, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 18, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41).

It provides, and I again affirm that I  have personal knowledge that,

At no point in time did I yell and curse at Defendant Tahir. Tahir by his own admission , item 6, above admits responding to me  **"loudly in a barrage of swear words."** I am being yelled at, cursed at, by Tahir. I am being accused of cursing. What curse words did I use. Please explain I see none presented. There was no incident on May 5, 2015. There was an incident of May 8, 2015. There was a verbal disagreement on May 8, 2015 between me and Defendant Tahir. I placed my briefcase on a chair in the attorney room for a moment while I took a phone call from a client. It was Defendant Tahir who verbally assaulted me with a tirade of expletives saying I was not allowed to sit or put anything on his chair. Why, I do not know. This was a common attorney room where we all had a right to sit and share. Nonsensical accusations. Putting my briefcase on a chair. I am accused of " obscenities and threats." My question what threat was uttered and what obscenity used. Absolutely none. Not by me anyway. Tahir does admit to swearing at me.  **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I put my briefcase on a chair in the attorney's room which I am allowed to do. This was not Defendant Tahir's personal chair, so therefore he cannot direct me as to how to use it. He indicates in his statement that "that chair is to sit, not for your bag." Who is provoking this incident. Tahir is, I am not. Attorneys routinely lay out their briefcase on the two benches that occupy this attorney's room. Except of course when it came to Tahir's chair, that he claims as his own. I put my briefcase on this chair for a moment, in order to take a phone call. Tahir provoked, escalated and contributed to the whole incident yet he goes unpunished, I get banned. Further, Defendant Tahir began screaming, by his own admission, he states **"then of Course I raised my voice too."** Yet in the work violence report submitted it is only me who (Siegmund's Exhibit 6, page 13 of 23) who is described as yelling. Defendant Gelbstein and Calvo mischaracterize the evidence purposefully to get me banned from the DMV TVB. I was given no opportunity to state my position on this incident with Tahir. Defendants Gelbstein and Calvo did approach me after this incident. Defendant Gelbstein in the presence of Defendant Calvo stated to me, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**


Work place violence report – the hard evidence upon which this Court has indicated to me pursuant to my Foil request, as to why I was banned from the DMV TVB. With respect to the Workplace Violence Report, there is no work violence or threat of work

violence shown in this report. A report in which I was given no opportunity to respond. As I stated previously I placed by briefcase on a chair that Defendant Tahir claimed as his own in the attorney's room. Tahir began to move it I said give me a minute I will be leaving shortly and which Point Defendant Tahir grabbed the briefcase sending files scattering. I was given no opportunity to explain nor respond by Defendants Gelbstein and Calvo. There is no proof of violence in this report though it is labelled as a work violence report and it is one of the primary reasons for me being banned." Defendant Gelbstein did approach me after this incident, in the presence of Defendant Calvo and stated, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof**

See also Capogrosso Deposition, page 462-463.


I testify in support of my statement, See Capogrosso Deposition. Page 450-453.

I testify tat I did not curse. See Capogrosso Deposition. Page 453, 20-25.

I testify, I am not here to harass a lawyer . See Capogrosso Deposition. Page 454 and testify he has insecurities . See Capogrosso Deposition. Page 454.

The record and complaint are devoid of any threatening conduct and speech.

**The motion should be denied because in response and opposition to paragraph 35**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 35, these allegations are not true, they are false they are inconsistent.

In support, reference my response to Exhibit 18, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41).

It provides, and I again affirm that I have personal knowledge that,

At no point in time did I yell and curse at Defendant Tahir. Tahir by his own admission, item 6, above admits responding to me **"loudly in a barrage of swear words."** I am being yelled at, cursed at, by Tahir. I am being accused of cursing. What curse words did I use. Please explain I see none presented. There was no incident on May 5, 2015. There was an incident of May 8, 2015. There was a verbal disagreement on May 8, 2015 between me and Defendant Tahir. I placed my briefcase on a chair in the attorney room for a moment while I took a phone call from a client. It was Defendant Tahir who verbally assaulted me with a tirade of expletives saying I was not allowed to sit or put anything on his chair. Why, I do not know. This was a common attorney room where we all had a right to sit and share. Nonsensical accusations. Putting my briefcase on a chair. I am accused of " obscenities and threats." My question what threat was uttered and what obscenity used. Absolutely none. Not by me anyway. Tahir does admit to swearing at me. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I put my briefcase on a chair in the attorney's room which I am allowed to do. This was not Defendant Tahir's personal chair, so therefore he cannot direct me as to how to use it. He indicates in his statement that "that chair is to sit, not for your bag." Who is provoking this incident. Tahir is, I am not. Attorneys routinely lay out their briefcase on the two benches that occupy this attorney's room. Except of course when it came to Tahir's chair, that he claims as his own. I put my briefcase on this chair for a moment, in order to take a phone call. Tahir provoked, escalated and contributed to the whole incident yet he goes unpunished, I get banned. Further, Defendant Tahir began screaming, by his own admission, he states **"then of Course I raised my voice too."** Yet in the work violence report submitted it is only me who (Siegmund's Exhibit 6, page 13 of 23) who is described as yelling. Defendant Gelbstein and Calvo mischaracterize the evidence purposefully to get me banned from the DMV TVB. I was given no opportunity to state my position on this incident with Tahir. Defendants Gelbstein and Calvo did approach me after this incident. Defendant Gelbstein in the presence of Defendant Calvo stated to me, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

See also Capogrosso Deposition, page 462-463.

I testify in support of my statement, See Capogrosso Deposition. Page 450-453.

I testify tat I did not curse. See Capogrosso Deposition. Page 453, 20-25.

I testify, I am not here to harass a lawyer . See Capogrosso Deposition. Page 454

56

and testify he has insecurities . See Capogrosso Deposition. Page  454.

The record and complaint are devoid of any threatening conduct and speech.

**The motion should be denied because in response and opposition to paragraph  36**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual

allegations presented in paragraph 36;, these allegations are not true, they are false

they are inconsistent

In support, reference my response to Exhibit 19, of Exhibit F (Plaintiff's Opposition

to Defendants' Motion to Dismiss, Dkts 40 and 41).

It provides, and I again affirm that I  have personal knowledge that,

I have no idea who wrote this, my files were being tampered with at one point in

time. I did observe Defendant Smart do it often. I complained to Defendant Gelbstein with

no response. It was Smart's continue attempt to harass. I never stated that Defendant

Gelbstein "should put a gun to his head." My question, who made this statement and who

corroborates me making it. However, I do remember making a statement concerning a

former attorney who also improperly expelled from the DMV TVB by Defendant Gelbstein

and who later committed suicide. When I was asked about this matter by a client concerning

Defendant Gelbstein's actions, expelling an attorney from the DMV without a due process

hearing, I stated in response " I would have a hard time sleeping at night. " That is all I

said, everything else is total fabrication. Let this person come forward. They will not. Their

statement goes unsigned. Once again, **where is the proof of "verbal threats of physical**

**violence, and verbal abuse, including the use of ethnic slurs"  conditions set to**

**pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no**

**proof.**

See Capogrosso Deposition. Page  464-468..

58

I testify, "But I never said the judge should put a gun to his head,. That's ridiculous"

. See Capogrosso Deposition. Page 466.

I testify, "That's absolutely ridiculous, it's a total lie" See Capogrosso Deposition.

Page 467.

**The motion should be denied because in response and opposition to paragraph 37**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 37, these allegations are not true, they are false they are inconsistent.

I affirm the truthfulness and veracity of he complaints lodged have never been fully and accurately investigated. For brevity, reference my responses to paragraphs 4 and 23. Herein. I affirm, based upon personal knowledge, that there was no altercation with defendant Smart. I told defendant Smart to "back up back up" refence Exhibit T, Work Violence Report, and Exhibit U, Work Violence Report,  attached. I affirm I am seeking not to engage, I am not seeking an altercation.

Reference Exhibit V, Work Violence, Memorandum, that provides no pictorial proof of  any altercation.

**The motion should be denied because in response and opposition to paragraph  38**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 38, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 22 and 23, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41). Also reference refence Exhibit T, Work Violence Report, and Exhibit U, Work Violence Report,  attached. There was no fight, there was no altercation. I am trying contact with defendant Smart.

It provides, and I again affirm that I  have personal knowledge that

Work place violence report – My response to the approach of Defendant Smart was "back up back up" indicating I am not looking for an altercation. My hand went up in self-defense. Defendant Smart approached me for no reason. A paranoid security guard who said, "You are looking at me." I said nothing to Defendant Smart that morning other than "back up, back up" I did not provoke this incident. This is what did happen. When I walked into the DMV that day and got on the line to get summonses, I did turn around because Defendant Smart was pacing back and forth. He was grumbling and mumbling and shaking his head side to side.  At which point he approached me in a hostile and aggressive manner. I told him "back up, back up" and he refused. I put my hand up in self-defense. Please look at the "Additional Comments" on the Work Violence report submitted. Defendant Gelbstein  gives me no opportunity to respond to the incident. He has me escorted out and then permanently banned from the DMV TVB. Defendant Gelbstein provides no indication that he did any formal investigation of this incident, yet he bans me for life from practicing at the DMV TVB. There is no indication that he reviewed security tapes, questioned me or

investigated the incident as he did not question me concerning the incident with Defendant Tahir concerning me placing a briefcase on a chair in an attorney's room. I was given the phone number by Defendant Calvo of Defendant Traschen, who indicated to me that I was permanently banned from the TVB. Once again for placing a briefcase on a chair in an attorney's room that Defendant Tahir claims as his own and for telling a security guard Smart "back up back up" after his approach upon my person in an angry hostile manner and accusing me of looking at him. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

My hand went up in defensive posture. Defendant Smart was in my personal space, and this was not for the first time. Reference my letter to Defendant Prickett Morgan Exhibit D where I sought relief from such behavior form Defendant Smart. As shown in my Complaint, dated May 8, 2018, Defendant Smart has pushed me from behind of for no apparent reason, gave me the sign of the cross and spear hand while standing on the clerk entry summons line (an I believe was removed from  his duties at the Brooklyn South SMV TVB for approximately two weeks after such incident by Defendant Gelbstein), to get the summons for a day's hearings, got in my face several times in a threatening aggressive manner between June 20, 2012 and May 111, 2015 and when I asked what was the problem his response was "F--k you, you are the problem, and has admitted to taking money from one of my clients while at some point in time between December 11, 2011 to June 20, 2012 when I was required to take an anger management. He has admitted to taking $80 owed from a client on a $150 fee. He admits he took this

money because he indicates that I authorized him to do so. An outright lie. He indicated that he gave this money to me. A lie. Simple and plain. During the time when Defendant Smart took this money between December 11, 2011 and June 20, 2012 I had no communication with the DMV and specifically with a security guard who worked at the DMV. I reported this abuse and theft to Defendant Gelbstein, he performed an investigation and let Defendant Smart remain at the Brooklyn TVB. After which time a series of threats and assaults began by Defendant Smart against my person at the Brooklyn DMV TVB which culminated in the incident of May 11, 2015. I have no motive for having any type of altercation with a security guard. I was there to represent clients and make my living. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof**. The defendant Smart approached me unproved on May 11, 2015 and created the incident which led to my removal.

I testify, I wrote the Attorney General because I was fearful that another incident with Smart would occur. See Capogrosso Deposition. Page 415, 416.

I testify, that I am not the aggressor, "then the incident happens. On May 11, this guy comes again. He comes, he gets in my face again. I put up my hand. I tell him back up back up. See Capogrosso Deposition. Page 416 14-17.

I testify, "I saw this guy Smart was not backing off. I saw it he didn't want to stop." See Capogrosso Deposition. Page 421.

Defendant Smar lies concerning the events of May 11, 2015. Reference Work Violence Report, Exhibit T and Exhibit U, which claims an open palm,

I cite Smart Deposition, attached as Exhibit D, Smart deposition, page 7, lines 22-23, Smart testifies" . I was shocked He just punched me in the chest." Smart lies. Tis is inconsistent testimony with respect to the statements given to the police by Smart. Smart files the police report which become the basis for the Work Violence Reports, Exhibits U and Exhibit V. Smart testifies, " my response was  well go 61on him, so I went to 60, iI got 61 on him and two police officer came with me." Smart deposition, Exhibit D, page 8.

Smart tells two different stories. He lies to this Court and such lies have formed the basis for my removal from the New York TVBs.

**The motion should be denied because in response and opposition to paragraph 39**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 39;, these allegations are not true, they are false, they are inconsistent

In support, reference my response to Exhibit 22 and 23, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41). Also reference refence Exhibit T, Work Violence Report, and Exhibit U, Work Violence Report, attached. There was no fight, there was no altercation. I am trying contact with defendant Smart.

It provides, and I again affirm that I have personal knowledge that

Work place violence report – My response to the approach of Defendant Smart was "back up back up" indicating I am not looking for an altercation. My hand went up in self-defense. Defendant Smart approached me for no reason. A paranoid security guard who said, "You are looking at me."I said nothing to Defendant Smart that morning other than "back up, back up" I did not provoke this incident. This is what did happen. When I walked into the DMV that day and got on the line to get summonses, I did turn around because Defendant Smart was pacing back and forth. He was grumbling and mumbling and shaking his head side to side. At which point he approached me in a hostile and aggressive manner. I told him "back up, back up" and he refused. I put my hand up in self-defense. Please look at the "Additional Comments" on the Work Violence report submitted. Defendant Gelbstein gives me no opportunity to respond to the incident. He has me escorted out and then permanently banned from the DMV TVB. Defendant Gelbstein provides no indication that he did any formal investigation of this incident, yet he bans me for life from practicing at the DMV TVB. There is no indication that he reviewed security tapes, questioned me or

investigated the incident as he did not question me concerning the incident with Defendant Tahir concerning me placing a briefcase on a chair in an attorney's room. I was given the phone number by Defendant Calvo of Defendant Traschen, who indicated to me that I was permanently banned from the TVB. Once again for placing a briefcase on a chair in an attorney's room that Defendant Tahir claims as his own and for telling a security guard Smart "back up back up" after his approach upon my person in an angry hostile manner and accusing me of looking at him. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

My hand went up in defensive posture. Defendant Smart was in my personal space, and this was not for the first time. Reference my letter to Defendant Prickett Morgan Exhibit D where I sought relief from such behavior form Defendant Smart. As shown in my Complaint, dated May 8, 2018, Defendant Smart has pushed me from behind of for no apparent reason, gave me the sign of the cross and spear hand while standing on the clerk entry summons line (an I believe was removed from his duties at the Brooklyn South SMV TVB for approximately two weeks after such incident by Defendant Gelbstein), to get the summons for a day's hearings, got in my face several times in a threatening aggressive manner between June 20, 2012 and May 111, 2015 and  when I asked what was the problem his response was "F--k you, you are the problem, and has admitted to taking money from one of my clients while at some point in time between December 11, 2011 to June 20, 2012 when I was required to take an anger management. He has admitted to taking $80 owed from a client on a $150 fee. He admits he took this money because he indicates that I

66

authorized him to do so. An outright lie. He indicated that he gave this money to me. A lie. Simple and plain. During the time when Defendant Smart took this money between December 11, 2011 and June 20, 2012 I had no communication with the DMV and specifically with a security guard who worked at the DMV. I reported this abuse and theft to Defendant Gelbstein, he performed an investigation and let Defendant Smart remain at the Brooklyn TVB. After which time a series of threats and assaults began by Defendant Smart against my person at the Brooklyn DMV TVB which culminated in the incident of May 11, 2015. I have no motive for having any type of altercation with a security guard. I was there to represent clients and make my living. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs"  conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I testify, I wrote the Attorney General because I was fearful that another incident with Smart would occur. See Capogrosso Deposition. Page  415, 416.

I testify, that I am not the aggressor, "then the incident happens. On May 11, this guy comes again. He comes, he gets in my face again. I put up my hand. I tell him back up back up. See Capogrosso Deposition. Page  416 14-17.

I testify, "I saw this guy Smart was not backing off. I saw it he didn't want to stop." See Capogrosso Deposition. Page  421.

Defendant Smart lies concerning the events of May 11, 2015. Reference Work Violence Report, Exhibit T  and Exhibit U, which claims an open palm,

I cite Smart Deposition, attached as Exhibit D, Smart deposition, page 7, lines 22-23, Smart testifies" . I was shocked He just punched me in the chest." Smart lies. Tis is

inconsistent testimony with respect to the statements given to the police by Smart. Smart files the police report which become the basis for the Work Violence Reports, Exhibits U and Exhibit V. Smart testifies, " my response was  well go 61on him, so I went to 60, I got 61 on him and two police officer came with me." Smart deposition, Exhibit D, page 8.

Smart tells two different stories. He lies to this Court and such lies have formed the basis for my removal from the New York TVBs.

**The motion should be denied because in response and opposition to paragraph  40**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 40;, these allegations are not true, they are false they are inconsistent.

I affirm I was told to call Ida Traschen. By Daniel Calvo, I was told to leave ethe building immediately. Exhibit T, Work Violence Report, Exhibit U, Work Violence Report, attached.

No pictorial evidence exists as to the alleged altercation. Reference Exhibit V, Memorandum.

Defendant Gelbstein was not present at the Brooklyn TVB on the morning of May 11, 2015 so as to observe the incident, question witnesses, observe videotape with myself an defendant Smart. See Exhibit A, Gelbstein deposition  Page 4, page 5.

Defendant Gelbstein was called by defendant Calvo on the morning of May 11, 2015, See Exhibit A, Gelbstein deposition  Page 9-10. So as not to be able to observe the incident, question witnesses, observe videotape with myself an defendant Smart

Defendant Gelbstein had me removed "I must have told her to have you removed w and to give you legal counsel's phone number" Gelbstein deposition  Page 9 17-19.

Defendant Gelbstein testifies, when questioned

Q. So, you don't recall ever observing the videotape?

A. I don't recall.

Q. Did you keep possession of the videotape.

A. I personally did not.

Q. At any point in time did you view the videotape

A. I don't recall/

I affirm, without observing  the incident, questioning witnesses, observing

videotape tit is impossible to ascertain the nature of the incident between myself and

defendant Smart.

I further support, Traschen deposition, Exhibit B, page 10,

Q. Did you view or revie ay of the videotape of the alleged incident on May 11,

2015?

A. No

Defendant Traschen did not view any videotape.

She was not present at the Brooklyn TVB on the morning of May 11, 2015 to

observe the incident, question witnesses, observe videotape. I was told to call legal

counsel. Reference Exhibits T and U. I s kth Court to take judicial notice legal counsel

office, represented by defendant Trraschen, Is in Albany NY and not Brooklyn New

York. I affirm, without observing  the incident, questioning witnesses, observing

videotape tit is impossible to ascertain the nature of the incident between myself and

defendant Smart.


Further in support, I cite Exhibit C Calvo deposition.

Defendant Gelbstein was not at the Brooklyn TVB, Exhibit C Calvo deposition

page 5..

Defendant Calvo cannot identify the witness who told her there was an incident

between myself and defendant Smart, Exhibit C Calvo deposition ,page 5.

70

Defendant Calvo cannot identify that defendant Smart e witness who told her there was an incident between myself and defendant Smart, Exhibit C Calvo deposition page 5.

Defendant Calvo did not observe the incident between myself and defendant Smart on the morning of May 11, 2015.

Q. But you did not observe what happened, right?

A. No I did not.

Q. And you didn't look at any videotape, right?

A. Not that I recall.

Exhibit C Calvo deposition page 6.

Defendant Calvo testifies, "I didn't make any decision whether it was the truth or not, I just reported what I was told." Exhibit C Calvo deposition page 7.

I affirm, without observing  the incident, questioning witnesses, observing videotape tit is impossible to ascertain the nature of the incident between myself and defendant Smart.

**The motion should be denied because in response and opposition to paragraph 41**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual

allegations presented in paragraph 41;, these allegations are not true, they are false

they are inconsistent,

I affirm defendant Calvo had everything to do with my removal. She was

present at the Brooklyn TVB. On the morning of May 11, 2015.

Defendant Calvo cannot identify that defendant Smart as the  witness who told

her there was an incident between myself and defendant Smart, Exhibit C Calvo

deposition page 5.

Defendant Calvo did not observe the incident between myself and defendant

Smart on the morning of May 11, 2015.

Q. But you did not observe what happened, right?

A. No I did not.

Q. And you didn't look at any videotape, right?

A. Not that I recall.

Exhibit C Calvo deposition page 6.


Defendant Calvo testifies, "I didn't make any decision whether it was the truth or

not, I just reported what I was told." Exhibit C Calvo deposition page 7.

I affirm, without observing  the incident, questioning witnesses, observing

videotape tit is impossible to ascertain the nature of the incident between myself and

defendant Smart. She made a phone call to defendant Gelbstein.

72

Defendant Calvo testifies, "I just called Judge Gelbstein and let him know what happened and then that was it" Exhibit C Calvo deposition page 6.

I affirm, without observing  the incident, questioning witnesses, observing videotape tit is impossible to ascertain the nature of the incident between myself and defendant Smart so as toto relay such information to defendant Gelbstein.

**The motion should be denied because in response and opposition to paragraph  42**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph ten;, these allegations are not true, they are false they are inconsistent.

I affirm this is not true. In support I testify, "That's exactly what this man said to me, can't you go somewhere else? I saw what you wrote about me, I'm complicit, incapable and incompetent." Capogrosso  deposition page 444.

Those words, "I saw what you wrote about me, I'm complicit, incapable and incompetent"  are found in my letter of complaint, dated March 20, 2015, Exhibit O. Defendant Gelbstein was in possession of my letter of Complaint, Exhibit O. See Exhibit A, Gelbstein deposition, page 16.

I declare under penalty of perjury that the foregoing is true and correct.

June 29, 2021

Respectfully truthfully submitted

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, New York 10804
(914) 806-3692

75

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---

MARIO H. CAPOGROSSO

                                        Plaintiff

-against-                                                CV18-2710

ALAN GELBSTEIN, et. al                          **AFFIRMATION OF SERVICE**

                                        Defendants

---

I, Mario H. Capogrosso, declare under penalty of perjury that I have served a copy of the

attached Opposition to State defendants' and defendant Smart's Motions for Summary Judgment

upon:

Maura Douglas, Esq.
Davis Polk& Wardwell, LLP
450 Lexington Avenue
New York, NY 10017

James Thompson, Esq.
(representing Defendants
Gelbstein, Traschen, Vahdat, Palmieri, Flanagan, Calvo,
and Prickett-Morgan)
Assistant Attorney General
28 Liberty Street
New York, NY 10005

Sadiq Tahir
2994 Coney Island Avenue
Brooklyn, NY 11235

Pec Group of NY
935 S. Lake Blvd. #7
Mahopac, NY 10541

1

via U.S. Postal Service First Class Mail, this 29th day of June, 2021.


New Rochelle, NY
June 29, 2021

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804
(914) 806-3692

2