**EXHIBIT B**

December 17, 2020

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MARIO H. CAPOGROSSO,

PLAINTIFF,

-against-    Case No.:
18 CV 2710 (EK) (LB)

ALAN GELBSTEIN, in his individual capacity,
IDA TRASCHEN, in his individual capacity,
DANIELLE CALVO, in her capacity, SADIQ
TAHIR, in his individual capacity, PEC
GROUP OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER, in his
official capacity,
            DEFENDANTS.
----------------------------------------X
DATE: December 17, 2020
TIME: 12:24 P.M.

DEPOSITION of the Defendant, IDA
TRASCHEN, taken by the Plaintiff, pursuant
to a Notice and to the Federal Rules of
Civil Procedure, held VIA ZOOM
VIDEOCONFERENCE, before Jamie Newman, a
Notary Public of the State of New York.

## Page 2

1
2  A P P E A R A N C E S :
3
4  THE LAW FIRM OF MARIO H. CAPOGROSSO
   PLAINTIFF PRO SE
5  21 Sheldrake Place
   New Rochelle, New York 10804
6  Capogrosso@aol.com
7
   OFFICE OF THE NEW YORK STATE ATTORNEY
8  GENERAL
      Attorneys for the Defendants
9     ALAN GELBSTEIN, in his individual
   capacity, IDA TRASCHEN, in her individual
10   capacity, DANIELLE CALVO, in her
   capacity, SADIQ TAHIR, in his individual
11   capacity, PEC GROUP OF NY, INC., DAVID
   SMART, and DMV COMMISSIONER MARK
12   SCHROEDER, in his official capacity
   28 Liberty Street, 17th Floor
13   New York, New York 10005
   BY: JAMES THOMPSON, ESQ.
14   james.thompson@ag.ny.gov
15
16   DMV LEGAL BUREAU
      Attorneys for the Defendant
17   DMV COMMISSIONER MARK SCHROEDER, in his
   official capacity
18   6 Empire State Plaza, Room 522A
   Albany, New York 11228
19   BY: BARBARA MONTENA, ESQ.
   File #: 18CV2710
20   barbara.montena@dmv.nyc.gov
21
22            *   *   *   *
23
24
25

## Page 3

1         IDA TRASCHEN
2      (Whereupon, all 86 exhibits
3   were previously marked by Counsel,
4   Mark Capogrosso.
5   I D A   T R A S C H E N, called as a
6   witness, having been first duly sworn by a
7   Notary Public of the State of New York, was
8   examined and testified as follows:
9   EXAMINATION BY
10  MR. CAPOGROSSO:
11      Q.  Please state your name for the
12  record.
13      A.  Ida Traschen.
14      Q.  What is your address?
15      A.  1600 Spring Avenue Extension,
16  Wynantskill, New York 12198.
17      Q.  Defendant Traschen I have a few
18  questions.  I just ask that you speak
19  truthfully so we get to the truth.
20      On May 11, 2015 you had me
21  removed from the Brooklyn TVB; is that
22  correct?
23      A.  I don't recall the date that
24  you were requested to not practice any more
25  in the Brooklyn TVB.

## Page 4

1         IDA TRASCHEN
2      Q.  Did you make a phone call to me
3   on the morning of May 11, 2015?
4      A.  I did have phone call with you,
5   but I do not recall the date.
6      Q.  Do you remember what the
7   conversation was?
8      A.  I have a vague recollection of
9   the conversation.
10     Q.  Tell me what you remember?
11     A.  I remember that you asked why
12  you had been terminated from practicing in
13  the Brooklyn TVB -- the Coney Island TVB
14  and I explained that based on conversation
15  with Alan Gelbstein and some documentation
16  he presented that, we reached the
17  conclusion that you posed a -- you were not
18  acting in accordance with the rules and
19  regulations for attorneys in the TVB.
20     That the employees felt
21  threatened, that the security guard had
22  raised concerns and that you had been
23  belligerent and threatening.  That's all I
24  recall on a very high level.
25     Q.  On May 11, 2015 I was removed

1 (Pages 1 to 4)

December 17, 2020

Page 5

IDA TRASCHEN

1
2  from the Brooklyn TVB. I was told by
3  Danielle Calvo who is also a defendant in
4  this action to call you. At that point in
5  time I was told by you that I was banned
6  from the practice of law at all New York
7  City TVBs.
8         Is that true?
9         MR. THOMPSON: Objection to the
10  form of the question. You can
11  answer.
12     A.  I don't recall the date of the
13  phone call, but I did confirm that you were
14  banned from practicing at all TVBs.
15     Q.  All TVBs.
16         And you said you had a
17  conversation with Defendant Gelbstein on
18  the morning of May 11, 2015?
19     A.  I had a conversation with Alan
20  Gelbstein, but I don't recall the date.
21     Q.  Was it before --
22         MR. THOMPSON: Objection,
23  hearsay. As in Judge Gelbstein
24  deposition, we will object on the
25  basis of privilege to any questions

Page 6

IDA TRASCHEN

1
2  of content.
3         MR. CAPOGROSSO: I'm not asking
4  content.
5     Q.  When you had the conversation,
6  I'm not asking the content of the
7  conversation, when you had the conversation
8  with Defendant Gelbstein, was it before the
9  morning of May 11, 2015 or was it after the
10  morning of May 11, 2015?
11     A.  I don't recall the date of my
12  conversation with Judge Gelbstein.
13     Q.  Did you have me removed from
14  the Brooklyn TVB and the practice of law
15  from all TVBs, after you had a conversation
16  with Defendant Gelbstein?
17     A.  Yes.
18     Q.  Afterwards?
19     A.  Subsequent to the conversation
20  with him, yes.
21     Q.  Afterwards, not before.
22         All right. Let me bring your
23  attention to the police report that was
24  filed, Exhibit 70. Can we go to
25  Exhibit 70.

Page 7

IDA TRASCHEN

1
2         THE COURT REPORTER: This one?
3         MR. CAPOGROSSO: Actually, I
4  think it's Exhibit 68.
5         (Whereupon, Plaintiff's Exhibit
6  68, previously marked, was
7  introduced.)
8         MR. THOMPSON: Mr. Capogrosso,
9  those redactions, were those
10  redactions that you put in?
11         MR. CAPOGROSSO: No, those were
12  submissions I received from your
13  office as you gave them to me.
14         Further down, please.
15         (Whereupon, the Court Reporter
16  complied.)
17     Q.  I'm going to draw your
18  attention to this report.
19         I'm sorry, can you please go up
20  to the top of the page, I apologize. Now,
21  this a work violence report made by David
22  Smart.
23         Are you familiar with this work
24  violence report?
25     A.  I don't know if I have ever

Page 8

IDA TRASCHEN

1
2  seen this particular report.
3     Q.  Can you please scroll down,
4  thank you.
5         (Whereupon, the Court Reporter
6  complied.)
7     Q.  Now, I'm going to direct your
8  attention to this paragraph right here, and
9  I'm going to direct you to this is a
10  comment, in the additional comments. This
11  is Danielle Calvo, a defendant in this
12  matter writing this in this work violence
13  report concerning the incident of May 11,
14  2015.
15         "I was told" -- I'll direct
16  your attention now to the third line, "I
17  was told by Judge Gelbstein to go with the
18  officers from the police room to tell
19  Mr. Capogrosso that he must leave the
20  building and to give him legal's phone
21  number for any further details. I did that
22  and he left the building."
23         Now, is that a true statement,
24  were you in conversation with Danielle
25  Calvo on the morning of May 11, 2015?

2 (Pages 5 to 8)

December 17, 2020

## Page 9

IDA TRASCHEN

1
2      A.  I don't recall any --
3         MR. THOMPSON:  Objection to the
4    form of the question, you can answer.
5      A.  I'm sorry, I don't recall any
6    conversation with Danielle Calvo.
7      Q.  But, Danielle Calvo, according
8    to this additional comment, indicates that
9    she was told for me to call legal counsel;
10   is that fair to say?
11     A.  Well, she says that in the
12   statement.  I don't recall having a
13   conversation with her on that day.
14     Q.  On the morning of May 11, 2015,
15   I was removed from the Brooklyn TVB after I
16   was told by -- I was removed by police
17   officers under the direction of Danielle
18   Calvo who was told by Judge Gelbstein to
19   have me removed and I was told to call you.
20   And your conversation with me was, "you're
21   banned from the practice of law at all" --
22        MR. THOMPSON:  Objection.
23   Who's testifying here?
24     Q.  Now in response to that
25   preface, it was a preface.

## Page 10

IDA TRASCHEN

1
2        Did you view or review any
3    videotape of the alleged incident on
4    May 11, 2015?
5      A.  No.
6      Q.  So, you had me removed without
7    viewing any videotape?
8      A.  I did not review any videotape.
9      Q.  Yet you still had me removed
10   from the practice of law and all New York
11   TVBs?
12        MR. THOMPSON:  Objection, asked
13   and answered.  You can respond.
14     Q.  I'm going to ask it again.
15        Did you have me removed from
16   the practice of law in all New York TVBs
17   without reviewing the videotape?
18        MR. THOMPSON:  Same objection,
19   you can answer.
20     A.  I did not review any videotape
21   and I did -- I was part of the decision to
22   have you removed, that is correct.
23     Q.  So, for what reason did you
24   have me removed, if you didn't review the
25   videotape?

## Page 11

IDA TRASCHEN

1
2      A.  I don't -- I was not aware
3    there was a videotape, I don't know if
4    there was a videotape.  As I explained
5    before and my conversations with Judge
6    Gelbstein are privileged, but on a high
7    level I can tell you based on our
8    conversation and documentation he submitted
9    to me, I agreed that you should be removed.
10     Q.  Tell me the basis for my
11   removal, why did you remove me; give me the
12   actual complaints, tell me exactly what was
13   the basis for your removal of me?
14        MR. THOMPSON:  Objection.  Is
15   that a question?
16        MR. CAPOGROSSO:  Yes.
17     Q.  What's the basis for your
18   removal?
19     A.  Well, I'm not going to get into
20   privileged conversation and this is five
21   years ago.
22     Q.  I could care --
23     A.  Well, it was five years ago, my
24   recollection is vague, but I do recall that
25   based on the specifics of my conversation

## Page 12

IDA TRASCHEN

1
2    with Judge Gelbstein and on documentation
3    he sent to me, I agreed with the decision
4    to have you removed.  That's all I can tell
5    you.
6      Q.  And you didn't keep any
7    documentation as to the reason for my
8    removal?
9         MR. THOMPSON:  Objection to the
10   form of the question.
11     A.  I don't have any documentation
12   at home, I'm retired.
13     Q.  Did you review the voracity of
14   any documents or affidavits written against
15   me and my practice of law?
16     A.  I don't understand.
17     Q.  Prior to having me removed, did
18   you review any of the documents filed
19   against -- written against me, prior to you
20   having me removed from the practice of law
21   at the New York City TVB?
22     A.  As I stated, I did review some
23   documents that Alan Gelbstein sent to me.
24     Q.  Can you tell me which documents
25   you reviewed?

3 (Pages 9 to 12)

Page 13

```
 1            IDA TRASCHEN
 2       MR. THOMPSON: Objection,
 3   privileged.
 4       A.   I don't recall the specifics,
 5   it was five years ago.
 6       Q.   Did you question the voracity
 7   or truthfulness of any of affidavits or
 8   evidence submitted against me and my
 9   office?
10       A.   I recall during my conversation
11   with Alan that we reviewed the documents,
12   we went over them and I ask him questions
13   about them.  And he -- I mean, that's all I
14   can tell you at a high level.  I don't
15   recall the details of the conversation.
16       Q.   I don't understand what you're
17   saying.  I'm at a low level.  See, I'm the
18   guy on the street defending these people.
19   I'm not at a high level, I'm at a low
20   level.
21           So I don't understand what
22   you're saying by high level.  I'm at the
23   low level, I'm the guy actually on the
24   street defending people in the courtroom.
25   So, I'm the low level guy.
```

Page 14

```
 1            IDA TRASCHEN
 2       Prefacing the question with
 3   that because I don't understand what high
 4   level means, did you ever question the
 5   people who wrote the affidavits and
 6   submitted complaints against me as to
 7   whether they were truthful or not, did you
 8   ever question the people who wrote them?
 9       A.   Do you mean, did I talk to them
10   and question them?
11       Q.   Yes.
12       A.   No, I did not.
13       Q.   Did you ever give me an
14   opportunity to respond to the affidavits
15   and complaints written against me and my
16   office?
17       A.   I'm not sure I understand the
18   question, can you just --
19       Q.   There were affidavits and
20   complaints written against my office that
21   you and Defendant Gelbstein reviewed and
22   based on those affidavits and complaints
23   and the incident allegedly of May 11, 2015,
24   you had me removed from the practice of law
25   in all New York TVBs.
```

Page 15

```
 1            IDA TRASCHEN
 2       Did you ever allow me the
 3   opportunity to respond to any of those
 4   affidavits or complaints?
 5       A.   Well, I did have the phone
 6   conversation with you, but -- and I did not
 7   know if anyone else had any discussions
 8   with you about it.
 9       Q.   We had a phone conversation on
10   the morning of May 11th, how long did that
11   phone conversation last, Defendant
12   Traschen?
13       A.   I don't recall.
14       Q.   So, now you are legal counsel
15   for the DMV; right, that was with your
16   title?
17       A.   I was first assistant counsel
18   at the time of the incident.
19       Q.   And you made a determination to
20   have me removed from the Brooklyn TVB and
21   the practice of law in all TVBs with no
22   opportunity for me to respond to any
23   affidavits or complaints, that's your
24   testimony; right?
25           MR. THOMPSON:  Objection to the
```

Page 16

```
 1            IDA TRASCHEN
 2   form of the question.
 3       Q.   Is that your testimony?
 4       A.   I can't testify as to what
 5   other people permitted you to do or not to
 6   do, but in terms of I did not ask you for
 7   affidavits, I did not ask you for
 8   testimony.
 9       Q.   You did not question -- you did
10   not look into the voracity of truthfulness
11   of any of these complaints; is that right?
12           MR. THOMPSON:  Objection to
13   form.
14       A.   That is not correct.
15       Q.   What investigation did you make
16   into these complaints, tell me?
17       A.   Like I explained, I had a
18   conversation with Judge Gelbstein about the
19   specifics of the complaints.
20       Q.   What did Defendant Gelbstein
21   tell you that he did concerning these
22   complaints, what investigation?
23           MR. THOMPSON:  Objection,
24   privilege.  I'm going to instruct you
25   not to answer.
```

                                4  (Pages 13 to 16)

December 17, 2020

Page 17

IDA TRASCHEN
1
2     A.   That is privileged and as I
3   said many times, I don't remember the
4   details of our conversation because it was
5   five years ago.
6     Q.   Well, lets just ban an attorney
7   from the practice of law, lets just do
8   that.
9        MR. THOMPSON:  Objection,
10  argumentative.
11       MR. CAPOGROSSO:  Oh, and I
12  agree.
13    Q.   Did you allow me due process in
14  any respect concerning of arguing and
15  rebutting any of these complaints?
16       MR. THOMPSON:  Objection to the
17  form.
18    Q.   Do you know what due process
19  is, Defendant Traschen?
20    A.   Yes.
21    Q.   What is due process, what is
22  due process?
23       MR. THOMPSON:  Objection, you
24  can answer.
25    A.   It gives someone an opportunity

Page 18

IDA TRASCHEN
1
2   to -- um -- in an appropriate circumstance,
3   make a case regarding a certain matter.
4   But, it's such a vague question, I'm not
5   really sure how to answer that.
6     Q.   Well, from a low level I'll
7   tell you what it means from my standpoint
8   and tell me if you agree.  It allows a
9   party accused to defend himself, is that
10  due process?
11    A.   I don't really -- I think this
12  goes beyond the scope of what I'm able to
13  testify about.
14    Q.   Does due process allow a party
15  to answer complaints, provide affidavits,
16  proved evidence, provide witnesses in
17  rebuttal, does it that allow --
18       MR. THOMPSON:  Objection to the
19  form of question, you can answer.
20    A.   All I can say is I don't
21  believe there was a right to a hearing in
22  this matter or right to an opportunity to
23  be heard.  And, at this point because this
24  was five years ago and I don't remember all
25  the details, I really can't address the

Page 19

IDA TRASCHEN
1
2   matter further.
3     Q.   Did you keep a copy of the
4   videotape on May 11, 2015?
5        MR. THOMPSON:  Objection to the
6   form of the question.  You can
7   answer.
8     A.   I don't know if there was a
9   videotape.
10    Q.   So, you never viewed the
11  videotape?
12       MR. THOMPSON:  Same objection.
13    A.   It there was one, I didn't view
14  it.
15    Q.   Did you review any police
16  reports or the work violence reports that
17  were submitted to the --
18    A.   I -- I'm sorry, I don't recall.
19    Q.   You don't recall?
20    A.   I don't.
21    Q.   Would such reports come to your
22  office, police reports and work violence
23  reports?
24    A.   As in the normal course of
25  business, no.

Page 20

IDA TRASCHEN
1
2     Q.   But, in an action like this and
3   a complaint like this, would they have come
4   to your office?
5        MR. THOMPSON:  Objection to the
6   form of question, you can answer.
7     A.   Not necessarily.
8     Q.   You reviewed none of the police
9   reports, none of the work violence reports,
10  but you had me banned; is that fair to say?
11       MR. THOMPSON:  Objection to
12  form, you can answer.
13    A.   No, it's not fair to say
14  because I don't recall if I viewed them or
15  not.
16    Q.   So, you might have reviewed
17  them, you might not have reviewed that; is
18  that fair to say?
19    A.   That is correct.
20    Q.   Yet you still had me banned
21  from the practice of law in all New York
22  TVBs; that's fair to say, right?
23       MR. THOMPSON:  Object to the
24  form, you can answer.
25    A.   That is correct, you were

5  (Pages 17 to 20)

December 17, 2020

Page 21

IDA TRASCHEN

1
2 banned from practicing in all TVBs.
3      Q.   Now, as legal counsel for the
4 Department of Motor Vehicles you had the
5 ability to grieve me, am I right for saying
6 that, over complaints and allegations
7 against my conduct?
8      A.   I don't understand the
9 question.  I don't know what you mean by
10 "grieve you".
11      Q.   Complaints to the grievance
12 committee to the State of New York
13 concerning my actions as an attorney?
14      A.   Are you asking me if I could
15 file a grievance?
16      Q.   Yes.
17           Did you have the opportunity to
18 do that?
19      A.   I suppose I have the ability to
20 do that.
21      Q.   You had the ability?
22      A.   Yeah.
23      Q.   Did you file such a grievance
24 against an attorney named Eamon Teague?
25      A.   I don't recall doing so.

Page 22

IDA TRASCHEN

1
2      Q.   Was there a grievance filed
3 against an attorney Eamon Teague by the
4 DMV?
5      A.   I believe there was, but I'm
6 not a hundred percent sure because it was
7 several years ago.
8      Q.   Were you privy to that
9 grievance?
10      A.   I don't recall if I read it, if
11 there was one filed, but I mean, I have a
12 vague recollection that there was an issue
13 with him.
14      Q.   Now, a you didn't grieve my
15 office in any respect, am I right in saying
16 that?
17      A.   I'm sorry, I didn't hear the
18 question.
19      Q.   The DMV never grieved my office
20 before the grievance committee, am I right
21 in saying that?
22      A.   I don't know.
23      Q.   Were you ever a party of any
24 grievance to the grievance committee with
25 respect to my office?

Page 23

IDA TRASCHEN

1
2      A.   I was not.
3      Q.   Well, my office has never been
4 grieved by the grievance committee with
5 respect to any action I took as an attorney
6 working with New York TVB, do you
7 understand that?
8      A.   I understand what you're
9 saying.
10           MR. THOMPSON:  Objection to the
11      form of the question.
12      Q.   Did you investigate whether
13 there were any grievances filed against my
14 office by anyone, specifically by the DMV
15 concerning my actions at the New York
16 Traffic Violations Bureau?
17      A.   I don't remember if I
18 investigated that.
19      Q.   You make no investigation to
20 the grievance committee concerning me as an
21 attorney, yet you had me banned, is that a
22 fair statement?
23      A.   No, I said I don't recall if
24 there was an investigation of your
25 grievances.

Page 24

IDA TRASCHEN

1
2      Q.   So, you don't recall any of the
3 foundation or any of the reasons for having
4 me removed from the New York Traffic
5 Violations Bureau?
6           MR. THOMPSON:  Objection to the
7      form of the question.  You can
8      answer.
9      A.   That is not correct.  I said
10 because of privilege, Number 1, I'm not
11 going to go into any details about any
12 conversations I had with Judge Gelbstein.
13 And Number 2, any conversations I did have
14 with him, I only recall the details at a
15 high level.
16      Q.   I don't know what high level
17 means, I'm at a low level.
18      A.   I understand the general --
19      Q.   I'd like to know the specific
20 reasons you banned me from the TVB.  I want
21 to know the specific reasons, what I did
22 exactly, tell me what?
23           MR. THOMPSON:  Objection to the
24      form of question.  You can answer.
25      A.   I think I've already gone over

December 17, 2020

---

Page 25

IDA TRASCHEN

1
2  this, that Judge Gelbstein and I had a
3  conversation, he presented documentation
4  that suggested that your behavior was
5  threatening and belligerent and that staff
6  felt threatened and there was -- I know
7  there as an incident involving the security
8  guard. Beyond that, as I have said this
9  was five years ago and I don't remember the
10  details of that documentation.
11      Q.  But that ban still remains in
12  effect; right?
13      A.  That is correct.
14      Q.  You're acting as a
15  representative of the State while you
16  worked at the DMV?
17      MR. THOMPSON:  Objection to the
18  form of the question.  You can
19  answer.
20      A.  I was acting as first assistant
21  counsel to the Department of Motor
22  Vehicles.
23      Q.  Were you agent of the State?
24      MR. THOMPSON:  Objection to the
25  form of the question.  You can

---

Page 26

IDA TRASCHEN

1
2  answer.
3      A.  Well, that's a legal question
4  which I'm not prepared to answer.
5      Q.  Who paid your salary?
6      A.  I paid my salary.  I don't know
7  where the funds came from.  I don't know if
8  it was from the Department's funds or from
9  the general fund of the State.
10      Q.  It's either the Department of
11  Motor Vehicles or New York State, would
12  that be fair to say?
13      A.  That would be fair to say.
14      Q.  Did you respond to any of my
15  phone calls or letters to your office
16  concerning my removal that you removed me
17  from the New York Traffic Violations Bureau
18  on May 11th?
19      MR. THOMPSON:  Objection to the
20  form of the question.  You can
21  answer.
22      Q.  Did you respond to any of my
23  phone calls or letters?
24      A.  I do recall having one phone
25  conversation with you.  I do not recall

---

Page 27

IDA TRASCHEN

1
2  having any other conversations with you on
3  the phone nor do I recall responding to
4  anything in writing.
5      Q.  You didn't respond to me
6  because you never picked up the phone,
7  right.  I made many calls to my office
8  and your secretary refused to let them go
9  through; is that fair?
10      MR. THOMPSON:  Objection to the
11  form of the question.  You can
12  answer.
13      A.  All I can tell you is I only
14  had the one conversation with you.  I don't
15  recall having any further conversations
16  with you on the phone.
17      Q.  And that was a very short
18  conversation on the morning of May 11, 2015
19  where you told me I was banned from the
20  practice of law at all New York TVBs;
21  right?
22      MR. THOMPSON:  Objection as to
23  form.
24      A.  I don't recall the length of
25  the phone call.  I don't recall the date of

---

Page 28

IDA TRASCHEN

1
2  the phone call, but you are correct that I
3  did confirm that you were banned from
4  practicing at TVBs.
5      Q.  There was a letter written on
6  March 20, 2015 to Attorney General
7  Pricket-Morgan Exhibit 15.
8      (Whereupon, Plaintiff's Exhibit
9  15, previously marked, was
10  introduced.)
11      Q.  Are you familiar with this
12  letter?
13      A.  Let me just take a moment to
14  read it, please.
15      Q.  Are you familiar with this
16  letter?
17      A.  I do remember a letter from
18  Pricket-Morgan that she shared with me.
19  Reading it now, I mean...
20      Q.  When did she share it with you?
21      A.  I don't know the exact date.
22  My understanding -- I'm sorry, go ahead.
23      Q.  Was it before the incident of
24  May 11, 2015 and my ban or afterwards?
25      A.  I believe it was before.

---

DEITZ Court Reporting... A Lexitas Company
800-678-0166

December 17, 2020

Page 29

IDA TRASCHEN

1
2    Q.   How far before?
3    A.   I don't recall.
4    Q.   You don't?
5    A.   No.
6    Q.   Did you take any action in
7  response to this letter; did you do
8  anything in response to this remember?
9    A.   I don't remember if I did
10  anything.
11    Q.   Now, I'm making complaints
12  against your security guard at the Brooklyn
13  TVB, Defendant Smart and the administrative
14  law judge, Defendant Gelbstein.
15    A.   Uh-hmm.
16    Q.   That Defendant Smart was
17  harassing, threatening me, verbally,
18  physically.  I complained to Defendant
19  Gelbstein and he laughed and giggled and
20  told me "a spade is a spade."
21        Now, you took no action in
22  response to any of these complaints either
23  against Defendant Smart or Defendant
24  Gelbstein?
25    A.   I don't recall if I took any

Page 30

IDA TRASCHEN

1
2  action.
3        MR. THOMPSON:  Objection to the
4    form of the question.
5    Q.   Did you take any action?
6    A.   I don't recall if I took any
7  action.
8    Q.   But you swept my complaint
9  under the rug, this complaint you swept
10  under the rug, is that --
11        MR. THOMPSON:  Objection to the
12    form of question.  And Mr. Capogrosso
13    there's no need to yell.
14    Q.   Did you sweep it under the rug?
15    A.   No.  I don't recall if I took
16  any action.
17    Q.   Why didn't you take any action?
18    A.   I said I don't recall if I took
19  any action.
20    Q.   But you don't recall the action
21  that you might have taken?
22    A.   That is correct.
23    Q.   Did you investigate any of the
24  complaints that I made either against
25  Defendant Smart or Defendant Gelbstein?

Page 31

IDA TRASCHEN

1
2    A.   As I said, I don't recall.
3    Q.   Did you make any calls to my
4  office or to me personally to rectify these
5  complaints?
6    A.   I don't recall.
7    Q.   And you made no calls or no
8  correspondence to my office concerning any
9  of the complaints that were written against
10  me, that's true too; right?
11        MR. THOMPSON:  Objection to the
12    form.
13    A.   I don't recall if I wrote
14  anything to you or your office.
15    Q.   Did you give me any opportunity
16  to respond to any of the complaints or
17  affidavits written against me?
18    A.   Are we talking about the
19  letters still or something else?
20    Q.   Any of the complaints written
21  by -- concerning my office while I was
22  practicing law at the New York TVB?
23        MR. THOMPSON:  Objection to the
24    form, you can answer.
25    Q.   Did you respond to any of the

Page 32

IDA TRASCHEN

1
2  complaints against me?
3    A.   As I said, other than my phone
4  conversation with you, I don't recall any
5  other action on my part.
6    Q.   So, you just assumed all these
7  allegations and complaints are true, right,
8  is that what you're saying?
9        MR. THOMPSON:  Objection to the
10    form.
11    A.   No.
12    Q.   So, what investigation did you
13  do?
14    A.   Well, as I've explained, this
15  is five years ago.  I don't remember all
16  the details, I do recall reviewing
17  documentation that Judge Gelbstein sent to
18  me and I do recall a conversation regarding
19  the documentation.
20    Q.   Were you personally involved in
21  the removal of me from the practice of law
22  at the New York Traffic Violations Bureau
23  in May of 2015?
24    A.   Can you just clarify what you
25  mean personally involved?

8  (Pages 29 to 32)

December 17, 2020

---

Page 33

IDA TRASCHEN

1
2     Q.   Did you personally ban me from
3   the practice of law at the New York Traffic
4   Violation Bureau?
5     A.   I was involved in the decision.
6   There was Judge Gelbstein and I were
7   involved and there may have been other
8   people, but I don't recall if there were
9   any other people involved.
10    Q.   Who else was involved in this
11  decision?
12    A.   No, I said I don't recall if
13  other people were involved.
14    Q.   But, you made -- I was told to
15  call you and you're the one who told me
16  that you're banned from the practice of
17  law; right?
18    A.   I did tell you that during our
19  phone conversation.
20    Q.   But there might have been other
21  people involved and you don't recall who?
22        MR. THOMPSON:  Objection, asked
23    and answered.
24    A.   That's correct.
25    Q.   But you did have a conversation

---

Page 34

IDA TRASCHEN

1
2   with Judge Gelbstein prior to you banning
3   me?
4     A.   That is correct.
5     Q.   And Judge Gelbstein, as you
6   know, was not in the Brooklyn TVB on the
7   morning of May 11, 2015?
8         MR. THOMPSON:  Objection to the
9     form of question.
10    Q.   Do you know that?
11    A.   I did not know that.
12    Q.   But, you received a call from
13  whom on the morning of May 11, 2015; who
14  did you receive a phone call from?
15    A.   I don't remember the date
16  May 11, 2015.
17    Q.   Did you get a phone call from
18  Defendant Danielle Calvo on the morning
19  May 11, 2015?
20    A.   I don't recall a conversation
21  with her.
22    Q.   Well, somebody called you on
23  the morning of May 11, 2015, and you don't
24  recall who?
25        MR. THOMPSON:  Objection to the

---

Page 35

IDA TRASCHEN

1
2   form of the question.
3     A.   I don't recall if I had a
4   conversation with someone on that day.
5     Q.   Well, what made you on that
6   day, that specific day May 11, 2015, to ban
7   me from the practice of law?
8         MR. THOMPSON:  Objection to the
9     form of the question.
10    A.   I don't recall -- like I said,
11  I didn't recall if that was the date you
12  were banned.
13    Q.   That was the date I was banned.
14    A.   Okay, fine.  But, I don't
15  recall why that date was chosen.
16    Q.   And you recall having no
17  conversations with anybody at the Brooklyn
18  TVB on that day?
19    A.   I don't know if I had
20  conversations with anyone on that date.  I
21  don't recall if I had conversations with
22  anyone from the Brooklyn TVB on that date.
23    Q.   You woke up out of bed and said
24  to yourself let me ban Mr. Capogrosso from
25  the practice of law and all New York TVBs,

---

Page 36

IDA TRASCHEN

1
2   is that what happened?
3         MR. THOMPSON:  Mr. Capogrosso,
4     you've asked her questions and she
5     answered it.  You're asking the same
6     question over and over again.
7     Q.   I'm trying to find out, what
8   made you make the phone call on May 11,
9   2015; what made you make me have Danielle
10  Calvo tell me to call you on May 11, 2015?
11    A.   I don't recall.
12    Q.   So, Danielle Calvo did that on
13  her own volition is that what you're
14  saying?
15    A.   No.
16    Q.   Did you have supervisory
17  authority over the personnel in the
18  Brooklyn TVB?
19        MR. THOMPSON:  Object to the
20    form of question, you can answer.
21    A.   Yes, I did.
22    Q.   You had control over the
23  actions of Defendant Smart, is that fair?
24        MR. THOMPSON:  Objection to the
25    form of the question.  You can

---

9  (Pages 33 to 36)

December 17, 2020

## Page 37

IDA TRASCHEN

1    answer.
2    A.  No.  First of all, I don't know
3  if -- I did not have any authority over
4  security guards in any of our offices.
5    Q.  Did you have authority over the
6  actions of Defendant Gelbstein or Defendant
7  Calvo?
8    MR. THOMPSON:  Objection to the
9  form.  You can answer.
10   A.  I'm not actually sure what you
11 mean by -- can you just repeat your
12 question again.
13   Q.  Did you have supervisory
14 authority over the actions of Defendant
15 Gelbstein?
16   A.  Well, I was their supervisor.
17   Q.  And you were the supervisor of
18 Defendant Calvo also, am I right in saying
19 that?
20   A.  Well, I mean, there's chains
21 involved here.  So, there's people between
22 me and those people, but I mean, they did
23 ultimately report up a chain to me.
24   Q.  Did you have supervisory
25

## Page 38

IDA TRASCHEN

1    authority over the actions of Bushra
2  Vahdat?
3    A.  Yes.
4    Q.  Did you review any of the
5  allegations that Bushra Vahdat wrote
6  against me as to whether they were credible
7  or not?
8    A.  I don't recall if that -- I
9  don't recall that.
10   Q.  Did you have actual
11 constructive notice of any of the
12 complaints that I made against Defendant
13 Smart?
14   MR. THOMPSON:  Objection to the
15 form of the question.  Calls for a
16 legal conclusion.
17   Q.  Did you have notice if any of
18 the complaints that were made against
19 Defendant Smart?
20   A.  I don't know.
21   Q.  Did you take adverse action
22 against my office because of --
23   MR. THOMPSON:  Objection to the
24 form of the question.
25

## Page 39

IDA TRASCHEN

1    Q.  Did you have me banned from the
2  practice of law in al New York TVB, all
3  New York TVBs, because I wrote this letter
4  of March 20, 2015; did you have me banned?
5    A.  No, that is not correct.
6    Q.  You didn't?
7    A.  That is not correct.
8    Q.  Did you take offense that I
9  called one of your judges incapable,
10 incompetent and complicit, did you take
11 offense?
12   A.  No.
13   Q.  But, you didn't look into the
14 voracity of that complaint now, did you?
15   A.  I don't recall what I did with
16 -- in response to that letter that you sent
17 to Ms. Pricket-Morgan.
18   Q.  And you don't recall when you
19 received it.
20       Did you have Defendant Smart
21 approach me on the morning of May 11, 2015
22 and initiate this incident?
23   A.  No.
24   Q.  Do you have any reason as to
25

## Page 40

IDA TRASCHEN

1    why Defendant Smart approached me on the
2  morning of May 11, 2015 and initiated this
3  incident?
4    MR. THOMPSON:  Objection to the
5  form.  You can answer.
6    A.  No.
7    Q.  Do you know that I told
8  Defendant Smart to "back up, back up," were
9  you privy to that?
10   MR. THOMPSON:  Same objection,
11 you can answer.
12   A.  I don't know -- I don't know if
13 I was privy to that.
14   Q.  So, you were privy to none of
15 the circumstances concerning the events of
16 May 11, 2015?
17   A.  No.  I'm saying that I don't
18 recall what I knew at that time because it
19 was five years ago.
20   MR. THOMPSON:  While there's a
21 pause, it's 12:59 and Ms. Calvo is
22 available when you're ready.
23   MR. CAPOGROSSO:  I got to get a
24 few more out and I'll keep it -- I

December 17, 2020

Page 41

IDA TRASCHEN

1
2 just need 15 more minutes. I told
3 you 2:00. I need 15 more minutes
4 because we had the problem with my
5 computer. I just need it.
6       MR. THOMPSON: So, if you take
7 another 15 more minutes and if we do
8 another five minute break, is it okay
9 if I tell Ms. Calvo 1:20?
10      MR. CAPOGROSSO: Yes.
11      MR. THOMPSON: Great, I'll tell
12 her that.
13      Q.   Now, I've stated in my
14 complaint that Defendant Gelbstein
15 approached me on the afternoon of May 8th
16 with letter in hand stating that -- you
17 read the letter that you have before you.
18 You read it and it says, "can't you go
19 practice somewhere else. I saw what you
20 wrote about me that you're complicit,
21 incapable and incompetent."
22      Are you aware of the fact that
23 Defendant Gelbstein approached me on the
24 afternoon of May 8th and said that to me,
25 are you aware of that?

Page 42

IDA TRASCHEN

1
2      A.   No.
3      Q.   Did you question him concerning
4 any statements that he might have had with
5 respect to that letter and my office?
6      A.   I don't recall if I discussed
7 the letter with Judge Gelbstein.
8      Q.   Did you act in retaliation for
9 me writing that letter and having me
10 removed from the New York Traffic Violation
11 Bureau?
12      A.   No.
13      Q.   Did you believe you acted
14 lawfully when you had me moved from the
15 practice of law from the New York Traffic
16 Violation Bureau?
17      A.   Yes.
18      Q.   Under what statute or authority
19 did you act in having me removed?
20      MR. THOMPSON: Objection, calls
21      for a legal conclusion. You can
22      answer.
23      A.   Well, there is no statute that
24 I'm aware of. I'm sorry, do you need to
25 ask me something?

Page 43

IDA TRASCHEN

1
2      Q.   By what authority did you have
3 me removed?
4      A.   Well, as I recall on the
5 previous litigation that we were involved,
6 the Article 78?
7      Q.   I'm talking right here, by what
8 authority did you have --
9      A.   I know.
10      MR. THOMPSON: Let her answer
11      the question.
12      A.   Let me just explain. I mean
13 there was a letter which I don't have in
14 front of me, but the tenure of which was
15 the DMV retained the right to remove you in
16 the future if you acted inappropriately.
17      And based upon the
18 conversations and documentation I had with
19 Judge Gelbstein I concluded that it was
20 appropriate to prohibit you from practicing
21 in TVB.
22      Q.   Did I ever sign a stipulation
23 with your office?
24      A.   For the Article 78?
25      Q.   Did I ever sign any

Page 44

IDA TRASCHEN

1
2 stipulation; did I agree to any terms, in
3 fact, in coming back to the TVB to practice
4 law, did I ever sign a stipulation?
5      A.   I don't recall. I honestly
6 don't recall.
7      Q.   Chris McDonough, my attorney
8 ever sign a stipulation with respect to the
9 terms of me coming back to the practice of
10 law at the TVB?
11      A.   I don't recall.
12      Q.   This was a letter in fact that
13 was imposed upon me after I agreed to take
14 an anger management course that did not
15 bear my signature.
16      Is that a fair statement?
17      MR. THOMPSON: Object to the
18      form of the question. You can
19      answer?
20      A.   What is the question?
21      Q.   That was a letter that you
22 wrote to my office, after we had already
23 agreed that I was to be allowed back to the
24 practice of law in the TVB; right?
25      A.   I don't believe I wrote the

11  (Pages 41 to 44)

December 17, 2020

---

Page 45

IDA TRASCHEN

1
2   letter.  You mean, the attorney general's
3   office?
4       Q.   Well, that's the letter you're
5   referring to; right?
6       A.   I want to make sure we are
7   talking about the correct letter.
8       Q.   Let me get it for you.  Let me
9   see if I can find it.
10          Is was a letter that was
11  written by your office; right?
12      A.   I believe the attorney
13  general's office sent a letter.
14      Q.   And it doesn't bear my
15  signature any way, does it not?
16      A.   I don't have the letter in
17  front of me.
18      Q.   Can we look at Exhibit 11.
19          (Whereupon, Plaintiff's Exhibit
20          11, previously marked, was
21          introduced.)
22      Q.   Does this letter bear my
23  signature any place?
24      A.   No.
25      Q.   It does not.

---

Page 46

IDA TRASCHEN

1
2       Is this the letter you're
3   referring to though?
4       A.   Yes.
5       Q.   Can you tell me what verbal
6   threats of physical violence I made after
7   the issuance of that letter, can you please
8   tell me?
9       A.   Well, as I said many times, I
10  don't remember the specifics of my
11  conversation with Judge Gelbstein, but I do
12  recall after reviewing the documentation he
13  sent me and our conversation, that I
14  believe that it warranted permanently
15  barring you from practice.
16      Q.   So, you can't tell me what the
17  verbal abuse was, can you tell me that?
18      A.   No, because as I have said many
19  times, I don't recall the specifics of our
20  conversation.
21      Q.   And you don't recall the ethnic
22  slurs?
23      MR. THOMPSON:  Objection, asked
24      and answered.
25      Q.   You know the ethnic slurs that

---

Page 47

IDA TRASCHEN

1
2   were used?
3       A.   I don't recall.
4       Q.   And you don't recall the
5   threatening conduct either; right?
6       MR. THOMPSON:  Objection.
7       A.   No, I don't.
8       Q.   But, do you recall the letter
9   of March 20, 2015 where I the judge
10  complicit, incapable and incompetent.  That
11  I didn't want an incident because of this
12  letter, that I didn't want one.  And I was
13  praying for relief.
14          You do recall that letter?
15      MR. THOMPSON:  Objection to the
16      form of the question.  You can
17      answer.
18      A.   Are you talking about the
19  Pricket-Morgan letter?
20      Q.   The letter to Pricket-Morgan on
21  March 20th, you recall that letter, don't
22  you?
23      A.   I remember her getting that
24  letter.  Until I just reviewed it now, I
25  didn't remember all the specifics of

---

Page 48

IDA TRASCHEN

1
2   letter.
3       Q.   Well, you do recall receiving
4   it; right?
5       A.   I remember her forwarding it to
6   me.
7       Q.   And I'm praying for relief,
8   please, I don't want an incident at the
9   Brooklyn TVB because I don't want it be
10  banned and I'm asking for relief.
11          And what did you do in response
12  to that letter?
13      MR. THOMPSON:  Objection.
14      A.   As I said many times, I don't
15  recall what I did, if anything, in response
16  to that letter to Ms. Pricket-Morgan.
17      Q.   And you're saying that you did
18  not have a conversation with Defendant
19  Smart and Defendant Gelbstein to have
20  Defendant Smart approach me on the morning
21  of May 11th and initiate this incident and
22  this altercation?
23      MR. THOMPSON:  Objection to
24      form, you can answer.
25      A.   I don't recall any conversation

---

12   (Pages 45 to 48)

December 17, 2020

Page 49

IDA TRASCHEN

1
2  with Mr. Smart. I did have a conversation
3  with Judge Gelbstein, but I do not recall
4  the date of that conversation.
5      Q.  Did you investigate any of the
6  complaints I made against Defendant Smart?
7          MR. THOMPSON:  Objection, asked
8      and answered.
9      Q.  Let me go into specifics.  I
10  made a complaint against Defendant Smart in
11  June of 2012 when I was readmitted into the
12  Brooklyn TVB that he pushed me from behind,
13  assaulted me from behind.
14          Were you privy to that threat
15  and that assault and that complaint?
16      A.  I don't recall.
17      Q.  Did you take any action in
18  response to it?
19      A.  I don't recall.
20      Q.  In December of 2015 Defendant
21  Smart stood up, pointed directly at me with
22  a spear hand.  I don't know if you know what
23  a spear hand is, but I do and gave me the
24  sign of the cross and I complained to Judge
25  Gelbstein.

Page 50

IDA TRASCHEN

1
2          Were you aware of that
3  complaint?
4      A.  I don't recall.
5      Q.  Did you take any action in
6  response to that complaint?
7      A.  I don't recall.
8      Q.  On numerous occasions Defendant
9  Smart would get in my face, within three
10  inches of my face and I'd ask him what the
11  problem was and I filed complaints with
12  Defendant Gelbstein concerning this.  And I
13  asked him what the problem was and he said,
14  "fuck you, you are the problem."
15          Did you receive any complaints
16  with respect do that?
17      A.  With respect to what?
18      Q.  Defendant Smart getting within
19  a couple of inches of my face and when I
20  asked him what the problem was his response
21  was, "fuck you, you are the problem."
22          Did you --
23          MR. THOMPSON:  Objection to the
24      form.
25      A.  I don't recall.

Page 51

IDA TRASCHEN

1
2      Q.  I complained of Defendant Smart
3  stealing $80 on $150 fee.  At some time
4  between December 2011 and June 2012 and I
5  reported this to Defendant Gelbstein and an
6  investigation was made.
7          Were you privy to the
8  investigation that was made with respect to
9  that theft?
10      A.  I don't recall.
11          MR. THOMPSON:  Objection to the
12      form.  You can answer.
13      Q.  Did you take any action with
14  respect to that complaint?
15      A.  I don't recall.
16      Q.  But after that complaint
17  Defendant Smart continued to work at the
18  Brooklyn TVB; right?
19      A.  I'm not aware of the terms and
20  condition and when he was employed at TVB.
21      Q.  I also complained of the
22  actions of Defendant Gelbstein.  That he
23  has weekly meetings at least sometimes
24  routine meetings with Jewish ticker brokers
25  in the Brooklyn TVB.

Page 52

IDA TRASCHEN

1
2          Were you privy to any of those
3  complaints?
4      A.  I'm sorry, I didn't hear you.
5  You said he had weekly meetings with whom?
6      Q.  Ticket brokers, Jewish ticket
7  brokers in his office.  Were you aware of
8  any of those complaints?
9      A.  No.  I don't recall -- I don't
10  recall such complaints.
11      Q.  You know I made a complaint
12  about Defendant Gelbstein that he was
13  pleading motorists guilty in the GE general
14  requirements room with ALJ Bohmstein and
15  rescheduling cases for motorists.
16          Were you aware of that
17  complaint?
18      A.  I don't recall that complaint.
19      Q.  Do you know about the complaint
20  that I made another attorney was covering
21  cases ALJ -- for Defendant Gelbstein,
22  covering cases?
23      A.  I don't recall that.  I didn't
24  understand, I couldn't hear that.
25      Q.  Defendant Gelbstein, an

13  (Pages 49 to 52)

December 17, 2020

Page 53

IDA TRASCHEN

1
2 attorney was covering cases for him. That
3 I had conflict with another attorney and
4 that attorney told me he was covering cases
5 for Gelbstein.
6        Are you familiar with that
7 complaint?
8    A.   I don't recall that.
9    Q.   Are you familiar with the
10 complaint that I made against Defendant
11 Gelbstein, that when I complained about the
12 actions of Defendant Smart that he laughed
13 and giggled and told me "a spade's a
14 spade," are you familiar with that
15 complaint?
16    A.   I'm not familiar with that
17 complaint other than what I just read today
18 in your letter to Ms. Pricket-Morgan.
19    Q.   So, you're familiar with that
20 complaint?
21    A.   Well, no, I just read it today.
22       MR. THOMPSON:  Objection.
23    Q.   Prior to May 11, 2015?
24    A.   Sir, could you repeat that,
25 please?

Page 54

IDA TRASCHEN

1
2    Q.   You had that letter prior to
3 May 11, 2015; right?
4    A.   Yes.
5    Q.   So, you weren't privy to that
6 complaint; right?
7       MR. THOMPSON:  Objection to the
8    form of the question.  You can
9    answer.
10    A.   I'm sorry, did you ask was I
11 privy to that complaint?
12    Q.   You where knowledgeable of that
13 complaint; right?
14    A.   I did see that letter, yes.
15    Q.   And you took no action and
16 response; right?
17    A.   I don't recall if I took any
18 action.
19       MR. THOMPSON:  Objection.
20    Q.   Did you order Defendant
21 Gelbstein on the morning of Ma 11, 2015 to
22 tell Danielle Calvo to go to the police
23 room in the Brooklyn TVB and have me
24 removed?
25    A.   I don't recall.

Page 55

IDA TRASCHEN

1
2    Q.   Did you have Defendant Calvo
3 tell me to call you and give her your phone
4 number so I could call you on the morning
5 of May 11, 2015?
6    A.   I don't recall.
7    Q.   Do you exhibit -- did you have
8 an indifference or callousness to my
9 complaint?
10       MR. THOMPSON:  Objection to the
11    form of the question.
12    Q.   Are you callous to my
13 complaints?
14       MR. THOMPSON:  Same objection.
15    A.   No.
16    Q.   Were you indifferent to my
17 complaints?
18    A.   No.
19       MR. THOMPSON:  Same objection.
20    Q.   But you took no action with
21 respect to my complaints; right?
22    A.   As I said I don't recall if I
23 took action with respect to any of the
24 complaints that you have just set forth.
25    Q.   By removing me from the

Page 56

IDA TRASCHEN

1
2 practice of law in the New York TVB, were
3 you chilling my first amendment right to
4 freedom of speech, is that what you were
5 doing?
6       MR. THOMPSON:  Objection, calls
7    for a legal conclusion.
8    Q.   Were you attempting to prevent me
9 from exercising my right of freedom of
10 speech by having me removed?
11       MR. THOMPSON:  Same objection,
12    you can answer.
13    A.   No.
14    Q.   I might have asked this, but
15 I'm going to ask it again.
16       Were you mad or upset
17 concerning the contents of a letter of
18 March 20, 2015, were you mad?
19    A.   No.
20    Q.   Did you have animus towards me?
21    A.   No.
22    Q.   You didn't care that I called
23 your judge -- one of your judges complicit,
24 incapable or incompetent or said that he
25 laughed and giggled when I complained of

December 17, 2020

Page 57

IDA TRASCHEN

1             IDA TRASCHEN
2  Defendant Smart and said "a spade was a
3  spade," you had no animus towards me for
4  writing that?
5         MR. THOMPSON:  Objection, asked
6     and answered.  You can answer.
7     A.  No.
8     Q.  Did you receive my letters of
9  complaint to your office?
10     A.  I can't answer that, it's too
11  many years ago.
12     Q.  Did you file any response in
13  respect to my complaints and my letter; did
14  you file any response, did you give me a
15  response to my letters?
16     A.  I don't recall.
17         MR. THOMPSON:  Object to the
18     form.
19     Q.  And you were personally
20  involved in my removal from the practice of
21  law at the New York TVB, I might have asked
22  that, but I'll as it again; you were
23  personally involved; right?
24     A.  Yes.
25     Q.  And you said you had the

Page 58

IDA TRASCHEN

1             IDA TRASCHEN
2  authority to do so; am I right?
3     A.  Yes.
4     Q.  And you acted lawfully in that
5  authority?
6     A.  Yes.
7     Q.  You gave no due process to
8  answer any of the complaints or allegations
9  against me; is that right, you afforded me
10  no due process?
11         MR. THOMPSON:  Objection to the
12     form of the question.
13     A.  I disagree and it's a
14  complicated legal matter which does not --
15  in this form I can't address.
16     Q.  Let me simplify the legal
17  matter, Counsel.
18        Did you receive any affidavits
19  in reply to the affidavits written against
20  me?
21         MR. THOMPSON:  Objection to the
22     form of question.
23     A.  I'm sorry, did I receive what?
24     Q.  Affidavits from my office, did
25  you reply to the complaints made against

Page 59

IDA TRASCHEN

1             IDA TRASCHEN
2  me?
3     A.  I don't recall.
4     Q.  You don't recall receiving any
5  affidavits from me in reply.
6        Was I served with any
7  affidavits or complaints to my office by
8  you to which I could reply?
9     A.  I don't recall.
10     Q.  Did you allow me to present
11  witnesses or evidence in response to any of
12  the affidavits or complaints written
13  against my office of misconduct?
14     A.  I don't know what Judge
15  Gelbstein did or did not do regarding that,
16  I did not.  I did not.
17     Q.  You did not.
18        You didn't allow me to present
19  any evidence or witnesses or state my --
20  state what -- I'll withdraw that.
21        Let me take you to Exhibit 7.
22  Could we go to Exhibit 7 real quick.
23       (Whereupon, Plaintiff's Exhibit
24     7, previously marked, was
25     introduced.)

Page 60

IDA TRASCHEN

1             IDA TRASCHEN
2     Q.  I'll direct your attention to
3  Paragraph 23.
4     A.  Could you scroll down to
5  Paragraph 23.
6       (Whereupon, the Court Reporter
7     complied.)
8     A.  Okay.
9     Q.  This a document that was
10  written by the attorney that was
11  representing me at the time.
12        Are you familiar with this
13  document?
14     A.  I remember seeing it back in
15  you know, 2012.
16     Q.  And that Bushra Vahdat wants me
17  to -- on Paragraph 23, I'm asserting that
18  Bushra Vahdat wants me to stay good and
19  stay quiet.
20        Do you see that?
21     A.  Yes, I do.
22     Q.  She didn't like me.  She didn't
23  want me writing letters concerning what I
24  saw or experienced at the Brooklyn TVB,
25  would that be a fair assessment?

15  (Pages 57 to 60)

December 17, 2020

Page 61

IDA TRASCHEN

1
2       MR. THOMPSON:  Objection to the
3    form of the question.
4       Q.   How do you interpret staying
5    good and quiet, how do you interpret that?
6       A.   I cannot answer for what Judge
7    Vahdat meant by that.  I don't know what
8    she meant by that.
9       Q.   Were you offended by my letter
10   of March 20th of 2015 and you wanted me to
11   stay quiet?
12      A.   No, I was not offended by it.
13      Q.   And you took no action in
14   response?
15      A.   As you said, I don't recall if
16   I took any action.
17      MR. CAPOGROSSO:  I'm done.
18   Thank you.
19      (Whereupon, at 1:21 P.M., the
20   Examination of this witness was
21   concluded.)
22
23       o    o    o   o
24
25

Page 62

IDA TRASCHEN
DECLARATION

1
2
3
4       I hereby certify that having been
5    first duly sworn to testify to the truth, I
6    gave the above testimony.
7
8       I FURTHER CERTIFY that the foregoing
9    transcript is a true and correct transcript
10   of the testimony given by me at the time
11   and place specified hereinbefore.
12
13
14
15          IDA TRASCHEN
16
17
18   Subscribed and sworn to before me
19   this _____ day of _____ 20___.
20
21
22       NOTARY PUBLIC
23
24
25

Page 63

IDA TRASCHEN
EXHIBITS

1
2
3
4    PLAINTIFF'S EXHIBITS (Previously marked)
5
6    EXHIBIT  EXHIBIT              PAGE
7    NUMBER   DESCRIPTION
8    68    Two-page workplace
9          violence incident       7
10   15    Two-page letter dated
11         May 20, 2015        28
12   11    One-page dated
13         June 20, 2012        45
14   7     11-page Verified Petition  59
15
16
17   (Exhibits retained by Court Reporter.)
18
19
20
21
22
23
24
25

Page 64

IDA TRASCHEN
INDEX

1
2
3
4    EXAMINATION BY           PAGE
5    MR. CAPOGROSSO           3
6
7
8    INFORMATION AND/OR DOCUMENTS REQUESTED
9    INFORMATION AND/OR DOCUMENTS     PAGE
10   (None)
11
12
13
14
15   QUESTIONS MARKED FOR RULINGS
16   PAGE LINE QUESTION
17   (None)
18
19
20
21
22
23
24
25

16  (Pages 61 to 64)

December 17, 2020

Page 65



1    IDA TRASCHEN
2      C E R T I F I C A T E
3
4    STATE OF NEW YORK    )
                    : SS.:
5    COUNTY OF KINGS     )
6
7        I, JAMIE NEWMAN, a Notary Public for
8    and within the State of New York, do hereby
9    certify:
10       That the witness whose examination is
11   hereinbefore set forth was duly sworn and
12   that such examination is a true record of
13   the testimony given by that witness.
14       I further certify that I am not
15   related to any of the parties to this
16   action by blood or by marriage and that I
17   am in no way interested in the outcome of
18   this matter.
19       IN WITNESS WHEREOF, I have hereunto
20   set my hand this 31st day of December 2020.
21
22
23   _____
            JAMIE NEWMAN
24
25

17 (Page 65)

December 17, 2020

Page 66

**A**

ability (3)
21:5,19,21
able (1)
18:12
abuse (1)
46:17
accused (1)
18:9
act (2)
42:8,19
acted (3)
42:13 43:16
58:4
acting (3)
4:18 25:14,20
action (24)
5:4 20:2 23:5
29:6,21 30:2
30:5,7,16,17
30:19,20 32:5
38:22 49:17
50:5 51:13
54:15,18
55:20,23
61:13,16
65:16
actions (8)
21:13 23:15
36:23 37:7,15
38:2 51:22
53:12
actual (2)
11:12 38:11
additional (2)
8:10 9:8
address (3)
3:14 18:25
58:15
administrati...
29:13
adverse (1)
38:22
affidavits (17)
12:14 13:7
14:5,14,19,22

15:4,23 16:7
18:15 31:17
58:18,19,24
59:5,7,12
afforded (1)
58:9
afternoon (2)
41:15,24
against- (1)
1:6
agent (1)
25:23
ago (10)
11:21,23 13:5
17:5 18:24
22:7 25:9
32:15 40:20
57:11
agree (3)
17:12 18:8
44:2
agreed (4)
11:9 12:3
44:13,23
ahead (1)
28:22
al (1)
39:3
Alan (6)
1:8 2:9 4:15
5:19 12:23
13:11
Albany (1)
2:18
ALJ (2)
52:14,21
allegations (4)
21:6 32:7 38:6
58:8
alleged (1)
10:3
allegedly (1)
14:23
allow (6)
15:2 17:13
18:14,17

59:10,18
allowed (1)
44:23
allows (1)
18:8
altercation (1)
48:22
amendment (...
56:3
AND/OR (2)
64:8,9
anger (1)
44:14
animus (2)
56:20 57:3
answer (37)
5:11 9:4 10:19
16:25 17:24
18:5,15,19
19:7 20:6,12
20:24 24:8,24
25:19 26:2,4
26:21 27:12
31:24 36:20
37:2,10 40:6
40:12 42:22
43:10 44:19
47:17 48:24
51:12 54:9
56:12 57:6,10
58:8 61:6
answered (6)
10:13 33:23
36:5 46:24
49:8 57:6
anybody (1)
35:17
apologize (1)
7:20
approach (2)
39:22 48:20
approached (...
40:2 41:15,23
appropriate ...
18:2 43:20
arguing (1)

17:14
argumentati...
17:10
Article (2)
43:6,24
asked (11)
4:11 10:12
33:22 36:4
46:23 49:7
50:13,20
56:14 57:5,21
asking (5)
6:3,6 21:14
36:5 48:10
assault (1)
49:15
assaulted (1)
49:13
asserting (1)
60:17
assessment (1)
60:25
assistant (2)
15:17 25:20
assumed (1)
32:6
attempting (1)
56:8
attention (5)
6:23 7:18 8:8
8:16 60:2
attorney (16)
2:7 17:6 21:13
21:24 22:3
23:5,21 28:6
44:7 45:2,12
52:20 53:2,3
53:4 60:10
attorneys (3)
2:8,16 4:19
authority (10)
36:17 37:4,6
37:15 38:2
42:18 43:2,8
58:2,5
available (1)

40:23
Avenue (1)
3:15
aware (8)
11:2 41:22,25
42:24 50:2
51:19 52:7,16

**B**

B (1)
63:2
back (6)
40:9,9 44:3,9
44:23 60:14
ban (6)
17:6 25:11
28:24 33:2
35:6,24
banned (16)
5:5,14 9:21
20:10,20 21:2
23:21 24:20
27:19 28:3
33:16 35:12
35:13 39:2,5
48:10
banning (1)
34:2
BARBARA (1)
2:19
barbara.mon...
2:20
barring (1)
46:15
based (5)
4:14 11:7,25
14:22 43:17
basis (4)
5:25 11:10,13
11:17
bear (3)
44:15 45:14,22
bed (1)
35:23
behavior (1)
25:4

believe (7)
18:21 22:5
28:25 42:13
44:25 45:12
46:14
belligerent (2)
4:23 25:5
beyond (2)
18:12 25:8
blood (1)
65:16
Bohmstein (1)
52:14
break (1)
41:8
bring (1)
6:22
brokers (3)
51:24 52:6,7
Brooklyn (18)
3:21,25 4:13
5:2 6:14 9:15
15:20 29:12
34:6 35:17,22
36:18 48:9
49:12 51:18
51:25 54:23
60:24
building (2)
8:20,22
Bureau (8)
2:16 23:16
24:5 26:17
32:22 33:4
42:11,16
Bushra (4)
38:2,6 60:16
60:18
business (1)
19:25

—— C ——

C (5)
2:2 3:5 62:2
65:2,2
call (16)

4:2,4 5:4,13
9:9,19 27:25
28:2 33:15
34:12,14,17
36:8,10 55:3
55:4
called (4)
3:5 34:22
39:10 56:22
callous (1)
55:12
callousness (1)
55:8
calls (8)
26:15,23 27:7
31:3,7 38:16
42:20 56:6
Calvo (17)
1:9 2:10 5:3
8:11,25 9:6,7
9:18 34:18
36:10,12 37:8
37:19 40:22
41:9 54:22
55:2
capacity (11)
1:8,8,9,9,11
2:9,10,10,11
2:12,17
Capogrosso (...
1:3 2:4 3:4,10
6:3 7:3,8,11
8:19 11:16
17:11 30:12
35:24 36:3
40:24 41:10
61:17 64:5
Capogrosso...
2:6
care (2)
11:22 56:22
case (2)
1:6 18:3
cases (5)
52:15,21,22
53:2,4

certain (1)
18:3
certify (4)
62:4,8 65:9,14
chain (1)
37:24
chains (1)
37:21
chilling (1)
56:3
chosen (1)
35:15
Chris (1)
44:7
circumstance...
18:2
circumstance...
40:16
City (2)
5:7 12:21
Civil (1)
1:19
clarify (1)
32:24
come (2)
19:21 20:3
coming (2)
44:3,9
comment (2)
8:10 9:8
comments (1)
8:10
COMMISSI...
1:10 2:11,17
committee (5)
21:12 22:20,24
23:4,20
complained (6)
29:18 49:24
51:2,21 53:11
56:25
complaint (25)
20:3 30:8,9
39:15 41:14
49:10,15 50:3
50:6 51:14,16

52:11,17,18
52:19 53:7,10
53:15,17,20
54:6,11,13
55:9 57:9
complaints (...
11:12 14:6,15
14:20,22 15:4
15:23 16:11
16:16,19,22
17:15 18:15
21:6,11 29:11
29:22 30:24
31:5,9,16,20
32:2,7 38:13
38:19 49:6
50:11,15 52:3
52:8,10 55:13
55:17,21,24
57:13 58:8,25
59:7,12
complicated ...
58:14
complicit (4)
39:11 41:20
47:10 56:23
complied (3)
7:16 8:6 60:7
computer (1)
41:5
concerning (...
8:13 16:21
17:14 21:13
23:15,20
26:16 31:8,21
40:16 42:3
50:12 56:17
60:23
concerns (1)
4:22
concluded (2)
43:19 61:21
conclusion (4)
4:17 38:17
42:21 56:7
condition (1)

51:20
conduct (2)
21:7 47:5
Concy (1)
4:13
confirm (2)
5:13 28:3
conflict (1)
53:3
constructive ...
38:12
content (3)
6:2,4,6
contents (1)
56:17
continued (1)
51:17
control (1)
36:22
conversation...
4:7,9,14 5:17
5:19 6:5,7,7
6:12,15,19
8:24 9:6,13
9:20 11:8,20
11:25 13:10
13:15 15:6,9
15:11 16:18
17:4 25:3
26:25 27:14
27:18 32:4,18
33:19,25
34:20 35:4
46:11,13,20
48:18,25 49:2
49:4
conversation...
11:5 24:12,13
27:2,15 35:17
35:20,21
43:18
copy (1)
19:3
correct (15)
3:22 10:22
16:14 20:19

| | | | | |
|---|---|---|---|---|
| 20:25 24:9<br>25:13 28:2<br>30:22 33:24<br>34:4 39:6,8<br>45:7 62:9<br>**corresponde...**<br>31:8<br>**counsel (7)**<br>3:3 9:9 15:14<br>15:17 21:3<br>25:21 58:17<br>**COUNTY (1)**<br>65:5<br>**couple (1)**<br>50:19<br>**course (2)**<br>19:24 44:14<br>**Court (6)**<br>1:2 7:2,15 8:5<br>60:6 63:17<br>**courtroom (1)**<br>13:24<br>**covering (4)**<br>52:20,22 53:2<br>53:4<br>**credible (1)**<br>38:7<br>**cross (1)**<br>49:24<br>**CV (1)**<br>1:6<br><br>___D___<br>**D (3)**<br>3:5 62:2 64:2<br>**Danielle (12)**<br>1:9 2:10 5:3<br>8:11,24 9:6,7<br>9:17 34:18<br>36:9,12 54:22<br>**date (15)**<br>1:13 3:23 4:5<br>5:12,20 6:11<br>27:25 28:21<br>34:15 35:11<br>35:13,15,20 | 35:22 49:4<br>**dated (2)**<br>63:10,12<br>**David (3)**<br>1:10 2:11 7:21<br>**day (7)**<br>9:13 35:4,6,6<br>35:18 62:19<br>65:20<br>**December (4)**<br>1:13 49:20<br>51:4 65:20<br>**decision (4)**<br>10:21 12:3<br>33:5,11<br>**defend (1)**<br>18:9<br>**defendant (54)**<br>1:16 2:16 3:17<br>5:3,17 6:8,16<br>8:11 14:21<br>15:11 16:20<br>17:19 29:13<br>29:14,16,18<br>29:23,23<br>30:25,25<br>34:18 36:23<br>37:7,7,15,19<br>38:13,20<br>39:21 40:2,9<br>41:14,23<br>48:18,19,20<br>49:6,10,20<br>50:8,12,18<br>51:2,5,17,22<br>52:12,21,25<br>53:10,12<br>54:20 55:2<br>57:2<br>**Defendants (2)**<br>1:12 2:8<br>**defending (2)**<br>13:18,24<br>**Department ...**<br>21:4 25:21<br>26:10 | **Department'...**<br>26:8<br>**deposition (2)**<br>1:16 5:24<br>**DESCRIPTI...**<br>63:7<br>**details (8)**<br>8:21 13:15<br>17:4 18:25<br>24:11,14<br>25:10 32:16<br>**determinatio...**<br>15:19<br>**direct (4)**<br>8:7,9,15 60:2<br>**direction (1)**<br>9:17<br>**directly (1)**<br>49:21<br>**disagree (1)**<br>58:13<br>**discussed (1)**<br>42:6<br>**discussions (1)**<br>15:7<br>**DISTRICT (2)**<br>1:2,2<br>**DMV (10)**<br>1:10 2:11,16<br>2:17 15:15<br>22:4,19 23:14<br>25:16 43:15<br>**document (2)**<br>60:9,13<br>**documentati...**<br>4:15 11:8 12:2<br>12:7,11 25:3<br>25:10 32:17<br>32:19 43:18<br>46:12<br>**documents (7)**<br>12:14,18,23,24<br>13:11 64:8,9<br>**doing (2)**<br>21:25 56:5<br>**draw (1)** | 7:17<br>**due (8)**<br>17:13,18,21,22<br>18:10,14 58:7<br>58:10<br>**duly (3)**<br>3:6 62:5 65:11<br><br>___E___<br>**E (8)**<br>2:2,2 3:5 62:2<br>63:2 64:2<br>65:2,2<br>**Eamon (2)**<br>21:24 22:3<br>**EASTERN (1)**<br>1:2<br>**effect (1)**<br>25:12<br>**either (4)**<br>26:10 29:22<br>30:24 47:5<br>**EK (1)**<br>1:6<br>**Empire (1)**<br>2:18<br>**employed (1)**<br>51:20<br>**employees (1)**<br>4:20<br>**ESQ (2)**<br>2:13,19<br>**ethnic (2)**<br>46:21,25<br>**events (1)**<br>40:16<br>**evidence (4)**<br>13:8 18:16<br>59:11,19<br>**exact (1)**<br>28:21<br>**exactly (2)**<br>11:12 24:22<br>**examination ...**<br>3:9 61:20 64:4<br>65:10,12 | **examined (1)**<br>3:8<br>**exercising (1)**<br>56:9<br>**exhibit (14)**<br>6:24,25 7:4,5<br>28:7,8 45:18<br>45:19 55:7<br>59:21,22,23<br>63:6,6<br>**exhibits (3)**<br>3:2 63:4,17<br>**experienced ...**<br>60:24<br>**explain (1)**<br>43:12<br>**explained (1)**<br>4:14 11:4<br>16:17 32:14<br>**Extension (1)**<br>3:15<br><br>___F___<br>**F (1)**<br>65:2<br>**face (3)**<br>50:9,10,19<br>**fact (3)**<br>41:22 44:3,12<br>**fair (12)**<br>9:10 20:10,13<br>20:18,22<br>23:22 26:12<br>26:13 27:9<br>36:23 44:16<br>60:25<br>**familiar (9)**<br>7:23 28:11,15<br>53:6,9,14,16<br>53:19 60:12<br>**far (1)**<br>29:2<br>**Federal (1)**<br>1:18<br>**fee (1)**<br>51:3 |

December 17, 2020

Page 69

| | | | | |
|---|---|---|---|---|
| **felt (2)** | 51:12 54:8 | 50:12 51:5,22 | 21:5,10 22:14 | **honestly (1)** |
| 4:20 25:6 | 55:11 57:18 | 52:12,21,25 | **grieved (2)** | 44:5 |
| **file (5)** | 58:12,15,22 | 53:5,11 54:21 | 22:19 23:4 | **hundred (1)** |
| 2:19 21:15,23 | 61:3 | 59:15 | **GROUP (2)** | 22:6 |
| 57:12,14 | **forth (2)** | **general (5)** | 1:10 2:11 | |
| **filed (6)** | 55:24 65:11 | 2:8 24:18 26:9 | **guard (3)** | **I** |
| 6:24 12:18 | **forwarding (1)** | 28:6 52:13 | 4:21 25:8 | **Ida (68)** |
| 22:2,11 23:13 | 48:5 | **general's (2)** | 29:12 | 1:8,16 2:9 3:1 |
| 50:11 | **foundation (1)** | 45:2,13 | **guards (1)** | 3:13 4:1 5:1 |
| **find (2)** | 24:3 | **getting (2)** | 37:5 | 6:1 7:1 8:1 |
| 36:7 45:9 | **freedom (2)** | 47:23 50:18 | **guilty (1)** | 9:1 10:1 11:1 |
| **fine (1)** | 56:4,9 | **giggled (3)** | 52:13 | 12:1 13:1 |
| 35:14 | **front (2)** | 29:19 53:13 | **guy (3)** | 14:1 15:1 |
| **FIRM (1)** | 43:14 45:17 | 56:25 | 13:18,23,25 | 16:1 17:1 |
| 2:4 | **fuck (2)** | **give (6)** | | 18:1 19:1 |
| **first (6)** | 50:14,21 | 8:20 11:11 | **H** | 20:1 21:1 |
| 3:6 15:17 | **fund (1)** | 14:13 31:15 | **H (4)** | 22:1 23:1 |
| 25:20 37:3 | 26:9 | 55:3 57:14 | 1:3 2:4 3:5 | 24:1 25:1 |
| 56:3 62:5 | **funds (2)** | **given (2)** | 63:2 | 26:1 27:1 |
| **five (9)** | 26:7,8 | 62:10 65:13 | **hand (4)** | 28:1 29:1 |
| 11:20,23 13:5 | **further (6)** | **gives (1)** | 41:16 49:22,23 | 30:1 31:1 |
| 17:5 18:24 | 7:14 8:21 19:2 | 17:25 | 65:20 | 32:1 33:1 |
| 25:9 32:15 | 27:15 62:8 | **go (10)** | **happened (1)** | 34:1 35:1 |
| 40:20 41:8 | 65:14 | 6:24 7:19 8:17 | 36:2 | 36:1 37:1 |
| **Floor (1)** | **future (1)** | 24:11 27:8 | **harassing (1)** | 38:1 39:1 |
| 2:12 | 43:16 | 28:22 41:18 | 29:17 | 40:1 41:1 |
| **follows (1)** | | 49:9 54:22 | **hear (3)** | 42:1 43:1 |
| 3:8 | **G** | 59:22 | 22:17 52:4,24 | 44:1 45:1 |
| **foregoing (1)** | **GE (1)** | **goes (1)** | **heard (1)** | 46:1 47:1 |
| 62:8 | 52:13 | 18:12 | 18:23 | 48:1 49:1 |
| **form (45)** | **Gelbstein (47)** | **going (8)** | **hearing (1)** | 50:1 51:1 |
| 5:10 9:4 12:10 | 1:8 2:9 4:15 | 7:17 8:7,9 | 18:21 | 52:1 53:1 |
| 16:2,13 17:17 | 5:17,20,23 | 10:14 11:19 | **hearsay (1)** | 54:1 55:1 |
| 18:19 19:6 | 6:8,12,16 | 16:24 24:11 | 5:23 | 56:1 57:1 |
| 20:6,12,24 | 8:17 9:18 | 56:15 | **held (1)** | 58:1 59:1 |
| 23:11 24:7,24 | 11:6 12:2,23 | **good (2)** | 1:19 | 60:1 61:1 |
| 25:18,25 | 14:21 16:18 | 60:18 61:5 | **hereinbefore...** | 62:1,15 63:1 |
| 26:20 27:11 | 16:20 24:12 | **Great (1)** | 62:11 65:11 | 64:1 65:1 |
| 27:23 30:4,12 | 25:2 29:14,19 | 41:11 | **hereunto (1)** | **imposed (1)** |
| 31:12,24 | 29:24 30:25 | **grievance (10)** | 65:19 | 44:13 |
| 32:10 34:9 | 32:17 33:6 | 21:11,15,23 | **high (8)** | **inappropriat...** |
| 35:2,9 36:20 | 34:2,5 37:7 | 22:2,9,20,24 | 4:24 11:6 | 43:16 |
| 36:25 37:10 | 37:16 41:14 | 22:24 23:4,20 | 13:14,19,22 | **incapable (4)** |
| 38:16,25 40:6 | 41:23 42:7 | **grievances (2)** | 14:3 24:15,16 | 39:10 41:21 |
| 44:18 47:16 | 43:19 46:11 | 23:13,25 | **home (1)** | 47:10 56:24 |
| 48:24 50:24 | 48:19 49:3,25 | **grieve (3)** | 12:12 | **inches (2)** |

50:10,19
**incident (12)**
8:13 10:3
  14:23 15:18
  25:7 28:23
  39:23 40:4
  47:11 48:8,21
  63:9
**incompetent ...**
39:11 41:21
  47:10 56:24
**indicates (1)**
9:8
**indifference ...**
55:8
**indifferent (1)**
55:16
**individual (6)**
1:8,8,9 2:9,9
  2:10
**INFORMAT...**
64:8,9
**initiate (2)**
39:23 48:21
**initiated (1)**
40:3
**instruct (1)**
16:24
**interested (1)**
65:17
**interpret (2)**
61:4,5
**introduced (4)**
7:7 28:10
  45:21 59:25
**investigate (3)**
23:12 30:23
  49:5
**investigated ...**
23:18
**investigation...**
16:15,22 23:19
  23:24 32:12
  51:6,8
**involved (12)**
32:20,25 33:5

33:7,9,10,13
33:21 37:22
43:5 57:20,23
**involving (1)**
25:7
**Island (1)**
4:13
**issuance (1)**
46:7
**issue (1)**
22:12

---
**J**

**JAMES (1)**
2:13
**james.thomp...**
2:14
**Jamie (3)**
1:20 65:7,23
**Jewish (2)**
51:24 52:6
**judge (23)**
5:23 6:12 8:17
  9:18 11:5
  12:2 16:18
  24:12 25:2
  29:14 32:17
  33:6 34:2,5
  42:7 43:19
  46:11 47:9
  49:3,24 56:23
  59:14 61:6
**judges (2)**
39:10 56:23
**June (3)**
49:11 51:4
  63:13

---
**K**

**keep (3)**
12:6 19:3
  40:25
**KINGS (1)**
65:5
**knew (1)**
40:19
**know (32)**

7:25 11:3 15:7
17:18 19:8
21:9 22:22
24:16,19,21
25:6 26:6,7
28:21 34:6,10
34:11 35:19
37:3 38:21
40:8,13,13
43:9 46:25
49:22,22
52:11,19
59:14 60:15
61:7
**knowledgeab...**
54:12

---
**L**

**L (1)**
62:2
**laughed (3)**
29:19 53:12
  56:25
**law (27)**
2:4 5:6 6:14
  9:21 10:10,16
  12:15,20
  14:24 15:21
  17:7 20:21
  27:20 29:14
  31:22 32:21
  33:3,17 35:7
  35:25 39:3
  42:15 44:4,10
  44:24 56:2
  57:21
**lawfully (2)**
42:14 58:4
**LB (1)**
1:6
**leave (1)**
8:19
**left (1)**
8:22
**legal (10)**
2:16 9:9 15:14

21:3 26:3
38:17 42:21
56:7 58:14,16
**legal's (1)**
8:20
**length (1)**
27:24
**letter (41)**
28:5,12,16,17
29:7 39:4,17
41:16,17 42:5
42:7,9 43:13
44:12,21 45:2
45:4,7,10,13
45:16,22 46:2
46:7 47:8,12
47:14,19,20
47:21,24 48:2
48:12,16
53:18 54:2,14
56:17 57:13
61:9 63:10
**letters (6)**
26:15,23 31:19
  57:8,15 60:23
**level (14)**
4:24 11:7
  13:14,17,19
  13:20,22,23
  13:25 14:4
  18:6 24:15,16
  24:17
**Liberty (1)**
2:12
**line (2)**
8:16 64:16
**litigation (1)**
43:5
**long (1)**
15:10
**look (3)**
16:10 39:14
  45:18
**low (6)**
13:17,19,23,25
  18:6 24:17

---
**M**

**Ma (1)**
54:21
**mad (2)**
56:16,18
**making (1)**
29:11
**management...**
44:14
**March (6)**
28:6 39:5 47:9
  47:21 56:18
  61:10
**MARIO (2)**
1:3 2:4
**Mark (4)**
1:10 2:11,17
  3:4
**marked (7)**
3:3 7:6 28:9
  45:20 59:24
  63:4 64:15
**marriage (1)**
65:16
**matter (7)**
8:12 18:3,22
  19:2 58:14,17
  65:18
**McDonough ...**
44:7
**mean (11)**
13:13 14:9
  21:9 22:11
  28:19 32:25
  37:12,21,23
  43:12 45:2
**means (3)**
14:4 18:7
  24:17
**meant (2)**
61:7,8
**meetings (3)**
51:23,24 52:5
**minute (1)**
41:8
**minutes (3)**

41:2,3,7
misconduct (1)
59:13
moment (1)
28:13
MONTENA ...
2:19
morning (17)
4:3 5:18 6:9,10
8:25 9:14
15:10 27:18
34:7,13,18,23
39:22 40:3
48:20 54:21
55:4
Motor (3)
21:4 25:21
26:11
motorists (2)
52:13,15
moved (1)
42:14

**N**

N (4)
2:2 3:5 62:2
64:2
name (1)
3:11
named (1)
21:24
necessarily (1)
20:7
need (5)
30:13 41:2,3,5
42:24
never (4)
19:10 22:19
23:3 27:6
New (35)
1:2,21 2:5,5,7
2:13,13,18
3:7,16 5:6
10:10,16
12:21 14:25
20:21 21:12

23:6,15 24:4
26:11,17
27:20 31:22
32:22 33:3
35:25 39:3,4
42:10,15 56:2
57:21 65:4,8
Newman (3)
1:20 65:7,23
normal (1)
19:24
Notary (4)
1:21 3:7 62:22
65:7
notice (3)
1:18 38:12,18
number (5)
8:21 24:10,13
55:4 63:7
numerous (1)
50:8
NY (2)
1:10 2:11

**O**

O (1)
62:2
object (5)
5:24 20:23
36:19 44:17
57:17
objection (64)
5:9,22 9:3,22
10:12,18
11:14 12:9
13:2 15:25
16:12,23 17:9
17:16,23
18:18 19:5,12
20:5,11 23:10
24:6,23 25:17
25:24 26:19
27:10,22 30:3
30:11 31:11
31:23 32:9
33:22 34:8,25

35:8 36:24
37:9 38:15,24
40:5,11 42:20
46:23 47:6,15
48:13,23 49:7
50:23 51:11
53:22 54:7,19
55:10,14,19
56:6,11 57:5
58:11,21 61:2
occasions (1)
50:8
offended (2)
61:9,12
offense (2)
39:9,12
office (30)
2:7 7:13 13:9
14:16,20
19:22 20:4
22:15,19,25
23:3,14 26:15
27:7 31:4,8
31:14,21
38:23 42:5
43:23 44:22
45:3,11,13
52:7 57:9
58:24 59:7,13
officers (2)
8:18 9:17
offices (1)
37:5
official (3)
1:11 2:12,17
Oh (1)
17:11
okay (3)
35:14 41:8
60:8
One-page (1)
63:12
opportunity ...
14:14 15:3,22
17:25 18:22
21:17 31:15

order (1)
54:20
outcome (1)
65:17

**P**

P (2)
2:2,2
P.M (2)
1:14 61:19
page (5)
7:20 63:6 64:4
64:9,16
paid (2)
26:5,6
paragraph (4)
8:8 60:3,5,17
part (2)
10:21 32:5
particular (1)
8:2
parties (1)
65:15
party (3)
18:9,14 22:23
pause (1)
40:22
PEC (2)
1:9 2:11
people (11)
13:18,24 14:5
14:8 16:5
33:8,9,13,21
37:22,23
percent (1)
22:6
permanently ...
46:14
permitted (1)
16:5
personally (6)
31:4 32:20,25
33:2 57:19,23
personnel (1)
36:17
Petition (1)

63:14
phone (21)
4:2,4 5:13 8:20
15:5,9,11
26:15,23,24
27:3,6,16,25
28:2 32:3
33:19 34:14
34:17 36:8
55:3
physical (1)
46:6
physically (1)
29:18
picked (1)
27:6
place (3)
2:5 45:23
62:11
Plaintiff (3)
1:4,17 2:4
Plaintiff's (5)
7:5 28:8 45:19
59:23 63:4
Plaza (1)
2:18
pleading (1)
52:13
please (8)
3:11 7:14,19
8:3 28:14
46:7 48:8
53:25
point (2)
5:4 18:23
pointed (1)
49:21
police (7)
6:23 8:18 9:16
19:15,22 20:8
54:22
posed (1)
4:17
practice (27)
3:24 5:6 6:14
9:21 10:10,16

| | | | | |
|---|---|---|---|---|
| 12:15,20 | 17:2 | 36:6,20,25 | **rebutting (1)** | **recollection (3)** |
| 14:24 15:21 | **privy (9)** | 37:13 38:16 | 17:15 | 4:8 11:24 |
| 17:7 20:21 | 22:8 40:10,14 | 38:25 42:3 | **recall (95)** | 22:12 |
| 27:20 32:21 | 40:15 49:14 | 43:11 44:18 | 3:23 4:5,24 | **record (2)** |
| 33:3,16 35:7 | 51:7 52:2 | 44:20 47:16 | 5:12,20 6:11 | 3:12 65:12 |
| 35:25 39:3 | 54:5,11 | 54:8 55:11 | 9:2,5,12 | **rectify (1)** |
| 41:19 42:15 | **PRO (1)** | 58:12,22 61:3 | 11:24 13:4,10 | 31:4 |
| 44:3,9,24 | 2:4 | 64:16 | 13:15 15:13 | **redactions (2)** |
| 46:15 56:2 | **problem (6)** | **questions (5)** | 19:18,19 | 7:9,10 |
| 57:20 | 41:4 50:11,13 | 3:18 5:25 | 20:14 21:25 | **referring (2)** |
| **practicing (6)** | 50:14,20,21 | 13:12 36:4 | 22:10 23:23 | 45:5 46:3 |
| 4:12 5:14 21:2 | **Procedure (1)** | 64:15 | 24:2,14 26:24 | **refused (1)** |
| 28:4 31:22 | 1:19 | **quick (1)** | 26:25 27:3,15 | 27:8 |
| 43:20 | **process (8)** | 59:22 | 27:24,25 29:3 | **regarding (3)** |
| **praying (2)** | 17:13,18,21,22 | **quiet (3)** | 29:25 30:6,15 | 18:3 32:18 |
| 47:13 48:7 | 18:10,14 58:7 | 60:19 61:5,11 | 30:18,20 31:2 | 59:15 |
| **preface (2)** | 58:10 | | 31:6,13 32:4 | **regulations (1)** |
| 9:25,25 | **prohibit (1)** | ――――― **R** ――――― | 32:16,18 33:8 | 4:19 |
| **Prefacing (1)** | 43:20 | **R (4)** | 33:12,21 | **related (1)** |
| 14:2 | **proved (1)** | 2:2 3:5 62:2 | 34:20,24 35:3 | 65:15 |
| **prepared (1)** | 18:16 | 65:2 | 35:10,11,15 | **relief (3)** |
| 26:4 | **provide (2)** | **raised (1)** | 35:16,21 | 47:13 48:7,10 |
| **present (2)** | 18:15,16 | 4:22 | 36:11 38:9,10 | **remains (1)** |
| 59:10,18 | **Public (4)** | **reached (1)** | 39:16,19 | 25:11 |
| **presented (2)** | 1:21 3:7 62:22 | 4:16 | 40:19 42:6 | **remember (17)** |
| 4:16 25:3 | 65:7 | **read (6)** | 43:4 44:5,6 | 4:6,10,11 17:3 |
| **prevent (1)** | **pursuant (1)** | 22:10 28:14 | 44:11 46:12 | 18:24 23:17 |
| 56:8 | 1:17 | 41:17,18 | 46:19,21 47:3 | 25:9 28:17 |
| **previous (1)** | **pushed (1)** | 53:17,21 | 47:4,8,14,21 | 29:8,9 32:15 |
| 43:5 | 49:12 | **Reading (1)** | 48:3,15,25 | 34:15 46:10 |
| **previously (6)** | **put (1)** | 28:19 | 49:3,16,19 | 47:23,25 48:5 |
| 3:3 7:6 28:9 | 7:10 | **readmitted (1)** | 50:4,7,25 | 60:14 |
| 45:20 59:24 | | 49:11 | 51:10,15 52:9 | **removal (7)** |
| 63:4 | ――――― **Q** ――――― | **ready (1)** | 52:10,18,23 | 11:11,13,18 |
| **Pricket-Mor...** | **question (48)** | 40:23 | 53:8 54:17,25 | 12:8 26:16 |
| 28:7,18 39:18 | 5:10 9:4 11:15 | **real (1)** | 55:6,22 57:16 | 32:21 57:20 |
| 47:19,20 | 12:10 13:6 | 59:22 | 59:3,4,9 | **remove (2)** |
| 48:16 53:18 | 14:2,4,8,10 | **really (3)** | 61:15 | 11:11 43:15 |
| **prior (5)** | 14:18 16:2,9 | 18:5,11,25 | **receive (5)** | **removed (24)** |
| 12:17,19 34:2 | 18:4,19 19:6 | **reason (3)** | 34:14 50:15 | 3:21 4:25 6:13 |
| 53:23 54:2 | 20:6 21:9 | 10:23 12:7 | 57:8 58:18,23 | 9:15,16,19 |
| **privilege (3)** | 22:18 23:11 | 39:25 | **received (3)** | 10:6,9,15,22 |
| 5:25 16:24 | 24:7,24 25:18 | **reasons (3)** | 7:12 34:12 | 10:24 11:9 |
| 24:10 | 25:25 26:3,20 | 24:3,20,21 | 39:20 | 12:4,17,20 |
| **privileged (4)** | 27:11 30:4,12 | **rebuttal (1)** | **receiving (2)** | 14:24 15:20 |
| 11:6,20 13:3 | 34:9 35:2,9 | 18:17 | 48:3 59:4 | 24:4 26:16 |

42:10,19 43:3
54:24 56:10
**removing (1)**
55:25
**repeat (2)**
37:12 53:24
**reply (4)**
58:19,25 59:5
59:8
**report (7)**
6:23 7:18,21
7:24 8:2,13
37:24
**reported (1)**
51:5
**Reporter (5)**
7:2,15 8:5 60:6
63:17
**reports (7)**
19:16,16,21,22
19:23 20:9,9
**representativ...**
25:15
**representing ...**
60:11
**requested (2)**
3:24 64:8
**requirement...**
52:14
**rescheduling...**
52:15
**respect (13)**
17:14 22:15,25
23:5 42:5
44:8 50:16,17
51:8,14 55:21
55:23 57:13
**respond (9)**
10:13 14:14
15:3,22 26:14
26:22 27:5
31:16,25
**responding (1)**
27:3
**response (16)**
9:24 29:7,8,22

39:17 48:11
48:15 49:18
50:6,20 54:16
57:12,14,15
59:11 61:14
**retained (2)**
43:15 63:17
**retaliation (1)**
42:8
**retired (1)**
12:12
**review (9)**
10:2,8,20,24
12:13,18,22
19:15 38:5
**reviewed (7)**
12:25 13:11
14:21 20:8,16
20:17 47:24
**reviewing (3)**
10:17 32:16
46:12
**right (36)**
6:22 8:8 15:15
15:24 16:11
18:21,22
20:22 21:5
22:15,20
25:12 27:7,21
31:10 32:7
33:17 37:19
43:7,15 44:24
45:5,11 47:5
48:4 51:18
54:3,6,13,16
55:21 56:3,9
57:23 58:2,9
**Rochelle (1)**
2:5
**room (4)**
2:18 8:18
52:14 54:23
**routine (1)**
51:24
**rug (3)**
30:9,10,14

**rules (2)**
1:18 4:18
**RULINGS (1)**
64:15

---

**S**

**S (3)**
2:2 3:5 63:2
**SADIQ (2)**
1:9 2:10
**salary (2)**
26:5,6
**saw (2)**
41:19 60:24
**saying (11)**
13:17,22 21:5
15:21 23:9
32:8 36:14
37:19 40:18
48:17
**says (2)**
9:11 41:18
**SCHROEDE...**
1:10 2:12,17
**scope (1)**
18:12
**scroll (2)**
8:3 60:4
**SE (1)**
2:4
**secretary (1)**
27:8
**security (4)**
4:21 25:7
29:12 37:5
**see (4)**
13:17 45:9
54:14 60:20
**seeing (1)**
60:14
**seen (1)**
8:2
**sent (6)**
12:3,23 32:17
39:17 45:13
46:13

**served (1)**
59:6
**set (3)**
55:24 65:11,20
**share (1)**
28:20
**shared (1)**
28:18
**Sheldrake (1)**
2:5
**short (1)**
27:17
**sign (5)**
43:22,25 44:4
44:8 49:24
**signature (3)**
44:15 45:15,23
**simplify (1)**
58:16
**Sir (1)**
53:24
**slurs (2)**
46:22,25
**Smart (25)**
1:10 2:11 7:22
29:13,16,23
30:25 36:23
38:14,20
39:21 40:2,9
48:19,20 49:2
49:6,10,21
50:9,18 51:2
51:17 53:12
57:2
**somebody (1)**
34:22
**sorry (9)**
7:19 9:5 19:18
22:17 28:22
42:24 52:4
54:10 58:23
**spade (5)**
29:20,20 53:14
57:2,3
**spade's (1)**
53:13

**spar (1)**
49:22
**speak (1)**
3:18
**spear (1)**
49:23
**specific (3)**
24:19,21 35:6
**specifically (1)**
23:14
**specifics (7)**
11:25 13:4
16:19 46:10
46:19 47:25
49:9
**specified (1)**
62:11
**speech (2)**
56:4,10
**Spring (1)**
3:15
**SS (1)**
65:4
**staff (1)**
25:5
**standpoint (1)**
18:7
**state (14)**
1:21 2:7,18 3:7
3:11 21:12
25:15,23 26:9
26:11 59:19
59:20 65:4,8
**stated (2)**
12:22 41:13
**statement (4)**
8:23 9:12
23:22 44:16
**statements (1)**
42:4
**STATES (1)**
1:2
**stating (1)**
41:16
**statute (2)**
42:18,23

| | | | | |
|---|---|---|---|---|
| **stay (3)** | 1:9 2:10 | **theft (1)** | **three (1)** | 31:1 32:1 |
| 60:18,19 61:11 | **take (13)** | 51:9 | 50:9 | 33:1 34:1 |
| **staying (1)** | 28:13 29:6 | **think (3)** | **ticker (1)** | 35:1 36:1 |
| 61:4 | 30:5,17 38:22 | 7:4 18:11 | 51:24 | 37:1 38:1 |
| **stealing (1)** | 39:9,11 41:6 | 24:25 | **ticket (2)** | 39:1 40:1 |
| 51:3 | 44:13 49:17 | **third (1)** | 52:6,6 | 41:1 42:1 |
| **stipulation (4)** | 50:5 51:13 | 8:16 | **time (7)** | 43:1 44:1 |
| 43:22 44:2,4,8 | 59:21 | **THOMPSO...** | 1:14 5:5 15:18 | 45:1 46:1 |
| **stood (1)** | **taken (2)** | 2:13 5:9,22 7:8 | 40:19 51:3 | 47:1 48:1 |
| 49:21 | 1:17 30:21 | 9:3,22 10:12 | 60:11 62:10 | 49:1 50:1 |
| **street (3)** | **talk (1)** | 10:18 11:14 | **times (4)** | 51:1 52:1 |
| 2:12 13:18,24 | 14:9 | 12:9 13:2 | 17:3 46:9,19 | 53:1 54:1 |
| **submissions ...** | **talking (4)** | 15:25 16:12 | 48:14 | 55:1 56:1 |
| 7:12 | 31:18 43:7 | 16:23 17:9,16 | **title (1)** | 57:1 58:1 |
| **submitted (4)** | 45:7 47:18 | 17:23 18:18 | 15:16 | 59:1 60:1 |
| 11:8 13:8 14:6 | **Teague (2)** | 19:5,12 20:5 | **today (2)** | 61:1 62:1,15 |
| 19:17 | 21:24 22:3 | 20:11,23 | 53:17,21 | 63:1 64:1 |
| **Subscribed (1)** | **tell (24)** | 23:10 24:6,23 | **told (16)** | 65:1 |
| 62:18 | 4:10 8:18 11:7 | 25:17,24 | 5:2,5 8:15,17 | **true (6)** |
| **Subsequent (1)** | 11:10,12 12:4 | 26:19 27:10 | 9:9,16,18,19 | 5:8 8:23 31:10 |
| 6:19 | 12:24 13:14 | 27:22 30:3,11 | 27:19 29:20 | 32:7 62:9 |
| **suggested (1)** | 16:16,21 18:7 | 31:11,23 32:9 | 33:14,15 40:8 | 65:12 |
| 25:4 | 18:8 24:22 | 33:22 34:8,25 | 41:2 53:4,13 | **truth (2)** |
| **supervisor (2)** | 27:13 33:18 | 35:8 36:3,19 | **top (1)** | 3:19 62:5 |
| 37:17,18 | 36:10 41:9,11 | 36:24 37:9 | 7:20 | **truthful (1)** |
| **supervisory (3)** | 46:5,8,16,17 | 38:15,24 40:5 | **Traffic (7)** | 14:7 |
| 36:16 37:14,25 | 54:22 55:3 | 40:11,21 41:6 | 23:16 24:4 | **truthfully (1)** |
| **suppose (1)** | **tenure (1)** | 41:11 42:20 | 26:17 32:22 | 3:19 |
| 21:19 | 43:14 | 43:10 44:17 | 33:3 42:10,15 | **truthfulness ...** |
| **sure (5)** | **terminated (1)** | 46:23 47:6,15 | **transcript (2)** | 13:7 16:10 |
| 14:17 18:5 | 4:12 | 48:13,23 49:7 | 62:9,9 | **trying (1)** |
| 22:6 37:11 | **terms (4)** | 50:23 51:11 | **Traschen (71)** | 36:7 |
| 45:6 | 16:6 44:2,9 | 53:22 54:7,19 | 1:8,17 2:9 3:1 | **TVB (32)** |
| **sweep (1)** | 51:19 | 55:10,14,19 | 3:13,17 4:1 | 3:21,25 4:13 |
| 30:14 | **testified (1)** | 56:6,11 57:5 | 5:1 6:1 7:1 | 4:13,19 5:2 |
| **swept (2)** | 3:8 | 57:17 58:11 | 8:1 9:1 10:1 | 6:14 9:15 |
| 30:8,9 | **testify (3)** | 58:21 61:2 | 11:1 12:1 | 12:21 15:20 |
| **sworn (4)** | 16:4 18:13 | **threat (1)** | 13:1 14:1 | 23:6 24:20 |
| 3:6 62:5,18 | 62:5 | 49:14 | 15:1,12 16:1 | 29:13 31:22 |
| 65:11 | **testifying (1)** | **threatened (2)** | 17:1,19 18:1 | 34:6 35:18,22 |
| _____ | 9:23 | 4:21 25:6 | 19:1 20:1 | 36:18 39:3 |
| **T** | **testimony (6)** | **threatening (4)** | 21:1 22:1 | 43:21 44:3,10 |
| **T (5)** | 15:24 16:3,8 | 4:23 25:5 | 23:1 24:1 | 44:24 48:9 |
| 3:5 62:2 63:2 | 62:6,10 65:13 | 29:17 47:5 | 25:1 26:1 | 49:12 51:18 |
| 65:2,2 | **thank (2)** | **threats (1)** | 27:1 28:1 | 51:20,25 |
| **TAHIR (2)** | 8:4 61:18 | 46:6 | 29:1 30:1 | 54:23 56:2 |

57:21 60:24
**TVBs (14)**
5:7,14,15 6:15
10:11,16
14:25 15:21
20:22 21:2
27:20 28:4
35:25 39:4
**Two-page (2)**
63:8,10

_____
**U**
**Uh-hmm (1)**
29:15
**ultimately (1)**
37:24
**um (1)**
18:2
**understand (...**
12:16 13:16,21
14:3,17 21:8
23:7,8 24:18
52:24
**understandi...**
28:22
**UNITED (1)**
1:2
**upset (1)**
56:16

_____
**V**
**vague (4)**
4:8 11:24 18:4
22:12
**Vahdat (5)**
38:3,6 60:16
60:18 61:7
**Vehicles (3)**
21:4 25:22
26:11
**verbal (2)**
46:5,17
**verbally (1)**
29:17
**Verified (1)**
63:14

**VIDEOCON...**
1:20
**videotape (11)**
10:3,7,8,17,20
10:25 11:3,4
19:4,9,11
**view (2)**
10:2 19:13
**viewed (2)**
19:10 20:14
**viewing (1)**
10:7
**Violation (3)**
33:4 42:10,16
**Violations (4)**
23:16 24:5
26:17 32:22
**violence (8)**
7:21,24 8:12
19:16,22 20:9
46:6 63:9
**volition (1)**
36:13
**voracity (4)**
12:13 13:6
16:10 39:15

_____
**W**
**want (7)**
24:20 45:6
47:11,12 48:8
48:9 60:23
**wanted (1)**
61:10
**wants (2)**
60:16,18
**warranted (1)**
46:14
**way (2)**
45:15 65:17
**weekly (2)**
51:23 52:5
**went (1)**
13:12
**weren't (1)**
54:5

**WHEREOF ...**
65:19
**withdraw (1)**
59:20
**witness (5)**
3:6 61:20
65:10,13,19
**witnesses (3)**
18:16 59:11,19
**woke (1)**
35:23
**work (7)**
7:21,23 8:12
19:16,22 20:9
51:17
**worked (1)**
25:16
**working (1)**
23:6
**workplace (1)**
63:8
**writing (5)**
8:12 27:4 42:9
57:4 60:23
**written (12)**
12:14,19 14:15
14:20 28:5
31:9,17,20
45:11 58:19
59:12 60:10
**wrote (8)**
14:5,8 31:13
38:6 39:4
41:20 44:22
44:25
**Wynantskill ...**
3:16

_____
**X**
**X (4)**
1:3,12 63:2
64:2

_____
**Y**
**Yeah (1)**
21:22

**years (10)**
11:21,23 13:5
17:5 18:24
22:7 25:9
32:15 40:20
57:11
**yell (1)**
30:13
**York (34)**
1:2,21 2:5,7,13
2:13,18 3:7
3:16 5:6
10:10,16
12:21 14:25
20:21 21:12
23:6,15 24:4
26:11,17
27:20 31:22
32:22 33:3
35:25 39:3,4
42:10,15 56:2
57:21 65:4,8

_____
**Z**
**ZOOM (1)**
1:19

_____
**0**

_____
**1**
**1 (1)**
24:10
**1:20 (1)**
41:9
**1:21 (1)**
61:19
**10005 (1)**
2:13
**10804 (1)**
2:5
**11 (32)**
3:20 4:3,25
5:18 6:9,10
8:13,25 9:14
10:4 14:23
19:4 27:18
28:24 34:7,13

34:16,19,23
35:6 36:8,10
39:22 40:3,17
45:18,20
53:23 54:3,21
55:5 63:12
**11-page (1)**
63:14
**11228 (1)**
2:18
**11th (3)**
15:10 26:18
48:21
**12:24 (1)**
1:14
**12:59 (1)**
40:22
**12198 (1)**
3:16
**15 (6)**
28:7,9 41:2,3,7
63:10
**150 (1)**
51:3
**1600 (1)**
3:15
**17 (1)**
1:13
**17th (1)**
2:12
**18 (1)**
1:6
**18CV2710 (1)**
2:19

_____
**2**
**2 (1)**
24:13
**2:00 (1)**
41:3
**20 (7)**
28:6 39:5 47:9
56:18 62:19
63:11,13
**2011 (1)**
51:4

December 17, 2020

Page 76

| | |
|---|---|
| **2012 (4)** | **6** |
| 49:11 51:4 | **6 (1)** |
| 60:15 63:13 | 2:18 |
| **2015 (37)** | **68 (3)** |
| 3:20 4:3,25 | 7:4,6 63:8 |
| 5:18 6:9,10 | |
| 8:14,25 9:14 | **7** |
| 10:4 14:23 | **7 (5)** |
| 19:4 27:18 | 59:21,22,24 |
| 28:6,24 32:23 | 63:9,14 |
| 34:7,13,16,19 | **70 (2)** |
| 34:23 35:6 | 6:24,25 |
| 36:9,10 39:5 | **78 (2)** |
| 39:22 40:3,17 | 43:6,24 |
| 47:9 49:20 | |
| 53:23 54:3,21 | **8** |
| 55:5 56:18 | **80 (1)** |
| 61:10 63:11 | 51:3 |
| **2020 (2)** | **86 (1)** |
| 1:13 65:20 | 3:2 |
| **20th (2)** | **8th (2)** |
| 47:21 61:10 | 41:15,24 |
| **21 (1)** | |
| 2:5 | **9** |
| **23 (3)** | |
| 60:3,5,17 | |
| **2710 (1)** | |
| 1:6 | |
| **28 (2)** | |
| 2:12 63:11 | |
| | |
| **3** | |
| **3 (1)** | |
| 64:5 | |
| **31st (1)** | |
| 65:20 | |
| | |
| **4** | |
| **45 (1)** | |
| 63:13 | |
| | |
| **5** | |
| **522A (1)** | |
| 2:18 | |
| **59 (1)** | |
| 63:14 | |