# EXHIBIT P

Recv'd 7/12/2021

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUN 29 2021   ★

BROOKLYN OFFICE

My NAME IS Ingrid Gordon
ON 5/14/14 @ Approx 2:00 PM.
Patterson, I was waiting for Jo

speak to Mr. Marc H. Cappian,
Mr. Patterson Asked your

York Security Guard Does ~~Captain~~
a question,

~~Mr. Patterson~~ I told Dure please

she is waiting to speak to me.

At that point the security guard

told me Fuck you. I indicated

to him she is waiting to speak

to me please ~~will~~ ~~~~~~~~~~~~~~~~ me
she is waiting to speak to

He told me Fuck you again.

I told him to keep walking.

While I was waiting for Mr. C the security came
back and walked over to Mr C and was hostile.  P-32
Mr. C was still sitting. Due to the guard close personal space

# EXHIBIT O

Law Office of Mario H. Capogrosso, Esq.

245 Saw Mill River Road, Suite 106
Hawthorne, New York 10532

March 20, 2015

Ms. Elizabeth Prickett-Morgan
NYS Office of the Attorney General
120 Broadway, 24th floor
New York City, NY 10027

Dear Madam:

I am an attorney in the state of New York.

My Registration number is 424431.

Please reference index number 7738/2012.Capogrosso vs. State Dept of Motor Vehicles for which I was in litigation. A settlement agreement was reached on June 20, 2012. As part of this settlement agreement I was required to take an anger management course and upon completion of this course I was to be allowed to practice law in all DMV courts on an equal and unbiased standing with all other attorneys in the DMV.

To this date, I have been in complete compliance with all conditions as set forth as part of this settlement agreement.

However, the DMV has not upheld its side of this agreement.

on numerous occasions, I have been harassed, threatened and now currently my files are being tampered with while they are left unprotected in the attorneys room at the DMV at 2875 West 8th Street, Brooklyn, the principal DMV location at which I practice.

The threatening and harassment I have let go because I do not easily get intimidated nor harassed. But at this point my client's files are being tampered with and I must, as a attorney, object.

I provide the following in evidence:

1) On numerous occasions your security guard Dave Sparks has told me to go F___ myself (will provide proof upon request);

2) on several occasions your security guard Sparks has redirected other clients who come  have looking for me specifically to other attorneys or has interfered with my conversations while speaking to a clients (will provide proof upon request);

3) your security guard Sparks has approached me,  gotten in my face, stared and glared, I asked him what was the problem was and he told me I was the problem, F___ you.;

P-41

4) your security guard Sparks, has stood  looked at me directly while I was standing on the DMV traffic line gave me the sign of the cross twice and directed a spear hand in my direction.

After several complaints to Administrative Judge Gelbstein, the Senior judge at the Brooklyn TVB, I called Sparks employer. Subsequently, your security guard Sparks was relieved from his duties at the Brooklyn DMV for two weeks (proof to be provided).

I have made numerous complaints to Judge Gelbstein. His response has been " a spade is a spade (his words not mine), he laughs and giggles.

Judge Gelbstein is either complicit, incapable or incompetent to handle this issue.

As I have stated, I have ignored these incidents and have attempted at all levels not to aggravate the situation.

I have been in countless courts in my ten years of practice as an attorney and have never seen such behavior in any court system.

As I have stated, I can defend myself and absolutely will, so to this point I have ignored these incidents.

However, at this point your security guard Sparks is entering the attorney's room and tampering with my files. I have asked Judge Gelbstein to look at security tapes and have gotten no response.

As an attorney, I must now object. I cannot have my files tampered with.

I do not want an incident on your floor, I do not want an incident in your courtroom, I have no reason to have any trouble with any of your employees at the Brooklyn DMV.

To date, I have been a perfect gentleman and in complete with all conditions as set upon me by the settlement reached on June 12, 2012.

The DMV has not upheld their  side of this agreement.

All I ask is that they do so.

I do not seek to litigate but I will if I have to.

Please take any and all action to expedite and resolve these issues

Mario H.Capogrosso, Esq.

914-806-3692

NY Registration No. 4244331

2

P-42

# EXHIBIT Q

10/23/14

ON WEDNESDAY OCTOBER 22, 2014

WHILE SPEAKING TO A MOTORIST

I MOVED AN UMBRELLA LYING ON

TOP OF YOUR TRASH FROM THE REAR

FRONT OF THE TRASH TO THE REAR OF

THE TRASH IN ORDER TO LAY DOWN

MY PAD SO I COULD BETTER

SPEAK TO A CLIENT

ON THURSDAY OCTOBER 23, 2014

YOUR SECURITY GUARD DAVE APPROACHED

ME INDICATING NOT TO MOVE ANY

UMBRELLAS ON THE TRASH CANS OR ELSE

*signature*

MARIO H. CAPOGROSSO ESQ
914-806-3692

P-33

# EXHIBIT R

I came down o me
DMV 10/31/13 looking for
Ms. Coppine. The sentry
Mr. Dove indicated p
me that Ms. Coppine was
not here. He directed
me p enemy attorny
and r/d me p pale
pursue attorny.
As a result      (A mc Lemont
I lost time    Racquel L mc Lemon
               Racquel mc Lemon
               ████ ████ 8382
from my job.

P-34

EXHIBIT R



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL

KENT T. STAUFFER
EXECUTIVE DEPUTY ATTORNEY GENERAL
DIVISION OF STATE COUNSEL

LISA R. DELL
ASSISTANT ATTORNEY GENERAL IN CHARGE
LITIGATION BUREAU

By E-Mail and First Class Mail                                          June 20, 2012
Jacqueline A. Rappel, Esq.
McDonough & McDonough, LLP
401 Franklin Avenue, Suite 210
Garden City, New York  11530

     Re:   Capogrosso v. State Dep't of Motor Vehicles, Index No. 7738/2012

Dear Jackie:

     We write on behalf of the New York State Department of Motor Vehicles ("DMV") in response to your e-mail dated June 15, 2012, with attached certification of Dr. John T. McCann, and to advise you that Mr. Capogrosso may appear on behalf of his clients at Traffic Violation Bureau ("TVB") offices as of June 27, 2012.

     Please be advised that if and when Mr. Capogrosso appears at a TVB office, he must strictly adhere to the standards of conduct required of attorneys appearing before State courts. Threatening conduct by Mr. Capogrosso, verbal threats of physical violence, and verbal abuse including the use of ethnic slurs will not be tolerated.  DMV reserves all rights to respond to future misconduct including, if warranted, by immediately and permanently barring Mr. Capogrosso from appearing on behalf of DMV licensees at TVB offices.

     Very truly yours,

     SERWAT FAROOQ
     Assistant Attorney General

P–31

# EXHIBIT S

**Bushra Vahdat**

| | |
|---|---|
| **From:** | Bushra Vahdat |
| **Sent:** | Friday, December 23, 2011 12:05 PM |
| **To:** | Alan Gelbstein; '1sralj@gmail.com' |

Good Morning;

As you are aware I had to deal with some difficult issues at Brooklyn South TVB on Wednesday, December 21st and Thursday, December 22.

Below is a summary of the events:

When I was first appointed to the position of Supervising ALJ the clerical staff at Brooklyn South approached me and handed me an affidavit signed by all of them requesting help dealing with an attorney, Mr. Cappagrosso, who appears in that court on a regular basis. The affidavit stated that they felt physically threatened by this attorney due to his actions in and out of our office. He had verbally abused the clerks on many occasions and had followed a clerk with his car and stopped the clerk's car from moving. He had then asked the clerk to get out of the car and fight it out with him. Nothing had happened since some other clerks had come by and Mr. Cappagrosso had left.

At that time I met with Mr. Cappagrosso in Sr. ALJ Gelbstien's office and we jointly had a conversation with Mr. Cappagrosso.

We explained to him that his behavior was not professional and if he did not stop his foul language and his threats we would have to take action and bar him from the TVB building. At that point he promised us that he would conduct himself according to the rules of conduct for attorneys.

As far as I was aware there were no further incidents with Mr. Cappagrosso in that office.

On Wednesday , December 21 I received an email from Danielle Calvo the SMVRI in Brooklyn (Please see attached). She was very concerned since she had to go into the attorney room and stop Mr. Cappagrosso from shouting religious obscenities. Mr. Cappagrosso had thrown a coffee cup at another attorney, Mr. Brody, in the attorney room and after Mr. Brody had objected Mr. Cappagrosso had started to scream and shout obscenities at everyone around him. A crowd had gathered and the entire court house was disturbed.

About an hour later I received another email from Ms. Calvo stating that Mr. Cappagrosso had tried punching one of the attorneys ,Mr. Mayer, but had stopped about an inch away from his face. Mr. Mayer was very upset and had left the area in fear.

I asked Ms. Calvo to speak to Mr. Cappagrosso and inform him that the rest of his cases for the day were being adjourned and that he had to leave the building at once. She followed my directions and Mr. Cappagrosso left after shouting at Ms. Calvo.

That afternoon I received phone calls from two attorneys who had witnessed the incident with Mr. Brody and Mr. Mayer. Both attorneys confirmed the account related to me by Ms. Calvo.

On Thursday, December 22, I arrived at Brooklyn South before the 8:30 calendar and along with Sr. ALJ Gelbstein interviewed Mr. Mayer, Mr. Brody, Mr. Saddique and Mr. Mehr. Again, they all confirmed the prior day's incident.

I also spoke to a few of the clerks who informed me that Mr. Cappagrosso punches the walls of the TVB office and on occasion hits the steal polls in the office with his fists. He makes such loud noise when he does this that all the clerks run into the back clerical area to take shelter.

Mr. Gelbstein and I called Mr. Schoen and asked for his counsel. He agreed with us that the best course of action was to ban Mr. Cappagrosso from the building.

After taking everyone's statement, Mr. Gelbstein and I met with Mr. Cappagrosso. We asked him for his version of the prior day's events and he admitted to shouting the religious obscenities and trying to punch, as he put it, the air in front of Mr. Mayer's face. He was not remorseful and claimed that he needs to punch the walls in our office to let out steam. I also observed that his knuckles were severely bruised.

At this point Mr. Gelbstein and I felt that the wellbeing of the office was at risk and we asked Mr. Cappagrosso to leave the building and not to return till further notice. He was escorted out of the building by two Srgt. From the police room. The clerical staff reiterated to me how scarred they were of Mr. Cappagrosso and how they felt that at any time he may punch one of them instead of the wall.

DMV-0000224

EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------X

In the Matter of an Article 78 Proceeding

MARIO CAPOGROSSO,

                    Petitioner,

          -against-

NEW YORK STATE DEPARTMENT OF MOTOR
VEHICLES,

                    Respondent.

-------------------------------------------------------X

Index No. 7738/12

**VERIFIED PETITION**

          Petitioner, MARIO CAPOGROSSO, by his attorneys, MCDONOUGH &

MCDONOUGH, LLP, petitioning the court, allege upon information and belief:

          1.     That at all times hereinafter mentioned, petitioner, MARIO

CAPOGROSSO (hereinafter "CAPOGROSSO"), was and still is a resident of the State

of New York.

          2.     That at all times hereinafter mentioned, respondent, the NEW YORK

STATE DEPARTMENT OF MOTOR VEHICLES, was and is a department, agency or

board with powers and duties derived from the laws of the State of New York.

          3.     In accordance with the laws of the State of New York, the Traffic

Violations Bureau was and is an agency that was created to assume jurisdiction over

traffic infractions.

          4.     That in accordance with the powers given to it by the laws of the State of

New York, the Traffic Violations Bureau maintains adjudication centers throughout the

3

P-16

State of New York including, including an adjudication center in Brooklyn South which handles traffic infraction matters.

5.    On September 22, 2004, CAPOGROSSO was admitted to practice law in the Appellate Division Second Department and is and was at all relevant times an attorney in good standing.

6.    In or about 2005, CAPOGROSSO began practicing as an attorney in the Traffic Violations Bureau representing individuals and corporations charged with various traffic infractions.

7.    The majority of CAPOGROSSO'S work takes place in the Traffic Violations Bureau adjudication center located in Brooklyn South.

8.    From the onset of his practice in the Traffic Violations Bureau adjudication centers, CAPOGROSSO has zealously represented his clients and has never had any founded complaints or grievances regarding his work.  He has had nothing but a stellar record and his practice has grown in his chosen area of practice as his clients appreciate his hard work and routinely seek out his representation and refer him to others.

9.    On December 22, 2011, CAPOGROSSO was in the attorneys' room at the Brooklyn South Traffic Violations Bureau adjudication center when an altercation took place between another attorney and himself.

10.    Shortly after entering the attorneys' room, CAPOGROSSO put his coffee cup down to the side of a table and thereafter asked another attorney, Yakov Brody, Esq., who regularly practices at the same center, "Excuse me, can I get my coffee."

4

P-17

11.   In response, and without provocation, Mr. Brody started screaming and spewing ethnically based expletives at CAPOGROSSO; which will not be repeated herein.  Mr. Brody was yelling at the top of his voice.  CAPOGROSSO initially walked away in an effort to end the onslaught, but Mr. Brody resumed his rant of racially charged expletives at CAPOGROSSO, for which Mr. Brody had no cause.  At this point of the continuing attack, CAPOGROSSO responded in kind.

12.   CAPOGROSSO realizes his outburst was ill considered and unprofessional and he is extremely ashamed at his resort to lowering himself to the level of his attacker.  However, his response was a reaction to an unprovoked and relentless ethnic and vile verbal attack by Mr. Brody, which Mr. Brody initiated without cause and refused to end even when CAPOGROSSO backed away from the initial attack.

13.   One of the managers of the Brooklyn South center, Danielle Calvo, heard the exchange (again, Mr. Brody was yelling at the top of his lungs) and came into the room.  In front of CAPPOGROSO she stated: "Now's our chance to get rid of him", referring to CAPOGROSSO.

14.   After Ms. Calvo and Mr. Brody had left the room, Jeffrey Myers, Esq. entered the room and sat where Mr. Brody had been sitting.  He told CAPOGROSSO that he overheard the exchange and told CAPOGROSSO that he would have been justified in striking Mr. Brody.  CAPOGROSSO responded in the heat of the moment: "This is what I would have done" and punched the air.

15.   CAPOGROSSO never punched anyone or touched anyone during the entire exchange.

5

P-18

16.    Meanwhile, apparently Mr. Brody and Ms. Calvo had called the police and Bushra Vahat, the supervising Administrative Law Judge, with regard to the situation.

17.    The police and Judge Vahat allegedly obtained affidavits from everyone in the courtroom; including people who did not even witness the exchange.

18.    Neither Judge Vahat nor the police took any statement from CAPOGROSSO regarding his version of the events.

19.    The next day, December 23, 2010, CAPOGROSSO arrived at the Brooklyn South adjudication center ready to appear for the clients he was meeting there.  When he arrived he encountered chaos.  There were "police" in the courtroom taking affidavits from attorneys who were not even present the day before.

20.    Senior ALJ Gelbstein, the supervising Administrative Judge of the center, met CAPOGROSSO in the courtroom and asked to see him in his office.   When CAPOGROSSO arrived in the office there were two "officers" in blue uniforms and Judge Vahat in the office.  CAPOGROSSO was told by Judge Gelpstein "You have to leave and if you come back here you are going to be arrested."  Judge Vahat added "If you go into any Department of Motor Vehicle center you are going to be arrested."

21.    After Judge Vahat proclaimed this *ad hoc* expulsion, CAPOGROSSO started to speak and ask what was going on.  Judge Vahat told him that he wasn't wanted there and to get out.  CAPOGROSSO left the Brooklyn South adjudication center immediately thereafter.

22.    CAPOGROSSO never received anything in writing with respect to this *ad hoc* ban issued by Judge Vahat and Judge Gelbstein without benefit of any hearing of any sort, which ban applied not only to the Brooklyn South adjudication center, but

P-19

purportedly to all Traffic Violations Bureau adjudication centers, until a letter response was received on February 8, 2012 (described in more detail below).

23.    Two weeks after the December 23, 2011 ouster, CAPOGROSSO contacted Judge Vahat and asked her to explain her determination.  She advised that if CAPOGROSSO was "good" and "stayed quiet" she would reconsider her determination in three months, and at that time determine *if* he could go back *into other* Department of Motor Vehicle adjudication centers, but that she would not allow him to practice again in the Brooklyn South center at that time.

24.    She further stated that he *might* eventually work his way back into the Brooklyn South center at some unspecified date in the future, but that for an *indefinite* period of time he was prohibited from entering that center.

25.    By letter dated January 25, 2012, CAPOGROSSO'S counsel wrote to the Commissioner of the NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES advising that the handling of matters on December 23, 2011 and the ban on CAPOGROSSO'S right to practice law in Brooklyn South adjudication center without an unbiased investigation and the right to be heard before and unbiased arbiter on the issues, was arbitrary and capricious, and violated CAPOGROSSO'S constitutional right to due process of law.   A copy of that correspondence dated January 25, 2012 is annexed hereto as **Exhibit "A"**.

26.    By letter dated February 8, 2012, the NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES responded to CAPOGROSSO'S request for reconsideration advising that it was adhering to the decision to ban CAPOGROSSO from all Traffic Violations Bureau centers for an indefinite period of time (a copy of the correspondence

P-20

dated February 8, 2012 is annexed hereto as **Exhibit "B"**) apparently without unconcerned about the requirements of due process of law.

27.    The New York State Department of Motor Vehicles in its letter, alleged other incidents involving CAPOGROSSO as justification for their actions.  The February 8, 2012, setting forth these other incidents, contains untruths and mischaracterizations regarding CAPOGROSSO'S behavior and interactions.

28.    Significantly, CAPOGROSSO was never before advised of any of these other alleged complaints against him nor was he provided with any of the alleged "evidence" supporting them nor given a chance to respond or defend himself against the charges.

29.    No hearing was ever conducted with respect to any of these allegations and CAPOGROSSO was never given an opportunity to respond to the allegations being made against him.

30.    CAPOGROSSO'S Livelihood is based in the Brooklyn South adjudication center.  That is where his clients are and that is where the cases he handles are venued.

31.    CAPOGROSSO currently has approximately 496 clients, and someone has to appear on their matters.  This illegal and improper prohibition is preventing CAPOGROSSO from representing his clients, has deprived him of his livelihood and has interfered with his clients' rights to be represented properly, zealously and by an experienced attorney of their choosing who is familiar with their businesses, their histories, and the pending charges.

8

P - 21

32.     Since the date of this incident and determination, CAPOGROSSO has been forced to hire other attorneys to handle his cases in the Brooklyn South center so that no defaults or other negative results occur.

33.     Since December 23, 2011, Mr. Capogrosso has lost and continues to lose significant income as a result of this unjustified and unlawful banning of him from the Traffic Violations Bureau adjudication centers.

34.     Respondent's unjustified, improper and unlawful banning of him from the Traffic Violations Bureau adjudication centers has caused CAPOGROSSO to incur excessive and unnecessary financial expenses in hiring covering attorneys, which he can ill-afford given his current loss of income due to respondent's decision and determination.

35.     The banning of CAPOGROSSO from Traffic Violations Bureau adjudication centers was in violation of lawful procedure in that Mr. CAPOGROSSO was not provided with the alleged "evidence" used against him, was not given an opportunity to confront his accusers and was never given the opportunity of a fair and unbiased hearing on the charges.

36.     Moreover, if there is any substance whatever to the allegations made against CAPOGROSSO, they are so trivial under the circumstances that under no reasonable view do they justify the measure of punishment or penalty adopted and such measure of punishment or penalty clearly constitutes an abuse of discretion on the part of the Respondent.

37.     The banning of CAPOGROSSO from Traffic Violations Bureau adjudication centers was illegal, arbitrary and capricious, and an abuse of discretion.

9

P-22

38.     It is respectfully submitted that a temporary restraining order is required on these facts if justice is ever to be reached as allowing this unauthorized ban on a licensed attorney in good standing,  to continue his practice without *any* due process of law as a predicate, violates the fundamental constitutional protections due the citizens of this country.

39.     This unwarranted and constitutionally defective ban on CAPOGROSSO, interfering with the highest concentration of his legal practice, and preventing him from appearing in any Traffic Violations Bureau in the State has far reaching consequences.

40.     CAPOGROSSO has been forced to suffer grave financial loss and to incur significant unwarranted expenses in meeting his obligations to defend his clients in pending matters; he has suffered great harm to his professional reputation in the venue where his practice is concentrated , which continues so long as the ban is in place;  he has suffered and continues to suffer a loss of new clientele and of new matters from established clientele;  his reputation and relationship with his existing client base, built up over many years, has been imperiled by his inability to service their legal needs; and, most importantly, CAPOGROSSO'S clients have been negatively impacted on matters pending before the very Bureau that has improperly and directly interfered with COMPASSO'S representation on those pending charges.

41.     The Traffic Violations Bureau interfered with the attorney-client relationships between CAPOGROSSO and his clients and prevented them from being represented by the counsel of their choice,  a zealously guarded right under our jurisprudence.  They did so without even the indicia, let alone the reality of due process of law: an opportunity to be heard; an opportunity to be apprised of the evidence against

P - 23

you; an opportunity to confront the evidence against you; and the opportunity to prevent evidence in defense.

42.    As none of these occurred in this instance and as basic rights have been denied the Petitioner and his clients without due process of law, the temporary restraining order must be issued precluding the proliferation of the ban pending the resolution of this proceeding.

43.    Petitioner therefore further prays for an Order of this Court staying and restraining the Respondent from taking any action pursuant to the decision and determination dated February 8, 2012 until a final decision is rendered in regard to all matters and all issues raised herein.

44.    No previous application has been made for the relief requested herein.

**WHEREFORE**, pursuant to CPLR §7803(3) Petitioner prays that this Court review the aforesaid decision and determination of Respondent and grant a final judgment pursuant to CPLR §7806 as follows:

A.    Annulling and setting aside Respondent's determination of punishment and penalty in banning Petitioner from all Traffic Violations Bureau adjudication centers for an indefinite period of time as being arbitrary, capricious, illegal, unlawful and an abuse of discretion;

B.    Compelling Respondent to forthwith restore and reinstate Petitioner's privileges to enter Traffic Violations Bureau adjudication centers to perform his business of acting as an attorney to clients in said centers;

11

P-24

C.      Directing Respondent to pay Petitioner his lost wages as a result of this arbitrary, capricious, illegal and unlawful banning of Petitioner in an amount to be determined by the Court; and,

D.      Granting such other, further and different incidental relief as this Court deems just and appropriate including, but not limited to, reasonable attorneys' fees and the costs and disbursements of this action.

Dated: Garden City, New York
       March 1 , 2012

Yours, etc.,

McDONOUGH & McDONOUGH, LLP
Attorneys for Petitioner

By: _____
    Chris G. McDonough
    401 Franklin Avenue, Suite 210
    Garden City, New York 11530
    (516) 33-2006

12

P - 25

## VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF ~~KINGS~~ _Westchester_ )

    I, MARIO CAPOGROSSO, am the Petitioner in the above entitled action.  I have read the foregoing petition and know the contents thereof.  The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
MARIO CAPOGROSSO

Sworn to before me this 29 day
of February, 2012.

_____
Notary Public

MARYANN PRATA
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01PR6004623
QUALIFIED IN WESTCHESTER COUNTY
My Commission Expires March 23, 20 14

13

P-26

# EXHIBIT T

# Attorney/Client Privilege

Daniel: Has complained to Judge Gelfstein

ALJ G: has spoken to DFI, will let them know about our meeting today.

Folder: 1 clerk letter of complaint
1 attorney letter (Pushed his assistant)
1 petition signed by clerks and one ALJ

George Han

Told on Tues Jan 4th C came to window asked to include G said it can't be included He asked again after the motorist left. How many times are you going to ask me the stupid question and yelling pursued. G told him that he has changed his plea when he got to the room. G said you have lied to me before.

Wed. He (c) approached G again and said I will be waiting for you outside. at 4:10 when G left Mr C was waiting at the entrance of parking lot in his car. G stopped behind him. Both got out of the car, they argued, C kept saying "what are you going to do about it" shouting going on

DMV-0000229

# EXHIBIT T

MV-984 (12/11)

New York State Department of Motor Vehicles
DIVISION OF LABOR RELATIONS
**REPORT OF WORKPLACE VIOLENCE INCIDENT**

Please fill out the form as accurately as possible and fax it to the Division of Field Investigation at (518) 474-7543 **AND** Labor Relations at (518) 474-8423. If the incident is a written threat, please include a copy of the letter with this report. Originals should be maintained in a workplace violence report folder at the primary office that the reporter works in.

FOR OFFICE USE ONLY

FILE NUMBER: _____

Received: _____

X RE: _____

X RE: _____

PRIVACY CONCERN: ☐ YES  ☐ NO

### NAME OF INDIVIDUAL FILING REPORT

| Name | Title | Office Location | Phone Number |
|------|-------|-----------------|--------------|
| David Smart | Guard-Summit | Brooklyn South TVB | REDACTED |

### INCIDENT REPORTED TO

| Date Reported | Person Reported To | Title |
|---------------|--------------------|-------|
| 5/11/15 | Danielle Calvo | Supervisor Grade 17 |

### INCIDENT

| Date | Time | | Location of Occurrence |
|------|------|--|------------------------|
| 5/11/15 | 8:50 | ☑ AM ☐ PM | Brooklyn South TVB near line 1 |

DFI Contacted? ☐ Yes ☑ No   DFI Contact Name

### EMPLOYEES INVOLVED

| Name | Title |
|------|-------|
| David Smart | Security Guard-Summit Security |
| Name | Title |
| Name | Title |

### OUTSIDE INDIVIDUALS INVOLVED

| Name | Sex | Phone | Client ID # |
|------|-----|-------|-------------|
| Mario H. Capogrosso | ☑ Male ☐ Female | REDACTED | |
| Address | City REDACTED | State | Zip Code |
| Name | ☐ Male ☐ Female | Phone | Client ID # |
| Address | City | State | Zip Code |
| Name | ☐ Male ☐ Female | Phone | Client ID # |
| Address | City | State | Zip Code |

### WITNESSES

| Name | Sex | Phone | |
|------|-----|-------|--|
| REDACTED | ☑ Male ☐ Female | REDACTED | |
| Address REDACTED | City | State | Zip Code |
| REDACTED | ☑ Male ☐ Female | REDACTED | |
| Address REDACTED | City | State | Zip Code |
| Name | ☐ Male ☐ Female | Phone | |
| Address | City | State | Zip Code |

Continue on other side

Page 1 of 2

Ex. 6 p. 016

P-261

**Description of Events Leading to the Incident and What Occured:**

Near line 1 Mr. Capogrosso said to security guard David Smart "Are you looking at me?". David replied "You are looking at me". Mr.Capogrosso said "back up, back up", he then pushed David in his chest.

**Nature and Extent of Injuries:**

**Additional Comments:**

911 was called and two officers responded. David went up to the 60pct with them to make a report. They said that they could not arrest Mr.Capogrosso because he pushed David with an open hand not a closed fist. I was told by Judge Gelbstein to go with officers from the police room, to tell Mr.Capogrosso that he must leave the building, and to give him legal's phone number for any further details. I did that and he left the building.

Danielle Calvo
_____
Name of Individual Filing Report

_____
Signature of Individual Filing Report

5/11/15
_____
Date

_____
Name of Supervisor

_____
Signature of Supervisor

_____
Date

MV-984 (12/11)

Page 2 of 2

Ex. 6 p. 017

P-262

# EXHIBIT U

From: 0000000000          Page: 1/5      Date: 5/11/2015 11:00:33 AM

 

# New York State Department of Motor Vehicles
## Coney Island
## Traffic Violations Bureau
### 2875 West 8th Street
### Brooklyn, New York 11224

Date: _5/11/15_

To: _Labor Relations_

From: _Danielle Calvo_

Number of pages including coversheet: _5_

Our Telephone: 718-266-6867
Our Fax:          718-266-7478

_The last page is Mr. Tahir's statement from last week's incident He just gave it in today_



This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com

P-258

MV-984 (12/11)



**New York State Department of Motor Vehicles**
**DIVISION OF LABOR RELATIONS**
# REPORT OF WORKPLACE VIOLENCE INCIDENT

Please fill out the form as accurately as possible and fax it to the Division of Field Investigation at (518) 474-7543 AND Labor Relations at (518) 474-8423. If the incident is a written threat, please include a copy of the letter with this report. Originals should be maintained in a workplace violence report folder at the primary office that the reporter works in.

| FOR OFFICE USE ONLY |
| --- |
| FILE NUMBER: |
| Received: |
| X RE: |
| X RE: |
| PRIVACY CONCERN: ☐ YES   ☐ NO |

## NAME OF INDIVIDUAL FILING REPORT

| Name | Title | Office Location | Phone Number |
| --- | --- | --- | --- |
| David Smart | Guard-Summit | Brooklyn South TVB | 718-266-5512 |

## INCIDENT REPORTED TO

| Date Reported | Person Reported To | Title |
| --- | --- | --- |
| 5/11/15 | Danielle Calvo | Supervisor-Grade 17 |

## INCIDENT

| Date | Time | | Location of Occurrence |
| --- | --- | --- | --- |
| 5/11/15 | 8:50 | ☑ AM ☐ PM | Brooklyn South TVB near line 1 |

DFI Contacted? ☐ Yes  ☑ No    DFI Contact Name

## EMPLOYEES INVOLVED

| Name | Title |
| --- | --- |
| David Smart | Security Guard-Summit Security |
| Name | Title |
| Name | Title |

## OUTSIDE INDIVIDUALS INVOLVED

| Name | Sex | Phone | Client ID # |
| --- | --- | --- | --- |
| Mario H. Capogrosso | ☑ Male ☐ Female | 914-806-3692 | |
| Address | City | State | Zip Code |
| 245 Saw Mill River Road Suite 106 | Hawthorne | NY | 10532 |
| Name | Sex | Phone | Client ID # |
| | ☐ Male ☐ Female | | |
| Address | City | State | Zip Code |
| Name | Sex | Phone | Client ID # |
| | ☐ Male ☐ Female | | |
| Address | City | State | Zip Code |

## WITNESSES

| Name | Sex | Phone |
| --- | --- | --- |
| George Han-MVR | ☑ Male ☐ Female | 718-266-5512 |
| Address | City | State | Zip Code |
| 2875 West 8th Street | Brooklyn | NY | 11224 |
| Name | Sex | Phone |
| Anthony Adinolfi, ESQ | ☑ Male ☐ Female | 718-265-2211 |
| Address | City | State | Zip Code |
| 2875 West 8th Street | Brooklyn | NY | 11224 |
| Name | Sex | Phone |
| | ☐ Male ☐ Female | |
| Address | City | State | Zip Code |

Continue on other side

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com

D-259

Description of Events Leading to the Incident and What Occured:

Near line 1 Mr. Capogrosso said to security guard David Smart "Are you looking at me?". David replied "You are looking at me". Mr. Capogrosso said "back up, back up", he then pushed David in his chest.

Nature and Extent of Injuries:

Additional Comments:

911 was called and two officers responded. David went up to the 60pct with them to make a report. They said that they could not arrest Mr. Capogrosso because he pushed David with an open hand not a closed fist. I was told by Judge Gelbstein to go with officers from the police room, to tell Mr. Capogrosso that he must leave the building, and to give him legal's phone number for any further details. I did that and he left the building.

nielle Calvo
_____
Name of Individual Filing Report

_____
Signature of Individual Filing Report

5/11/15
_____
Date

Vincent Palmieri
_____
Name of Supervisor

_____
Signature of Supervisor

5/11/10
_____
Date

84 (12/11)

Page 2 of 2

D-260

EXHIBIT 🖋 V



# MEMORANDUM

**DATE:**      May 27, 2015

**TO:**        Jean Flanagan and Vincent Palmieri

**FROM:**      Danielle Calvo

**RE:**        May 2015 Monthly Report

**OFFICE:**    Brooklyn South TVB



Workplace Violence

On 5/5 two of the attorneys (Mr.Capagrosso and Mr.Tahir) had an altercation and a workplace violence report was submitted.  On 5/11 Mr.Capogrosso pushed our security guard David Smart and another workplace violence report was submitted.  Mr. Capogrosso was asked to leave the building that day and since then has not been permitted to enter any of the TVB offices.

www.dmv.ny.gov

P-255



### I.  Workplace Violence

On 5/5 two of the attorneys (Mr.Capagrosso and Mr.Tahir) had an altercation and a workplace violence report was submitted.  On 5/11 Mr.Capogrosso pushed our security guard David Smart and another workplace violence report was submitted.  Mr. Capogrosso was asked to leave the building that day and since then has not been permitted to enter any of the TVB offices.



**Brooklyn South TVB**
**Monthly Report for period ending May 31, 2015**
Legal Affairs Key Priorities for Program Area Performance and Results



p-257