# EXHTBIT DD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MARIO H. CAPOGROSSO,

                        Plaintiff,        Case No. 18 Civ. 2710

    -against-

ALAN GELBSTEIN, et al.,                  PLAINTIFF'S RESPONSES
                                                               TO STATE DEFENDNATS
                                                                INTERROGATORIES
                       Defendants.

-------------------------------------------------------------X

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, as supplemented by the Local Civil Rules of the Eastern District of New York, Plaintiff Mario H. Capogrosso hereby responds to the interrogatories contained in State Defendants Interrogatories (the "Interrogatories") as follows:

## PRELIMINARY STATEMENT

1. By providing the responses referenced below, Plaintiff, Mario H. Capogrosso, does not in any way waive or intend to waive and instead expressly reserves: (a) all objections to competency, relevance, materiality and admissibility of the responses, documents or the subject matter thereof; (b) all objections as to vagueness, ambiguity, or undue burden relating to the Interrogatories; (c) all rights to object on any ground to the use of any responses or documents, in any subsequent proceeding, including the trial of this or any other action; and/or (d) all rights to object on any ground to any Interrogatory for further responses to these or any discovery requests involving or relating to the subject matter of these Interrogatories.

1

2. These responses are based upon information known to or believed by Plaintiff at the time of responding to these Interrogatories. Plaintiff's development of his legal position in this litigation is ongoing. Plaintiff reserves the right to supplement or modify these responses and will supplement or amend these responses to the extent required consistent with the Federal and Local Rules and/or scheduling order(s) of this Court.

## GENERAL OBJECTIONS

Plaintiff asserts the following General Objections, which are incorporated by reference in each specific response to each Interrogatory:

1. These objections apply to State Defendants Definitions, Instructions, and each of his Interrogatories as if such objections were set forth in full in the response to each Interrogatory and are not necessarily repeated in response to each individual Interrogatory. The assertion of the same, similar, or additional objections in specific objections to an individual Interrogatory, or the failure to assert any additional objection to an Interrogatory, does not and shall not be deemed to waive any of Plaintiff's objections as set forth in this section.

2. Plaintiff objects to each Interrogatory to the extent it seeks information, including documents generated by other individuals, organizations, state agencies, or other entities, that is not in her possession, custody or control.

3. Plaintiff objects to each Interrogatory to the extent that it is overly broad, unduly burdensome, intended to harass, and/or seeks information or materials not relevant to any claim or defense in this litigation.

4. Plaintiff objects to each Interrogatory to the extent it seeks information that is beyond the scope of discovery permitted under the Federal Rules of Civil Procedure and/or the

2

Local Rules of the United States District Court for the Eastern District of New York, including, but not limited to, information sought by these Interrogatories which would be more readily or practically obtained by another method of discovery.

5. Plaintiff objects to each Interrogatory to the extent it is vague, unclear or ambiguous, does not clearly indicate the information it seeks and/or incorporates ambiguously defined terms so as to render the Interrogatory ambiguous, substantially overbroad or unduly burdensome.

6. Plaintiff objects to each Interrogatory to the extent that it seeks information or documents protected from discovery by the attorney-client privilege, official information privilege, executive privilege, deliberative process privilege, law enforcement privilege, common interest privilege, self-critical analysis and/or official investigatory privileges, the attorney work product doctrine, or any other applicable privilege or exemption. No information provided and nothing produced in response to any individual Interrogatory is intended as, or shall in any way be deemed, a waiver of any applicable privilege or exemption. Any provision of information or production of such document would be inadvertent.

Without waiving the foregoing objections, Plaintiff responds to the Interrogatories as follows:

3

## RESPONSES

## INTERROGATORIES

### INTERROGATORY NO. 1:

Provide the amount and a calculation of each individual category of damages or monetary relief you claim, including but not limited to compensatory damages, punitive damages, emotional distress, back pay, and front pay. For each category, include the methodology for how the total was calculated and identify the factual basis for such claims of relief, including "the documents or other evidentiary material on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26 (a)(iii).

Response:

1. Plaintiff seeks punitive damages in an amount to be determined, but not to exceed $20,000, 000.00 as stated in my Complaint.

2. Plaintiff seeks $122,715.00 in lost revenue as documented in Plaintiff's P-191-P-206 Exhibits, which represents approximately 15 months of projected receipts.

3. Plaintiff seeks his loss in future prospective revenue which could have been accumulated at the of $8181.00 per month ($122,715.00 divided by 15 months) from May 2015 to the present time - which is currently 66 months – approximately $539, 946.00

4. Plaintiff seeks compensatory damages due to the loss and resultant damages to his legal reputation in the Brooklyn community and Plaintiff values such economic damages as 5x his back revenues (5 x $122, 715.00) approximately $613,575.00.

4

5. Plaintiff seeks $80.00 from Defendant Smart at two percentage points, which accumulated over five years equals $88.32, which represents the amount of money stolen by Defendant Smart from Plaintiff.

## INTERROGATORY NO. 2:

Identify any physicians, psychologists, psychiatrists, or other health professionals of any type from whom you sought or received treatment for any condition connected to or arising out of the incidents alleged in the Complaint, and describe the type of treatment received. For each such practitioner, provide a HIPAA-compliant release form covering all aspects of such treatment.

Response:

John T. McCann

Rita S. Petro

We talked.

## INTERROGATORY NO. 3:

Identify every civil, criminal, or administrative action, proceeding, or arbitration in which you have been a party, including union and bar grievances, and for each such action or proceeding state the full caption; the court, tribunal, or agency; the index or docket number; whether you were a plaintiff or defendant; the status or disposition of each action or proceeding; and any records relating to these actions or proceedings that you have retained.

Response:

5

<u>In the Matter of an Article 78 Proceeding, Mario Capogrosso vs. New York State Department of Motor Vehicles,</u> Index No. 7738/2012.

## INTERROGATORY NO. 4:

Identify all formal or informal complaints about you concerning your practice or any aspect of your conduct concerning DMV's traffic violations bureau. For each such complaint please identify the complainant, the date of the complaint, the substance of the complaint, who the complaint was made to, and the complaint's outcome.

<u>Response:</u>

All such complaints, formal and informal, are documented in Plaintiff's Document Production.

## INTERROGATORY NO. 5:

Identify the basis for your contention that each remaining defendant was personally involved in the decision to bar you from practice before the TVB, including all documents or testimony that you believe support that contention.

<u>Response:</u>

At the direction of Defendant Calvo, I placed a phone call to Defendant Traschen on May 11, 2015.

Defendant Traschen fails to respond to letter of complaint seeking clarification, reference Exhibits P-43 to P-58 as provided in Plaintiff's Document Production.

6

Defendant Gelbstein directs the actions of Defendant Calvo and the NYC police as stationed in the Brooklyn TVB. reference plaintiffs Exhibit, P127-129, as provided in Plaintiff's Document Production.

The assertions stated in Michael McElroy affidavit Plaintiff's Exhibit P 59 to P-60, provided in Plaintiff's Document Production.

Defendant Calvo in the presence of NYC police has me removed from the Brooklyn TVB on May 11, 2015 gives me Defendant Traschen's phone number and tells me to call her.

## INTERROGATORY NO. 6:

Identify the basis of your contention that Defendant David Smart was an employee, agent or otherwise under the control of the TVB, DMV, or any other body or agency of New York State, or acted under color of state law, including all documents or testimony that you believe support that contention.

Response:

In a conversation with Defendant Gelbstein he tells me that he has authority over everyone in the building and within 100 yards of the building.

He directs the actions of Defendant Calvo and the NYC police as stationed in the Brooklyn TVB. reference plaintiffs Exhibit, P127-129, as provided in Plaintiff's Document Production.

I frequently see Defendant Smart conferencing with Defendant Gelbstein.

7

I see Defendant Smart go into Defendant Gelbstein's chambers during the day, specifically in the early morning.

On several occasions Defendant Calvo asks where David (Defendant Smart) is - J. Gelbstein (Defendant Gelbstein) wants to see you.

Defendant Gelbstein entertains my complaints of harassment by Defendant Smart.

Defendant Gelbstein investigates the theft of $80.00 by Defendant Smart and tells me that Smart states he gave the money to me.

Defendant Gelbstein accepts and maintains files, complaints, and affidavits in his office concerning those who either work at or come to the courthouse, reference Plaintiff's Document Production.

## INTERROGATORY NO. 7:

Identify each incident of the "constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance" referred to in your Complaint. For each such incident please specify the nature of the incident, the date of the incident, the persons involved, any witnesses thereto, whether you reported the incident and to whom, and what response if any was taken.

Response:

On the morning of May 11, 2015 Defendant Smart paces nervously behind me shaking his head and grumbling. He then crosses over two security barriers get within several inches of my face ducks his ahead and obscures his hand.

8

In June of 2012 Defendant Smart pushes me from behind.

On December 3. 2014 at approximately 9:23 am Defendant Smart stands up from a seated position looks and point directly at me with a spear hand and then gives me the sign of the cross., reference Plaintiffs Exhibit P-35.

Defendant Smart would repeatedly get in my face – within several inches -- when I question him and ask what is the problem, he says F--- you you are the problem. One such time documented Plaintiff; s Exhibit P-32.

Defendant Smart threatens me when I move an umbrella to the side on the top of a garbage can. Reference Plaintiff's Exhibits P-33.

Defendant Smart redirects motorists who come seeking me at the Brooklyn TVB to other attorneys, Reference plaintiff's Exhibit P-34.

Defendant Smart tampers with my files, reference Plaintiff's Exhibit P41 to P-42.

Defendant Smart steals $80.00 on a $150.00 fee from a client who owed me such balance at some point in time between December 2011 and June 2012.

## INTERROGATORY NO. 8:

Identify the basis of your contention that "[t]he Defendants' acts were done with malice and oppression warranting the assessment of exemplary or punitive damages against such defendants," including all documents or testimony that you believe support that contention.

Response:

9

Defendant Gelbstein approaches me on May 8, 2015 and states, "Can't you go practice somewhere else, I saw what you wrote about me that I am complicit and incapable" Complaint p. 3.

Defendant Gelbstein refuses to address or even keep notice of any of my complaints provided to his office. Reference Plaintiff's Exhibits P-32 to P-40.

Defendant Gelbstein and Defendant Calvo refuse to take any action with respect to Defendant Smart when Defendant Smart pushes me from behind in June 2012.

Defendant Gelbstein and Defendant Calvo refuses to take any action when on December 3. 2014 at approximately 9:23 am Defendant Smart stands up from a seated position looks and point directly at me with a spear hand and then gives me the sign of the cross., reference Plaintiffs Exhibit P-35.

Defendant Gelbstein and Defendant Calvo refuse to take any action when Defendant Smart tampers with my files, reference Plaintiff's Exhibit P41 to P-42.

Defendant Calvo states "Now's our chance to get rid of him." Plaintiff's Exhibit P-18 provided in Plaintiff's Document Production.

On numerous occasions, Defendant Smart tells me F--- you you are the problem.

10

## INTERROGATORY NO. 9:

Identify who you believe made the decision to expel you from practice before the TVB, when the decision was made, and why the person or persons made that decision, including all documents or testimony that you believe support that conclusion.

Response:

The defendants as stated in my Complaint.

## INTERROGATORY NO. 10:

Identify the basis of your contention that ALJ Gelbstein (or any other defendant) "encouraged Defendant Smart to continue to confront the Plaintiff in an attempt to 'bait the Plaintiff into a physical response to justify barring Plaintiff permanently from practicing his profession in the TVB Courts," including all documents or testimony that you believe support that contention.

Response:

Defendant Gelbstein approaches me on May 8, 2015 and states, "Can't you go practice somewhere else, I saw what you wrote about me that I am complicit and incapable" Complaint p. 3.

Defendant Calvo states "Now's our chance to get rid of him." Plaintiff's Exhibit P-18 provided in Plaintiff's Document Production.

Defendant Gelbstein refuses to address or even keep notice of any of my complaints provided to his office. Reference Plaintiff's Exhibits P-32 to P-40.

11

Defendant Gelbstein and Defendant Calvo refuse to take any action with respect to any of my complaints filed with Defendant Gelbstein's office. Reference Plaintiff's Exhibits P-32 to P-40.

Defendant Gelbstein and Defendant Calvo refuse to take any action with respect to Defendant Smart when Defendant Smart pushes me from behind in June 2012.

Defendant Gelbstein and Defendant Calvo refuse to take any action when on December 3. 2014 at approximately 9:23 am Defendant Smart stands up from a seated position looks and point directly at me with a spear hand and then gives me the sign of the cross., reference Plaintiffs Exhibit P-35.

Defendant Gelbstein and Defendant Calvo refuse to take any action when Defendant Smart tampers with my files, reference Plaintiff's Exhibit P41 to P-42.

Defendant Gelbstein and Defendant Calvo refuse to take any action when Defendant Defendant Smart steals $80.00 on a $150.00 fee from a client who owed me such balance at some point in time between December 2011 and June 2012 and if any formal investigation was taken I was not allowed to be a part of such investigation or given a formal report by Defendant Gelbstein as to the results of such investigation.

When I complain to Scott Benish of PEC Security of Defendant Smart's harassment and theft Scott Benish only reply is – They love Smart down here. Reference Plaintiff's Exhibit P-38 to P-39.

12

Even after I file my letter of March 20, 2015, reference Plaintiff's Exhibit P-41 to P-42, Defendant Smart continues his threatening behavior by approaching me on the morning of May 11, 2015.

## INTERROGATORY NO. 11:

Identify the basis of your contention that any State Defendant was motivated to expel you from practice in the TVB due to the letter you sent to AAG Elizabeth Morgan, or any other speech protected by the First Amendment, including all documents or testimony that you believe support that contention:

Response:

In my first meeting with Defendant Gelbstein at the Brooklyn South TVB he calls an attorney meeting with all the attorneys. His last statement to us is "How do I get a piece of the action"

I observe him regularly having lunch with several Jewish ticket brokers in his office after ordering all ticket brokers out of the Brooklyn South TVB – when I question him about it he states: They are friends of my wife I have dinner with them but I do not know what they do for a living."

I have repeatedly seen Defendant Gelbstein in the GE (General Requirements Hearing Room) rescheduling a multitude of cases and enter guilty pleas on some of them. All on a side bar.

13

I question one attorney who indicated to me that he was covering a case for Defendant Gelbstein

He condones the presence of Tanya Rabinovich in his courtroom – a woman who repeatedly was calling herself a lawyer. I call the District Attorney concerning her actions and representations in his court. Defendant's Gelbstein's response to me "What are you Don Quixote"

I complain to Defendant Gelbstein of Defendant Smart's actions in 1) pushing me from behind, 2) stealing money from a client who came looking for me while I was absent from the TVB from December 2011 to June 2012, 3) repeatedly getting in my face and when I ask what the problem was Defendant Smart indicates "F… you are the problem", 4) for giving me the sign of the cross and a rigid spear hand directed at my person while in the Brooklyn South TVB, 5) tampering with my attorney files to which Defendant Gelbstein laughs and giggles and tells me " a spade is a spade." and 6) when I complain to Smart's Company PEC Group of NY, I am told by an officer at PEC that they love Smart at the TVB.

Defendant Gelbstein approaches me on May 8, 2015 and states, "Can't you go practice somewhere else, I saw what you wrote about me that I am complicit and incapable" Complaint p. 3.

Defendant Calvo states "Now's our chance to get rid of him." Plaintiff's Exhibit P-18 provided in Plaintiff's Document Production.

14

## INTERROGATORY NO. 12:

Identify the basis of your contention that any State Defendant "was acting in [his or her] administrative capacity and not in a judicial capacity and therefore said Defendant is not entitled to absolute immunity," including all documents or testimony that you believe support that contention.

Response:

Defendant Gelbstein approaches me on May 8, 2015 and states, "Can't you go practice somewhere else, I saw what you wrote about me that I am complicit and incapable" Complaint p. 3. Letter To Elizabeth Prickett Morgan, Plaintiff's Exhibit P-41 to P-42.

Defendant Calvo states "Now's our chance to get rid of him." Plaintiff's Exhibit P-18 provided in Plaintiff's Document Production.

## INTERROGATORY NO. 13:

Identify the basis of your contention that your First Amendment rights were "chilled," including all documents or testimony that you believe support that contention.

Response:

Defendant Gelbstein approaches me on May 8, 2015 and states, "Can't you go practice somewhere else, I saw what you wrote about me that I am complicit and incapable" Complaint p. 3.

March 20, 2015 letter to Elizabeth Prickett Morgan, Attorney General. Plaintiff's Exhibit P-41 to P-42 provided in Plaintiff's Document Production.

15

Identify all attempts by you to mitigate your alleged damages, including all jobs, legal work, or other sources of income after your expulsion from practice at the traffic violations bureau and the amount of money derived from each source.

<u>Response:</u>

I have returned all unearned legal fees to my clients. I am no thief.

I have received no complaint from any TVB, specifically the Brooklyn TVB, that I have not returned all unearned legal fees to any client.

Dated: New York, New York
November 20, 2020

*/s/ Mario H. Capogrosso*
Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804

To: James Thompson, Esq.
Assistant Attorney General
28 Liberty Street
New York, NY 10005

## DECLARATION

Pursuant to Federal Rule of Civil Procedure Mario H. Capogrosso hereby declares, under penalty of perjury, that I have read the foregoing interrogatory responses, and that, to the best of my knowledge and understanding, the foregoing responses are true and correct.

Dated November 20, 2020

_____
Mario H. Capogrosso