UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO H. CAPOGROSSO,                                    18-CV-2710

            Plaintiff

-against-

ALAN GELBSTEIN, et al.,

            Defendants



## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SMART'S

## MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Mario H. Capogrosso ("the Plaintiff"), submits this Memorandum of Law in opposition to the Motion for Summary Judgment of the Defendant, David Smart ("the Defendant"), for Summary Judgment dismissing the Plaintiff's Complaint. For the reasons that follow, the Defendant's Motion should be denied

**Statement of Facts**

For the sake of brevity, the Plaintiff respectfully refers the Court to the accompanying Statement of Material Facts in Opposition to the Defendant's Motion.

**Argument**

The Defendant first argues that the Complaint against him must be dismissed because he was employed by a private company and was hence not a "state actor" (Smart's

1

Brief, p. 6). But Courts within this Circuit have recognized that a private security guard may act as a state actor if he or she has been granted certain police powers by the state or local government." *Rojas v. Alexander's Dept. Store, Inc.,* 924 F.2d 406, 408 (2d Cir. 1980). *See, e.g., Brooks v. Santiago,* 1994 WL 529865, 1 (S.D.N.Y.) (where the private security officer bears some additional imprint of public authority, his conduct may constitute state action).

Here, this exception is directly applicable, and the Defendant's argument that he was neither given the authority of state law, nor willfully participated in the joint activity of the State (Smart's Brief, p. 7), is factually incorrect. In fact, the record is rife with allegations that the Defendant participated directly in the alleged violations.

If the Defendant was in fact a participant in the occurrences and decision that led to the Plaintiff's administrative removal and preclusion from return to the TBV building, his conduct is automatically considered as part of the State's.

In *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), the Supreme Court of the United States held that a physician who was under contract with the state to provide medical services to inmates at a state prison hospital on a part-time basis acted under color of state law within the meaning of 1983 when he treated the inmate.

The Defendant relies upon *Wade v. Byles,* 83 F.3d 902 (2d Cir. 1996) (State's Brief, pp. 9-10), where the actions involved were ministerial—to wit, the security guard was acting in the capacity of security guard when he shot the plaintiff. Here, the actions involved do not encompass the contemplated scope of the Defendant's duties; nor would the Plaintiff, who was well-acquainted with him, believe that the Defendant was employed by another entity.

2

The Defendant further argues that his actions did not violate the Plaintiff's First Amendment rights (Defendant's Brief, p. 11).  He contends that, *inter alia*, "there is nothing in the record to support that" he "engaged in any retaliatory action adverse to Plaintiff, . . . ." (*Id.* at p. 12).  However, in support of this argument, the Defendant cites to "witness reports" that contradict the Plaintiff's version of events (*Id.*).  That witnesses contradict the Plaintiff does not mean that there is an absence of material fact upon which a jury could find for the Plaintiff.  There is evidence of retaliation. I report the theft of $80 on a $150 fee to defendant Gelbstein in 2012. I affirm that an investigation is made by defendant Gelbstein. Gelbstein admits to me that Smart said he took the money and he gave it to me, which is a lie, Smart is allowed to remain at the Brooklyn TVB. I affirm that I believe that defendant Smart had a grudge and would not let it go. When asked whether I believed the defendant Smart wanted to get rid of you I affirm "Absolutely." (Exhibit N, Capogrosso deposition, pages 356-357).

The Defendant also points to an alleged dearth of "evidence to suggest" that his "actions were motivated or substantially caused by" the "Plaintiff's exercise of his First Amendment rights" (Defendant's Brief, p. 12).  The Court has already ruled that there was a sufficient nexus in time between the AG letter of March 20, 2015, and the incident of May 11, 2015. (See Memorandum and Order, Dkt 71, page 21) Defendant Smart was a contributing factor to my ban from the TVB for but for his unprovoked approach and continual prior attempts at harassment I would not have been removed. There is sufficient proof to establish that defendants Gelbstein and Calvo directed the action of defendant Smart. (Exhibit O, Gelbstein deposition page 14, Exhibit Q, Calvo deposition page 13). Defendant Gelbstein did come in possession of the AG letter, (Exhibit O, Gelbstein

deposition page 16), Defendant Gelbstein would speak to defendant Smart concerning my complaints (Exhibit O, Gelbstein deposition page 20).  address my complaints concerning defendant. I do affirm that I did not know defendant Smart's name to be Smart but subsequently found out it was Smart and it is defendant Smart, who I call Sparks, I am speaking about in my AG letter of March 20, 2015 (Exhibit N, Capogrosso deposition page 428-429).

Finally, the Defendant argues that the Plaintiff's Due Process claims are unsupported and insufficiently pled (Defendant's Motion, p. 13).  I disagree. There is sufficient evident to establish throughout that there was no attention to due process. (Exhibit O, Gelbstein deposition pages 4-9, 27-45, Exhibit P, Traschen deposition pages 10-19, 19, Exhibit Q, Calvo deposition pages 5-7, 21-33) After the incident with Smart on May 11, 2015 I was banned permanently from all New York TVB with a two (2) minute phone call from defendant Traschen. See phone log attached as Exhibit R, reference May 11, 9:57. This is the only time I spoke to defendant Traschen.  Defendant Traschen recalls having only one phone conversation with me and does not recall responding to anything in writing (Exhibit P, Traschen deposition, page 26 line 24-25, page 27, lines 1-4). I wrote multiple letters to the TVB none of which were responded to (See Exhibit R). There was never a proper investigation of any complaint made against my office by the TVB as was done by Heidi Burke, Office Manager for the New York Department of Motor Vehicles. (See Exhibit S). Please also note in this Exhibit paragraph 4, which states "Mr. Flores spoke with Mrs. Burke and the Bronx District Office manager Raquel Padilla, who was on site for a meeting, and both state that the confrontation was provoked by Officer Smart." Further it goes on to state that defendant Calvo took sides opposing this determination,

4

"Mrs. Calvo also stated the at she did not want Officer Smart fired, as she felt the incident was not his fault and that he was a very good guard." Defendants Calvo, Gelbstein, and Calvo took sides against me on the morning of May 11, 2015, without any thought of due process.

**Conclusion**

     For the reasons set forth above, the Defendant's Motion for Summary Judgment should be denied.

July 29, 2021

Respectfully submitted,

Mario H. Capogrosso