# EXHTBIT O

December 17, 2020

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MARIO H. CAPOGROSSO,

PLAINTIFF,

-against-     Case No.:
18 CV 2710 (EK) (LB)

ALAN GELBSTEIN, in his individual capacity,
IDA TRASCHEN, in her individual capacity,
DANIELLE CALVO, in her capacity, SADIQ
TAHIR, in his individual capacity, PEC
GROUP OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHRODER, in his
official capacity,
                         DEFENDANTS.
------------------------------------X
DATE:  December 17, 2020
TIME:  10:16 A.M.

DEPOSITION of the Defendant,
ALAN GELBSTEIN, taken by the Plaintiff,
pursuant to a Notice and to the Federal
Rules of Civil Procedure, held VIA ZOOM
VIDEOCONFERENCE, before Jamie Newman, a
Notary Public of the State of New York.

## Page 2

APPEARANCES:

THE LAW FIRM OF MARIO H. CAPOGROSSO
PLAINTIFF PRO SE
21 Sheldrake Place
New Rochelle, New York 10804
capogrossom@gmail.com

OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL
Attorneys for the Defendants
ALAN GELBSTEIN, in his individual
capacity, IDA TRASCHEN, in her individual
capacity, DANIELLE CALVO, in her
capacity, SADIQ TAHIR, in his individual
capacity, PEC GROUP OF NY, INC., DAVID
SMART, and DMV COMMISSIONER MARK
SCHRODER, in his official capacity,
28 Liberty Street, 17th Floor
New York, New York 10005
BY:  JAMES THOMPSON, ESQ.
james.thompson@ag.ny.gov

DMV LEGAL BUREAU
Attorneys for the Defendant
DMV COMMISSIONER MARK SCHRODER, in his
official capacity
6 Empire State Plaza, Room 522A
Albany, New York 11228
BY:  BARBARA MONTENA, ESQ.
File #: 18CV2710
barbara.montena@dmv.nyc.gov

* * * *

## Page 3

1   ALAN GELBSTEIN
2   (Whereupon, all 86 exhibits
3   were previously marked by Counsel,
4   Mr. Capogrosso.)
5   A L A N  G E L B S T E I N, called as a
6   witness, having been first duly affirmed by
7   a Notary Public of the State of New York,
8   was examined and testified as follows:
9   EXAMINATION BY
10  MR. CAPOGROSSO:
11      Q.   Please state your name for the
12  record.
13      A.   Alan Gelbstein.
14      Q.   What is your address?
15      A.   1570 East 7th Street, Brooklyn,
16  New York 11230.
17      Q.   Defendant Gelbstein we're here
18  today because I need to take your
19  deposition concerning the action filed
20  against you, myself and several other
21  defendants.
22      THE COURT REPORTER:  Wait,
23  wait, you're breaking up Counsel.
24  Counsel, you're breaking up so I
25  can't hear you.

## Page 4

1   ALAN GELBSTEIN
2       MR. CAPOGROSSO:  Can you hear
3   me now?
4       THE COURT REPORTER:  You are
5   still breaking up, it's not the best
6   connection.  I could hear you, but it
7   goes in and out.
8       MR. CAPOGROSSO:  Can you hear
9   me now?
10      THE COURT REPORTER:  It goes in
11  and out.
12      MR. CAPOGROSSO:  Let me ask a
13  few more questions and see how we do.
14  Is that all right?
15      THE COURT REPORTER:  That's
16  fine.
17      Q.   These questions are all going
18  to be directed to Defendant, Gelbstein.
19      Were you in the Brooklyn
20  Traffic Violation Bureau on the morning of
21  May 11, 2015?
22      A.   At some point, yes.
23      Q.   At what point did you arrive at
24  the Brooklyn Traffic Violation Bureau on
25  that day?

1  (Pages 1 to 4)

December 17, 2020

Page 5

ALAN GELBSTEIN

1
2     A.   I arrived late, I don't recall
3  the time.
4     Q.   Did you arrive after my removal
5  on that day?
6     A.   Yes.
7     Q.   What are your normal business
8  hours at the Brooklyn TVB?
9     A.   Business hours I believe are
10 8:30 to 4:30.
11    Q.   So, why were you late that day?
12    A.   I had some personal things to
13 attend to.
14    Q.   Did you not want to be in the
15 building that day for any reason?
16    A.   No, sir.
17    Q.   Now, I was removed that day on
18 May 11, 2015 under your direction?
19    A.   I beg your pardon.
20         MR. THOMPSON:  Objection to the
21    form of the question.
22    Q.   I was removed that day from the
23 Brooklyn TVB by your direction, do you
24 recall doing that?
25         MR. THOMPSON:  Objection to the

Page 6

ALAN GELBSTEIN

1
2    form of the question.  You can
3    answer.
4     Q.   Do you recall having me removed
5  from the Brooklyn TVB on May 11, 2015?
6     A.   I don't believe that is
7  correct.
8     Q.   You don't recall having me
9  removed?
10    A.   I did not have you removed.
11    Q.   You did not?
12    A.   No.
13    Q.   Let me take you back -- lets
14 goes to Exhibit 70.  Exhibit 70 that I have
15 marked, Plaintiff's Exhibit 70.
16         Are you in possession of
17 Plaintiff's Exhibit 70?
18    A.   I am not.
19    Q.   Is your attorney, Thompson, in
20 possession of it?
21         MR. THOMPSON:  My understanding
22    and Madame Court Reporter correct me
23    if I'm wrong, you're going to be
24    putting the exhibits up on the
25    screen; is that correct?

Page 7

ALAN GELBSTEIN

1
2         THE COURT REPORTER:  That's my
3    impression, but if I put it on the
4    screen you have to wait because I
5    can't have my hands off the machine,
6    but yeah, if that's what you want me
7    to do.
8         MR. CAPOGROSSO:  Well, I
9    already forwarded all the exhibits to
10   counsel, attorney Thompson.  So,
11   attorney Thompson, do you not have
12   this exhibit?
13        MR. THOMPSON:  I do have the
14   exhibit, but I think it would be best
15   if it were put on the screen so
16   everyone can see it.
17        MR. CAPOGROSSO:  Well, it's
18   actually Exhibit 69.  Exhibit 69.
19        THE COURT REPORTER:  Is that
20   what you would like me to put up?
21        MR. CAPOGROSSO:  No, actually,
22   it's Exhibit 68.  Exhibit 68, let's
23   start with that one.
24        THE COURT REPORTER:  Are these
25   already marked, Counsel?

Page 8

ALAN GELBSTEIN

1
2         MR. CAPOGROSSO:  It's marked as
3    Plaintiff's Exhibit 68.  Scroll down
4    to the first page.
5         (Whereupon, Plaintiff's Exhibit
6    68, previously marked, was
7    introduced.)
8     Q.   This is a work violence police
9  report, are you familiar with this document
10 Exhibit 68?
11    A.   Yes, I am.
12    Q.   Are you familiar with the
13 person at the top David Smart?
14    A.   Yes.
15    Q.   Now, I ask you take a look at
16 the second page.
17        Right there under additional
18 comments and I would like you to take note
19 of the third line of that page which reads
20 "I was told by Judge Gelbstein to go with
21 officers from the police room to tell Mr.
22 Capogrosso that he must leave the building
23 and give him a legal phone number for any
24 further details.  I did that and he left
25 the building."

2  (Pages 5 to 8)

December 17, 2020

|  | Page 9 |
|---|---|

ALAN GELBSTEIN
1
2      Now, that is a statement made
3   by Danielle Calvo, would you agree to that?
4      A.   Yes.
5      Q.   And you're saying that you did
6   not order Danielle Calvo to have me
7   removed?
8      A.   I may have, I -- I may have,
9   yes.
10      Q.   So, which one is it, you had me
11   removed on that day?
12      A.   I didn't physically remove you,
13   I was, as I recall vaguely, I can't say
14   with absolute certainty, that they called
15   me telephonically and relayed what occurred
16   and at some point I imagine because it says
17   so here, I must have told her to have you
18   removed and to give you legal counsel's
19   phone number.
20      Q.   Well, who called you on that
21   morning?
22      A.   I believe it was Danielle.
23      Q.   Danielle.
24           And what time did she call you?
25      A.   I beg your pardon.

|  | Page 10 |
|---|---|

ALAN GELBSTEIN
1
2      Q.   And what time did she call you?
3      A.   I don't recall the time.
4      Q.   Now, there was a videotape of
5   this alleged altercation between myself and
6   Defendant Smart, did you observe that
7   videotape?
8           MR. THOMPSON:  I'm going to
9      object to the form of the question.
10      Q.   Did you observe the video --
11   you still have to -- did you observe the
12   videotape of the alleged push?
13           MR. THOMPSON:  Note my
14      objection, you can answer.
15      A.   I don't recall whether I did or
16   not.
17      Q.   So, you don't recall ever
18   observing the videotape?
19      A.   I don't recall, no.
20      Q.   Did you keep possession of that
21   videotape?
22      A.   I personally did not.
23      Q.   At any point in time did you
24   view that videotape?
25      A.   I don't recall.

|  | Page 11 |
|---|---|

ALAN GELBSTEIN
1
2           MR. THOMPSON:  Objection, asked
3      and answered.
4      Q.   Did you have me removed from
5   the Brooklyn TVB based on that videotape,
6   did you?
7      A.   I would have -- assuming that I
8   saw it, which I don't recall I did, it
9   would have been probably well after the
10   fact.
11      Q.   So, you're having me thrown out
12   based on an allegation made by Danielle
13   Calvo, is that it?
14           MR. THOMPSON:  Objection to the
15      form of the question.
16      Q.   Is that correct?
17      A.   I believe based on what she
18   told me, we took action.
19      Q.   And did you ask Danielle Calvo
20   if she viewed the videotape?
21      A.   Did I ask her if she viewed it?
22      Q.   Yes.
23      A.   I did not ask her.
24      Q.   Did you approach me on the
25   afternoon May 8th and said, "I saw what you

|  | Page 12 |
|---|---|

ALAN GELBSTEIN
1
2   wrote about me," concerning a letter I
3   wrote to Attorney General Pricket-Morgan
4   that I called you complacent, incompetent
5   and incapable.
6           Do you recall approaching me on
7   the afternoon of May 8th?
8      A.   I do not.
9      Q.   And did you say to me on the
10   afternoon of May 8th, "can't you go
11   practice somewhere else"?
12      A.   I don't remember saying that to
13   you at all.
14      Q.   Were you predisposed to having
15   me removed from the Brooklyn TVB?
16      A.   I was not.
17      Q.   Were you conveniently not
18   present at the Brooklyn TVB on the morning
19   of May 11th; sir, did you not happen to
20   view the videotape or the incident between
21   myself and Defendant Smart?
22           MR. THOMPSON:  Objection.
23      A.   I'm not sure I understand the
24   question.
25      Q.   Were you purposefully not

3 (Pages 9 to 12)

December 17, 2020

## Page 13

ALAN GELBSTEIN

1
2  available at the Brooklyn TVB on the
3  morning of May 11, 2015?
4          MR. THOMPSON:  Objection.
5          (Whereupon, there was
6      cross-talk, so Counsel re-asked the
7      question.)
8      Q.   Were you purposefully not
9  available on the morning of May 11, 2015?
10     A.   No.
11     Q.   Did you tell Defendant Smart to
12 approach me on the morning of May 11, 2015
13 and create an incident between myself and
14 him?
15         MR. THOMPSON:  Objection,
16     compound.  You can answer.
17         THE WITNESS:  I didn't hear
18     you, Counsel?
19     Q.   Did you tell?
20         THE WITNESS:  I heard you, I
21     didn't hear Mr. Thompson said
22     something.
23         MR. THOMPSON:  Objection,
24     compound, but you can answer the
25     question.

## Page 14

ALAN GELBSTEIN

1
2      A.   Repeat the question, please.
3      Q.   Did you tell Defendant Smart to
4  approach me on the morning of May 11, 2015?
5      A.   No.
6      Q.   Do you have authority over the
7  actions of Defendant Smart at the Brooklyn
8  TVB?
9          MR. THOMPSON:  Objection to the
10     form of question, you can answer.
11     A.   I do.
12     Q.   You do?
13     A.   Yes.
14     Q.   Who viewed the evidence on the
15 morning of May 11, 2015 of this alleged
16 push, other than Danielle Calvo?
17         MR. THOMPSON:  I'm having a
18     hard time hearing what you're saying,
19     Mr. Capogrosso.
20     Q.   Who viewed the evidence of this
21 alleged push, who viewed the videotape on
22 the morning of May 11, 2015, other than
23 Danielle Calvo?
24         MR. THOMPSON:  Objection,
25     assumes facts not in evidence.  You

## Page 15

ALAN GELBSTEIN

1
2  can answer.
3      A.   I don't know who viewed it.
4      Q.   Did Ida Traschen view the
5  videotape before she had me removed --
6  before she told me that I was not allowed
7  to practice law in the Brooklyn TVB or any
8  New York TVB?
9          MR. THOMPSON:  Objection to the
10     form.
11     A.   I don't know if Ida Traschen
12 observed it.
13     Q.   Did you have a conversation
14 with Ida Traschen on the morning of May 11,
15 2015?
16     A.   I do not recall with certainty
17 whether I did or not.
18     Q.   Ida Traschen did not call you
19 and question you concerning my removal on
20 the morning of May 11, 2015?
21         MR. THOMPSON:  I'm going to
22     object on the basis of
23     attorney/client privilege and work
24     product, the contents of any
25     conversation between Judge Gelbstein

## Page 16

ALAN GELBSTEIN

1
2  and Ida Traschen who is counsel of
3  DMV that is a legal conversation.
4          And so, Judge Gelbstein I'll
5      instruct you not to answer any
6      question what you said to Ida and
7      what Ida said to you.
8      Q.   You still have to answer the
9  question, did you have a conversation with
10 Ida Traschen?
11     A.   I don't recall.
12     Q.   Were you in possession of a
13 letter that I wrote on March 20, 2015, to
14 Attorney General Pricket-Morgan?
15     A.   I believe I was furnished a
16 copy of that letter.
17     Q.   When were you furnished a copy
18 of that letter?
19     A.   I don't know the date, it was
20 part of an e-mail.
21     Q.   Was it prior to the event, the
22 alleged push on May 11, 2015?
23     A.   I couldn't tell you, I don't
24 know.
25         THE COURT REPORTER:  What is

4 (Pages 13 to 16)

December 17, 2020

Page 17

ALAN GELBSTEIN

1        ALAN GELBSTEIN
2  Cricket's last name?
3      MR. CAPOGROSSO:
4  Pricket-Morgan, M-O-R-G-A-N. Pricket
5  is also her last name.
6      MR. THOMPSON: It's hyphenated,
7  Pricket-Morgan.
8      Q.   You don't recall when you came
9  in possession of a letter of May 11, 2015?
10     A.   Not at this time. It's been
11  five years and I did not review it, I
12  couldn't tell you.
13     Q.   Was that letter forwarded to
14  you directly by Attorney General
15  Pricket-Morgan?
16     A.   No.
17     Q.   Did you address any of the
18  complaints that I made in that letter of
19  March 20, 2015?
20     A.   I don't remember with
21  specificity what the complaints were.
22     Q.   Well, I will get that letter
23  for you now, but did you take any action
24  with respect to that letter?
25     A.   Again, if I don't know -- if I

Page 18

1        ALAN GELBSTEIN
2  don't recall the contents, I couldn't tell
3  you what my reaction would be.
4     Q.   Fine, let me get you the
5  letter. Let's go to Exhibit 15.
6      (Whereupon, Plaintiff's Exhibit
7     15, previously marked, was
8     introduced.)
9     Q.   Defendant Gelbstein, do you
10  recall receiving this letter?
11     A.   Yes, I saw this letter.
12     Q.   When did you see it?
13     A.   I don't recall the first time I
14  saw it. As I said, it was attached to an
15  e-mail I received.
16     Q.   And it's dated March 20th; is
17  that correct?
18     A.   Yes.
19     Q.   2015?
20     A.   Yes.
21     Q.   The incident between myself and
22  Defendant Smart, this alleged push occurred
23  on May 11th, am I right?
24     A.   I don't know what you're
25  looking at. I beg your pardon.

Page 19

1        ALAN GELBSTEIN
2     MR. CAPOGROSSO: I'll withdraw
3  that question.
4     Q.   Now, I made certain complaints
5  against Defendant Smart which I brought to
6  your attention in this letter. I ask you
7  to look down that page.
8     MR. CAPOGROSSO: If you can
9  scroll down the page, please.
10    THE COURT REPORTER: Sure.
11     Q.   Now, Item Number 1, I'll draw
12  your attention to Item Number 1, I state
13  that your security guard David Sparks to me
14  repeated times "to go fuck myself."
15     Do you see that statement?
16     A.   I do.
17     Q.   You did.
18     Did you take any action in
19  response to that statement, did you rectify
20  it?
21     A.   Your statement does not seem to
22  be addressed to me for me to take action
23  upon David Sparks.
24     Q.   Did I ever make a complaint to
25  your office concerning that type of

Page 20

1        ALAN GELBSTEIN
2  behavior?
3     A.   You have come in to my office
4  to complain about security guard David
5  Sparks, yes.
6     Q.   And what did you do in response
7  to those complaints?
8     A.   On each -- well, I don't know
9  how many times you came in. I remember you
10  coming in, I called David Sparks in and I
11  told him that if he said anything
12  derogatory or had an altercation with you,
13  he has to keep far away from you. Whenever
14  he sees you, he should go in the opposite
15  direction.
16     Q.   But, he didn't obey that order,
17  did he?
18     A.   I don't know that to be
19  correct, sir.
20     Q.   Well, he did approach me on the
21  morning of May 11, 2015; right?
22     A.   I don't know that to be the
23  case, sir.
24     Q.   The police reports -- you
25  didn't -- I mean, after Defendant Smart

5  (Pages 17 to 20)

December 17, 2020

|  | Page 21 |
|---|---|
| 1 | ALAN GELBSTEIN |
| 2 | approached me on May 11, 2015, you didn't |
| 3 | view that videotape at any point |
| 4 | thereafter? |
| 5 | MR. THOMPSON: Objection to the |
| 6 | form of the question. |
| 7 | THE WITNESS: Answer? |
| 8 | MR. THOMPSON: You may answer. |
| 9 | Q. After he approached me on |
| 10 | May 11th -- |
| 11 | THE COURT REPORTER: Wait, the |
| 12 | connection is not good. This is not |
| 13 | a good connection. |
| 14 | MR. CAPOGROSSO: Give me one |
| 15 | minute, maybe if I move my laptop to |
| 16 | a different location maybe I can get |
| 17 | a better connection. Can you give me |
| 18 | one minute to do that? |
| 19 | THE COURT REPORTER: Sure. |
| 20 | MR. CAPOGROSSO: Can you hear |
| 21 | me better, Ma'am? |
| 22 | THE COURT REPORTER: Yes, I |
| 23 | can. The witness was trying to |
| 24 | answer, but the connection got all |
| 25 | messed up. |

|  | Page 22 |
|---|---|
| 1 | ALAN GELBSTEIN |
| 2 | A. The answer is, I don't recall |
| 3 | ever seeing the tape. |
| 4 | Q. All right. |
| 5 | Directing your attention to the |
| 6 | that third question that I made complaints |
| 7 | to the office that your security guard |
| 8 | stared and glared at me and would get in my |
| 9 | face and say FU. |
| 10 | Do you recall that? |
| 11 | A. I missed the question, say it |
| 12 | again, please. |
| 13 | Q. I made a complaint that your |
| 14 | security guard Defendant Smart would get in |
| 15 | my face and stare and glare at me. |
| 16 | Do you recall me making a |
| 17 | complaint to your office concerning that? |
| 18 | A. I just read Number 3 and what |
| 19 | is your question with regard to Number 3? |
| 20 | Q. Do you recall me making that |
| 21 | complaint to your office? |
| 22 | A. No, I do not. |
| 23 | Q. At one point in time did you |
| 24 | laugh and giggle at me when I was telling |
| 25 | you about these complaints concerning |

|  | Page 23 |
|---|---|
| 1 | ALAN GELBSTEIN |
| 2 | Defendant Smart and telling me "a spade is |
| 3 | a spade"? |
| 4 | A. Are you reading something else |
| 5 | in the letter now? |
| 6 | Q. Yes, the second page down. |
| 7 | A. I see the paragraph. |
| 8 | Q. Do you recall laughing and |
| 9 | giggling at me and telling me "a spade is a |
| 10 | spade" when I complained about Defendant |
| 11 | Smart's action? |
| 12 | A. I didn't hear you. Can you |
| 13 | repeat the question? |
| 14 | Q. Do you recall laughing and |
| 15 | giggling at me and telling me "a spade is a |
| 16 | spade" when I complained of Defendant's |
| 17 | Smart's actions? |
| 18 | A. No. |
| 19 | Q. Many Affidavits were written by |
| 20 | your clerks, by attorneys, by a judge |
| 21 | against me and they were all presented to |
| 22 | me for the first time in Defendant's Motion |
| 23 | to Dismiss. |
| 24 | Are you familiar with those |
| 25 | complaints and Affidavits of misconduct? |

|  | Page 24 |
|---|---|
| 1 | ALAN GELBSTEIN |
| 2 | MR. THOMPSON: Objection to |
| 3 | form, you can answer. |
| 4 | A. I don't know which ones |
| 5 | specifically you are referring to, but yes, |
| 6 | I did receive complaints. |
| 7 | Q. All right, fine. |
| 8 | Did you ever give me an |
| 9 | opportunity to response to any of those |
| 10 | complaints? |
| 11 | A. I'm not sure if -- I need |
| 12 | clarification on your question. If the |
| 13 | question is if there were specificity in |
| 14 | the particular complaint, is it your |
| 15 | question did I ask you -- |
| 16 | Q. I'll rephrase the question. |
| 17 | Did you ever approach me with a |
| 18 | complaint and ask me to respond to it? |
| 19 | A. Yes. |
| 20 | Q. You presented me with a written |
| 21 | complaint and asked me to respond? |
| 22 | A. No. I never gave you a written |
| 23 | complaint to respond to. |
| 24 | Q. You did not? |
| 25 | A. No. |

6 (Pages 21 to 24)

December 17, 2020

## Page 25

ALAN GELBSTEIN

2    Q.    So, I had no opportunity to
3  respond to any of these complaints that
4  either your clerks were making or attorneys
5  were making or even a judge made, you gave
6  me no opportunity to respond before having
7  me removed; is that fair?
8         MR. THOMPSON: Objection to
9  form.
10   A.    No, it's not fair.
11   Q.    At what point in time did you
12  give me an opportunity to respond?
13   A.    As complaints came in over a
14  period of time, whenever there was a
15  complaint lodged and it was more serious,
16  there were complaints I thought pay, but it
17  was a more serious, I would call you in and
18  I would tell you other complaints and I
19  would tell you to cease and desist and you
20  would promise that you would.
21        And that was the end of the
22  discussion with any particular complaint.
23   Q.    Well, tell me which complaint
24  you did that because I don't recall it,
25  tell me, tell me the exact complaint?

## Page 26

ALAN GELBSTEIN

2    A.    At this time I don't recall
3  specificity, but as I said before, whenever
4  I felt a complaint and not a minor
5  complaint, a serious complaint required my
6  intervention, I called you in and we had a
7  discussion in my office.
8    Q.    But, you don't recall the date
9  that you called me in or the complaint that
10  you asked me to address?
11   A.    Right.
12   Q.    And you never asked me for a
13  written reply to any complaint; is that
14  fair?
15   A.    That's fair.
16   Q.    Did you ever investigate the
17  voracity or truthfulness of any of these
18  complaints?
19   A.    I did.
20   Q.    Or did you just accept them as
21  truthful?
22   A.    I investigated to the best of
23  my recollection every serious complaint.
24   Q.    And you used these complaints
25  of misconduct to have me removed from the

## Page 27

ALAN GELBSTEIN

2  Brooklyn TVB?
3    A.    Could you repeat the question?
4    Q.    Did you use these complaints to
5  have me removed from the Brooklyn TVB?
6         MR. THOMPSON: I object to the
7  form, you can answer.
8    A.    From the cumulative complaints,
9  no one complaint in and of itself was the
10  deciding factor. It was a cumulation of
11  complaints over a period of time.
12   Q.    And you just accepted all those
13  complaints as true without asking for my
14  affidavit in response; is that a fair
15  statement?
16   A.    I did not ask for an affidavit
17  in response.
18   Q.    Well, let me draw your
19  attention to a couple of those complaints
20  that you said you investigated the
21  truthfulness and voracity of if I may for
22  which you had me removed from the Brooklyn
23  TVB.
24        I'll ask you to take a look at
25  specifically one that was made by your

## Page 28

ALAN GELBSTEIN

2  chief clerk, your chief clerk which is
3  Exhibit -- let's see -- 84? 84. Can we go
4  to Exhibit 85, I'm sorry, 85.
5         (Whereupon, Plaintiff's Exhibit
6         85, previously marked, was
7         introduced.)
8    Q.    Are you familiar with Melanie
9  Levine?
10   A.    Yes.
11   Q.    Who is Melanie, M-E-L-A-N-I-E,
12  Levine?
13   A.    She, at the time, was a
14  supervisor in the clerical office.
15   Q.    So, she was a supervisor of
16  your clerks, am I right in saying that?
17   A.    She was a supervisor of some of
18  the clerks. She was not the head clerk,
19  she was a principal clerk.
20        MR. CAPOGROSSO: Can you please
21        scroll down, Ma'am, to the next page.
22        (Whereupon, the Court Reporter
23        complied.)
24   Q.    I'll direct you to the first
25  paragraph on the next page, right there,

7 (Pages 25 to 28)

December 17, 2020

Page 29

ALAN GELBSTEIN

1
2  thank you.  Now, I'll direct you to first
3  paragraph where your clerk of supervisors
4  states, "attorney Capogrosso represented
5  Mr. Perez at trial for three violations on
6  January 21, 2015."
7        MR. THOMPSON:  I think he's
8     referring to the previous page,
9     Page 3.
10       THE COURT REPORTER:  That's
11    what I thought, but his connection is
12    slower.  This, this is Page 3, so
13    give it a second to catch up.  You
14    want Page 4, the handwritten portion.
15       MR. CAPOGROSSO:  The one before
16    that, Ma'am.  Further up Ma'am --
17    right there.
18    Q.   Did you investigate that
19  complaint, Defendant Gelbstein?
20    A.   I don't recall if I
21  specifically investigated this complaint.
22    Q.   So.  You don't know the
23  voracity or truthfulness of that complaint;
24  is that a fair statement?
25    A.   I don't recall at this time.

Page 30

ALAN GELBSTEIN

1
2    Q.   But, you used this as one of
3  the complaints of misconduct to have me
4  removed; is that right?
5    A.   This is one of many, yes.
6    Q.   And you know I never
7  represented Mr. Perez on January 11, 2015,
8  you know that; right?
9    A.   I do not.
10    Q.   Well, she's making a false
11  statement.  You could have investigated it,
12  but you didn't investigate it now, did you?
13       MR. THOMPSON:  Objection to the
14    form of the question.  You can
15    answer.
16    A.   I don't recall the particular
17  complaint now with specificity and what
18  actions I took with regard to this.  I
19  don't recall whether I spoke to Paul Perez
20  or not.  I may have, I don't recall.
21    Q.   Did you ever talk to me about
22  this complaint?
23    A.   Again, I don't remember with
24  specificity with this particular complaint
25  whether I spoke to you on it or not.

Page 31

ALAN GELBSTEIN

1
2    Q.   Well, let me tell you what
3  happened with this complaint, Mr. Perez did
4  not hire me to represent him on three
5  violations, he did not.  He hired me on
6  appeal the day after he lost and was
7  suspended in a courthouse by one of your
8  judges on these violations, that's what
9  happened.
10       And he hired me on the appeal
11  and I took the appeal and then he came back
12  the next day and what he told me was that
13  his license got suspended and revoked.  And
14  he said to me I want my --
15       MR. THOMPSON:  Note my
16    objection.
17    Q.   -- Mr. Perez did not hire me on
18  those violations and you never investigated
19  that now, did you Mr. Gelbstein?
20       MR. THOMPSON:  Note my
21    objection, you can answer.
22    A.   I don't recall with specificity
23  what I did at the time.  I'm aware of the
24  complaint, I don't remember if I spoke to
25  him or not.  I don't recall.

Page 32

ALAN GELBSTEIN

1
2    Q.   But, you never took my
3  affidavit in response; right?
4       MR. THOMPSON:  Objection, asked
5    and answered, you can respond.
6    Q.   Now, you know what happened
7  that day Mr. Perez approached me, after I
8  gave him his money back and he told me he
9  was going to cut me with a knife and the
10  slash the tires of my car, you understand
11  that, that's what he said to me?
12       MR. THOMPSON:  Objection,
13    assumes fact not in evidence.
14    A.   I wasn't there when you had the
15  conversation, I don't know what he said to
16  nor do I know what you said to him.
17    Q.   But, you never took my
18  statement in reference to that complaint
19  now did you?
20    A.   Again, I don't recall the
21  specific conversation we had with regard to
22  it, if we didn't have a conversation.
23    Q.   You never had a conversation
24  with me concerning this complaint because
25  there's no affidavit attached to this

8  (Pages 29 to 32)

December 17, 2020

## Page 33

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  complaint concerning my statement, now is
3  there?
4      MR. THOMPSON: Objection,
5  argumentative. You can answer.
6      A.  I don't know whether or not
7  there was something attached now to the
8  filings of the legal papers.
9      Q.  Did you take an affidavit in
10  response to that complaint?
11      A.  Did I take an affidavit from
12  you?
13      Q.  From me.
14      A.  I don't believe you offered me
15  an affidavit.
16      Q.  Did you ask me for one?
17      A.  I don't believe I did.
18      Q.  Now, on that day in question
19  when Mr. Perez told me was going to cut me
20  with a knife and then slash the tires of my
21  car, your Defendant Smart was never there,
22  your security guard was never there to take
23  any action.
24      Is that a fair statement?
25      MR. THOMPSON: Objection to

## Page 34

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  form.
3      A.  I wouldn't know.
4      Q.  Do you know if the police came
5  to investigate that complaint?
6      A.  I do not know.
7      Q.  And yet, at one point in time,
8  you told me and I believe you told all the
9  other attorneys, that if you have an unruly
10  client you're supposed to speak to them
11  outside the courthouse.
12      Did you not tell us all that?
13      A.  Let me see if I understand, are
14  you saying that -- is the question, did I
15  speak to all the attorneys that if you have
16  an unruly client you should to talk to them
17  outside?
18      Q.  Yes, outside the courtroom, did
19  you not tell me that at one point in time?
20      A.  It sounds like something I
21  might have said.
22      Q.  All right, fine.
23      Let me draw your attention to
24  another exhibit which I have to ask,
25  Exhibit 81. Can we go to Exhibit 81?

## Page 35

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2      (Whereupon, Plaintiff's Exhibit
3  81, previously marked, was
4  introduced.)
5      Q.  I'm going to direct you to that
6  first paragraph. There's a lot of things
7  that I could talk to you about, but time is
8  short.
9      I'll direct you to that first
10  paragraph and it says in part -- and this
11  is a letter written by Bushra Vahdat who
12  happens to be whom, do you know who Bushra
13  Vahdat is?
14      A.  I do.
15      Q.  Who is it Bushra Vahdat?
16      A.  She was my immediate
17  supervisor.
18      Q.  Now, she made a complaint --
19  she made an affidavit concerning my
20  behavior.
21      Did you have an opportunity to
22  look at this complaint?
23      A.  I'm trying to read it now. Is
24  there anything specific, it seems to be --
25  should I zoom in on a particular paragraph?

## Page 36

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2      Q.  I'll address your attention to
3  that first paragraph that begins "when I
4  was first appointed to the position of
5  supervising ALJ."
6      Are you there?
7      A.  Yes.
8      Q.  Fine.
9      She indicates on the fourth
10  line down, she indicates "I verbally abused
11  the clerks on many occasions and followed a
12  clerk with his car and stopped the car from
13  moving. He then asked the clerk to get of
14  the car and fight it out with him."
15      Now, did you investigate the
16  truth and voracity of that statement?
17      A.  I don't recall.
18      Q.  You don't?
19      A.  No.
20      Q.  Do you know who that clerk
21  might have been that she's talking about?
22      A.  I do not.
23      Q.  Could it have been a George Han
24  that was a clerk at your court?
25      A.  Could have been.

9  (Pages 33 to 36)

Page 37

ALAN GELBSTEIN
1   ALAN GELBSTEIN
2   Q.   Okay, fine.  Can we go to
3   Exhibit 82?
4        (Whereupon, Plaintiff's Exhibit
5        82, previously marked, was
6        introduced.)
7   Q.   Do you recognize George Han's
8   name there?
9   A.   I see the name George Han.
10  Q.   It indicates here a little bit
11  further down if I could.  It indicates on
12  that second paragraph down I'm going to
13  read it to you, "George -- C was waiting at
14  the entrance at the parking lot in his car.
15  He was in his car, it says.  George stopped
16  behind him."
17  A.   I'm not following -- from --
18  the paragraph starting "Wednesday he
19  paragraph C approached G, is that where you
20  are reading?
21  Q.   I'm talking about the last
22  paragraph on that page, "he approached G
23  again and said" -- do you see that?
24  A.   I see that.
25  Q.   Fine.

Page 38

ALAN GELBSTEIN
1   ALAN GELBSTEIN
2   And George says, "that
3   Capogrosso was at the entrance of the
4   parking lot in his car."
5        Do you see that written?
6   A.   "Mr. C was waiting at the
7   entrance of the parking lot in his car," I
8   see that, yes.
9   Q.   Fine.
10  "In his car and George stopped
11  him -- George stopped behind him."
12       Do you see that statement?
13  A.   I do.
14  Q.   And then both got out of the
15  car.
16       Do you see that statement?
17  A.   I do.
18  Q.   Let me ask you a question, as
19  an attorney, after a full day of work in
20  your courthouse and you know house busy it
21  gets down there, am I allowed as an
22  attorney to sit in my car and make phone
23  calls?
24  A.   I imagine anybody could sit in
25  a car and make phone calls.

Page 39

ALAN GELBSTEIN
1   ALAN GELBSTEIN
2   Q.   Now, Bushra Vahdat says I got
3   in a car and I followed this clerk, right,
4   in the last exhibit that we just looked at;
5   is that correct?
6   A.   What are you reading?
7   Q.   The last exhibit "that he
8   followed clerk with his car and stopped the
9   clerk's car from moving."
10       Do you remember that, the last
11  exhibit, Exhibit 81?
12  A.   Is it in the same paragraph
13  that I just read?
14  Q.   No, it's is the previous
15  exhibit, Exhibit 81.
16  A.   I honestly don't recall.  I
17  don't know, I'll take your word for it,
18  it's there, I don't know.
19  Q.   Fine.  That's what Bushra
20  Vahdat said concerning that incident.
21       That Mr. Capogrosso followed
22  him in his car and stopped the clerk's car
23  from moving.
24       Is Bushra Vahdat lying there?
25  A.   I have no way of knowing.

Page 40

ALAN GELBSTEIN
1   ALAN GELBSTEIN
2   Q.   Was that a true and accurate
3   affidavit as to what happened?
4   A.   I didn't write the affidavit, I
5   don't know -- I wasn't there when, you
6   know, when the incident occurred.
7   Q.   Did you investigate the
8   voracity and truthfulness of that
9   affidavit?
10  A.   I don't question my supervisor.
11  She did independent work, she did
12  independent work.
13  Q.   So, you just accepted that as
14  truthful, that complaint is just accepted
15  by you as truthful; is that correct?
16       MR. THOMPSON:  Objection to the
17  form of the connection.  You can
18  answer.
19  A.   I accepted it for what it was
20  worth.
21  Q.   But, you didn't know whether it
22  was truthful or not, and you gave me no
23  opportunity to respond; is that true?
24  A.   I didn't ask you anything that
25  I recall.  I may have, I don't recall

10  (Pages 37 to 40)

December 17, 2020

Page 41

ALAN GELBSTEIN
1   ALAN GELBSTEIN
2   whether I asked you anything about it or
3   not.
4        Q.   And you received nothing in
5   terms of an affidavit from me to your
6   office in response to that, now did you?
7        A.   I don't believe I received an
8   affidavit from you in response.
9        Q.   You have all the affidavits
10  that were filed in your office, do you not?
11       A.   I don't know if I received all
12  of the affidavits, I don't know.
13       Q.   Let's go to one more if I
14  could.  I have to question you on this one,
15  I really do.  I have to question you on
16  this one.  Give me one moment.  Exhibit 73.
17       (Whereupon, Plaintiff's Exhibit
18       73, previously marked, was
19       introduced.)
20       Q.   Are you familiar with that
21  document, Defendant Gelbstein?
22       A.   I see it's an Affirmation that
23  I made.
24       Q.   With respect to my conduct at
25  the Brooklyn TVB; am I right?

Page 42

1   ALAN GELBSTEIN
2        A.   I assume -- not reading it, but
3   I assume if you tell me that's what it is,
4   that's what it is.
5        Q.   It's your signature at the
6   bottom of that page, is it not?
7        A.   I don't see the signature.
8        Q.   Can we please go down to the
9   end of that page, Ma'am?
10       (Whereupon, the Court Reporter
11       scrolled to the bottom of the page.)
12       Q.   Do you see your signature at
13  the bottom of that page?
14       A.   Yes, that's my signature.
15       Q.   So, that is your Affirmation?
16       A.   Yes.
17       Q.   I'm going to direct your
18  attention to Paragraph 2.
19       "On numerous occasions I
20  personally warned petitioner of threatening
21  behavior."
22       Can you tell me the dates that
23  you warned me?
24       A.   No.
25       Q.   Did you put anything in writing

Page 43

1   ALAN GELBSTEIN
2   to my office that I could respond to?
3        A.   Nothing in writing.
4        Q.   Did you ever spell out what the
5   threatening behavior was so I could respond
6   to it?
7        A.   Whenever I called you in, it
8   was with a specific occasion and we spoke
9   about that particular occasion.
10       Q.   Can you give me one occasion
11  that you spoke to me about, just one?
12       A.   I don't recall at this time any
13  specific one.
14       Q.   But, you had me removed based
15  on these alleged threatening behavior; am I
16  right?
17       A.   Yes.
18       Q.   So, you can't recall just one
19  instance?
20       A.   No, not at this time.  There
21  were so many, I don't know, I just can't
22  tell you with specificity.
23       MR. CAPOGROSSO:  I'll question
24       you more at trial, it's okay.  I
25       don't have enough time right now,

Page 44

1   ALAN GELBSTEIN
2   I'll question you at trial.
3        MR. THOMPSON:  Objection.
4        MR. CAPOGROSSO:  That's fine,
5   I'll withdraw it.
6        Q.   I direct your attention to Item
7   Number 6, Paragraph Number 6 because I have
8   to question you on this one.
9        You indicate in Paragraph 6,
10  "Petitioner often uses anti-Semitic
11  languages when referring or speaking to
12  Jewish attorneys."
13       Can you tell me when I did
14  this?
15       A.   I don't recall the dates.
16       Q.   You don't?
17       A.   No.
18       Q.   But, you're using this an
19  allegation to get me removed; right?
20       A.   As one of the allegations.
21       Q.   All right.
22       This one you got to remember
23  Defendant Gelbstein, you also state,
24  "Petitioner called me a beanie wearing
25  kyke."

11  (Pages 41 to 44)

Page 45

ALAN GELBSTEIN
1. ALAN GELBSTEIN
2. When did I say that?
3. A. I don't remember the date, but
4. I will tell you exactly where you told me
5. because I was a little shocked. We were
6. outside my office to the right about, I
7. would say, maybe 12 feet from my door,
8. about midway in the hallway between the
9. clerical office door building and let's say
10. my office.
11. Just midway about 12 feet
12. towards the beach. I was facing my door,
13. you were facing me and it was part of a
14. conversation. I don't remember the rest of
15. the conversation, but that particular part,
16. you know, kind of seared into my brain.
17. Q. Seared into you and you didn't
18. write it down, did you?
19. A. No, sir.
20. Q. You didn't do -- you didn't
21. formalize this in any written document or
22. any written complaint?
23. A. Not that I recall.
24. Q. And why didn't you?
25. A. I didn't think it was

Page 46

ALAN GELBSTEIN
1. ALAN GELBSTEIN
2. necessary.
3. Q. But, you used it to get me
4. removed from the Brooklyn TVB, are you not?
5. A. Not for that particular
6. statement. It was just one of many, what I
7. would call, offenses. It wasn't because of
8. that, that I had you removed.
9. Q. You don't -- and this -- what
10. precipitated that conversation, do you
11. remember that?
12. A. No.
13. Q. Do you have any complaints from
14. a motorist or a client that I ever used an
15. anti-Semitic or racist remark?
16. A. Not from a motorist.
17. Q. Or from a client; is that
18. right?
19. A. From a client I don't believe
20. so.
21. Q. But, I happen to call a Judge a
22. beanie wearing kyke, is that your
23. testimony?
24. A. You called me.
25. Q. I don't believe you. That's an

Page 47

ALAN GELBSTEIN
1. ALAN GELBSTEIN
2. absolute lie.
3. MR. THOMPSON: Objection.
4. Q. And you don't recall the
5. circumstances that precipitated that or
6. initiated that?
7. A. No, I don't.
8. Q. Now, you wrote this affidavit
9. on May 3, 2012; is that right?
10. A. If that's what it says, that's
11. when I wrote it.
12. Q. And that's when I was removed
13. from the Brooklyn TVB and that was when I
14. was removed from the Brooklyn TVB in
15. December of 2011.
16. It was after that date; right?
17. A. I don't recall when you were
18. removed. I don't know the dates.
19. Q. Well, I had an incident with a
20. Yakov Brody on December 22, 2011, do you
21. remember that?
22. A. I remember -- I know of the
23. incident.
24. Q. Did you ever ask for my
25. affidavit with respect to that incident?

Page 48

ALAN GELBSTEIN
1. ALAN GELBSTEIN
2. A. I did not ask you for an
3. affidavit.
4. Q. So, you just assumed what Yakov
5. Brody was saying was the truth; right?
6. MR. THOMPSON: Objection to the
7. form. You can answer.
8. A. Again, I don't recall with
9. specificity, but I'm sure that I spoke to
10. all the parties involved.
11. Q. Did you think my affidavit
12. because you took Yakov Brody's affidavit
13. and every other attorney in the Brooklyn
14. TVB's affidavit, but you didn't take mine.
15. So, why wouldn't you take mine?
16. MR. THOMPSON: Objection.
17. A. Had you proffered one, I would
18. have taken one.
19. Q. You never gave me the
20. opportunity to and never asked for one, but
21. you asked every attorney to give you one?
22. A. Excuse me, I didn't ask anybody
23. for an affidavit. They came to me and they
24. presented me with one.
25. Q. On December -- after the

12 (Pages 45 to 48)

December 17, 2020

| Page 49 |
| --- |

```
1              ALAN GELBSTEIN
2    incident with Yakov Brody you told me I was
3    not welcome in the Brooklyn TVB any longer;
4    is that correct?
5        A.  I don't recall saying that.
6        Q.  How was I going to get you an
7    affidavit?
8        A.  I leave you to your devices how
9    you get affidavits to anybody.
10       Q.  You gave my no opportunity to
11   respond, is that true, by way of affidavit?
12       A.  No, that's not true.
13       Q.  What opportunity did you give
14   me to respond?
15       A.  Had you presented me with an
16   affidavit, I would have taken it.
17       Q.  Did you give me a hearing on
18   any of these allegations against me, did
19   you give me a hearing?
20       A.  I did not give you a hearing.
21       Q.  Did you give me the opportunity
22   to present testimony?
23       A.  I didn't.  There was no
24   hearing, there was no testimony.
25       Q.  Did you give me the opportunity
```

| Page 50 |
| --- |

```
1              ALAN GELBSTEIN
2    to present evidence in response?
3        A.  You could have presented
4    evidence like every other attorney who
5    presented evidence.
6        Q.  Did you show me the affidavit
7    that was being used against me, did you
8    ever show me Yakov Brody's affidavit?
9        A.  I did not.
10       Q.  So, how could I have responded
11   to what he said against me; you are a judge
12   am I right?
13       A.  I'm not a judge with regard to
14   interactions between the various attorneys
15   in the office.  I'm a judge with regard to
16   motorists, police officers and specific
17   charges against them.
18       Q.  But, you had me removed on all
19   those affidavits and all those allegations
20   against my conduct without ever giving me
21   an opportunity to present an affidavit in
22   response.
23           Is that fair?
24           MR. THOMPSON:  Objection to
25       form.
```

| Page 51 |
| --- |

```
1              ALAN GELBSTEIN
2        A.  No, that's not fair.
3        Q.  When did you receive an
4    affidavit in response?
5        A.  I never received one from you.
6        Q.  So, you're saying I'm allowing
7    you to remove me from the Brooklyn TVB and
8    I'm not going to file an affidavit in
9    response, is that what you're telling me?
10           MR. THOMPSON:  Objection,
11       assumes --
12       A.  I can't tell you what you're
13   going to do.
14       Q.  Now, let me get to some of the
15   more -- were you personally involved,
16   Defendant Gelbstein, in my removal from the
17   DMV, Brooklyn TVB and from the practice of
18   law in all New York TVBs on the morning of
19   May 11, 2015?
20           MR. THOMPSON:  Objection.
21       A.  I don't know what you mean by
22   personally involved.
23       Q.  Did you have Defendant Calvo
24   remove me?
25       A.  I don't remember with
```

| Page 52 |
| --- |

```
1              ALAN GELBSTEIN
2    specificity, but certainly you were
3    removed.
4        Q.  And that was by your direction,
5    was it not?
6            MR. THOMPSON:  Objection, asked
7        and answered.  You can respond.
8            THE WITNESS:  I beg your
9        pardon, Counselor?
10           MR. THOMPSON:  You can answer.
11       A.  Yeah, I don't know if it was my
12   ultimate direction or I was taking counsel
13   from others above me who gave me direction
14   to do it.
15       Q.  Are you throwing Danielle under
16   the bus, is that what you're doing
17   Defendant Gelbstein?
18           MR. THOMPSON:  Objection to the
19       form of the question.
20       Q.  Are you letting Defendant Calvo
21   take the blame for this incident, is that
22   what you're doing?
23           MR. THOMPSON:  Same objection.
24       You can answer.
25       A.  Absolutely not.
```

13  (Pages 49 to 52)

December 17, 2020

## Page 53

ALAN GELBSTEIN

1   ALAN GELBSTEIN
2      Q.   Because the police report that
3   I showed you earlier indicated that Judge
4   Gelbstein, it indicated, that I was told by
5   Judge Gelbstein to go to the police room
6   and have the police officers remove me from
7   the Brooklyn TVB, right, you saw that --
8      A.   I did.
9      Q.   -- police report.
10      So, you're stating now that you
11   are not personally involved in my removal,
12   is that what you are stating?
13      A.   No, that's not what I'm
14   stating.
15      Q.   I'll ask it again.
16      Were you personally involved in
17   my removal from the Brooklyn TVB?
18      MR. THOMPSON:   Objection, asked
19      and answered.  You can answer.
20      A.   I certainly had involvement.
21      Q.   Now, did you have me removed
22   because you read the letter of March 20th
23   of 2015 which I complained about your
24   actions and your conduct at the Brooklyn
25   TVB?

## Page 54

1   ALAN GELBSTEIN
2      A.   Which letter is that?
3      Q.   The March 20, 2015 letter that
4   I wrote to Pricket-Morgan?
5      A.   No, it had nothing to do with
6   that letter.
7      Q.   Were you offended by that
8   letter that I called you -- that I told you
9   that you were incapable, incompetent and
10   complicit?
11      A.   Not at all.  No, I was not
12   offended.
13      Q.   You were not offended?
14      A.   No, sir.
15      Q.   You were not mad at that?
16      A.   No, sir.
17      Q.   You had no animus against me
18   because of that letter?
19      A.   None whatsoever.
20      Q.   You're a better man than I am.
21      Were you negligent in the
22   supervision of Defendant Smart?
23      MR. THOMPSON:   Objection, calls
24      for a legal conclusion.  You can
25      answer.

## Page 55

1   ALAN GELBSTEIN
2      A.   No.
3      Q.   Did you have the ability to
4   control the actions of Defendant Smart?
5      A.   In theory I could control him
6   totally, but I did not direct his
7   day-to-day activity.
8      Q.   Who directed his day-to-day
9   activities?
10      A.   The clerical supervisor.
11      Q.   Who is she?
12      A.   Either the two principal clerks
13   at the time, or the supervising clerk.
14      Q.   What's their names?
15      A.   Danielle was the chief clerk
16   and the other one was Levine at the time.
17      Q.   Now, I made complaints against
18   Defendant Smart, written complaints to your
19   office, did you pass those complaints onto
20   the clerical supervisors?
21      A.   No, I personally called him
22   into my office when you complained about
23   him.
24      Q.   I made a complaint, I made
25   several complaints.  I made one complaint

## Page 56

1   ALAN GELBSTEIN
2   that Defendant Smart stole $80 on a $100
3   fee.
4      Do you recall me making that
5   complaint to you?
6      A.   Not that specific complaint.
7      Q.   In June of 2012 I made a
8   complaint that Defendant Smart stole a fee,
9   you don't recall me making that complaint
10   to you?
11      A.   You might have.
12      Q.   Was an investigation made
13   concerning the theft by your office?
14      A.   I don't recall at this time.
15      Q.   So, an investigation might have
16   been made, is that what you're saying?
17      A.   Might have been.
18      Q.   Do you recall the results of
19   that investigation?
20      A.   No, I don't remember the
21   results of any investigation.
22      Q.   So, it's fair to say that --
23   I'm saying that Defendant Smart stole $80
24   on a $150 and you allowed Defendant Smart
25   to remain in the Brooklyn TVB after my

## Page 57

ALAN GELBSTEIN
1
2  complaint concerning the theft; is that
3  correct?
4       MR. THOMPSON: Objection to
5  form, you can answer.
6       A.  Well, again, I don't recall the
7  complaint with particularity nor my
8  investigation of such an event nor my
9  conclusions based on my investigation had I
10  indeed investigated.
11      Q.  So, you swept my complaint
12  under the rug, is that a fair statement?
13      MR. THOMPSON: Objection to
14  form.
15      A.  No, it's not a fair statement.
16      Q.  What did you do in reference to
17  my complaint that he stole $80?
18      A.  I don't recall the specific
19  complaint. I don't recall the result of an
20  investigation and I don't recall any
21  conclusion I may have reached at the time.
22  You're talking about something that
23  occurred in 2012, when we're now in the
24  cusp of 2021.
25      Q.  But, after I made that

## Page 58

ALAN GELBSTEIN
1
2  complaint it's fair to say that Defendant
3  Smart is still working at the Brooklyn TVB?
4       A.  Yes.
5       Q.  And after that complaint, that
6  is when Defendant Smart harassment began,
7  is that a fair statement?
8       A.  No.
9       MR. THOMPSON: Objection to
10  form.
11      Q.  Well, were there complaints of
12  harassments and threats and threats of
13  physical contact on my person, after I made
14  that complaint to your office?
15      A.  I don't recall.
16      Q.  Were there complaints made to
17  your office after that report of theft to
18  you?
19      A.  I don't remember the sequences
20  of events, whether it was before or after.
21  I don't recall.
22      Q.  I'll bring them to your
23  attention.
24      Do you recall in December of
25  2014 that I made a complaint to you that

## Page 59

ALAN GELBSTEIN
1
2  Defendant Smart stood up, gave me a spear
3  hand and the sign of the cross and pointed
4  it directly at me.
5       Do you recall that complaint to
6  your office?
7       A.  No.
8       Q.  Did you take any action with
9  respect to that complaint?
10      A.  I don't recall.
11      Q.  Did you look at the videotape
12  with respect to that complaint?
13      A.  I don't recall.
14      Q.  Do you recall that I made a
15  complaint to your office that I was
16  standing near one of your trash cans in the
17  Brooklyn TVB and there was an umbrella
18  laying on the can?
19      A.  I kind of remember that, yes.
20      Q.  And Defendant Smart said,
21  "don't touch it or else," do you recall
22  that?
23      A.  No, he didn't say it in my
24  presence.
25      Q.  But, you recall me complaining

## Page 60

ALAN GELBSTEIN
1
2  to you of that?
3       A.  I remember there was a to-do
4  with you, I don't remember with Smart so
5  much as it was one of my principal clerks
6  that brought the complaint to my attention.
7       Q.  That I moved an umbrella?
8       A.  An umbrella or a clip.  I'm
9  trying -- a paper clip, it was something, I
10  don't remember what it was.  I remember it
11  was what I had in my estimation a
12  ridiculous argument about a garbage can and
13  being it moved and something above it.
14      Q.  It had nothing to do with a
15  garbage can, it was a threat by Mr. Smart
16  -- Defendant Smart, upon my person?
17      A.  I don't remember that aspect of
18  it. I just remember there was a garbage
19  can and stuff on it, as you say, either an
20  umbrella or it might have been a paper
21  clip, but something to do about you and a
22  garbage can, that's what I recall.
23      Q.  It was an umbrella that I was
24  told not to move or else by your security
25  guard Defendant Smart?

15  (Pages 57 to 60)

December 17, 2020

## Page 61

ALAN GELBSTEIN

1
2  A.  I don't recall.
3      MR. THOMPSON: Objection to
4  form.
5  A.  I don't recall that aspect of
6  it.
7      Q.  Did you have a deliberate
8  indifference and callousness to my
9  complaints?
10     A.  I'm sorry, repeat?
11     MR. THOMPSON: Objection to the
12 form of the question.
13     Q.  Did you have an deliberate
14 indifference and callousness to my
15 complaints?
16     A.  Callousness?
17     Q.  To responding to my complaints?
18     MR. THOMPSON: Objection to the
19 form, you can answer.
20     A.  I don't understand the
21 question.
22     Q.  Were you indifferent to my
23 complaints?
24     A.  No, I take every complaint from
25 every individual.

## Page 62

ALAN GELBSTEIN

1
2      Q.  But, after I made the
3  complaints, the harassment continued, is
4  that fair to say?
5      MR. THOMPSON: Objection to
6  form, you can answer.
7      A.  That your harassment or being
8  harassed?
9      Q.  My harassment by Defendant
10 Smart, is that fair to say?
11     A.  No.
12     Q.  Defendant Smart approach me on
13 the morning of May 11, 2015 unprovoked?
14     A.  I don't know.
15     Q.  The police report indicates I
16 told him to "back up, back up"; is that
17 fair to say?
18     A.  I wasn't there, I could not
19 tell you.
20     Q.  Did you read the police report?
21     A.  At the time, yes.
22     Q.  And did it mention the fact
23 that I said to Defendant Smart, "back up,
24 back up"?
25     A.  You might have, I don't recall.

## Page 63

ALAN GELBSTEIN

1
2      Q.  Well, let me show you the
3  police report.  Let me show you the police
4  report.
5      Can we go to Exhibit 67?
6      (Whereupon, Plaintiff's Exhibit
7      67, previously marked, was
8      introduced.)
9      Q.  Now, do you know who that name
10 is at the top Danielle Calvo?
11     A.  Yes.
12     Q.  Is she your clerk supervisor?
13     A.  Yes.
14     Q.  I'll direct your attention to
15 the third page of that exhibit, Ma'am, if
16 we could.
17     I ask you to look at this first
18 paragraph and I direct your attention to
19 this first paragraph it says, "Mr.
20 Capogrosso said back up, back up."
21     Did you take note of that
22 police report when I said "back up, back
23 up"?
24     A.  Yes, I see it.
25     Q.  What was your opinion of that

## Page 64

ALAN GELBSTEIN

1
2  report?
3      A.  My opinion? My opinion was
4  that regardless of whatever words were
5  spoken, no one showed ever make contact
6  physically with another individual.
7      Q.  Did you know or did you look at
8  the tape that Defendant Smart approached me
9  from about 20 feet away?
10     MR. THOMPSON: Objection,
11     argumentative, asked and answered.
12     Q.  Do you have any knowledge as to
13 how Defendant Smart approached me?
14     A.  I was not there, I have no
15 idea.
16     Q.  And you didn't look at the
17 videotape that morning, did you?
18     A.  I don't recall if I did or not.
19     Q.  Well, what if I was to tell you
20 that Defendant Smart crossed over two
21 security barriers, two, and got with within
22 three inches of my face with a clenched
23 fist and a dipped head, what would you
24 think of that, what would be your opinion?
25     MR. THOMPSON: Objection to

16 (Pages 61 to 64)

December 17, 2020

---

Page 65

ALAN GELBSTEIN
1   ALAN GELBSTEIN
2   form, you can answer.
3       THE WITNESS:  Answer that?
4       MR. THOMPSON:  I object to the
5   form of the question, but yes, you
6   can answer the question.
7       A.  It calls for my speculation, I
8   don't know what I would have thought at the
9   time.
10      Q.  So, you're saying you condone
11  the behavior of Defendant Smart getting
12  within three inches of my face, clenching
13  his fist and dipping his head?
14      MR. THOMPSON:  Objection to the
15  form.
16      A.  Had he done that, I would have
17  not been happy with his action.
18      Q.  But, you never confirmed what
19  he did because you never look at the
20  videotape; right?
21      A.  I don't recall.
22      Q.  Judge what do you get paid to
23  do at the Brooklyn TVB?
24      A.  I get paid to manage the
25  office, to supervise principally the judges

---

Page 66

1   ALAN GELBSTEIN
2   at the office.
3       Q.  Do you have control of the
4   actions of everybody in that office?
5       A.  There's a hierarchy and as I
6   said, my principal job was to take care of
7   the legal side, take care of the judges.
8   There's questions about questions of law,
9   that type of thing.  That was my bailiwick,
10  most everything else was delegated to the
11  clerical supervisory staff including the
12  direct supervision of David Smart.
13      Q.  So, Danielle Calvo is
14  responsible for the supervision of
15  Defendant Smart's action, is that what
16  you're saying?
17      A.  I'm saying that she, too.  I
18  am, every supervisor is.
19      Q.  Now, Defendant Smart also had
20  another altercation with another security
21  guard at some point in time in 2013?
22      A.  I don't recall such a --
23      Q.  Well, let me draw your
24  attention to it.  Can we to Exhibit 79.
25      (Whereupon, Plaintiff's Exhibit

---

Page 67

1   ALAN GELBSTEIN
2   79, previously marked, was
3   introduced.)
4       Q.  Do you recall that report?
5       A.  No, I don't.
6       Q.  Was that report made under your
7   watch, under your term?
8       MR. THOMPSON:  Objection to
9   form.
10      A.  It occurred on May 16th of
11  2013, so it would have occurred while I was
12  the supervising judge -- senior judge in
13  that office.
14      Q.  But you had no knowledge of
15  that report?
16      A.  I don't recall it.  I don't
17  recall this document coming to me.  It
18  seems that Mrs. Burke who was the
19  supervisor of the other part of the
20  building, the DMV, is involved with this
21  one.  I don't believe I am.
22      Q.  Well, obviously if there's an
23  altercation or a confrontation to the
24  people at Brooklyn TVB in some manner or
25  respect between a security guard and

---

Page 68

1   ALAN GELBSTEIN
2   another security guard, PEC Group who was
3   the employer of Defendant Smart who
4   Defendant Smart worked for, could be called
5   in to rectify it.
6       Is that fair?
7       MR. THOMPSON:  Objection to
8   form, you can answer.
9       A.  Should be called in?  I'm not
10  sure I understand the question.
11      Q.  Did you ever call PEC Group
12  with respect to my complaints to you of the
13  harassment and threats by Defendant Smart?
14      A.  I don't believe I have ever
15  spoke to PEC Group of New York, Inc.
16      Q.  You never called them?
17      A.  I don't believe I've ever
18  spoken to them.
19      Q.  So you took responsibility of
20  the actions of Defendant Smart, not PEC
21  Group?
22      MR. THOMPSON:  Objection to
23  form.
24      A.  No, that's not true.
25      Q.  All right.

17 (Pages 65 to 68)

December 17, 2020

| Page 69 | Page 71 |
|---|---|
| ALAN GELBSTEIN | ALAN GELBSTEIN |
| 2  To whom, to whom do threats of | 2  don't specifically recall. |
| 3  violence and harassment and theft get | 3      Q.  I'll direct your attention to |
| 4  reported to, if not PEC Group and not to | 4  Exhibit 39. |
| 5  you? | 5      (Whereupon, Plaintiff's Exhibit |
| 6      A.  Oh, I get reported to when my | 6      39, previously marked, was |
| 7  supervisors bring something to me.  If they | 7      introduced.) |
| 8  don't bring something to me or Mrs. Burke | 8      Q.  Are you familiar with this |
| 9  who is a director of the DMV doesn't bring | 9  document? |
| 10  it to me, I would not be aware of it.  I'm | 10      A.  I don't know what it is. |
| 11  only aware of what people bring to me. | 11      Q.  It says, "Capogrosso v. |
| 12      Q.  And so my complaint that I | 12  Gelbstein," at the top, states defendant's |
| 13  brought to you, you never brought to PEC | 13  privilege log. |
| 14  Group, is that fair? | 14      Are you familiar with that? |
| 15      MR. THOMPSON:  Objection, asked | 15      A.  No. |
| 16  and answered. | 16      Q.  Let me direct your attention |
| 17      A.  I did not bring it to PEC | 17  down to the fourth row, the fourth row. |
| 18  Group. | 18      MR. THOMPSON:  Mr. Capogrosso |
| 19      Q.  You took responsibility for | 19  let me just put down a marker.  We |
| 20  Defendant Smart's actions; is that fair? | 20  produced this privilege log to you |
| 21      A.  No, that's not fair. | 21  because these conversations are |
| 22      Q.  Who took responsibility if the | 22  privileged and so, it's not in bounds |
| 23  complaints were brought to your office? | 23  to ask about them. |
| 24      A.  As I said earlier -- | 24      Any question as to these |
| 25      MR. THOMPSON:  Objection to | 25  conversations, any questions to |

| Page 70 | Page 72 |
|---|---|
| ALAN GELBSTEIN | ALAN GELBSTEIN |
| 2  form. | 2  communications is objectionable and |
| 3      A.  -- when you made a complaint to | 3  we object to it and I'll instruct the |
| 4  me about David Smart, I spoke to him about | 4  witness not to answer. |
| 5  the complaint. | 5      MR. CAPOGROSSO:  In not |
| 6      Q.  Were you anticipating | 6  questioning concerning the content, |
| 7  litigation between myself and the DMV? | 7  in questioning concerning the log. |
| 8      A.  Did I anticipate litigation? | 8  There's a difference. |
| 9      Q.  Yes. | 9      MR. THOMPSON:  I'll listen to |
| 10      A.  No. | 10  your question if you pose one, but -- |
| 11      Q.  Were you having conversations | 11      MR. CAPOGROSSO:  I understand. |
| 12  with Defendant Traschen and who was a | 12  I'm not going to question about the |
| 13  Defendant in this case, Bushra Vahdat, | 13  content, I'm going to question about |
| 14  about anticipated litigation with Mario | 14  the log.  There's a log at the top, |
| 15  Capogrosso? | 15  sent from. |
| 16      MR. THOMPSON:  Objection to the | 16      MR. THOMPSON:  He didn't |
| 17  form, you can answer. | 17  produce the log, I did. |
| 18      A.  No. | 18      MR. CAPOGROSSO:  All right. |
| 19      Q.  You did not. | 19      Q.  There was correspondence |
| 20      Did you have e-mails going back | 20  between yourself, Bushra Vahdat, Alan |
| 21  and forth between yourself, Defendant | 21  Gelbstein, Ida Traschen look at the fourth |
| 22  Traschen and Bushra Vahdat concerning | 22  row down? |
| 23  possible litigation between the DMV and | 23      A.  I see it. |
| 24  myself, Mario Capogrosso? | 24      Q.  Fine. |
| 25      A.  At some point we might have, I | 25      Now, the description of that |

18  (Pages 69 to 72)

December 17, 2020

## Page 73

ALAN GELBSTEIN

1  states, "e-mail correspondence with DMV
2  regarding incident with Capogrosso prepared
3  in anticipation of litigation."
4        Prepared in anticipation of
5  litigation, this is a log created by the
6  DMV, right, and that entry was made on
7  5/18/2014.
8        Now, I'm going not going to ask
9  you what the e-mail stated, but why were
10 you anticipating litigation on May 8, 2014?
11        MR. THOMPSON: I'm going to
12        object to -- I'm going to object this
13        question and instruct the witness not
14        to answer.
15        There are a number of things
16        that are wrong with that question.
17        As I said, the privilege log was
18        created by our office, not by DMV and
19        not by Mr. Gelbstein, and I don't
20        think it's an appropriate thing to
21        question him on.
22 Q.   So, what your testimony here is
23 today, is that there was no -- that you not
24 anticipate litigation with myself and the

## Page 74

ALAN GELBSTEIN

1  DMV, prior to the event of May 11, 2015.
2  Is that your testimony?
3        MR. THOMPSON: Is that your
4        question to Mr. Gelbstein?
5        MR. CAPOGROSSO: Yes.
6        MR. THOMPSON: I object to the
7        form, but you can answer that.
8  A.   I don't believe that anything
9  that we did was in anticipation of
10 litigation, but that could have changed
11 somewhere down the line. I couldn't tell
12 you when the anticipation began, but it
13 certainly wasn't my worry about litigation
14 one way or the other.
15 Q.   Wasn't your worry about
16 litigation.
17        So, you allowed the harassment
18 of Defendant Smart to continue, it wasn't
19 your worry to resolve it, and that wasn't
20 your issue; is that right?
21        MR. THOMPSON: I'll object to
22        the form of the question, you can
23        answer.
24 A.   The answer is no.

## Page 75

ALAN GELBSTEIN

1
2  Q.   Let me direct your attention to
3  Exhibit 36.
4        (Whereupon, Plaintiff's Exhibit
5        36, previously marked, was
6        introduced.)
7  Q.   Now, this is a docket in the
8  matter of Teague -- this is an attorney,
9  matter of Teague, Eamon Teague who also
10 happens to be a lawyer in the traffic
11 violations bureau.
12        Are you familiar with Eamon
13 Teague?
14 A.   No.
15 Q.   Are you familiar with the
16 matter of Teague?
17 A.   No.
18 Q.   Are you familiar that the DMV
19 brought a grievance against Eamon Teague to
20 the grievance committee?
21        MR. THOMPSON: Objection to the
22        form.
23 A.   No.
24 Q.   Are you familiar with an
25 investigation by the grievance committee

## Page 76

ALAN GELBSTEIN

1
2  concerning the actions of Eamon Teague?
3        MR. THOMPSON: Objection, asked
4        and answered.
5  Q.   I can't hear the answer, are
6  you familiar with it?
7  A.   I don't know anything about
8  this particular --
9  Q.   So, you're not familiar with
10 the grievance that the DMV brought against
11 Eamon Teague; is that fair?
12 A.   Am I aware of an action that
13 the DMV brought against who?
14 Q.   Eamon Teague an attorney who
15 worked at the TVB?
16 A.   No, I don't know anything about
17 this.
18 Q.   Did you ever grieve my office
19 for my actions at the Brooklyn TVB or any
20 TVB?
21 A.   I did not.
22 Q.   Why did you not?
23 A.   Why did I not grieve you?
24 Q.   Yeah, why didn't you grieve me?
25 A.   Because I don't grieve any

19  (Pages 73 to 76)

December 17, 2020

| Page 77 | Page 79 |
|---------|---------|

**Page 77**

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  attorney whose livelihood depends on a
3  practice of law. I know the severity of
4  grievance committees and what an attorney
5  goes through and so if there's a problem, I
6  try to help resolve the issues without
7  going to the grievance committee.
8      I very -- it has to be
9  something really, really terribly severe
10  for me to go to the appellate division.
11      Q.   So you, the DMV, Ida Traschen
12  rather just have me banned from the
13  practice of law at all TVBs, right, as
14  opposed to going to the grievance
15  committee, how is that helping me?
16      MR. THOMPSON: Objection to the
17  form, you can answer.
18      A.   That wasn't my decision.
19      Q.   I was banned from the practice
20  of law at all TVBs and you had no input in
21  that decision?
22      A.   No, sir.
23      MR. THOMPSON: Objection.
24      A.   I don't have the authority to
25  ban you in any other office, other than my

**Page 79**

1  ALAN GELBSTEIN
2      Q.   So, what you're saying in
3  essence is none of the complaints or
4  affidavits would have had any merit or
5  weight before the grievance committee, is
6  that fair to say?
7      MR. THOMPSON: Objection.
8      A.   No.
9      Q.   Is that the reason you didn't
10  bring me before the grievance committee?
11      A.   No.
12      Q.   Now, you're familiar with the
13  42SC1983 with the U.S. statute which is one
14  of the basis for my complaint.
15      Are you familiar with it?
16      A.   No.
17      Q.   You're not, you didn't read my
18  complaint?
19      A.   I did read your complaint.
20      Q.   You're not familiar with
21  42SC1983?
22      A.   No.
23      Q.   It states in part, "every
24  person under the color of statute
25  ordinance, regulation of state or

**Page 78**

1  ALAN GELBSTEIN
2  own.
3      Q.   But your office never grieved
4  me?
5      A.   I never grieved you, no.
6      Q.   And your office therefore never
7  gave me an opportunity because I would have
8  rather have been grieved to present my
9  argument and my case before a grievance
10  committee.
11      A.   Is that a question?
12      Q.   Is it fair that there was no
13  basis or merit, no basis or merit for any
14  of the complaints filed against me?
15      A.   That's not the case.
16      MR. THOMPSON: Objection to
17  form.
18      A.   That's not the case.
19      Q.   You liked me, that's why you
20  didn't grieve me, is that it?
21      A.   I didn't like you and I didn't
22  dislike you.
23      Q.   But, you just banned me from
24  the practice of law from the Brooklyn TVB?
25      A.   That's correct.

**Page 80**

1  ALAN GELBSTEIN
2  territory."
3      Now, under the color of state
4  law, that's what it begins with. Was
5  Defendant Smart acting as a security guard
6  for the DMV?
7      MR. THOMPSON: Objection.
8      Withdrawn.
9      Q.   Was he acting as a security
10  guard for the DMV?
11      A.   Yes.
12      Q.   Who is the employer of
13  Defendant Smart?
14      A.   Either P-E-C that you indicated
15  earlier.
16      Q.   Who paid Defendant Smart's
17  salary?
18      A.   I don't know with specificity,
19  but I would assume it was PEC.
20      Q.   Did the DMV have a contract
21  with PEC Group?
22      A.   I never saw one, I would assume
23  so.
24      Q.   How did Defendant Smart show up
25  at your Brooklyn TVB?

20  (Pages 77 to 80)

December 17, 2020

| Page 81 | Page 83 |
|---|---|

**Page 81**

1           ALAN GELBSTEIN
2       A.   I'm sorry?
3       Q.   How did he show up; who hired
4    him?
5       A.   He was hired I assume by PEC.
6       Q.   And he had a contract and PEC
7    had a contract with the DMV to supply his
8    service?
9       A.   I don't know for sure, I only
10   assume so.
11      Q.   And you don't know who paid PEC
12   for his services?
13      A.   Who paid PEC?
14      Q.   For Defendant Smart service?
15      A.   I assume the State paid PEC.
16      Q.   And you had the authority to
17   regulate the actions of Defendant Smart, is
18   that fair to say?
19           MR. THOMPSON:  Objection to
20       form, you can answer.
21      A.   Yes.
22           MR. THOMPSON:  While we're at a
23       bit of a lull Mr. Capogrosso, just so
24       you're aware Ms. Traschen is at her
25       computer and ready to join whenever

**Page 82**

1           ALAN GELBSTEIN
2    we're ready to start that.
3           MR. CAPOGROSSO:  I have eight
4       more minutes.
5       Q.   Now, I was removed from the
6    Brooklyn TVB on May 11, 2015, the police
7    report then indicates that Danielle Calvo
8    told you -- was told by you to have me
9    removed.
10          You were possession of a letter
11   that I wrote on March 20, 2015.  I showed
12   you that letter that I sent to
13   Pricket-Morgan.  You indicated that you
14   received that letter and then I was removed
15   on May 11, 2015.
16          Were you attempting to chill my
17   first amendment right to freedom of speech
18   by having me removed, Defendant Gelbstein?
19      A.   No.
20      Q.   You didn't want me writing any
21   more letters concerning your conduct at the
22   Brooklyn TVB; am I right?
23      A.   No.
24      Q.   You did not want me writing any
25   more letters; is that true?

**Page 83**

1           ALAN GELBSTEIN
2           MR. THOMPSON:  Objection, asked
3       and answered.
4       A.   No.
5       Q.   Now, I observed you having
6    Jewish ticket brokers, you know what a
7    ticket broker is, right, Judge Gelbstein?
8       A.   Yes.
9       Q.   And I observed them in your
10   office on a weekly basis; is that true, I
11   observed them in your office; do you have
12   Jewish ticket brokers in your office on a
13   weekly basis?
14      A.   No.
15      Q.   You have Jewish ticket brokers
16   visiting your office?
17      A.   I've had people visit my
18   office, yes.
19      Q.   Were they ticket brokers?
20      A.   They could have been ticket
21   brokers.  I believe I know what you're
22   referring to, yes, it was a Jewish -- it
23   was one that you would perhaps call a
24   Jewish ticket broker.
25      Q.   And they're in your office on a

**Page 84**

1           ALAN GELBSTEIN
2    weekly basis or in your office fairly
3    often; is that fair to say?
4       A.   No.
5       Q.   For what reason are they in
6    your office?
7           MR. THOMPSON:  Objection to
8       form.
9       A.   They may have had a question or
10   maybe I called them in because there was a
11   time where they were all permitted and then
12   there was a time when they weren't
13   permitted.  Once they were not permitted,
14   no ticket brokers that I was able to catch
15   as it were, were permitted in the premises.
16      Q.   Now, what point in time --
17   didn't you tell me that these ticket
18   brokers that are in your office on a
19   habitual basis, that they're friends of
20   your wife and I have dinner with them, but
21   I don't know what they do for a living.
22          Did you not tell me that at one
23   point?
24      A.   No.
25      Q.   Were you in the GE pleading

21  (Pages 81 to 84)

Page 85

ALAN GELBSTEIN

2 motorists guilty on a sidebar and
3 rescheduling case on a sidebar before ALJ
4 Gelbstein?
5      MR. THOMPSON: Objection to the
6   form of the question.
7   Q.   Did you ever plead motorists
8 guilty at the Brooklyn TVB before ALJ
9 Bohmstein, B-O-H-M-S-T-E-I-N, did you ever
10 enter guilty pleas on before of motorists?
11   A.   Ever?
12   Q.   In the GE?
13   A.   I'm sure I did.
14   Q.   For what reason?
15   A.   For various reasons.
16   Q.   For what reason?
17      MR. THOMPSON: Objection, asked
18   and answered.
19   Q.   Are you acting as a lawyer, did
20 you have your own caseload?
21   A.   No, I did not. I mean, I had
22 cases when there were occasions when I
23 covered rooms, yes.
24   Q.   No, did you have individual
25 clients that you were representing down at

Page 86

ALAN GELBSTEIN

2 the Brooklyn TVB?
3   A.   No, I never represented a
4 client in the TVB.
5   Q.   But, you were pleading clients
6 guilty in the general requirements room; is
7 that fair?
8   A.   No.
9   Q.   Did you ever reschedule
10 clients' cases in the general requirements
11 room?
12   A.   No.
13   Q.   Before Judge Bohmstein, you
14 never did that?
15   A.   No.
16   Q.   Did you ever have Eugene
17 Gervazi cover cases for you in the Brooklyn
18 TVB?
19   A.   Did I ever have?
20   Q.   Eugene Gervazi, an attorney
21 that works at the Brooklyn TVB as myself
22 was doing cover cases for you?
23      MR. THOMPSON: Objection to the
24   form of question, you can answer.
25   A.   No.

Page 87

ALAN GELBSTEIN

2   Q.   You didn't give him cases for
3 him to handle?
4   A.   I might have asked him to
5 handle a case if another attorney calls in
6 the office and says I can't make it and
7 he's not -- I wouldn't grand him another
8 adjournment and he says, "could you give it
9 to somebody," I probably would do that.
10 Ask another attorney if they would want to
11 handle another attorney's case.
12   Q.   When Eugene Gervazi tells me he
13 is covering a case for Judge Gelbstein,
14 he's covering one of your cases, is that
15 what he's doing?
16   A.   No --
17      MR. THOMPSON: Objection to the
18   form of the question.
19   A.   No, I don't have cases.
20   Q.   There was a lady called Tanya
21 Rabinowitz down at the Brooklyn TVB that
22 was calling herself a lawyer on a repeated
23 basis.
24      Was she removed from the
25 Brooklyn TVB at some point?

Page 88

ALAN GELBSTEIN

2   A.   Yes.
3   Q.   At what point in time was she
4 removed?
5   A.   I don't recall.
6   Q.   Do you recall calling the
7 District Attorney and telling her -- and
8 telling the District Attorney that we have
9 a person down here calling herself a lawyer
10 at Judge Gelbstein's courtroom, did you
11 have any notification of that?
12   A.   Not that I recall.
13   Q.   And did you approach me at some
14 point in time and tell me "who are you, Don
15 Quixote," when you found out that I called
16 District Attorney about Tanya Rabinowitz?
17   A.   I don't believe that is true.
18   Q.   You never said "who are you,
19 Don Quixote"?
20      MR. THOMPSON: Objection, asked
21   and answered. You can respond.
22   A.   No, I don't believe I ever said
23 that to you.
24   Q.   Do you believe you acted
25 lawfully in having me removed from the

Page 89

```
 1          ALAN GELBSTEIN
 2   Brooklyn TVB on May 11, 2015?
 3          MR. THOMPSON:  Objection, calls
 4   for a legal conclusion.  You can
 5   answer.
 6      A.   I believe it was a lawful
 7   action.
 8      Q.   Under what law, under what
 9   statute, under what authority did you make
10   that decision?
11          MR. THOMPSON:  Same objection.
12      A.   I don't believe it was my
13   decision.
14      Q.   Whose decision was it?
15      A.   I believe it was done in
16   consultation with people above me.
17      Q.   But, you were personally
18   involved in the removal; right?
19      A.   Yes, I was.
20      Q.   Can I ask that we go to
21   Exhibit 12.
22          (Whereupon, Plaintiff's Exhibit
23   12, previously marked, was
24   introduced.)
25      Q.   Are you familiar with that
```

Page 90

```
 1          ALAN GELBSTEIN
 2   letter of complaint that I submitted to
 3   your office?
 4      A.   You submitted it?
 5      Q.   Yeah, I did.
 6          It was produced by your
 7   attorney, attorney Thompson, are you
 8   familiar with it?
 9      A.   No.
10      Q.   You're not.
11          Did you take any action in
12   response to that letter?
13      A.   I'm not sure what the letter
14   is.  Could I see the rest of the letter?
15          (Whereupon, the Court Reporter
16   scrolled down so the witness can see
17   the rest of the exhibit.)
18      Q.   It's a complaint made about
19   Defendant Smart that he gets in my face and
20   tells me to "fuck you."
21          You don't recall seeing that
22   letter?
23      A.   I may have seen it, I honestly
24   don't recall it.
25      Q.   And you don't recall what you
```

Page 91

```
 1          ALAN GELBSTEIN
 2   did in response to it, is that fair?
 3      A.   I don't recall the incident or
 4   what I did about it.  What is the date of
 5   this letter?
 6      Q.   May 14th.
 7          You don't recall it?
 8      A.   What year?
 9      Q.   2014.
10      A.   I don't recall it.
11      Q.   In June of 2012 Defendant Smart
12   approached me from the rear and pushed me
13   in the rear attempting to get my cell
14   phone.  Pretty much he assaulted me.
15          Do you recall that complaint to
16   your office?
17          MR. THOMPSON:  I object to the
18   form of the question, you can answer.
19      A.   I don't recall it.
20      Q.   You don't recall that one.
21          You don't recall the incident
22   of the spear hand and the sign of the
23   cross.  You don't recall this letter of
24   complaint.  You don't recall the theft that
25   Defendant Smart made of $80 on a $150 fee.
```

Page 92

```
 1          ALAN GELBSTEIN
 2   Is that fair?
 3      A.   Yes, that's fair.
 4          MR. THOMPSON:  Objection to the
 5   form of the question.
 6      Q.   And you never reviewed the
 7   videotape of Defendant Smart approaching me
 8   on the morning of May 11, 2015; is that
 9   right?
10      A.   I don't recall if I did or not.
11      Q.   Why did you keep the evidence,
12   why did you keep the videotape of the
13   alleged push on Defendant Smart on the
14   morning of May 11, 2015, why you didn't
15   keep --
16          MR. THOMPSON:  Objection to the
17   form of the question, you can answer.
18      A.   I was never instructed on the
19   use of the machine.  I believe it was a
20   tape that goes around and around, you know,
21   and re-records on itself.  I would have no
22   idea how to take a piece of it off, if it
23   were to occur to me to want to take a piece
24   of it off, I would not know how to do that.
25      Q.   Did you deliberately lose the
```

23  (Pages 89 to 92)

December 17, 2020

Page 93

ALAN GELBSTEIN

1    ALAN GELBSTEIN
2   evidence, Judge Gelbstein?
3       A.   No.
4           MR. THOMPSON: Objection to the
5       form.
6       Q.   Did you want to sweep this
7   complaint under the rug by losing the
8   evidence?
9           MR. THOMPSON: Same objection.
10      A.   I didn't lose any evidence.
11      Q.   But you didn't keep or maintain
12  the evidence; right?
13          MR. THOMPSON: Same objection.
14      A.   I kept any evidence that was
15  presented to me.
16      Q.   But you didn't keep the
17  evidence of the videotape now, did you?
18          MR. THOMPSON: Objection.
19      A.   It wasn't in my direct control
20  and it didn't occur to me until you brought
21  it up that it's evidence one way or the
22  other what regard to this case.
23      Q.   That evidence would have shown
24  who provoked that incident, would that be
25  fair to say?

Page 94

1    ALAN GELBSTEIN
2           MR. THOMPSON: Objection.
3       A.   I would say that it would show
4   conclusively what occurred.
5       Q.   And you made the decision not
6   to keep it.
7           Who's in control of the
8   videotape at the Brooklyn TVB?
9           MR. THOMPSON: Objection to the
10      form.
11      A.   I beg your pardon?
12      Q.   Who's in control of the
13  videotape at the Brooklyn TVB?
14      A.   It was in the clerical office.
15      Q.   Who's in control of it, who's
16  the person in control of it?
17      A.   I don't know which clerk or
18  supervisor was directly responsibile for
19  its recording. I believe there was some
20  kind of protocol, but I don't know what it
21  was.
22      Q.   You had no control of the
23  videotape from the Brooklyn TVB?
24          MR. THOMPSON: Objection to the
25      form of the question, you can answer.

Page 95

1    ALAN GELBSTEIN
2       A.   Ultimately it was I guess under
3   my control, but I had no direct supervision
4   and never did.
5       Q.   Who recommended that security
6   cameras be put up in the Brooklyn TVB,
7   whose recommendation was that?
8           MR. THOMPSON: Objection to the
9       form, you can answer.
10      A.   It was based on an audit by the
11  auditors of the DMV. They had recommended
12  it or it would have been our security
13  people that recommended it, I don't know.
14  One of those two field investigations might
15  have done it or the regular audit people
16  might have done it as part of an audit, one
17  of those two.
18      Q.   And you don't know how long
19  that videotape lasts; is that right?
20      A.   No, I don't.
21          MR. THOMPSON: While we're at a
22      bit of a pause, I would just say it's
23      12:07 right now, Ms. Traschen has
24      been waiting by her computer since
25      11:45.

Page 96

1    ALAN GELBSTEIN
2           Do you intend to go forward
3   with her deposition Mr. Capogrosso?
4           MR. CAPOGROSSO: Just give me
5       -- because we had problems. I'll ask
6       for eight more minutes and then I
7       will stop. In eight more minutes I
8       will stop.
9           MR. THOMPSON: All right, I'll
10      let her know.
11          MR. CAPOGROSSO: And I'll do
12      everything to keep to my schedule and
13      I will. Just give me eight more
14      minutes and I will stop precisely at
15      12:15.
16          Can we go to Exhibit 66.
17          (Whereupon, Plaintiff's Exhibit
18      66, previously marked, was
19      introduced.)
20      Q.   Now, are you familiar with this
21  document?
22      A.   I only see that it was
23  addressed to me, so I don't know.
24      Q.   You do note the big blackout
25  spaces in the document; am I right?

24  (Pages 93 to 96)

December 17, 2020

| Page 97 | Page 99 |

**Page 97**

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2      A.   Yes, I see that.
3      Q.   Was that redacted footage of
4  the alleged incident between myself and
5  Smart; do you know?
6      A.   I have no idea what is
7  redacted.
8      Q.   Was that information
9  purposefully redacted?
10      A.   I have no way of knowing.
11      Q.   Do those blackouts show the
12  alleged incident between myself and
13  Defendant Smart?
14      A.   I have no way of knowing.
15      Q.   When you worked at the
16  administrative law judge, you were a state
17  agent; is that fair?
18          MR. THOMPSON:  Objection, calls
19      for a legal conclusion.
20      Q.   Were you operating under color
21  of state law?
22          MR. THOMPSON:  Same objection.
23      A.   Repeat the question?
24      Q.   Were you operating under color
25  of state law, under the direction of state

**Page 98**

1  ALAN GELBSTEIN
2  law?
3      A.   I believe so.
4      Q.   You indicated you had
5  supervisory authority over the actions of
6  Defendant Smart; is that right?
7      A.   Yes.
8          MR. THOMPSON:  Objection to the
9      form of the question.
10      A.   Yes.
11      Q.   And you had the ability to have
12  me removed from the Brooklyn TBV; is that
13  right?
14      A.   I'm not sure if I did or not.
15      Q.   But, you did have me removed
16  from the Brooklyn TVB; right?
17      A.   Oh, I'm sorry did you say
18  removed David Smart or removed you?
19      Q.   Removed me from the Brooklyn
20  TVB because that's what you did, am I
21  right?
22      A.   Yes.
23          MR. CAPOGROSSO:  I have three
24      more minutes.  Let me see if I'm
25      missing anything.

**Page 99**

1  ALAN GELBSTEIN
2      Q.   I wasn't given any due process
3  was I, is that a fair statement?
4          MR. THOMPSON:  Objection to the
5      form of the question.  It calls for a
6      legal conclusion.
7      Q.   What is a due process, you're a
8  Judge, what is due process?
9          MR. THOMPSON:  Same objection.
10          THE WITNESS:  I can answer
11      that.
12          MR. THOMPSON:  Subject to the
13      objection, yes.
14      A.   Due process is giving somebody
15  an opportunity to respond to a complaint I
16  would think.
17      Q.   And you gave me no such
18  opportunity, did you?
19      A.   I did.
20      Q.   Explain how you did?
21      A.   You could have given me an
22  affidavit, in all our conversations that
23  you and I have had, I gave you information
24  that I was given by countless people with
25  regard to singular incidents and you gave

**Page 100**

1  ALAN GELBSTEIN
2  me your version of the story.
3          And because of the great volume
4  of witnesses who reported to me, I found
5  their story more credible than I found your
6  story on any one of the occasions that
7  occurred.
8      Q.   You illicited the affidavits of
9  other attorneys, did you not?
10          MR. THOMPSON:  Objection to the
11      form, you can answer.
12      A.   No.
13      Q.   Did you illicit affidavits of
14  other attorneys?
15      A.   No.
16      Q.   You did not; not of Jeff Myer
17  err, Yakov Brody, you did not illicit their
18  affidavits?
19          MR. THOMPSON:  Objection, asked
20      and answered.
21      A.   I don't recall if I ever asked
22  anybody for an affidavit.
23      Q.   I was never presented with the
24  affidavits or the complaints against me and
25  my office at the Brooklyn TVB by your

25  (Pages 97 to 100)

December 17, 2020

## Page 101

```
1              ALAN GELBSTEIN
2    office which I could respond individually
3    by you to which I could respond.
4         Is that fair?
5         A.   Yes.
6              MR. THOMPSON:  Objection to the
7    form.
8              MR. CAPOGROSSO:  That's it.  I
9    have nothing further.
10             (Whereupon, at 12:15 P.M., the
11   Examination of this witness was
12   concluded.)
13
14         o      o      o      o
15
16
17
18
19
20
21
22
23
24
25
```

## Page 103

```
1              ALAN GELBSTEIN
2              E X H I B I T S
3
4    PLAINTIFF'S EXHIBITS (Previously marked)
5
6    EXHIBIT   EXHIBIT                     PAGE
7    NUMBER    DESCRIPTION
8      68    Two-page of workplace
             violence incident        8
9
      15    Two-page letter dated
10           May 20, 2015         18
11     85    Four-page workplace
             violence incident       28
12
      81    One-page e-mail from
13           Bushra Vahdat        35
14     82    Four-page attorney/client
             privilege notes       37
15
      73    Four-page ALJ Affirmation  41
16
      67    Three-page workplace
17           violence incident      63
18     79    Five-page PEC Group
             incident summary      67
19
      39    16-page State Defendants'
20           privilege log        71
21     36    Five-page Matter of Teague  75
22     12    One-page notes       89
23     66    Three-page memorandum     96
24
      (Exhibits retained by Counsel.)
25
```

## Page 102

```
1              ALAN GELBSTEIN
2              D E C L A R A T I O N
3
4         I hereby certify that having been
5    first duly sworn to testify to the truth, I
6    gave the above testimony.
7
8         I FURTHER CERTIFY that the foregoing
9    transcript is a true and correct transcript
10   of the testimony given by me at the time
11   and place specified hereinbefore.
12
13
14
15   _____
         ALAN GELBSTEIN
16
17
18   Subscribed and sworn to before me
19   this _____ day of _____ 20___.
20
21
22   _____
         NOTARY PUBLIC
23
24
25
```

## Page 104

```
1              ALAN GELBSTEIN
2              I N D E X
3
4    EXAMINATION BY              PAGE
5    MR. CAPOGROSSO              3
6
7
8    INFORMATION AND/OR DOCUMENTS REQUESTED
9    INFORMATION AND/OR DOCUMENTS     PAGE
10   (None)
11
12
13
14
15   QUESTIONS MARKED FOR RULINGS
16   PAGE LINE QUESTION
17   (None)
18
19
20
21
22
23
24
25
```

26 (Pages 101 to 104)

December 17, 2020

Page 105

1      ALAN GELBSTEIN
2      C E R T I F I C A T E
3
4    STATE OF NEW YORK     )
                : SS.:
5    COUNTY OF KINGS       )
6
7        I, JAMIE NEWMAN, a Notary Public for
8    and within the State of New York, do hereby
9    certify:
10       That the witness whose examination is
11   hereinbefore set forth was duly sworn and
12   that such examination is a true record of
13   the testimony given by that witness.
14       I further certify that I am not
15   related to any of the parties to this
16   action by blood or by marriage and that I
17   am in no way interested in the outcome of
18   this matter.
19       IN WITNESS WHEREOF, I have hereunto
20   set my hand this 31st day of December 2020.
21
22
23       
              JAMIE NEWMAN
24
25

27  (Page 105)

December 17, 2020

Page 106

**A**

**A.M (1)**
1:13
**ability (2)**
55:3 98:11
**able (1)**
84:14
**absolute (2)**
9:14 47:2
**Absolutely (1)**
52:25
**abused (1)**
36:10
**accept (1)**
26:20
**accepted (4)**
27:12 40:13,14
40:19
**accurate (1)**
40:2
**acted (1)**
88:24
**acting (3)**
80:5,9 85:19
**action (14)**
3:19 11:18
17:23 19:18
19:22 23:11
33:23 59:8
65:17 66:15
76:12 89:7
90:11 105:16
**actions (12)**
14:7 23:17
30:18 53:24
55:4 66:4
68:20 69:20
76:2,19 81:17
98:5
**activities (1)**
55:9
**activity (1)**
55:7
**additional (1)**
8:17
**address (4)**

3:14 17:17
26:10 36:2
**addressed (2)**
19:22 96:23
**adjournment...**
87:8
**administrati...**
97:16
**affidavit (30)**
27:14,16 32:3
32:25 33:9,11
33:15 35:19
40:3,4,9 41:5
41:8 47:8,25
48:3,11,12,14
48:23 49:7,11
49:16 50:6,8
50:21 51:4,8
99:22 100:22
**affidavits (11)**
23:19,25 41:9
41:12 49:9
50:19 79:4
100:8,13,18
100:24
**Affirmation ...**
41:22 42:15
103:15
**affirmed (1)**
3:6
**afternoon (3)**
11:25 12:7,10
**against- (1)**
1:6
**agent (1)**
97:17
**agree (1)**
9:3
**Alan (109)**
1:8,15 2:9 3:1
3:13 4:1 5:1
6:1 7:1 8:1
9:1 10:1 11:1
12:1 13:1
14:1 15:1
16:1 17:1

18:1 19:1
20:1 21:1
22:1 23:1
24:1 25:1
26:1 27:1
28:1 29:1
30:1 31:1
32:1 33:1
34:1 35:1
38:1 39:1
40:1 41:1
42:1 43:1
44:1 45:1
46:1 47:1
48:1 49:1
50:1 51:1
52:1 53:1
54:1 55:1
56:1 57:1
58:1 59:1
60:1 61:1
62:1 63:1
64:1 65:1
66:1 67:1
68:1 69:1
70:1 71:1
72:1,20 73:1
74:1 75:1
76:1 77:1
78:1 79:1
80:1 81:1
82:1 83:1
84:1 85:1
86:1 87:1
88:1 89:1
90:1 91:1
92:1 93:1
94:1 95:1
96:1 97:1
98:1 99:1
100:1 101:1
102:1,15
103:1 104:1
105:1
**Albany (1)**

2:18
**ALJ (4)**
36:5 85:3,8
103:15
**allegation (2)**
11:12 44:19
**allegations (3)**
44:20 49:18
50:19
**alleged (10)**
10:5,12 14:15
14:21 16:22
18:22 43:15
92:13 97:4,12
**allowed (4)**
15:6 38:21
56:24 74:18
**allowing (1)**
51:6
**altercation (4)**
10:5 20:12
66:20 67:23
**amendment (...**
82:17
**AND/OR (2)**
104:8,9
**animus (1)**
54:17
**answer (47)**
6:3 10:14
13:16,24
14:10 15:2
16:5,8 21:7,8
21:24 22:2
24:3 27:7
30:15 31:21
33:5 40:18
48:7 52:10,24
53:19 54:25
57:5 61:19
62:6 65:2,3,6
68:8 70:17
72:4 73:15
74:8,24,25
76:5 77:17
81:20 86:24

89:5 91:18
92:17 94:25
95:9 99:10
100:11
**answered (11)**
11:3 32:5 52:7
53:19 64:11
69:16 76:4
83:3 85:18
88:21 100:20
**anti-Semitic ...**
44:10 46:15
**anticipate (2)**
70:8 73:25
**anticipated (1)**
70:14
**anticipating ...**
70:6 73:11
**anticipation ...**
73:4,5 74:10
74:13
**anybody (4)**
38:24 48:22
49:9 100:22
**appeal (3)**
31:6,10,11
**appellate (1)**
77:10
**appointed (1)**
36:4
**approach (7)**
11:24 13:12
14:4 20:20
24:17 62:12
88:13
**approached (...**
21:2,9 32:7
37:19,22 64:8
64:13 91:12
**approaching ...**
12:6 92:7
**appropriate ...**
73:21
**argument (2)**
60:12 78:9
**argumentati...**

33:5 64:11
**arrive (2)**
4:23 5:4
**arrived (1)**
5:2
**asked (20)**
11:2 24:21
26:10,12 32:4
36:13 41:2
48:20,21 52:6
53:18 64:11
69:15 76:3
83:2 85:17
87:4 88:20
100:19,21
**asking (2)**
27:13
**aspect (2)**
60:17 61:5
**assaulted (1)**
91:14
**assume (7)**
42:2,3 80:19
80:22 81:5,10
81:15
**assumed (1)**
48:4
**assumes (3)**
14:25 32:13
51:11
**assuming (1)**
11:7
**attached (3)**
18:14 32:25
33:7
**attempting (2)**
82:16 91:13
**attend (1)**
5:13
**attention (16)**
19:6,12 22:5
27:19 34:23
36:2 42:18
44:6 58:23
60:6 63:14,18
66:24 71:3,16

75:2
**attorney (25)**
2:8 6:19 7:10
7:11 12:3
16:14 17:14
29:4 38:19,22
48:13,21 50:4
75:8 76:14
77:2,4 86:20
87:5,10 88:7
88:8,16 90:7
90:7
**attorney's (1)**
87:11
**attorney/clie...**
15:23 103:14
**attorneys (10)**
2:8,16 23:20
25:4 34:9,15
44:12 50:14
100:9,14
**audit (3)**
95:10,15,16
**auditors (1)**
95:11
**authority (5)**
14:6 77:24
81:16 89:9
98:5
**available (2)**
13:2,9
**aware (5)**
31:23 69:10,11
76:12 81:24
_____
**B**
**B (2)**
3:5 103:2
**B-O-H-M-S-...**
85:9
**back (12)**
6:13 31:11
32:8 62:16,16
62:23,24
63:20,20,22
63:22 70:20

**bailiwick (1)**
66:9
**ban (1)**
77:25
**banned (3)**
77:12,19 78:23
**BARBARA (1)**
2:18
**barbara.mon...**
2:19
**barriers (1)**
64:21
**based (6)**
11:5,12,17
43:14 57:9
95:10
**basis (9)**
15:22 78:13,13
79:14 83:10
83:13 84:2,19
87:23
**beach (1)**
45:12
**beanie (2)**
44:24 46:22
**beg (5)**
5:19 9:25
18:25 52:8
94:11
**began (2)**
58:6 74:13
**begins (2)**
36:3 80:4
**behavior (6)**
20:2 35:20
42:21 43:5,15
65:11
**believe (25)**
5:9 6:6 9:22
11:17 16:15
33:14,17 34:8
41:7 46:19,25
67:21 68:14
68:17 74:9
83:21 88:17
88:22,24 89:6

89:12,15
92:19 94:19
98:3
**best (3)**
4:5 7:14 26:22
**better (3)**
21:17,21 54:20
**big (1)**
96:24
**bit (3)**
37:10 81:23
95:22
**blackout (1)**
96:24
**blackouts (1)**
97:11
**blame (1)**
52:21
**blood (1)**
105:16
**Bohmstein (2)**
85:9 86:13
**bottom (3)**
42:6,11,13
**bounds (1)**
71:22
**brain (1)**
45:16
**breaking (3)**
3:23,24 4:5
**bring (7)**
58:22 69:7,8,9
69:11,17
79:10
**Brody (4)**
47:20 48:5
49:2 100:17
**Brody's (2)**
48:12 50:8
**broker (2)**
83:7,24
**brokers (7)**
83:6,12,15,19
83:21 84:14
84:18
**Brooklyn (51)**

3:15 4:19,24
5:8,23 6:5
11:5 12:15,18
13:2 14:7
15:7 27:2,5
27:22 41:25
46:4 47:13,14
48:13 49:3
51:7,17 53:7
53:17,24
56:25 58:3
59:17 65:23
67:24 76:19
78:24 80:25
82:6,22 85:8
86:2,17,21
87:21,25 89:2
94:8,13,23
95:6 98:12,16
98:19 100:25
**brought (9)**
19:5 60:6
69:13,13,23
75:19 76:10
76:13 93:20
**building (5)**
5:15 8:22,25
45:9 67:20
**bureau (4)**
2:15 4:20,24
75:11
**Burke (2)**
67:18 69:8
**bus (1)**
52:16
**Bushra (10)**
35:11,12,15
39:2,19,24
70:13,22
72:20 103:13
**business (2)**
5:7,9
**busy (1)**
38:20
_____
**C**

| | | | | |
|---|---|---|---|---|
| **C (7)** | 8:22 14:19 | 52:2 53:20 | 85:25 86:5 | 40:14 45:22 |
| 2:2 37:13,19 | 17:3 19:2,8 | 74:14 | **clients' (1)** | 55:24,25 56:5 |
| 38:6 102:2 | 21:14,20 | **certainty (2)** | 86:10 | 56:6,8,9 57:2 |
| 105:2,2 | 28:20 29:4,15 | 9:14 15:16 | **clip (3)** | 57:7,11,17,19 |
| **call (8)** | 38:3 39:21 | **certify (4)** | 60:8,9,21 | 58:2,5,14,25 |
| 9:24 10:2 | 43:23 44:4 | 102:4,8 105:9 | **color (4)** | 59:5,9,12,15 |
| 15:18 25:17 | 63:20 70:15 | 105:14 | 79:24 80:3 | 60:6 61:24 |
| 46:7,21 68:11 | 70:24 71:11 | **changed (1)** | 97:20,24 | 69:12 70:3,5 |
| 83:23 | 71:18 72:5,11 | 74:11 | **come (1)** | 79:14,18,19 |
| **called (18)** | 72:18 73:3 | **charges (1)** | 20:3 | 90:2,18 91:15 |
| 3:5 9:14,20 | 74:6 81:23 | 50:17 | **coming (2)** | 91:24 93:7 |
| 12:4 20:10 | 82:3 96:3,4 | **chief (3)** | 20:10 67:17 | 99:15 |
| 26:6,9 43:7 | 96:11 98:23 | 28:2,2 55:15 | **comments (1)** | **complaints (...** |
| 44:24 46:24 | 101:8 104:5 | **chill (1)** | 8:18 | 17:18,21 19:4 |
| 54:8 55:21 | **capogrossom...** | 82:16 | **COMMISSI...** | 20:7 22:6,25 |
| 68:4,9,16 | 2:5 | **circumstance...** | 1:10 2:11,16 | 23:25 24:6,10 |
| 84:10 87:20 | **car (18)** | 47:5 | **committee (7)** | 25:3,13,16,18 |
| 88:15 | 32:10 33:21 | **Civil (1)** | 75:20,25 77:7 | 26:18,24 27:4 |
| **calling (3)** | 36:12,12,14 | 1:16 | 77:15 78:10 | 27:8,11,13,19 |
| 87:22 88:6,9 | 37:14,15 38:4 | **clarification ...** | 79:5,10 | 30:3 46:13 |
| **callousness (3)** | 38:7,10,15,22 | 24:12 | **committees (1)** | 55:17,18,19 |
| 61:8,14,16 | 38:25 39:3,8 | **clenched (1)** | 77:4 | 55:25 58:11 |
| **calls (8)** | 39:9,22,22 | 64:22 | **communicati...** | 58:16 61:9,15 |
| 38:23,25 54:23 | **care (2)** | **clenching (1)** | 72:2 | 61:17,23 62:3 |
| 65:7 87:5 | 66:6,7 | 65:12 | **complacent (1)** | 68:12 69:23 |
| 89:3 97:18 | **case (11)** | **clerical (6)** | 12:4 | 78:14 79:3 |
| 99:5 | 1:6 20:23 | 28:14 45:9 | **complain (1)** | 100:24 |
| **Calvo (13)** | 70:13 78:9,15 | 55:10,20 | 20:4 | **complicit (1)** |
| 1:9 2:10 9:3,6 | 78:18 85:3 | 66:11 94:14 | **complained (4)** | 54:10 |
| 11:13,19 | 87:5,11,13 | **clerk (15)** | 23:10,16 53:23 | **complied (1)** |
| 14:16,23 | 93:22 | 28:2,2,18,19 | 55:22 | 28:23 |
| 51:23 52:20 | **caseload (1)** | 29:3 36:12,13 | **complaining ...** | **compound (2)** |
| 63:10 66:13 | 85:20 | 36:20,24 39:3 | 59:25 | 13:16,24 |
| 82:7 | **cases (7)** | 39:8 55:13,15 | **complaint (69)** | **computer (2)** |
| **cameras (1)** | 85:22 86:10,17 | 63:12 94:17 | 19:24 22:13,17 | 81:25 95:24 |
| 95:6 | 86:22 87:2,14 | **clerk's (2)** | 22:21 24:14 | **concerning (...** |
| **cans (1)** | 87:19 | 39:9,22 | 24:18,21,23 | 3:19 12:2 |
| 59:16 | **catch (2)** | **clerks (7)** | 25:15,22,23 | 15:19 19:25 |
| **capacity (11)** | 29:13 84:14 | 23:20 25:4 | 25:25 26:4,5 | 22:17,25 |
| 1:8,8,9,9,11 | **cease (1)** | 28:16,18 | 26:5,9,13,23 | 32:24 33:2 |
| 2:9,10,10,11 | 25:19 | 36:11 55:12 | 27:9 29:19,21 | 35:19 39:20 |
| 2:12,17 | **cell (1)** | 60:5 | 29:23 30:17 | 56:13 57:2 |
| **Capogrosso (...** | 91:13 | **client (6)** | 30:22,24 31:3 | 70:22 72:6,7 |
| 1:3 2:3 3:4,10 | **certain (1)** | 34:10,16 46:14 | 31:24 32:18 | 76:2 82:21 |
| 4:2,8,12 7:8 | 19:4 | 46:17,19 86:4 | 32:24 33:2,10 | **concluded (1)** |
| 7:17,21 8:2 | **certainly (3)** | **clients (2)** | 34:5 35:18,22 | 101:12 |

conclusion (5)
54:24 57:21
89:4 97:19
99:6
conclusions (1)
57:9
conclusively ...
94:4
condone (1)
65:10
conduct (4)
41:24 50:20
53:24 82:21
confirmed (1)
65:18
confrontatio...
67:23
connection (7)
4:6 21:12,13
21:17,24
29:11 40:17
consultation ...
89:16
contact (2)
58:13 64:5
content (2)
72:6,13
contents (2)
15:24 18:2
continue (1)
74:19
continued (1)
62:3
contract (3)
80:20 81:6,7
control (10)
55:4,5 66:3
93:19 94:7,12
94:15,16,22
95:3
conveniently ...
12:17
conversation...
15:13,25 16:3
16:9 32:15,21
32:22,23

45:14,15
46:10
conversation...
70:11 71:21,25
99:22
copy (2)
16:16,17
correct (12)
6:7,22,25
11:16 18:17
20:19 39:5
40:15 49:4
57:3 78:25
102:9
corresponde...
72:19 73:2
counsel (10)
3:3,23,24 7:10
7:25 13:6,18
16:2 52:12
103:24
counsel's (1)
9:18
Counselor (1)
52:9
countless (1)
99:24
COUNTY (1)
105:5
couple (1)
27:19
court (19)
1:2 3:22 4:4,10
4:15 6:22 7:2
7:19,24 16:25
19:10 21:11
21:19,22
28:22 29:10
36:24 42:10
90:15
courthouse (3)
31:7 34:11
38:20
courtroom (2)
34:18 88:10
cover (2)

86:17,22
covered (1)
85:23
covering (2)
87:13,14
create (1)
13:13
created (2)
73:6,19
credible (1)
100:5
Cricket's (1)
17:2
cross (2)
59:3 91:23
cross-talk (1)
13:6
crossed (1)
64:20
cumulation (1)
27:10
cumulative (1)
27:8
cusp (1)
57:24
cut (2)
32:9 33:19
CV (1)
1:6

_____

**D**

D (2)
102:2 104:2
Danielle (15)
1:9 2:10 9:3,6
9:22,23 11:12
11:19 14:16
14:23 52:15
55:15 63:10
66:13 82:7
date (6)
1:13 16:19
26:8 45:3
47:16 91:4
dated (2)
18:16 103:9

dates (3)
42:22 44:15
47:18
David (10)
1:10 2:11 8:13
19:13,23 20:4
20:10 66:12
70:4 98:18
day (14)
4:25 5:5,11,15
5:17,22 9:11
31:6,12 32:7
33:18 38:19
102:19
105:20
day-to-day (2)
55:7,8
December (6)
1:13 47:15,20
48:25 58:24
105:20
deciding (1)
27:10
decision (6)
77:18,21 89:10
89:13,14 94:5
Defendant (69)
1:15 2:16 3:17
4:18 10:6
12:21 13:11
14:3,7 18:9
18:22 19:5
20:25 22:14
23:2,10 29:19
33:21 41:21
44:23 51:16
51:23 52:17
52:20 54:22
55:4,18 56:2
56:8,23,24
58:2,6 59:2
59:20 60:16
60:25 62:9,12
62:23 64:8,13
64:20 65:11
66:15,19 68:3

68:4,13,20
69:20 70:12
70:13,21
74:19 80:5,13
80:16,24
81:14,17
82:18 90:19
91:11,25 92:7
92:13 97:13
98:6
defendant's (3)
23:16,22 71:12
defendants (3)
1:12 2:8 3:21
Defendants' ...
103:19
delegated (1)
66:10
deliberate (2)
61:7,13
deliberately ...
92:25
depends (1)
77:2
deposition (3)
1:15 3:19 96:3
derogatory (1)
20:12
description (2)
72:25 103:7
desist (1)
25:19
details (1)
8:24
devices (1)
49:8
difference (1)
72:8
different (1)
21:16
dinner (1)
84:20
dipped (1)
64:23
dipping (1)
65:13

| | | | | |
|---|---|---|---|---|
| **direct (15)** | 45:21 67:17 | **EK (1)** | **Excuse (1)** | 57:15 58:2,7 |
| 28:24 29:2 | 71:9 96:21,25 | 1:6 | 48:22 | 62:4,10,17 |
| 35:5,9 42:17 | **DOCUMEN...** | **Empire (1)** | **exhibit (48)** | 68:6 69:14,20 |
| 44:6 55:6 | 104:8,9 | 2:17 | 6:14,14,15,17 | 69:21 76:11 |
| 63:14,18 | **doing (5)** | **employer (2)** | 7:12,14,18,18 | 78:12 79:6 |
| 66:12 71:3,16 | 5:24 52:16,22 | 68:3 80:12 | 7:22,22 8:3,5 | 81:18 84:3 |
| 75:2 93:19 | 86:22 87:15 | **enter (1)** | 8:10 18:5,6 | 86:7 91:2 |
| 95:3 | **Don (2)** | 85:10 | 28:3,4,5 | 92:2,3 93:25 |
| **directed (2)** | 88:14,19 | **entrance (3)** | 34:24,25,25 | 97:17 99:3 |
| 4:18 55:8 | **door (2)** | 37:14 38:3,7 | 35:2 37:3,4 | 101:4 |
| **Directing (1)** | 45:7,9 | **entry (1)** | 39:4,7,11,11 | **fairly (1)** |
| 22:5 | **draw (4)** | 73:7 | 39:15,15 | 84:2 |
| **direction (7)** | 19:11 27:18 | **err (1)** | 41:16,17 63:5 | **false (1)** |
| 5:18,23 20:15 | 34:23 66:23 | 100:17 | 63:6,15 66:24 | 30:10 |
| 52:4,12,13 | **due (4)** | **ESQ (2)** | 66:25 71:4,5 | **familiar (19)** |
| 97:25 | 99:2,7,8,14 | 2:13,18 | 75:3,4 89:21 | 8:9,12 23:24 |
| **directly (3)** | **duly (3)** | **essence (1)** | 89:22 90:17 | 28:8 41:20 |
| 17:14 59:4 | 3:6 102:5 | 79:3 | 96:16,17 | 71:8,14 75:12 |
| 94:18 | 105:11 | **estimation (1)** | 103:6,6 | 75:15,18,24 |
| **director (1)** | _____ | 60:11 | **exhibits (5)** | 76:6,9 79:12 |
| 69:9 | **E** | **Eugene (3)** | 3:2 6:24 7:9 | 79:15,20 |
| **discussion (2)** | **E (9)** | 86:16,20 87:12 | 103:4,24 | 89:25 90:8 |
| 25:22 26:7 | 2:2,2 3:5,5 | **event (3)** | **Explain (1)** | 96:20 |
| **dislike (1)** | 102:2 103:2 | 16:21 57:8 | 99:20 | **far (1)** |
| 78:22 | 104:2 105:2,2 | 74:2 | _____ | 20:13 |
| **Dismiss (1)** | **e-mail (5)** | **events (1)** | **F** | **Federal (1)** |
| 23:23 | 16:20 18:15 | 58:20 | **F (1)** | 1:16 |
| **District (5)** | 73:2,10 | **everybody (1)** | 105:2 | **fee (3)** |
| 1:2,2 88:7,8,16 | 103:12 | 66:4 | **face (5)** | 56:3,8 91:25 |
| **division (1)** | **e-mails (1)** | **evidence (16)** | 22:9,15 64:22 | **feet (3)** |
| 77:10 | 70:20 | 14:14,20,25 | 65:12 90:19 | 45:7,11 64:9 |
| **DMV (23)** | **Eamon (6)** | 32:13 50:2,4 | **facing (2)** | **felt (1)** |
| 1:10 2:11,15 | 75:9,12,19 | 50:5 92:11 | 45:12,13 | 26:4 |
| 2:16 16:3 | 76:2,11,14 | 93:2,8,10,12 | **fact (3)** | **field (1)** |
| 51:17 67:20 | **earlier (3)** | 93:14,17,21 | 11:10 32:13 | 95:14 |
| 69:9 70:7,23 | 53:3 69:24 | 93:23 | 62:22 | **fight (1)** |
| 73:2,7,19 | 80:15 | **exact (1)** | **factor (1)** | 36:14 |
| 74:2 75:18 | **East (1)** | 25:25 | 27:10 | **file (2)** |
| 76:10,13 | 3:15 | **exactly (1)** | **facts (1)** | 2:19 51:8 |
| 77:11 80:6,10 | **EASTERN (1)** | 45:4 | 14:25 | **filed (1)** |
| 80:20 81:7 | 1:2 | **examination ...** | **fair (34)** | 3:19 41:10 |
| 95:11 | **eight (4)** | 3:9 101:11 | 25:7,10 26:14 | 78:14 |
| **docket (1)** | 82:3 96:6,7,13 | 104:4 105:10 | 26:15 27:14 | **filings (1)** |
| 75:7 | **either (4)** | 105:12 | 29:24 33:24 | 33:8 |
| **document (7)** | 25:4 55:12 | **examined (1)** | 50:23 51:2 | **fine (11)** |
| 8:9 41:21 | 60:19 80:14 | 3:8 | 56:22 57:12 | 4:16 18:4 24:7 |

| | | | | |
|---|---|---|---|---|
| 34:22 36:8<br>37:2,25 38:9<br>39:19 44:4<br>72:24<br>**FIRM (1)**<br>2:3<br>**first (14)**<br>3:6 8:4 18:13<br>23:22 28:24<br>29:2 35:6,9<br>36:3,4 63:17<br>63:19 82:17<br>102:5<br>**fist (2)**<br>64:23 65:13<br>**five (1)**<br>17:11<br>**Five-page (2)**<br>103:18,21<br>**Floor (1)**<br>2:12<br>**followed (4)**<br>36:11 39:3,8<br>39:21<br>**following (1)**<br>37:17<br>**follows (1)**<br>3:8<br>**footage (1)**<br>97:3<br>**foregoing (1)**<br>102:8<br>**form (52)**<br>5:21 6:2 10:9<br>11:15 14:10<br>15:10 21:6<br>24:3 25:9<br>27:7 30:14<br>34:2 40:17<br>48:7 50:25<br>52:19 57:5,14<br>58:10 61:4,12<br>61:19 62:6<br>65:2,5,15<br>67:9 68:8,23<br>70:2,17 74:8 | 74:23 75:22<br>77:17 78:17<br>81:20 84:8<br>85:6 86:24<br>87:18 91:18<br>92:5,17 93:5<br>94:10,25 95:9<br>98:9 99:5<br>100:11 101:7<br>**formalize (1)**<br>45:21<br>**forth (2)**<br>70:21 105:11<br>**forward (1)**<br>96:2<br>**forwarded (2)**<br>7:9 17:13<br>**found (3)**<br>88:15 100:4,5<br>**Four-page (3)**<br>103:11,14,15<br>**fourth (4)**<br>36:9 71:17,17<br>72:21<br>**freedom (1)**<br>82:17<br>**friends (1)**<br>84:19<br>**FU (1)**<br>22:9<br>**fuck (2)**<br>19:14 90:20<br>**full (1)**<br>38:19<br>**furnished (2)**<br>16:15,17<br>**further (6)**<br>8:24 29:16<br>37:11 101:9<br>102:8 105:14<br>—————<br>**G**<br>**G (3)**<br>3:5 37:19,22<br>**garbage (4)**<br>60:12,15,18,22 | **GE (2)**<br>84:25 85:12<br>**Gelbstein (13...**<br>1:8,15 2:9 3:1<br>3:13,17 4:1<br>4:18 5:1 6:1<br>7:1 8:1,20 9:1<br>10:1 11:1<br>12:1 13:1<br>14:1 15:1,25<br>16:1,4 17:1<br>18:1,9 19:1<br>20:1 21:1<br>22:1 23:1<br>24:1 25:1<br>26:1 27:1<br>28:1 29:1,19<br>30:1 31:1,19<br>32:1 33:1<br>34:1 35:1<br>36:1 37:1<br>38:1 39:1<br>40:1 41:1,21<br>42:1 43:1<br>44:1,23 45:1<br>46:1 47:1<br>48:1 49:1<br>50:1 51:1,16<br>52:1,17 53:1<br>53:4,5 54:1<br>55:1 56:1<br>57:1 58:1<br>59:1 60:1<br>61:1 62:1<br>63:1 64:1<br>65:1 66:1<br>67:1 68:1<br>69:1 70:1<br>71:1,12 72:1<br>72:21 73:1,20<br>74:1,5 75:1<br>76:1 77:1<br>78:1 79:1<br>80:1 81:1<br>82:1,18 83:1<br>83:7 84:1 | 85:1,4 86:1<br>87:1,13 88:1<br>89:1 90:1<br>91:1 92:1<br>93:1,2 94:1<br>95:1 96:1<br>97:1 98:1<br>99:1 100:1<br>101:1 102:1<br>102:15 103:1<br>104:1 105:1<br>**Gelbstein's (1)**<br>88:10<br>**general (6)**<br>2:8 12:3 16:14<br>17:14 86:6,10<br>**George (8)**<br>36:23 37:7,9<br>37:13,15 38:2<br>38:10,11<br>**Gervazi (3)**<br>86:17,20 87:12<br>**getting (1)**<br>65:11<br>**giggle (1)**<br>22:24<br>**giggling (2)**<br>23:9,15<br>**give (20)**<br>8:23 9:18<br>21:14,17 24:8<br>25:12 29:13<br>41:16 43:10<br>48:21 49:13<br>49:17,19,20<br>49:21,25 87:2<br>87:8 96:4,13<br>**given (5)**<br>99:2,21,24<br>102:10<br>105:13<br>**giving (2)**<br>50:20 99:14<br>**glare (1)**<br>22:15<br>**glared (1)** | 22:8<br>**go (16)**<br>8:20 12:10<br>18:5 19:14<br>20:14 28:3<br>34:25 37:2<br>41:13 42:8<br>53:5 63:5<br>77:10 89:20<br>96:2,16<br>**goes (5)**<br>4:7,10 6:14<br>77:5 92:20<br>**going (21)**<br>4:17 6:23 10:8<br>15:21 32:9<br>33:19 35:5<br>37:12 42:17<br>49:6 51:8,13<br>70:20 72:12<br>72:13 73:9,9<br>73:12,13 77:7<br>77:14<br>**good (2)**<br>21:12,13<br>**grand (1)**<br>87:7<br>**great (1)**<br>100:3<br>**grievance (10)**<br>75:19,20,25<br>76:10 77:4,7<br>77:14 78:9<br>79:5,10<br>**grieve (5)**<br>76:18,23,24,25<br>78:20<br>**grieved (3)**<br>78:3,5,8<br>**Group (11)**<br>1:10 2:11 68:2<br>68:11,15,21<br>69:4,14,18<br>80:21 103:18<br>**guard (11)**<br>19:13 20:4 |

22:7,14 33:22
60:25 66:21
67:25 68:2
80:5,10
**guess (1)**
95:2
**guilty (4)**
85:2,8,10 86:6

──────── **H** ────────

**H (3)**
1:3 2:3 103:2
**habitual (1)**
84:19
**hallway (1)**
45:8
**Han (2)**
36:23 37:9
**Han's (1)**
37:7
**hand (3)**
59:3 91:22
105:20
**handle (3)**
87:3,5,11
**hands (1)**
7:5
**handwritten ...**
29:14
**happen (2)**
12:19 46:21
**happened (4)**
31:3,9 32:6
40:3
**happens (2)**
35:12 75:10
**happy (1)**
65:17
**harassed (1)**
62:8
**harassment (7)**
58:6 62:3,7,9
68:13 69:3
74:18
**harassments ...**
58:12

**hard (1)**
14:18
**head (3)**
28:18 64:23
65:13
**hear (9)**
3:25 4:2,6,8
13:17,21
21:20 23:12
76:5
**heard (1)**
13:20
**hearing (5)**
14:18 49:17,19
49:20,24
**held (1)**
1:16
**help (1)**
77:6
**helping (1)**
77:15
**hereinbefore...**
102:11 105:11
**hereunto (1)**
105:19
**hierarchy (1)**
66:5
**hire (2)**
31:4,17
**hired (4)**
31:5,10 81:3,5
**honestly (2)**
39:16 90:23
**hours (2)**
5:8,9
**house (1)**
38:20
**hyphenated (1)**
17:6

──────── **I** ────────

**Ida (12)**
1:8 2:9 15:4,11
15:14,18 16:2
16:6,7,10
72:21 77:11

**idea (3)**
64:15 92:22
97:6
**illicit (2)**
100:13,17
**illicited (1)**
100:8
**imagine (2)**
9:16 38:24
**immediate (1)**
35:16
**impression (1)**
7:3
**incapable (2)**
12:5 54:9
**inches (2)**
64:22 65:12
**incident (20)**
12:20 13:13
18:21 39:20
40:6 47:19,23
47:25 49:2
52:21 73:3
91:3,21 93:24
97:4,12 103:8
103:11,17,18
**incidents (1)**
99:25
**including (1)**
66:11
**incompetent ...**
12:4 54:9
**independent ...**
40:11,12
**indicate (1)**
44:9
**indicated (5)**
53:3,4 80:14
82:13 98:4
**indicates (6)**
36:9,10 37:10
37:11 62:15
82:7
**indifference ...**
61:8,14
**indifferent (1)**

61:22
**individual (9)**
1:8,8,9 2:9,9
2:10 61:25
64:6 85:24
**individually ...**
101:2
**information ...**
97:8 99:23
104:8,9
**initiated (1)**
47:6
**input (1)**
77:20
**instance (1)**
43:19
**instruct (3)**
16:5 72:3
73:14
**instructed (1)**
92:18
**intend (1)**
96:2
**interactions (...**
50:14
**interested (1)**
105:17
**intervention ...**
26:6
**introduced (...**
8:7 18:8 28:7
35:4 37:6
41:19 63:8
67:3 71:7
75:6 89:24
96:19
**investigate (6)**
26:16 29:18
30:12 34:5
36:15 40:7
**investigated ...**
26:22 27:20
29:21 30:11
31:18 57:10
**investigation...**
56:12,15,19,21

57:8,9,20
75:25
**investigation...**
95:14
**involved (7)**
48:10 51:15,22
53:11,16
67:20 89:18
**involvement ...**
53:20
**issue (1)**
74:21
**issues (1)**
77:6
**Item (3)**
19:11,12 44:6

──────── **J** ────────

**JAMES (1)**
2:13
**james.thomp...**
2:14
**Jamie (3)**
1:17 105:7,23
**January (2)**
29:6 30:7
**Jeff (1)**
100:16
**Jewish (6)**
44:12 83:6,12
83:15,22,24
**job (1)**
66:6
**join (1)**
81:25
**judge (21)**
8:20 15:25
16:4 23:20
25:5 46:21
50:11,13,15
53:3,5 65:22
67:12,12 83:7
86:13 87:13
88:10 93:2
97:16 99:8
**judges (3)**

31:8 65:25
66:7
**June (2)**
56:7 91:11

---
**K**
**keep (9)**
10:20 20:13
92:11,12,15
93:11,16 94:6
96:12
**kept (1)**
93:14
**kind (3)**
45:16 59:19
94:20
**KINGS (1)**
105:5
**knife (2)**
32:9 33:20
**know (59)**
15:3,11 16:19
16:24 17:25
18:24 20:8,18
20:22 24:4
29:22 30:6,8
32:6,15,16
33:6 34:3,4,6
35:12 36:20
38:20 39:17
39:18 40:5,6
40:21 41:11
41:12 43:21
45:16 47:18
47:22 51:21
52:11 62:14
63:9 64:7
65:8 71:10
76:7,16 77:3
80:18 81:9,11
83:6,21 84:21
92:20,24
94:17,20
95:13,18
96:10,23 97:5
**knowing (3)**

39:25 97:10,14
**knowledge (2)**
64:12 67:14
**kyke (2)**
44:25 46:22

---
**L**
**L (3)**
3:5,5 102:2
**lady (1)**
87:20
**languages (1)**
44:11
**laptop (1)**
21:15
**lasts (1)**
95:19
**late (2)**
5:2,11
**laugh (1)**
22:24
**laughing (2)**
23:8,14
**law (14)**
2:3 15:7 51:18
66:8 77:3,13
77:20 78:24
80:4 89:8
97:16,21,25
98:2
**lawful (1)**
89:6
**lawfully (1)**
88:25
**lawyer (4)**
75:10 85:19
87:22 88:9
**laying (1)**
59:18
**LB (1)**
1:6
**leave (2)**
8:22 49:8
**left (1)**
8:24
**legal (10)**

2:15 8:23 9:18
16:3 33:8
54:24 66:7
89:4 97:19
99:6
**let's (5)**
7:22 18:5 28:3
41:13 45:9
**letter (32)**
12:2 16:13,16
16:18 17:9,13
17:18,22,24
18:5,10,11
19:6 23:5
35:11 53:22
54:2,3,6,8,18
82:10,12,14
90:2,12,13,14
90:22 91:5,23
103:9
**letters (2)**
82:21,25
**letting (1)**
52:20
**Levine (3)**
28:9,12 55:16
**Liberty (1)**
2:12
**license (1)**
31:13
**lie (1)**
47:2
**liked (1)**
78:19
**line (4)**
8:19 36:10
74:12 104:16
**listen (1)**
72:9
**litigation (11)**
70:7,8,14,23
73:4,6,11,25
74:11,14,17
**little (2)**
37:10 45:5
**livelihood (1)**

77:2
**living (1)**
84:21
**location (1)**
21:16
**lodged (1)**
25:15
**log (9)**
71:13,20 72:7
72:14,14,17
73:6,18
103:20
**long (1)**
95:18
**longer (1)**
49:3
**look (10)**
8:15 19:7
27:24 35:22
59:11 63:17
64:7,16 65:19
72:21
**looked (1)**
39:4
**looking (1)**
18:25
**lose (2)**
92:25 93:10
**losing (1)**
93:7
**lost (1)**
31:6
**lot (4)**
35:6 37:14
38:4,7
**lull (1)**
81:23
**lying (1)**
39:24

---
**M**
**M-E-L-A-N-... (1)**
28:11
**M-O-R-G-A-... (1)**
17:4
**Ma'am (6)**

21:21 28:21
29:16,16 42:9
63:15
**machine (2)**
7:5 92:19
**mad (1)**
54:15
**Madame (1)**
6:22
**maintain (1)**
93:11
**making (7)**
22:16,20 25:4
25:5 30:10
56:4,9
**man (1)**
54:20
**manage (1)**
65:24
**manner (1)**
67:24
**March (6)**
16:13 17:19
18:16 53:22
54:3 82:11
**Mario (4)**
1:3 2:3 70:14
70:24
**MARK (3)**
1:10 2:11,16
**marked (18)**
3:3 6:15 7:25
8:2,6 18:7
28:6 35:3
37:5 41:18
63:7 67:2
71:6 75:5
89:23 96:18
103:4 104:15
**marker (1)**
71:19
**marriage (1)**
105:16
**matter (5)**
75:8,9,16
103:21

| | | | | |
|---|---|---|---|---|
| 105:18 | **Motion (1)** | 1:2,17 2:5,5,7 | 13:4,15,23 | **occasions (4)** |
| **mean (3)** | 23:22 | 2:13,13,18 | 14:9,24 15:9 | 36:11 42:19 |
| 20:25 51:21 | **motorist (2)** | 3:7,16 15:8 | 21:5 24:2 | 85:22 100:6 |
| 85:21 | 46:14,16 | 51:18 68:15 | 25:8 30:13 | **occur (2)** |
| **Melanie (2)** | **motorists (4)** | 105:4,8 | 31:16,21 32:4 | 92:23 93:20 |
| 28:8,11 | 50:16 85:2,7 | **Newman (3)** | 32:12 33:4,25 | **occurred (8)** |
| **memorandu...** | 85:10 | 1:17 105:7,23 | 40:16 44:3 | 9:15 18:22 |
| 103:23 | **move (2)** | **normal (1)** | 47:3 48:6,16 | 40:6 57:23 |
| **mention (1)** | 21:15 60:24 | 5:7 | 50:24 51:10 | 67:10,11 94:4 |
| 62:22 | **moved (2)** | **Notary (4)** | 51:20 52:6,18 | 100:7 |
| **merit (3)** | 60:7,13 | 1:17 3:7 | 52:23 53:18 | **offended (3)** |
| 78:13,13 79:4 | **moving (3)** | 102:22 105:7 | 54:23 57:4,13 | 54:7,12,13 |
| **messed (1)** | 36:13 39:9,23 | **note (6)** | 58:9 61:3,11 | **offenses (1)** |
| 21:25 | **Myer (1)** | 8:18 10:13 | 61:18 62:5 | 46:7 |
| **midway (2)** | 100:16 | 31:15,20 | 64:10,25 | **offered (1)** |
| 45:8,11 | | 63:21 96:24 | 65:14 67:8 | 33:14 |
| **mine (2)** | ———————N——————— | **notes (2)** | 68:7,22 69:15 | **office (47)** |
| 48:14,15 | **N (5)** | 103:14,22 | 69:25 70:16 | 2:7 19:25 20:3 |
| **minor (1)** | 2:2 3:5,5 102:2 | **Notice (1)** | 75:21 76:3 | 22:7,17,21 |
| 26:4 | 104:2 | 1:16 | 77:16,23 | 26:7 28:14 |
| **minute (2)** | **name (6)** | **notification (1)** | 78:16 79:7 | 41:6,10 43:2 |
| 21:15,18 | 3:11 17:2,5 | 88:11 | 80:7 81:19 | 45:6,9,10 |
| **minutes (5)** | 37:8,9 63:9 | **number (10)** | 83:2 84:7 | 50:15 55:19 |
| 82:4 96:6,7,14 | **names (1)** | 8:23 9:19 | 85:5,17 86:23 | 55:22 56:13 |
| 98:24 | 55:14 | 19:11,12 | 87:17 88:20 | 58:14,17 59:6 |
| **misconduct (3)** | **near (1)** | 22:18,19 44:7 | 89:3,11 92:4 | 59:15 65:25 |
| 23:25 26:25 | 59:16 | 44:7 73:16 | 92:16 93:4,9 | 66:2,4 67:13 |
| 30:3 | **necessary (1)** | 103:7 | 93:13,18 94:2 | 69:23 73:19 |
| **missed (1)** | 46:2 | **numerous (1)** | 94:9,24 95:8 | 76:18 77:25 |
| 22:11 | **need (2)** | 42:19 | 97:18,22 98:8 | 78:3,6 83:10 |
| **missing (1)** | 3:18 24:11 | **NY (2)** | 99:4,9,13 | 83:11,12,16 |
| 98:25 | **negligent (1)** | 1:10 2:11 | 100:10,19 | 83:18,25 84:2 |
| **moment (1)** | 54:21 | | 101:6 | 84:6,18 87:6 |
| 41:16 | **never (27)** | ———————O——————— | **objectionabl...** | 90:3 91:16 |
| **money (1)** | 24:22 26:12 | **O (1)** | 72:2 | 94:14 100:25 |
| 32:8 | 30:6 31:18 | 102:2 | **observe (3)** | 101:2 |
| **MONTENA ...** | 32:2,17,23 | **obey (1)** | 10:6,10,11 | **officers (3)** |
| 2:18 | 33:21,22 | 20:16 | **observed (4)** | 8:21 50:16 |
| **morning (17)** | 48:19,20 51:5 | **object (10)** | 15:12 83:5,9 | 53:6 |
| 4:20 9:21 | 65:18,19 | 10:9 15:22 | 83:11 | **official (3)** |
| 12:18 13:3,9 | 68:16 69:13 | 27:6 65:4 | **observing (1)** | 1:11 2:12,17 |
| 13:12 14:4,15 | 78:3,5,6 | 72:3 73:13,13 | 10:18 | **Oh (2)** |
| 14:22 15:14 | 80:22 86:3,14 | 74:7,22 91:17 | **obviously (1)** | 69:6 98:17 |
| 15:20 20:21 | 88:18 92:6,18 | **objection (87)** | 67:22 | **okay (2)** |
| 51:18 62:13 | 95:4 100:23 | 5:20,25 10:14 | **occasion (3)** | 37:2 43:24 |
| 64:17 92:8,14 | **New (15)** | 11:2,14 12:22 | 43:8,9,10 | **Once (1)** |

84:13
One-page (2)
103:12,22
ones (1)
24:4
operating (2)
97:20,24
opinion (4)
63:25 64:3,3
64:24
opportunity ...
24:9 25:2,6,12
35:21 40:23
48:20 49:10
49:13,21,25
50:21 78:7
99:15,18
opposed (1)
77:14
opposite (1)
20:14
order (2)
9:6 20:16
ordinance (1)
79:25
outcome (1)
105:17
outside (4)
34:11,17,18
45:6

_____ P _____

P (2)
2:2,2
P-E-C (1)
80:14
P.M (1)
101:10
page (22)
8:4,16,19 19:7
19:9 23:6
28:21,25 29:8
29:9,12,14
37:22 42:6,9
42:11,13
63:15 103:6

104:4,9,16
paid (6)
65:22,24 80:16
81:11,13,15
paper (2)
60:9,20
papers (1)
33:8
paragraph (1...
23:7 28:25
29:3 35:6,10
35:25 36:3
37:12,18,19
37:22 39:12
42:18 44:7,9
63:18,19
pardon (5)
5:19 9:25
18:25 52:9
94:11
parking (3)
37:14 38:4,7
part (7)
16:20 35:10
45:13,15
67:19 79:23
95:16
particular (9)
24:14 25:22
30:16,24
35:25 43:9
45:15 46:5
76:8
particularity...
57:7
parties (2)
48:10 105:15
pass (1)
55:19
Paul (1)
30:19
pause (1)
95:22
pay (1)
25:16
PEC (17)

1:9 2:11 68:2
68:11,15,20
69:4,13,17
80:19,21 81:5
81:6,11,13,15
103:18
people (7)
67:24 69:11
83:17 89:16
95:13,15
99:24
Perez (7)
29:5 30:7,19
31:3,17 32:7
33:19
period (2)
25:14 27:11
permitted (4)
84:11,13,13,15
person (6)
8:13 58:13
60:16 79:24
88:9 94:16
personal (1)
5:12
personally (8)
10:22 42:20
51:15,22
53:11,16
55:21 89:17
petitioner (3)
42:20 44:10,24
phone (5)
8:23 9:19
38:22,25
91:14
physical (1)
58:13
physically (2)
9:12 64:6
piece (2)
92:22,23
place (2)
2:4 102:11
Plaintiff (3)
1:4,15 2:4

Plaintiff's (16)
6:15,17 8:3,5
18:6 28:5
35:2 37:4
41:17 63:6
66:25 71:5
75:4 89:22
96:17 103:4
Plaza (1)
2:17
plead (1)
85:7
pleading (2)
84:25 86:5
pleas (1)
85:10
please (6)
3:11 14:2 19:9
22:12 28:20
42:8
point (16)
4:22,23 9:16
10:23 21:3
22:23 25:11
34:7,19 66:21
70:25 84:16
84:23 87:25
88:3,14
pointed (1)
59:3
police (15)
8:8,21 20:24
34:4 50:16
53:2,5,6,9
62:15,20 63:3
63:3,22 82:6
portion (1)
29:14
pose (1)
72:10
position (1)
36:4
possession (6)
6:16,20 10:20
16:12 17:9
82:10

possible (1)
70:23
practice (7)
12:11 15:7
51:17 77:3,13
77:19 78:24
precipitated ...
46:10 47:5
precisely (1)
96:14
predisposed ...
12:14
premises (1)
84:15
prepared (2)
73:3,5
presence (1)
59:24
present (5)
12:18 49:22
50:2,21 78:8
presented (8)
23:21 24:20
48:24 49:15
50:3,5 93:15
100:23
Pretty (1)
91:14
previous (2)
29:8 39:14
previously (14)
3:3 8:18 7
28:6 35:3
37:5 41:18
63:7 67:2
71:6 75:5
89:23 96:18
103:4
Pricket (1)
17:4
Pricket-Mor...
12:3 16:14
17:4,7,15
54:4 82:13
principal (4)
28:19 55:12

60:5 66:6
**principally (1)**
65:25
**prior (2)**
16:21 74:2
**privilege (6)**
15:23 71:13,20
73:18 103:14
103:20
**privileged (1)**
71:22
**PRO (1)**
2:4
**probably (2)**
11:9 87:9
**problem (1)**
77:5
**problems (1)**
96:5
**Procedure (1)**
1:16
**process (4)**
99:2,7,8,14
**produce (1)**
72:17
**produced (2)**
71:20 90:6
**product (1)**
15:24
**proffered (1)**
48:17
**promise (1)**
25:20
**protocol (1)**
94:20
**provoked (1)**
93:24
**Public (4)**
1:17 3:7
102:22 105:7
**purposefully ...**
12:25 13:8
97:9
**pursuant (1)**
1:16
**push (6)**

10:12 14:16,21
16:22 18:22
92:13
**pushed (1)**
91:12
**put (6)**
7:3,15,20
42:25 71:19
95:6
**putting (1)**
6:24

—————————
**Q**
**question (61)**
5:21 6:2 10:9
11:15 12:24
13:7,25 14:2
14:10 15:19
16:6,9 19:3
21:6 22:6,11
22:19 23:13
24:12,13,15
24:16 27:3
30:14 33:18
34:14 38:18
40:10 41:14
41:15 43:23
44:2,8 52:19
61:12,21 65:5
65:6 68:10
71:24 72:10
72:12,13
73:14,17,22
74:5,23 78:11
84:9 85:6
86:24 87:18
91:18 92:5,17
94:25 97:23
98:9 99:5
104:16
**questioning (2)**
72:6,7
**questions (6)**
4:13,17 66:8,8
71:25 104:15
**Quixote (2)**

88:15,19

—————————
**R**
**R (3)**
2:2 102:2
105:2
**Rabinowitz (2)**
87:21 88:16
**racist (1)**
46:15
**re-asked (1)**
13:6
**re-records (1)**
92:21
**reached (1)**
57:21
**reaction (1)**
18:3
**read (8)**
22:18 35:23
37:13 39:13
53:22 62:20
79:17,19
**reading (4)**
23:4 37:20
39:6 42:2
**reads (1)**
8:19
**ready (2)**
81:25 82:2
**really (3)**
41:15 77:9,9
**rear (2)**
91:12,13
**reason (5)**
5:15 79:9 84:5
85:14,16
**reasons (1)**
85:15
**recall (92)**
5:2,24 6:4,8
9:13 10:3,15
10:17,19,25
11:8 12:6
15:16 16:11
17:8 18:2,10

18:13 22:2,10
22:16,20 23:8
23:14 25:24
26:2,8 29:20
29:25 30:16
30:19,20
31:22,25
32:20 36:17
39:16 40:25
40:25 43:12
43:18 44:15
45:23 47:4,17
48:8 49:5
56:4,9,14,18
57:6,18,19,20
58:15,21,24
59:5,10,13,14
59:21,25
60:22 61:2,5
62:25 64:18
65:21 66:22
67:4,16,17
71:2 88:5,6
88:12 90:21
90:24,25 91:3
91:7,10,15,19
91:20,21,23
91:24 92:10
100:21
**receive (2)**
24:6 51:3
**received (6)**
18:15 41:4,7
41:11 51:5
82:14
**receiving (1)**
18:10
**recognize (1)**
37:7
**recollection (1)**
26:23
**recommenda...**
95:7
**recommende...**
95:5,11,13
**record (2)**

3:12 105:12
**recording (1)**
94:19
**rectify (2)**
19:19 68:5
**redacted (3)**
97:3,7,9
**reference (2)**
32:18 57:16
**referring (4)**
24:5 29:8
44:11 83:22
**regard (7)**
22:19 30:18
32:21 50:13
50:15 93:22
99:25
**regarding (1)**
73:3
**regardless (1)**
64:4
**regular (1)**
95:15
**regulate (1)**
81:17
**regulation (1)**
79:25
**related (1)**
105:15
**relayed (1)**
9:15
**remain (1)**
56:25
**remark (1)**
46:15
**remember (22)**
12:12 17:20
20:9 30:23
31:24 39:10
44:22 45:3,14
46:11 47:21
47:22 51:25
56:20 58:19
59:19 60:3,4
60:10,10,17
60:18

December 17, 2020

Page 117

| | | | | |
|---|---|---|---|---|
| **removal (6)** | 19:10 21:11 | 90:12 91:2 | 2:5 | **scroll (3)** |
| 5:4 15:19 | 21:19,22 | **responsibile ...** | **room (5)** | 8:3 19:9 28:21 |
| 51:16 53:11 | 28:22 29:10 | 94:18 | 2:17 8:21 53:5 | **scrolled (2)** |
| 53:17 89:18 | 42:10 90:15 | **responsibilit...** | 86:6,11 | 42:11 90:16 |
| **remove (4)** | **reports (1)** | 68:19 69:19,22 | **rooms (1)** | **SE (1)** |
| 9:12 51:7,24 | 20:24 | **responsible (1)** | 85:23 | 2:4 |
| 53:6 | **represent (1)** | 66:14 | **row (3)** | **seared (2)** |
| **removed (38)** | 31:4 | **rest (3)** | 71:17,17 72:22 | 45:16,17 |
| 5:17,22 6:4,9 | **represented (...** | 45:14 90:14,17 | **rug (2)** | **second (4)** |
| 6:10 9:7,11 | 29:4 30:7 86:3 | **result (1)** | 57:12 93:7 | 8:16 23:6 |
| 9:18 11:4 | **representing ...** | 57:19 | **Rules (1)** | 29:13 37:12 |
| 12:15 15:5 | 85:25 | **results (2)** | 1:16 | **security (14)** |
| 25:7 26:25 | **REQUESTE...** | 56:18,21 | **RULINGS (1)** | 19:13 20:4 |
| 27:5,22 30:4 | 104:8 | **retained (1)** | 104:15 | 22:7,14 33:22 |
| 43:14 44:19 | **required (1)** | 103:24 | _____ | 60:24 64:21 |
| 46:4,8 47:12 | 26:5 | **review (1)** | **S** | 66:20 67:25 |
| 47:14,18 | **requirement...** | 17:11 | | 68:2 80:5,9 |
| 50:18 52:3 | 86:6,10 | **reviewed (1)** | **S (3)** | 95:5,12 |
| 53:21 82:5,9 | **reschedule (1)** | 92:6 | 2:2 3:5 103:2 | **see (24)** |
| 82:14,18 | 86:9 | **revoked (1)** | **SADIQ (2)** | 4:13 7:16 |
| 87:24 88:4,25 | **rescheduling...** | 31:13 | 1:9 2:10 | 18:12 19:15 |
| 98:12,15,18 | 85:3 | **ridiculous (1)** | **salary (1)** | 23:7 28:3 |
| 98:18,19 | **resolve (2)** | 60:12 | 80:17 | 34:13 37:9,23 |
| **repeat (5)** | 74:20 77:6 | **right (47)** | **saw (6)** | 37:24 38:5,8 |
| 14:2 23:13 | **respect (7)** | 4:14 8:17 | 11:8,25 18:11 | 38:12,16 |
| 27:3 61:10 | 17:24 41:24 | 18:23 20:21 | 18:14 53:7 | 41:22 42:7,12 |
| 97:23 | 47:25 59:9,12 | 22:4 24:7 | 80:22 | 63:24 72:23 |
| **repeated (2)** | 67:25 68:12 | 26:11 28:16 | **saying (14)** | 90:14,16 |
| 19:14 87:22 | **respond (17)** | 28:25 29:17 | 9:5 12:12 | 96:22 97:2 |
| **rephrase (1)** | 24:18,21,23 | 30:4,8 32:3 | 14:18 28:16 | 98:24 |
| 24:16 | 25:3,6,12 | 34:22 39:3 | 34:14 48:5 | **seeing (2)** |
| **reply (1)** | 32:5 40:23 | 41:25 43:16 | 49:5 51:6 | 22:3 90:21 |
| 26:13 | 43:2,5 49:11 | 43:25 44:19 | 56:16,23 | **seen (1)** |
| **report (14)** | 49:14 52:7 | 44:21 45:6 | 65:10 66:16 | 90:23 |
| 8:9 53:2,9 | 88:21 99:15 | 46:18 47:9,16 | 66:17 79:2 | **sees (1)** |
| 58:17 62:15 | 101:2,3 | 48:5 50:12 | **says (10)** | 20:14 |
| 62:20 63:3,4 | **responded (1)** | 53:7 65:20 | 9:16 35:10 | **senior (1)** |
| 63:22 64:2 | 50:10 | 68:25 72:18 | 37:15 38:2 | 67:12 |
| 67:4,6,15 | **responding (1)** | 73:7 74:21 | 39:2 47:10 | **sent (2)** |
| 82:7 | 61:17 | 77:13 82:17 | 63:19 71:11 | 72:15 82:12 |
| **reported (3)** | **response (15)** | 82:22 83:7 | 87:6,8 | **sequences (1)** |
| 69:4,6 100:4 | 19:19 20:6 | 89:18 92:9 | **schedule (1)** | 58:19 |
| **Reporter (17)** | 24:9 27:14,17 | 93:12 95:19 | 96:12 | **serious (4)** |
| 3:22 4:4,10,15 | 32:3 33:10 | 95:23 96:9,25 | **SCHROEDE...** | 25:15,17 26:5 |
| 6:22 7:2,19 | 41:6,8 50:2 | 98:6,13,16,21 | 1:10 2:12,16 | 26:23 |
| 7:24 16:25 | 50:22 51:4,9 | **Rochelle (1)** | **screen (3)** | **service (2)** |
| | | | 6:25 7:4,15 | |

December 17, 2020

Page 118

81:8,14
services (1)
81:12
set (2)
105:11,20
severe (1)
77:9
severity (1)
77:3
Sheldrake (1)
2:4
shocked (1)
45:5
short (1)
35:8
show (8)
50:6,8 63:2,3
80:24 81:3
94:3 97:11
showed (3)
53:3 64:5
82:11
shown (1)
93:23
side (1)
66:7
sidebar (2)
85:2,3
sign (2)
59:3 91:22
signature (4)
42:5,7,12,14
singular (1)
99:25
sir (8)
5:16 12:19
20:19,23
45:19 54:14
54:19 77:22
sit (2)
38:22,24
slash (2)
32:10 33:20
slower (1)
29:12
Smart (58)

1:10 2:11 8:13
10:6 12:21
13:11 14:3,7
18:22 19:5
20:25 22:14
23:2 33:21
54:22 55:4,18
56:2,8,23,24
58:3,6 59:2
59:20 60:4,15
60:16,25
62:10,12,23
64:8,13,20
65:11 66:12
66:19 68:3,4
68:13,20 70:4
74:19 80:5,13
80:24 81:14
81:17 90:19
91:11,25 92:7
92:13 97:5,13
98:6,18
Smart's (5)
23:11,17 66:15
69:20 80:16
somebody (2)
87:9 99:14
sorry (4)
28:4 61:10
81:2 98:17
sounds (1)
34:20
spaces (1)
96:25
spade (6)
23:2,3,9,10,15
23:16
Sparks (4)
19:13,23 20:5
20:10
speak (2)
34:10,15
speaking (1)
44:11
spear (2)
59:2 91:22

specific (7)
32:21 35:24
43:8,13 50:16
56:6 57:18
specifically (4)
24:5 27:25
29:21 71:2
specificity (10)
17:21 24:13
26:3 30:17,24
31:22 43:22
48:9 52:2
80:18
specified (1)
102:11
speculation (1)
65:7
speech (1)
82:17
spell (1)
43:4
spoke (8)
30:19,25 31:24
43:8,11 48:9
68:15 70:4
spoken (2)
64:5 68:18
SS (1)
105:4
staff (1)
66:11
standing (1)
59:16
stare (1)
22:15
stared (1)
22:8
start (2)
7:23 82:2
starting (1)
37:18
state (17)
1:17 2:7,17 3:7
3:11 19:12
44:23 79:25
80:3 81:15

97:16,21,25
97:25 103:19
105:4,8
stated (1)
73:10
statement (18)
9:2 19:15,19
19:21 27:15
29:24 30:11
32:18 33:2,24
36:16 38:12
38:16 46:6
57:12,15 58:7
99:3
states (5)
1:2 29:4 71:12
73:2 79:23
stating (3)
53:10,12,14
statute (3)
79:13,24 89:9
stole (4)
56:2,8,23
57:17
stood (1)
59:2
stop (3)
96:7,8,14
stopped (6)
36:12 37:15
38:10,11 39:8
39:22
story (3)
100:2,5,6
Street (2)
2:12 3:15
stuff (1)
60:19
Subject (1)
99:12
submitted (2)
90:2,4
Subscribed (1)
102:18
summary (1)
103:18

supervise (1)
65:25
supervising (3)
36:5 55:13
67:12
supervision (4)
54:22 66:12,14
95:3
supervisor (10)
28:14,15,17
35:17 40:10
55:10 63:12
66:18 67:19
94:18
supervisors (3)
29:3 55:20
69:7
supervisory (2)
66:11 98:5
supply (1)
81:7
supposed (1)
34:10
sure (10)
12:23 19:10
21:19 24:11
48:9 68:10
81:9 85:13
90:13 98:14
suspended (2)
31:7,13
sweep (1)
93:6
swept (1)
57:11
sworn (3)
102:5,18
105:11

—————
T
—————
T (5)
3:5 102:2
103:2 105:2,2
TAHIR (2)
1:9 2:10
take (23)

December 17, 2020

Page 119

3:18 6:13
8:15,18 17:23
19:18,22
27:24 33:9,11
33:22 39:17
48:14,15
52:21 59:8
61:24 63:21
66:6,7 90:11
92:22,23
**taken (3)**
1:15 48:18
49:16
**talk (3)**
30:21 34:16
35:7
**talking (3)**
36:21 37:21
57:22
**Tanya (2)**
87:20 88:16
**tape (3)**
22:3 64:8
92:20
**TBV (1)**
98:12
**Teague (10)**
75:8,9,9,13,16
75:19 76:2,11
76:14 103:21
**telephonicall...**
9:15
**tell (27)**
8:21 13:11,19
14:3 16:23
17:12 18:2
25:18,19,23
25:25,25 31:2
34:12,19 42:3
42:22 43:22
44:13 45:4
51:12 62:19
64:19 74:12
84:17,22
88:14
**telling (7)**

22:24 23:2,9
23:15 51:9
88:7,8
**tells (2)**
87:12 90:20
**term (1)**
67:7
**terms (1)**
41:5
**terribly (1)**
77:9
**territory (1)**
80:2
**testified (1)**
3:8
**testify (1)**
102:5
**testimony (8)**
46:23 49:22,24
73:23 74:3
102:6,10
105:13
**thank (1)**
29:2
**theft (5)**
56:13 57:2
58:17 69:3
91:24
**theory (1)**
55:5
**thing (2)**
66:9 73:21
**things (3)**
5:12 35:6
73:16
**think (7)**
7:14 29:7
45:25 48:11
64:24 73:21
99:16
**third (3)**
8:19 22:6
63:15
**Thompson (1...**
2:13 5:20,25
6:19,21 7:10

7:11,13 10:8
10:13 11:2,14
12:22 13:4,15
13:21,23 14:9
14:17,24 15:9
15:21 17:6
21:5,8 24:2
25:8 27:6
29:7 30:13
31:15,20 32:4
32:12 33:4,25
40:16 44:3
47:3 48:6,16
50:24 51:10
51:20 52:6,10
52:18,23
53:18 54:23
57:4,13 58:9
61:3,11,18
62:5 64:10,25
65:4,14 67:8
68:7,22 69:15
69:25 70:16
71:18 72:9,16
73:12 74:4,7
74:22 75:21
76:3 77:16,23
78:16 79:7
80:7 81:19,22
83:2 84:7
85:5,17 86:23
87:17 88:20
89:3,11 90:7
91:17 92:4,16
93:4,9,13,18
94:2,9,24
95:8,21 96:9
97:18,22 98:8
99:4,9,12
100:10,19
101:6
**thought (3)**
25:16 29:11
65:8
**threat (1)**
60:15

**threatening (3)**
42:20 43:5,15
**threats (4)**
58:12,12 68:13
69:2
**three (5)**
29:5 31:4
64:22 65:12
98:23
**Three-page (2)**
103:16,23
**throwing (1)**
52:15
**thrown (1)**
11:11
**ticket (9)**
83:6,7,12,15
83:19,20,24
84:14,17
**time (37)**
1:13 5:3 9:24
10:2,3,23
14:18 17:10
18:13 22:23
23:22 25:11
25:14 26:2
27:11 28:13
29:25 31:23
34:7,19 35:7
43:12,20,25
55:13,16
56:14 57:21
62:21 65:9
66:21 84:11
84:12,16 88:3
88:14 102:10
**times (2)**
19:14 20:9
**tires (2)**
32:10 33:20
**to-do (1)**
60:3
**today (2)**
3:18 73:24
**told (18)**
8:20 9:17

11:18 15:6
20:11 31:12
32:8 33:19
34:8,8 45:4
49:2 53:4
54:8 60:24
62:16 82:8,8
**top (4)**
8:13 63:10
71:12 72:14
**totally (1)**
55:6
**touch (1)**
59:21
**traffic (3)**
4:20,24 75:10
**transcript (2)**
102:9,9
**Traschen (14)**
1:8 2:9 15:4,11
15:14,18 16:2
16:10 70:12
70:22 72:21
77:11 81:24
95:23
**trash (1)**
59:16
**trial (3)**
29:5 43:24
44:2
**true (11)**
27:13 40:2,23
49:11,12
68:24 82:25
83:10 88:17
102:9 105:12
**truth (3)**
36:16 48:5
102:5
**truthful (4)**
26:21 40:14,15
40:22
**truthfulness ...**
26:17 27:21
29:23 40:8
**try (1)**

77:6
trying (3)
21:23 35:23
60:9
TVB (50)
5:8,23 6:5 11:5
12:15,18 13:2
14:8 15:7,8
27:2,5,23
41:25 46:4
47:13,14 49:3
51:7,17 53:7
53:17,25
56:25 58:3
59:17 65:23
67:24 76:15
76:19,20
78:24 80:25
82:6,22 85:8
86:2,4,18,21
87:21,25 89:2
94:8,13,23
95:6 98:16,20
100:25
TVB's (1)
48:14
TVBs (3)
51:18 77:13,20
two (5)
55:12 64:20,21
95:14,17
Two-page (2)
103:8,9
type (2)
19:25 66:9

_____
        U
U.S (1)
79:13
ultimate (1)
52:12
Ultimately (1)
95:2
umbrella (5)
59:17 60:7,8
60:20,23

understand (6)
12:23 32:10
34:13 61:20
68:10 72:11
understandi...
6:21
UNITED (1)
1:2
unprovoked ...
62:13
unruly (2)
34:9,16
use (2)
27:4 92:19
uses (1)
44:10

_____
        V
v (1)
71:11
vaguely (1)
9:13
Vahdat (10)
35:11,13,15
39:2,20,24
70:13,22
72:20 103:13
various (2)
50:14 85:15
verbally (1)
36:10
version (1)
100:2
video (1)
10:10
VIDEOCON...
1:17
videotape (22)
10:4,7,12,18
10:21,24 11:5
11:20 12:20
14:21 15:5
21:3 59:11
64:17 65:20
92:7,12 93:17
94:8,13,23

95:19
view (4)
10:24 12:20
15:4 21:3
viewed (6)
11:20,21 14:14
14:20,21 15:3
Violation (2)
4:20,24
violations (5)
29:5 31:5,8,18
75:11
violence (5)
8:8 69:3 103:8
103:11,17
visit (1)
83:17
visiting (1)
83:16
volume (1)
100:3
voracity (5)
26:17 27:21
29:23 36:16
40:8

_____
        W
wait (1)
3:22,23 7:4
21:11
waiting (3)
37:13 38:6
95:24
want (9)
5:14 7:6 29:14
31:14 82:20
82:24 87:10
92:23 93:6
warned (2)
42:20,23
wasn't (11)
32:14 40:5
46:7 62:18
74:14,16,19
74:20 77:18
93:19 99:2

watch (1)
67:7
way (7)
39:25 49:11
74:15 93:21
97:10,14
105:17
we're (5)
3:17 57:23
81:22 82:2
95:21
wearing (2)
44:24 46:22
Wednesday (1)
37:18
weekly (3)
83:10,13 84:2
weight (1)
79:5
welcome (1)
49:3
weren't (1)
84:12
whatsoever (1)
54:19
WHEREOF ...
105:19
wife (1)
84:20
withdraw (2)
19:2 44:5
Withdrawn (1)
80:8
witness (15)
3:6 13:17,20
21:7,23 52:8
65:3 72:4
73:14 90:16
99:10 101:11
105:10,13,19
witnesses (1)
100:4
word (1)
39:17
words (1)
64:4

work (5)
8:8 15:23
38:19 40:11
40:12
worked (3)
68:4 76:15
97:15
working (1)
58:3
workplace (3)
103:8,11,16
works (1)
86:21
worry (3)
74:14,16,20
worth (1)
40:20
wouldn't (3)
34:3 48:15
87:7
write (2)
40:4 45:18
writing (4)
42:25 43:3
82:20,24
written (9)
23:19 24:20,22
26:13 35:11
38:5 45:21,22
55:18
wrong (2)
6:23 73:17
wrote (7)
12:2,3 16:13
47:8,11 54:4
82:11

_____
        X
X (4)
1:3,12 103:2
104:2

_____
        Y
Yakov (6)
47:20 48:4,12
49:2 50:8
100:17

yeah (4)
7:6 52:11
76:24 90:5
year (1)
91:8
years (1)
17:11
York (14)
1:2,17 2:5,7,13
2:13,18 3:7
3:16 15:8
51:18 68:15
105:4,8

_____ Z _____
zoom (2)
1:16 35:25

_____ 0 _____

_____ 1 _____
1 (2)
19:11,12
10:16 (1)
1:13
100 (1)
56:2
10005 (1)
2:13
10804 (1)
2:5
11 (24)
4:21 5:18 6:5
13:3,9,12
14:4,15,22
15:14,20
16:22 17:9
20:21 21:2
30:7 51:19
62:13 74:2
82:6,15 89:2
92:8,14
11:45 (1)
95:25
11228 (1)
2:18
11230 (1)

3:16
11th (3)
12:19 18:23
21:10
12 (5)
45:7,11 89:21
89:23 103:22
12:07 (1)
95:23
12:15 (2)
96:15 101:10
14th (1)
91:6
15 (3)
18:5,7 103:9
150 (2)
56:24 91:25
1570 (1)
3:15
16-page (1)
103:19
16th (1)
67:10
17 (1)
1:13
17th (1)
2:12
18 (2)
1:6 103:10
18CV2710 (1)
2:19

_____ 2 _____
2 (1)
42:18
20 (7)
16:13 17:19
54:3 64:9
82:11 102:19
103:10
2011 (2)
47:15,20
2012 (4)
47:9 56:7
57:23 91:11
2013 (2)

66:21 67:11
2014 (3)
58:25 73:11
91:9
2015 (32)
4:21 5:18 6:5
13:3,9,12
14:4,15,22
15:15,20
16:13,22 17:9
17:19 18:19
20:21 21:2
29:6 30:7
51:19 53:23
54:3 62:13
74:2 82:6,11
82:15 89:2
92:8,14
103:10
2020 (2)
1:13 105:20
2021 (1)
57:24
20th (2)
18:16 53:22
21 (2)
2:4 29:6
22 (1)
47:20
2710 (1)
1:6
28 (2)
2:12 103:11

_____ 3 _____
3 (6)
22:18,19 29:9
29:12 47:9
104:5
31st (1)
105:20
35 (1)
103:13
36 (3)
75:3,5 103:21
37 (1)

103:14
39 (3)
71:4,6 103:19

_____ 4 _____
4 (1)
29:14
4:30 (1)
5:10
41 (1)
103:15
42SC1983 (2)
79:13,21

_____ 5 _____
5/18/2014 (1)
73:8
522A (1)
2:17

_____ 6 _____
6 (4)
2:17 44:7,7,9
63 (1)
103:17
66 (3)
96:16,18
103:23
67 (4)
63:5,7 103:16
103:18
68 (6)
7:22,22 8:3,6
8:10 103:8
69 (2)
7:18,18

_____ 7 _____
70 (4)
6:14,14,15,17
71 (1)
103:20
73 (3)
41:16,18
103:15
75 (1)
103:21

79 (3)
66:24 67:2
103:18
7th (1)
3:15

_____ 8 _____
8 (2)
73:11 103:8
8:30 (1)
5:10
80 (4)
56:2,23 57:17
91:25
81 (6)
34:25,25 35:3
39:11,15
103:12
82 (3)
37:3,5 103:14
84 (2)
28:3,3
85 (4)
28:4,4,6
103:11
86 (1)
3:2
89 (1)
103:22
8th (3)
11:25 12:7,10

_____ 9 _____
96 (1)
103:23