UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARIO H. CAPOGROSSO,

                Plaintiff,

      -against-                                      Case No. 18 Civ. 2710 (EK)(LB)

ALAN GELBSTEIN, *in his individual capacity*, IDA TRASCHEN, *in her individual capacity*, DANIELLE CALVO, *in her individual capacity*, MARK J.F. SCHROEDER, *in his official capacity as Commissioner of the New York State Department of Motor Vehicles*, SADIQ TAHIR, *in his individual capacity*, PEC GROUP OF NY, INC., and DAVID SMART,

                Defendants.
------------------------------------------------------------------X

## STATE DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

                                                        LETITIA JAMES
                                                        Attorney General
                                                        State of New York
                                                        Attorney for the State Defendants
                                                         28 Liberty Street
                                                        New York, New York 10005
                                                       (212) 416-6556

James M. Thompson
Assistant Attorney General
Of Counsel

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.    JUDICIAL AND QUASI-JUDICIAL IMMUNITY BAR THE FINAL CLAIM ........... 1

    II.    THE PLAINTIFF'S AG LETTER WAS NOT PROTECTED ACTIVITY ................... 4

    III.    THE PLAINTIFF HAS NOT ADDUCED EVIDENCE THAT HIS AG LETTER WAS A BUT-FOR CAUSE OF THE PRACTICE BAN ................................................. 6

    IV.    THE PLAINTIFF'S ACTIONS IN MAY 2015 WOULD HAVE RESULTED IN EXPULSION EVEN IF HE HAD NEVER SENT THE AG LETTER .......................... 7

    V.    INJUNCTIVE RELIEF IS BARRED BY THE TEXT OF SECTION 1983 ................. 9

    VI.    QUALIFIED IMMUNITY SHIELDS THE INDIVIDUAL DEFENDANTS .............. 10

CONCLUSION ............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

Agosto v. N.Y. City Dep't of Educ., 982 F.3d 86 (2d Cir. 2020) ...................................................... 4

Bliven v. Hunt, 579 F.3d 204 (2d Cir. 2009) ................................................................................... 3

Brookings v. Clunk, 389 F.3d 614 (6th Cir. 2004) .......................................................................... 2

Capogrosso v. Gelbstein, No. 18 Civ. 2710, 2019 WL 6406444 (E.D.N.Y. Jan. 30, 2019)
    ("Capogrosso I") ...................................................................................................................... 10

Chris H. v. New York, 764 F. App'x 53 (2d Cir. 2019) .................................................................. 2

Crawford-El v. Britton, 523 U.S. 574 (1998) .................................................................................. 7

Crews v. County of Nassau, 996 F. Supp. 2d 186 (E.D.N.Y. 2014) ............................................... 7

Dean v. Blumenthal, 577 F.3d 60 (2d Cir. 2009) .......................................................................... 10

Finn v. Anderson, 592 F. App'x 16 (2d Cir. 2014) ..................................................................... 2, 4

Finn v. Anderson, No. 12 Civ. 5742, 2013 WL 12085092 (S.D.N.Y. Sept. 6, 2013) ..................... 4

Forrester v. White, 484 U.S. 219 (1988) ......................................................................................... 3

Garcetti v. Ceballos, 547 U.S. 410 (2006) ...................................................................................... 5

Gubitosi v. Kapica, 154 F.3d 30 (2d Cir. 1998) .............................................................................. 8

Hartman v. Moore, 547 U.S. 250 (2006) ........................................................................................ 7

Higginbotham v. Sylvester, 741 F. App'x 28 (2d Cir. 2018) .......................................................... 6

Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106 (2d Cir. 2020) .......................................... 3

Matusick v. Erie Cty. Water Auth., 757 F.3d 31 (2d Cir. 2014) ..................................................... 8

McNamara v. Kaye, No. 06 Civ. 5169, 2008 WL 3836024 (E.D.N.Y. Aug. 13, 2008) ............. 3, 4

Mireles v. Waco, 502 U.S. 9 (1991) ................................................................................................ 2

Morales v. City of N.Y., No. 18 Civ. 1573, 2021 WL 965335 (S.D.N.Y. Mar. 15, 2021) ............. 4

Nieves v. Bartlett, 139 S.Ct. 1715 (2019) ....................................................................................... 6

Odermatt v. N.Y. City Dep't of Educ., 694 F. App'x 842 (2d Cir. 2017) ................................... 5, 6

Ojeda v. Mendez, No. 20 Civ. 3910, 2021 WL 66265 (E.D.N.Y. Jan. 7, 2021) ............................ 2

Rios v. Third Precinct Bay Shore, No. 08 Civ. 4641, 2009 WL 2601303
 (E.D.N.Y. Aug. 20, 2009) ........................................................................................................ 2

Vassiliou v. City of N.Y., No. 18 Civ. 779, 2021 WL 76916 (E.D.N.Y. Jan. 7, 2021) ............... 10

White Plains Towing Corp. v. Patterson, 991 F.2d 1049 (2d Cir. 1993) ........................................ 5


**Statutes**

42 U.S.C. § 1983 ................................................................................................................... 1, 9


**Regulations**

15 N.Y.C.R.R. 124.2 ................................................................................................................. 5

**PRELIMINARY STATEMENT**

The Plaintiff's[1] opposition papers do nothing to undermine two separate conclusions that are each fatal to his case: removing an attorney from practicing before an administrative court is a judicial act protected by absolute immunity, and the decision to bar the Plaintiff from practicing in DMV's administrative courts was predicated on his own aggressive and violent behavior, not on an irrelevant letter sent months before the precipitating incident.  Although the Plaintiff argues that the ban cannot be judicial in nature because his misconduct did not occur during a specific case, there is no law supporting his proposed distinction.  Instead, black-letter law provides that the determining factor is the nature of the defendant's judicial act, not the plaintiff's sanctioned conduct.  As to the merits of the Plaintiff's First Amendment retaliation claim, his AG Letter was not protected speech because it was merely "related to the speaker's own situation" and "calculated to redress personal grievances."  He has adduced no evidence that the AG Letter was a but-for cause of his expulsion, and even if he had, the evidence is clear that his violent behavior in May 2015 would have resulted in expulsion even if the letter had never been sent.  Lastly, the Plaintiff's desired relief is unavailable: injunctive relief is barred by § 1983 because he chose to forego a declaratory action in state court, and monetary relief is barred by qualified immunity.

**ARGUMENT**

**I.     JUDICIAL AND QUASI-JUDICIAL IMMUNITY BAR THE FINAL CLAIM**

As a threshold matter, summary judgment must be granted against the Plaintiff's sole remaining claim, for First Amendment retaliation, because it is barred as a matter of law by absolute judicial and quasi-judicial immunity.  As explained in detail in the State Defendants' moving brief, Dkt. No. 180 (the "State Br.") at 17-21, "judges are accorded absolute immunity

---

[1] For ease of reading, this brief uses the same defined terms as the State Defendants' principal memorandum of law in support of their motion for summary judgment, Dkt. No. 180.

1

from suits for damages arising out of judicial acts performed in their judicial capacities," Ojeda v. Mendez, No. 20 Civ. 3910, 2021 WL 66265, at *2 (E.D.N.Y. Jan. 7, 2021) (Komitee, J.), while quasi-judicial immunity affords similar absolute immunity "to a person whose role is functionally comparable to that of a judge." Chris H. v. New York, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order). The immunity is absolute: it "'is not overcome by allegations of bad faith or malice,' nor can a judge 'be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" Ojeda, 2021 WL 66265 at *2 (quoting Mireles v. Waco, 502 U.S. 9, 11, 13 (1991)). New York state and federal courts have consistently applied absolute judicial and quasi-judicial immunity to bar lawsuits challenging the imposition and adjudication of attorney discipline. See Finn v. Anderson, 592 F. App'x 16, 19 (2d Cir. 2014) (summary order).

This settled law bars the Plaintiff's attempt to sue the Individual Defendants regarding his expulsion from practice before the TVB administrative court.[2] The Plaintiff's opposition does not appear to dispute the law governing judicial immunity, nor does it appear to dispute that the Individual Defendants – at the time an ALJ, a clerk, and the official overseeing the TVB administrative court system – are "person[s] whose role is functionally comparable to that of a judge" for the purpose of quasi-judicial immunity.[3] Chris H., 764 F. App'x at 55; see Opp. at 2-3. Instead, he argues that "[t]he actions taken here . . . were not 'judicial' in nature—but administrative" and that they "were not technically 'attorney discipline,' as the Plaintiff's alleged actions were taken

---

[2] The Plaintiff's opposition attempts to muddy the waters regarding the decision he is challenging, attempting to draw a distinction between "attorney disciplinary proceedings" and "administrative termination of an individual's right to [be] present in a building." Opp. at 4. But his own Complaint makes clear he is demanding the right to practice law before the TVB, not mere access to a building. See Compl. at 21 (demanding "[p]rospective injunctive relief enjoining the Defendants from denying the Plaintiff *the right to practice law in the Traffic Violations Bureau Courts in the State of New York*." (emphasis added)). Magistrate Judge Bloom has repeatedly rejected the Plaintiff's attempt to obfuscate the relief he is seeking. See, e.g., Jan. 10, 2020 Conference Transcript, Dkt. No. 105 at 10:24-25 (rejecting Plaintiff's argument about access to the TVB location and stating "[t]hat has no bearing on this case because, guess what? That's not what this case is about.").

[3] The Plaintiff contends in a heading that "there is, minimally, a disputed issue of material fact as to absolute judicial and quasi-judicial immunity," Opp. at 2, but federal courts regularly treat "[t]he availability of absolute judicial immunity" as "a question of law." Rios v. Third Precinct Bay Shore, No. 08 Civ. 4641, 2009 WL 2601303, at *1 (E.D.N.Y. Aug. 20, 2009) (quoting Brookings v. Clunk, 389 F.3d 614, 617 (6th Cir. 2004)).

2

outside of judicial proceedings, unrelated to the Plaintiff's duties as an attorney, and, in fact, related to the general administration of the building." Opp. at 3-4. The Plaintiff cites no case holding that judicial and quasi-judicial immunity apply only where an attorney's sanctioned conduct occurred inside "judicial proceedings," and the State Defendants are not aware of any.

That's because the Plaintiff has the law wrong: judicial immunity "'is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.'" Bliven v. Hunt, 579 F.3d 204, 209-10 (2d Cir. 2009) (emphasis in the original). Accordingly, "[t]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge." Id. Here, ALJ Gelbstein and Ms. Traschen conferred, weighed the evidence regarding the Plaintiff's long history of violent and abusive behavior, and determined that he should no longer be allowed to practice in TVB proceedings. See Gelbstein Dec. ¶¶ 46-47; Traschen Dec. ¶¶ 12-13. Although they did not conduct a formal hearing regarding the Plaintiff's administrative disbarment, one was not required for immunity to apply: "[t]he fact that a proceeding is 'informal and *ex parte* . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." Bliven, 579 F.3d at 210 (quoting Forrester v. White, 484 U.S. 219, 227 (1988)); accord Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106, 123 (2d Cir. 2020).

If the Plaintiff were correct, judges, clerks, court officials, and grievance committee members would be protected only from suits brought by attorneys disciplined for misconduct in ongoing proceedings, but would be vulnerable to money damages in suits by plaintiffs charged with the myriad other ways in which attorneys can offend, from improper advertising to conflicts of interest to misappropriation of client funds. That is not the law, and courts have consistently found immunity in cases involving attorneys disciplined for actions "taken outside of judicial proceedings." Opp. at 3-4; see, e.g., McNamara v. Kaye, No. 06 Civ. 5169, 2008 WL 3836024, at *1, *7 (E.D.N.Y. Aug. 13, 2008) (absolute immunity barred suit regarding charges of

3

neglecting clients and failing to cooperate with grievance committee); Finn v. Anderson, No. 12 Civ. 5742, 2013 WL 12085092, at *2-3, *8-9 (S.D.N.Y. Sept. 6, 2013) (quasi-judicial immunity barred suit regarding charges relating to, *inter alia*, "client education," "civil rights," "representations plaintiff made in advertisements," and dispute over client fees), aff'd, 592 F. App'x 16 (2d Cir. 2014). Instead, attorney discipline is itself a judicial act, and therefore immunity applies regardless of the specific conduct an attorney is charged with. See McNamara, 2008 WL 3836024 at *6-7 (rejecting argument that "attorney disciplinary proceedings are essentially administrative in nature and, thus, are not 'judicial acts'" as "without merit").

## II.     THE PLAINTIFF'S AG LETTER WAS NOT PROTECTED ACTIVITY

Summary judgment is also warranted because the AG Letter is not protected speech. As discussed in detail in the State Defendants' moving brief, State Br. at 21-24, under the applicable test, "speech that 'principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection." Agosto v. N.Y. City Dep't of Educ., 982 F.3d 86, 95 (2d Cir. 2020). The outcome here turns on the legal question[4] of what standard applies to First Amendment retaliation claims based on attorney speech concerning a tribunal: the State Defendants do not dispute that the AG Letter is protected if the standard pertaining to private citizens applies, while the Plaintiff does not dispute that the AG Letter is unprotected under the standard governing public employees. See Opp. at 5-6 (making no contention that the AG Letter was citizen speech on a matter of public concern).

The public employee standard – which is applied in circumstances beyond the simple public employment context – should apply here. Although there is no controlling precedent

---

[4] The Plaintiff appears to argue that there is "a disputed issue of material fact" as to whether the AG letter could qualify as protected speech. See Opp. at 4-5. However, "whether . . . speech was protected by the First Amendment is a question of law to be decided by the Court." Morales v. City of N.Y., No. 18 Civ. 1573, 2021 WL 965335, at *8 (S.D.N.Y. Mar. 15, 2021).

4

regarding attorney speech, the Second Circuit recently addressed the analysis governing First Amendment retaliation claims by parties that fit into neither category. In Odermatt v. N.Y. City Dep't of Educ., 694 F. App'x 842 (2d Cir. 2017) (summary order), the Circuit considered a claim brought by a graduate student trainee in the New York City Teaching Fellows program. Noting the tension regarding "whether [plaintiff] is properly considered a citizen-speaker, a student, or a public employee," with each category subject to a different standard, the Court concluded that "in the circumstances of this case, the framework used to analyze public employee retaliation claims best fits because the concern for the efficient operation of a government agency that underlies the more limited speech protection in that framework applies." Id. at 845-46. The Odermatt court pointed to Garcetti v. Ceballos, 547 U.S. 410 (2006), which emphasized how "government employers, like private employer, need a significant degree of control over their employees' words and actions . . . for the efficient provision of public services." Id. at 846.[5]

The logic of Odermatt supports the application of the public employee standard to this case, because the "concern for the efficient operation of a government agency that underlies the more limited speech protection in that framework applies with equal force" to the context of the TVB administrative court. Id. at 846. Like all federal, state, and administrative courts, the TVB "need[s] a significant degree of control over [attorneys'] words and actions . . . for the efficient provision of public services." Id. (quoting Garcetti, 547 U.S. at 418); see 15 N.Y.C.R.R. 124.2(a) (TVB attorneys "must conform to the standards of conduct required of attorneys appearing before State courts, and failure to conform to these standards will be grounds for declining to permit his or her continued appearance"). As discussed in detail in the State

---

[5] Odermatt is consistent with other cases in which the Second Circuit has applied the public employee standard for First Amendment retaliation cases outside the public employee context. See, e.g., White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993) (applying public employee standard to private towing company with an "informal arrangement" to provide services, even though it "was not an employee of the State [] and had no formal franchise form or contract with the state").

5

Defendants' moving brief, State Br. at 3-9, 11-13, the Plaintiff had a years-long history of abusive, intimidating, and violent conduct, to the point where eighteen different TVB employees signed a petition saying that "the presence of attorney Mario Capogrosso on our premises constitutes a threat to our physical safety." Petition, Calvo Dec. Ex. 1; see also, e.g., Beer Statement, Gelbstein Dec. Ex. 22 ("Mario Capogrosso has become more aggressive in both his words and demeanor and has been creating an atmosphere of fear and threatening both attorneys and DMV staff."). That behavior by an attorney in the administrative equivalent of a courthouse is manifestly incompatible with "the efficient operation of a government agency" and "the efficient provision of public services," Odermatt, 694 F. App'x at 846, compelling the application of the public employee standard, which bars the Plaintiff's claim.

### III. THE PLAINTIFF HAS NOT ADDUCED EVIDENCE THAT HIS AG LETTER WAS A BUT-FOR CAUSE OF THE PRACTICE BAN

Summary judgment is also warranted because "on the record developed here, a reasonable fact finder could not find that [the Plaintiff's] exercise of his first Amendment right . . . was the 'but-for' cause" of his expulsion. Higginbotham v. Sylvester, 741 F. App'x 28, 31 (2d Cir. 2018) (summary order). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury." Nieves v. Bartlett, 139 S.Ct. 1715, 1722 (2019) (emphasis in the original). The Plaintiff acknowledges this burden, writing that "'but-for' causation 'does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of' the retaliatory motive." Opp. at 12. But he has not even attempted to make that showing, and there is no evidence for the proposition.

The Plaintiff specifies his purported "evidence that the AG Letter was a motivating factor in the decision," id. at 7, namely a single conversation from May 8, 2015 in which ALJ Gelbstein purportedly said, "[c]an't you go practice somewhere else, I saw what you wrote about me that I

6

am complicit and incapable." Opp. at 7; see also Plaintiff's 56.1 Statement, Dkt. No. 235 at 74 (listing this purported statement as the only evidence connecting the AG Letter with the Plaintiff's removal from practice). This single alleged statement, uncorroborated and evidenced only by his own say-so, is the entirety of the Plaintiff's attempt to connect the March 2015 AG Letter to his expulsion after fighting with Defendant Smart two months later.

As a threshold matter, the purported statement concerns ALJ Gelbstein only, and summary judgment should therefore be granted for Ms. Traschen and Ms. Calvo, for whom the Plaintiff has not even purported to offer evidence of retaliatory motive. Cf. Crews v. County of Nassau, 996 F. Supp. 2d 186, 193 (E.D.N.Y. 2014) ("all other defendants are entitled to summary judgment on this claim because there is no evidence establishing that they ever" had required animus).

But this single statement is not enough for a rational jury to make a finding against ALJ Gelbstein, either. Even if credited, it shows at most that the AG Letter was on ALJ Gelbstein's mind several days before the Plaintiff's altercation with Defendant Smart. It does nothing to connect that with the subsequent decision to remove the Plaintiff from practicing law at the TVB. Cf. Crawford-El v. Britton, 523 U.S. 574, 593 (1998) ("proof of an improper motive is not sufficient to establish a constitutional violation—there must also be evidence of causation."). Accordingly, even if the statement could show "some retaliatory animus in the official's mind," summary judgment is still warranted because of the "lack of causal connection between the unconstitutional motive and the resulting harm." Hartman v. Moore, 547 U.S. 250, 260 (2006).

## IV.  THE PLAINTIFF'S ACTIONS IN MAY 2015 WOULD HAVE RESULTED IN EXPULSION EVEN IF HE HAD NEVER SENT THE AG LETTER

Even if the Court were to credit the Plaintiff's statement that Judge Gelbstein mentioned the AG Letter several days before the Plaintiff's fight with Defendant Smart and his subsequent expulsion, and even if the Court were to conclude that this single statement could support a jury

7

finding of First Amendment retaliation, summary judgment is still warranted because the State Defendants "would have undertaken the same adverse [] action even in the absence of the protected conduct." Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 47 (2d Cir. 2014).  Here, there are three separate and sufficient grounds demonstrating that the Plaintiff's aggressive actions would have resulted in his expulsion even if the AG Letter had never been sent:

**First**, the State Defendants took no action for months after the AG Letter, and ultimately barred the Plaintiff from practice only after two intervening events: the May 5, 2015 incident in which the Plaintiff cursed at other attorneys and later said that "if Judge Gelbstein[] was a man he would put a gun to his own head," Gelbstein Dec. Ex. 22; see also Gelbstein Dec. Ex. 20 at 1 (complaint from other attorney that the Plaintiff "is more powerful and strong than me and I am afraid that one day he can physically hurt me."), and the May 11, 2015 incident where the Plaintiff fought with Defendant Smart.  Gelbstein Dec. ¶¶ 46-47; Traschen Dec. ¶¶ 12-13; see Gubitosi v. Kapica, 154 F.3d 30, 33 (2d Cir. 1998) (barring retaliation claim where "it is simply impossible to miss the significant intervening events" between speech and adverse action).

**Second**, the State Defendants took essentially the same action – suspending the Plaintiff from practice indefinitely – in essentially the same manner in 2011, when there was no allegation of protected speech.  See State Br. at 30; Gelbstein Dec. ¶ 23 & Ex. 6.  Although the Plaintiff partly disputes the facts of the 2011 Suspension, cf. Capogrosso Tr. 260:18-21 ("Did I call him a fucking Jew cunt?  I probably called him a fucking something.  I don't remember exactly the words I did."); id. at 272:18-22 (acknowledging encounter with another attorney and that "I got upset [and] threw the punch at the wall"), he acknowledges that the indefinite suspension was imposed in virtually the exact manner as his 2015 Practice Ban.  See Dkt. No. 235 at 32 ("I testify that Gelbstein met with me, and I affirm I was told to leave the building after the incident with Yakov Brody, and . . . Gelbstein told me you're not welcome here anymore.").  The Court

can conclude that the State Defendants would have expelled the Plaintiff even in the absence of protected speech because they did so in 2011, when no protected speech was alleged.

And **third**, the Court can conclude that DMV would have expelled the Plaintiff for his violent behavior even in the absence of the AG Letter because DMV told the Plaintiff it would do so long before the AG Letter was sent.  In connection with the settlement of his 2012 Article 78 proceeding, DMV's counsel warned the Plaintiff that "if and when Mr. Capogrosso appears at a TVB office, he must strictly adhere to the standards of conduct required of attorneys appearing before State courts," that "[t]hreatening conduct[,] . . . verbal threats of physical violence, and verbal abuse including the use of ethnic slurs will not be tolerated," and that "in the event that Mr. Capogrosso commits an act of physical violence, he shall be immediately and permanently barred from appearing on behalf of DMV licensees at TVB offices." Letter to Plaintiff's Counsel, Traschen Dec. Ex. 2 (emphasis in the original).  The Plaintiff knew about these warnings, testifying at his deposition that his counsel "did tell me if you sneeze the wrong way, they're going to throw you out again." Capogrosso Tr. 414:4-6.  There can be no inference of causation from the AG Letter when the State Defendants merely did what they had promised to do long before the letter was ever sent.

## V.     INJUNCTIVE RELIEF IS BARRED BY THE TEXT OF SECTION 1983

As the State Defendants showed in their principal brief, State Br. at 31-33, any injunctive relief in this case is barred by the text of 42 U.S.C. § 1983 itself, which states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The Plaintiff's argument against this statutory bar is, once again, that the individual defendants were not "engaged in 'judicial acts' when expelling the Plaintiff from the building."  In addition to deliberately obfuscating the adverse action at issue in the case, this argument is wrong on the law, as expelling an attorney from practice is a judicial act.  See

9

Section I, above. The Plaintiff also asserts without citing any legal authority that "declaratory relief was unavailable," Opp. at 12, but does not respond to the fact that he "could have commenced an Article 78 proceeding to contest his TVB ban," but "simply chose not to do so." Capogrosso I, 2019 WL 6406444 at *11.

## VI. QUALIFIED IMMUNITY SHIELDS THE INDIVIDUAL DEFENDANTS

Any damages claims against the Individual Defendants must also be dismissed based on qualified immunity, which applies "if officers of reasonable competence could disagree on the legality of the defendant's actions." Vassiliou v. City of N.Y., No. 18 Civ. 779, 2021 WL 76916, at *6 (E.D.N.Y. Jan. 7, 2021) (Komitee, J.). As discussed in Section II, above, the applicable standard for the Plaintiff's First Amendment claim is unclear, since this case "wades in the muddy First Amendment delta between public employees and private citizens." Capogrosso I, 2019 WL 6406444 at *15. Judge Bloom noted at the motion to dismiss stage that it was "premature to rule on the State Defendants' entitlement to qualified immunity at this juncture," but that "it is unlikely that the law was clearly established law in 2015." Id. at *15. The Plaintiff asserts that "this conclusion is incorrect," Opp. at 13, but has cited no authority for the proposition that the law was clearly established, let alone the on-point "decisional law of the Supreme Court and the applicable circuit court" that would be required to defeat qualified immunity.[6] Dean v. Blumenthal, 577 F.3d 60, 68-69 (2d Cir. 2009) (immunity applied where plaintiff "has failed to cite any decision available during the relevant time period in which either this Court or the Supreme Court specifically held" the conduct at issue unlawful). Qualified immunity therefore bars any individual-capacity claims for money damages.

---

[6] In fact, the Plaintiff appears to "acknowledge[] that there is, minimally, an 'unclear standard for First Amendment retaliation in the context of attorney speech,' and 'lack of controlling case law on the subject.'" Opp. at 6.

10

## **CONCLUSION**

For the reasons set forth above, and in their moving papers, Dkt. Nos. 179-229, the State Defendants respectfully request that the Court grant summary judgment in their favor, dismiss the Complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 9, 2021

LETITIA JAMES
Attorney General
State of New York

By: _____
James M. Thompson
Assistant Attorney General
28 Liberty Street
New York, NY  10005
(212) 416-6556
james.thompson@ag.ny.gov

Attorney for the State Defendants
