FIRST CLASS MAIL

quadient

02/03/2022

US POSTAGE $001.76°

2/16/22

2/16/22

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 14 2022 ★

BROOKLYN OFFICE

RECEIVED IN PRO SE OFFICE

FEB 14 2022



NIXIE    061   5E  1        02/11/22
              RETURN TO SENDER
        INSUFFICIENT ADDRESS
          UNABLE TO FORWARD
BC: 11201183299    *0500*042172-00077

Sadiq Tahir
2994 Coney Island Avenue
Brooklyn, NY 11235

**CLERK OF U.S. DISTRICT COURT**
EASTERN DISTRICT OF NEW YORK
225 CADMAN PLAZA EAST
BROOKLYN, NY 11201

OFFICIAL BUSINESS

RECEIVED IN PRO SE OFFICE

FEB 14 2022

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 14 2022 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARIO H. CAPOGROSSO,

                                    Plaintiff,

                    -against-

ALAN GELBSTEIN, *in his individual capacity*,
IDA TRASCHEN, *in her individual capacity*,
DANIELLE CALVO*, in her individual capacity*,
SADIQ TAHIR, PEC GROUP OF NY, INC.,
DAVID SMART, and MARK SCHROEDER,
*in his official capacity as Commissioner of
the New York State Department of Motor Vehicles*,[1]


                                    Defendants.
------------------------------------------------------------------X

**REPORT & RECOMMENDATION
18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

        Attorney Mario H. Capogrosso, proceeding *pro se*, brings this civil rights action pursuant

to 42 U.S.C. §§ 1983 and 1988, alleging that defendants retaliated against him for exercising his

First Amendment rights by permanently barring him from the Traffic Violations Bureau ("TVB")

in May of 2015. Defendant David Smart[2] and defendants Alan Gelbstein, Ida Transchen, Danielle

Calvo, and New York State Department of Motor Vehicles Commissioner Mark Schroeder,

(collectively, "the State Defendants") move for summary judgment on plaintiff's claims against

them pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 178, 179. Plaintiff

opposes the motions. ECF Nos. 246, 258. The Honorable Eric R. Komitee referred defendants'

---

[1] The Court granted the State defendants' request to add DMV Commissioner Mark Schroeder in his official
capacity regarding plaintiff's claim for prospective injunctive relief pursuant to Rule 25(d) of the Federal
Rules of Civil Procedure. See ECF Nos. 96, 104.

[2] The Court notes with gratitude that Davis Polk & Wardwell LLP appears as pro bono counsel for *pro se*
defendant Smart for the limited purpose of his motion for summary judgment. See ECF Nos. 162, 167–68.

1

motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).[3] For the

reasons set forth below, it is respectfully recommended that defendants' motions for summary

judgment should be granted.

## FACTS[4]

The following facts are taken from plaintiff's complaint, ECF No. 1 ("Compl."),

defendants' Local Civil Rule 56.1 Statements of Facts,[5] and the exhibits filed by defendants with

their summary judgment briefing.[6] Even though plaintiff is an attorney, defendants provided

plaintiff with requisite notice to a *pro* se litigant opposing summary judgment under Local Rule

56.2. See ECF Nos. 178-8, 182.

---

[3] This case, originally assigned to the Honorable Margo K. Brodie, was reassigned to the Honorable Eric R. Komitee. See Feb. 11, 2020 Order.

[4] Unless otherwise stated, the facts are undisputed.

[5] See ECF No. 178-7, Smart's Rule 56.1 Statement ("Smart's 56.1 Stmt.") and ECF No. 181, State Defendants' Rule 56.1 Statement ("State Defs' 56.1 Stmt."). Plaintiff files counterstatements. ECF No. 239, Plaintiff's Counterstatement to Smart's Rule 56.1 Statement ("Pl. Opp'n Smart's 56.1 Stmt.") and ECF No. 235, Plaintiff's Counterstatement to the State Defendants' Rule 56.1 Statement (Pl. Opp'n State Defs' 56.1 Stmt."). The Court deems admitted only those facts in defendants' Rule 56.1 statements that are supported by admissible evidence and not controverted by the record. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). The Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5.

[6] State defendants' counsel filed exhibits to the instant motion as separate ECF entries, making this docket difficult to follow. In the future, Mr. Thompson shall file motions as a single ECF entry with attachments. In the interest of clarity, documents in the record can be located as follows: with their motion, the State Defendants filed Danielle Calvo's Declaration ("Calvo Decl."), ECF No. 183, with Exhibits 1–6, ECF Nos. 184–89, Alan Gelbstein's Declaration ("Gelbstein Decl."), ECF No. 190, with Exhibits 1–26, ECF Nos. 191–216, Ida Traschen's Declaration ("Traschen Decl."), ECF No. 217, with Exhibits 1–9, and James Thompson's Declaration ("Thompson Decl."), ECF No. 220, with Exhibits 1–9, ECF Nos. 221–29. Defendant Smart attaches Maura Douglas' Declaration ("Douglas Decl."), ECF No. 178-2, with Exhibits 1–4, ECF No. 178-3–6 to his motion. Plaintiff attaches Exhibits A–T, W–Z, and AA–EE. ECF Nos. 235-2–6, 236–38, 248–56, 259–265 to his opposition to defendants' motions. The Court has thoroughly reviewed the record.

The instant action arises out of plaintiff's bar from the Traffic Violations Bureau ("TVB") in May 2015. Compl. ¶¶ 5, 11. Plaintiff began representing motorists at the TVB in 2005. Compl. ¶ 3; ECF No. 221, Plaintiff's Deposition Transcript, ("Pl. Dep."), 18:13–18, 21:15–23.[7] The TVB is a division within the Department of Motor Vehicles ("DMV"), an agency of New York State, and proceedings within the TVB are overseen by Administrative Law Judges ("ALJs"). See generally, N.Y. Traffic Law §§ 225 et seq.

In 2009, the DMV began to receive complaints about plaintiff's behavior at the TVB. State Defs' 56.1 Stmt. ¶ 9; Gelbstein Dec. ¶ 7 ("I received more complaints about Plaintiff than I received about any other attorney in my entire time at DMV"); Calvo Dec. at ¶¶ 2–6 (describing plaintiff yelling obscenities at clerks and other attorneys); Traschen Dec. ¶ 7.[8]

On January 6, 2011, eighteen Brooklyn South TVB employees signed a petition stating that "the confrontations [with plaintiff] have been escalating," and that they felt plaintiff's presence at the TVB "constitutes a threat to [their] physical safety." ECF No. 195 ("the Petition"); see State Defs' 56.1 Stmt. ¶ 13; Gelbstein Dec. ¶ 13, Calvo Dec. ¶ 6. After receiving the petition, then-

---

[7] Plaintiff's deposition transcript is formatted as two separate entries: ECF Nos. 221–22. As the page numbers are continuous, reference is made to "Plaintiff's Deposition."

[8] These complaints, from other attorneys, TVB staff, and third-party witnesses, include allegations of plaintiff making verbal threats, yelling obscenities and ethnic slurs, and plaintiff's physically aggressive, threatening behavior. See Gelbstein Dec. Exs. 1–4. For example: "I fear for my safety… I no longer feel comfortable at my place of employment," ECF No. 193, Complaint by TVB Clerk Marisol Cervoni; "[Plaintiff] called me a variety of vulgar and profane names and threatened me with violence…. I was especially nervous because I am 6 months pregnant and I was in fear his outbursts would turn violent," ECF No. 194, Complaint by Attorney Diantha Fuller. Plaintiff acknowledges that confrontations occurred and admits he raised his voice but denies using profanity and states that he does not recall "hitting" anyone. See Pl. Dep. 148:15–150:6, 168:22–24, 175:11–176:8, 206:16–206:23, 211:9–223:20. He acknowledges making physical contact during altercations on occasion. See Pl. Opp'n State Defs' 56.1 Stmt ¶ 10 ("I affirm, upon personal knowledge, bumping into [Tanya Rabinovich]."); contra Pl. Dep. 149:24–150:6 (plaintiff states he does not recall making contact with Rabinovich).

Administrative Law Judge ("ALJ") Alan Gelbstein[9] and Supervising ALJ Vahdatlamas advised plaintiff that if he "did not conduct himself appropriately," he would not be allowed to appear on behalf of motorists at the TVB. Gelbstein Dec. ¶ 14.

On December 21, 2011, plaintiff was involved in another incident in which he used anti-Semitic language towards one attorney and then "punched the air" near another attorney's face. Id. at ¶ 9; see ECF No. 196 (email from ALJ Vahdatlamas, memorializing the investigation following the event); ECF Nos. 197–200 (statements from four attorneys who witnessed the incident). Plaintiff admits to using threatening language and "[throwing] the punch at the wall." Pl. Dep. 260:18–21, 272:18–22, 306:22–307:06. After obtaining plaintiff's version of events, Gelbstein, Vahdatlamas, and Neil Schoen, the Deputy Commissioner for Legal Affairs, determined that plaintiff would be suspended from practicing at any TVB location for three months, and from practicing at the Brooklyn South location indefinitely. Gelbstein Dec. ¶ 19.

On April 12, 2012, plaintiff commenced an Article 78 proceeding challenging his suspension. See Capogrosso v. N.Y. State Dep't of Motor Vehicles, Index No. 7738/2012 (Sup. Ct. Kings Cty.). The parties eventually reached a settlement, and the DMV agreed to lift plaintiff's suspension upon his completion of an anger management course. Pl. Dep. 321:12–322:20. Plaintiff was allowed to resume practice at the TVB on the condition that he "strictly adhere to the standards of conduct required of attorneys appearing before State courts." ECF 219. Further, the DMV warned plaintiff that "in the event that Mr. Capogrosso commits an act of physical violence, he

---

[9] Gelbstein, now retired, was a Senior Administrative Law Judge at the New York State DMV TVB at the time of the events giving rise to this action. Gelbstein Dec. ¶ 1. Gelbstein reported to Supervising ALJ Bushra Vahdatlamas, who in turn reported to Ida Traschen, the First Assistant Counsel, who oversaw the entire TVB system on a state-wide basis at the time. Id. at ¶ 5; Traschen Dec. ¶ 6. Traschen retired from her position as First Assistant Counsel in 2017. Traschen Dec. ¶ 1.

shall be immediately and permanently barred from appearing on behalf of DMV licensees at TVB offices." Id. at 2; see Pl. Dep. at 414:4–6.

Plaintiff returned to the Brooklyn South TVB mid-2012 and soon after, he and David Smart, a security guard at TVB, employed by the private security firm PEC Group of NY, Inc. ("PEC"), made complaints against one another. See Pl. Dep. at 344:5–345:2 (plaintiff recounts complaining about Smart to Gelbstein), id. at 412:19–21 (same); ECF No. 202 (Workplace Violence Report stating that plaintiff accused Smart of "looking at him" and that a police officer had to intervene); ECF No. 204 (Smart complains that plaintiff deliberately walked into him).[10] Others also filed complaints about plaintiff's aggressive behavior at the TVB. Gelbstein Dec. ¶ 27–34; see, ECF No. 203, 205–07, 209.[11]

On March 20, 2015, plaintiff sent a letter (hereinafter, "the AG Letter") to Assistant Attorney General ("AAG") Elizabeth Prickett-Morgan of the New York State Office of the Attorney General,[12] complaining that, *inter alia*, Smart was tampering with plaintiff's files, that Smart had "gotten in [his] face, stared and glared," and that Smart had gestured in plaintiff's direction. ECF No 227. Plaintiff's letter further complained that Gelbstein failed to respond to his complaints about Smart. Id. Gelbstein and Traschen became aware of the letter but did not respond to it or take any action because, in their view, the letter contained "stale claims" that plaintiff had

---

[10] Plaintiff does not deny that he walked into Smart but denies that it was deliberate if he did. Pl. Dep. 354:12–355:22.

[11] Plaintiff, again, does not deny that these incidents took place, but denies that he was the aggressor. In his Opposition to State Defendants' 56.1 Statement, he repeatedly writes "[w]here is the proof of 'verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs' … There is none, I see no proof." Pl. Opp'n State Defs' 56.1 Stmt ¶¶ 25, 26, 27, 28, 29, 33, 34, 35, and 36.

[12] It is not clear why plaintiff sent the letter to Prickett-Morgan. In his deposition, he states that "on Google for a correspondence address, Prickett-Morgan's name was attached to [the Office of the Attorney General]." Pl. Dep. 410:14–413:22.

previously raised to Gelbstein. State Defs' 56.1 Stmt ¶ 32; Gelbstein Dec. ¶¶ 36–37; Traschen Dec. ¶ 10.

On May 5, 2015, plaintiff was involved in another incident at the TVB. Reports of the incident state that plaintiff began yelling when Sadiq Tahir, another lawyer who practiced at the TVB, touched his bag. ECF Nos. 210–13 (witness statements and Workplace Violence Report).[13] Less than a week later, on May 11, 2015, plaintiff and Smart got into an argument and plaintiff shoved Smart; Smart left the scene and filed a report with the police. See ECF Nos. 214–16 (witness statements and Workplace Violence Report); Calvo Dec. ¶ 15. Plaintiff does not deny that an incident took place, but states that "Smart approached [plaintiff] for no reason" and that plaintiff "tried to avoid an altercation." Pl. Opp'n Smart's 56.1 Stmt. ¶ 17. Gelbstein was not at the TVB when the incident happened, but Danielle Calvo, a Supervising Motor Vehicle Representative, called Gelbstein to inform him of the incident. Calvo Dec. ¶ 14.[14] Gelbstein directed Calvo to call Traschen and Traschen advised Calvo to escort plaintiff out of the TVB. Gelbstein Dec. ¶ 46. In the presence of police, Calvo asked plaintiff to leave the premises. Calvo Dec. ¶ 14. Smart left the TVB with the police to file a report regarding the incident. Id. ¶ 15.

Later that day, Gelbstein and Traschen discussed the incident and concluded that plaintiff should be permanently barred from the TVB considering his history of aggressive behavior, the fact that his suspension and anger management classes had not tempered his outbursts, and that plaintiff had already been explicitly warned that any incident of physical violence would lead to his permanent bar from the TVB. Gelbstein Dec. ¶¶ 46–47; Traschen Dec. ¶¶ 12–13. Plaintiff

---

[13] Plaintiff does not dispute that there was a dispute between him and Tahir but claims that Tahir initiated the argument. ("Maybe I told Tahir leave my bag alone." Pl. Dep. 450:17–454:19). Tahir and two witnesses cite plaintiff as the aggressor in filed statements. ECF Nos. 210–12.

[14] Calvo was a "Supervising Motor Vehicle Representative 2" at the TVB from June 2012 until February 2016, when she left for a position in the Office of Court Administration. Calvo Dec. ¶ 6.

claims defendants barred him from the TVB in retaliation for his exercise of his "First Amendment Rights [to] criticize the way [Gelbstein] administered his official office." Compl. ¶ 42. Gelbstein and Trachen state that plaintiff's letter to the AG "played no role in this decision to bar the Plaintiff from [TVB] practice." State Defs' 56.1 Stmt. ¶ 42.

## PROCEDURAL HISTORY

Plaintiff filed the instant complaint against defendants on May 8, 2018. ECF No. 1. Proof of service was filed for Calvo, Gelbstein, Morgan, and Smart on June 8, 2018 and for Traschen, Vahdatlamas, and PEC Group of NY, Inc. ("PEC"), on July 27, 2018. ECF Nos. 10, 24.[15] *Pro se* defendants Smart and Tahir answered plaintiff's complaint and raised a counterclaim against plaintiff. ECF Nos. 6–7. Smart and Tahir's counterclaims were dismissed on October 17, 2018. ECF No. 50.[16]

The State Defendants[17] moved to dismiss plaintiff's complaint, ECF No. 42, and Judge Brodie referred the motion to me for a Report and Recommendation. See Nov. 5, 2018 Order. I

---

[15] PEC never appeared in this action.

[16] Defendant Tahir has not appeared since the Court held a pre-motion conference on August 2, 2018. Starting February 12, 2019, mail sent to Tahir's address has been returned to the Court as undeliverable. See, ECF Nos., 56, 58, 64, 80, 87, 92, 95, 97, 98, 100, 112, 115, 116, 130, 132, 141, 156, 160, 165, 169, 172, 176, 240, 269, 276, and 277.

[17] In addition to Gelbstein, Traschen, and Calvo, plaintiff also named state defendants Elizabeth Morgan (formerly Elizabeth Prickett-Morgan), Jean Flanagan, Boshra Vahdatlamas, and Vincent Palmieri.

recommended that the State Defendants' motion should be granted in part and denied in part[18] and the Court adopted the Report and Recommendation. ECF No. 71.[19]

Plaintiff filed an amended complaint, ECF No. 74, but voluntarily withdrew the amended complaint and the Court set a deadline for the parties to complete discovery. ECF No. 82.[20] Plaintiff requested that the Court order defendant Commissioner Schroeder be produced for a deposition and that defendant Smart be ordered to respond to his interrogatories. ECF No. 147. The Court granted defendant Schroeder's request for a protective order pursuant to Federal Rule of Civil Procedure 26(c), ECF No. 146, and directed plaintiff to provide his outstanding interrogatories to the Court for review. ECF No. 148. Discovery closed on December 22, 2020.[21] Defendant Smart and the State Defendants now move for summary judgment, ECF Nos. 178–79, and plaintiff opposes the motions, ECF Nos. 246, 258.

---

[18] I recommended that the State Defendants' motion to dismiss should be granted as to plaintiff's due process, Section 1985, and Section 1986 claims, as well as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. I recommended that the State Defendants' motion to dismiss plaintiff's First Amendment retaliation claim against Gelbstein, Calvo, and Traschen should be denied without prejudice. Lastly, I recommended that the State Defendants' motion to dismiss plaintiff's claims for prospective injunctive relief against Gelbstein, Calvo, and Traschen should be denied. See ECF Nos. 51–53.

[19] Defendant Smart moved to dismiss the complaint, ECF No. 57, and the Court denied his motion without prejudice "because Smart [had] not stated a proper basis to dismiss the Complaint against him." ECF No. 72.

[20] Plaintiff requested to enter TVB premises to conduct discovery, ECF No. 91, and the Court denied his request, ECF No. 104. Plaintiff moved for reconsideration of the Court's Order denying his request to enter the TVB, ECF No. 106, and the Court denied his motion, ECF No. 108. Although the Court made a room in the Brooklyn Courthouse available for depositions in this matter, ECF No. 111, the national emergency caused by the emergence of the COVID-19 pandemic in March 2020 led to the depositions being conducted remotely. See ECF Nos. 118, 131.

[21] The Court directed *pro se* defendant Smart to respond to plaintiff's interrogatories by February 12, 2021. ECF No. 154. When Smart did not timely respond, the Court held a telephone conference, swore Smart to the truth of his testimony, and Smart answered plaintiff's interrogatories orally on the record. See ECF Nos. 159, 162–63. The Court had a transcript of the conference made part of the record.

## DISCUSSION

### I. Standard of Review

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also, Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

If the moving party meets its burden in establishing the absence of any genuine issue of material fact, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.

1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

Although plaintiff proceeds *pro se* and courts generally read the papers of *pro se* litigants liberally, Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006), plaintiff is a licensed attorney in New York and Connecticut. Compl. ¶ 2. *Pro se* attorneys are not entitled to the solicitude afforded to other *pro se* litigants. See Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all."); Holtz v. Rockefeller & Co., 258 F.3d 62, 82 n.4 (2d Cir. 2001) (*pro se* attorneys are not entitled to the special consideration courts customarily grant *pro se* parties).

## II. The State Defendants

### A. Judicial Immunity and Quasi-Judicial Immunity

Plaintiff claims that defendants Calvo, Gelbstein, and Traschen, in their individual capacities, retaliated against him in violation of his First Amendment rights.[22] The State Defendants move for summary judgment on the ground that the decision to bar plaintiff from practice at TVB offices was attorney discipline, a judicial act, and thus the State Defendants are protected by judicial and quasi-judicial immunity. The Court agrees.

It is well settled that judges generally have "absolute immunity from suits for money damages for their judicial actions" and thus "even allegations of bad faith or malice cannot overcome judicial immunity." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). However, judges are not immune from liability if the action was taken in the complete absence of jurisdiction or "if the action in question is not judicial in nature, as when the judge performs an administrative, legislative, or executive act." Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2005).

---

[22] His claim against Commissioner Schroeder is in his official capacity.

Judicial immunity also extends to "certain others who perform functions closely associated with the judicial process." See McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2010) (summary order) (citing Oliva v. Heller, 839 F.2d 37, 39 (2d Cir. 1988) (internal citations omitted)); Chris H. v. New York, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order) (quasi-judicial immunity affords similar absolute immunity "to a person whose role is functionally comparable to that of a judge.") (internal quotations omitted). Indeed, "[a]bsolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual officer." Heller, 839 F.2d at 39 (quoting Cleavinger v. Saxner, 474 U.S. 193, 201 (1985)).

Administrative Law Judges (ALJs) like Gelbstein have absolute judicial immunity. Butz v. Economou, 438 U.S. 478, 513 (1978); see also Nash v. Califano, 613 F. 2d 10, 15 (2d Cir. 1980) ("ALJs enjoy absolute immunity from liability in damages for actions taken in their quasi-judicial capacity"); Walker v. NYS Justice Ctr. for the Prot. of Special Needs, 493 F. Supp. 3d 239, 248 (S.D.N.Y. 2020) ("[ALJs] perform adjudicatory functions within a government agency, and as such [are] entitled to absolute immunity"); Stankovic v. Smith, No. 12-cv-2457 (DLI) (RER), 2012 WL 3597760, at *7 (E.D.N.Y. Aug. 20, 2012) ("Judges, including ALJs, have absolute immunity…").

Additionally, courts have held that court clerks and senior court administrative employees are an "integral part of the judicial process" and are entitled to absolute immunity. Jackson v. Pfau, No. 9:10-CV-1484 (GTS) (DEP), 2011 WL 13127988, at *9 (N.D.N.Y. May 12, 2011), aff'd, 523 Fed. App'x. 736 (2d. Cir. 2013) (summary order) (affirming the finding that the actions of an attorney in the Division of Court Operations for the Office of Court Administration and Chief and Associate Clerks were judicial in nature or closely related to the judicial process); see McKeown

v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2010) (summary order) (Office of Court Administration employees are protected by quasi-judicial immunity in decision not to initiate attorney disciplinary proceedings because "prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles."). Defendant Traschen served as the DMV's First Assistant Counsel and oversaw the TVB system across the state. Defendant Calvo was a supervising clerk at the Brooklyn South TVB. Both defendants Traschen and Calvo were thus immune from suit when performing functions closely associated to judicial functions.

The State Defendants are empowered by statute to regulate the conduct of attorneys appearing in DMV proceedings. See 15 N.Y.C.C.R. § 124.2(a) ("Any person representing the motorist must conform to the standards of conduct required of attorneys appearing before State courts, and failure to conform to these standards will be grounds for declining to permit his or her continued appearance..."). Thus, defendants' action barring plaintiff from the TVB was not taken in the absence of jurisdiction.

Moreover, barring an attorney from practice in a tribunal is a judicial act. Libertarian Party v. Cuomo, 970 F.3d 106, 124 (2d Cir. 2020) ("the act of disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case is a judicial act"). There need not be a formal hearing for immunity to apply. Bliven, 579 F.3d at 210 (that a decision is "informal and ex parte . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character") (quoting Forrester v. White, 484 U.S. 219, 227 (1988)). Accordingly, the State Defendants are immune from plaintiff's § 1983 suit for damages arising from his bar from the TVB.

In his opposition, plaintiff attempts to characterize the decision to bar him from practicing law in the TVB as an administrative act regarding "an individual's right to [be] present in a building." ECF No. 258, Plaintiff's Opposition Memorandum to State Defendants' Motion ("State Opp'n") at 4. However, this action is not about plaintiff's right to enter the TVB building, but his bar from representing motorists at the TVB. See Compl. at ¶ 16 ("[plaintiff] had a property and/or liberty interest in practicing his profession in the [TVB]"), ¶ 72 ("[plaintiff] had a right to practice his profession in the TVB Court").[23] The State defendants disciplined plaintiff for his conduct and attorney discipline decisions are "judicial acts." McNamara v. Kaye, No. 06-CV-5169 (DLI) (CLP), 2008 WL 3836024, at *1 (E.D.N.Y. Aug. 13, 2008). Accordingly, I recommend that the Court should grant the State Defendants' motion for summary judgment on the ground that the State Defendants are immune from plaintiff's suit for monetary damages under § 1983.

## B. First Amendment Retaliation

The State Defendants additionally argue that, even if they were not immune from suit, they would be entitled to summary judgment on plaintiff's First Amendment Retaliation claim. The Court agrees.

To determine the appropriate test for a First Amendment claim under Section 1983, the court must consider whether the claim is being made by a public employee or a private citizen. To survive a motion for summary judgment on a First Amendment retaliation claim, a public

---

[23] Plaintiff spills a great deal of ink arguing about due process and whether he was given an opportunity to challenge his bar from the TVB. However, as stated in the Court's decision on the State Defendants' motion to dismiss, his opportunity to challenge the bar was through an Article 78 proceeding. Plaintiff was aware of this: he challenged his prior suspension through Article 78. Moreover, plaintiff's claims that defendants were obligated to investigate his version of the incidents and the many complaints about him is without basis. See ECF No. 235-2, Deposition of Alan Gelbstein ("Gelbstein Dep.") at 50:10–17 ("Q: So, how could I have responded to what he said against me; you are a judge am I right? A: I'm not a judge with regard to interactions between the various attorneys in the Office. I'm a judge with regard to motorists, police officers and specific charges against them.)"

13

employee plaintiff must set forth evidence demonstrating "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 106–07 (2d Cir. 2001). "For public employees, speech that 'principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection.'" Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 95 (2d Cir. 2020) (quoting Montero v. City of Yonkers, 890 F.3d 386, 399–400 (2d Cir. 2018).

For a private individual plaintiff to survive a motion for summary judgment on a First Amendment retaliation claim, he must set forth evidence demonstrating: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right. Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998). As discussed in my previous Report and Recommendation, ECF No. 51, plaintiff, an attorney practicing before a State administrative tribunal, does not fall squarely into either category. However, the Court need not resolve which standard applies here since plaintiff's claim for First Amendment retaliation fails under either standard.[24]

As to the second element of the public employee standard, even assuming, *arguendo*, that plaintiff's letter to Assistant Attorney General Prickett Morgan constituted protected speech (a big

---

[24] Plaintiff's Opposition states that "this Court's previous decision [...] seems to indicate that it viewed the plaintiff as a 'private citizen.'" State Opp'n at 6. This is incorrect. The Report and Recommendation states "*For the purposes of this motion*, plaintiff's letter to Morgan is protected by the First Amendment." ECF No. 51 at 16 (emphasis added).

assumption on this record),[25] there is no evidence of a causal relationship between plaintiff's letter and plaintiff's permanent bar from the TVB. Similarly, as to the second element of the private citizen test, plaintiff has proffered no evidence of defendants' improper motive beyond his own conclusory statements. "[S]pecific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Indeed, plaintiff has not provided *any* specific proof that the State Defendants were motivated by an improper retaliatory purpose in barring him from the TVB.

Meanwhile, the State Defendants proffer a litany of complaints about plaintiff's aggressive behavior. Although plaintiff wishes to litigate the "who said what" of his interpersonal disputes in federal court, see ECF No. 237 (plaintiff responds to the State Defendants' exhibits, giving his side of each complaint made against him), the record demonstrates that many individuals, including TVB staff and other attorneys, reported feeling unsafe at the TVB because of plaintiff's behavior.[26] One report states that plaintiff was "more often than not[,] a menace to the office," Gelbstein Dec. ¶ 41 (quoting, ECF No. 211, Rivers Statement); another describes plaintiff as causing an "atmosphere of fear," id. at ¶ 42 (quoting ECF No. 212, Beer Statement). Moreover, plaintiff's behavior was deteriorating. Id. at ¶ 27. It was not one incident, but the culmination of many incidents and complaints that led to plaintiff's bar from the TVB.

---

[25] Plaintiff attempted to raise an issue about "Jewish ticket brokers" he saw in Gelbstein's Office at defendants' depositions. See e.g., Gelbstein Dep. at 83:5–24; ECF No. 235-5, Deposition of Danielle Calvo ("Calvo Dep.") at 65:15–68:23. However, this is irrelevant to plaintiff's retaliation claim as the letter to the AG contains no mention of these allegations. See also Pl. Dep. at 418:21–23 (A: I think Gelbstein is as corrupt as they come…"). Plaintiff's AG Letter manifestly relates to his own situation, to "redress personal grievances." Agosto, 982 F.3d at 95 (quoting Montero, 890 F.3d at 399–400.

[26] Even if plaintiff successfully demonstrated that some of the complaints against him were unreliable and should not have been considered by the defendants, it would not help him overcome the primary deficiency in his case—a lack of evidence that he was retaliated against because of his letter to AAG Prickett Morgan.

Prior to plaintiff sending his letter to AAG Pricket Morgan, plaintiff was suspended from practice at TVB due to his aggressive and harassing behavior. Plaintiff was explicitly warned that he would be barred from the TVB if "[he] commits an act of physical violence." ECF No. 219 at 2. Even with that warning, plaintiff could not abide by the conditions of his reinstatement. Plaintiff was a proverbial powder keg waiting to blow. Defendants did not have to wait for something worse to happen to take disciplinary action against him.

Plaintiff offers only his suspicion that the AG letter was the true cause of his bar. He states that Gelbstein allegedly asked him to "go practice elsewhere" and that Gelbstein was "conveniently, if not purposefully, not present in the Brooklyn TVB" on the morning of May 11, 2015. State Opp'n at 7.[27] Plaintiff's speculation is insufficient to overcome defendants' motions. See Perez de Leon-Garritt v. State Univ. of N.Y., 785 F. App'x 896, 899 (2d Cir. 2019) (summary order) (affirming summary judgment because plaintiff did not provide specific proof that defendants were motivated by retaliatory purpose). As there is no record evidence that plaintiff's letter to the AG motivated defendants to bar him from the TVB, I recommend that the State Defendants' motion for summary judgment should be granted.

## C. Injunctive Relief

Plaintiff's complaint also demands injunctive relief, to enjoin the State Defendants from denying plaintiff "the right to practice law in the [TVB]." Compl. at p. 21. Section 1983 provides, however, that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Plaintiff could have sought declaratory relief by filing an Article 78 proceeding in the New York Supreme Court. As was previously stated, plaintiff

---

[27] Plaintiff's conclusory conspiracy theory that Gelbstein and Traschen arranged for Smart to provoke plaintiff on the day he was barred is without any record support. See Calvo Dep. 11:8–12.

was well aware of Article 78 proceedings as he challenged his prior suspension. There is nothing in the record that reflects an Article 78 proceeding was unavailable to plaintiff regarding his bar from TVB. As he did not seek declaratory relief, his demand for injunctive relief should be denied.

## III. Defendant Smart

Defendant Smart moves for summary judgment on the grounds that he is not a state actor. The Court agrees. Smart, a private security guard, did not act under color of state law, and therefore, his motion for summary judgment should be granted.[28]

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege (1) the deprivation of rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was "committed by a person acting under the color of state law." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002). If a private individual's conduct is "fairly attributable to the State," that individual can be sued as a state actor under § 1983. Filarsky, 566 U.S. 838; see Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). There must be "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003), cert. denied, 539 U.S. 942 (2003). Indeed, private action may be deemed governmental when (1) private

---

[28] Smart also argues that he did not violate plaintiff's First Amendment rights. See Smart Memorandum of Law in Support ("Smart Supp. Mem.") at 11–13. As Smart was not acting under color of state law, the Court need not reach this argument. However, the Court notes that there is no evidence in the record to support plaintiff's conclusory assertions that Smart engaged in any retaliatory action against him.

actors are jointly engaged with state actors to deprive a person of constitutional rights, <u>Dennis v. Sparks</u>, 449 U.S. 24, 27–28 (1980); (2) where the state compels the act, <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982); (3) or when the state delegates a public function to a private entity, <u>West v. Atkins</u>, 487 U.S. 42, 55-56.

Generally, private security guards are not state actors. <u>Bishop v. Toys "R" Us—NY LLC</u>, 414 F. Supp. 2d 385 (S.D.N.Y. 2006); <u>Guiducci v. Kohl's Dept. Stores</u>, 320 F. Supp. 2d 35, 37-38 (E.D.N.Y. 2004) (collecting cases). However, private guards may be sued (1) "when they are given the authority of state law" or (2) "if they are willful participants in the joint activity of the State or its agents." <u>Id.</u> at 37. For example, a private security guard may act under state law if he is delegated state authority as a deputized "special patrolman," see <u>Rojas v. Alexander's Dep't Store, Inc.</u>, 654 F. Supp. 856, 858 (E.D.N.Y. 1986), or if he acts in tandem with police officers, see <u>Brooks v. Santiago</u>, No. 93 Civ. 206 (HB), 1998 WL 107110, at *4 (S.D.N.Y. Mar. 10, 1998). However, a private security guard providing information to police officers who then make an arrest does not constitute action under color of state law. See <u>Ginsberg v. Healey Car & Truck Leasing, Inc.</u>, 189 F.3d 268, 272 (2d Cir. 1999); <u>Orellana v. Macy's Retail Holdings, Inc.</u>, 2018 WL 3368716, at *18 (S.D.N.Y. July 1, 2018). Nor does the fact that a private employee works in a state building transform him into a state actor. <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 840 (1982).

Here, although Smart worked in a state building, he was employed by a private security company. Plaintiff argues that "if [Smart] was in fact a participant in the occurrences and decision that led to Plaintiff's administrative removal and preclusion from return to the TBV building, his conduct is automatically considered as part of the State's." ECF No, 258, Plaintiff's Opposition Memorandum to Smart's Motion ("Smart Opp'n.") at 2. That is not the law. Mere participation in an event that led to a state action does not confer the authority of state law on Smart.

Moreover, plaintiff fails to establish that Smart was involved in the decision to bar plaintiff from the TVB. Indeed, Smart was not even involved with removing plaintiff from the TVB. Plaintiff fails to show that Smart was compelled to act by the state on May 11, 2015, or that any public function was delegated to Smart. Plaintiff provides no evidence to support his theory that Smart was involved in the decision to bar him from the TVB. Plaintiff's "self-serving affidavit that merely reiterates conclusory allegations in affidavit form . . . [is] insufficient to preclude summary judgment." Pressley v. City of New York, No. 11-cv-3234 (PKC)(RER), 2016 WL 1271480, at *3 (E.D.N.Y. Mar. 31, 2016). Therefore, I recommend that the Court should grant defendant Smart's motion for summary judgment.

## IV. State Law Claims Defendants PEC Group of NYC, Inc. and Sadiq Tahir

Plaintiff's complaint contains two remaining state law claims: "filing a false report" against Tahir, Compl. at ¶¶ 89–94, and "negligent hiring and training" against PEC, the private security company that employed Smart, Compl. at ¶¶ 95–101. A Court may decline to exercise jurisdiction over state-law claims once it dismisses all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c). Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed, the 'state claims should be dismissed as well.'" In re Merrill Lynch Ltd. Partnerships Litig., 154 F.3d 56, 61 (2d Cir. 1998) (quoting Gibbs, 383 U.S. at 726); see Valencia v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) ("'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors [...] will point toward declining to exercise jurisdiction over the remaining state law claims.'") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). "[A]bsent exceptional circumstances," where federal claims are disposed of on summary judgment grounds, courts should abstain from exercising pendent jurisdiction. Rafano v. Patchogue-Medford School Dist., No. 06 Civ. 5367 (JFB) (ARL), 2009 WL 789440, at

*13 (E.D.N.Y. Mar. 20, 2009) (quoting <u>Walker v. Time Life Films, Inc.</u>, 784 F.2d 44, 53 (2d Cir. 1986)). Here, there are no exceptional circumstances, and the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

## CONCLUSION

For the reasons set forth herein, it is respectfully recommended that defendants' motions for summary judgment should be granted and plaintiff's complaint should be dismissed. Plaintiff's state law claims should be dismissed without prejudice.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. <u>See</u> Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. <u>Marcella v. Capital Dist. Physicians' Health Plan, Inc.</u>, 293 F.3d 42 (2d Cir. 2002); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989); <u>see</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____

LOIS BLOOM
United States Magistrate Judge

Dated: February 1, 2022
     Brooklyn, New York