UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARIO H. CAPOGROSSO,

                Plaintiff,

       -against-                               Case No. 18 Civ. 2710 (EK)(LB)

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, MARK J.F.
SCHROEDER, *in his official capacity as Commissioner
of the New York State Department of Motor Vehicles*,
SADIQ TAHIR, *in his individual capacity*, PEC GROUP
OF NY, INC., and DAVID SMART,

                Defendants.
------------------------------------------------------------------X

## STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

LETITIA JAMES
Attorney General
State of New York
Attorney for the State Defendants
28 Liberty Street
New York, New York 10005
(212) 416-6556

James M. Thompson
Assistant Attorney General
Of Counsel

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

STANDARD OF REVIEW ...................................................................................... 3

ARGUMENT .......................................................................................................... 4

    I.     MAGISTRATE JUDGE BLOOM CORRECTLY FOUND THAT THE INDIVIDUAL STATE DEFENDANTS ARE PROTECTED BY JUDICIAL AND QUASI-JUDICIAL IMMUNITY ............................................................... 4

    II.    THE R&R CORRECTLY FOUND THAT THE PLAINTIFF FAILED TO ESTABLISH CAUSATION ............................................................................ 8

    III.   MAGISTRATE JUDGE BLOOM CORRECTLY FOUND THAT INJUNCTIVE RELIEF IS BARRED BY THE PLAIN LANGUAGE OF SECTION 1983 ............... 10

    IV.   SUMMARY JUDGMENT IS WARRANTED ON ADDITIONAL GROUNDS THE R&R DID NOT REACH ........................................................................... 11

          A.    The Plaintiff Would Have Been Barred From Practice As An Attorney Even If The AG Letter Had Never Been Sent............................................ 12

          B.    The Plaintiff's AG Letter Was Not Protected Speech ........................... 15

          C.    The Individual State Defendants Are Shielded By Qualified Immunity ............. 18

    V.    THE PLAINTIFF'S SUPPLEMENTAL OBJECTIONS ARE UNTIMELY AND WITHOUT MERIT ................................................................................... 20

CONCLUSION ..................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

Adirondack Trans. Lines, Inc. v. Utd. Transp. Union, Local 1582, 305 F.3d 82 (2d Cir. 2002) . 11

Agosto v. N.Y. City Dep't of Educ. 982 F.3d 86 (2d Cir. 2020)................................................. 16

Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d 343 (E.D.N.Y. 2015) ............................................ 21

Aigbekaen v. Fu, No. 18 Civ. 6529, 2021 WL 1176167 (E.D.N.Y. Mar. 29, 2021).................... 18

Bliven v. Hunt, 579 F.3d 204 (2d Cir. 2009)............................................................................ 4, 7

Butz v. Economou, 438 U.S. 478 (1978) ....................................................................................... 4

Caidor v. Onondaga Cty., 517 F.3d 601 (2d Cir. 2008) ............................................................. 21

Capogrosso v. Gelbstein, No. 18 Civ. 2710, 2019 WL 4686448 (E.D.N.Y. Sept. 25, 2019)
    ("Capogrosso II") ................................................................................................................ 9, 11

Capogrosso v. Gelbstein, No. 18 Civ. 2710, 2019 WL 6406444 (E.D.N.Y. Jan. 30, 2019)
    ("Capogrosso I") ................................................................................................. 11, 16, 17, 19

Carlone v. Lamont, No. 21-871, 2021 WL 5049455 (2d Cir. Nov. 1, 2021) ................................ 1

Crawford-El v. Britton, 523 U.S. 574 (1998) ................................................................................. 9

Finn v. Anderson, 592 F. App'x 16 (2d Cir. 2014) .................................................................... 5, 7

Finn v. Anderson, No. 12 Civ. 5742, 2013 WL 12085092 (S.D.N.Y. Sept. 6, 2013) ................... 6

Forrester v. White, 484 U.S. 219 (1988)....................................................................................... 7

Garcetti v. Ceballos, 547 U.S. 410 (2006).................................................................................. 18

Gentile v. State Bar of Nev., 501 U.S. 1030 (1991) ................................................................... 18

Gonzalez v. City of Schenectady, 728 F.3d 149 (2d Cir. 2013)................................................. 18

Grief v. Nassau Cty., 246 F. Supp. 3d 560 (E.D.N.Y. 2017)...................................................... 21

Hartman v. Moore, 547 U.S. 250 (2006) .................................................................................. 8, 9

Johnson-El v. DeProspo, No. 20 Civ. 2878, 2020 WL 5350487 (S.D.N.Y. Sept. 3, 2020) ......... 10

Klein v. City of New York, No. 10 Civ. 9568, 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012) ........ 3

Krakowski v. Am. Airlines, Inc., 610 B.R. 714 (S.D.N.Y. 2019) ................................................. 11

Lederman v. N.Y. City Dep't of Parks & Rec., 731 F.3d 199 (2d Cir. 2013) .............................. 21

Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106 (2d Cir. 2020)................................... 5, 6, 7

Lin v. City of New York, No. 14 Civ. 9994, 2016 WL 6962536 (S.D.N.Y. Nov. 28, 2016)........ 3

Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001) ............................................................................ 11

Malley v. Briggs, 475 U.S. 335 (1986)....................................................................................... 19

Martinez v. Hasper, No. 15 Civ. 5724, 2022 WL 130506 (E.D.N.Y. Jan. 12, 2022).................. 19

Matusick v. Erie Cty. Water Auth., 757 F.3d 31 (2d Cir. 2014) ................................................. 12

McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121 (2d Cir. 2010) ....... 4, 5

McNamara v. Kaye, No. 06 Civ. 5169, 2008 WL 3836024 (E.D.N.Y. Aug. 13, 2008)................ 6

MKTG, Inc. v. Oceanside Ten Holdings.com, LLC, No. 18 Civ. 953, 2019 WL 6711459
    (E.D.N.Y. Dec. 10, 2019) ...................................................................................................... 21

Morales v. City of N.Y., No. 18 Civ. 1573, 2021 WL 965335 (S.D.N.Y. Mar. 15, 2021) .......... 16

Mullenix v. Luna, 577 U.S. 7 (2015) .......................................................................................... 19

Nieves v. Bartlett, 139 S.Ct. 1715 (2019) .................................................................................... 8

Norman v. MTA, No. 13 Civ. 1183, 2014 WL 4628848 (E.D.N.Y. Sept. 15, 2014).................... 2

Odermatt v. N.Y. City Dep't of Educ., 694 F. App'x 842 (2d Cir. 2017)............................. 17, 18

Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415 (2d Cir. 2009) ..................... 19

Perez de Leon-Garritt v. SUNY, 785 F. App'x 896 (2d Cir. 2019)................................................. 9

Rose v. Partnow, No. 21 Civ. 3968, 2022 WL 504392 (E.D.N.Y. Feb. 18, 2022).................. 4, 10

Rossbach v. Montefiore Med. Ctr., No. 19 Civ. 5758, 2021 WL 930710
    (S.D.N.Y. Mar. 11, 2021) ...................................................................................................... 15

Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020)..................................................................... 9

Telfair v. Le Pain Quotidien U.S., No. 16 Civ. 5424, 2017 WL 1405754
    (S.D.N.Y. Apr. 18, 2017)......................................................................................................... 3

Tracy v. Freshwater, 623 F.3d 90 (2d Cir. 2010) .......................................................................... 1

Wagschal v. Skoufis, 442 F. Supp. 3d 612 (S.D.N.Y. 2020)....................................................... 19

White Plains Towing Corp. v. Patterson, 991 F.2d 1049 (2d Cir. 1993)...................................... 17

White v. Pauly, 137 S.Ct. 548 (2017) .......................................................................................... 18

Zaretsky v. Maxi–Aids, Inc., No. 10 Civ. 3771, 2012 WL 2345181 (E.D.N.Y. June 18, 2012) ... 2

**Statutes**

28 U.S.C. § 636 ................................................................................................................................ 3

42 U.S.C. § 1983 ......................................................................................................................... 2, 10

**Rules**

Fed. R. Civ. P. 72 .................................................................................................................. 3, 20, 21

**Regulations**

15 N.Y.C.R.R. 124.2 ........................................................................................................................ 5

Defendants Danielle Calvo, Alan Gelbstein, and Ida Traschen, in their individual

capacities, and New York State DMV[1] Commissioner Mark J.F. Schroeder, in his official

capacity, respectfully submit this memorandum of law in response to the objections filed by

Plaintiff Mario Capogrosso, Dkt. No. 282 (the "Objections") and Dkt. No. 283 (the

"Supplemental Objections"), to the Report and Recommendation issued by Magistrate Judge

Lois Bloom on February 1, 2022.  Dkt. No. 278 (the "R&R").  For the reasons stated below, the

R&R correctly found that the State Defendants are entitled to judgment as a matter of law, and

should be adopted in full.

## PRELIMINARY STATEMENT

Although the *pro se* attorney Plaintiff's[2] objections to Magistrate Judge Bloom's Report

and Recommendation are 65 pages in length (plus an additional set of supplemental objections

filed two days later), there is much less to them than meets the eye.  The vast majority of the

purported "objections" set forth in these filings are not proper objections as defined by the

applicable federal law and rules, consisting of nothing more than a laundry list of various

quotations from the R&R, each followed by a conclusory statement such as "I object to these

facts," "I oppose this conclusion, it is not true," or "There is a triable issue as to material fact, it

is not undisputed."  E.g., Objections at 4, 6, 14.  The Objections then move on to various factual

assertions about one exhibit or another, virtually all of which were copied-and-pasted from the

Plaintiff's original affirmation in opposition to the summary judgment motion.  Compare, e.g.,

Objections at 21-23 with Dkt. No. 235 at 26-30; Objections at 24 with Dkt. No. 235 at 31-32;

---

[1] For ease of reading, this memorandum of law utilizes the same defined terms as in the State Defendants moving and reply briefs in support of their motion for summary judgment, Dkt. Nos. 180 & 274.

[2] Under the settled law of the Second Circuit, the Plaintiff is not actually a *pro se* litigant in any meaningful sense. As an attorney licensed in New York and Connecticut, the Plaintiff "does not receive the 'special solicitude' typically afforded to *pro se* litigants because 'a lawyer representing himself ordinarily receives no such solicitude at all.'"  Carlone v. Lamont, No. 21-871, 2021 WL 5049455, at *1 (2d Cir. Nov. 1, 2021) (summary order) (quoting Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010)); see R&R at 10.

1

Objections at 26 with Dkt. No. 235 at 35.  Nowhere in this litany of rehashed allegations and objections does the Plaintiff address the substance of the Report and Recommendation, let alone explain which facts he deems material and how they would undermine Magistrate Judge Bloom's legal conclusions.

The Plaintiff does not even attempt to discuss the law until Page 60 of his Objections, and even then he does not address anything that Magistrate Judge Bloom actually wrote.  Instead, he again simply copies-and-pastes several large sections from the same memorandum he submitted in opposition to the State Defendants' summary judgment motion.  Compare, e.g., Objections at 60-62 with Dkt. No. 246 at 2-4; Objections at 62-63 with Dkt. No. 246 at 7.  This is no basis to overturn a reasoned Report and Recommendation, particularly given the stringent standard of review: "[w]here 'the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error.'"  Norman v. MTA, No. 13 Civ. 1183, 2014 WL 4628848, at *1 (E.D.N.Y. Sept. 15, 2014) (quoting Zaretsky v. Maxi–Aids, Inc., No. 10 Civ. 3771, 2012 WL 2345181, at *1 (E.D.N.Y. June 18, 2012)).

Magistrate Judge Bloom did not err – not clearly, and not at all.  She correctly concluded that the three individual State Defendants – an administrative law judge, a clerk, and the official overseeing the TVB system of administrative courts – were protected by judicial and quasi-judicial immunity on matters concerning attorney discipline.  She correctly concluded that the Plaintiff's central claim of First Amendment Retaliation failed because "plaintiff has not provided *any* specific proof that the State Defendants were motivated by an improper retaliatory purpose."  R&R at 15.  And she correctly held that injunctive relief was unavailable under the explicit terms of 42 U.S.C. § 1983, because the Plaintiff could have sought declaratory relief in a state-court Article 78 proceeding, but chose not to.  Even if the Court were to disagree on one or more of these points, summary judgment would still be warranted on three grounds that

2

Magistrate Judge Bloom did not reach in her R&R (because she did not need to): DMV would have taken the same action even in the absence of any First Amendment activity, the letter at issue was not protected speech, and the individual State Defendants are shielded by qualified immunity.

## STANDARD OF REVIEW

Where a magistrate judge issues a report and recommendation with respect to a dispositive motion, the procedure and standards for resolution of such motion by the district court are governed by 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  Upon issuance of a report and recommendation, any party may make objections, but such objections must be "written" and "specific."  Fed. R. Civ. P. 72(b)(2).  Other parties are then permitted to respond to an objecting party's objections.  Id.  Upon receipt of the report and recommendation and objections by the district court, the report and recommendation is "reviewed for clear error, save that, where a party submits specific objections to the report and recommendation, the district court reviews *de novo* the magistrate judge's determination on issues *specifically* objected to."  Lin v. City of New York, No. 14 Civ. 9994, 2016 WL 6962536, at *3 (S.D.N.Y. Nov. 28, 2016) (emphasis added).  See also Fed. R. Civ. P. 72(b)(3) (*de novo* review applies only to those aspects of the magistrate's report and recommendation that are "properly objected to").  "But when the objections simply reiterate previous arguments or make only conclusory statements, the court should review the Report and Recommendation for clear error.  This is so even in the case of a *pro se* plaintiff."  Telfair v. Le Pain Quotidien U.S., No. 16 Civ. 5424, 2017 WL 1405754, at *1–2 (S.D.N.Y. Apr. 18, 2017) (citations omitted); see also Klein v. City of New York, No. 10 Civ. 9568, 2012 WL 546786, at *2 (S.D.N.Y. Feb. 21, 2012) ("to trigger de novo review, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate judge's report.").

## ARGUMENT

I.  **MAGISTRATE JUDGE BLOOM CORRECTLY FOUND THAT THE INDIVIDUAL STATE DEFENDANTS ARE PROTECTED BY JUDICIAL AND QUASI-JUDICIAL IMMUNITY**

The Report and Recommendation correctly concluded that summary judgment was warranted "on the ground that the decision to bar plaintiff from practice at TVB offices was attorney discipline, a judicial act, and thus the State Defendants are protected by judicial and quasi-judicial immunity."  R&R at 10.  As Magistrate Judge Bloom noted, "[i]t is well settled that judges generally have 'absolute immunity from suits for money damages for their judicial actions' and thus 'even allegations of bad faith or malice cannot overcome judicial immunity.'" Id. (quoting Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009)).  Similarly, "[j]udicial immunity also extends to 'certain others who perform functions closely associated with the judicial process.'").  Id. at 11 (quoting McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2010) (summary order)).

The three individual State Defendants were an Administrative Law Judge, a court clerk, and DMV's First Assistant Counsel, the official overseeing the TVB system of administrative courts.  See R&R at 4 n.9, 10-11.  The Supreme Court has long recognized that Administrative Law Judges qualify for judicial immunity, see, e.g., Butz v. Economou, 438 U.S. 478, 513 (1978), and it is also well-settled that clerks and court administrative officials are protected by quasi-judicial immunity when performing roles linked to the judicial process.  See, e.g., McKeown, 377 F. App'x at 124 (affirming dismissal of claim against New York State Office of Court Administration attorneys based on decision regarding attorney discipline); Rose v. Partnow, No. 21 Civ. 3968, 2022 WL 504392, at *2 (E.D.N.Y. Feb. 18, 2022) (Komitee, J.) (dismissing claims for money damages against law secretary and special referee).  Magistrate Judge Bloom correctly found that the individual State Defendants were persons "performing functions closely associated to judicial functions," R&R at 11-12, and the Plaintiff has not

4

disputed that point.  See Objections at 60-62.

Similarly, it is well-established that attorney discipline is a judicial function, to which immunity applies.  See, e.g., Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106, 124 (2d Cir. 2020); Finn v. Anderson, 592 F. App'x 16, 19 (2d Cir. 2014) (summary order); McKeown, 377 F. App'x at 124.  The State Defendants are expressly authorized to perform that judicial function, as "any person representing the motorist [in a TVB administrative tribunal] must conform to the standards of conduct required of attorneys appearing before State courts, and failure to conform to these standards will be grounds for declining to permit his or her continued appearance in the proceeding."  15 N.Y.C.R.R. 124.2(a); accord R&R at 12 ("The State Defendants are empowered . . . to regulate the conduct of attorneys appearing in DMV proceedings.").  The Plaintiff's Objections acknowledge that "attorney disciplinary proceedings" are judicial acts, Objections at 60-61, and do not dispute that the State Defendants had the legal authority to discipline attorneys practicing before the TVB.

Instead, the Plaintiff argues that DMV's decision to ban him from practicing law before its administrative tribunal for repeated aggressive and violent behavior was "not technically attorney discipline, as the Plaintiff's alleged actions were taken outside of judicial proceedings, unrelated to the Plaintiff's duties as an attorney, and, in fact, related to general administration of the building."[3]  Objections at 61.  Based on this assertion, he argues that the State Defendants' actions "were not 'judicial' in nature—but administrative," and therefore are not subject to judicial immunity.  Id.  This assertion, which Magistrate Judge Bloom has already rejected, is wrong for two separate reasons.

First, the Plaintiff's argument is based on a misrepresentation regarding the nature of the

---

[3] Like virtually all of the material in the Objections, the Plaintiff's discussion of the immunity issue was copied-and-pasted verbatim from his summary judgment opposition papers.  Compare Objections at 60-62 with Dkt. No. 246 at 2-4.  The immunity section of his Objections does not actually discuss the legal analysis in the Report and Recommendation at any point.  See Objections at 60-62.  Accordingly, it should be reviewed only for clear error.

government decision at issue.  The action that the State Defendants took (and the action the Plaintiff challenged in his Complaint) was not "administrative termination of an individual's right to [be] present in a building," Objections at 61, but rather a decision to bar the Plaintiff from practicing as a lawyer before DMV's administrative tribunal.  Magistrate Judge Bloom recognized this red herring in her Report and Recommendation, emphasizing that "this action is not about plaintiff's right to enter the TVB building, but his bar from representing motorists at the TVB," and citing paragraphs in the Complaint asserting the Plaintiff's "property and/or liberty interest in practicing his profession in the [TVB]" and his "right to practice his profession in the TVB Court."  R&R at 13 (citing Compl. ¶¶ 16, 72).  This case has never been about the Plaintiff's ability to enter a DMV facility; it has always been about his ability to practice there as an attorney.[4]  And "the act of disbarring an attorney as a sanction for the attorney's contumacious conduct . . . is a judicial act."  Libertarian Party, 970 F.3d at 124.

Secondly, the Plaintiff is simply wrong on the law.  He has cited no case holding that judicial or quasi-judicial immunity applies only where an attorney's conduct occurred in what he terms "judicial proceedings."  Objections at 61.  And this court rejected a similar argument in McNamara v. Kaye, No. 06 Civ. 5169, 2008 WL 3836024 (E.D.N.Y. Aug. 13, 2008).  See id. at *7 ("Plaintiff argues that . . . attorney disciplinary proceedings are essentially administrative in nature and thus, are not 'judicial acts.'  This argument is without merit.").  Notably, McNamara involved conduct outside a specific judicial proceeding, namely "neglect[ing] client matters" and failing to cooperate with a subsequent Grievance Committee investigation.  See id. at *1; see also Finn v. Anderson, No. 12 Civ. 5742, 2013 WL 12085092, at *2-3, *8-9 (S.D.N.Y. Sept. 6, 2013) (quasi-judicial immunity barred suit regarding charges relating to, inter alia, "client

---

[4] In fact, the Plaintiff has been allowed the ability to access DMV facilities on the same basis as any other New Yorker, even after his ban from practice.  See Aff. of Claudio Collins, Dkt. No. 101 Ex. B (discussing Plaintiff's unannounced visit to the same TVB facility where he used to practice, and his successful request to check his driving record while there.).

education," "civil rights," "representations plaintiff made in advertisements," and dispute over client fees), aff'd, 592 F. App'x 16 (2d Cir. 2014). This outcome is consistent with settled law establishing that "[t]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge." Bliven, 579 F.3d at 209-10. Conversely, the Plaintiff's preferred rule – that the applicability of judicial immunity would depend on the nature of the charges against an attorney – would result in a unworkable and illogical paradigm where judges, court officials, and grievance committee members would be protected only from suits brought by attorneys disciplined for misconduct in ongoing proceedings, but be left vulnerable to money damages in suits brought by plaintiffs charged with the myriad other ways in which lawyers can offend, from improper advertising to conflicts of interest to misappropriation of client funds. That is not, and cannot be, the law.

Lastly, the Plaintiff argues that "[m]y ban from practicing law at all TVBs was not a judicial determination," because "[t]o find a judicial determination, I had to be afforded the ability to present evidence, cross examine witnesses, call witnesses on behalf. [sic]." Objections at 62. The Plaintiff cites no law for this assertion, and it is contrary to controlling precedent establishing that "[t]he fact that a proceeding 'is informal and *ex parte* . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character."[5] Bliven, 579 F.3d at 209-10 (quoting Forrester v. White, 484 U.S. 219, 227 (1988)); accord Libertarian Party, 970 F.3d at 123 ("Nor does a determination as to whether a proceeding is judicial in nature depend on the formality or informality with which it was conducted, or on whether the proceeding was adversary or *ex parte*.").

---

[5] As Magistrate Judge Bloom noted in the Report and Recommendation, "Plaintiff spills a great deal of ink arguing about due process and whether he was given an opportunity to challenge his bar from the TVB. However, . . . his opportunity to challenge the bar was through an Article 78 proceeding." R&R at 13 n.23. The Plaintiff was aware of this procedure and its guarantees of due process, having filed an Article 78 proceeding to challenge his previous suspension from practice, but chose not to do so. Id.

Ms. Traschen and ALJ Gelbstein considered complaints about an attorney's conduct, weighed the evidence – including the Plaintiff's long history of violent and abusive behavior and the many previous warnings he was given – and determined that he should no longer be allowed to practice law in TVB administrative proceedings.  See Gelbstein Dec., Dkt. No. 179 ¶¶ 46-47; Traschen Dec., Dkt. No. 217 ¶¶ 12-13.  That determination – no matter its level of formality – is attorney discipline, and cannot give rise to a claim for money damages.  See R&R at 13 ("The State defendants disciplined plaintiff for his conduct and attorney discipline decisions are judicial acts." (quotation omitted)).

## II.    THE R&R CORRECTLY FOUND THAT THE PLAINTIFF FAILED TO ESTABLISH CAUSATION

Summary judgment is also warranted on the merits, because no rational jury could find that the Plaintiff adduced sufficient evidence to establish the causation element of his retaliation claim.  See R&R at 14-15 (finding that "there is no evidence of a causal relationship between plaintiff's letter and plaintiff's permanent bar from the TVB").  To have a viable claim of First Amendment retaliation, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury."  Nieves v. Bartlett, 139 S.Ct. 1715, 1722 (2019) (quotation omitted).  "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury."  Id. (emphasis in the original).  "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  Id. (citing Hartman v. Moore, 547 U.S. 250, 260 (2006)).  The Plaintiff has failed to make this required showing; instead, as Magistrate Judge Bloom noted, "plaintiff has not provided *any* specific proof that the State Defendants were motivated by an improper retaliatory purpose in barring him from the TVB."  R&R at 15 (emphasis in the original).

The Plaintiff's Objections do not credibly contest this conclusion.  The section of the

Objections responding to Magistrate Judge Bloom's holding on the retaliation issue does not

actually address her analysis at all, but instead copies-and-pastes from the Plaintiff's

memorandum of law and Judge Brodie's opinion adopting Magistrate Judge Bloom's report and

recommendation granting in part the State Defendants' earlier motion to dismiss.[6] Compare

Objections at 62-63 with Dkt. No. 24 at 7.  The Objections point to only one item that the

Plaintiff contends is evidence of but-for causation: a May 8, 2015 conversation – uncorroborated

and evidenced only by the Plaintiff's own say-so – in which ALJ Gelbstein approached him and

said "[c]an't you go practice somewhere else, I saw what you wrote about me, that I am

complicit and incapable."  Objections at 62-63.  As Magistrate Judge Bloom noted, this single

statement "is insufficient to overcome defendants' motions" because it "d[oes] not provide

specific proof that defendants were motivated by retaliatory purpose."[7]  R&R at 16 (citing Perez

de Leon-Garritt v. SUNY, 785 F. App'x 896, 899 (2d Cir. 2019) (summary order)).  And even if

that single statement were credited, it at most establishes animus, but because it does nothing to

connect that alleged animus to any actual retaliatory act, Plaintiff's claim would nonetheless fail

for want of any evidence of causation.  Cf. Crawford-El v. Britton, 523 U.S. 574, 593 (1998)

("proof of an improper motive is not sufficient to establish a constitutional violation—there must

also be evidence of causation.").  Accordingly, even if the statement could show "some

retaliatory animus in the official's mind," summary judgment was still warranted because of the

"lack of causal connection between the unconstitutional motive and the resulting harm."

Hartman v. Moore, 547 U.S. 250, 260 (2006); see R&R at 16 ("there is no record evidence that

---

[6] The Plaintiff's selective quotations from Capogrosso II are disingenuous and inapposite: Judge Brodie did not "conclude" anything regarding retaliation, but merely stated that the Plaintiff's allegations were "sufficient, on a motion to dismiss."  Objections at 61-62 (quoting Capogrosso v. Gelbstein, No. 18 Civ. 2710, 2019 WL 4686448 at *10 (E.D.N.Y. Sept. 25, 2019)).

[7] Moreover, the purported statement is relevant solely to ALJ Gelbstein – Plaintiff has not even attempted to identify any evidence at all with respect to Ms. Traschen or Ms. Calvo.  Cf. Tangreti v. Bachmann, 983 F.3d 609, 612 (2d Cir. 2020) ("the plaintiff must directly [] prove that each government official-defendant, through the official's own individual actions, has violated the Consituttion.").

plaintiff's letter to the AG motivated defendants to bar him from the TVB").

## III.   MAGISTRATE JUDGE BLOOM CORRECTLY FOUND THAT INJUNCTIVE RELIEF IS BARRED BY THE PLAIN LANGUAGE OF SECTION 1983

The Report and Recommendation also correctly found that any injunctive relief was barred due to the Plaintiff's failure to challenge his expulsion from practice in a state court proceeding in which declaratory relief was available.  R&R at 16-17.  As this Court recently noted, "Congress enacted such immunity by amending 42 U.S.C. § 1983 to provide that 'any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'"  Rose v. Partnow, No. 21 Civ. 3968, 2022 WL 504392, at *2 (E.D.N.Y. Feb. 18, 2022) (Komitee, J.) (quoting Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996)).  Here, declaratory relief was manifestly available to the Plaintiff in the form of an Article 78 proceeding in New York Supreme Court – a fact that the Plaintiff was well aware of, as he had filed an Article 78 proceeding to contest his prior suspension from practice in 2012, resulting in a negotiated settlement allowing him to conditionally return to practice after completing training in anger management.  See Plaintiff's Article 78 Petition, Dkt. No. 224; cf. R&R at 16-17 ("As was previously stated, plaintiff was well aware of Article 78 proceedings as he challenged his prior suspension.").  Yet Plaintiff failed to commence such a proceeding to challenge his DMV's decision to bar him from practice.  Accordingly, he is precluded from seeking injunctive relief by way of Section 1983.  Cf. Johnson-El v. DeProspo, No. 20 Civ. 2878, 2020 WL 5350487, at *5 n.3 (S.D.N.Y. Sept. 3, 2020) (injunctive relief precluded "because Plaintiff can seek judicial review of [the challenged] decision in a proceeding under Article 78 of the New York Civil Practice Law and Rules in the New York Supreme Court").

10

The Plaintiff's Objections do not dispute that declaratory relief was available to him in an Article 78 proceeding, but instead claim that he did not pursue such a proceeding because it "would not afford me the ability to recover [] lost revenue as well as monies lost south as a result to damages my reputation as an attorney practicing at the TVB. [sic]"  Objections at 63.  In other words, Plaintiff admits that he chose not to seek Article 78 relief, and his purported reasons for failing to do so do not alter the fact that declaratory relief was available to him.  Cf. Capogrosso v. Gelbstein, No. 18 Civ. 2710, 2019 WL 6406444, at *11 (E.D.N.Y. Jan. 30, 2019) ("Capogrosso I") ("Although an Article 78 proceeding may not allow plaintiff to seek monetary damages, such a proceeding has still been held to 'constitute[] a wholly adequate post-deprivation hearing for due process purposes.'" (quoting Locurto v. Safir, 264 F.3d 154, 176 (2d Cir. 2001)), R&R adopted, 2019 WL 4686448 (E.D.N.Y. Sept. 25, 2019).  Having made a conscious decision to forego declaratory relief in state court, the text of Section 1983 prevents the Plaintiff from seeking it here.

## IV.   SUMMARY JUDGMENT IS WARRANTED ON ADDITIONAL GROUNDS THE R&R DID NOT REACH

In addition to the reasons discussed above, summary judgment would also be warranted for three additional reasons set forth in the State Defendants' moving papers, which Magistrate Judge Bloom found unnecessary to reach in her Report and Recommendation.  A reviewing court is "entitled to affirm the [court below] on any ground for which there is support in the record," not just the ones relied upon in the decision being reviewed.  Adirondack Trans. Lines, Inc. v. Utd. Transp. Union, Local 1582, 305 F.3d 82, 88 (2d Cir. 2002); accord Krakowski v. Am. Airlines, Inc., 610 B.R. 714, 720 (S.D.N.Y. 2019).  Accordingly, this Court can and should conclude that summary judgment is warranted because the State Defendants would have taken the same action even in the absence of any protected activity, because of the Plaintiff's failure to

demonstrate any speech protected by the First Amendment, and because the individual State

Defendants are entitled to qualified immunity.

> **A.      The Plaintiff Would Have Been Barred From Practice As An Attorney Even
>          If The AG Letter Had Never Been Sent**

Although Magistrate Judge Bloom did not reach the issue due to the Plaintiff's failure to

"provide[] *any* specific proof that the State Defendants were motivated by an improper

retaliatory purpose," R&R at 15 (emphasis in the original), summary judgment is also warranted

because DMV would have barred the Plaintiff from continuing to practice as a lawyer even if he

had never sent the AG Letter.[8]  "[T]he defendant [in a First Amendment retaliation case] has the

opportunity to demonstrate by a preponderance of the evidence that it would have undertaken the

same adverse [] action even in the absence of the protected conduct."  Matusick v. Erie Cty.

Water Auth., 757 F.3d 31, 47 (2d Cir. 2014).  Given the facts adduced at summary judgment, any

rational jury would make that finding.

As Magistrate Judge Bloom noted, "[i]t was not one incident, but the culmination of

many incidents and complaints that led to plaintiff's bar from the TVB."[9]  R&R at 15.  There is

no genuine dispute that reported instances of aggression, intimidation, and violence began all the

way back in 2009, shortly after the Plaintiff began practicing, and only escalated from there.  See

Dkt. Nos. 191-95.  By January 2011, Plaintiff's behavior had deteriorated enough that 18

different employees at the South Brooklyn TVB signed a petition stating that "the presence of

attorney Mario Capogrosso on our premises constitutes a threat to our physical safety."  See Dkt.

No. 195.  Although the TVB leadership, including ALJ Gelbstein, attempted to defuse the

Plaintiff's behavior and warn him of further consequences, see, e.g., Dkt. No. 190 ¶ 14; Dkt. No.

---

[8] The State Defendants raised this issue in pages 28-31 of their moving brief, Dkt. No. 180.

[9] The discussion below only skims the surface of the Plaintiff's years-long history of aggressive and disruptive behavior while practicing at the South Brooklyn TVB.  The facts and supporting evidence are laid out more fully in Magistrate Judge Bloom's thorough opinion, R&R at 2-8, and are extensively detailed in the State Defendants' moving brief, Dkt. No. 180 at 2-15.

196 at 1, Plaintiff finally went too far over the line on December 22, 2011, when he began raving at his fellow attorneys, screaming ethnic slurs, and waving his fists in front of another attorney, threatening that "I could put you in the hospital with just one punch."  Dkt. No. 200; see also Dkt. Nos. 196-99.  Although the Plaintiff disputes aspects of these events, his court filings and deposition testimony acknowledge many of the key facts.  See, e.g, Objections at 21-22; see also, e.g., Capogrosso Tr., Dkt. No. 222 at 272:18-273-3 (acknowledging the December 2011 altercation and that he "got upset" and "threw the punch at the wall"); id. at 260:18-21 ("Did I call him a fucking Jew cunt?  I probably called him a fucking something.  I don't remember exactly the words I did.").  Even if the Plaintiff's version were to be credited, the described conduct is nonetheless manifestly disruptive, abusive and patently inappropriate.  Based on the foregoing reports and incidents, DMV barred the Plaintiff from practicing before the TVB, see Dkt. No. 196, just as it would again in the events giving rise to this action.

The Plaintiff challenged his 2011 expulsion in an Article 78 proceeding in state court, see Dkt. No. 224, and the parties later reached a settlement that allowed the Plaintiff to conditionally return to practice if he successfully completed anger management therapy.  See Dkt. No. 226, Dkt. No. 227 (letter from psychologist affirming that "Mr. Capogrosso has gained insight into the reasons that caused him to act unprofessionally" and that "it is highly unlikely that Mr. Capogrosso would be in a situation like this again."); see also Objections at 22 ("Brody set me up.  I took an anger management course because I did throw a punch in the direction of a wall."). But when the Plaintiff was allowed to return to practicing as a lawyer, he was warned that "[t]hreatening conduct by Mr. Capogrosso . . . will not be tolerated," that threats or abuse would result in "a prohibition from appearing on behalf of DMV licensees at any TVB office" and that "in the event that Mr. Capogrosso commits an act of physical violence, he shall be immediately and permanently barred from appearing on behalf of DMV licensees at TVB offices."  Dkt. No. 219 at 1-2.

That's exactly what happened. The Plaintiff's behavior began to deteriorate again, with DMV receiving complaints about his behavior in incidents dated, May 9, 2014, Dkt. No. 202, October 29, 2014, Dkt. No. 203, and February 3, 2015, Dkt. No. 204. Cf. R&R at 16 ("Even with that warning, plaintiff could not abide by the conditions of his reinstatement. Plaintiff was a proverbial powder keg waiting to blow."). The Plaintiff exploded on May 5, 2015, screaming and cursing at fellow attorneys Sadiq Tahir and Michael Beer about allegedly touching his bags, and later telling Beer that if "Judge Gelbstein[] was a man he would put a gun to his own head." Dkt. No. 212; see also Dkt. No. 210 (Tahir writing that Capogrosso "is more powerful and strong than me and I am afraid that one day he can physically hurt me."). And then, on May 11, 2015, ALJ Gelbstein and Ms. Traschen received numerous credible complaints that the Plaintiff had become physically violent in an altercation with Mr. Smart, a private security guard, and these statements all indicated that the Plaintiff was the aggressor. See, e.g., Workplace violence report, Dkt. No. 214 ("he then pushed David in his chest"); Adinolfi statement, Dkt. No. 215 ("The attack seemed to be unsolicited and David did not defend himself or push Mr. Capogrosso back at all."). Although the Plaintiff insists "that I am not the aggressor," Objections at 46, he acknowledges that there was a confrontation. See Id. at 45.

Given all this history, any rational jury would conclude by a preponderance of the evidence that DMV would have taken the same decision to ban the Plaintiff from practicing after the confrontation with Mr. Smart, whether or not he had sent an irrelevant letter to an unrelated Assistant Attorney General months before.[10] Notably, the State Defendants took no action when the Plaintiff sent his letter to the Attorney General on March 20, 2015, but only took action in

---

[10] As Magistrate Judge Bloom touched on in her R&R, the Plaintiff's decision to send the AG Letter made little sense, as its recipient, Assistant Attorney General Elizabeth Morgan, was not involved in his case and had no supervisory or other power over the DMV. See R&R at 5 n. 12 ("It is not clear why plaintiff sent the letter to Prickett-Morgan. In his deposition he states that 'on Google for a correspondence address, Prickett-Morgan's name was attached to [the Office of the Attorney General].").

May, after receiving complaints about his aggressive behavior to fellow attorneys, being told of his statement that "if Judge Gelbstein[] was a man he would put a gun to his own head," and receiving multiple credible allegations that the Plaintiff was the aggressor in a physical confrontation with a security guard—i.e. reasons entirely unrelated to the letter.  Cf. Rossbach v. Montefiore Med. Ctr., No. 19 Civ. 5758, 2021 WL 930710, at *6–7 (S.D.N.Y. Mar. 11, 2021) (observing that "in the context of a First Amendment retaliation claim under § 1983, . . . an intervening event [is] sufficient to defeat an inference of causation").  Moreover, in banning the Plaintiff from practicing at the TVB, DMV acted according to the intentions stated in the May 15, 2012 letter informing him of the conditions of his reinstatement, a communication made three years before the AG Letter was sent.  See Dkt. No. 219 at 1-2 (declaring that "[t]hreatening conduct by Mr. Capogrosso will not be tolerated" and that "in the event that Mr. Capogrosso commits an act of physical violence, he shall be immediately and permanently barred" from acting as a lawyer at the TVB.  The Plaintiff testified at his deposition that his lawyer told him at the time in no uncertain terms that any further violent or aggressive behavior would lead to a ban from practice.  See Capogrosso Tr., Dkt. No. 222 at 414:4-6 ("Chris did tell me if you sneeze the wrong way, they're going to throw you out again.").  There is no question that DMV's decision to ban the Plaintiff was exactly what it had told the Plaintiff it would do, that its intention to do so existed well before the AG Letter was ever sent, and that it would have taken the same action with or without the Plaintiff's allegedly-protected speech.  Cf. R&R at 16 ("Defendants did not have to wait for something worse to happen to take disciplinary action against him.").

B.     **The Plaintiff's AG Letter Was Not Protected Speech**

As discussed in the State Defendants' moving, Dkt. No. 180 at 22-24, and reply briefs, Dkt. No. 274 at 4-6, the Plaintiff's claim also fails as a matter of law because the AG Letter at the center of it does not constitute protected activity that could form the basis of a First Amendment Retaliation claim.  The outcome turns on the legal question of whether a claim by

the Plaintiff – an attorney practicing before an administrative tribunal – is analyzed according to the standard applicable to a speech by a public employee or the one applicable to speech by a private citizen.  Cf. Morales v. City of N.Y., No. 18 Civ. 1573, 2021 WL 965335, at *8 (S.D.N.Y. Mar. 15, 2021) ("whether . . . speech was protected by the First Amendment is a question of law to be decided by the Court.").  The Plaintiff does not comfortably fall into either category, as Magistrate Judge Bloom recognized in her first opinion in this case.  See Capogrosso I, 2019 WL 6406444 at *8 (noting that "Plaintiff's retaliation claim wades in the muddy First Amendment delta between public employees and private citizens.").  The State Defendants do not dispute that the AG Letter would constitute protected speech under the private citizen standard, and the Plaintiff has not disputed that the AG Letter would not constitute protected speech under the standard applicable to public employees.  See Plaintiff's Opposition Brief, Dkt. No. 246 at 5-6 (making no contention that the AG Letter was citizen speech on a matter of public concern); cf. Agosto v. N.Y. City Dep't of Educ. 982 F.3d 86, 95 (2d Cir. 2020) (under public employee standard "speech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection.").  Magistrate Judge Bloom did not decide the issue in her R&R, noting that it was unnecessary to do so because "even assuming, *arguendo*, that plaintiff's [AG Letter] constituted protected speech," Plaintiff's claim failed in any event for lack of causation. R&R at 14-15 & n.25.  However, she previewed her likely holding on the issue, stating that the AG Letter's potential status as protected speech was "a big assumption on this record," especially since "Plaintiff's AG Letter manifestly relates to his own situation, to 'redress personal grievances.'"  Id. (quoting Agosto, 982 F.3d at 95).

To counsel's knowledge, there is no controlling Supreme Court or Second Circuit authority establishing the standard governing claims of First Amendment retaliation for a lawyer

16

complaining about an administrative tribunal.[11]  However, the Circuit recently addressed a

similar issue in an unpublished opinion, Odermatt v. N.Y. City Dep't of Educ., 694 F. App'x 842

(2d Cir. 2017) (summary order), which – although not strictly precedential – strongly supports

the application of the public employee standard.  Odermatt involved a claim brought by a

graduate student trainee in the New York City Teaching Fellows program.  The Circuit noted the

tension regarding "whether [plaintiff] is properly considered a citizen-speaker, a student, or a

public employee," with each category subject to a different standard, but then concluded that "in

the circumstances of this case, the framework used to analyze public employee retaliation claims

best fits because the concern for the efficient operation of a government agency that underlies the

more limited speech protection in that framework applies."[12]  Id. at 845-46.

These same concerns for "efficient operation of a government agency" support the

application of the public employee standard in the context of attorney speech about a tribunal, as

attorneys are held to higher standards of conduct than private citizens, and the actions of a

disgruntled or recalcitrant attorney can significantly disrupt the administration of justice.  See

Odermatt, 694 F. App'x at 846 (public employee standard applied to teaching fellow because

"government employers, like private employer, need a significant degree of control over their

employees' words and actions . . . for the efficient provision of public services."); cf. Gentile v.

State Bar of Nev., 501 U.S. 1030, 1074 (1991) (Supreme Court's precedents "rather plainly

indicate that the speech of lawyers . . . may be regulated under a less demanding standard.").

Indeed, the Plaintiff's speech and actions had just such a disruptive effect: as Magistrate Judge

---

[11] Magistrate Judge Bloom was similarly unable to find any controlling precedent when she analyzed the issue in her earlier report and recommendation on the motion to dismiss.  See Capogrosso I, 2019 WL 6406444 at *15 ("The parties do not point us to, nor has the Court found, case law on point with the facts presented herein.").

[12] Odermatt is consistent with other cases in which the Second Circuit has applied the public employee standard for First Amendment retaliation cases outside the public employee context. See, e.g., White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993) (applying public employee standard to private towing company with an "informal arrangement" to provide services, even though it "was not an employee of the State [] and had no formal franchise form or contract with the state").

Bloom noted, "the record demonstrates that many individuals, including TVB staff and other attorneys, reported feeling unsafe at the TVB because of plaintiff's behavior.  One report states that plaintiff was 'more often than not, a menace to the office;' another describes plaintiff as causing an 'atmosphere of fear.'"  R&R at 15.  The law's "concern for the efficient operation of a government agency" and "'the efficient provision of public services'" dictate that such actions and speech should not be tolerated from an attorney before a government tribunal any more than they would be from a government employee.  Odermatt, 694 F. App'x at 846 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

### C.     The Individual State Defendants Are Shielded By Qualified Immunity

For the reasons set forth above, there is ample basis to believe that the AG Letter did not constitute protected speech, despite the lack of direct binding precedent.  Regardless, this doctrinal uncertainty, the existence of which is undisputed, also means that the Individual Defendants would be protected by the doctrine of qualified immunity.  "Qualified immunity shields government officials from suit so long as their actions do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Aigbekaen v. Fu, No. 18 Civ. 6529, 2021 WL 1176167, at *3 (E.D.N.Y. Mar. 29, 2021) (Komitee, J.) (quoting White v. Pauly, 137 S.Ct. 548, 551 (2017) (per curiam)).  When presented with a qualified immunity defense, "[c]ourts must consider whether 'it was objectively reasonable for the [government official] to believe the conduct at issue was lawful.'"  Id. (quoting Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013)).  "This standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, as discussed in Section IV(B), above, the law governing a claim of First Amendment retaliation by an attorney for speech concerning a tribunal is anything but "clearly established."  In determining whether the clearly established standard is met, federal courts in the

Second Circuit "look[] to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right." Wagschal v. Skoufis, 442 F. Supp. 3d 612, 625 (S.D.N.Y. 2020) (quoting Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 433 (2d Cir. 2009)).  "Courts 'do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'"  Martinez v. Hasper, No. 15 Civ. 5724, 2022 WL 130506, at *4 (E.D.N.Y. Jan. 12, 2022) (Komitee, J.) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)).

As Magistrate Judge Bloom previously indicated, there was no such controlling case law on point in 2015.  See Capogrosso I, 2019 WL 6406444 at *15 ("The parties do not point us to, nor has the Court found, case law on point with the facts presented herein.  As few, if any, First Amendment retaliation cases involve private citizens in similar contexts to plaintiff here, it seems unlikely that the law was clearly established law in 2015 when plaintiff was barred from representing clients at TVB locations state-wide."); see also R&R at 14 (noting that "plaintiff, an attorney practicing before a State administrative tribunal, does not fall squarely into either category" of First Amendment retaliation cases).  Accordingly, even if there were any causal link between the Plaintiff's AG Letter and his expulsion from practice after fighting with a security guard – a proposition for which "plaintiff has not provided *any* specific proof," R&R at 15 (emphasis in the original) – it would not have been clear to a reasonable TVB judicial official that this would violate a clearly established right.  Instead, it was objectively reasonable to view the AG Letter as just one more in a long chain of inexplicable and disruptive actions by the Plaintiff, which would ultimately lead to his practice ban several months later.  The individual State Defendants are therefore protected by qualified immunity.

19

## V.    THE PLAINTIFF'S SUPPLEMENTAL OBJECTIONS ARE UNTIMELY AND WITHOUT MERIT

In addition to his Objections, Plaintiff also filed a second a second set of objections to Magistrate Judge Bloom's Report and Recommendation on February 16, 2022.  Dkt. No. 283.  In these Supplemental Objections, the Plaintiff takes issue with summary judgment based on his disagreement with certain of Magistrate Judge Bloom's earlier (and unchallenged) discovery rulings.  See Dkt. No. 283 at 2 ("The record evidence creates a genuine issue as to material facts. All possible evidence was not gathered in this matter because I was not allowed full and complete discovery.").  In specific, he objects that 1) the Court refused to order defendant Smart to provide him with his email and phone number; 2) the Court granted a protective order against his attempt to depose DMV Commissioner Mark Schroeder; and 3) that he was not permitted to "enter the Brooklyn TVB to gather [] witness testimony."  Id.  These objections are untimely, and none of them has any legal merit, particularly given the deferential standard of review for a Magistrate Judge's discovery ruling.

As a threshold matter, Plaintiff's objection to these discovery rulings is time-barred. Federal Rule of Civil Procedure 72(a) requires that any objection to a Magistrate Judge's ruling on a nondispositive pretrial matter must be served and filed "within 14 days" of that ruling. Here, the first two discovery rulings the Plaintiff objects to were issued on December 16, 2020, and the third was issued even earlier, on January 10, 2020.  See Dkt. No. 148; Dkt No. 104; cf. Supplemental Objections at 2 (citing these orders as the basis for the Plaintiff's new objections). Having never challenged those rulings, the Plaintiff is not permitted to wait until summary judgment to make discovery objections, as Rule 72(a) states that "[a] party may not assign as error a defect in the order not timely objected to."   This untimeliness is reason enough in itself to disregard the arguments in the Supplemental Objections.  See MKTG, Inc. v. Oceanside Ten

Holdings.com, LLC, No. 18 Civ. 953, 2019 WL 6711459, at *7 (E.D.N.Y. Dec. 10, 2019) (citing

Rule 72(a) and Caidor v. Onondaga Cty., 517 F.3d 601, 604-05 (2d Cir. 2008)).

But even if the Plaintiff could belatedly challenge these rulings from 2020, his arguments

would fail on their own merits, particularly when evaluated according to the strict standards for

review of a Magistrate Judge's discovery ruling.  Under the governing statutes and Rules, "a

magistrate judge's ruling on non-dispositive pretrial matters should not be disturbed by the

district judge absent a determination that such findings were clearly erroneous or contrary to

law."  Grief v. Nassau Cty., 246 F. Supp. 3d 560, 563-64 (E.D.N.Y. 2017) (quotation omitted).

"This standard is highly deferential, imposes a heavy burden on the objecting party, and only

permits reversal where the magistrate judge abused h[er] discretion."  Ahmed v. T.J. Maxx

Corp., 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015).

Magistrate Judge Bloom did not abuse her discretion, and in fact gave the *pro se* attorney

Plaintiff every benefit of discovery.  She did not give the Plaintiff Mr. Smart's contact

information, but she did place Mr. Smart under oath and require him to answer the Plaintiff's

interrogatories on the record.  See Dkt. Nos. 163 & 164; R&R at 8 & n.21.  She did not permit

the Plaintiff to conduct a harassing deposition of Commissioner Schroeder, but only based on a

common-sense finding that "Commissioner Schroeder cannot have 'unique first-hand

knowledge' as he was appointed to his position in January of 2019, approximately four years

after the events that give rise to plaintiff's case."  Order, Dkt. No. 148 at 2 (quoting Lederman v.

N.Y. City Dep't of Parks & Rec., 731 F.3d 199, 203 (2d Cir. 2013)); see also Dkt. No. 146 at 2-3

(noting that Commissioner Schroeder had already answered 25 interrogatories on behalf of the

agency).  And contrary to the Plaintiff's claims, Magistrate Judge Bloom expressly permitted

him to obtain testimony from any witness to which he was entitled, merely emphasizing that he

was required to follow the Federal Rules of Civil Procedure in noticing and subpoenaing

witnesses, rather than disruptively appearing at DMV's facility unannounced, asserting a

nonexistent "right" to obtain witness testimony.  See, e.g., Dkt. No. 105 at 13:10-19 ("You are permitted to depose the defendants.  You have to notice them through [counsel] and arrange for a court reporter.  That's what a deposition under Rule 30 requires. . . .  That's your prerogative. What is not your prerogative is walking into the DMV office and waving around papers."); see also id. at 14:21-25 ("And if you want to list the people you think [should testify], go right ahead and list their names.  But you do not go back into the DMV and start asking people were they there on May 11th to witness these events.  That's not how you go about this.  Have I made myself clear?").

The Plaintiff is a licensed attorney who had the full benefit of discovery under the Federal Rules, and was given every consideration by the Court.  His Supplemental Objections are both untimely and without merit.  Magistrate Judge Bloom did not abuse her discretion, and her Report and Recommendation was correct on the law, and certainly not clearly erroneous.  It should be adopted in its entirety.

## CONCLUSION

For the reasons set forth above, the State Defendants respectfully request that Magistrate Judge Bloom's Report and Recommendation be adopted in full or, in the alternative, that the Court grant the State Defendants' motion for summary judgment on other grounds Magistrate Judge Bloom did not reach, and that the Court grant such other and further relief as it deems just and proper.

Dated:  New York, New York
         March 10, 2022

                                        LETITIA JAMES
                                        Attorney General
                                        State of New York

                                        By: _____
                                             James M. Thompson
                                             Assistant Attorney General
                                             28 Liberty Street
                                             New York, NY  10005
                                             (212) 416-6556
                                             james.thompson@ag.ny.gov

                                        Attorney for the State Defendants

23